IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CASE NO:

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,
               Plaintiffs,
vs.

BUZZFEED, INC. AND BEN SMITH,

               Defendants.
_____/

## COMPLAINT FOR DAMAGES

Plaintiffs, Aleksej Gubarev ("Mr. Gubarev"), XBT Holding S.A. ("XBT"), and Webzilla, Inc. ("Webzilla")(collectively, "Plaintiffs") sue Defendants Buzzfeed, Inc. ("Buzzfeed") and Ben Smith ("Mr. Smith") for damages. In support, Plaintiffs allege the following:

## INTRODUCTORY STATEMENT

1. On January 10, 2017, in perhaps one of the most reckless and irresponsible moments in modern "journalism," Defendant Buzzfeed and its Editor in Chief Ben Smith chose to publish a "dossier" of unverified information compiled by a private security company in which various allegations were made concerning, among other things, computer hacking allegedly carried out by persons or organizations with ties to Russia, the Russian Government, and/or the Federal Security Service of the Russian Federation ("FSB").

2. And, although Buzzfeed and Smith specifically knew that at least portions of the dossier were untrue, they printed the entire document – without meaningful redactions – including those portions that falsely accused the Plaintiffs of participating in an alleged conspiracy to commit crimes against the Democratic Leadership, not to mention a conspiracy to

undermine American Democracy and the 2016 election. With respect to the Plaintiffs, these allegations were wholly and completely false.

3. Buzzfeed and Smith published these allegations without having even taken the most basic step of contacting the Plaintiffs to ask if the allegations had any merit. Indeed, in its original publication of the dossier, Buzzfeed itself *admitted* it had no idea what – if anything – in the dossier was truthful, writing:

> The dossier, which is a collection of memos written over a period of months, includes specific, unverified, and potentially unverifiable allegations… BuzzFeed News reporters in the US and Europe have been investigating various alleged facts in the dossier but have not verified or falsified them. …[The dossier] is not just unconfirmed: It includes some clear errors.

4. As of the date of this filing, the original Buzzfeed article has been viewed almost six million times and Buzzfeed has published eight additional follow-up articles, each of which links back to the original defamatory publication.

5. Plaintiff Aleksej Gubarev, who is married with three young children is not, in any way, shape, or form, a public figure. As a result of Buzzfeed and Mr. Smith's reckless publication of defamatory materials, he has found his personal and professional reputation in tatters. His wife has found herself a target of online harassment and the family's personal security has been compromised. Similarly, the economic damage to XBT and Webzilla (a Florida Corporation), including the harm to the companies' previously-unblemished reputations with their clients, lenders, vendors, and others has been immediate and ongoing.

## PARTIES

6. Plaintiff Aleksej Gubarev is an individual who resides in the Republic of Cyprus. Mr. Gubarev has lived in Cyprus since 2002. Mr. Gubarev is the Chairman and CEO and director of Plaintiff XBT Holding S.A.

7. Plaintiff XBT Holding S.A. is a company organized under the laws of Luxembourg. XBT has offices in Florida and Texas as well as other locations across the globe. XBT has various subsidiary companies, including Webzilla, Inc.

8. Plaintiff Webzilla, Inc. is a Florida corporation with offices in Fort Lauderdale.

9. Defendant Buzzfeed, Inc. is a Delaware Corporation. According to Buzzfeed, it has offices in "18 cities around the world including New York, Los Angeles, San Francisco, London, Sydney, Sao Paulo, and Tokyo." Buzzfeed owns and operates the Buzzfeed.com website as well as the Buzzfeed mobile app. According to Buzzfeed's media kit, it has in excess of 200 million unique monthly views. Buzzfeed.com is one of the most trafficked websites in the United States, currently ranked in the top 100 websites visited in the U.S.

10. Defendant Ben Smith is an individual who, on information and belief, resides in Brooklyn, New York. Mr. Smith is the Editor in Chief of Buzzfeed.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

11. This Court has subject matter jurisdiction over Plaintiffs' claim for damages as each claim is in excess of $15,000.

12. This Court has personal jurisdiction over the Defendants pursuant to Florida Statute 48.193(1)(b). The Defendants posted defamatory materials concerning the Plaintiffs on their website (and through their mobile app), which materials were accessed in Florida, constituting the commission of the tortious act of defamation within Florida under section 48.193(1)(b).

13. This Court also has personal jurisdiction over the Defendants pursuant to Florida Statute 48.193 because:

(a) Defendants have caused injury to persons or property within Florida, arising out of acts or omissions undertaken outside of the state and Defendants regularly solicit advertising and viewers within Florida;

(b) Defendants have committed intentional torts expressly aimed at one or more of the Plaintiffs, the effects of which were suffered in this circuit. Defendants' intentional conduct was calculated to cause injury to one or more of the Plaintiffs in Florida and has caused injury to one or more of the Plaintiffs in Florida. Based on their intentional torts, Defendants should have reasonably anticipated being haled into this Court and due process is satisfied.

14. Venue is proper in Broward County because the tort occurred in Broward County and the harm to the Plaintiffs was felt in Broward County in that Plaintiff regularly conducts business in Broward County, Florida.

15. All conditions precedent to this action have been performed. Specifically, although not actually required to do so, Plaintiffs provided Defendants with pre-suit notice and a demand for a retraction pursuant to Florida Statutes Chapter 770.01, *et seq.* See **Exhibit 1.**

## FACTUAL ALLEGATIONS

16. Mr. Gubarev is an individual who lives, with his wife and three children, in Cyprus. He is a 36 year-old venture capitalist and tech expert. In 2002, at the age of 22, he moved from Russia to Cyprus and, in 2005, he founded Webzilla Limited (an XBT predecessor) – a company that specializes in internet hosting, data, and web-development.

17. Over the next 12 years, Mr. Gubarev grew XBT to an international business with various subsidiary companies, employing approximately 300 employees in three different continents. XBT has offices in Texas, Florida, and Luxembourg, among others.

18. Mr. Gubarev has never been involved in politics and is not a public figure. Outside of technology circles, he is not known at all.

19. Webzilla, Inc., one of XBT's subsidiaries, is a Florida corporation with offices in Fort Lauderdale, Florida and Dallas, Texas.

20. XBT and its subsidiaries operate approximately 37,000 servers across the globe, with approximately 40 percent of its business being handled over the servers run out of Dallas, Texas. Approximately 27 percent of XBT's global business comes from within the United States.

21. Given that XBT's and Webzilla's businesses focus on internet hosting solutions, network services, and web development services, their reputation for providing secure services has been carefully cultivated and paramount to the success of the businesses.

22. Similarly, prior to the Defendants' publication of defamatory materials, Mr. Gubarev's own professional reputation has been untarnished and key to his ability to build XBT and Webzilla into successful international hosting companies.

23. On January 10, 2017, Buzzfeed and Mr. Smith published an online article entitled, "These Reports Allege Trump Has Deep Ties To Russia" (the "Defamatory Article") The Defamatory Article, which at the time of this writing has been viewed more than 5.9 million times, can be found at https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia?utm_term=.fvQvex17e#.yezx3nBr3. A true and accurate copy of the Defamatory Article is attached hereto as **Exhibit 2.** On information and belief, the Defamatory Article has (conservatively) been viewed in Florida tens of thousands of times.

24. This Defamatory Article attached a 35-page unverified "dossier" of information compiled by a private security company. On information and belief, the dossier was created as part of opposition research conducted as part of the 2016 election campaign; it is not an official

5

document and was not created by any government entity. A true and accurate copy of the dossier attached to the Defamatory Article is attached hereto as **Exhibit 3.**

25. The dossier included various allegations concerning, among other things, allegations of computer hacking of the Democratic Party allegedly carried out by persons or organizations with ties to Russia, the Russian Government, and/or the Federal Security Service of the Russian Federation ("FSB").[1]

26. With respect to the Plaintiffs, the dossier included the following assertions of fact:

> *[redacted] reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership. Entities linked to one Alexei GUBAROV [sic] were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation. In Prague, COHEN agreed contingency plans for various scenarios to protect the operations, but in particular what was to be done in the event that Hillary CLINTON won the presidency. It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and that cyber and other operators were stood down / able to go effectively to ground to cover their traces.*

27. Not a single portion of this statement (as it applies to Mr. Gubarev, XBT, or Webzilla) has any basis in fact whatsoever. Specifically:

   a. Neither XBT nor Webzilla nor any of their affiliates had been "*using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations'*" against the Democratic Party leadership or anyone else;

   b. No *"entities linked"* to Mr. Gubarev were involved in any alleged cyber-attacks;

   c. Mr. Gubarev was not "*recruited under duress by the FSB*" (to be clear, he was not recruited at all – whether under duress or otherwise), nor was he recruited for such activities by anyone else at any other time or in any other circumstances whatsoever. Additionally, he has no knowledge of, has never met and has never spoken to a person known as Seva Kapsugovich;

---

[1] The FSB is the main successor agency to the USSR's Committee of State Security ("KGB").

6

  d.  Mr. Gubarev and his companies have never acted with "*another hacking expert*" to mount a cyber-attack on the Democratic Party Leadership or on any other person; and

  e.  Not having been involved in the activities attributed to them in the "dossier," neither Mr. Gubarev nor any of his companies would have had any need to "*go effectively to ground to cover their traces*" in the event that Ms. Clinton won the presidency.

28. Although Buzzfeed and Mr. Smith claim that they had the dossier in their possession for weeks prior to its publication, and despite their claims that they had four reporters working near full-time on attempting to verify the claims made in the dossier, prior to publishing the Defamatory Article and the dossier, neither Buzzfeed nor Mr. Smith contacted the Plaintiffs to determine if the allegations made against them had any basis in fact. After the dossier's publication numerous journalists (more than 30) contacted Mr. Gubarev with some even arranging to travel to Cyprus to discuss the publication with Mr. Gubarev. During this time, and up to the present day, neither Buzfeed nor Mr. Smith contacted the Plaintiffs to determine if the allegations made against them had any basis in fact.

29. At the time the Defendants published the Defamatory Article and accompanying dossier, they knew, without a doubt, that at least certain portions of the dossier were untrue. Indeed, the Defamatory Article stated specifically that:

> The dossier, which is a collection of memos written over a period of months, includes specific, unverified, and potentially unverifiable allegations… BuzzFeed News reporters in the US and Europe have been investigating various alleged facts in the dossier but have not verified or falsified them. …[The dossier] is not just unconfirmed: It includes some clear errors.

30. In other words, Buzzfeed and Mr. Smith knew for sure *only* that certain parts of the dossier were *untrue*. Other than the portions confirmed by them to be false, Buzzfeed and Mr. Smith had been unable to verify the veracity of any of the claims made in the dossier.

7

31. Indeed, Mr. Smith has admitted that Buzzfeed knew at the time that it published the Defamatory Article and dossier that there were "real solid reasons to distrust" the veracity of the allegations contained therein.

32. Despite these concerns, Buzzfeed and Mr. Smith took no steps to redact out the names of the Plaintiffs from the dossier, a step they could have taken easily and which would not have changed the character of their reporting.

33. Buzzfeed and Mr. Smith immediately faced an onslaught of criticism for their irresponsible decision to publish the unverified dossier and the Defamatory Article – drawing condemnation from media outlets and journalism experts across the political spectrum including The Washington Post, CNN, MSNBC, Fox News, and the Poynter Institute to name a few.

34. Despite this condemnation, Buzzfeed published eight additional follow-up articles, each of which contained a link back to the original Defamatory Article.

30. In addition, Mr. Smith published an Op-Ed in the New York Times and appeared in numerous television and radio interviews defending his decision to publish the Defamatory Article and the dossier. Some of these articles and interviews actually compounded the defamatory effect by implying that Buzzfeed had verified the claims made.

35. For example in his New York Times Op-Ed, Mr. Smith stated that Buzzfeed decided to publish the dossier "only after we had spent weeks with reporters in the United States and Europe trying to confirm or disprove specific claims." What the New York Times Op-Ed omitted, however, is that Buzzfeed had failed entirely in these efforts. The Op-Ed also failed to state that Buzzfeed had made no attempts to contact Mr. Gubarev, XBT, or Webzilla and – on information and belief – had made no attempts to verify the claims made as to the Plaintiffs.

36. Similarly, Mr. Smith stated on CNN's Reliable Sources that Buzzfeed was "running it down every way we could" and told MSNBC's Meet the Press Daily that "we, like many other organizations had had [the dossier] for weeks. We had reporters in Europe and the United States trying to stand up or knock down specific details."

37. Buzzfeed and Mr. Smith's decision to publish the unverified dossier not only flew in the face of all journalistic standards and ethics, but also violated Mr. Smith's own claims of how Buzzfeed operates. Less than two months before it published the Defamatory Article and dossier, Mr. Smith wrote an article for the Columbia Journalism Review in which he claimed that Buzzfeed not only routinely took steps to verify the facts that they published but that doing so was "not complicated." Specifically, in an article entitled "How tech and media can fight fake news," published on November 17, 2016, Mr. Smith wrote:

> Mark Zuckerberg recently wrote that "identifying the 'truth' is complicated." Maybe for algorithms and epistemologists. But it's something that professional journalists are asked to do every day, and it's not actually that complicated. The everyday reporting truths– who said what, when did they say it, what does the document say, where did the money go–are the sorts of thing we're good at pinning down.

## COUNT I – DEFAMATION AND DEFAMATION PER SE

38. Plaintiff re-alleges and re-asserts the allegations set forth in paragraphs 1-37 as if fully set forth herein.

39. Defendants Buzzfeed and Mr. Smith, by and through their representatives, published false and defamatory statements concerning Plaintiffs without privilege to do so.

40. The false and defamatory statements included, but are not limited to, allegations that:

    a. XBT and Webzilla used "*botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations'*" against the Democratic Party leadership;

    b. "*entities linked*" to Mr. Gubarev were involved in cyber-attacks;

9

    c.       Mr. Gubarev was "*recruited under duress by the FSB*"

    d.       Mr. Gubarev and his companies acted with "*another hacking expert*" to mount a cyber-attack on the Democratic Party Leadership; and

    e.       Mr. Gubarev and his companies would need to "*go effectively to ground to cover their traces*" in the event that Ms. Clinton won the presidency.

41.       The defamatory statements were published without privilege to third parties, including thousands or tens of thousands (or more) residents of Florida.

42.       None of the Plaintiffs are public figures, nor are they limited public figures for purposes of a defamation analysis.

43.       The defamatory statements were made negligently; without reasonable care as to their truth or falsity; with knowledge of their falsity; and/or with reckless disregard for the truth.

44.       The statements allege that the Plaintiffs committed crimes including (but not limited to) computer hacking and that the Plaintiffs engaged in behavior designed to undermine American democracy and the 2016 Presidential election.

45.       The statement are of the kind that they would tend to prejudice the Plaintiffs in the eyes of a substantial and respectable minority of their communities.

46.       The statements have caused, and will continue to cause, the Plaintiffs injury in their personal, social, and business relations.

47.       XBT and Webzilla have suffered, and will continue to suffer, actual injury as a result of injury to their corporate reputations. At least one lender has declined to do business with XBT and/or Webzilla based on the defamatory statements published by the Defendants and, on information and belief, the defamatory statements have also cost Webzilla and XBT clients.

48.       Mr. Gubarev has suffered, and will continue to suffer, actual injury as a result of the injury to his personal reputation.

49.     The defamatory statements tend to injure the Plaintiffs in their business trade as the allegations call into question the security and proper operation of the Plaintiffs' businesses. Additionally, the above statements subject Plaintiffs to distrust, scorn, ridicule, hatred, and contempt.  As such, the defamatory statements constitute defamation *per se*.

50.     In addition, as a direct and proximate result of the defamatory statements made by Defendants, Plaintiff has suffered, and continue to suffer, substantial damages.

51.     It is clear from the statements made by Buzzfeed and Mr. Smith, discussed above, that they had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to the Plaintiffs would result and that, despite that knowledge, the Defendants intentionally pursued that course of conduct, resulting in injury or damage. Accordingly, and in conformity with Florida Statute §768.72, the Plaintiffs will seek leave of court to seek an award of punitive damages against Defendants.  In the alternative, Plaintiffs will also seek leave of court to seek punitive damages under Florida Statute §768.72 because the Defendants' actions, as described above, were so reckless or wanting in care that they constituted a conscious disregard or indifference to the rights of the Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Aleksej Gubarev, XBT Holding S.A., and Webzilla, Inc. pray for judgment against defendants Buzzfeed, Inc. and Ben Smith as follows:

1.     For an award of general and special in an amount in excess fifteen thousand dollars ($15,000.00) in accordance with proof at trial together with interest thereon at the maximum legal rate; and Plaintiffs reserve the right to seek leave of court to seek punitive damages against Defendants in accordance with the facts and claims stated herein and established through discovery;

2.     For costs of suit incurred herein; and

3.  For such other and further relief as to this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 3rd day of February, 2017 by:

        The Plaintiffs,
        Aleksej Gubarev,
        XBT Holding S.A.
        Webzilla, Inc.
        By their Attorneys,

        COBB EDDY, PLLC
        *Local Counsel for Plaintiffs*
        642 Northeast Third Avenue
        Fort Lauderdale, Florida 33304
        Telephone: (954) 527-4111
        Facsimile:  (954) 900-5507
        www.cobbeddy.com

        **By: /s/ BRADY J. COBB_____**
        BRADY J. COBB, ESQUIRE
        Florida Bar No. 031018
        bcobb@cobbeddy.com
        DYLAN M. FULOP, ESQUIRE
        Florida Bar No. 123809
        dfulop@cobbeddy.com

        BOSTON LAW GROUP, PC
        *Lead Counsel for Plaintiffs*
        825 Beacon Street, Suite 20
        Newton Centre, MA 02459
        Tel:     (617) 928-1804
        Fax:    (617) 928-1802

        **By: /s/ Valentin D. Gurvits_____**
        VALENTIN D. GURVITS, ESQUIRE
        *Pro Hac Vice Pending*
        Massachusetts BBO# 643572
        vgurvits@bostonlawgroup.com