**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.

    Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

    Defendants.

_____/

<u>**DEFENDANTS' MOTION TO DISMISS OR TRANSFER AND INCORPORATED**</u>
<u>**MEMORANDUM OF LAWS**</u>

LEVINE SULLIVAN KOCH & SCHULZ, LLP
Katherine M. Bolger
(admitted *pro hac vice*)
Nathan Siegel
(admitted *pro hac vice*)
Adam Lazier
(admitted *pro hac vice*)
321 West 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100

LEVINE KELLOGG LEHMAN SCHNEIDER +
GROSSMAN LLP
Lawrence A. Kellogg
201 South Biscayne Boulevard
22nd Floor
Miami, FL 33131
(305) 403-8791

*Counsel for Defendants*

Defendants BuzzFeed, Inc. ("BuzzFeed") and Ben Smith move to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, for an order pursuant to 28 U.S.C. § 1404(a) transferring this case to the Southern District of New York.

## PRELIMINARY STATEMENT

This is a defamation case about the publication online by BuzzFeed, a media company based in New York City, of a dossier of information discussing alleged ties between President Trump and Russia. The plaintiffs are one individual and two companies, none of whom have any physical presence in Florida. They assert that they were identified in two sentences in the penultimate paragraph of the 35-page dossier, as having been involved in Russian efforts to hack the Democratic National Committee. While the dossier itself continues to generate intense international interest, it is clear that this dispute about its publication has nothing to do with Florida. This Court should, therefore, dismiss Plaintiffs' complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. Pro. 12(b)(2) In the alternative, this Court should transfer this action to the Southern District of New York on grounds of *forum non conveniens.*

## STATEMENT OF FACTS

### A.    <u>The Parties</u>

1.    <u>The Plaintiffs</u>

Plaintiff Aleksej Gubarev pleads that he is an individual who lives in the Republic of Cyprus. Declaration of Katherine M. Bolger, executed March 14, 2017 ("Bolger Decl."), Ex. 1 ("Compl.") ¶ 6. Plaintiff XBT Holdings, S.A. ("XBT") pleads that it is a company organized under the laws of Luxembourg. *Id.* ¶ 7; Bolger Decl., Ex. 8. While XBT alleges that it has offices in "Florida and Texas as well as other locations around the globe," Compl. ¶ 7, in fact its website lists only an office in Luxembourg, Bolger Decl., Ex. 16, and the company is not registered with the Florida Secretary of State's Division of Corporations.[1]  *Id.* ¶ 10.

Plaintiff Webzilla, Inc. ("Webzilla") pleads that it is a Florida corporation with offices in Fort Lauderdale,  Compl. ¶ 8, and, in fact, Webzilla's annual filings with the State's Division of

---

[1] There is a different company called XBT Holdings, LLC ("XBT LLC") that has a putative registered principal place of business and mailing address in Boca Raton. Declaration of Brenden Soucy, executed March 14, 2017 ¶ 2 & Ex. 1. It is not clear whether this entity has a connection to any Plaintiff. In any event, XBT LLC does not appear to actually have an office at the Boca Raton location – it is not listed in the building directory and its supposed office is occupied by a different business. *Id.* ¶¶ 3-5 & Ex. 2.

Corporations listed a Fort Lauderdale address as its principal place of business until 2013. Declaration of Victor Petruscu, executed March 13, 2017 ("Petrescu Decl.") ¶ 4 & Ex. 3.  In 2014, however, Webzilla changed its address and since then its annual filings have listed a Dallas, Texas address as both its principal place of business and its mailing address.  *Id.*, ¶ 4 & Ex. 1-2, 4.  The directors of Webzilla, Rajesh Kumar Mishra and Kostyantyn Bezruchenko, are also both listed on the filings with Dallas addresses.  *Id.*, Exs. 2 & 4.

Webzilla's website still purports to have a "North America" office located at 110 E. Broward Blvd., Suite 1700, Fort Lauderdale, FL 33301, USA.  Bolger Decl., Ex 12.  That suite, however, is a Regus office space, which appears to provide shared, furnished office space and staff for temporary tenants.  Petrescu Decl. ¶ 5 & Ex. 5.  Webzilla is not listed as a tenant in the building and, in fact, appears not to have rented space at that address for over a year.  *Id.*, ¶ 6 & Ex. 6.

XBT and Webzilla both claim on their websites to have five datacenters and thirteen network "points of presence" around the world.  Bolger Decl., Exs. 10 & 13.  None are in Florida:



Bolger Decl., Ex. 10.

## 2.    Defendants BuzzFeed and Ben Smith

BuzzFeed is a digital media company, which publishes content on its website located at www.buzzfeed.com ("Buzzfeed.com") and through mobile apps on iPhones, iPads, and Android devices.  Declaration of Roy Cysner, executed March 13, 2017 ("Cysner Decl.") ¶ 2.  It also distributes its content through third party platforms, such as Facebook and Snapchat.  *Id.* BuzzFeed is incorporated under the laws of Delaware.  *Id.* ¶ 3.  It is headquartered and has its

principal place of business in New York City.  *Id.*  BuzzFeed has no offices or employees in Florida, and does not own or rent any property there.  *Id.* ¶ 5.

Ben Smith is the editor-in-chief of BuzzFeed.  Declaration of Ben Smith, executed March 9, 2017 ("Smith Decl.") ¶ 1.  Mr. Smith was born in New York City and currently resides in Brooklyn, New York.  *Id.* ¶ 2.  Mr. Smith made the final decision to publish the article and dossier at issue at BuzzFeed's office in New York City.  *Id.* ¶ 3.  Mr. Smith owns no property in Florida, did no newsgathering related to Plaintiffs, the article, or the dossier in Florida, and has no other connection to the State of Florida.  *Id.* ¶¶ 2-5.

## B.    The Article and The Dossier

On January 10, 2017, BuzzFeed published an article entitled "These Reports Allege Trump Has Deep Ties to Russia".  Compl., Ex. 2 (the "Article").  The byline on the Article lists journalists Ken Bensinger, Mark Schoofs and Miriam Elder.  *Id.*  None of them conducted any reporting in or into Florida.  Declaration of Ken Bensinger, executed March 13, 2017 ("Bensinger Decl.") ¶ 3; Declaration of Mark Schoofs, executed March  13, 2017 ("Schoofs Decl.") ¶¶ 3-4; Declaration of Miriam Elder, executed March 9, 2017 ("Elder Decl.") ¶¶ 3-4; Smith Decl. ¶ 3.  The Article explains that the Dossier is a third-party document that had become the subject of official government activity, and makes no reference to Plaintiffs.  Article at 1-2. The Article included an embedded document file containing the 35-page Dossier.  *Id.* at 3; *see also* Compl., Ex. 3 (the "Dossier").  A paragraph on the last page of the Dossier reads in relevant part:

> ███████   reported that over the period March-September 2016 a
> company called XBT/Webzilla[2]  and its affiliates had been using botnets
> and porn traffic to transmit viruses, plant bugs, steal data and conduct
> "altering operations" against the Democratic Party leadership.  Entities
> liked to one Aleksei GUBAROV were involved and he and another
> hacking expert, both recruited under duress by the FSB, Seva
> KAPSUGOVICH, were significant players in this operation….

Dossier at 35 (redaction and capital letters in original).

---

[2] The Dossier does not identify any particular "Webzilla" entity, and the "Webzilla, Inc." Plaintiff here is not the only "Webzilla" entity incorporated in the United States.  There is also a "Webzilla Dallas Inc.", incorporated in Texas, which also lists Mishra as a director, and a "Webzilla Apps Inc," incorporated in Delaware. Bolger Decl., Exs. 4-5.

Florida is never mentioned in the 35-page document.  No one involved in the decision to publish the Dossier had any knowledge that any of the names mentioned in the Dossier had any putative connection to Florida, nor did they understand their publication of the Article with the embedded Dossier to be targeting Florida in any way.  Bensinger Decl. ¶ 6; Schoofs Decl. ¶ 5; Elder Decl. ¶ 5; Smith Decl. ¶ 5.  Nor could they have – nothing in the Dossier even signals that the "Webzilla" referenced was intended to refer to a nominal Florida entity bearing that name, as opposed to the various "Webzilla" entities incorporated in Texas, Delaware, Cyprus, or the Netherlands, or the webzilla.com website that lists domestic operations in Illinois, Texas, New York, Virginia and California – but not Florida.  Bolger Decl., Exs. 4-7, 10.  And, indeed, starting the day after the Article was published, Mr. Gubarev gave multiple telephone media interviews from Cyprus in which he complained that "I have a physical office in Dallas.  Nobody contacted me."  *Id*., Exs. 17-21.

**C.**     **This Action**

On February 3, 2017, Plaintiffs commenced this action in the Circuit Court of Broward County asserting one cause of action for "defamation and defamation per se."  Compl. at 9-12.  Defendants timely removed this action to this Court on February 28, 2017.  Bolger Decl., Ex. 2.

**ARGUMENT**

This Court does not have personal jurisdiction over the Defendants and should, therefore, dismiss the complaint in its entirety.  On the most fundamental level, this action has no meaningful connection to Florida.  Defendants' only "connection" to this state relating to this lawsuit is that Buzzfeed.com is accessible in Florida to the same degree as it is everywhere else in the world.  And while less relevant to the jurisdictional analysis, there appears to be little, if any, meaningful connection between any Plaintiff and Florida.

Over the past decade, numerous federal courts, including in this Circuit, have articulated the requisite criteria for exercising personal jurisdiction over a defendant website alleged to have published tortious statements on the internet.  This case falls well short of meeting them.  In fact, there are fewer contacts here than in many other internet-related cases that have been dismissed for lack of personal jurisdiction.

In the alternative, in light of the fact that Florida has little to no connection to this litigation, this Court should transfer this matter pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York, which has far more of a relationship to this case.  That would allow the

case to be adjudicated where the events giving rise to Plaintiffs' cause of action occurred, in a court applying its own law, and in a forum close to Defendants, the non-party witnesses, the relevant documents, and even closer to Plaintiff's lead counsel.  Trying this case in Florida, hundreds or thousands of miles away from all parties and non-party witnesses, is neither convenient nor in the interests of efficiency and justice.

**I.      THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS**

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009).  When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citation omitted).  In deciding a motion to dismiss for lack of personal jurisdiction this Court must (1) first determine whether there is a statutory basis for exercising personal jurisdiction under the Florida long-arm statute, Fla. Stat. § 48.193, and (2) then decide whether exercising jurisdiction comports with due process.  *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

**A.      The Long-Arm Statute May Prelude Jurisdiction Here**

As to the first prong, Plaintiffs allege that there is long arm jurisdiction pursuant to Section 48.193 because "Defendants have caused injury to persons or property within the State of Florida".  This provision of the Florida statute is unusually broad.  *See Piscatelli v. Nationstar Mortg., LLC*, 2013 WL 7137480, at *5 (S.D. Fla. Dec. 3, 2013), *recommendation adopted*, 2014 WL 406520 (S.D. Fla. Jan. 15, 2014).  Even so, this case's connection to Florida is so attenuated that it presents an open question as to whether Florida courts would assert long-arm jurisdiction here.  In  *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010), the Florida Supreme Court held that the statute authorized long-arm jurisdiction where an out-of-state defendant published allegedly defamatory material on its website about "a company with its *principal place of business in Florida*."  *Id.* at 1203, 1214-15 (emphasis added).  Other cases since *Internet Solutions* involving allegedly tortious activity on an out-of-state website have likewise involved plaintiffs with physical presences in the State.  *See, e.g., Louis Vuitton*, 736 F.3d at 1343, 1355-58.

5

In this case, no Plaintiff has a principal place of business, or apparently even a physical presence, in Florida. Two of the three Plaintiffs (Gubarev and XBT) appear to have no presence in Florida, Bolger Decl. ¶ 10 & Exs. 17-21, and the third (Webzilla) appears to exist largely on paper. Petrescu Decl. ¶¶ 3-5 & Exs. 5-6. And there appear to be many entities named Webzilla elsewhere, so it is not even clear that the "Webzilla" Plaintiff here is the Webzilla referenced in the Dossier. Bolger Decl., Exs. 4-7, 10. As for Defendants, their only connection to Florida is publishing the Article and the Dossier on a website accessible anywhere in the world. If the long-arm statute were to apply here, it would essentially mean that anyone could file a lawsuit in Florida anytime someone anywhere in the world published something on the internet to which they objected. Such a result would be inconsistent with most other states around the country that have been reluctant to permit long-arm jurisdiction to reach that broadly.[3] Defendants, therefore, respectfully submit that the Florida Supreme Court would not conclude there was long-arm jurisdiction here.

## B.   Exercising Jurisdiction Over Defendants Offends Due Process

But even if there were jurisdiction under Florida's long-arm statute, the exercise of personal jurisdiction here would be inconsistent with constitutional due process. In *Internet Solutions* the Florida Supreme Court emphasized that this second, constitutional prong of the jurisdictional test is "more restrictive" than the state's long-arm statute. *See* 39 So. 3d at 1216. In fact, after *Internet Solutions* was remanded back to the federal courts (from which the state-law question had been certified), the Middle District granted the defendants' motion to dismiss on the grounds that the more restrictive constitutional test was not satisfied. 2010 U.S. Dist. LEXIS 145503, at *18-20 (M.D. Fla. Sept. 30, 2010). Similarly, many other courts have found that even where the Florida long-arm statute is satisfied, the due process requirement was not. *See, e.g., Madara v. Hall,* 916 F.2d 1510, 1515-19 (11th Cir.1990); *Duncanson v. Wine & Canvas Dev., LLC*, 2015 WL 12844947, at *2-6 (M.D. Fla. Sept. 25, 2015).

---

[3] *See Tommy Bahama Grp., Inc. v. Eagle*, 2010 WL 3340538, at *6 (M.D. Fla. Aug. 23, 2010) (in online trademark infringement case, questioning whether Florida long-arm statute applies where "Plaintiff is not a Florida corporation, nor is Florida its principal place of business"); *see also, e.g., Realuyo v. Villa Abrille*, 2003 WL 21537754, at *7 (S.D.N.Y. July 8, 2003) (no jurisdiction under New York's long-arm statute in internet libel case brought by non-domiciliary), *aff'd*, 93 F. App'x 297 (2d Cir. 2004); *Kline v. Williams*, 2006 WL 758459, at *4 (D.D.C. Mar. 23, 2006) (D.C. long-arm statute); *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 205 n.5 (1st Cir. 1994) (under Massachusetts long-arm statute, "[i]ntuitively, it would seem hard to characterize the act of publishing an allegedly defamatory remark outside the forum state as an act within the forum state.").

In making the due process analysis, the Court must determine whether the due process clause permits general or specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014). Here, the exercise of either would be inappropriate.

1.      There is No General Jurisdiction Over Defendants

First, general jurisdiction exists where a defendant's contacts with a state are "so 'continuous and systematic' as to render [them] at home in the forum state." *See, e.g., id.* at 761 (citation omitted). For an individual, general jurisdiction exists in the place that they are domiciled, and for a corporation, "the place of incorporation and principal place of business are 'paradig[m]…bases for general jurisdiction.'" *Id.* at 760 (citations omitted). If those criteria are not present, a court may only exercise general jurisdiction over a corporation in an "exceptional case," *id.* at 761 n.19, where "the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015). General jurisdiction is therefore not justified by a foreign corporation's operation of a website accessible everywhere, including in Florida. *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010).

Here, neither BuzzFeed nor Mr. Smith are "at home" in Florida. BuzzFeed is incorporated in Delaware and has its headquarters in New York, and Mr. Smith is domiciled in New York. Cysner Decl. ¶ 3; Smith Decl. ¶ 2. And this is not an "exceptional case" where a defendant could be subject to general jurisdiction in a foreign state. Mr. Smith, who lives and works in New York, has no connection to Florida. Smith Decl. ¶¶ 2-3. And BuzzFeed has no employees in Florida and does not own any property in the state. Cysner Decl. ¶ 5. The due process clause, therefore, precludes the assertion of general jurisdiction here.

2.      There is No Specific Jurisdiction Over Defendants

Similarly, this Court lacks specific personal jurisdiction over Defendants. To evaluate specific jurisdiction, this Court applies a three-part due process test, which examines:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations

omitted).  Plaintiffs bear the burden of establishing each of the first two prongs; if they do, then the burden shifts to Defendants to establish the third.  *Id.*

Notably, the most recent United States Supreme Court decision on the question of specific jurisdiction over intentional tort claims emphasized that the analysis must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," meaning that "the plaintiff cannot be the only link between the defendant and the forum.  Rather it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014); *see also Duncanson*, 2015 WL 12844947, at *5 (emphasizing that *Walden* instructed courts to focus on defendant's contacts with the forum state).

a)      Purposeful Availment

To demonstrate that a defendant in an intentional tort case like this one has purposefully availed itself of a forum, the plaintiff must either satisfy  the "effects test" articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), or demonstrate that the defendant has the traditional minimum contacts with the forum.  *Louis Vuitton*, 736 F.3d at 1356-57.  Plaintiffs can do neither.

1.      Plaintiffs Cannot Satisfy the *Calder* Effects Test

The effects test, first articulated in *Calder*, looks to the effects of alleged tortious conduct within the forum.  It provides that specific personal jurisdiction comports with due process where the defendants' conduct "(1) was intentional; (2) was *aimed* at the forum state; and (3) caused harm that the defendant *should have anticipated* would be suffered in the forum state."  *Louis Vuitton*, 736 F.3d at 1356 (emphasis added) (internal marks and citations omitted).

In *Calder*, the Supreme Court addressed an allegedly defamatory story published in the *National Enquirer* in which "California [was] the focal point both of the story and of the harm suffered."  *Calder*, 465 U.S. at 788-89.  It found that the story was solely about "the California activities of a California resident", the actress Shirley Jones, and noted that the report "impugned the professionalism of an entertainer whose television career was centered in California"; that the article "was drawn from California sources"; and that "the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."  *Id.*  Because it was clear that the defendant journalists knew that "the brunt of that injury would be felt by respondent in the State in which she lives and works", the Court

8

determined that the exercise of jurisdiction over the defendants did not offend due process. *Id*. at 789-90.

Even before addressing how federal courts have applied *Calder* to the context of the internet, on its face the case provides a virtual roadmap as to why specific jurisdiction is clearly lacking here. The "focal point" of the Article and the Dossier is alleged connections between then-candidate Trump and Russia, not the state of Florida – a topic that is of equal interest to readers throughout each of the United States, if not around the world. The Dossier never mentions Florida, let alone purports to be about "the [Florida] activities of a [Florida] resident", and no newsgathering was conducted in or into Florida.

Rather, in this case the only arguable connection between *Defendants* and Florida is the mere fact that they published a story on an international website that was accessible in Florida, as it was anywhere. But courts throughout the country addressing internet defamation cases have concluded that mere publication and accessibility are insufficient to constitute the "aiming" required by *Calder*. For example, in *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), Buck Revell, a resident of Texas, sued the *Columbia Journalism Review* and its writers for defamation arising out of the publication of an on-line article that accused Revel of engaging a conspiracy while a member of the Reagan administration related to the terrorist bombing of Pan Am Flight 103. The Fifth Circuit held that the *Calder* effects test was not satisfied because, even though (unlike here) the Defendants knew Revell was located in Texas, the article at issue

> contains no reference to Texas, nor does it refer to the Texas activities of Revell, and…was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder,* in which the article contained descriptions of the California activities of the plaintiff, drew upon California sources, and found its largest audience in California.

*Id.* at 473. This lack of targeting at Texas was an "insurmountable hurdle[] to the exercise of personal jurisdiction by Texas courts." *Id.* Notably, the Fifth Circuit reached this result even though the article at issue was about a single individual whom the Defendants knew resided in Texas, and therefore "must have known that the harm of the article would hit home wherever Revell resided. But that is the case with virtually any defamation. A more direct aim is required than we have here. In short, this was not about Texas. If the article had a geographic focus it was Washington, D.C." *Id.* at 476.

The *Revell* analysis has been widely accepted. *See Young v. New Haven Advocate*, 315

9

F.3d 256, 258-59 (4th Cir. 2002) (no personal jurisdiction in Western District of Virginia for defamation claim about Virginia resident); *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005) (no jurisdiction in Ohio because "while the 'content' of the publication was about an Ohio resident, it did not concern that resident's Ohio activities," nor did the website specifically target Ohio readers); *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (no jurisdiction because "[t]here is no evidence that the…website specifically targets Missouri, or that the content of [defendant's] alleged postings specifically targeted Missouri."); *Shrader v. Biddinger*, 633 F.3d 1235, 1245-46 (10th Cir. 2011) (no jurisdiction because internet posting's content and forum were "geographically-neutral," and "every indication" suggested that defendant "targeted the post at a nation-wide or world-wide audience."); *Johnson v. Gawker Media, LLC*, 2016 WL 193390, at *9 (E.D. Mo. Jan. 15, 2016) (no jurisdiction over defamation claim against New York-based online news site because "[t]here is nothing in the record to indicate Gawker Media targeted its website, or the individual defendants their articles, toward the State of Missouri as opposed to the United States or the world as a whole.").  And, notably, unlike here, jurisdiction was lacking in the above cases even though most of them were filed by plaintiffs who were clearly, and entirely, residents of the forum state.  The connection of these Defendants to any suit by Plaintiffs in Florida is far more attenuated.

Courts in this Circuit have adopted the same approach to internet defamation cases.  In *Internet Solutions*, for example, the Middle District of Florida held that due process barred a Florida court from asserting jurisdiction over a Washington resident who allegedly defamed the plaintiff corporation, whose  principal place of business was in Florida.  The court adopted *Revell*'s requirement that the forum state must be the "focal point of the article or harm suffered." 2010 U.S. Dist. LEXIS 145503, at *13-14.  It noted that, because "residents of any state are equally capable of utilizing [the plaintiff's] recruiting services through the Internet . . . an alleged defamatory article about [it] hypothetically would target a national audience." *Id.* at *15-16.  Holding that contacts that "merely link with equal strength the defendant to all states" did not satisfy due process, the court concluded that "[p]urposeful direction under *Calder*, as interpreted by the Fifth Circuit [in *Revell*], has not been established."  *Id.* at *16-17.

Similarly, in  *Bioheart, Inc. v. Peschong*, 2013 WL 1729278, at *4 (S.D. Fla. Apr. 22, 2013), this Court declined to exercise jurisdiction over a plaintiff who made alleged defamatory statements about the Plaintiff, a Florida based corporation online, because "there is no evidence

that [the message board] particularly facilitated interactions with or otherwise targeted a Florida audience." Ultimately, the court concluded, "simply posting information about a company on a website that is visible throughout the world, and not directed at or used to contact a particular forum," does not create jurisdiction in Florida. *Id.*[4] Here, this action's connection to Florida is even more attenuated than *Revell*'s was to Texas or *Bioheart*'s was to Florida. In short, the Dossier is not about Florida and it would offend due process to exercise jurisdiction here.

For the same reasons, Plaintiffs also cannot demonstrate that Defendants anticipated that Plaintiffs could be harmed in Florida, which is the final prong of the effects test. *Calder* provides that personal jurisdiction is only appropriate where defendants "*knew* that the brunt of th[e] injury would be felt by [the plaintiff in the forum state]." 465 U.S. at 789-90; *see also Louis Vuitton*, 736 F.3d at 1356 (effects test requires that tort "caused harm that the defendant should have anticipated would be suffered in the forum state." (citation omitted)); *Crawford,* 2017 WL 36400, at *3 (effects test not satisfied where defendants did not "have any reason to believe that any harm, far less the 'brunt of the harm,' would be felt" in the forum state (citation omitted)); *Lovingood*, 2015 WL 5719169, at *8 (no jurisdiction where "BBC had no reason to know that any of the persons depicted in the film live or work in Alabama.").[5]

Here, the evidence is clear that neither Defendant knew that Plaintiffs would suffer the brunt of the harm in Florida. Bensinger Decl. ¶ 6; Schoofs Decl. ¶ 5; Elder Decl. ¶ 5; Smith

---

[4] *See also Rhodes v. Unisys Corp.*, 170 F. App'x 681, 684 (11th Cir. 2006) (holding that email sent into Alabama could not establish that state's jurisdiction over fraud case under effects test because the email "was not focused on causing injury in Alabama."); *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010) (adopting *Revell* and dismissing on jurisdiction grounds because "there is no record evidence showing that the website at issue targeted Florida or that Defendants acted to aim their conduct at a Florida audience."); *Crawford v. Harvard Publ'g Co.*, 2017 WL 36400, at *3 (N.D. Ga. Jan. 4, 2017) (effects test not met where allegedly defamatory business case study was not targeted at Georgia), *appeal filed*, No. 17-10439 (11th Cir. Jan. 27, 2017); *Lovingood v. Discovery Commc'ns, Inc.*, 2015 WL 5719169, at *8 (N.D. Ala. Sept. 30, 2015) (effects test not satisfied where "Alabama was in no sense a focal point of BBC's part in writing the script for and producing the [allegedly defamatory] film. The film depicts activities that occurred almost entirely outside of Alabama, including the statements in controversy.").

[5] The facts in *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), in which the Eleventh Circuit held that a Florida federal court had personal jurisdiction over a trademark case about a website that falsely claimed the plaintiff's endorsement, likewise starkly illustrate why personal jurisdiction is lacking here. The defendant in *Licciardello* had known the plaintiff for years, *id.* at 1282, which allowed the court to infer that his website "was calculated to cause injury to [the plaintiff] in Florida." *Id.* at 1288. In addition, the content of the website at issue in *Licciardello* was focused on Florida – it falsely alleged that a Florida resident had endorsed the plaintiff. Nothing remotely similar is presented by the record here.

Decl. ¶ 5.  Indeed, here it would seem to belie common sense to suggest that Plaintiffs actually did suffer the brunt of the alleged harm in Florida – given that the only connection any of them have to Florida is that Webzilla is incorporated here.  Even as to Webzilla, the mere fact that it is incorporated in Florida does not mean that it suffered harm, let alone the "brunt of the harm", here.[6]  In any event, Defendants did not and could not reasonably have anticipated that the brunt of the harm occasioned by the publication of the Dossier would be to these Plaintiffs in Florida.  Bensinger Decl. ¶ 6; Schoofs Decl. ¶ 5; Elder Decl. ¶ 5; Smith Decl. ¶ 5.  Indeed, Mr. Gubarev himself said that any reporters who might want to contact him should have called Dallas – not Florida.  Bolger Decl., Ex. 17.  Accordingly, Plaintiff is unable to satisfy the *Calder* effects test.

> i.   Plaintiffs Cannot Establish Jurisdiction Under Traditional Minimum Contacts Analysis

Plaintiffs also cannot establish purposeful availment under the "traditional minimum contacts test."  *See Louis Vuitton*, 736 F.3d at 1356.  This test requires the court to ask whether the defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum."  *Id*. at 1357.  Due process "requires that a defendant be haled into court in a forum state based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Walden*, 134 S. Ct. at 1123 (citation omitted).  Where, as in this case, there are multiple defendants, "[e]ach defendant's contacts with the forum State must be assessed individually."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

First, as to Mr. Smith, he quite simply has no contacts whatsoever with Florida that relate to Plaintiffs' cause of action.  He conducted no newsgathering or interviews in Florida in connection with the Article or Dossier, had no knowledge that the Plaintiffs had any connection

---

[6] *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993) ("the harm from an allegedly libelous statement is not necessarily suffered in the place of incorporation."); *see also Licciardello*, 544 F.3d at 1286 n.7 (corporation's injury is not necessarily located in a particular geographic location (citing *Conseco, Inc. v. Hickerson*, 698 N.E.2d 816, 819 (Ind. Ct. App. 1998))); *Hy Cite Corp. v. Bardbusinessbureau.com, L.L.C.*, 297 F. Supp. 2d 1154, 1166-67 (W.D. Wisc. 2004) ("*Calder* still requires that the harm be particularized to the forum state.  Even if a corporation has its principal place of business in the forum state, it does not follow necessarily that it makes more sales in that state than any other or that harm to its reputation will be felt more strongly in that state." (citations omitted)).

with Florida, and was in New York City when he edited the Article and made the decision to publish it and the Dossier.  Smith Decl. ¶¶ 3-4.  Quite literally, the only actual connection between Mr. Smith and the state of Florida was that one of the three writers who has a byline on the story, Mr. Bensinger, happened to be on vacation at Walt Disney World on January 10, and they spoke on the telephone.  *Id.* ¶ 3; Bensinger Decl. ¶ 4.  It would be difficult to come up with a better example of the sort of  "random" or "fortuitous" connection that the Supreme Court has recognized does not establish purposeful availment than Mr. Bensinger's family vacation.  *See Walden*, 134 S. Ct. at 1123; *Lovingood*, 2015 WL 5719169, at *8 (defendant's two telephone calls into forum state while researching allegedly defamatory film insufficient to justify jurisdiction under traditional minimum contacts test).  It is certainly not a basis for Mr. Smith to "reasonably anticipate being haled into court" in Florida.  Mr. Smith, therefore, lacks sufficient contacts to establish jurisdiction here.

So too does BuzzFeed.  BuzzFeed has no offices or employees in Florida, and its publication of the Article and the Dossier did not involve activity that specifically targeted Florida in any way.  Cysner Decl. ¶¶ 3-7.  The only contact BuzzFeed has with Florida is the maintenance of a website that is available everywhere in the world.  As a matter of law, "simply posting information about a company on a website that is visible throughout the world, and not directed at or used to contact a particular forum, does not create minimum contacts with a forum."  *Bioheart*, 2013 WL 1729278, at *4.  Indeed, the Eleventh Circuit has rejected the idea that even the "mere operation of an interactive website alone gives rise to purposeful availment *anywhere* the website can be accessed," *Louis Vuitton*, 736 F.3d at 1357-58 (emphasis in original).   To the contrary, "[t]he overwhelming weight of authority holds that merely operating a website – even if it is a popular website that makes money from advertising…does not constitute 'purposeful availment'" under the traditional minimum contacts test.  *Trump v. Tarpley*, No. 424492-V, slip. op. at 7 (Md. Cir. Ct. Feb. 1, 2017) (attached as Ex. 22 to the Bolger Decl.).

Neither BuzzFeed nor Mr. Smith purposefully availed themselves of the privilege of doing business in Florida.  This Court, therefore, lacks specific jurisdiction over them.

        b)    <u>Asserting Jurisdiction Over Defendants in Florida Would Offend Fair Play and Substantial Justice</u>

Finally, even if the Court could find purposeful availment on the part of one or both Defendants, it should nonetheless dismiss the case because asserting jurisdiction would "offend[]

traditional conceptions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 476 (1985) (internal marks and citation omitted). At this stage of the jurisdiction inquiry, courts look to

> the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental social policies.

*Id.* at 477 (internal marks and citations omitted). *See, e.g., Bioheart*, 2013 WL 1729278, at *5 ("Even if Bioheart established that Peschong had minimum contacts with Florida, the exercise of jurisdiction over him would not comport with traditional notions of fair play and substantial justice."); *see also Internet Sols.*, 2010 U.S. Dist. LEXIS 145503, at *18-19; *Vision Media*, 724 F. Supp. 2d at 1266-67.

In this case, Plaintiffs have no business operations in Florida and no meaningful connections to the State. Florida accordingly has no real interest in adjudicating the dispute. It is highly unlikely that Florida law even applies here, and Plaintiffs – who are spread around the world – cannot plausibly claim that litigating this case in Florida would be more convenient for them. In fact, as discussed below, litigating this case here would actually be far less convenient and efficient for both the parties and the non-party witnesses. Jurisdiction here, then, would simply be unreasonable – Plaintiffs may not just pick a forum far away from where they live and do business and force Defendants to meet them there, more than a thousand miles away from where the events giving rise to this litigation took place.

This Court should, therefore, grant Defendants' motion to dismiss for lack of personal jurisdiction.

## II.     ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

If not dismissed, this Court should exercise its discretion to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). In deciding a § 1404(a) transfer motion, a court must first determine whether the action could have been brought in the district to which the transfer is sought. *See, e.g., Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013). If venue is proper in the transferee district, the court must "assess whether convenience and the interest of justice require transfer to the requested forum." *Id.* The

Eleventh Circuit has identified nine relevant considerations at this stage:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) [the] forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*See Manuel v. Covergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

As an initial matter, venue would be proper in the Southern District of New York. The relevant provision permits a civil action to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). BuzzFeed is headquartered in the Southern District of New York, and Mr. Smith is also a resident of New York. *See* 28 U.S.C. § 1391(c)(1)-(2), (d); Cysner Decl. ¶ 3; Smith Decl. ¶ 2. The requirements of 28 U.S.C. § 1391(b)(1) are therefore satisfied.

In addition, convenience and the interests of justice strongly favor transfer. Seven of the nine factors identified by the Eleventh Circuit clearly favor transfer and the remaining two factors are neutral. *First*, this Court has held that "[t]he convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted." *Gonzalez v. Pirelli Tire, LLC*, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (citation omitted); *Loveland ex rel. Loveland v. State Farm Fire & Cas. Co.*, 2013 WL 1836450, at *2 (S.D. Fla. May 1, 2013). For purposes of this analysis "the key witnesses are those which have information regarding the liability of Defendant. Damage witnesses are accorded less weight due to the fact that that without liability, there are no damages to recover." *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004) (transferring defamation case to defendant's home district (citations omitted)); *accord Eakin v. Rosen*, 2015 WL 8757062, at *7 (S.D. Ga. Dec. 11, 2015).

Here, BuzzFeed's headquarters is located in the Southern District of New York, and three of the four persons most involved in the publication of the Article reside in that area (while Bensinger lives in California). Cysner Decl. ¶ 3; Smith Decl. ¶ 2; Elder Decl. ¶ 1; Schoofs Decl. ¶ 1; Bensinger Decl. ¶ 1. Those individuals will testify about the central issues in this case – including the decision to publish the Dossier and write the Article. Bolger Decl. ¶ 26. None of BuzzFeed's expected party witnesses reside in the Southern District of Florida, or anywhere near

15

there.  *Id.*  In addition, potential witnesses on both sides live in or near the Southern District of New York, and others likely reside in or around Washington, D.C., *id*. ¶ 28, which is far closer to New York than Florida.

In addition, Plaintiffs will not be inconvenienced by a transfer to the Southern District of New York because none of them are physically located in Florida.  *See Pferdmenges v. Bindra*, 2012 WL 12867831, at *4 (S.D. Fla. Nov. 20, 2012) (convenience of parties favored transfer where only one of two plaintiffs was Florida resident); *Ramsey*, 323 F. Supp. 2d at 1356 (transferring defamation case where "[t]he Plaintiffs' relative lack of a connection to Georgia is significantly outweighed by the Defendants' connections to Colorado in presence, witnesses, and proof with respect to this case.").  Mr. Gubarev lives in Cyprus, Compl. ¶ 6, and says he has an office in Dallas.  Bolger Decl., Exs. 17-18.  And, while neither XBT nor Webzilla has a physical presence in Florida, the two companies do claim to operate physical facilities in New York City. *See id*. Exs. 10 & 13; *Comaford v. Wired USA, Ltd.*, 1995 WL 324564, at *5 (N.D. Ill. May 26, 1995) (transferring defamation case to Northern District of California where corporate plaintiff did business in forum state but "continue[d] to maintain an office in California where the majority of the defendants reside.").  This factor accordingly strongly favors transfer.

*Second*, "[c]ourts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court."  *Pferdmenges*, 2012 WL 12867831, at *5 (citation omitted); *see also Ramsey*, 323 F. Supp. 2d at 1357 ("the ability to use compulsory process to obtain live testimony of key witnesses, as well as the cost and convenience of producing them for trial, is a distinct advantage.").

Here, this factor favors transfer to the Southern District of New York.  Many potential witnesses on both sides – including not only third parties, but individual BuzzFeed employees who are not managing agents that could be subpoenaed here – reside in or near that jurisdiction.  Bolger Decl. ¶¶ 26-27.

*Third*, the choice of law factor favors transfer because New York law very likely applies to this case.  There is an "advantage to 'having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself.'"  *Pferdmenges*, 2012 WL 12867831, at *5 (citation omitted).  A federal court sitting in diversity applies the choice-of-law principles of the state in which it sits.  *See, e.g., Michel v. NYP Holdings, Inc.*, 816 F.3d 686,

694 (11th Cir. 2016).  In defamation cases, Florida courts apply the "most significant relationship" test, which considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id.* (citations omitted).  Courts also consider the relevant policy interests of the different states.  *See Michel v. NYP Holdings, Inc.*, 2015 WL 1285309, at *3 (S.D. Fla. Mar. 4, 2015) ("[T]he Court notes that applicability of New York defamation law to a New York publication encourages 'certainty, predictability and uniformity of result' and 'ease in the determination and application of the law to be applied'" (citations omitted)), *aff'd in part*, 816 F.3d 686.

Here, this choice of law analysis favors the application of New York law.  In fact, in the recent case of *Michel v. NYP Holdings, Inc.*, the Eleventh Circuit applied New York law in a defamation action factually similar to this one.  *Michel* involved a lawsuit brought by a Florida resident, against the *New York Post*.  In determining that New York law applied, the Court held that the application of New York law was "plainly appropriate" because, among other things:

> it is beyond real dispute that New York has the most significant relationship to the case. The article was published in New York, regarding an event that took place in New York, and that allegedly caused harm to Michel's business interests in New York. Both the *New York Post* and the reporter defendants are domiciled in New York. While Michel is domiciled in Florida, that consideration is of little relative importance.

*Michel*, 816 F.3d at 694; *see also Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL 1408391, at *11 (M.D. Fla. Apr. 6, 2010) (applying Florida law to California domiciliary's defamation claim against Florida resident), *aff'd*, 451 F. App'x 862 (11th Cir. 2012) (per curiam).  Here, as in *Michel*, the article was published in New York, BuzzFeed and Smith are domiciled in New York, the article's subject-matter largely involves people domiciled in New York at the time (including President Trump and his aides), and the fact that one Plaintiff is incorporated in Florida is of little importance.  As in *Michel*, New York law therefore applies.

*Michel* is consistent with a body of case law concluding that in defamation cases involving multiple plaintiffs and/or widely dispersed damages, the location of any single plaintiff should be afforded little deference in determining choice of law.  *See Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016) ("Because the film was distributed nationwide . . . , 'the place of injury will *not* play an important role in the selection of the state of applicable law.'" (emphasis

17

Case 0:17-cv-60426-UU   Document 15   Entered on FLSD Docket 03/14/2017   Page 19 of 22

in original) (citations omitted)); *Adelson v. Harris*, 973 F. Supp. 2d 467, 480 (S.D.N.Y. 2013) (noting that fact that plaintiffs in *Davis* were from different jurisdictions "diluted each plaintiff's interest in applying the law of their respective home states."), *certifying question*, 774 F.3d 803 (2d Cir. 2014).  In *Davis v. Costa-Gavras*, 580 F. Supp. 1082 (S.D.N.Y. 1984), for example, the Southern District of New York held that New York law applied to a libel claim brought by three plaintiffs from different states against publishers based in New York over a book that described their activities outside of the United States.  The court noted that the plaintiffs' interest in applying the law of their domiciles was weakened by the fact that the plaintiffs were from different jurisdictions and "the alleged damage to their reputation is diffused over fifty states and several foreign nations."  As a result, the court held, the law of "the state where defendants' significant acts and omissions" occurred was most appropriate.  *Id.* at 1093.  The court, therefore, concluded that New York law applied.

Here, as in *Davis*, the significant factors all point to applying the law of New York: the domicile of both Defendants, the place where the Article was written, edited, and uploaded to the Internet, and the body of law Defendants relied on when preparing the Article.  Indeed, the lead Plaintiff is not a resident of any state.  This factor accordingly favors transfer.

*Fourth*, the fact that this case arises entirely from actions taken by Defendants in New York City makes New York the locus of operative facts, another "important factor" in favor of transfer.  *See Ramsey*, 323 F. Supp. 2d at 1358; *Comaford*, 1995 WL 324564, at *4-5 (plaintiffs' home state "bears no relation to the events giving rise to the cause of action" even though national magazine was distributed there).  BuzzFeed made the decision to publish the Dossier from its headquarters in New York, and the Article was written, edited, and uploaded from there.  Smith Decl. ¶¶ 3-4.  And although the events described in the Dossier and the Article took place around the world, they too have a clear nexus to New York – the headquarters of the Trump presidential campaign.  In contrast, nothing described in the Dossier took place in Florida.  In fact, as a matter of discretion transfer to New York would also be advisable because New York, and perhaps Washington, D.C., are the only jurisdictions that are arguably the "focal point" of the Dossier and therefore the only ones in which personal jurisdiction over the Defendants would clearly be proper.  This is, accordingly, another significant factor in favor of transfer.

*Fifth*, almost all relevant documentary evidence is located in New York and none of it is located in Florida.  Although the ability to transmit documents electronically has diminished the

18

importance of this factor, courts have often held that it remains a relevant consideration. *See, e.g., Eakin*, 2015 WL 8757062, at *9; *Suomen Colorize Oy v. Dish Network L.L.C.*, 801 F. Supp. 2d 1334, 1339 (M.D. Fla. 2011); *Price v. Stossel*, 2008 WL 2434137, at *5 (S.D.N.Y. June 4, 2008); *see also Ramsey*, 323 F. Supp. 2d at 1357 (transferring defamation case to venue where defendants were based because evidence was located there). Here, many of the documents used by Defendants in preparing the Article and publishing the Dossier are located at BuzzFeed's headquarters in New York. Bolger Decl. ¶ 29. None are in Florida. *Id.* Moreover, to the extent there may be relevant documents possessed by third parties, they too are far more likely to be in New York than in Florida. This factor also favors transferring the action to New York.

*Sixth*, for all of these reasons, trial efficiency and the interests of justice also favor transferring this case to New York. *Pfermenges*, 2012 WL 12867831, at *5. A trial in Miami would take place hundreds of miles (or more) from *all* parties, the non-party witnesses, the most significant documents, and the place where the events at issue occurred. The Southern District of New York, however, is closer to both Defendants (and no less convenient for any Plaintiff), many witnesses, and the place of the underlying events.

*Seventh*, the weight usually afforded Plaintiffs' choice of forum is diminished here for two reasons. To begin with, "where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and is in fact given reduced significance." *Osgood*, 981 F. Supp. 2d at 1266-67 (quoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 987 (E.D.N.Y. 1991)); *accord Gonzalez*, 2008 WL 516847, at *2. Here, as noted above, the operative facts have no material connection to Florida.

A plaintiff's choice of forum is also entitled to "minimal deference" where it is not the plaintiff's "home forum." *Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007); *accord Culp v. Gainsco, Inc.*, 2004 WL 2300426, at *7 (S.D. Fla. Oct. 1, 2004). That is the case even if a corporate plaintiff is incorporated in the forum state; its choice of forum is entitled to little deference if it has no meaningful operations there. *Game Controller Tech. LLC v. Sony Computer Entm't Am. LLC*, 994 F. Supp. 2d 1268, 1276 (S.D. Fla. 2014). And, in cases with multiple plaintiffs, the plaintiffs' choice of forum is entitled to even less deference. *See A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1310 (N.D. Ala. 2003) ("When there are numerous plaintiffs who could with equal show of right go into their many

home courts to bring suit against the Defendants, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." (internal marks and citations omitted)).  Here, of course, Gubarev is a longtime resident of Cyprus, and Webzilla and XBT appear to have no physical presence in this State.  Compl. ¶ 6; Petrescu Decl. ¶¶ 6-7; Bolger Decl. ¶ 10.  Even their lead counsel is in Boston, which is far closer to New York than to Miami.  Accordingly, very little weight should be placed on the Plaintiffs' choice of forum and this factor, accordingly, should not weigh against transfer.

*Finally,* the last factor, the relative means of the parties, is neutral.  While BuzzFeed is a successful corporation, Plaintiffs' counsel has publicly represented that the corporate Plaintiffs have a combined value of approximately $250 million.  Bolger Decl. ¶ 25.  They can thus clearly afford to litigate this case in the Southern District of New York.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion to dismiss be granted, or, alternatively, that this action be transferred to the Southern District of New York.

Dated: March 14, 2017

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
(305) 403-8791
By:    /s/ Lawrence A. Kellogg
        Lawrence A. Kellogg
                and

Katherine M. Bolger
(admitted *pro hac vice*)
Nathan Siegel
(admitted *pro hac vice*)
Adam Lazier
(admitted *pro hac vice*)
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100

*Counsel for Defendants*

20

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 14, 2017, the foregoing was filed with the Court's CM/ECF Service, and provided by email to counsel of record:

Brady J. Cobb, Esquire
Dylan M. Fulop, Esquire
COBB EDDY, PLLC
Local Counsel for Plaintiffs
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: (954) 527-4111
Facsimile: (954) 900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com


Valentin D. Gurvits, Esquire
BOSTON LAW GROUP, PC
Lead Counsel for Plaintiffs
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Tel: (617) 928-1804
Fax: (617) 928-1802
vgurvits@bostonlawgroup.com