**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.

    Plaintiffs,

  vs.

BUZZFEED, INC. AND BEN SMITH,

    Defendants.
_____/

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER

                              LEVINE SULLIVAN KOCH & SCHULZ, LLP
Katherine M. Bolger
(admitted *pro hac vice*)
Nathan Siegel
(admitted *pro hac vice*)
Adam Lazier
(admitted *pro hac vice*)
321 West 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100

LEVINE KELLOGG LEHMAN SCHNEIDER +
GROSSMAN LLP
Lawrence A. Kellogg
201 South Biscayne Boulevard
22nd Floor
Miami, FL 33131
(305) 403-8791

Counsel for Defendants

**PRELIMINARY STATEMENT**

While we leave it to the Court to judge the propriety of the title to Plaintiffs' Opposition ("Opp."), it is an apt metaphor for what follows.  Like the picture of a kitten, most of Plaintiffs' arguments and evidence have nothing to do with the jurisdictional issue before the Court.  The vast majority of their Opposition argues that BuzzFeed[1] generally transacts business in Florida.  Buzzfeed never claimed otherwise, but that is precisely what the Supreme Court held in *Daimler AG v. Bauman* is no longer relevant to general jurisdiction.

Stripped to its essence, Plaintiffs' argument is that BuzzFeed is subject to specific jurisdiction everywhere because a lot of people read material on its website.  But that proposition has been universally rejected by every federal circuit (including this one) to address the parameters of personal jurisdiction over websites.  Rather, BuzzFeed's general contacts with Florida, as with any other state, could only be relevant if they were part and parcel of an effort to specifically target Florida by publishing the allegedly defamatory statements contained in two sentences of the Dossier.  Not one of the "contacts" the Opposition highlights even purports to have anything to do with those statements.  And the rest of the Opposition makes clear that the connection of Plaintiff "Webzilla, Inc." both to Florida and to this case is so attenuated that even the looser jurisdictional requirements of Florida's long-arm statute are lacking here.

Alternatively, this Court should transfer this case to the Southern District of New York pursuant to 28 U.S.C. 1404(a) on the grounds of *forum non conveniens*.

**ARGUMENT**

**I.     THERE IS NO GENERAL JURISDICTION OVER DEFENDANTS**

Plaintiffs first argue that BuzzFeed does business with people in Florida, pointing to examples such as two visits in 2012 by Mr. Smith, articles about events in Florida, and advertisements that appeared in connection with such articles (but not the Article or the Dossier). *See* Opp. at 6-8.  All of that is of course true, but none of those contacts even purport to have anything to do with the Article or the Dossier.  Rather, Plaintiffs' argument is really that BuzzFeed should be subject to general jurisdiction in Florida because it does business there.  But the "doing business" rationale for general jurisdiction is precisely what the Supreme Court eliminated in *Daimler*.  *See Kinsman v. Fla. State Univ. Bd. of Trustees*, 2015 WL 11110542, at

---

[1] All defined terms herein have the same meaning as in Defendants Motion to Dismiss or Transfer and Incorporated Memorandum of Laws, Dkt. 15 ("Opening Memo" or "Mot.").

*4 (M.D. Fla. Apr. 27, 2015) (*Daimler* "officially sounds the death knell for doing business jurisdiction in the United States." (citation omitted)).  Moreover, the fact that Buzzfeed transacts business nationwide does not make it "at home" in Florida – *Daimler* itself rejected the proposition that Plaintiffs implicitly advance, noting that "[a] corporation that operates in many places can scarcely be deemed at home in all of them."  *Daimler*, 134 S. Ct. at 761 n.19.  Similarly,  Plaintiffs do not dispute that Mr. Smith is domiciled in New York, owns no property in Florida, and has never been employed in this State.  *See* Smith Decl. ¶ 2.  This court, therefore, lacks general jurisdiction over Defendants.

II.     **THERE IS NO SPECIFIC JURISDICTION OVER DEFENDANTS**

    A.     **There Is No Long Arm Jurisdiction**

In our Opening Memo, Defendants tried to fairly recognize that (1) the Florida long-arm statute permits broader jurisdiction than does the federal minimum contacts test; (2) the application of the statute to the precise facts of this case presents an unresolved question, because *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010), only recognized jurisdiction for defamatory statements on the internet that are "*about a company* with its *principal place of business* in Florida," *id.* at 1203, 1214-15 (emphasis added); and (3) the issue presented a close call because there are multiple "Webzillas" around the country, only one of them has any putative connection here, and even that connection is quite attenuated.  Mot. at 5-6.  Ironically, while the Opposition is scornful of these arguments, the evidence it submits, along with other evidence submitted by Plaintiffs elsewhere, tilts the scales far more strongly towards the conclusion that even long-arm jurisdiction is lacking here because *both* key elements present in *Internet Solutions* are missing.

    First, Plaintiffs provide a host of evidence proving the obvious fact that people in Florida clicked on the Article, and 38 of them supposedly commented on it.  Opp. at 8.  But they provide no evidence that any of those people thought the Article had anything to do with Florida, or that the reference to "XBT/Webzilla" in the Dossier was about the Plaintiff Webzilla, Inc. – the only evidence that would be relevant here.  Plaintiffs Gubarev and XBT have filed a companion defamation case in the UK over BuzzFeed's publication of the Dossier, against the Dossier's purported author and his company (the "UK Action").  In that lawsuit, Gubarev and XBT assert that the "Webzilla" in the Dossier refers not to "Webzilla, Inc.", but rather to two European companies: Webzilla B.V., based in the Netherlands, and Webzilla Limited, based in Cyprus,

who are Claimants in that case.[2]

Moreover, Kostyantyn Bezruchenko, who filed a declaration in support of Plaintiffs' Opposition here, emphasized in another recent declaration in another case before this Court that the "Webzilla Ltd." Cyprus-based entity "is not the same as Webzilla, Inc." Bolger Reply Decl., Ex. 17 ¶ 10. It is obvious, then, that Plaintiffs are simply listing as a Plaintiff whatever paper entity within the generic, international "Webzilla" corporate brand they think gives them a putative shot at jurisdiction in their preferred fora. More importantly, and for the purposes of the long-arm test recognized by *Internet Solutions*, Plaintiffs have failed to establish that Defendants ever published anything "about" a Florida company. Their argument fails for that reason alone.

Second, even with respect to "Webzilla, Inc." Plaintiffs do not dispute that its "principal place of business" is in Texas. Nonetheless, they try to make it appear as if it is a normal, functioning company in Florida. They primarily claim that its "Finance Director", Constantin Luchian, lives and works here, and that the company "has always maintained a physical presence in Florida." Opp. at 4. Those assertion are simply false, or at a minimum highly misleading.

In his declaration, Mr. Luchian states that he owns another company, Incorporate Now, Inc. Dkt. 21-12 ("Luchian Decl.") ¶ 22. He also claims that he "oversee[s] billing and accounting for Webzilla and other companies in the XBT family and the sending out of invoices for Webzilla and other companies in the XBT family to their customers from Florida," picks up Webzilla's mail, and is Webzilla's registered DMCA agent with the United States Copyright Office. *Id*. ¶¶ 16, 23, 25. What he does not mention is that the services he claims to provide to Webzilla as its "Financial Director" are very similar to those he offers to any Incorporate Now client starting at $50 per month. Bolger Reply Decl., Ex. 2. Indeed, in another case before this Court, Mr. Luchian (represented by Plaintiffs' lawyers herein) acknowledged in a February 2016 declaration that Incorporate Now offers similar services to "more than 75" *other* clients. *Id*., Ex. 13 ¶¶ 1-5. Consistent with that, the Florida Department of State lists Mr. Luchian or Incorporate

---

[2] *See* Reply Declaration of Katherine M. Bolger executed April 3, 2017 ("Bolger Reply Decl."), Ex. 1 ("UK Complaint") ¶¶ 2, 6, 7, 8.3. Defendants' counsel first received the UK Complaint on March 24, 2017, after this motion had been filed. Bolger Reply Decl. ¶ 3. Counsel then contacted Plaintiffs' counsel and offered to supplement the record before Plaintiffs' Opposition was due to be filed on March 28. *Id.* Plaintiffs' counsel indicated that they would instead prefer, and consent to, Defendants including the UK Complaint in their Reply. *Id.* In return, Defendants' counsel agreed that if Plaintiffs wish to move for leave to file a sur-reply, they would not object provided that any sur-reply is limited to addressing the UK Complaint. *Id.*

Now as the Registered Agent for numerous companies, as well as having served as the "Director" for companies with names like NeoCren Inc. and Linkshop Inc. *Id.*, Exs. 2-6.

In fact, in an effort to distance himself from Webzilla, Inc. in other cases before this Court, Mr. Luchian has gone to great lengths to emphasize his lack of real involvement in that company. In March 2016, he submitted another declaration swearing that "my duties at Webzilla are very limited. They are generally limited to receiving, processing and paying vendor invoices, assisting Webzilla's CPAs and occasionally making small purchases of hardware." *Id.*, Ex. 15 ¶¶ 6-7. In the same case, Plaintiffs' counsel in this case represented that Mr. Luchian had only a "limited" role at Webzilla. *Id.*, Ex. 14 at 3. And, in yet another case, Webzilla's Answer, dated December 16, 2015, averred that "Constantin Luchian is not an executive of Webzilla, Inc." *Id.*, Ex. 16 ¶ 6.

Perhaps most striking is the fact that Plaintiffs here go to great lengths to argue that the map on Webzilla's website highlighting the location of physical servers and networking centers is irrelevant to assessing jurisdiction. But less than a year ago, Mr. Bezruchenko told this Court that even though Webzilla clients might technically have an IP address that appears to come from Florida, that should not subject them to jurisdiction here because in fact Webzilla "ha[s] ***absolutely no servers in Florida.***" *Id.*, Ex. 18 ¶ 15 (emphasis in original).

Finally, Plaintiffs' claim that Webzilla has always maintained a physical presence in Florida is flatly contradicted by their own evidence. According to Mr. Luchian's declaration, Webzilla never had its own office space. It either sublet shared, temporary office space from providers like Regus or used Mr. Luchian's Incorporate Now's offices – as did many of the "more than 75" other companies Mr. Luchian represents and for which he lists the same addresses. *See* Luchian Decl. ¶ 9; Bolger Reply Decl., Exs. 5, 7-11; *see also id.*, Ex. 2 at 2 (Incorporate Now's website advertises "a real office location to use as your mailing address"). Particularly in light of the fact that Webzilla's principal place of business is in Texas, Bolger Decl., Ex. 3, Defendants respectfully submit that the record here falls below the minimum threshold *Internet Solutions* found was sufficient to establish long-arm jurisdiction over foreign defendants who publish allegedly defamatory statements on a foreign website.

**B.**     **Defendants' Alleged Contacts with Florida Do Not Satisfy Due Process**

Even if this Court were to conclude that Plaintiffs barely qualify under the long-arm statute, they clearly fail the more restrictive federal constitutional tests for specific jurisdiction.

4

In assessing whether there is specific jurisdiction, this Court must look to *only* those contacts between BuzzFeed and Florida that "relate" to Plaintiffs' cause of action. *Amerifactors Fin. Grp., LLC v. Enbridge, Inc*, 2013 WL 5954777, at *8 (M.D. Fla. Nov. 7, 2013) (Defendant's "contacts with Florida are relevant to specific jurisdiction minimum contacts analysis only to the extent that those contacts are related to this case."). Thus, if this case had actually arisen out of Buzzfeed's coverage of a Trump rally in Florida, or Mr. Smith's reporting about the 2012 Republican Convention, or any of the other examples Plaintiffs cite, then specific jurisdiction might well be established.

But *none* of the contacts enumerated by Plaintiff relate to the publication of the allegedly defamatory statements here, and so none can establish specific jurisdiction. *See Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 828 (11th Cir. 2012) (website's advertisements for Georgia company did not satisfy relatedness prong of Georgia long-arm statute because "Henriquez's defamation claims arose out of the defendants' publication of defamatory news articles on their websites, not the defendants' placement of advertisements from U.S. companies on their websites."); *Johnson v. Gawker Media, LLC*, 2016 WL 193390, at *8 (E.D. Mo. Jan. 15, 2016) ("[T]he Court rejects the significance of the contacts related to advertising directed to Missouri residents because, as discussed above, the claims here are grounded in tort. Defendants' publication of allegedly defamatory articles concerning the plaintiffs form the basis of plaintiffs' claims, not their actions in displaying ads of interest to Missouri residents."). Buried within the many pages of sarcastic prose, Plaintiffs' argument repeatedly reduces to the proposition that there is only one related contact here and it alone is sufficient – Defendants' publication of the Dossier on Buzzfeed.com, which was read in Florida just as it was everywhere else around the world. Opp. at 8, 12. But the case law (which Plaintiffs largely ignore) is absolutely clear: simply posting an article online is not enough to establish specific jurisdiction, under any of the three tests in *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013).

1. "Arising Out of" or "Relatedness." Plaintiffs' argue that this test is satisfied merely because the Article was "published on a website accessible in – and accessed in – the State of Florida." Opp. at 12. But jurisdiction in *Louis Vuitton* was premised on actual internet sales of goods to Florida residents, not mere accessibility, and another case they cite explicitly noted that the relatedness test requires "more than the facts that [the defendant's] website

5

displays the allegedly infringing mark and is accessible in Florida." *Cross Match Techs., Inc. v. Crossresolve, LLC*, 2016 WL 3216541, at *5 (S.D. Fla. June 10, 2016). Given that Plaintiffs here have also failed to establish the allegedly defamatory statements were even about a Florida corporation, they fail this threshold test.

        2.       <u>The Effects Test.</u>  Plaintiffs claim that the *Calder* effects test is met solely because one of the more than 1500 words in the Dossier supposedly "nam[ed] a Florida corporation, Webzilla." Opp. at 13. As a factual matter, we have already demonstrated there is no evidence that the Article even did name any Florida corporation, and in the UK Action Plaintiffs explicitly allege otherwise. *Supra* at 2-3. Even if that were not so, Plaintiffs never address the extensive body of law cited in Defendants' Opening Memo establishing that an online article is not "aimed" at the forum state merely because it names a forum resident. Rather, the test is whether the forum state is the article's "focal point."[3] Plaintiffs do not address any of these cases, nor do they even attempt to claim that Florida is the "focal point" of the Article or the Dossier. Moreover, it is telling that with respect to the one internet defamation case Plaintiffs do address in any depth, *Internet Solutions Corp. v. Marshall*, they only mention that the Florida Supreme Court found long-arm jurisdiction because the statements at issue were about a Florida company with its principal place of business in Florida. They fail to note that on remand, the federal district court found those contacts were not enough to satisfy the aiming requirement of the effects test. 2010 U.S. Dist. LEXIS 145503, at *16-*18. Here, any putative

---

[3] *See, e.g., Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002); *Internet Sols. Corp. v. Marshall*, 2010 U.S. Dist. LEXIS 145503, at *13-14 (M.D. Fla. Sept. 30, 2010); *Bioheart, Inc. v. Peschong*, 2013 WL 1729278, at *4 (S.D. Fla. 2013) ("[S]imply posting information about a company on a website that is visible throughout the world, and not directed at or used to contact a particular forum, does not create minimum contacts with a forum."); *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010); *Young v. New Haven Advocate*, 315 F.3d 256, 258-59 (4th Cir. 2002) (no personal jurisdiction in Western District of Virginia for defamation claim about Virginia resident); *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005) (no jurisdiction in Ohio because "while the 'content' of the publication was about an Ohio resident, it did not concern that resident's Ohio activities," nor did the website specifically target Ohio readers); *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); *Shrader v. Biddinger*, 633 F.3d 1235, 1245-46 (10th Cir. 2011) (no jurisdiction because internet posting's content and forum were "geographically-neutral," and "every indication" suggested that defendant "targeted the post at a nation-wide or world-wide audience."); *Johnson*, 2016 WL 193390, at *9 (no jurisdiction over defamation claim against New York-based online news site because "[t]here is nothing in the record to indicate Gawker Media targeted its website, or the individual defendants their articles, toward the State of Missouri as opposed to the United States or the world as a whole.").

contacts with Florida are even more attenuated than they were in *Internet Solutions*.[4]

3.   Minimum Contacts.  Finally, Plaintiffs point almost exclusively to *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984) to support their argument that minimum contacts exist between the Defendants and Florida.  Opp. at 14-15.  But there is a critical difference between *Keeton* and the issue of internet jurisdiction, which is why virtually every case to address jurisdiction over foreign websites, including in this Circuit, has looked to *Calder* and general minimum contacts analysis, rather than to *Keeton*, to provide the appropriate framework.  *See, e.g., Licciardello v. Lovelady*, 544 F.3d 1280, 1285-87 (11th Cir. 2007).  Jurisdiction in *Keeton* was based on the sale and physical delivery of thousands of copies of the magazine containing the allegedly infringing article to subscribers in the forum state.  *See Keeton*, 465 U.S. at 774.  Thus, much like the sale into Florida of allegedly counterfeit goods at issue in *Louis Vuitton*, *Keeton* is consistent with a long line of cases recognizing that a merchant who sells and delivers allegedly tortious or infringing goods into the forum state may usually be subject to jurisdiction there.

But *Louis Vuitton* and numerous other cases have found that merely posting allegedly tortious or infringing material on a website is quite different than the sale of physical items to forum residents, and therefore does not give rise to jurisdiction merely because websites are accessible everywhere.  736 F.3d at 1357 ("We are not saying that the mere operation of an interactive website alone gives rise to purposeful availment *anywhere* the website can be accessed") (emphasis in original).  Rather, in applying *Keeton* to a case involving the internet, *Louis Vuitton* found that jurisdiction could be satisfied where analogous facts were present – i.e., "[1] selling and distributing infringing goods through [a] website to Florida consumers – *and* [2] *the cause of action here derives directly from those contacts*." *Id*. at 1358 (emphasis in original).  Courts elsewhere in internet defamation cases have likewise consistently rejected attempts to find jurisdiction based on *Keeton* simply because an article was accessible in the forum state.[5]

---

[4] While less significant, it is nonetheless ironic that Plaintiffs contend that Defendants "could have easily anticipated such harm being felt in Florida" because a Florida address is listed on Webzilla's website.  Opp. at 13.  The Florida address, which appeared among others on the website, pointed to a non-existent office.  Petrescu Decl. ¶¶ 4-7; Luchian Decl. ¶ 10.  And the address listed on the corporation's registration forms is in Dallas – the place that Mr. Gubarev himself directed journalists to.  Bolger Decl., Exs. 3, 17.  In fact, as discussed above, Plaintiffs have provided no evidence that anyone actually suffered any harm in Florida – let alone evidence that Defendants should have anticipated that.

[5] *See Huizenga v. Gwynn*, --- F. Supp. 3d ---, 2016 WL 7385730, at *9 n.5 (E.D. Mich. Dec. 21, 2016)

7

In fact, Plaintiffs' reliance on *Rebozo v. Washington Post Co.*, 515 F.2d 1208 (5th Cir. 1975) (*see* Opp. at 15) reinforces this point. *Rebozo* is a 40-year old case primarily based on the kind of general "doing business" analysis that has been mooted by *Daimler*. But even ignoring that, the case concerned a newspaper article about a Florida resident, that was investigated by reporters in Florida, and that was actually circulated in Florida. *Id*. at 1210, 1215. None of these factors are present here. But when the Fifth Circuit more recently addressed a case involving an allegedly defamatory magazine article that was published solely online, it found jurisdiction lacking even though, unlike here, the allegedly defamatory statements in the article were indisputably about a forum resident. *See Revell,* 317 F.3d at 472-76. Plaintiffs accordingly cannot establish purposeful availment under any relevant test.

4.  <u>Fair Play and Substantial Justice</u>. Finally*,* even if the Court finds purposeful availment, it should nonetheless dismiss this case on the grounds that asserting jurisdiction would offend fair play and substantial justice. Mot. at 13-14. The word "Webzilla" appears once in the lengthy Dossier; there is no evidence it even refers to any Plaintiff here; nothing in BuzzFeed's research for or preparation of the Article involved Florida; and the sole plaintiff that is a Florida "resident" has minimal actual activity here. Indeed, Florida federal courts have consistently held in internet defamation cases that even a plaintiff's principal place of business in Florida does "not, by itself, establish a substantial interest in Florida in deciding the case." *Bioheart*, 2013 WL 1729278, at *5; *accord Internet Sols.*, 2010 U.S. Dist. LEXIS 145503, at

---

("[T]he Court declines Dr. Huizenga's invitation to consider as part of its *Keeton* reasonableness analysis the number of visits to the Post's website by Michigan residents. *Keeton* is focused on the extent to which the defendant publication intentionally enters the forum market, and the Post does not intentionally enter the Michigan market when Michigan residents visit its web page. Dr. Huizenga has not cited any case in which any court has considered page views from a website as part of a *Keeton* analysis."); *Johnson*, 2016 WL 193390, at *8 ("The mere fact that Gawker Media's websites are accessible in Missouri or that they provide the possibility a Missouri resident might have contact with the defendants by leaving comments to an article is not sufficient, alone, to confer personal jurisdiction."); *Revell v. Lidov*, 2001 WL 285253, at *7 (N.D. Tex. Mar. 20, 2001), *aff'd*, 317 F.3d 367 (5th Cir. 2002) (in internet defamation case, holding that *Keeton* was "distinguishable because [it] concerned printed media that was knowingly and purposefully sold and circulated in the forums at issue. Because the material was intentionally circulated, the defendants knew that the effects of their defamatory statements would be felt in the forum state." (internal citations omitted)); *Trump v. Tarpley*, No. 424492-V, slip. op. at 7 (Md. Cir. Ct. Feb. 1, 2017) (attached as Ex. 22 to the Bolger Decl.) ("The overwhelming weight of authority holds that merely operating a website – even if it is a popular website that makes money from advertising, like those operated by *The Guardian*, *Gawker*, *New York Post*, or *Facebook*, does not constitute 'purposeful availment' under *Keeton*.").

*13-15, *19; *Vision Media TV Grp., LLC*, 724 F. Supp. 2d at 1267. For all these reasons, this court should dismiss Plaintiffs' claims for lack of jurisdiction.

## III.  ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED

In the alternative, this action should be transferred to the Southern District of New York. Tellingly, Plaintiffs never claim that trying this case in Miami would actually be more convenient for *anyone* than doing so in New York City. They mostly seem to be relying on the idea that their choice of forum – however illogical – is entitled to great deference. Opp. at 17, 20. Plaintiffs' arguments are simply incorrect.

*First*, Plaintiffs' argument on the issue of relative convenience to witnesses, *id.* at 18, ignores that Defendants have identified at least seven potential witnesses, both party and non-party, who live in or near New York City. Bolger Decl. ¶ 27. Plaintiff, on the other hand, has identified only a single potential witness who lives here – Constantin Luchian, whose "duties at Webzilla are very limited" by his own admission. Opp. at 18; Bolger Reply Decl., Ex. 15 ¶ 7.

*Second*, because Plaintiffs overlook the New York-based non-party witnesses identified by Defendants, their argument that the power of the respective courts to compel the attendance of unwilling witnesses at trial somehow "weighs against transfer," Opp. at 19, collapses. And Plaintiff has not identified a single potential non-party witness who would be within this Court's subpoena power. This factor accordingly weighs heavily in favor of transfer.

*Third*, Plaintiffs' argument that Defendants would not be inconvenienced by a trial in Miami, *id.*, is absurd. The fact that BuzzFeed occasionally sends reporters on unrelated assignments to Florida does not mean that it would be convenient for it to send its editor-in-chief and two senior journalists more than one thousand miles away for a trial in this case. And the fact that Mr. Smith occasionally travels to Florida does not mean that it would be no hardship for him to leave his job, home, and family behind for the length of the trial.

*Fourth*, Plaintiffs do not seriously dispute that the locus of operative facts for this case lies in the Southern District of New York. *Id.* Their only argument on this point is that the "defamation was completed when the Defamatory Article was accessed in Florida." *Id.* But, as noted in Defendants' Opening Memo, Mot. at 18, courts have squarely rejected arguments that the locus of operative facts for alleged defamation lies anywhere it was received. *See Comaford v. Wired USA, Ltd.*, 1995 WL 324564, at *4-5 (N.D. Ill. May 26, 1995); *Holmes v. TV-3, Inc.*, 141 F.R.D. 697, 698 (W.D. La. 1991).

*Fifth*, Plaintiffs' contention that Florida law applies to this case simply because it "states a claim under Florida's defamation laws, for materials published in Florida, causing injury to at least one Florida plaintiff" is wholly unpersuasive. Opp. at 19-20. In reality this case has barely, if any, connection to Florida. Plaintiffs do not even attempt to explain how this case differs from *Michel v. NYP Holdings*, 816 F.3d 686 (11th Cir. 2016), in which the Eleventh Circuit recently held that New York law "plainly" applied to a defamation claim that, unlike this one, was brought by someone who clearly was a Florida resident over an article published by a New York media organization over the internet. *Id.* at 694; *see* Mot. at 17-18. And, in any event, Plaintiffs cannot justify why Florida law should apply to all three Plaintiffs' claims, when two of them have no even arguable connection to Florida whatsoever. In fact, courts recognize that a single plaintiff's domicile is entitled to very little weight in the choice of law analysis where the case involves multiple plaintiffs or widely-dispersed harm. Mot. at 17-18 (citing cases). New York law accordingly likely applies here just as it did in *Michel*, and this factor favors transfer.

*Sixth*, for all of Plaintiffs' reliance on the deference supposedly due to their choice of forum, Opp. at 20, they neglect to mention that this choice is not entitled to deference in all circumstances. In fact, as explained in Defendants' opening brief, here it is entitled to little if any deference because the facts of this case have no nexus to Florida and because no Plaintiff has any real connection to the State. Mot. at 19-20.

*Seventh*, although Plaintiffs emphasize statistics that purport to show delays in the Southern District of New York, *id.*, they fail to acknowledge that "[d]ocket conditions, although relevant, are a 'minor consideration' when other factors would result in a transfer of venue." *Trace-Wilco, Inc. v. Symantec Corp.*, 2009 WL 455432, at *4 (S.D. Fla. Feb. 23, 2009).

Because trying this case in the Southern District of Florida would be convenient for precisely no one, this case should be transferred to the place which is both the site of the events giving rise to this litigation and the home of Defendants, most potential witnesses, and the applicable law: the Southern District of New York.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion to dismiss be granted, or, alternatively, that this action be transferred to the Southern District of New York.

10

Dated: April 3, 2017

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, FL 33131
(305) 403-8791
By: /s/ Lawrence A. Kellogg
    Lawrence A. Kellogg
             and
Katherine M. Bolger
(admitted *pro hac vice*)
Nathan Siegel
(admitted *pro hac vice*)
Adam Lazier
(admitted *pro hac vice*)
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
(212) 850-6100
*Counsel for Defendants*

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 3, 2017, the foregoing was filed with the Court's CM/ECF Service, and provided by email to counsel of record:

Brady J. Cobb, Esquire
Dylan M. Fulop, Esquire
COBB EDDY, PLLC
Local Counsel for Plaintiffs
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: (954) 527-4111
Facsimile: (954) 900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com


Valentin D. Gurvits, Esquire
Matthew Shayefar, Esquire
BOSTON LAW GROUP, PC
Lead Counsel for Plaintiffs
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Tel: (617) 928-1804
Fax: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

Evan Fray-Witzer, Esq.
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Tel: (617) 426-0000
Fax: (617) 423-4855
evan@CFWLegal.com