**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:17-cv-60426-UU

ALEKSEJ GUBAREV, *et al.*,

      Plaintiffs,

v.

BUZZFEED, INC., *et al.*,

      Defendants.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss or Transfer. D.E. 15.

THE COURT has considered the Motion, the pertinent portions of the record and is otherwise fully advised in the premises.

## FACTUAL ALLEGATIONS

The following facts are taken from Plaintiffs' Complaint for Damages.  D.E. 1-3.

1. **The Plaintiffs**

Plaintiff, Aleksej Gubarev ("Gubarev"), is an individual who resides in the Republic of Cyprus.  *Id.* ¶ 6.  Gubarev is a venture capitalist who founded Webzilla Limited, which is a company that specializes in internet hosting, data, and web development.  *Id.* ¶ 16.  Webzilla Limited is the predecessor to Plaintiff, XBT Holding S.A. ("XBT Holding"), an international business with offices in Texas and Florida, among other locations.  *Id.* ¶¶ 16-17.  Gubarev is presently the Chairman, CEO, and Director of Plaintiff, XBT Holding, which also has a number

of subsidiaries, including Plaintiff, Webzilla, Inc. ("Webzilla"). *Id.* ¶ 7.  Webzilla is a Florida corporation with offices in Fort Lauderdale. *Id.* ¶ 8.

### 2. The Defendants

Defendant, Ben Smith ("Smith") is an individual who resides in New York and is the Editor-in-Chief of Defendant, Buzzfeed, Inc. ("Buzzfeed"). *Id.* ¶ 10. Buzzfeed is an international corporation with offices in "18 cities around the world including New York, Los Angeles, San Francisco, London, Sydney, Sao Paulo, and Tokyo." *Id.* ¶ 9. Buzzfeed owns and operates the Buzzfeed.com website, as well as the Buzzfeed mobile application. *Id.*

### 3. Publication of the Defamatory Article

On January 10, 2017, Defendants, Buzzfeed and Smith (collectively, the "Defendants"), published an online article entitled, "These Reports Allege Trump Has Deep Ties to Russia" (the "Article"). *Id.* ¶ 23.  The Article attached a 35-page unverified "dossier" (the "Dossier") of information that was compiled by a private security company. *Id.* ¶ 24.  The Dossier included, among other things, allegations that persons or organizations with ties to Russia, the Russian Government, and/or the Federal Security Service of the Russian Federation engaged in computer hacking of the Democratic Party. *Id.* ¶ 25.  Of particular relevance to this case, the Dossier included unverified statements about Plaintiffs, Gubarev, XBT Holding, and Webzilla (collectively, the "Plaintiffs"), and their alleged involvement in the hacking. *Id.* ¶ 26.

Prior to the Dossier's publication, neither Buzzfeed nor Smith contacted Plaintiffs to determine if the statements concerning Plaintiffs had any basis in fact. *Id.* ¶ 28.  Smith has admitted that Buzzfeed knew at the time it published the Article and the Dossier that there were "real solid reasons to distrust" the veracity of the contents of the Dossier. *Id.* ¶ 31.  Despite these

concerns, however, Buzzfeed and Smith took no steps to redact Plaintiffs' names from the Dossier, and instead, published it in its entirety. *Id.* ¶ 32.

## PROCEDURAL HISTORY

On February 3, 2017, Plaintiffs filed their Complaint for Damages against Defendants, alleging one claim for defamation and defamation *per se* under Florida law in the Seventeenth Judicial Circuit in and for Broward County, Florida. D.E. 1-3. In their Complaint, Plaintiffs alleged that the Court has personal jurisdiction over Defendants pursuant to Florida Statute section 48.193(1)(b)[1] because Defendants posted defamatory materials concerning Plaintiffs on their website and through Buzzfeed's mobile application, which were accessible and were accessed in Florida, and such conduct constitutes the commission of the tortious act of defamation for purposes of Florida's long-arm statute under section 48.193. *Id.* ¶ 12. In addition, Plaintiffs alleged that the Court has personal jurisdiction over Defendants pursuant to Florida Statute section 48.193 because:

> a) Defendants have caused injury to persons or property within Florida, arising out of acts or omissions undertaken outside of the state and Defendants regularly solicit advertising and viewers within Florida; and
>
> b) Defendants have committed intentional torts expressly aimed at one or more of the Plaintiffs, the effects of which were suffered in this jurisdiction. Defendants' intentional conduct was calculated to cause injury to one or more of the Plaintiffs in Florida and has caused injury to one or more of the Plaintiffs in Florida. Based on their intentional torts, Defendants should have reasonably anticipated being haled into Court.

*Id.* ¶ 13(a)-(b).

---

[1] In their Complaint, Plaintiffs allege that this Court has personal jurisdiction over Defendants based upon Defendants' commission of a tortious act (*see* D.E. 1-3 ¶ 12); however, as their legal basis, Plaintiffs cite to Florida Statute section 48.193(1)(b), which appears to be the incorrect subsection. Based upon Plaintiffs' ongoing reference to Defendants' alleged commission of a tortious act within Florida throughout their Response, the Court will presume Plaintiffs intend to proceed under section 48.193(1)(a)(2).

On February 28, 2017, Defendants removed this case pursuant to 28 U.S.C. § 1446 to the United States District Court for the Southern District of Florida on the basis of this Court's diversity jurisdiction because the parties are diverse and the damages exceed $75,000.  D.E. 1.

On March 14, 2017, Defendants filed the instant Motion to Dismiss or Transfer.  D.E. 15. In their Motion, Defendants request that this Court dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, that this Court transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). *Id.*

## ANALYSIS

In their Motion to Dismiss, Defendants move: (1) to dismiss this case based upon lack of personal jurisdiction pursuant to Rule 12(b)(2), or (2) to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  D.E. 15.   The Court separately addresses the parties' arguments pertaining to these issues.

**I.      DEFENDANTS' MOTION TO DISMISS BASED UPON LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(2)**

**A.  Legal Standard**

In deciding a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court must undertake a two-part analysis.  First, it must determine whether the Florida long-arm statute provides a basis for personal jurisdiction.[1]   *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If the statute is satisfied, the court must inquire as to whether sufficient minimum contacts exist between the

---

[1] The reach of Florida's long-arm statute is a question of Florida law. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013).

defendant and Florida so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment.  *See id.*

A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction."  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton*, 736 F.3d at 1350 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1999)). The burden, however, does not shift back to the plaintiff when "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction."  *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).  Where a plaintiff's complaint, supporting affidavits, and documents conflict with a defendant's evidence, the Court must construe all reasonable inferences in favor of the plaintiff.  *Id.*

In their Motion to Dismiss, Defendants argue that this Court does not have personal jurisdiction over Defendants because: (1) there is no statutory basis for exercising personal jurisdiction pursuant to Florida's long-arm statute, Fla. Stat. § 48.193, and (2) exercising jurisdiction over this action would not comport with the Due Process Clause of the Fourteenth Amendment.

### B.  Florida's Long-Arm Statute

Under Florida's long-arm statute, Fla. Stat. § 48.193, a non-resident defendant can be subject to personal jurisdiction in two ways.  *Atmos Nation LLC v. Alibaba Grp. Holding, LLC*, Case No. 0:15-cv-62104, 2016 WL 1028332, at *2 (S.D. Fla. Mar. 15, 2016).  First, a Florida

court can exercise general personal jurisdiction – that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida – if the defendant engages in "substantial and not isolated activity" in Florida. *Id.* (citing *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015)). Second, a Florida court can exercise specific personal jurisdiction – that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida – if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of the nine categories enumerated in section 48.193(1)(a). *Id.*

Florida's long-arm statute, specifically section 48.193(1)(a), provides, in relevant part, as follows:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 2. Committing a tortious act within this state . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at, or about the time of the injury, either:
>
>> a. The defendant was engaged in solicitation or service activities within this state[.]

Fla. Stat. § 48.193(1)(a)(2), (6).

In the Complaint, Plaintiffs allege that this Court has personal jurisdiction over Defendants pursuant to Florida Statute section 48.193(1)(a).[2] D.E. 1 ¶ 12. Specifically,

---

[2] In their Motion to Dismiss, Defendants argue that this Court may not exercise general jurisdiction over Defendants because neither Buzzfeed nor Smith are "at home" in Florida, and this is not an "exceptional case" where a defendant could be subject to general jurisdiction in a foreign state. Upon review of Plaintiffs' Complaint, however, it does not appear that Plaintiffs are seeking for this Court to exercise general personal jurisdiction over Defendants pursuant to

Plaintiffs allege that "[t]he Defendants posted defamatory materials concerning the Plaintiffs on their website (and through their mobile app), which materials were accessed in Florida, constituting the commission of the tortious act of defamation within Florida under section 48.193[.]" *Id.* ¶ 12. Plaintiffs further allege that the Court may exercise personal jurisdiction over Defendants because: (1) Defendants have caused injury to persons or property within Florida, arising out of acts or omissions undertaken outside of the state and Defendants regularly solicit advertising and views within Florida; and (2) Defendants have committed intentional torts expressly aimed at one or more of the Plaintiffs, the effects of which were suffered in this District. *Id.* ¶ 13(a)-(b).

The Court finds that Plaintiffs' jurisdictional allegations, if accepted as true, are sufficient to create a *prima facie* case of personal jurisdiction over Defendants. Florida's long-arm statute authorizes the exercise of personal jurisdiction over a defendant for defamation, slander and libel claims when the injurious information or material is circulated or published to a third party within the state. *See Madara v. Hall*, 916 F.2d 1510, 1515 (11th Cir. 1990) (finding that distribution in Florida of a magazine containing libelous statement constituted a tortious act within the state sufficient for exercise of personal jurisdiction under the long-arm statute); *see also Wendt v. Horowitz*, 822 So. 2d 1252, 1253 (Fla. 2002) (holding that telephonic, electronic or written communication into the state may permit exercise of jurisdiction under the long-arm statute, provided the tort arises from the communication). Here, Plaintiffs explicitly allege in their Complaint that "[t]he Defendants posted defamatory materials concerning the Plaintiffs on their website (and through their mobile app), which materials were accessed in Florida, constituting the commission of the tortious act of defamation within Florida under section

---

Florida Statute section 48.193(2); therefore, the Court will only focus on whether she may exercise specific personal jurisdiction under Florida's long-arm statute.

48.193(1)(b)."  D.E. 1 ¶ 12.  These allegations are sufficient to satisfy Plaintiffs' initial burden of establishing *prima facie* that Defendants committed a tortious act within Florida.

In arguing that Florida's long-arm statute precludes jurisdiction in this case, Defendants misconstrue the relevant analysis.  Contrary to Defendants' argument, the Court is not to consider whether this case's connection to Florida is "attenuated" in applying Florida's long-arm statute; rather, the Court must consider whether Plaintiffs' allegations fall within one of the subsections set forth in Florida's long-arm statute, which the Court finds that it does for the reasons set forth above.

Despite Defendants' attempts to distinguish the Florida Supreme Court's decision in *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010), this Court finds that the facts of *Internet Solutions* are analogous and guide the resolution of the parties' dispute regarding the applicability of section 48.193(1)(a)(2) to this case.  In *Internet Solutions*, the Florida Supreme Court held, upon the Eleventh Circuit Court of Appeals certifying a question to the Florida Supreme Court, that an out-of-state website operator was subject to personal jurisdiction under section 48.193(1) for defamatory materials that were posted on Defendants' website.  *Id.* at 1215. The Florida Supreme Court stated:

> We conclude that allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an "electronic communication into Florida" <u>when the material is accessed (or "published") in Florida</u>.  In the context of the World Wide Web, given its pervasiveness, an alleged tortfeasor who posts allegedly defamatory material on a website has intentionally made the material almost instantly available everywhere the material is accessible.  <u>By posting allegedly defamatory material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida</u>.  When the posting is then accessed by a third party in Florida, the material has been "published" in Florida and the poster has communicated the material "into" Florida, thereby committing the tortious act of defamation within Florida.

*Internet Solutions*, 39 So. 3d at 1214-15 (emphasis added).

Defendants further contest the relevance of *Internet Solutions* to the facts of this case by asserting that none of the Plaintiffs in this case has a physical presence in Florida.  In this regard, Defendants have submitted the Declarations of Katherine M. Bolger (D.E. 15-1) and Victor Petrescu (D.E. 15-3).   In her Declaration, Bolger attests that Plaintiffs, Gubarev and XBT Holding, have no presence in Florida.  D.E. 15-1 ¶ 10.  Petrescu acknowledges that Plaintiff Webzilla appears to maintain a physical presence in the State of Florida (D.E. 15-3 ¶ 4); however, Petrescu attests that he went to visit Webzilla's Fort Lauderdale address, and it did not appear that Webzilla occupied that particular address (*Id.* ¶ 6).  Defendants' submission of these affidavits suffices only to shift the burden to Plaintiffs to produce evidence supporting jurisdiction.

Plaintiffs respond that Plaintiff Webzilla maintains a physical presence in Florida, and have proffered the Declaration of Constantin Luchian (D.E. 21-12) in support of their position.  Specifically, Luchian attests that Webzilla "is incorporated as a domestic for-profit corporation in Florida and has been continuously registered as such with Florida's Division of Corporations since 2009." *Id.* ¶ 5.  Luchian further attests that Webzilla has maintained one or more physical locations in Florida (*Id.* ¶ 9), that Webzilla maintains a Florida-based telephone number (*Id.* ¶ 12), engages Florida-based personnel (*Id.* ¶ 15), and files tax returns in Florida (*Id.* ¶ 17).  Based upon the foregoing and the similarities to the facts in *Internet Solutions*, the Court is satisfied that Plaintiffs have met their burden in establishing that Plaintiff Webzilla maintains a physical presence in the State of Florida.

Because there is no dispute that the Buzzfeed website and the Buzzfeed mobile application are accessible in Florida, the Article was accessible in Florida, and the Article was, in

fact, accessed in Florida, it follows that Defendants have committed a tort in Florida for purposes of the jurisdictional analysis.  In addition, Plaintiff Webzilla is located in Florida, and as such, Defendants have caused injury to a Florida resident through their acts that took place in this state.  Therefore, under these facts, the requirements of Florida's long-arm statute, Florida Statute section 48.193(1)(a)(2), are satisfied.

### C.  Due Process Clause of Fourteenth Amendment

Because the Court finds that there is jurisdiction under Florida's long-arm statute, the Court must next consider whether the exercise of personal jurisdiction over Defendants in this case would offend the Due Process Clause of the Fourteenth Amendment.

"The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fairly play and substantial justice.'"  *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010).  With respect to the due process inquiry, the Eleventh Circuit Court of Appeals has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process.  *Louis Vuitton*, 736 F.3d at 1355. Under this test, the Court must examine:

> (1) Whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.*  The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."  *Id.* (citing *Diamond Crystal Brands, Inc.*

*v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).  The Court will separately address each prong of this inquiry.

### 1.   Whether Plaintiffs' Claims Arise out of Defendants' Contacts

"A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum."  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing *Fraser*, 594 F.3d at 850). The Eleventh Circuit Court of Appeals has instructed that a court's "inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation."  *Louis Vuitton*, 736 F.3d at 1355-56.  "[A] relationship among the defendant, the forum, and the litigation is the essential foundation of *in personam* jurisdiction[.]"  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 414 (1984).

While Defendants do not expressly argue that Plaintiffs' claims fail to arise out of Defendants' contacts, the burden remains on Plaintiffs to meet this prong.  Here, it is clear that Plaintiffs' defamation claim arises out of the Article that was published on Defendants' website, which was intended to be and was accessible in the State of Florida.  Moreover, based upon the evidence proffered by the parties, it is clear that Defendants do not passively operate a website that is merely accessible in Florida; rather, Defendants' connections to Florida are extensive – Defendants regularly send reporters to Florida to cover Florida-based stories (D.E. 21-1 ¶¶ 5-13); regularly author and publish articles that are aimed at a Florida audience (*Id.*, Exs. 19, 29-30, 32-34); and Defendants derive revenues from Florida-based advertising client, including VisitFlorida.com, which is the Official Florida Tourism Industry Marketing Corporation (*Id.* ¶¶ 10, 26, 28).  Thus, the Court finds a direct relationship between Defendants, the State of Florida, and Plaintiffs' defamation claims.

11

### 2. Purposeful Availment

In an intentional tort case, there are two applicable tests for determining whether purposeful availment occurred. *See Louis Vuitton*, 736 F.3d at 1356. First, the Court may apply the "effects test," which the Supreme Court set forth in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The Court may also apply the traditional minimum contacts test, which was set forth in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790. As the Eleventh Circuit has instructed, "[c]ircuit courts have applied the traditional minimum contacts test for purposeful availment analysis in lieu of, or in addition to, the 'effects test' in cases involving intentional torts." *Louis Vuitton*, 736 F.3d at 1356 (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 172 (2d Cir. 2010); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 n.6 (3d Cir. 2003)).

Defendants argue that this Court lacks specific jurisdiction over Defendants because: (a) Plaintiffs cannot satisfy the "effects test" articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), and (b) Plaintiffs cannot demonstrate that Defendants have traditional minimum contacts with the forum. Because Defendants address both tests in their Motion, the Court will separately address each legal theory below.

### a) *Calder* Effects Test

Under the "effects test," a "nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008)). This occurs when the tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.*

Defendants argue that the *Calder* "effects test" is not met in this case because the "focal point" of the Article and the Dossier is the alleged connection between then-presidential candidate Donald Trump and Russia, not between Plaintiffs and the State of Florida. Defendants further argue that the Dossier never mentions Florida and does not purport to be about "the [Florida] activities of a [Florida] resident," and no newsgathering was conducted in or into Florida. Defendants argue that the only potential connection between Defendants and Florida is the mere fact that Defendants published a story on an international website that was accessible in Florida, as it was elsewhere. According to Defendants, courts that have addressed internet defamation cases have concluded that mere publication and accessibility are insufficient to constitute the "aiming" that is required under the *Calder* test.

Defendants further argue that Plaintiffs cannot demonstrate that Defendants anticipated Plaintiffs would be harmed in Florida, which is the third prong of the *Calder* test. Defendants argue that the evidence is clear neither Defendant knew that Plaintiffs would suffer the brunt of the harm in Florida because the only connection the Plaintiffs have to Florida is that Plaintiff Webzilla is incorporated in the State of Florida. D.E. 15-5 ¶ 5. Defendants insist that the mere fact that one Plaintiff is incorporated in Florida does not mean that Plaintiff suffered harm, or the "brunt of the harm," in Florida. Defendants then argue that it follows Defendants did not and could not have reasonably anticipated the brunt of the harm occasioned by the publication would occur to these particular Plaintiffs in Florida.

Plaintiffs argue that the *Calder* "effects test" is met here because Defendants intentionally published the Article and the Dossier, which was "aimed" at Florida by virtue of the Article and the Dossier naming a Florida corporation, and therefore, Defendants should have anticipated that harm would be felt in Florida.

The Court agrees with Plaintiffs that they have sufficiently established purposeful availment under the *Calder* "effects test." "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum" if the intentional conduct has a direct impact on a Florida resident. *Louis Vuitton*, 736 F.3d at 1356. In *Licciardello v. Lovelady*, the Eleventh Circuit Court of Appeals found that a plaintiff established purposeful availment under the *Calder* effects test by alleging that the defendant committed an intentional tort by using the plaintiff's trademarked name and his picture on a website accessible in Florida. 544 F.3d 1280, 1287 (11th Cir. 2008). The Court concluded that "[t]he Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [the defendant] because his intentional conduct in his state of residence was calculated to cause injury to [the plaintiff] in Florida." *Id.* at 1288. Therefore, the Court found that the defendant "cannot claim surprise at being haled into court here." *Id.*

Similar to *Lovelady*, this Court finds that Plaintiffs have sufficiently demonstrated that Defendants intentionally published the Article and the Dossier, and that the publication contained allegedly defamatory statements that were "aimed" at Plaintiffs, one of which was a Florida resident. When Defendants published their unverified Dossier via their website and mobile application, Defendants knew it would be viewed around the world, and given the international scope of its contents, should have anticipated that the effects of the publication might be felt in different fora, including the fora where Plaintiffs are located. Accordingly, Defendants cannot claim surprise at being haled into court in the Southern District of Florida.

In support of their position, Defendants principally rely on *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) and *Bioheart, Inc. v. Peschong*, No. 13-60304-CIV, 2013 WL 1729278 (S.D. Fla.

14

Apr. 22, 2013).  In *Revell*, a Texas resident sued the *Columbia Journalism Review* and its writers in the Northern District of Texas for defamation arising out of the publication of an article that was posted on an internet bulletin board hosted by Columbia University, which has its principal offices in New York City.  317 F.3d at 468.  The Fifth Circuit concluded that the Northern District of Texas lacked personal jurisdiction over the defendants because the defendants did not have "substantial" contacts with the State of Texas.  *Id.*  In reaching its conclusion, the Court heavily relied upon the fact that Columbia University merely maintained an internet "bulletin board" that was accessible everywhere and allowed any third-party user to post to the board without oversight by Columbia University itself.  *Id.* at 471-72.

In *Bioheart*, a Florida corporation brought a defamation action in the Southern District of Florida against five individual defendants, all of whom were California and Virginia residents. 2013 WL 1729278, at *1.  The plaintiff's defamation claim arose from the defendants' posting of defamatory comments about the plaintiff on an online message board located on the Yahoo! Finance website.  *Id.* at *1-2.  In concluding that the court lacked personal jurisdiction over the defendants, the district court considered the fact that the defendants did not utilize the website to receive any commercial benefit, did not facilitate interactions with or otherwise target a Florida audience, and there was no evidence that the website purposefully directed at a Florida audience. *Id.* at *5.

The Court does not find that *Revell* or *Bioheart* are analogous to the facts of this case. Unlike the defendants in *Revell* and *Bioheart*, the Court does not find that Defendant Buzzfeed operates as a passive online bulletin board, which simply allows third parties to post messages or articles.  Here, it is undisputed that Defendants intentionally published the Article and the Dossier on their website.  The Article and Dossier were not published by unknown third-party

users; rather, Defendants themselves made the decision to publish the Article and Dossier on their website, which they operate and maintain.  In addition, unlike the defendants in *Bioheart*, Defendants in this case facilitate interactions with the State of Florida by regularly dispatching reporters to the State of Florida, by creating social media advertising for the State of Florida itself, by receiving advertising revenue from Florida advertisers, and by engaging in newsgathering efforts in Florida aimed at Florida.  *See* D.E. 21-1.  Thus, the Court is not persuaded that holdings in *Revell* and *Bioheart* counsel against the exercise of personal jurisdiction in this case.

Accordingly, the Court agrees with Plaintiffs that they have sufficiently established purposeful availment under the *Calder* "effects test."

### b) Minimum Contacts

The United States Supreme Court also employs a traditional minimum contacts test, as set forth in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) in intentional tort cases.  Under the minimum contacts test, this Court must assess the nonresident Defendants' contacts for purposeful availment with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton*, 736 F.3d at 1357.  This Court must identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, the contacts satisfy the criteria.  *Id.* (citing *King & Hatch, Inc. v. S. Pipe & Supply Co.*, 435 F.2d 43, 46 (5th Cir. 1970)).

Defendants argue that Plaintiffs cannot establish purposeful availment under the traditional minimum contacts test because: (1) Defendant Smith has no contacts whatsoever with

Florida that relate to Plaintiffs' cause of action (*see* D.E. 15-5); and (2) Defendant Buzzfeed has no offices or employees in Florida, and its publication of the Article and the Dossier did not involve activity that specifically targeted Florida in any way (*see* D.E. 15-6, 15-7, 15-8).

In response, Plaintiffs argue that they have met the traditional minimum contacts test because in this case Buzzfeed's website and mobile application are widely accessible and were widely accessed in Florida; Buzzfeed creates social media advertising for the State of Florida itself; Buzzfeed receives advertising revenue from Florida advertisers; Defendants regularly and routinely engage in newsgathering efforts in Florida aimed at Florida; Buzzfeed regularly sends its employees, including Smith, to Florida for work purposes; and Buzzfeed has authored and published thousands of articles concerning Florida-centric topics.  *See* D.E. 21-1.

The Court agrees with Plaintiffs that the United States Supreme Court's decision in *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984) is most instructive in this case.  In *Keeton*, the plaintiff was a resident of New York, who brought a defamation case in New Hampshire against the defendant magazine, which was an Ohio corporation.  *Id.* at 772.  The only connection that the defendant had to New Hampshire was that the magazine had a monthly circulation in New Hampshire.  *Id.*  The Supreme Court held that the publisher of a national magazine was subject to jurisdiction in every location in which it was circulated, even if "the bulk of the harm done to petitioner occurred outside [the forum]."  *Id.* at 780.

Under the facts of this case, there is an even stronger connection between Plaintiffs and Florida as the forum state than there was between the plaintiff in *Keeton* and the forum state of New Hampshire.  Here, one of the Plaintiffs is a resident of Florida; whereas, in *Keeton*, no party was a resident of New Hampshire.  Furthermore, Plaintiffs allege that they sustained actual harm

in Florida, as opposed to *Keeton*, where the plaintiff alleged that the bulk of her harm had been sustained outside of the forum state (*id.*).

In addition, in *Keeton*, the only connection that the publisher had to the forum state was the circulation and sale of the publication.  Here, however, the connections are not as attenuated – Buzzfeed's website and mobile application are widely accessible and widely accessed in Florida; Buzzfeed creates social media advertising for the State of Florida itself; Buzzfeed receives advertising revenue from Florida advertisers; Defendants regularly and routinely engage in newsgathering efforts in Florida and aimed at Florida; Buzzfeed regularly sends its employees, including Smith, to Florida for work purposes, and Buzzfeed has published thousands of articles concerning Florida-centric topics.[3]  *See* D.E. 21-1.  Based upon Defendants' extensive contacts with the State of Florida, it seems disingenuous for Defendants to argue that they could not have anticipated being haled into court in Florida.

### 3.  Fair Play and Substantial Justice

The Court further finds that the exercise of personal jurisdiction over Defendants comports with fair play and substantial justice.  *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Payment*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95.  In considering this issue, the Court must address the following factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in

---

[3] The Court is cognizant that the Due Process inquiry must be conducted as to each named defendant in a case involving multiple defendants and multiple claims.  *See KVAR Energy Savings, Inc. v. Tri-State Energy Solutions, LLP*, 2009 WL 103645, at *3 (M.D. Fla. Jan. 15 2009); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).  Here, however, there is no dispute that Defendant, Ben Smith, as the Editor-in-Chief of Defendant, Buzzfeed, acted on behalf of and through Defendant Buzzfeed at all times pertinent to this case (D.E. 1-3 ¶¶ 31-33) and also made the ultimate decision to publish the Article with the Dossier (D.E. 15-5 ¶ 3).  Therefore, the Court does not find that separate inquiries are warranted under the facts of this case as the inquiries as to both named Defendants are the same.

obtaining convenient and effective relief, and (4) the judicial system's interest in resolving the dispute. *Lovelady*, 544 F.3d at 1288.

Defendants argue that even if the Court could find purposeful availment on the part of one or both Defendants, it should dismiss the case because exercising personal jurisdiction over Defendants would "offend traditional conceptions of fair play and substantial justice."   Here, Defendants argue that Plaintiffs have no business operations in Florida and no meaningful connections to the state, and therefore, Florida has no real interest in adjudicating the dispute. Defendants argue that litigating this case in Florida would not be convenient for any party in this case, and it would be less convenient and efficient for both the parties and non-party witnesses.

Plaintiffs respond by insisting that any burden on Defendants is minimal in light of the fact that Defendants conduct regular newsgathering activities in Florida, routinely send reporters to Florida, and have extensive contacts with Florida.   Moreover, Plaintiffs argue that Florida has strong interests in preventing the publication of defamatory materials in Florida and protecting its residents from damages from such publication.   Plaintiffs contend that their interest in obtaining complete and effective relief supports jurisdiction in Florida because Plaintiff Webzilla is located in Florida and because statistics establish that cases in the Southern District of Florida reach trial in half the time than cases filed in the Southern District of New York, which is Defendants' proposed alternative forum.   Finally, Plaintiffs argue that the judicial system's interest in resolving the dispute comports with "fair play and substantial justice" because statistics demonstrate that cases pending in the Southern District of Florida reach trial in less than one year, which will allow the parties to attain justice in a timely manner.

The Court agrees with Plaintiffs.   Based upon Defendants' contacts with Florida, there does not appear to be a burden on Defendants to litigate this case in Florida.   In addition, Florida

maintains a strong interest in preventing the publication of defamatory materials in Florida and protecting its residents, such as Plaintiff Webzilla, from damages that result from such publication.  Plaintiffs maintain an interest in obtaining convenient and effective relief in Florida due to Plaintiff Webzilla's presence in Florida.  Lastly, Plaintiffs have established that the judicial system's interest in resolving the dispute comports with "fair play and substantial justice" because the Southern District of Florida, as well as this Court in particular, ensures that cases are moving forward in a timely and efficient manner, as demonstrated by the statistics issued by the Administrative Office.  Accordingly, the Court finds that the exercise of personal jurisdiction over Defendants comports with fair play and substantial justice.

## II.   DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a)

### A.  Legal Standard

The federal change of venue statute provides as follows: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a); *see S. Mills, Inc. v. Nunes*, 586 Fed. Appx. 702, 705 (11th Cir. 2014).  "As a general matter, cases arising under federal law may be brought only in a district where: (1) any defendant resides, if all defendants reside in the same state; (2) a substantial part of the events giving rise to the claim took place, or (3) the defendant may be found, if there is no district in which the action may otherwise be brought."  *Nalls v. Coleman Low Fed. Inst.*, 440 Fed. Appx. 704, 706 (11th Cir. 2011) (citing 28 U.S.C. § 1391(b)).

The Supreme Court has explained that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *S. Mills*, 586 Fed. Appx. at 705 (citing *Stewart*

20

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).  The burden

remains on the movant to "persuade the court that a transfer should be granted."  *Perlman v.*

*Delisfort-Theodule*, 451 Fed. Appx. 846, 848 (11th Cir. 2012) (citing *In re Ricoh Corp.*, 870

F.2d 570, 573 (11th Cir. 1989)).  In addition, "[t]he plaintiff's choice of forum should not be

disturbed unless it is clearly outweighed by other considerations."  *Perlman*, 451 Fed. Appx. at

848 (11th Cir. 2012) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.

1996)).

     The factors that the district court may consider in deciding whether to transfer a case

pursuant to section 1404 include the following:

> (1) The convenience of the witnesses; (2) the location of the relevant
> documents and the relative ease of access to sources of proof; (3) the
> convenience of the parties; (4) the locus of operative facts; (5) the
> availability of process to compel the attendance of unwilling witnesses; (6)
> the relative means of the parties; (7) a forum's familiarity with the
> governing law; (8) the weight accorded a plaintiff's choice of forum; and
> (9) trial efficiency and the interests of justice based on the totality of the
> circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

**B.  Analysis**

     As an initial matter, the Court must determine whether this action may have been initially

filed in the alternative forum, that is, the Southern District of New York.  Plaintiffs do not

dispute that this case could have been filed in the Southern District of New York, and therefore,

further analysis as to this prong is not warranted.

     After determining that this case could have been filed in the Southern District of New

York, the Court must consider the nine factors set forth above to the facts of this case to

determine whether the transfer is in the convenience of the parties and witnesses and is in the

interest of justice.  For the reasons set forth below, the Court does not find that the relevant

factors outweigh Plaintiffs' choice of forum, and therefore, Plaintiffs' choice of forum should not be disturbed.  The Court separately considers the parties' arguments pertaining to each of the relevant factors.

### 1. Convenience of Witnesses

Defendants argue that this factor strongly favors transfer because three of the four persons most involved in the publication of the Article live in the Southern District of New York, and those individuals will testify about the central issues in this case.  Defendants also state that "potential witnesses on both sides live in or near the Southern District of New York, and others likely reside in or around Washington, D.C."  Defendants insist that Plaintiffs will not suffer any inconvenience by the transfer because none of them are physically located in Florida.  Therefore, Defendants conclude that the Southern District of New York is a more convenient forum for this action.

In response, Plaintiffs argue that Defendant Buzzfeed regularly sends reporters to Florida, including Defendant Smith, which strongly suggests that these witnesses will be little inconvenienced by their need to appear for trial in Florida.  Plaintiffs contend that Defendants point to the testimony of "potential witnesses" in support of their Motion; however, Plaintiffs argue that Defendants' speculation should not be entitled to any weight in this analysis. Plaintiffs further argue that this factor is neutral because in addition to Defendant Buzzfeed's own employees, Plaintiffs intend to call witnesses from London, Cyprus, and Florida.

"This factor, which pertains to the convenience of non-party witnesses, is an important consideration in determining whether a transfer should be granted."  *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (citing 15 Wright, Miller & Cooper, *Federal Practice and Procedure*: Civil 3d § 3851).

However, "its significant is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party." *Id.* (citing *Mason v. Smithkline Beecham Clinical Labs*., 146 F. Supp. 2d 1355, 1361-62 (S.D. Fla. 2001)).   In addition, "[t]he party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony." *Mason*, 146 F. Supp. 2d at 1362.

The Court agrees with Plaintiffs that this factor is neutral.  To begin with, Defendants fail to identify each witness who likely would be called and fail to state the significance of their witnesses' testimony in seeking transfer.  In addition, Plaintiffs are correct that Defendants' speculation regarding their "potential witnesses" is not entitled to any weight in this analysis. *See Elite Flower Servs v. Elite Floral & Produce LLC*, No. 13-cv-21212, 2013 WL 12095134, at *5 (S.D. Fla. June 18, 2013) (rejecting the defendant's argument for transfer because it would require the Court to engage in speculation that another venue may be more convenient based on the vague testimony of out-of-state customers).  Because the witnesses identified by Defendants are employees of Defendant Buzzfeed, compelling the employees' presence at trial should not be an issue.  Based upon the parties' representations and the contents of the Article, it appears inevitable that out-of-state witnesses will be called whether this case remains in the Southern District of Florida or is transferred to the Southern District of New York.  Thus, the Court is not persuaded that this factor weighs in favor of transfer.

### 2. *Location of Relevant Documents and Access to Sources of Proof*

Defendants argue that this factor favors transfer because all relevant documentary evidence is located in New York and none of it is located in Florida.  Plaintiffs oppose

Defendants' position and argue that this case is not a particularly document-heavy case, and the parties will be able to electronically exchange documents; therefore, this factor is neutral.

This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which parties can transport them to trial. *See, e.g., Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1300 (S.D. Fla. 2002). However, "the significance of this factor is reduced because technological advancements in electronic document imaging and retrieval minimize the burden of document production." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (citing *Mason*, 146 F. Supp. 2d at 1364).

The Court agrees with Plaintiffs that this factor is neutral. Based upon the pleadings filed in this case, the Court does not believe that this case will entail significant document production from Florida or New York.[4] Nevertheless, even if documents are to be produced from these locations, the Court does not find any reason as to why the parties would be unable to complete any document production electronically given the resources available at the law firms who are representing the parties in this case. Thus, this factor is neutral.

### 3. Convenience of the Parties

Defendants insist that no party will suffer an inconvenience by a transfer because none of Defendant Buzzfeed's expected witnesses reside in the Southern District of Florida, and none of the Plaintiffs are physically located in Florida. In response, Plaintiffs argue that this factor counsels against transfer because only Defendant Buzzfeed's employees reside in New York,

---

[4] And the case, if it requires inquiry into the truth of the alleged defamatory statements, could entail discovery that would be centered neither in the Southern District of Florida nor the Southern District of New York. Rather, it would be international in scope, and would include obtaining testimony from witnesses and documents that are in the possession of foreign governments and foreign nationals.

and further, Defendant Buzzfeed regularly sends its reporters to Florida, which demonstrates that a trial in the Southern District of Florida would not be inconvenient for the parties.

As Plaintiffs have demonstrated, Plaintiffs maintain a physical presence in Florida. Defendants maintain residence in New York.  The Court does not find that this action would be any more convenient to the parties in the Southern District of New York than it would be in the Southern District of Florida.  Defendants wish for this Court to transfer this case because it would be more convenient for Defendants; however, in transferring the case, it would only be more inconvenient for Plaintiffs, and that is not sufficient reasoning to transfer the action.  *See Trinity Christian Ctr. of Santa Ana Inc. v. New Frontier Media Inc.*, 761 F. Supp. 2d 1322, 1328-29 (M.D. Fla. 2010) (holding that where "transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiffs' choice of forum should not be disturbed"). Thus, this factor counsels against transfer.

### 4.  *Locus of the Operative Facts*

Defendants argue that this case arises entirely from actions taken by Defendants in New York City, which makes New York the locus of the operative facts.  Defendants contend that Defendant Buzzfeed made the decision to publish the Dossier from its headquarters in New York, and the Article was written, edited, and uploaded in New York.  Defendants argue that while the events described in the Dossier and the Article took place around the world, they have a clear nexus to New York because New York served as the headquarters of the Trump presidential campaign.

While Plaintiffs agree that Defendants made decisions to publish the Article in New York, Plaintiffs argue that the defamatory act was completed when the Article was accessed in Florida; therefore, this factor is also neutral.

25

In determining the locus of operative facts, the court must look at "the site of events from which the claim arises." *Nat'l Trust Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 3:16-cv-695-J-34PDB, 2016 WL 7197397, at *6 (M.D. Fla. Dec. 9, 2016).  In other words, "'[t]he locus of operative facts' has been interpreted as the place where events and actors material to proving liability are located." *Seltzer v. Omni Hotels*, No. 09-CIV-9115, 2010 WL 3910597, at *4 (S.D.N.Y. Sept. 30, 2010).  "[C]ourts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district." *Id.*  "However, where there is no single locus of the operative facts, this factor is neutral and does not support a transfer." *Bell v. Rosen*, No. CV214-127, 2015 WL 5595806, at *11 (S.D. Ga. Sept. 22, 2015).

The Court does not agree with Defendants that this factor weighs in favor of transfer. While Defendants may have undertaken certain actions in New York, the State of Florida, as well as other states where the Article was accessed, may serve as the site from which the claim arises for purposes of the defamation claim.  Thus, because there are arguably multiple loci of operative facts, one of which is Plaintiffs' choice of forum in Florida, this factor does not support transfer.

### 5.  *Availability of Process to Compel Attendance of Unwilling Witnesses*

Defendants argue that this factor favors transfer to the Southern District of New York because many potential witnesses on both sides – including not only third parties, but individual Buzzfeed employees who are not managing agents that could be subpoenaed here – reside in or near the Southern District of New York.

In response, Plaintiffs argue that this factor weighs against transfer because the witnesses in New York are Buzzfeed employees, and therefore, they can be compelled to testify in Florida.

In addition, Plaintiffs argue that the non-party witnesses located outside of New York could be no more compelled to testify in New York than they could in Florida.

The Court finds this factor does not weigh in favor of transfer.  According to Defendants' arguments, the witnesses who are located in New York are employed by Buzzfeed, and thus, they can be compelled to testify in Florida.  In addition, Defendants have failed to specifically identify any non-party witnesses, and accordingly, as stated above, this Court does not find speculative non-party witnesses are a sufficient justification to disturb Plaintiffs' choice of forum.  *See Elite Flower Servs. v. Elite Floral & Produce, LLC*, No. 13-cv-21212, 2013 WL 12095134, at *5 (S.D. Fla. June 18, 2013) ("But this argument is unavailing because it requires the Court to engage in speculation that another venue may be more convenient based on Defendants' vague reference to its non-Miami based customers.").  Thus, this factor weighs against transfer.

### 6.  *Relative Means of the Parties*

Defendants argue that this factor is neutral because Defendant Buzzfeed is a successful corporation, and Plaintiffs are similarly wealthy; thus, the parties can afford to litigate the case in the Southern District of New York.  Plaintiffs argue that this consideration is neutral because both parties have the financial means to litigate in either forum.  The parties both agree that this factor is neutral to the Court's analysis, and the Court likewise agrees that based upon the parties' representations, all parties have the financial means to litigate in either forum.

### 7.  *Forum's Familiarity with the Governing Law*

Defendants expend significant resources in arguing that New York law applies to the facts of this case.  Defendants rely upon *Michel v. NYP Holdings, Inc.* for the proposition that New York law should apply to this defamation case.  816 F.3d 686 (11th Cir. 2016).

Specifically, Defendants argue that because this Court is sitting in diversity, she should apply New York law because the Article was published in New York, Defendants are domiciled in New York, the Article's subject-matter largely involves people domiciled in New York, and the fact that one Plaintiff is incorporated in Florida is of little importance.

In opposition, Plaintiffs do not attempt to distinguish the facts of *Michel* from the facts of this case, but Plaintiffs argue that this is a claim for defamation under Florida law because the materials were published in Florida and caused injury to at least one Florida plaintiff.

The Court does not agree that Defendants have shown that New York law should apply to this defamation case. In *Michel*, the Eleventh Circuit Court of Appeals found New York law should apply in a defamation lawsuit that a Florida resident brought against the *New York Post*. 816 F.3d at 692. The Court found that New York law applied because New York had the most significant relationship to the case in light of the fact that "[t]he article was published in New York, regarding an event that took place in New York, and that allegedly called harm to Michel's business interests in New York." *Id.* at 694. It is also worth noting that the parties in *Michel* agreed that New York law should govern the case. *Id.* at 695.

Unlike *Michel*, the parties do not agree that New York law should govern this action. In addition, *Michel* did not involve the accessibility of a defamatory article that was posted on a website, which is at issue in this case. This is a crucial factual distinction because while the Article may have been published in New York, Plaintiffs allege that the harm was caused to Plaintiffs in Florida. Further, the events that are described in the Article and the Dossier did not solely take place in New York. Therefore, the Court cannot find that *Michel* is directly analogous to the facts of this case because the harm was not caused to Plaintiffs' business interests in New York. Thus, the Court does not find this factor weighs in favor of transfer.

### 8.   Weight Accorded to Plaintiffs' Choice of Forum

Defendants argue that Plaintiffs' choice of forum is diminished here because the operative facts have no material connection to Florida, and Plaintiffs have no physical presence in the State of Florida.  Plaintiffs argue that none of the factors weigh in favor of disturbing Plaintiff's choice of forum, and therefore, the action should not be transferred.

The plaintiff's choice of forum is generally a factor that heavily weighs against transfer. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d at 260 ("The plaintiff's choice of forum should not be disturbed unless it is cl early outweighed by other considerations.").   Contrary to Defendants' representations, Plaintiffs have persuaded this Court through their submission of affidavits and documentary evidence (D.E. 21-12 ¶ 5) that Plaintiff Webzilla has maintained a physical presence in the State of Florida.  Therefore, the Court rejects Defendants' request that the Court disregard Plaintiffs' choice of forum because Plaintiffs do not have a material connection to Florida.   And because the Court does not find that any other consideration outweighs Plaintiffs' choice of forum, the Court does not find that a transfer to the Southern District of New York is necessary or appropriate.

### 9.   Trial Efficiency and Interests of Justice

Defendants argue that trial efficiency and the interests of justice favor transferring this case to New York because a trial in Miami would take place hundreds of miles from all parties, the non-party witnesses, the most significant documents, and the place where the events at issue occurred.

In opposition, Plaintiffs argue that according to recent statistics from the Administrative Office of the United States Courts, cases in the Southern District of Florida reach trial in half the time than cases filed in the Southern District of New York, and therefore, the time that it would

take to transfer this action would only add to the delay that the parties would face if their case was tried in the Southern District of Florida.

The Court does not find that this factor weighs in favor of transferring the action to the Southern District of New York.  "Courts require a significant difference between districts before finding that congestion merits transfer."  *Nat'l Trust Ins. Co.*, No. 3:16-cv-695-J-34PDB, 2016 WL 7197397, at *8 (citing *Speed Trac. Techs.*, 567 F. Supp. 2d at 805).  While the statistics from the Administrative Office of the United States Courts speak for themselves in that cases in the Southern District of Florida reach trial in half the time than cases filed in the Southern District of New York, this Court, in particular, is acutely aware of the importance of trial efficiency and interest of justice and will be sure closely monitor this case's progress.  Therefore, this factor also weighs against transfer of this action.  Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss or Transfer (D.E. 15) is DENIED.  Defendants SHALL file their Answers to Plaintiff's Complaint no later than **Friday, <u>June 9, 2017</u>**.

DONE AND ORDERED in Chambers at Miami, Florida, this 22d day of May, 2017.

_____
UNITED STATES DISTRICT JUDGE

cc:
counsel of record via cm/ecf