# McDermott
# Will & Emery

Boston Brussels Chicago Dallas Düsseldorf Frankfurt Houston London Los Angeles Miami
Milan Munich New York Orange County Paris Rome Seoul Silicon Valley Washington, D C

Strategic alliance with MWE China Law Offices (Shanghai)

Catrin L Hughes
clhughes@mwe.com
+44 020 7570 1468

Our Ref: ZR/CH - 102171 0011

Orbis Business Intelligence Limited
9-11 Grosvenor Gardens
London SW1W 0BD

3 February 2017

Dear Sirs

**(1) Aleksej Gubarev (2) Webzilla B.V. (3) Webzilla Limited & (4) XBT Holding S.A v.
(1) Orbis Business Intelligence Limited & (2) Christopher Steele
In the High Court of Justice**

We act for Aleksej Gubarev, Webzilla B.V., Webzilla Limited, and XBT Holding S.A. Our clients have today filed a claim against you in the High Court of Justice.

Please find enclosed by way of service the following documents:

1. Claim form;
2. Particulars of claim; and
3. The defendant's response pack.

Yours faithfully

*McDermott Will + Emery UK LLP*

**McDermott Will & Emery UK LLP**

Enc.

McDermott Will & Emery UK LLP is a limited liability partnership regulated by the Solicitors Regulation Authority and registered in England and Wales, registered number OC311909. The members are solicitors or registered foreign lawyers. A list of members' names and their professional qualifications is available for inspection at the principal place of business and registered office shown below.

110 Bishopsgate London EC2N 4AY DX 131004 CDE Houndsditch Telephone: +44 20 7577 6900 Facsimile: +44 20 7577 6950 www.mwe.com

DM_DE 8386021-1 102171 0011

DEFEND · COPY



**Claim Form**

| In the HIGH COURT OF JUSTICE QUEENS BENCH DIVISION | |
|---|---|
| Fee Account no. | |
| Help with Fees – Ref. no. (if applicable) | H W F - ☐☐☐ - ☐☐☐ |

You may be able to issue your claim online which may save time and money. Go to www.moneyclaim.gov.uk to find out more.

| Claim no. | HQ17X00413 |
|---|---|
| Issue date | 0 3 FEB 2017 |

Claimants' names and addresses including postcodes

(1) ALEKSEJ GUBAREV
c/o McDermott Will & Emery UK LLP
110 Bishopsgate
London EC2N 4AY

(2) WEBZILLA B.V.
c/o McDermott Will & Emery UK LLP
110 Bishopsgate
London EC2N 4AY


Assigned to master Thornett

(3) WEBZILLA LIMITED
c/o McDermott Will & Emery UK LLP
110 Bishopsgate
London EC2N 4AY

(4) XBT HOLDING S.A.
c/o McDermott Will & Emery UK LLP
110 Bishopsgate
London EC2N 4AY



Defendants' names and addresses including postcodes

(1) Orbis Business Intelligence Limited
HBW Highland House
Mayflower Close
Chandlers Ford
Eastleigh
Hampshire SO53 4AR

(2) Christopher Steele
186 Reading Road
Wokingham
Berkshire RG41 1LH

---

For further details of the courts www.gov.uk/find-court-tribunal
When corresponding with the Court, please address forms or letters to the Manager and always quote the claim number.
N1 Claim form (CPR Part 7) (08.16)
This form is reproduced from http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do and is subject to Crown copyright protection. Contains public sector information licensed under the Open Government Licence v3.0
© Crown Copyright 2016

Brief details of claim

Damages and an injunction for libel in respect of publications published and/or caused to be published by the Defendants on and/or around 10 January 2017 as more particularly set out in the attached Particulars of Claim.

Value

Expect to recover damages in excess of £200,000

You must indicate your preferred County Court Hearing Centre for hearings here *(see notes for guidance)*
Royal Courts of Justice

| Defendant's name and address for service including postcode | |
|---|---|
| (1) Orbis Business Intelligence Limited<br>HBW Highland House<br>Mayflower Close<br>Chandlers Ford<br>Eastleigh<br>Hampshire SO53 4AR<br><br>(2) Christopher Steele<br>186 Reading Road<br>Wokingham<br>Berkshire RG41 1LH | |

| | £ |
|---|---|
| Amount claimed | Exceeds £200,000 |
| Court fee | £10,000 |
| Legal representative's costs | To be assessed |
| Total amount | |

| Claim No. | |
|---|---|

Does, or will, your claim include any issues under the Human Rights Act 1998?  [ ] Yes [ x ] No

Particulars of Claim (attached) (to follow)

Attached

**Statement of Truth**
*(I believe)(The Claimant believes) that the facts stated in these particulars of claim are true.
* I am duly authorised by the claimant to sign this statement

Full name __Ziva Robertson__

Name of claimant's legal representative's firm __McDermott Will & Emery UK LLP__

signed _____  position or office held __Partner__
(if signing on behalf of firm or company)
Claimant's legal representative
*delete as appropriate

McDermott Will & Emery UK LLP
110 Bishopsgate
London EC2N 4AY

Claimant's or claimant's legal representative's address to which documents or payments should be sent if different from overleaf including (if appropriate) details of DX, fax or e-mail.

Claim No: HQ17D00413

# IN THE HIGH COURT OF JUSTICE

## QUEEN'S BENCH DIVISION

BETWEEN:

(1) ALEKSEJ GUBAREV
(2) WEBZILLA B.V.
(3) WEBZILLA LIMITED
(4) XBT HOLDING S.A.

Claimants

-and-

(1) ORBIS BUSINESS INTELLIGENCE LIMITED
(2) CHRISTOPHER STEELE

Defendants

---

### PARTICULARS OF CLAIM

---

1. The First Claimant is a successful businessman. He is based in Cyprus and has a substantial personal and business reputation throughout the European Union, including in England and Wales. He is the CEO and beneficial owner of the Second, Third and Fourth Claimants.

2. The Second and Third Claimants are hosting infrastructure companies based in the Netherlands and Cyprus respectively. Both companies are wholly owned subsidiaries of the Fourth Claimant, which is based in Luxembourg. Each of the companies has a substantial business and trading reputation throughout the European Union, including in England and Wales.

3. The First Defendant is a company registered in England and Wales ("Orbis"). Orbis provides corporate intelligence services.

4. The Second Defendant is a founder and director of Orbis.

5. Insofar as material the Second Defendant was acting at all times for and on behalf of Orbis, whether as agent, employee, consultant, director or otherwise. The First Defendant is vicariously liable for all of the Second Defendant's actions upon which the Claimants rely in these Particulars of Claim.

6. The Defendants published and/or caused to be published to the world at large, and thereby to vast (and unquantifiable) numbers of people across the European Union, the following words defamatory of the Claimants on or around 10 January 2017 and thereafter:

> "▬▬▬▬ reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership. Entities linked to one Alexei GUBAROV were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation. In Prague, COHEN agreed contingency plans for various scenarios to protect the operations, but in particular what was to be done in the event that Hillary CLINTON won the presidency. It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and that cyber and other operators were stood down / able to go effectively to ground to cover their traces."

7. In their natural and ordinary meaning, the words complained of meant and were understood to mean that the Claimants had deliberately and without consent hacked into the IT systems of the leadership of the United States Democratic Party and had used such unlawful access to transmit viruses, plant bugs, steal data and alter files and programs.

8. Without prejudice to the generality of the averment in paragraphs 6 and 7:

   8.1 The words complained of are part of a document ("the December Memorandum") dated 13 December 2016. The December Memorandum was prepared (whether alone or with others) by the First Defendant on or around that date. The December Memorandum was one of a series of similar documents prepared (whether alone or with others) by the First Defendant between June and December 2016 (the "the Steele Memorandums"; together "the Steele Dossier"). Paragraph 5 above is repeated.

   8.2 Pending disclosure, the Claimants freely admit that they do not know the precise identities of those to whom the Defendants originally provided the December Memorandum. However, the Defendants prepared and initially published the December Memorandum intending that its contents should be republished to the world at large; further or alternatively in circumstances such as it was reasonably foreseeable that its contents would be republished to the world at large. As to which:

2

 8.2.1 The general subject of the Steele Memorandums (including the December Memorandum) was the possibility that the Russian state had interfered in the U.S. general election and had gathered compromising information about Donald Trump. This was a subject of enormous topicality.

 8.2.2 The Steele Memorandums were prepared by the Defendants to be provided to third parties, as they were.

 8.2.3 More specifically, the Steele Memorandums were provided to third parties in order that those parties could use the information contained within them for strategic purposes. As the Defendants were well aware, this would be highly likely to include making public the information contained within them.

 8.2.4 By 13 December (the date of the December Memorandum) the Defendants had prepared and published a substantial number of memorandums (between ten and twenty).

 8.2.5 Pending disclosure it is not known whether the Defendants themselves directly provided any of the memorandums to media organisations or journalists. However by 13 December the Defendants were well aware that a number of (if not all) previously prepared memorandums had been published (or republished) to and within such organisations and that their contents were being openly and widely discussed.

 8.2.6 By the same date the Second Defendant had himself given informal interviews to journalists in relation to the content of the Steele Dossier. Indeed he discussed his desire that its contents should be published more widely.

8.3 On 10 January 2017 the Steele Dossier, including the December Memorandum containing the words complained of was published online on the Buzzfeed website where they were accessible to the world at large and read by very substantial (and unquantifiable numbers) of people across the European Union.

8.4 Thereafter the words complained of (further or alternatively the allegation they conveyed) were further published on the internet countless times and were read by further very substantial numbers of people across the European Union.

8.5 In all the circumstances, the Defendants intended the words complained of (further or alternatively the allegation they conveyed) to be so republished. Further or alternatively, such republication was manifestly a reasonably foreseeable consequence of the Defendants' actions.

3

9. Publication of the words complained of has caused and is likely to cause serious harm to the reputation of the Claimants. It has caused the Claimants serious financial loss and is likely to do so in the future.

10. For the avoidance of doubt, and pending detailed analysis of the losses suffered by the Claimants, their claim extends to and is confined to publication of the words complained of throughout the European Union. If and insofar as necessary, the Claimants will rely upon the presumption that the law of each of the jurisdictions in which the words complained of were published was and is, so far as material, the same as the law of England and Wales.

11. Without prejudice to the generality of paragraph 9:

    11.1 The allegation conveyed by the words complained of is incredibly serious.

    11.2 The words complained of were published extremely widely.

    11.3 The Claimants are already being caused serious financial loss. The Claimants are monitoring these losses with the intention of preparing a complete schedule of loss in due course, but for the avoidance of any doubt as a direct result of the publication complained of:

    (a) The Claimants' relationships with financial lenders have been adversely affected and some credit facilities have been frozen or withdrawn. This has seriously interrupted the Claimants' day to day business, which has caused and continues to cause ongoing loss and damage. The Claimants are in the process of quantifying these losses.

    (b) The Claimants have lost clients, both in England and Wales and across the European Union; and

    (c) The Claimants have had to divert a significant amount of resources to dealing with the fallout of the publications complained of and have incurred (and continued to incur) significant expense on P.R. and marketing costs as a result.

12. As a result of the publication complained of, the Claimants have suffered loss and damage and the First Claimant has additionally suffered hurt and distress. In support of the Claimants' claim for damages and, in respect of the First Claimant, aggravated damages, the Claimants will rely upon the facts and matters pleaded in paragraph 11 above and additionally upon the following:

12.1 Notwithstanding the seriousness of the allegation and the evident likelihood that its publication would have serious repercussions for the Claimants, no attempt was made by the Defendants to contact them prior to publication.

12.2 In the circumstances, it is clear that the Defendants were prepared to tarnish the Claimants without providing them an opportunity to respond or conducting even the most basic attempt at verification.

12.3 Notwithstanding the seriousness of the allegations, the Defendants have declined to deal with the matter with any speed whatsoever. The Defendants have failed in a reasonable time to provide any meaningful response to the Claimants' letter before action with the result that it was necessary to issue proceedings in order to protect and restore the Claimants' reputations.

13. Unless restrained, the Defendants will continue to publish or further publish the words complained of or words with the same or a similar defamatory meaning.

AND THE CLAIMANTS CLAIM:

(1) General damages (including in the case of the First Claimant, aggravated damages) for defamation.

(2) Special damages as per paragraph 11 above.

(3) Interest on such damages pursuant to s.35A of the Senior Courts Act 1981 at such rates and for such period as the Court thinks just.

(4) An injunction to restrain the Defendants whether by themselves, through agents, others or otherwise howsoever from publishing or further publishing the words complained of or words with the same or similar defamatory meaning.

(5) Further or other relief.

(6) Costs.

## STATEMENT OF TRUTH

The Claimant believes that the facts stated in these Particulars of Claim are true. I am duly authorised by the Claimants to sign this statement on their behalf

Signed:

Ziva Robertson
Partner
McDermott Will & Emery UK LLP

Dated 3 February 2017

The Claimants' solicitors are McDermott Will & Emery UK LLP, 110 Bishopsgate, London EC2N 4AY where they will accept service of proceedings on behalf of the Claimants.

To the Defendants

To the Court Manager

6