# Exhibit 13

# REPORTER'S HANDBOOK – REPORTER'S QUALIFIED PRIVILEGE

**Reporter's Qualified Privilege**

by Susan H. Aprill and Sanford L. Bohrer

*Updated June 2015*

**I. Overview**

**II. Appendix 1**

    A. What To Do if You Are Subpoenaed or Asked To Testify

    B. Your Rights

**III. Appendix 2**

**IV. Appendix 3**

    A. The Privilege Originates in the Florida Supreme Court

    B. The Privilege is Eroded by the Florida Supreme Court

    C. The Privilege is Clarified by the Florida Supreme Court and Codified in Legislation

**About the Authors**

**I. Overview**

**A. The Issue:** Where a professional journalist has gathered or received information or documents in his or her professional newsgathering capacity, when can that journalist be compelled to provide such information or documents to a party to a civil or criminal lawsuit, or to government investigators?

**B. How It Arises:** Usually the issue is raised when a subpoena is served on the journalist, demanding disclosure of a source (confidential or not), the content of information received by the journalist (whether disclosed in an article or broadcast or not), and/or notes or other documents compiled or received by the journalist.

**C. A Qualified Privilege:** Since 1998, when the Florida legislature enacted a 'shield law' affording a qualified privilege to journalists, Section 90.5015, Florida Statutes, Florida has recognized that journalists may not have to provide information demanded by a subpoena in certain circumstances. If a journalist claims a privilege, i.e., a right not to testify or turn over written information, courts must examine the nature of the information sought, the nature of the controversy for which it is sought and its relation to that controversy, and whether the information is available elsewhere, in determining whether to

recognize the privilege or to compel a journalist to testify or turn over information. Privilege from compelled disclosure may apply to both confidential and non-confidential information in both civil and criminal proceedings.

Florida's federal courts recognize a similar privilege, which also applies to both confidential and non-confidential sources and in both criminal and civil cases, but base it on the First Amendment. At least one federal court has applied the Florida statute. See Carroll v. TheStreet.com, Inc., 2014 WL 5474048 (S.D. Fla. 2014)(applying section 90.5015 and finding that the privilege is substantive and applies in federal court in diversity jurisdiction cases).

**D. The Test:** Courts apply a three-part test in determining whether the journalist should prevail: (1) whether the journalist possesses information relevant to the controversy, (2) whether the same information is available from alternative sources, and (3) whether there is a compelling need for the information. Section 90.5015, Florida Statutes. See also State v. Davis, 720 So. 2d 220, 227 (Fla. 1998) (the same year the shield law was enacted).

**E. Balancing of Interests:** When applied, the test involves a balancing of interests, meaning information received and published on a non-confidential basis which is critical to the prosecution or defense of a criminal defendant is less likely to be protected than the identity of a confidential source sought in an ordinary civil lawsuit arising out of an automobile accident.

In addition to the statute, these recent court decisions are instructive. In Muhammad v. State, 132 So. 3d 176, 190 (2013), a death row inmate challenged the use of midazolam hydrochloride in the execution protocol as unconstitutional. He served subpoenas on two newspaper reporters and sought to introduce evidence of articles they had written after they witnessed the execution of William Happ. In the articles, the two reporters reported that Happ had blinked and moved his head several times in the minutes after being injected with the drug. Muhammad intended to support his motion for post-conviction relief using this testimony. The circuit court quashed the subpoenas, finding that Muhammad failed to overcome the journalist's privilege set forth in section 90.5015, and excluded the articles as hearsay. The Florida Supreme Court affirmed these rulings.

In United States v. Thompson, 2015 U.S. Dist. LEXIS 47110 (S. D. Fla. 2015), a motion to quash subpoenas on journalists actually filming police activity at the time of a plaintiff's arrest was granted with the court finding that the plaintiff had failed to satisfy the three pronged test established in United States v. Caporale, 806 F. 2d 1487, 1503-04 (11th Cir. 1986) – (1) the information sought must be highly relevant; (2) the information must be necessary to the proper presentation of the case; and (3) the information must be unavailable from other sources. This, despite the argument that the videotape would be the best evidence of the then- existing facts and circumstances giving rise to the arrest, where the plaintiff claimed his arrest was not based on probable cause.

Just a few weeks later, a magistrate in the same court *denied* a motion to quash a subpoena served on the NBC local news affiliate's reporter finding that the defendant in a federal civil rights action, a Miami-Dade County police officer, satisfied all three elements of the *Caporale* case. *Gregory v. Miami-Dade County*, 2015 WL 3442008 (S.D. Fla. 2015). In *Gregory*, reporter Willard Shepard had interviewed the plaintiff some 20 months after the incident about plaintiff's actions just before the plaintiff was shot by a police officer. The officer claimed that he believed the plaintiff was reaching for a gun and had grounds to believe that the plaintiff posed a threat of serious physical harm. The plaintiff later denied making the statement to Shepard that he had reached for a bat concealed in his waistband. The court found that the defendant officer had demonstrated clearly and convincingly that the testimony sought was highly relevant, necessary to the proper presentation of the case and unavailable from other sources, and denied the motion. The court did limit the time and substantially narrowed the scope of the deposition inquiry.

In *State of Florida v. Luongo*, Case No. 14-13813 CF 10A (Fla. 17th Cir. Ct. Jun. 11, 2015)(unpubl. opinion), a Broward County circuit judge applied the privilege and denied a murder defendant's motion for leave to issue a subpoena to ABC for its unedited video footage and interviews developed during newsgathering — the filming of a *20/20* segment aired earlier this year. The segment concerned the Broward Sheriff's Office's undercover investigation of a murder-for-hire plot. The judge, finding that the defendant had already obtained all recordings made by law enforcement, denied the motion on the grounds that the material sought was not shown to be relevant and admittedly was sought because it *might* constitute impeachment material, the defendant had not established that it was not available from alternative sources such as depositions of others, and that no compelling interest existed requiring disclosure.

**F. No Privilege for Direct Evidence of Crime:** There is no privilege when the reporter is an eyewitness to a relevant event such as an arrest or police search, has heard a direct confession of a crime, or has physical evidence of criminal activity – including unpublished photographs or tape. The reporter will in all likelihood be required to provide the evidence. *News-Journal Corp. v. Carson*, 741 So. 2d 572 (Fla. 5th DCA 1999)(interpreting the term 'physical evidence' in subsection (2) of the Shield Law to be limited to physical evidence 'of crimes'). However, it should be recognized that not all unpublished material in the possession
of a journalist is evidence of a crime if it merely depicts interviews about the crime and out-takes of the investigation participants. See *State of Florida v. Luongo*, above.

## II. Appendix 1

### A. What To Do if You Are Subpoenaed or Asked To Testify

A subpoena is in essence a court order on behalf of a party to a lawsuit commanding the person named on it to attend a hearing, trial, or deposition and testify under oath. The subpoena also may require the person to bring documents with him or her and produce them for inspection and photocopying by the party having the subpoena issued.

You cannot ignore a subpoena. If you ignore a subpoena and fail to appear, you are subject to being held in contempt, which means you can be put in jail and/or fined until you testify. As a journalist, you should know that this means, unless you get the subpoena quashed, i.e., voided or nullified by a court, your work product, including notes, documents, and confidential sources, can be revealed involuntarily in court proceedings and you can be called to be a witness for one side or the other in a court proceeding. Under a First Amendment privilege, Florida judges in both state and federal courts may protect journalists from being compelled to testify, whether or not a confidential source is involved. But that is not always the case, and you must take care to protect your rights by following some basic rules.

1. Do not agree to appear voluntarily as a witness in any proceeding.

2. If an attorney or investigator asks you for 'background' or additional information about a story you wrote, exercise extreme caution in disclosing any information. Any disclosure to the attorney or investigator later may be deemed a waiver of your privilege against testifying.

3. If you are served with a subpoena, or someone else receives it 'on your behalf,' record precisely when, by whom, and how it was served. Never ignore the subpoena.

4. Always demand a check or subpoena fee from a subpoena process server to cover certain expenses prescribed by statute; if no check is received, ask the server to note that fact on the subpoena itself.

5. Do not contact the attorney involved; rather, immediately report the receipt of a subpoena to your editor or news director, who should report it to the news organization's lawyer. If you or your editor have no lawyer, consider calling the First Amendment Foundation Hotline, (800)337-3518 or (850) 222-3518.

**B. Your Rights.**

In general, you can expect *not* to be compelled to produce your work product or testify (assuming you are not an eyewitness to an event in a criminal case) unless the party seeking to compel you has shown:

1. the information sought is relevant to an issue in the case;
2. the information is not only relevant but is so relevant that there is a compell ing need for the information, so compelling as to be considered as going to the heart of one party's case, and

3. the information cannot be obtained by alternative means or from persons whose First Amendment rights are not at stake.

III. Appendix 2

Section 90.5015 of the Florida Statutes provides for a journalist's privilege.

(1) **Definitions.** — For purposes of this section, the term:

(a) 'Professional journalist' means a person regularly engaged in collecting, photographing, recording, writing, editing, reporting, or publishing news, for gain or livelihood, who obtained the information sought while working as a salaried employee of, or independent contractor for, a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine. Book authors and others who are not professional journalists, as defined in this paragraph, are not included in the provisions of this section.

(b) 'News' means information of public concern relating to local, statewide, national, or worldwide issues or events.

(2) **Privilege.** — A professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news. This privilege applies only to information or eyewitness observations obtained within the normal scope of employment and does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes. A party seeking to overcome this privilege must make a clear and specific showing that:

(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought;

(b) The information cannot be obtained from alternative sources; and

(c) A compelling interest exists for requiring disclosure of the information.

(3) **Disclosure.** — A court shall order disclosure pursuant to subsection (2) only of that portion of the information for which the showing under subsection (2) has been made and shall support such order with clear and specific findings made after a hearing.

(4) **Waiver.** — A professional journalist does not waive the privilege by publishing or broadcasting information.

(5) **Construction.** — This section must not be construed to limit any privilege or right provided to a professional journalist under law.

(6) **Authentication**. — Photographs, diagrams, video recordings, audio recordings, computer records, or other business records maintained, disclosed, provided, or produced by a professional journalist, or by

the employer or principal of a professional journalist, may be authenticated for admission in evidence upon a showing, by affidavit of the professional journalist, or other individual with personal knowledge, that the photograph, diagram, video recording, audio recording, computer record, or other business record is a true and accurate copy of the original, and that the copy truly and accurately reflects the observations and facts contained therein.

(7) **Accuracy of Evidence.** — If the affidavit of authenticity and accuracy, or other relevant factual circumstance, causes the court to have clear and convincing doubts as to the authenticity or accuracy of the proffered evidence, the court may decline to admit such evidence.

(8) **Severability.** — If any provision of this section or its application to any particular person or circumstance is held in valid, that provision or its application is severable and does not affect the validity of other provisions or applications of this section.

Added by Laws 1998, c. 98-48, 1, eff. May 12, 1998.

IV. Appendix 3

**Historical Basis for the Shield Law: the Ups and Downs of Judicial Protection for Reporters**

**A. The Privilege Originates in the Florida Supreme Court.** Nearly 40 years ago, the Florida Supreme Court, in the celebrated case of reporter Lucy Ware Morgan, recognized a reporter's qualified First Amendment privilege not to reveal confidential sources. Ms. Morgan twice had been convicted of contempt for refusing to disclose the confidential source who had leaked to her the substance of a sealed grand jury presentment. On appeal, the Second District Court of Appeal affirmed the conviction even while recognizing a qualified First Amendment privilege. *Morgan v. State,* 325 So. 2d 40 (Fla. 2d DCA 1975). But, making new law, the Florida Supreme Court reversed, holding that a generalized governmental interest in grand jury secrecy was insufficient to outweigh the First Amendment interest in the protection of confidential sources. *Morgan v. State*, 337 So. 2d 951 (Fla. 1976). To justify this interpretation, the *Morgan* opinion offered a close reading of the United States Supreme Court's plurality opinion in *Branzburg v. Hayes,* 408 U.S. 665 (1972), relying on a balancing of constitutional and societal or governmental interests as articulated in Justice Powell's concurring opinion. The balance between those interests was weighed on a three-part scale, now codified in section 90.5015, Florida Statutes. Ten years later, the Florida Supreme Court reaffirmed *Morgan*, extending the privilege to both criminal and civil matters. *Tribune Co. v. Huffstetler*, 489 So. 2d 722 (Fla. 1986). After *Morgan*, Florida courts applied the privilege in both civil and criminal cases, and extended the privilege to include information obtained from non-confidential sources, *Tribune Co. v. Green*, 440 So. 2d 484 (Fla. 2d DCA 1983), *rev. denied*, 447 So. 2d 886 (Fla. 1984), recognizing that journalists have due process rights just like

other citizens. *Times Publishing Co. v. Burke*, 375 So. 2d 297 (Fla. 2d DCA 1979) (holding the privilege requires that a hearing and reasonable notice be granted the press before an order compelling a reporter to testify in a judicial proceeding may be entered).

**B. The Privilege Is Eroded by the Florida Supreme Court.** Over the course of the next several years, the Supreme Court took a turn in another direction. It narrowed and limited the privilege to some extent, carving out exceptions to the privilege where the reporter was, for example, an eyewitness to a relevant event. In *Miami Herald Publishing Co. v. Morejon*, 561 So. 2d 577 (Fla. 1990), the Florida Supreme Court held that an eyewitness to a police search of a criminal suspect had no privilege to refuse to testify regarding his observations when the suspect later moved to 'suppress' the evidence gathered in the search. The Supreme Court left unresolved other aspects of the journalist's privilege question. Then, almost a year later, the Florida Supreme Court again rejected a reporter's claim of qualified privilege to refuse to disclose information obtained while an eyewitness to a relevant event which was the subject of a criminal proceeding. In *CBS, Inc. v. Jackson*, 578 So. 2d 698 (Fla. 1991), the court held CBS had to turn over to the criminal defendant 'outtakes' of its videotape of the defendant's arrest since the defendant's request did not implicate any sources of information, but rather sought discovery of physical evidence of the 'events surrounding' his arrest. In a footnote, the court commented that no qualified privilege should apply when a party seeks unpublished photographs or videotape from a reporter. Courts were then free to *interpret* the *Morejon* and *Jackson* decisions to require a reporter to testify about or release unpublished material reflecting his or her eyewitness observations, often giving inconsistent interpretations.

Even when applying the judicially-created three-part test, courts had compelled journalist's testimony in cases not involving confidential sources. For example, in *Waterman Broadcasting of Florida, Inc. v. Reese*, 523 So. 2d 1161 (Fla. 2d DCA 1988), the Court of Appeal ruled a reporter had to testify regarding her interview with a doctor who 'confessed' to the reporter that he had given his terminally ill wife a lethal dose of drugs in order to hasten her death. The court found (a) the confession to be relevant because each confession to a crime is unique; (b) a compelling interest because of the State's responsibility to investigate the crime; and that there was (c) no alternative means of getting the information because no other such conversations occurred.

**C. The Privilege is Clarified by the Florida Supreme Court and Codified in Legislation.** In 1998, the privilege was codified when the Florida Legislature enacted a journalist's privilege statute or 'shield law,' which, as noted above, is at Section 90.5015, Florida Statutes. Essentially, this statutory privilege provides that 'professional journalists,' as defined by the statute have a qualified privilege *not* to be a witness concerning and *not* to disclose information, including, but not limited to confidential sources, gathered in his or her professional journalistic capacity. The privilege is a qualified one, however, because one seeking the information can compel the journalist to testify by meeting the three-part test described

above: relevance of the information, a compelling need for it, and no alternative sources. At least one court of appeal has held the privilege is not 'waived' simply because the journalist discusses the subject in interviewing someone for a publication. *Ulrich v. Coast Dental Servs., Inc*. 739 So. 2d 142 (Fla. 5th DCA 1999).

In 1998, in addition to the legislative enactment of the 'journalist's privilege' or 'shield law', the Florida Supreme Court decided three significant cases, breathing new life into what had been an eroding and inconsistently applied judicial privilege. Two district courts of appeal had 'certified' to the Florida Supreme Court the question whether Florida law provided a qualified reporter's privilege against the disclosure of non-confidential information relevant to a criminal proceeding. In October of 1998, the Supreme Court held that such a qualified privilege exists against the disclosure of both non-confidential and confidential information, stressing the need to balance a defendant's constitutional rights against the rights of a free press. *State v. Davis*, 720 So. 2d 220 (Fla. 1998).

In *Davis*, the Court reversed the Second District Court of Appeal decision which had vacated a defendant's conviction on the theory that the reporter's privilege should not apply where no confidential source was implicated and the defendant should have been allowed to depose a reporter who had interviewed the victim to impeach her. The Florida Supreme Court reversed. It held that the privilege does, in fact, apply to situations involving *non-confidential,* as well as confidential information, and reinstated the defendant's conviction.

In *Kidwell v. State*, 730 So. 2d 760 (Fla. 1998), the Supreme Court employed the test explained in its *Davis* decision and quashed the trial court's contempt order which had caused a reporter to be jailed and which, as stated above, had been upheld by the Fourth District Court of Appeal, observing that in *Kidwell*, unlike in *Davis*, where the defendant's right to due process and compulsory process was to be accorded great weight, the government had served the subpoena on the reporter, and explained the need in these circumstances for a careful evaluation by the trial court of the information in issue to protect against the press becoming an 'investigative arm' of the state.

Finally, in *Morris Communications Corp. v. Frangie*, 720 So. 2d 230 (Fla. 1998), where a reporter's motion to quash a subpoena in a civil proceeding was denied, the First District Court of Appeal then certified to the Supreme Court the question whether the privilege applied to non-confidential information relevant to a civil proceeding. The Supreme Court made clear that its decision in *Davis*, a criminal case, applies to civil proceedings as well.

### ABOUT THE AUTHORS

*Susan H. Aprill is a shareholder of the law firm of Fowler White Burnett, P.A. in Miami. She has been a member of the Florida Bar since 1982, having received her B.S. from the University of Illinois and her J.D. from the University of Miami School of Law in 1982. Over the years, she has worked on a variety of constitutional and commercial cases, including those involving media and non-media defamation*

suits, reporters subpoena cases, newsrack litigation, cases concerning access to courts and public records, and internet-based claims. She is a longtime member of the Bar's Media and Communications Law Committee and has served as editor of 'Legal Issues Related to Public Access and the Press' prepared in conjunction with educational conferences for Florida circuit judges on press issues, and as co-chair and panelist at the Bar's Annual Reporter's Workshops and lectures at the First Amendment Foundation's Sunshine Seminars.

Sanford L. Bohrer is a partner of the law firm of Holland & Knight LLP in Miami. He has been a member of The Florida Bar since 1973, having received his B.A. from Colgate University in 1970, and his J.D. from Columbia University in 1973. His clients include The Miami Herald, New Times, The Daily Business Review, Houghton Mifflin Harcourt, and Suncoast Media Group. He is a contributor to the Media Law Resource Center's '50-State Survey on Media, Privacy and Related Law.' Mr. Bohrer established the Florida First Amendment Hotline.

---

Authored by the Media & Communications Law Committee, the handbook serves as a resource guide for members of the media about topics in the legal profession.

[Revised: 9/1/2007]