**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.

Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

Defendants.
_____/

## DEFENDANTS' REPLY MEMORANDUM OF LAW REGARDING THE REPORTER'S PRIVILEGE

**PRELIMINARY STATEMENT**

Plaintiffs' memorandum of law, Dkt. 83 ("Pl. Br.") barely grapples with the arguments in Defendants' opening memorandum, Dkt. 80 ("Df. Br." or "Opening Memo").  Instead, it argues that Americans should to this day be wholly ignorant about a document that is at the heart of the country's biggest on-going political controversy, and castigates BuzzFeed[1] for publishing it. And it is rife with confusing details about Webzilla, Inc., the one Plaintiff who has any alleged connection to Florida, along with a surfeit of references to cake.

But Plaintiffs barely even try, and certainly do not succeed, to advance any argument sufficient to overcome the reporter's privilege under New York or Florida law, or the First Amendment. Instead, Plaintiffs claim that Defendants must be compelled to name the Source because Plaintiffs believe that Defendants intend to rely on the identity of the Source to establish the fair and true report defense and a lack of malice.  But even if Defendants did intend to do that – which they do not – Plaintiffs do not, and cannot, dispute that a litigant does not lose the *reporter's privilege* by advancing a sword-and-shield position.  While there may be other consequences, waiving the reporter's privilege is not one of them.

Plaintiffs also spend much paper arguing that Florida substantive law applies to this litigation.  While we think that argument is wrong as well, it too is wholly irrelevant to this motion.  The question of what State's privilege law applies to the choice of *privilege law* is governed by a different test than the one governing substantive law, and the privilege test clearly favors New York if there were any conflict with Florida's privilege law.  Plaintiffs do not even attempt to rebut that showing.

So for purposes of this motion, all that really matters is that Plaintiffs concede they have not taken a single deposition to explore alternative ways to obtain that information, nor do they show anything close to a "compelling need" to learn the identity of the Source. Instead, they mostly emphasize that they have subpoenaed six other news organizations to demand that they also disclose their confidential sources concerning the Dossier.  While that certainly underscores that Plaintiffs seem intent on using this lawsuit to attack journalists, it brings them no closer to meeting the high bar required to compel BuzzFeed to disclose its Source.  That alone requires that their request to compel be denied.

---

[1] All defined terms herein bear the same meaning as in the Opening Memo.

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

The reason that Plaintiffs spend most of their time arguing which state law applies to the merits, and how a supposed sword-and-shield position should affect the merits, is that they are really seeking to leverage this discovery dispute into an amorphous dispositive motion-cum-motion in limine limiting Defendants' defenses going forward. But that is not what this motion is about, nor could it be – this is simply a motion to establish whether Plaintiffs have overcome the reporter's privilege. To be sure, Plaintiffs' sword-and-shield metaphor is also wrong, because Defendants are not relying on the identity of the Source to establish any of their defenses. But those are all arguments that must be left for another day, if Plaintiffs want to make them to Judge Ungaro in any dispositive motions and/or motions in limine at the appropriate juncture in this case. For the present, this Court should deny Plaintiffs' request to compel Defendants to identify the Source because that information is privileged under the laws of both Florida and New York.

**ARGUMENT**

A.   **The Sword-and-Shield Doctrine Does Not Compel Disclosure**

The central theme of Plaintiffs' memorandum of law is that this Court should take the extraordinary step of forcing Defendants to reveal the identity of their Source because Defendants "seek to 'have their cake and eat it too'" by relying on affirmative defenses "that hinge upon the withheld information." Pl. Br. at 2. But this argument, which seems to ignore the whole of Defendants' Opening Memo, is just plain wrong. As set forth in the Opening Memo, under both Florida and New York law, the "sword and shield" doctrine does not effect a waiver of the reporter's privilege. *See TheStreet.com, Inc. v. Carroll*, 20 So. 3d 947, 949 (4th DCA 2009); *Oak Beach Inn Corp. v. Babylon Beacon*, 62 N.Y.2d 158, 166 (1984). Accordingly, even if it were the case that Defendants were relying on the identity of the Source, this court could not compel Defendants to reveal it.

Moreover, Defendants have been absolutely clear that they have no intention of relying on the Source's identity in this litigation. Def. Br. at 10. In short, to borrow Plaintiffs' analogy, Defendants have no wish to eat their cake.[2]

---

[2] Similarly, throughout their memorandum, Plaintiffs claim that Defendants are also withholding "any information concerning the provision of the Dossier to Buzzfeed." Pl. Br. at 14. This claim is simply incorrect, because as Defendants have repeatedly stated, they seek to shield only information tending to reveal the identity of the Source, nothing else.

3

**B.      The Source's Identity is Protected Under Both Florida and New York Law**

As set forth in the Opening Memo, under both Florida and New York, the identity of the Source is protected from compelled disclosure because Plaintiffs cannot satisfy the three-part test for overcoming the Florida reporter's privilege, and because – as Plaintiffs concede – New York law gives confidential source information absolute protection.  *See* Def. Br. at 9-14.

1.    Plaintiffs Cannot Overcome the Florida Reporter's Privilege

*A.    The Florida Shield Law Applies to BuzzFeed*

As a threshold matter, Plaintiffs argue that the Florida Shield Law does not apply here because even though it employs Pulitzer Prize winners, BuzzFeed News publishes news on the Internet rather than in print.  Pl. Br. at 10-11.  This position is flatly inconsistent not only with common sense, but with settled law.  *See* Def. Br. at 9.  In *TheStreet.com, Inc. v. Carroll*, the Fourth District Court of Appeal held that the statute applied to an online news organization.  20 So. 3d 947, 949-50 (4th DCA 2009).  Plaintiffs' suggestion that the court in *Carroll* "did not discuss the applicability of the Florida statute to internet websites," Pl. Br. at 11, is, therefore, bewildering.  In fact, after the *Carroll* case was later removed, the federal court confirmed that "the 4th DCA's ruling that the journalist's privilege is in place" was law of the case as an issue previously "decided on appeal."  *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474048, at *4, *6 (S.D. Fla. Apr. 10, 2014).  There is no question that the Shield Law applies to Internet publications.[3]

*Carroll*'s approach is also consistent with the statutory text.  The definition of professional journalist in the Shield Law never says that the journalist has to work for a print publication – it says only that the person has to work for "a newspaper, news journal, news agency, press association, wire service, radio or television station, network or news magazine." Fla. Stat. § 90.5015(1)(a).  As an organization that produces and publishes news stories to the public through its website, BuzzFeed News is a "news agency," "news journal," or "news

---

[3] Plaintiffs cite no countervailing authority aside from an outdated website that says the unidentified authors were "not aware of any Florida cases addressing" whether the Shield Law applies to online publications. *See* Pl. Br. at 11 & Ex. 14.  Leaving aside the fact that a website cannot overrule the District Court of Appeal, the website is no help here because it does not say when it was written or updated – the most likely explanation for its failure to cite *Carroll* is simply that it was written before that case was decided.  The website in fact carries a warning that the Harvard Digital Media Project shut down in 2014 and "**the website and its contents are no longer being updated**." *See* Exhibit 1 (emphasis in original).

4

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

magazine" by any reasonable interpretation of those terms. *See, e.g., Kernal Records Oy v. Mosley*, 794 F. Supp.2d 1355, 1360-61 (S.D. Fla. July 7, 2011) (referring to "an online magazine")**.** The Defendants are, therefore, clearly entitled to invoke the Florida Shield Law.

Moreover, Plaintiffs' insistence on this argument is particularly odd in light of the fact that it is ultimately irrelevant to the Court's analysis. Even if the Florida Shield Law somehow does not apply, BuzzFeed and Mr. Bensinger are still protected by the First Amendment privilege recognized by the Eleventh Circuit, *Price v. Time, Inc.*, 416 F.3d 1327, 1343 (11th Cir. 2005), and the common-law privilege – neither of which they address. There can be no reasonable dispute, therefore, that the Florida reporter's privilege – as derived from the First Amendment, the common law, and the Shield Law – protects Defendants here.

        **B.**     *Plaintiffs Have Failed to Establish a Compelling Need for the Information*

Plaintiffs have failed to overcome that privilege. First, Plaintiffs have not demonstrated a compelling need for the documents – indeed, Plaintiffs never even refer to the "compelling need" requirement in their memorandum of law. Plaintiffs have, therefore, not made the showing necessary to overcome the Shield Law. *See* Def. Br. at 13-14.

        **C.**     *Plaintiffs Have Not Even Begun to Seek the Source's Identity From Alternative Sources*

Plaintiffs also attempt to elude the requirement that they exhaust potential alternative sources for the information they seek before attempting to extract it from Defendants. As discussed in the Opening Memo, Florida courts take the alternative source requirement very seriously and have held that the party seeking disclosure must "show that he has exhausted all alternatives to compelling the testimony" of the reporter. *McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 46-47 (N.D. Fla. 1998). For this reason, motions to compel confidential sources are meant to be made *after* a party pursues other avenues, not before they do so. *Gadsden Cty. Times, Inc. v. Horne,* 426 So. 2d at 1234, 1242 (1st DCA 1983). Bringing such a motion "as a preliminary discovery matter rather than as a 'last resort'" is sufficient reason to deny it. *Mize v. McGraw-Hill*, 82 F.R.D. 475, 478 (S.D. Tex. 1979); *see* Def. Br. at 11-13.

As Plaintiffs concede, it is only now, more than two months after bringing this motion, and after Defendants filed their Opening Memo, that they have made any effort to even start to try to comply with their obligation to seek this information from alternative sources. Plaintiffs say in their brief that they have served subpoenas on Fusion GPS, six media organizations

(including a demand that they disclose *their* confidential sources), and William F.B. O'Reilly "in an attempt to use alternate means to determine the identity of the individual who provided BuzzFeed with the Dossier." Pl. Br at 7. But this is insufficient to satisfy the alternative source requirement in two respects. First, it is clear as a matter of law that simply serving subpoenas is not enough – Plaintiff must "actually…depose[]" these alternative sources to find out what they know. *Smoliak v. Greyhound Lines, Inc.*, 2005 WL 3434742, at *3 (N.D. Fla. Oct. 17, 2005); *see also Price*, 416 F.3d at 1347 (requiring plaintiff to conduct sworn depositions of potential alternative sources, even though he had previously interviewed them). Plaintiffs do not dispute that they have failed to actually conduct *any* discovery from potential alternative sources here. Even if they took those depositions that would not likely be sufficient to satisfy their exhaustion requirement. It is surely doubtful that subpoenaing other journalists to identify their sources is what the Florida statute meant by exhausting "alternative sources", and in any event Plaintiffs have still not subpoenaed most of the people they identified to this Court as potential sources.[4] There is simply no question that Plaintiffs have clearly failed to satisfy the "alternative means" requirement and cannot, therefore, overcome the Florida reporters' privilege.

**C.     Defendants Have Not Waived the Privilege**

Finally, Plaintiffs claim that Bensinger and Smith waived the privilege by disclosing the identity of the Source to two other people – William F.B. O'Reilly and Gregory Bensinger. Pl. Br. at 13-14. In response to Plaintiffs' memorandum of law, Defendants reviewed those documents – none of which in fact disclose the Source's identity – and concluded they were withheld at least partially in error. Defendants have now produced the two emails with William F.B. O'Reilly to Plaintiffs in unredacted form. The have also produced the text messages with Gregory Bensinger at issue in redacted form sufficient to make clear that the only confidential source information was in a text message that in fact "failed to send" to Gregory Bensinger. Ken Bensinger has also submitted sworn evidence confirming that he did not share the Source's

---

[4] Plaintiffs filed a Notice of Hearing seeking to compel Defendants to disclose the Source's identity on August 31, 2017. Dkt. 63. They did not even bother asking Judge Ungaro for a signed copy of the executed Letter of Request for Christopher Steele until September 29, nearly a month later. Sept. 29 Tr. at 3. And they did not seek to enforce it in the English courts until November 2. They did not issue subpoenas for the news organizations and Mr. O'Reilly until October 26, almost two months after bringing this motion and ten days after Defendants filed their Opening Memo.

6

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

identity with his brother. Ex. 2 ¶ 4. There can accordingly be no waiver of privilege here under either Florida or New York law. To the extent that any doubt remains, Defendants would be happy to provide the Court with the unredacted Gregory Bensinger text message *in camera*.

Under both New York and Florida law, therefore, the motion to compel Defendants to reveal the Source's identity must be denied.

**D.      If New York and Florida Law Conflict, This Court Should Apply New York Law**

As set forth in the Opening Memo, because the outcome is the same under both Florida and New York law, this court need not undertake a choice of law analysis. If this Court determines, however, that the Florida reporter's privilege has been overcome, it should do the choice of law analysis and conclude New York's absolute reporter's privilege applies. In their memorandum, Plaintiffs puzzlingly devote pages and pages of analysis seeking to establish that Florida has the most significant relationship with this litigation by discussing in detail Plaintiff Webzilla, Inc.'s purported connections with the State. Pl. Br. at 3-6, 9. But that entire argument is wholly irrelevant to the privilege analysis.[5] As set forth in the Opening Memo – and wholly unaddressed in the Opposition – there is no dispute that there is a different choice of law test for privilege determinations. Def. Br. at 15; *see, e.g., Anas v. Blecker*, 141 F.R.D. 530, 532 (M.D. Fla. 1992); *Wolpin v. Philip Morris*, 189 F.R.D. 418, 424 (C.D. Cal. 1999) (applying Florida choice-of-law rules). Under the correct test, Plaintiffs' arguments are simply irrelevant, and it is clear that New York law applies.

Specifically, rather than looking to the relationship between the parties to the case, the correct test – which comes from section 139 of the *Restatement (Second) of Conflict of Laws* (the "Restatement") – asks which state "has the most significant relationship *to the communication*," and whether there is good reason to apply the privilege law of that state instead of the forum.

---

[5] As discussed in greater detail in Defendants' opening brief, Plaintiffs' arguments about the substantive choice of law are also wrong. *See* Def. Br. at 18 n.6. What matters under the Restatement analysis used by Florida courts is not whether Webzilla, Inc. is incorporated in this State, but where its principal place of business is located – in Texas. *See* Restatement § 150 (2)-(3). And neither of the other two Plaintiffs (a resident of Cyprus and a corporation headquartered in Luxembourg) have any meaningful connections to this State. *See also, e.g., Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016) ("The multistate nature of Sarver's alleged harms is central to the choice-of-law analysis. Because the film was distributed nationwide and Sarver's alleged injuries would most likely have occurred in multiple states, 'the place of injury will *not* play an important role in the selection of the state of application law.'") (citing Restatement § 145 cmt. (e), emphasis in original).

7

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

Restatement § 139(2) (emphasis added); *Anas*, 141 F.R.D. at 532. No case cited by Plaintiffs applies this, the correct test. Nor do Plaintiffs dispute that the evidence is clear that Florida has no relationship at all to BuzzFeed's communications with the Source. *See* Def. Br. at 16 (citing record). Plaintiffs do not dispute that New York – the headquarters of BuzzFeed's investigation into the Dossier, the place where Ben Smith made the decision to publish the Dossier, and the place where the Article was written – is the state with the most significant connection to those communications. *See* Def. Br. at 15-16; *see, e.g., Mazzella v. Philadelphia Newspapers, Inc.*, 479 F. Supp. 523, 527 (E.D.N.Y. 1979) (in a defamation case, applying the reporter's privilege of the State where "the events that led to the…article" in question took place, including the newsgathering).

Nor do Plaintiffs contest any of the "special reasons" to apply foreign law Defendants identified at the second stage of the Restatement inquiry. *See* Def. Br. at 16-19. In fact, the one consideration Plaintiffs cite that does relate to BuzzFeed's communications with its source – the fact Bensinger lives in California, Pl. Br. at 6, 9 – actually supports applying New York law here, because like New York (and unlike Florida) California provides absolute protection to confidential sources. *See* Cal. Const., art. I, § 2(b); *see also* Restatement § 139 cmt. (d) (one consideration in determining whether to apply foreign privilege law is whether the privilege "is well established and recognized in many states.").

Plaintiffs' failure to even cite the correct body of case law serves merely to emphasize how weak are their claims that Florida privilege law applies. To the extent there is a conflict between New York and Florida law here, then, New York law applies.

E.     **This Court Should Not Preclude BuzzFeed From Raising Its Defenses**

In their memorandum of law Plaintiffs also essentially seek to parlay this discovery dispute into a motion for a dispositive order stripping Defendants of their fair report defense and their right to contest the existence of constitutional fault. Pl. Br. at 14-17. This Court should decline to do so. Indeed, Plaintiffs have already told Judge Ungaro that they intend to bring a separate motion to strike in front of her. Sept. 29 Tr. at 22-23. They should not be permitted to circumvent that appropriate procedure by casually asking for that same affirmative relief in their memorandum on this motion to compel.

Moreover, Plaintiffs argument that Defendants should be barred from arguing certain litigation positions is wholly unsupported by the law. Plaintiffs' claim, which ignores all of the

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

arguments in the Opening Brief, is that Defendants *must* intend to rely on the identity of the Source because they cannot establish either their fair report defense or an absence of fault without it. Pl. Br. at 15-16. This claim, however, is incorrect as a matter of both fact and law. First, Defendants do not intend to rely on the Source for either purpose, and Plaintiffs cannot put words in Defendants' mouth. If Plaintiffs think that vitiates Defendants' defenses they are free to file dispositive motions arguing that, but this motion is not the place for that argument.[6]

In any event, as set forth more fully in Defendants' Opening Memo, the fair and true report privilege applies regardless of who BuzzFeed received the dossier from so long as it is a fair and true report of an official actions   Def. Br. at 10-11; *see, e.g., Friedman v. Bloomberg L.P.*, 871 F.3d 185, 195 n.6 (2d Cir. 2017); *Ortega v. Post-Newsweek Stations, Fla., Inc.*, 510 So.2d 972, 976 (3d DCA 1987).[7] Interestingly, Plaintiffs seem to implicitly concede that some of the case law Defendants cite from other jurisdictions would support their defenses here, Opp. at 15, but appear to argue that Florida only recognizes a narrower version of the privilege which *requires* "that the document in question was received from a government official." *Id*. at 15. Even if that were so, the point is premature because it is not clear Florida substantive law even applies, but in any event the cases they cite do not say this. Although those cases discuss the

---

[6] Notably, in a related defamation case filed in New York against BuzzFeed by a different group of expat Russian plaintiffs who were mentioned in a different part of the Dossier, those plaintiffs just filed a motion to dismiss BuzzFeed's fair and true report affirmative defense, under New York law. While it makes similar arguments about the law, that motion makes no issue of who BuzzFeed's Source was, and never suggests that it would be necessary to know that to resolve the merits of the fair report defense. *See Fridman v. Buzzfeed, Inc.*, Index No. 154895/2017, Dkt. 22 (Sup. Ct. N.Y. Cty.). Moreover, the fact that another case involving similarly-situated plaintiffs is proceeding under New York law is yet another reason to apply it here, so that BuzzFeed is not subjected to different standards with respect to the same news story.

[7] Plaintiffs actually concede, as they must, that the Source's identity is irrelevant under New York law. Pl. Br. at 16 n.11. *See, e.g., Friedman*, 871 F.3d at 195 n.6 ("how a reporter gathers his information concerning a judicial proceeding is immaterial provided his or her story is a fair and substantially accurate portrayal of the events in question."). But, Plaintiffs claim, the fair report privilege is nonetheless unavailable under New York law because it "is only available for reporting on public judicial, legislative, or other official proceedings, none of which are actually at issue here." Opp. at 16 n.11. This is simply incorrect. New York courts have defined the term "official proceedings" to encompass any "action taken by a person officially empowered to do so," including reports of ongoing non-public law enforcement investigations. *See Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of N.Y.*, 101 A.D.2d 175, 182 (N.Y. App. Div. 1984). Notably, as discussed herein the Restatement likewise defines the privilege in terms of an "official action."

9

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

privilege in terms of "information received from government officials" in those cases, none hold that the privilege *only* applies in those circumstances. In fact, the District Court of Appeal's decision in *Ortega v. Post-Newsweek Stations, Fla., Inc.* establishes precisely the opposite. It holds "[t]he fact that a reporter gathers information of an official proceeding second-hand 'is immaterial provided his story is a fair and substantially accurate portrayal of the events in question.'" 510 So. 2d at 976 (quoting *Medico v. Time, Inc.*, 643 F.2d 134 (3d Cir. 1981)).

More broadly, the cases Plaintiff cites, along with many others in Florida, regularly look to Section 611 of the *Restatement (Second) of Torts* to address the parameters of the privilege. *See Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 362 (4th DCA 1997); *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (3d DCA 1993); *Ortega*, 510 So. 2d at 976. The Restatement defines the privilege as applying to "[t]he publication of defamatory matter concerning another *in a report of an official action* or proceeding." *Restatement (Second) of Torts*, § 611 (1977) (emphasis added). The *sine qua non* of the privilege is what is being reported about – government actions or proceedings – not who provided the media with that information. To the contrary, the Restatement gives several examples of reports protected by the privilege that are not based on information received from any government official – like a report of a private citizen's comments at a public meeting, or a report about a witness testifying in court. *See id.* at cmt. c. (Illustration 2) and cmt. i. (Illustration 4).[8] The gist of Defendants' fair report defense here is that they were reporting about multiple "official action[s]" taken in connection with the Dossier, which has nothing to do with who delivered the document to BuzzFeed. Under either New York or Florida law, then, the Source's identity is simply not necessary to the fair report defense.

Plaintiffs also claim that the identity of the Source somehow "goes to the heart of the Plaintiffs' case on actual malice." Pl. Br. at 16. But that is incorrect because unlike in most of the cases Plaintiffs cite, here the "source" of the information BuzzFeed published is well-known.

---

[8] Nor is it correct to assert, as Plaintiffs do, that the Florida fair report privilege requires that the documents at issue be created by the government, or that they be publicly-available. Pl. Br. at 15 n.10. *Ortega*, in fact, specifically held that the privilege covered non-public information from law enforcement files, and it noted that part of the purpose of the defense is to protect the media's right "to rely on materials the government acquires." *See Ortega*, 510 So. 2d at 976 (citing *Medico*, 643 F.2d 134); *see also Wilson v. News-Press Publ'g Co.*, 28 Media L. Rep. 1694, 1700 (Fla. Cir. Ct. 2000) (attached hereto as Exhibit 3), *rev'd on other grounds*, 819 So.2d 262 (2d DCA 2002) (applying fair report privilege to aircraft bill of sale filed with the FAA).

The Source merely provided a document, not the information contained in the document.  So this is not a case where defendants are relying on a source's credibility without allowing the plaintiffs to test that claim, or otherwise "volunteer[ing] information buttressing their defense, and then plead[ing] the privilege to prevent the disclosure of any detrimental facts." *Desai v. Hersh*, 954 F.2d 1408, 1412 (7th Cir. 1992).  In these circumstances, Plaintiffs' own authority demonstrates that courts allow defendants to contest actual malice without identifying confidential sources. Specifically, the courts in both *Oak Beach Inn, Corp. v. Babylon Beacon, Inc.* and *Collins v. Troy Publ'g Co.* permitted the defendants to contest actual malice as long as they did not rely on their confidential sources. 62 N.Y.2d 158, 167 (1984) (cited in Pl. Br. at 16); 213 A.D.2d 879, 881 (N.Y. App. Div. 1995) (cited in Pl. Br. at 16).

Plaintiffs then resort to pure speculation about how the Source might conceivably have some useful information.  For example, they hypothesize that the Source – whether a government official, another member of the media, or someone else – might have told BuzzFeed that the Dossier was unreliable or unverified.  *See id*. at 12-13; Sept. 28 Tr. at 7.  As the Court noted at the September 28 Hearing, however, BuzzFeed itself told readers in the Article that the Dossier was "unverified," and that it was "not just unconfirmed" but "includes some clear errors."  Sept. 28 Tr. at 7; Compl., Ex. 2.  This argument is just a red herring.  Moreover, speculation that the Source might have something useful to say falls far short of establishing a "compelling need."

Plaintiffs next claim that they need the Source's identity "to verify the authenticity (or completeness) of the materials published by Buzzfeed."  Pl. Br. at 17.  But the only people who can verify the Dossier's authenticity or completeness are the creators of the Dossier itself.  Plaintiffs already know who created the dossier – Fusion GPS and Christopher Steele – and they can provide that information.  Plaintiffs cannot explain what relevant evidence the identity of an intermediary who passed the Dossier on to BuzzFeed could offer on this issue.

## CONCLUSION

For the foregoing reasons, Defendants request that Plaintiffs' motion to compel be denied.

Date: November 13, 2017

        Respectfully submitted,

        Davis Wright Tremaine, LLP
        1251 Avenue of the Americas, 21st Floor
        New York, New York 10020

        By: /s/ Katherine M. Bolger
            Katherine M. Bolger, Esq.
            Adam Lazier, Esq.
            Nathan Siegel, Esq.
            katebolger@dwt.com
            adamlazier@dwt.com
            nathansiegel@dwt.com

        -and-

        Black, Srebnick, Kornspan & Stumpf, P.A.
        201 S. Biscayne Boulevard, Suite 1300
        Miami, Florida 33131
        Tel:   (305) 371-6421

        By: /s/ Jared Lopez
            Roy Black, Esq.
            Florida Bar No. 126088
            Jared Lopez, Esq.
            Florida Bar No. 103616
            rblack@royblack.com
            jlopez@royblack.com
            civilpleadings@royblack.com
            *Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING
S.A., AND WEBZILLA, INC.,

       Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

       Defendants.
_____/

**CERTIFICATE OF SERVICE**

    I CERTIFY that on November 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                By: /s/ Jared Lopez
                        Jared Lopez, Esq.

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com