Media Law Reporter
ISSN 1944-0359

Source: Media Law Reporter Cases > Florida > Wilson v. News-Press Publishing Co., 28 Med.L.Rptr. 1694 (Fla. Cir. Ct. 2000)

## Wilson v. News-Press Publishing Co., 28 Med.L.Rptr. 1694 (Fla. Cir. Ct. 2000)

28 Med.L.Rptr. 1694
Wilson v. News-Press Publishing Co.
Florida Circuit Court, Lee County
No. 97-9089-CA-JBR
April 7, 2000

DAVID E. WILSON, Plaintiff v. NEWS-PRESS PUBLISHING CO., et al., Defendants

Page 1695

**Headnotes**

**REGULATION OF MEDIA CONTENT**

 [1] Defamation — Defamatory content — In general   (▸ 11.0501)

Defamation — Truth — In general   (▸ 11.4001)

Defendant's motion to dismiss defamation complaint concerning statements made in article about retirement of former chief deputy of county sheriff's department is granted, since certain allegedly defamatory statements would not have "different effect" on "common mind" of reader than if plaintiff's asserted "truth" had been published, and since remaining statements do not contain facts capable of being proven true or false.

 [2] Defamation — Truth — In general   (▸ 11.4001)

Defendants cannot be found liable for defamation for statement published in newspaper article about retirement of former chief deputy of county sheriff's department, regardless of plaintiff's interpretation of statements, since allegedly defamatory statements must be considered by trial court without forcing or straining interpretation, and since statement, given its natural sense, is both non-defamatory and substantially true.

 [3] Defamation — Truth — In general   (▸ 11.4001)

Defendants cannot be found liable for published statement that plaintiff, former chief deputy of county sheriff's department, was "nearly indicted" on drug-running charges, since it was not improper for defendants to summarize uncontested facts by stating that plaintiff was "nearly indicted," since such an occurrence is impossible and therefore incapable of verification, and since reader of statement would not perceive that plaintiff had been indicted.

 [4] Defamation — Privilege — Fair reports privilege   (▸ 11.4505)

Defendants cannot be found liable for published statement that plaintiff, former chief deputy of county sheriff's department, sold airplane to corporation before it was actually incorporated, since facts upon which statement was based came from bill of sale filed with Federal Aviation Administration, which was official government record, and since such statements are non-actionable, even if defendants knew or

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V

Media Law Reporter
ISSN 1944-0359

should have known of information's falsity.

## Case History and Disposition

Action against newspaper defendants for defamation. On defendant's renewed motion to dismiss complaint.

Granted.

Related decision: 26 Med.L.Rptr. 1703.

## Attorneys

Robert Hagaman, of Robert R. Hagaman & Associates, Naples, Fla.; Louis S. St. Laurent II, Coral Springs, Fla., for plaintiff.

Steven Carta, of Simpson, Henderson, Carta & Randolph, Ft. Myers, Fla.; Charles D. Tobin, of Gannett Co. Inc., Arlington, Va., for defendant.

## Opinion Text

**Opinion By:**

Rosman, C.J.:

*Full Text of Opinion*

***ORDER GRANTING DEFENDANT'S, NEWS-PRESS PUBLISHING CO., INC., RENEWED MOTION TO DISMISS***

This matter having come before the Court on March 6, 2000, upon the Defendant's Renewed Motion to Dismiss, and the Court having reviewed the motion, heard argument of counsel and being otherwise fully advised in these premises, it is:

ORDERED AND ADJUDGED

that the motion is granted.

This Court adopts in large part the legal argument of the defense and makes the following findings of law and fact (paragraphs from the Plaintiff's Complaint will be referred to by the paragraph symbol "¶" followed by the paragraph number):

In this defamation action brought against the News-Press by the former chief deputy of the Lee County Sheriff's department, the News-Press has filed a renewed motion to dismiss the complaint. The renewed motion follows the decision issued in this case by the Second District Court of Appeal. See, *Wilson v. News-Press Pub. Co.*, 738 So.2d 1000 (Fla. DCA 1999). That decision reversed the dismissal with prejudice of this action by the former presiding judge in this case, the Honorable R. Wallace Pack, but expressly granted the News-Press the

**Page 1696**

right to reassert a motion to dismiss or strike.

The Plaintiff, DAVID WILSON, retired as Undersheriff from the Lee County Sheriff's Department in the Spring of 1996 after 24 years of service. (¶ 14) Mr. Wilson is suing the News-Press for alleged

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V

Media Law Reporter
ISSN 1944-0359

defamatory statements contained in an article appearing in the February 9, 1996 edition of the News-Press about Mr. Wilson's planned retirement from that Department (¶ ¶  14, 18 and 19 and Ex. 1), and in a "Correction" of that article, published February 10, 1996 (Ex. 6). The specific statements claimed to be defamatory are contained in Paragraphs 21 and 86 of the Complaint.

Mr. Wilson alleges he has been damaged by the statements he quotes in the Complaint and seeks not only actual damages, but punitive damages and attorney's fees as well (¶  117). It is this Court's finding that the specific statements alleged as defamatory are not, as a matter of law, actionable on the face of the Complaint and attached exhibits.

In defamation actions, trial courts play a "prominent function" in determining whether the case should be submitted to a jury. *Wolfson v. Kirk*, 273 So.2d 774, 778 (Fla. 4th DCA 1973).

Whether a challenged statement is defamatory or actionable is a matter for consideration by the court. *McIver v. Tallahassee Democrat, Inc.*, 489 So.2d 793 [13 Med.L.Rptr. 1111] (Fla. 1st DCA 1986). If a court finds that a statement could not possibly have a defamatory or harmful effect, the court may dismiss the ease for failure to state a cause of action. *McCormick v. Miami Herald Pub. Co.*, *supra*; *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593 (Fla. 4th DCA 1983) and *Friedgood v. Peters Pub. Co.*, 521 So.2d 236 [15 Med.L.Rptr. 1010] (Fla. 4th DCA 1988). When considering whether an alleged defamatory statement is actionable, the court should consider the statement in its natural sense without a forced or strained construction. *Byrd*, supra.

It is the general rule that the truth of an alleged defamatory statement is a complete defense in a civil action for defamation. See, e.g., *Applestein v. Knight Newspapers, Inc.*, 337 So.2d 1005 (Fla. 3rd DCA 1976) and *Brake and Alignment Supply Corp., Inc. v. Post-Newsweek Stations of Florida, Inc.*, 472 So.2d 517 [11 Med.L.Rptr. 2183] (Fla. 3rd DCA 1985).

As observed in *Byrd v. Hustler Magazine, Inc.*, *supra*, "[A] false statement of fact is the *sine qua non* for recovery in a defamation action." See also, *Freidgood v. Peters Pub. Co.*, *supra* ("a false statement of fact is absolutely necessary if there is to be a recovery in a defamation action.").

For the defense of truth to be applicable, it is sufficient if the article is substantially true; and inaccuracies not materially affecting its meaning do not defeat that defense. *McCormick v. Miami Herald Pub. Co.*, 139 So.2d 197 (Fla. 2d DCA 1962); and Restatement (Second) of Torts, § 581A, comment, at 237 (1977). As recently stated in the case of *Smith v. Cuban American Nat. Foundation*, 731 So.2d 702 [27 Med.L.Rptr. 2499] (Fla. 3rd DCA 1999), "Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."

One way of determining whether a statement is substantially true on a motion to dismiss is to review the unchallenged factual matters contained in the allegations of and exhibits to a complaint, all of which the Court must assume to be true. *Chiang v. Wildcat Groves, Inc.*, *supra*.

A similar method to the "gist" or "sting" analysis that courts utilize to determine whether an otherwise defamatory statement is actionable is the "common mind/different effect" test. That test considers whether the defamatory statements as published would have a "different effect" on the "common mind" of the reader from that which the pleaded truth would have produced. See, *Smith v. Cuban American Nat. Foundation*, *supra*; *McCormick v. Miami Herald Pub. Co.*, *supra*; *Hammond v. Times Pub. Co.*, 162 So.2d 681 (Fla. 2d DCA 1964); and *Bishop v. Wometco Enterprises, Inc.*, 235 So.2d 759 (Fla. 3rd DCA 1970). See also, *Bermuda Triangle Coffeehouse Co. v. Florida Media Affiliates, Inc.*, 27 Med.L.Rptr. 1205 (Fla. Cir. Ct. 1988), The test was implemented because speakers "... are not to be held to the exact facts or to the most minute details of the transactions they publish ..." *McCormick, supra*, at 200.

[ 1]   It is this Court's finding that certain of the statements sued upon, if eliminated from the article, would not have a different effect on the mind of the reader than if the "truth" had been published.

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V

Media Law Reporter
ISSN 1944-0359

**Page 1697**

Those statements therefore, are not actionable.

It is also the finding of this Court that certain statements are not actionable because the allegations of the Complaint and its exhibits demonstrate that those statements do not contain facts which are capable of being proven as true or false. Whether or not a statement is one of actionable fact or is a question of law is to be initially resolved by the trial court. *Della-Donna v. Yardly*, 512 So.2d 294 (Fla. 4th DCA 1987); *Florida Medical Center, Inc. v. New York Post Co. Inc.*, 568 So.2d 454 [18 Med.L.Rptr. 1224] (Fla. 4th DCA 1990).

In order to be actionable, a statement must contain a provably false factual connotation. *Florida Medical Center, Inc. v. New York Post Co., Inc.*, 568 So.2d 454 [18 Med.L.Rptr. 1224] (Fla. 4th DCA 1990), citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 [17 Med.L.Rptr. 2009] (1990). In other words, the statement must be of a fact "subject to proof of truth or falsity." Id.

### THE ALLEGED DEFAMATORY STATEMENTS

*1. "The career of one of the most controversial law enforcement officials in the history of Lee County law enforcement may* **be coming to an end." (¶ 21a.)**

In ¶ 23 of the Complaint, Mr. Wilson alleges that this statement, when read in conjunction with the balance of the article, is defamatory because it presents him "as someone who had been involved in criminal activities while serving in law enforcement." However, regardless of that interpretation by Mr. Wilson, other allegations of the Complaint and the exhibits attached to the Complaint demonstrate the substantial truth of that statement. For example, in ¶ 24 of the Complaint, Mr. Wilson acknowledges that he was controversial during a period of time in the mid 1980's; and in ¶ 132, Mr. Wilson acknowledges that a deputy claimed he was in a certain area after a drug incident occurred in that area.

More pointedly, Exhibits 5 and 8 to the Complaint (two News-Press articles published in the 1980's) contain unchallenged reports that, among other things, a federal grand jury was investigating Mr. Wilson's alleged drug smuggling involvement and that he volunteered to take and did take a lie detector test to "put to rest" the rumors that he was involved in drug smuggling. To the same effect, in another exhibit to the Complaint (Exhibit 2) an assistant U.S. Attorney is quoted as naming Mr. Wilson as a "target" of a federal government investigation at that time.

All of those matters involving Mr. Wilson are undeniably "controversial." Again, all those matters, as contained in the Exhibits to the Complaint, are accepted as true for the purpose of deciding the present motion to dismiss. See *Chiang v. Wildcat Groves, Inc.*, *supra*. Therefore, the substantial truth of the statement that Mr. Wilson was controversial is established on the face of the pleading.

Moreover, as to that part of the statement that Mr. Wilson was "one of the most controversial law enforcement officers," that statement is one of pure opinion, because that subjective statement does not contain a provably false factual connotation, and is therefore not actionable as a matter of law. *Florida Medical Center, Inc. v. New York Post Co., Inc.*, *supra*.

**2. "David Wilson, 53, the top Lee County Sheriff's Deputy who has been both a suspect in an** *international drug smuggling ring***, and a respected leader in the Lee County Sheriff's Office, has announced his retirement." (¶ 21b.)**

The portion of that statement which is being contested is that part which states Mr. Wilson has been "a suspect in an international drug smuggling ring." Exhibits 2, 5 and 8 to the Complaint establish the substantial truth of that statement. Some excerpts from those Exhibits demonstrate that truth:

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V

Media Law Reporter
ISSN 1944-0359

(a) Exhibit 2 contains the following uncontested statement: "Zimmerman [Assistant U.S. Attorney] calls Wilson and Yahl 'targets'."

(b) Exhibit 5 contains the following uncontested statements:

"Wilson, Moss and other current and former members of the sheriff's department are being investigated by a federal grand jury for possible involvement in Carter's smuggling ring."

"Wilson said he knows he has been part of a federal grand jury investigations (sic) for three years and said that fact alone should prove his innocence."

" 'I've volunteered to testify but never once been asked to,' he said. 'And this is the second federal grand jury to be convened. If they can't pin something

**Page 1698**

on me in this length of time, kind of takes on the appearance of a head-hunting party doesn't it?' "

(c) Exhibit 8 contains the following uncontested statements:

"Lee County Sheriff's Col. Dave Wilson said Thursday he passed a lie detector test and hopes the results will forever put to rest the vicious rumors and outright lies that were intentionally designed to make it look as though I was involved in drug smuggling."

"Wilson said two federal grand juries in Tampa have been asking questions of witnesses over the past three years 'trying to tie me to drug smuggling.' "

Clearly, these above-quoted excerpts from the exhibits to the Complaint establish on the face of that pleading that Mr. Wilson has been a suspect in a drug smuggling ring. That being the case, that statement is substantially true and is not actionable for that reason.

***3. "Wilson is offering to take an early retirement deal that will take effect on April Fool's Day**, but that must be approved by county commissioner's Feb 21 during a public hearing." (¶   21c.)*

[ 2 ]   In paragraphs 27 and 28 of the Complaint, Mr. Wilson alleges that the underlined portions of that statement were intended by the News-Press to mean that he was not serious about contemplating retirement and that he was lying and playing a joke on the public. That claimed innuendo is a strained interpretation of that statement. Florida courts have held that an alleged defamatory statement must be considered by a trial court in its natural sense "without a forced or strained construction." *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593 (Fla. 4th DCA 1983). The natural sense of the subject statement would not lead one to the conclusion that Mr. Wilson was lying about his retirement and playing a joke on the public.

Therefore, the subject statement is both non-defamatory of Mr. Wilson and substantially true, as shown on the face of the Complaint and the article itself.

4. "He held that position throughout Wanicka's term, *despite a fallout between the two*, and held the position in 1988 when McDougall became Sheriff." (¶   121d.)

In paragraph 29 of the Complaint, Mr. Wilson alleges that this statement was meant to be understood that he did not get along with his superiors and that his alleged drug smuggling involvement caused the reported falling out.

Again, that interpretation is a strained one. Nothing in that statement or the article itself reasonably suggests that innuendo, especially when one considers that Mr. Wilson was investigated for being possibly involved in drug smuggling *between 1982 and 1986* (see, Exhibit 2), and the "falling out" was

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V

Media Law Reporter
ISSN 1944-0359

reported in the article to have occurred much later in *1988.*

Furthermore, stating that Mr. Wilson had a "falling out" with his boss, even if false, is not defamatory of Mr. Wilson, whether standing alone or in the context of the entire article. Nothing in that language suggested poor job performance or corruption by Mr. Wilson. To the contrary, the balance of the statement reports that Mr. Wilson continued in his position as chief deputy for Sheriff McDougall's administration, giving rise only to positive inferences about Mr. Wilson's job performance.

### 5. "During the mid-1980's, Wilson came under fire after a fellow deputy claimed he saw Wilson on an airstrip during a drug run gone bad." (¶ 21e.)

As to the facts reported in this statement, their substantial truth appears on the face of the Complaint and its Exhibits.

(a.) In paragraph 32 of the Complaint, Mr. Wilson alleges:

"*The truth of the matter is that one disgruntled deputy had claimed that Plaintiff was in the area after a drug incident* along with numerous other law enforcement officers." (emphasis supplied).

(b.) Exhibit 8 to the Complaint speaks even more fully to the truth of the challenged statement. In that uncontested news article reporting about a lie detector test that Mr. Wilson took to refute allegations of his involvement with drug smuggling, the newspaper wrote:

Wilson released a partial list of the questions asked of him. He said they were the questions relevant to the grand jury investigation and in response to allegations by former Lee County sheriff's deputy Frank Richbourg that Wilson was at the scene of the July 9, 1981, smuggling incident on the airstrip near Carter's home on Corkscrew Road.

"I said I'd take the lie detector test and I passed," Wilson said, "Now what about Richbourg?"

**Page 1699**

"We know the Tampa jury has been asking questions about Dave," Wanicka said, "but it's always seemed real strange to us that they've never — not once in three years — tried to talk to Dave. But then, it's an election year."

It is clear from the above-cited portions of the Complaint and its exhibits that Mr. Wilson *was* reportedly seen at the airstrip and that he came "under fire" because of that report. Thus, the substantial truth of the subject statement is demonstrated on the face of the pleadings, rendering that statement non-actionable.

### 6. "Federal officials ... discovered Wilson had sold an airplane to a major drug dealer..." Wilson adamantly denies any involvement. (¶ 21f.)

While standing alone, the statement may be defamatory. When compared with the Complaint's allegations on this issue, it is however not actionable under the "common mind/different effect" test.

That test is: "... whether the defamatory statement as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *McCormick v. Miami Herald Pub. Co.*, *supra*.

In ¶ 35 of the Complaint, Mr. Wilson alleges that the truth of the matter was that he did not sell his airplane to a major drug dealer, and that the News-Press had official documents revealing that truth. To support that contention, Mr. Wilson attaches these "official documents" to the Complaint in the form of an

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V

Media Law Reporter
ISSN 1944-0359

FAA Aircraft Bill of Sale (part of Ex. 5), Articles of Incorporation of Paradise Aviation Marine, Inc. (Ex. 7), and a 1982 Annual Report of that corporation (Ex. 7).

The bill of sale for the airplane, signed by Mr. Wilson and dated July 21, 1981, lists Paradise-Aviation Marine, Inc., as the purchaser. The 1982 Annual Report lists Joseph R. Carter (identified in the Complaint as the "major drug dealer") as a director of that corporation. Moreover, Exhibit 5 to the Complaint reveals that the federal grand jury investigating Mr. Wilson's drug smuggling involvement was also investigating his sale of that airplane.

Thus, based on the undisputed facts shown by those exhibits, the subject article could have truthfully and accurately stated, "Federal officials ... discovered that Wilson had sold an airplane to a corporation, which has a major drug dealer as one of its directors." in lieu of the challenged statement which states,

"Federal officials ... discovered Wilson had sold an airplane to a major drug dealer."

Thus, the truthful statement would have had no different effect on the mind of the reader than the allegedly defamatory statement; and, for that reason, the allegedly defamatory statement is not actionable. *McCormick v. Miami Herald Pub. Co.*, *supra*.

### 7. "Federal officals nearly indicted him (Wilson) on drug-running charges. Wilson adamantly denies any involvement." (¶   21f.)

Once again, the Exhibits to the Complaint facially demonstrate the substantial accuracy of that statement. As shown above, Exhibits 2, 5 and 8 reveal that:

(a) At least one deputy claimed that Mr. Wilson had somehow been involved in a drug run on an airstrip;

(b) An assistant U.S. Attorney had labeled Wilson a "target" of a federal criminal investigation;

(c) Mr. Wilson was investigated by two federal grand juries over a period of at least three years; and

(d) Federal prosecutors were tying to tie Mr. Wilson to drug smuggling.

Therefore, based upon all of those uncontested facts, it is not improper to summarize those facts by stating that federal officials "nearly indicted" Mr. Wilson on drug smuggling charges. Moreover, the term "nearly indicted" is non-actionable under defamation law.

In order to be actionable, an allegedly defamatory remark must contain a provably false factual statement, i.e., it must contain a fact or factual connotation, which must be verifiable as true or false. Otherwise, the statement constitutes non-actionable opinion. *Florida Medical Center, Inc. v. New York Post Co., Inc.*, *supra*.

[ 3]   It is technically incorrect to characterize someone as being "nearly indicted." However, the technical error stems not from any provably false factual content, but from the very impossibly of such an actual occurrence.

One can not actually be "nearly indicted." One is either indicted or not, there is simply no in-between. However, anyone reading this statement in the News-Press would not have had the erroneous impression that Mr. Wilson was indicted. Moreover, the use of the adjective "near" to describe the state of insolvency has been held to render the entire phrase subjective and therefore non-actionable, See, *Ohio Savings Association v. Business First of Columbus*, 540 N.E. 2d 320 (Ohio

**Page 1700**
Ct. App. 1988). The use of the word "nearly" with the word "indicted," also renders that phrase entirely

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V

Media Law Reporter
ISSN 1944-0359

subjective, and not capable of factual verification as to its truth or falsity.

Therefore that phrase is not actionable because it "cannot reasonably be interpreted as stating actual facts about an individual." *Milkovich v. Lorain Journal Co.*, *supra*, quoting from *Hustler Magazine, Inc. v. Falwell*, *supra*.

### 8. "Lee County Undersheriff David Wilson sold an airplane to Paradise-Aviation Marine, Inc., on July 21, 1981." (¶ 86)

That allegedly defamatory statement appeared in a February 10, 1996 correction (Ex. 6) to the February 9, 1996 retirement article (Ex. 1). Mr. Wilson claims that statement is false, because Paradise-Aviation was not incorporated until November 20, 1981, as shown by that corporation's article of incorporation attached to the Complaint as Exhibit 7.

[ 4]   However, when the corporation was registered with the state, the bill of sale for the airplane (Ex. 5), a public record filed with the FAA, shows it was signed by Mr. Wilson on July 21, 1981, with *Paradise-Aviation as the buyer*. Therefore, that report is not only substantially true, as set forth in sub-section 6 above, but a fair and accurate report of matters contained in an official government record. Being a report of matters contained in an official record renders the statement non-actionable, regardless of any claimed falsity. See, *Woodard v. Sunbeam Television Corp.*, 616 So.2d 501 [21 Med.L.Rptr. 1286] (Fla. 3rd DCA 1993), recognizing the privilege afforded the news media to publish "the contents of an official document, so long as their account is reasonably accurate and fair," (citation omitted), even if the official documents contain erroneous information. See also, *Stewart v. Sun Sentinal Co.*, 695 So.2d 360 [25 Med.L.Rptr. 1763] (Fla. 4th DCA 1997) to the same effect. The privilege applies even if the media defendant knew or should have known the information in the official document was false. *Ortega v. Post-Newsweek Stations, Fla., Inc.*, 510 So.2d 972 [14 Med.L.Rptr. 1307] (Fla. 3rd DCA 1987).

Therefore, the statement in the News-Press' correction that the airplane was sold to a corporation, rather than to an individual, is not actionable, because it is both true and an accurate report from an official document.

### 9. "In the mid-1980's, federal officials were investigating Wilson and others in the Lee County Sheriff's Office. Wilson was not indicted on any charges. The News-Press inadvertently reported Wilson was nearly indicted." (¶ 86)

That underlined statement was also contained in the News-Press' corrections to the retirement article. Mr. Wilson complains the use of the word "inadvertently" left the connotation that, although he was actually nearly indicted, the publication of that phrase was a mistake (¶ 196).

That claimed innuendo is a strained and extreme interpretation of that correction. The correction expressly clarifies the imprecise use of the phrase "nearly indicted" by stating that Wilson was not indicted. Mr. Wilson's contention that the News-Press' statement that the use of the incorrect phrase was "inadvertent" somehow connotes that Mr. Wilson was actually "nearly indicted" is illogical.

This Court finds that by publishing that the retirement article inadvertently reported that Mr. Wilson was "nearly indicted" is not defamatory. For that reason, the statement is not actionable.

### CONCLUSION

This Court has reviewed the Complaint and attached exhibits. Also this Court has read the memoranda of law, pertinent case law, and has reflected on the arguments made by both counsel. The salient article, exhibit 1, titled "Top Lee Deputy to Retire" has been read many times by the Court before arriving at this ruling.

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V

Media Law Reporter
ISSN 1944-0359

The article and correction when read in their entirety, contain an account of the end of a 28 year career in law enforcement by a person who has drawn official scrutiny. The article contains very positive statements concerning the Plaintiff's career and character attributed to our local Sheriff and State Attorney.

The Court finds that the Complaint and its exhibits show, Mr. Wilson was involved in controversial matters during his tenure in law enforcement: He was the target of a lengthy federal grand jury investigation into alleged drug smuggling activities. He was reported by a fellow deputy to have been at the scene of a drug run gone bad. Official records do reveal that he sold his airplane to a corporation, which had a drug smuggler as one of its directors; and Federal

**Page 1701**

officials did conduct an investigation into that sale.

However, nowhere in the publications in question is it stated that Mr. Wilson was actually involved in drug smuggling activities, or that he was in fact at the scene of the airport drug bust or that he knew that Mr. Carter was or would be a director of the corporation that acquired his airplane.

This Court is not unmindful of the standard required to survive a motion to dismiss. In ruling on this matter, the Court is also aware of the constitutional importance and historical significance of a case of this nature, a case rooted in the Bill of Rights within the First Amendment to the Constitution of the United States. Respectfully, this is not a contract action nor a negligence case. It is one that involves freedom of speech and freedom of the press. The standard is and should be different because of the constitutional issues involved. Where the facts are not in dispute in defamation cases, pretrial dispositions are "especially appropriate" because of the chilling effect these cases have on free speech. See *Karp v. Miami Herald Pub. Co.*, 359 So.2d 580 [3 Med.L.Rptr. 2581] (Fla. 3d DCA 1978).

Our Founders envisioned a press that would scrutinize and inform the people of the activities of its government. Included in that government would be elected officials, members of the executive and legislative branches, law enforcement, and the judiciary. Concurrent with a free press is the public's right to be informed and speak freely about its government. Maintaining free, robust, political debate and discussion serve as the foundation of our free society.

Prior to the passage of the Bill of Rights, Thomas Jefferson in 1787 urged the following:

The basis of our government being the opinion of the people, the very first object should be to keep that right; and were it left to me to decide whether we should have a government without newspapers, or newspapers without a government, I should not hesitate a moment to prefer the latter.

While this court recognizes actionable defamation cases, the pleadings in the case at bar do not allege one. The statements claimed to be defamatory should be left to the public to debate, within the free and open marketplace of ideas within our community, addressing both the positive attributes and claims of controversy in a 28 year law enforcement career. To do otherwise would have a chilling effect on the Press's right to scrutinize and inform our community about its government. Moreover, it would have a chilling effect on our community's right to know about its government and freely discuss and debate those issues.

Wherefore, the Motion to Dismiss the Complaint is Granted. The Plaintiff shall have 30 days for Leave to Amend.

- End of Case -

Copyright 2017, The Bureau of National Affairs, Inc.
Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.   http://www.bna.com/corp/index.html#V