UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-60426-UNGARO/O'SULLIVAN

ALEKSEJ GUBAREV, XBT HOLDING
S.A., and WEBZILLA, INC.,

      Plaintiffs,

v.

BUZZFEED, INC. and BEN SMITH,

      Defendants.

_____/

**ORDER**

THIS MATTER came before the Court on the defendants' assertion of the

reporter's privilege in response to the plaintiffs' document requests.

**BACKGROUND**

The instant action was filed on February 3, 2017 in the Circuit Court of the

Seventeenth Judicial Circuit in and for Broward County, Florida. On February 28, 2017,

the defendants removed the case to this Court on the basis of diversity jurisdiction. See

Defendants' Notice of Removal (DE# 1, 2/28/17).

In their complaint, the plaintiffs allege a cause of action for defamation and

defamation per se against the defendants arising from the defendants' January 10,

2017 online publication of an article and an unverified dossier. See Complaint for

Damages (DE# 1-3, 2/28/17) (hereinafter "Complaint"). The Complaint quotes an

excerpt from the dossier:

> [redacted] reported that over the period March-September 2016 a
> company called XBT/Webzilla and its affiliates had been using botnets
> and porn traffic to transmit viruses, plant bugs, steal data and conduct

"altering operations" against the Democratic Party leadership. Entities linked to one Alexei GUBAROV [sic] were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation. In Prague, COHEN agreed contingency [sic] plans for various scenarios to protect the operations, but in particular what was to be done in the event that Hillary CLINTON won the presidency. It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and that cyber [sic] and other operators were stood down / able to go effectively to ground to cover their traces.

Id. at ¶ 26.

The plaintiffs have propounded document requests on the defendants. The defendants have asserted the reporter's privilege to requests that would tend to identify the source who provided the defendants with access to the dossier. On September 28, 2017, the undersigned held an informal discovery conference on this issue. After hearing argument from the parties, the undersigned ordered the parties to file briefs. See Order (DE# 79, 10/10/17).

On October 16, 2017, the defendants filed their memorandum of law. See Defendants' Memorandum of Law Regarding the Reporter's Privilege Requested by Judge O'Sullivan (DE# 80, 10/16/17) (hereinafter "Defendants' Memorandum"). The plaintiffs filed their memorandum on November 1, 2017. See Plaintiffs' Memorandum of Law Regarding the Reporters' Privilege, as Requested by Judge O'Sullivan (DE# 83, 11/1/17) (hereinafter "Plaintiffs' Memorandum"). The defendants filed their reply on November 13, 2017. See Defendants' Reply Memorandum of Law Regarding the Reporter's Privilege (DE# 91, 11/13/17) (hereinafter "Defendants' Reply").

This matter is ripe for adjudication.

2

## ANALYSIS

The defendants argue that their source is protected under Florida law (Florida common law and the Florida Shield Law, Fla. Stat. § 90.5015), New York law (N.Y. Civil Rights Law § 79-h(b)) and the First Amendment reporter's privilege recognized by the Eleventh Circuit. See Defendant's Memorandum (DE# 80 at 2). Florida law and the First Amendment provide for a qualified reporter's privilege. New York law has an absolute privilege. Id. at 2. The defendants argue that the Court does not need to engage in a choice of law analysis because its source is protected under both Florida law and New York law. Id. at 8. Alternatively, the defendants argue that if the Court is inclined to find that the source is not protected by the qualified reporter's privilege under Florida law, then the Court should engage in a choice of law analysis and find that New York law applies. Id. at 2.

The plaintiffs seek to compel the disclosure of the source who provided the defendants with access to the dossier. See Plaintiff's Memorandum (DE# 83 at 2). Alternatively, the plaintiffs argue that "if Defendants are not required to produce the information concerning the identity of their source, they should be precluded from asserting certain defenses that are reliant on such source information and Plaintiffs should be relieved of the burden of presenting evidence as part of their case-in-chief that would require the disclosure of such information." Id. The plaintiffs maintain that the Court must apply Florida law in ruling on this issue. Id. at 7.

### A.    Applicable Law

It is not necessary for the Court to engage in a choice of law analysis at this

3

juncture. Assuming, <u>arguendo</u>, that Florida law governs this issue, the plaintiffs have failed to meet their burden to compel the disclosure of the defendants' source under the Florida Shield Law, Fla. Stat. § 90.5015. Because the Court does not need to engage in a choice of law analysis at this time, it is not necessary to address the plaintiffs' argument that the defendants have waived the reporter's privilege under New York law. <u>See</u> Plaintiffs' Memorandum (DE# 83 at 13-14). In any event, it is unclear that a waiver has taken place. In their reply, the defendants have explained that one of the documents was withheld in error and have filed a declaration from reporter Ken Bensinger that he did not disclose the identity of the source to his brother. <u>See</u> Defendants' Reply (DE# 91 at 6-7); Second Declaration of Ken Bensinger (DE# 91-2).

**B.      The Reporter's Privilege under Florida Law**

The defendants list the following sources for the reporter's privilege recognized in Florida: "Florida common law, the Florida Shield Law enacted by the Legislature, and the First Amendment as applied by both the Eleventh Circuit and Florida courts." Defendants' Memorandum (DE# 80 at 8).

Under Florida common law, the party seeking disclosure from a reporter must "established that: (1) the reporter possesses relevant information; (2) the same information is not available from alternative sources; and (3) the movant has a compelling need for any information the reporter may have." <u>State v. Davis</u>, 720 So. 2d 220, 227 (Fla. 1998). In 1998, the Florida Legislature adopted Florida's Shield Law. It provides that the journalist's privilege may only be overcome by a "clear and specific showing" that: "(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought; (b) The

4

information cannot be obtained from alternative sources; and (c) A compelling interest exists for requiring disclosure of the information." Fla. Stat. § 90.5015(2).[1] Finally, the Eleventh Circuit has recognized a qualified reporter's privilege under the First Amendment which may be overcome through a showing of

> substantial evidence[:][1] that the challenged statement was published and is both factually untrue and defamatory; [2] that reasonable efforts to discover the information from alternative sources have been made and that no other reasonable source is available; and [3] that knowledge of the identity of the informant is necessary to proper preparation and presentation of the case.

Price v. Time, Inc., 416 F.3d 1327, 1343 (11th Cir.), as modified on denial of reh'g, 425 F.3d 1292 (11th Cir. 2005).

### 1.    Applicability of Florida's Shield Law to the Defendants

"BuzzFeed is a digital media company, which publishes content on its website located at www.buzzfeed.com ("Buzzfeed.com") and through mobile apps on iPhones, iPads, and Android devices. BuzzFeed also distributes its content through third party platforms, like Facebook and Snapchat." See Declaration of Roy Cysner (DE# 80-26 at ¶2). "BuzzFeed does not offer subscriptions or distribute a hard-copy newspaper or magazine." Id. at ¶5.

The plaintiffs argue that the Florida Shield Law does not apply to the defendants because "Buzz[F]eed is not a 'newspaper, news journal, news agency, press

---

[1] As one court observed, the "application of either the federal common law standard or . . . [section 90.5015] will yield the same result, as the factors of each are virtually indistinguishable." McCarty v. Bankers Ins. Co., 195 F.R.D. 39, 46 (N.D. Fla. 1998); see also Carroll v. TheStreet.com, Inc., No. 11-CV-81173, 2014 WL 5474048, at *8 (S.D. Fla. Apr. 10, 2014) (stating that "[l]ike Florida's statutory privilege, this federal common-law privilege is the progeny of the concurrence in Branzburg [v. Hayes, 408 U.S. 665 (1972)], and thus mirrors the balancing test set forth in Fla. Stat. § 90.5015.").

association, wire service, radio or television station, network, or news magazine' and, as such it is not covered by the statute" and "because Buzz[F]eed is not a covered entity, Mr. Smith is not an employee of a covered entity." Plaintiff's Memorandum (DE# 83 at 10) (quoting Fla. Stat. § 90.5015(1)(a)). The defendants maintain that the Florida Shield Law applies to online news publications and note that BuzzFeed employs a number of award winning reporters. See Defendants' Reply (DE# 91 at 4). The defendants cite to TheStreet.com, Inc. v. Carroll,  20 So. 3d 947 (Fla. 4th DCA 2009) (per curiam) to support their argument that online news publications are covered by Florida's Shield Law. The plaintiff argues that the appellate court and this Court (the case was removed to the Southern District of Florida when the plaintiff added the source as a defendant, see Carroll v. TheStreet.com, Inc., 2014 WL 5474048 (S.D. Fla. Apr. 10, 2014)), "did not discuss the applicability of the Florida statute to internet websites." Plaintiff's Response (DE# 83 at 11).

In TheStreet.com, Inc. v. Carroll, the plaintiff sued "a financial media company, internet website and publisher" and an investigative reporter for defamation following the publication of an online article. 20 So. 3d 947, 948 (Fla. 4th DCA 2009) (per curiam). The defendants raised affirmative defenses including that "they had used 'reasonable care in making and publishing the statements challenged'" and in response to written discovery had "invoked [the] Florida journalist's privilege." Id. The defendants had also inadvertently produced documents which revealed the names of certain sources. Id. "The trial court . . . ruled that the Florida journalist's privilege had been waived by the actions and pleadings of the [defendants]" and ordered the production of unredacted documents. Id. at 949. The trial court also issued a second discovery order

6

granting another motion to compel discovery by the plaintiff. Id. The defendants filed a petition for writ of certiorari. The Florida appellate court granted the writ of certiorari ruling, inter alia, that the inadvertent disclosure of certain sources did not waive the privilege and that the plaintiff had failed to show he had overcome the privilege under section 90.5015. Id. at 949-50.

The defamation claim in Carroll arose from the publication of an article by an internet website. The reporter's privilege applied to the defendants in Carroll who were "a financial media company, internet website and publisher" and an investigative reporter. Carroll, 20 So. 3d at 948. Florida's Shield law also applies to the defendants in the instant case.

Florida's Shield Law provides that "[a] professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news." Fla. Stat. § 90.5015(2). The statute defines "professional journalist" as "a person regularly engaged in collecting, photographing, recording, writing, editing, reporting, or publishing news, for gain or livelihood, who obtained the information sought while working as a salaried employee of, or independent contractor for, a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine" and expressly excludes "[b]ook authors and others who are not professional journalists." Id. at 90.5015(1)(a).

There is nothing in the statute that limits the privilege to traditional print media. Because BuzzFeed writes stories and publishes news articles on its website, it qualifies as a "news agency," "news journal" or "news magazine." Accordingly, BuzzFeed is

7

covered under the Florida Shield Law. Defendant Smith is also covered by the Florida Shield Law through his employment at BuzzFeed.[2]

## 2.      Plaintiffs Have Not Overcome the Qualified Privilege

As noted above, Florida's Shield Law provides reporters with a qualified privilege. A party seeking disclosure of information from a reporter must make a clear and specific showing that: "(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought; (b) The information cannot be obtained from alternative sources; and (c) A compelling interest exists for requiring disclosure of the information." Fla. Stat. § 90.5015(2). For the reasons stated below, the undersigned finds that the plaintiff has failed to make a clear and specific showing that the information cannot be obtained from alternative sources.

The plaintiffs state that they have taken the following steps to identify the defendants' source through alternative means: (1) obtained letters rogatory to depose Christopher Steele; (2) served a deposition subpoena on Fusion GPS and (3) served deposition subpoenas, requiring depositions throughout November, on the New York Times, the Wall Street Journal, the New Yorker, Mother Jones Magazine, CNN, Yahoo!News and William F.B. O'Reilly.[3] The undersigned finds that the plaintiffs have

---

[2] Even if the defendants were not covered by Florida's Shield Law, they would still be protected under the First Amendment privilege. Price v. Time, Inc., 416 F.3d 1327, 1343 (11th Cir. 2005).

[3] In their memorandum, the plaintiffs stated that they were still attempting to obtain service on David Kramer. See Plaintiffs' Memorandum (DE# 83 at 7 n.5). The parties subsequently filed a Joint Status Report on November 3, 2017 which indicated that "Plaintiffs subpoenaed David Kramer on October 18, 2017 to provide testimony and

not met their burden of making a clear and specific showing that the identity of the source cannot be obtained through alternative sources. Although the plaintiffs have obtained letters rogatory, Mr. Steele's deposition has not yet taken place and the matter is pending before the court in the United Kingdom. The plaintiffs have not yet deposed Fusion GPS because a motion to quash is currently being litigated in the District Court in the District of Columbia. Although the plaintiffs scheduled the depositions of the above listed news organizations and Mr. O'Reilly to take place in November, the plaintiffs have not supplemented their filings to indicate that any of these depositions have taken place. The plaintiffs have advised the Court that at least two news organizations, the Wall Street Journal and the New York Times, have indicated that they intend to challenge the subpoenas. Id. at 7. However, the plaintiffs have not supplemented the record to advise the Court whether the Wall Street Journal or New York Times have followed through with their intentions and initiated litigation with respect to the subpoenas. Based on the record in the instant case, the plaintiffs have not made a clear and specific showing that the identity of the source cannot be obtained through alternative sources. See Smoliak v. Greyhound Lines, Inc., No. 5:04CV245PSPMAK, 2005 WL 3434742, at *3 (N.D. Fla. Oct. 17, 2005) (defendants had not overcome the qualified reporter's privilege under the Florida Shield Law where, inter alia, defendants "speculate[d] that . . . [other] witnesses would not be helpful, but without actually questioning these witnesses it [was] difficult to determine exactly what

---

documents. The subpoena is returnable on November 14, 2017." See Joint Status Report (DE# 84, 11/3/17). The docket does not reflect that the deposition of Mr. Kramer has taken place.

they kn[e]w or whether they could identify others who observed Plaintiff on the day in question."); Green v. Office of the Sheriff's Office, No. 3:99CV658J21HTS, 2002 WL 32128623, at *1 (M.D. Fla. Nov. 4, 2002) (granting motion to quash subpoena where plaintiff failed to show that the information could not be obtained from alternative sources); McCarty v. Bankers Ins. Co., 195 F.R.D. 39, 47 (N.D. Fla. 1998) (stating that "[plaintiff] . . . failed to overcome the heavy burden of showing by clear and convincing evidence that he ha[d] been unable to identify and obtain the information which [he] seeks from [a reporter] from the other sources (i.e. the press releases to show Bankers' public statements about him and his alleged illegal behavior, or the self-authenticating article itself to establish the discrepancies in Meehan and Delano's testimony.").

## C.    Additional Relief Sought by the Plaintiffs

As noted above, the plaintiffs argue that if the Court rules that the defendants are not required to disclose the identity of their source, then the defendants' defenses and arguments should be limited at trial. See Plaintiffs' Memorandum (DE# 83 at 14-15). For instance, the plaintiffs argue that the defendants should not be permitted to continue to assert the fair reporting privilege because Florida's fair reporting privilege requires "that the document in question was received from a government official." Id. at 15. The plaintiffs also argue the defendants will not prevail on the fair reporting privilege under New York law for other reasons. Id. at 16 n.11. The plaintiffs further ask for a presumption that the defendants acted with malice and that the Court compel the defendants to stipulate that they did not obtain the dossier from a government source and that the defendants "be precluded from offering any testimony to suggest that the version of the Dossier that they published was complete or authentic or that they had

10

any basis for believing that it was authentic or complete." Id. at 16-17.

The undersigned finds that the plaintiffs' request to limit the defendants' arguments and defenses or for a presumption or a stipulation is premature. As noted above, the plaintiff has not shown that it is unable to obtain the identity of the defendants' source through alternative sources. Discovery is ongoing in this matter. It is possible that through third-party discovery, the plaintiff may ultimately learn the identity of the defendants' source.[4] Thus, the defendants' defenses and arguments should not be limited at this time.

## CONCLUSION

For the reasons stated herein, it is

ORDERED AND ADJUDGED that the plaintiffs' request to compel the disclosure of the source who provided the defendants with access to the dossier is **DENIED**. Assuming, arguendo, that Florida law governs this issue, the plaintiffs have failed to make a clear and specific showing that "[t]he information cannot be obtained from alternative sources." Fla. Stat. § 90.5015(2)(b).

DONE AND ORDERED, in Chambers, at Miami, Florida this 21 day of December, 2017.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Ungaro
All counsel of record

---

[4] The undersigned makes no ruling on the merits of the plaintiffs' request to limit the defendants arguments and defenses at trial even if the plaintiffs are ultimately unable to discover the identity of the defendants' source.

11