# Exhibit 3

Page 1

1                SENATE JUDICIARY COMMITTEE

2                        U.S. SENATE

3                      WASHINGTON, D.C.

4

5

6

7           INTERVIEW OF:   GLENN SIMPSON

8

9

10

11              TUESDAY, AUGUST 22, 2017

12                   WASHINGTON, D.C.

13

14

15

16

17       The interview in this matter was held at the

18   Hart Senate Office Building, commencing at 9:34 a.m.

19

20

21

22

23

24

25

Glenn Simpson                                                        August 22, 2017
                         Washington, DC

Page 2

```
 1   APPEARANCES:
 2   SENATE JUDICIARY COMMITTEE:
 3   Patrick Davis, Deputy Chief Investigative Counsel,
 4       Chairman Grassley
 5   Jason Foster, Chief Investigative Counsel,
 6       Chairman Grassley
 7   Samantha Brennan, Investigative Counsel,
 8       Chairman Grassley
 9   Daniel Parker, Investigative Assistant,
10       Chairman Grassley
11   Joshua Flynn-Brown, Investigative Counsel,
12       Chairman Grassley
13   Scott Graber, Legislative Assistant/Counsel,
14       Senator Graham
15   Heather Sawyer, Chief Oversight Counsel,
16       Senator Feinstein
17   Jennifer Duck, Staff Director,
18       Senator Feinstein
19   Molly Claflin, Counsel,
20       Senator Feinstein
21   Lara Quint, Chief Counsel,
22       Senator Whitehouse
23
24
25
```

Glenn Simpson                                                                August 22, 2017
                                    Washington, DC

Page 3

1  APPEARANCES:   (Cont'd)
2  FOR THE WITNESS:
3  Joshua Levy, Cunningham Levy Muse
4  Robert Muse, Cunningham Levy Muse
5  Rachel Clattenburg, Cunningham Levy Muse
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Glenn Simpson                                              August 22, 2017
                        Washington, DC

```
                                                              Page 4
 1                      I N D E X

 2                     EXAMINATION

 3                                                           PAGE

 4         By Mr. Davis                                       11

 5         By Ms. Sawyer                                      52

 6         By Mr. Davis                                       95

 7         By Ms. Sawyer                                     138

 8         By Mr. Davis                                      180

 9         By Ms. Sawyer                                     227

10         By Mr. Davis                                      260

11         By Ms. Sawyer                                     290

12                       EXHIBITS

13     EXHIBIT                                               PAGE

14     Exhibit 1                                              11
           8/3/17 letter agreement
15
       Exhibit 2                                              30
16         Privilege log

17     Exhibit 3                                             138
           BuzzFeed memos
18
       Exhibit 4                                             196
19         Filing in UK litigation

20     Exhibit 5                                             205
           (Not described)
21
       Exhibit 6                                             261
22         Meeting notes

23

24

25
```

Alderson Court Reporting
1-800-FOR-DEPO                                    www.aldersonreporting.com

| Glenn Simpson | August 22, 2017 |
|---|---|
| Washington, DC | |

Page 5

```
 1        MR. DAVIS:  Good morning.  This is the
 2   transcribed interview of Glenn Simpson.  Chairman
 3   Grassley and Ranking Member Feinstein requested
 4   this interview as part of the Senate Judiciary
 5   Committee's investigation of Fusion GPS's
 6   activities related to the dossier compiled by
 7   Christopher Steele, the Prevezon case, and the
 8   Magnitsky Act.
 9        Would the witness please state your name for
10   the record.
11        MR. SIMPSON:  Glenn Simpson.
12        MR. DAVIS:  On behalf of the Chairman I want
13   to thank Mr. Simpson for appearing here today.  My
14   name is Patrick Davis.  I'm the Deputy Chief
15   Investigative Counsel with the committee's majority
16   staff.
17        I'll ask everyone else from the committee who
18   is here to introduce themselves as well.
19        MR. FOSTER:  Jason Foster, I'm the Chief
20   Investigative Counsel for Chairman Grassley.
21        MS. BRENNAN:  Samantha Brennan, Investigative
22   Counsel, Chairman Grassley.
23        MR. GRABER:  Scott Graber, Senator Graham.
24        MR. PARKER:  Daniel Parker, Investigative
25   Assistant for Senator Grassley.
```

Page 6

 1        MR. BROWN:  Joshua Flynn-Brown, Investigative
 2   Counsel for Senator Grassley.
 3        MS. DUCK:  Jennifer Duck, Staff Director for
 4   Senator Feinstein.
 5        MS. QUINT:  Lara Quint, Chief Counsel,
 6   Senator Whitehouse.
 7        MS. SAWYER:  Heather Sawyer, Chief Oversight
 8   Counsel, Senator Feinstein.
 9        MS. CLAFLIN:  Molly Claflin, Counsel, Senator
10   Feinstein.
11        MR. DAVIS:  The Federal Rules of Civil
12   Procedure do not apply to any of the committee's
13   investigative activities, including transcribed
14   interviews.  There are some guidelines we follow,
15   and I'll go over those now.
16        Our questioning will proceed in rounds.  The
17   majority staff will ask questions first for one
18   hour, then the minority staff will have an
19   opportunity to ask questions for an equal amount of
20   time.  We will go back and forth until there are no
21   more questions and the interview is over.
22        We typically take a short break at the end of
23   each hour, but should you need a break at any other
24   time, please just let us know.  And we can discuss
25   taking a break for lunch whenever you're ready to

Page 7

 1   do so.
 2         We have an official reporter taking down
 3   everything we say to make a written record.  So we
 4   ask that you give verbal responses to all
 5   questions.  Do you understand?
 6         MR. SIMPSON:  Yes.
 7         MR. DAVIS:  So that the court reporter can
 8   take down a clear record, we'll do our best to
 9   limit the number of people directing questions at
10   you during any given hour to those whose turn it
11   is.  It's also important that we don't talk over
12   one another or interrupt each other to the extent
13   we can help it.  That goes for everybody present at
14   today's interview.
15         We encourage witnesses who appear before the
16   committee to freely consult with counsel if they
17   should choose.  You are appearing here today with
18   counsel.  Counsel, could you please state your name
19   for the record.
20         MR. LEVY:  Josh levy.
21         MR. MUSE:  I'm Bob Muse and I represent Glenn
22   Simpson.
23         MS. CLATTENBURG:  I'm Rachel Clattenburg.
24         MR. DAVIS:  We want you to answer our
25   questions in the most complete and truthful manner

Page 8

 1   possible.  So we will take our time.  If you have
 2   any questions or if you don't understand any of our
 3   questions, please let us know.  If you honestly
 4   don't know the answer to a question or don't
 5   remember, it's best not to guess.  Just give us
 6   your best recollection.
 7         It's okay to tell us if you learned
 8   information from somewhere else if you indicate how
 9   you came to know the information.  If there are
10   things that you don't know or can't remember, we
11   ask that you inform us to the best of your
12   knowledge who might be able to provide a more
13   complete answer to the question.
14         This interview is unclassified.  So if any
15   question calls for information that you know to be
16   classified, please state that for the record as
17   well as the reason for the classification.  Then
18   once you've clarified that to the extent possible,
19   please respond with as much unclassified
20   information as you can.  If we need to have a
21   classified session later, that can be arranged.
22         It is this committee's practice to honor
23   valid common law privilege claims as an
24   accommodation to a witness or party when those
25   claims are made in good faith and accompanied by

Page 9

1  sufficient explanation so that the committee can
2  evaluate the claim.  When deciding whether to honor
3  a privilege the committee weighs its need for the
4  information against any legitimate basis for
5  withholding it.  The committee typically does not
6  honor contractual confidentiality agreements.
7       The committee and Mr. Simpson have agreed
8  that this interview is occurring without prejudice
9  to any future discussions with the committee and we
10 reserve the right to request Mr. Simpson's
11 participation in future interviews or to compel his
12 testimony.  The committee and Mr. Simpson have also
13 agreed that participation in this interview does
14 not constitute a waiver of his ability to assert
15 any privileges in response to future appearances
16 before this committee.
17      Mr. Simpson, you should understand that
18 although the interview is not under oath, by law
19 you are required to answer questions from Congress
20 truthfully.  Do you understand that?
21      MR. SIMPSON:  Yes.
22      MR. DAVIS:  Specifically 18 U.S.C. Section
23 1001 makes it a crime to make any materially false,
24 fictitious, or fraudulent statement or
25 representation in the course of a congressional

Page 10

 1   investigation.  That statute applies to your
 2   statements in this interview.  Do you understand
 3   that?
 4        MR. SIMPSON:  Yes, I do.
 5        MR. DAVIS:  Witnesses who knowingly provide
 6   false statements could be subject to criminal
 7   prosecution and imprisonment for up to five years.
 8   Do you understand this?
 9        MR. SIMPSON:  Yes, I do.
10        MR. DAVIS:  Is there any reason you're unable
11   to provide truthful answers to today's questions?
12        MR. SIMPSON:  No.
13        MR. DAVIS:  Finally, we ask that you not
14   speak about what we discuss in this interview with
15   anyone else outside of who's here in the room today
16   in order to preserve the integrity of our
17   investigation.  We also ask that you not remove any
18   exhibits or other committee documents from the
19   interview.
20        Once again, the Chairman and Ranking Member
21   withdrew their subpoena of you due to your
22   willingness to provide information in this
23   voluntary interview and document production.
24   However, the extent to which the committee deems
25   further compulsory process necessary will likely

Glenn Simpson                                                August 22, 2017
                          Washington, DC

Page 139

1      Q. And so I'm going to show you what we will
2  just mark as Exhibit 3 for identification purposes.
3  So Exhibit 3 that I've just given you is a document
4  that was produced to the committee by your lawyers,
5  and they had explained to us that this was a
6  document originally posted by BuzzFeed in January
7  of 2017 and it has Bates numbers down in the
8  right-hand corner. The first one is
9  CLMS-JC-00041391 and then the last one is number
10 41425. If you could just take a look at that. Is
11 that what we were just discussing as the series of
12 memos posted by BuzzFeed and created by Mr. Steele?
13     A. Yes, it is.
14     Q. Can you explain for us just what -- does
15 this represent the 16 memos that would have
16 occurred between June and October of 2016 that
17 Mr. Steele created?
18     A. These are the memos that he created under
19 the engagement and then this extra one that is
20 appended. I never actually numbered -- totaled
21 them up, but these are the ones I'm familiar
22 with.
23     Q. And does this represent the entire
24 universe of memos that Mr. Steele created as part
25 of this particular engagement for you?

Page 140

1      A. To the best of the my knowledge as part of
2  this engagement, this is it.
3      Q. And can you just explain to us so that we
4  understand the document, it has a heading "Company
5  Intelligence Report."  I'm just looking at the
6  first page.  That one says "Company Intelligence
7  Report 2016/080."  What would that have signified?
8      A. Company Intelligence Report is just a way
9  of saying it's not a government document.  In the
10 event that, you know, someone stole it or it leaked
11 or there was some sort of breach, you know, they're
12 not going to have their own name on it, but they
13 want to make sure that no one mistakes it for a
14 government document.  That's my understanding.
15     080 is their internal numbering system for,
16 you know, their production of memoranda, and the
17 reason it jumps from 80 to 86 is -- I never
18 actually asked him, but there aren't five memos in
19 between this.  So the interpretation is that it's
20 an internal numbering system for maybe Russia stuff
21 or maybe it's just -- I'm sorry.  I don't know what
22 the internal numbering system is, but there isn't
23 five memos in this project between these two.
24     Q. So the company referenced in Company
25 Intelligence Report, your understanding is that

Page 141

1  would be Orbis, not Fusion GPS?
2       A. I can't answer that. I think it's, as I
3  said, meant to denote that it's not a government
4  report.
5       Q. Were they producing -- as you noted, the
6  next apparent report 086 would be five, presumably,
7  reports later. Were those other five reports
8  reports that were being generated for Fusion GPS
9  or --
10      A. No.
11      MR. LEVY: I don't think he said that. Go
12 ahead.
13 BY THE WITNESS:
14      A. I mean, there aren't five reports that he
15 did for us between these two. This is the first
16 and second.
17      Q. So, again, when we look at that first one
18 that we discussed briefly, 2016/080, it appears to
19 be a three-page memorandum and it's dated 20 June
20 2016 and that shows up on the last page. Would you
21 have received it around that time that it's dated,
22 June 20, 2016?
23      A. Within a couple days, yeah. Yes.
24      Q. And not every single discrete memo has a
25 date, but a number of them do. To the extent they

| Glenn Simpson | August 22, 2017 |
|---|---|
| | Washington, DC |

Page 311

```
 1   record.
 2         MR. LEVY:  When we do we just reserve the
 3   right obviously to correct the record or supplement
 4   it.
 5         MR. FOSTER:  That's why we'd allow you to
 6   review it.
 7         MR. LEVY:  Thank you very much.
 8         MR. DAVIS:  Nothing further.  We're going off
 9   the record at 7:04.
10                    (Whereupon the interview was
11                     concluded at 7:04 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 312

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC
2         I, TINA M. ALFARO, Certified Shorthand
3    Reporter No. 084-004220, Certified Realtime
4    Reporter, and Notary Public in and for the State of
5    Illinois, do hereby certify:
6         That GLENN SIMPSON, whose interview is
7    hereinbefore set forth, was duly sworn by me and
8    that said deposition is a true record of the
9    testimony given by such witness.
10        I further certify that I am not counsel
11   for nor in any way related to any of the parties to
12   this suit, nor am I in any way interested in the
13   outcome thereof.
14        In witness, whereof, I have hereunto set
15   my hand this ____ day of _____,2017.
16
17
18
19                       _____
20                       Tina M. Alfaro, CSR, CRR
21
22
23
24
25