IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.
_____/

## MOTION TO AMEND ANSWER AND INCORPORATED MEMORANDUM OF LAW

Defendants BuzzFeed, Inc. and Ben Smith respectfully move under Fed. R. Civ. P. 15(a)(2) and 16(b)(4) for an order granting them leave to file a Second Amended Answer in the form attached hereto as Exhibit "A" (the "SAA").

### PRELIMINARY STATEMENT

This Motion is being filed solely in an abundance of caution. When the Court and the parties first discussed the possibility that Plaintiffs would file a Partial Motion for Judgment on the Pleadings, it was predicated on Plaintiffs' representation that they would file a genuine Rule 12 motion raising a "pure issue of law." However, as is more fully discussed in Defendants' Opposition, the motion Plaintiffs have actually filed four months later is nothing of the kind. Rather, it is a motion for partial summary judgment. In addition, it makes numerous assertions of fact, characterizations about Defendants' supposed position on the facts, and arguments pointing to the supposed absence of countervailing facts in Defendants' pleadings.

For all the reasons stated in their Opposition, Defendants' respectfully submit that Plaintiffs' motion should be denied accordingly, and the parties will re-visit these issues at the summary judgment stage. Alternatively, resolution of the motion should be deferred to that stage pursuant to Rule 56(d). If the Court chooses either of those options, then this motion for leave to amend would be moot and may be denied as such.

However, if and only if the Court wishes to determine whether judgment could be rendered on the pleadings, then good cause exists to grant leave for Defendants to amend the

1

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

portions of their Amended Answer which plead the two Affirmative Defenses at issue in Plaintiffs' motion. Plaintiffs' motion makes it clear that the two privilege defenses they challenge cannot be resolved as pure issues of law. They both require the application of legal principles to a set of facts, which for purposes of this motion would mean applying the law to factual allegations made in the Answer.

However, the parties entered into a prior agreement that the pleadings in their current form were sufficient for their purposes, and therefore would not be the subject of a motion solely challenging the pleadings. Plaintiffs are now trying to take advantage of that agreement, by purporting to challenge the very pleadings the parties agreed were sufficient, while refusing to consent to allow Defendants to amend them in response to the arguments Plaintiffs now make. Moreover, absent further amendment, the Court will not have the benefit of understanding how the parties' respective positions on these defenses may actually play out in this case. For all these reasons, good cause exists to grant leave to file the proposed Second Amended Answer.

## FACTUAL BACKGROUND

**A.     The Answer In This Case**

After this Court denied Defendants' motion to dismiss for lack of personal jurisdiction, Defendants filed their Answer on June 9, 2017. Ex. B ("Original Answer"). Among other affirmative defenses, Defendants asserted the fair report and neutral report privileges. *Id.* at Third Defense ("Defendants' publication of the Article and the Dossier is protected by a fair report privilege pursuant to any applicable state statute (including, but not limited to, New York Civil Rights Law § 74), the common law, the First and Fourteenth Amendments to the Constitution of the United States, or any applicable state constitution.") and Fourth Defense ("Defendants' publication of the Article and the Dossier is protected by a neutral report privilege pursuant to the common law, the First and Fourteenth Amendments to the Constitution of the United States, or any applicable state constitution or statute.").

**B.     The Parties Agree That Plaintiffs Will Not Move to Strike Defendants' Fair Report and Neutral Report Privilege Affirmative Defenses Once the Answer is Amended**

On June 14, counsel for Plaintiffs emailed counsel for Defendants "to inform you that Plaintiffs intend to move to strike certain of the defendants' affirmative defenses (or portions thereof) and to give you the opportunity to instead file an amended answer that removes the improper defenses (or portions thereof), which is the preferred procedure in the Southern District

2

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

of Florida." Ex. C.  Among other things, Plaintiffs' counsel objected to the fair report and neutral report defenses, writing that:

> Third affirmative defense [fair report privilege]: The invocation of a statutory defense available under New York law is inappropriate in this case given that the present case is governed by Florida law.  As such, that portion of the defense should be stricken.  In addition, the reference simply to 'any applicable state statute' that might provide a defense fails to provide the plaintiffs with adequate notice of the defense asserted and must either be amended to provide proper statutory references or removed from the defense.
>
> Fourth affirmative defense [neutral report privilege]: Again, reference simply to "any applicable state statute" that might provide a defense fails to provide the plaintiffs with adequate notice of the defense asserted and must either be amended to provide proper statutory references or removed from the defense.

*Id.*  Importantly, Plaintiffs did not raise any objections regarding the potential factual basis for these affirmative defenses.  Rather, their objections went solely to the alleged vagueness of the sources of law Defendants' invoked in their Answer.  Defendants' counsel responded on June 21 with a proposed Amended Answer, Ex. D, which removed certain defenses and re-pled others in response to Plaintiffs' objections.  With regard to the fair report and neutral report defenses, the amendments more specifically pled the sources of law upon which those defenses are based.  Ex. D, Second and Third Defenses.

Counsel for Plaintiffs responded on June 25, writing that "[a]lthough we disagree on certain issues" such as whether Florida or New York law applied, "we agree that the proposed amended answer sufficiently mitigates our concerns so as to make a motion to strike unnecessary." Ex. E.  On June 29, Defendants filed their Amended Answer pursuant to Fed. R. Civ. P. 15(a)(1)(A) (the "Amended Answer").  Ex. F.

The deadline for amendment of pleadings set by this Court's pre-trial scheduling order, Dkt. 29, then passed on June 30.  Because the parties had agreed that the pleadings would not be the subject of any preliminary motion practice, Defendants did not either make any amendments or seek leave to make any additional amendments that would have responded to any objections or arguments from Plaintiff regarding the *factual basis* for these affirmative defenses.

**C.    This Court Suggests A Motion As A Matter Of Law On The Fair Report Privilege**

Almost two months later, at a September 29 status conference, counsel for the parties discussed with the Court some of the substantive issues in the case, including the fair report

3

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

privilege. Plaintiffs' counsel argued that BuzzFeed's article could not, as a matter of law, support a fair report privilege defense. Ex. G (transcript) at 19-20. In response to that argument, the Court suggested that Plaintiffs file a motion for judgment on the pleadings to test whether the fair report defense truly presented, as Plaintiffs maintained, a "pure issue of law." *Id.* at 22. Thereafter, Plaintiffs advised that they intended to bring a pleadings motion seeking to dismiss the fair report privilege. *Id.* at 23.

D.     **Defendants Seek an Agreement to Amend Their Answer, but Plaintiffs Refuse**

In light of this change in circumstances, on October 2, 2017, counsel for Defendants reached out to Plaintiffs' counsel and asked whether, in light of the parties' earlier agreement that Plaintiffs would not move to dismiss based on the pleadings, he would consent to Defendants further amending their Answer to include factual allegations to support the fair report privilege defense. Plaintiffs' counsel respond by email claiming, despite his earlier agreement "that the proposed amended answer sufficiently mitigates our concerns so as to make a motion to strike unnecessary" that:

> I went back and reviewed the original and amended complaints and did not see any instances in which you removed any **\*facts\*** from your original complaint in response to our concerns about improperly asserted affirmative defenses. You did remove some of the defenses, which resulted in our not having moved to strike the same.
>
> None of our discussions, though, precluded our right to file a motion for judgment on the pleadings, as the Court has now suggested we do.

Ex. H.

Put simply, it appeared to Defendants that Plaintiffs might be trying to take advantage of the Court's suggestion that they file a motion they had previously agreed not to file, and thereby were refusing to permit amendments that Defendants would have made back in June had Plaintiffs raised the objections to the fair report privilege defense they now planned to raise in a dispositive motion. Notably, if Plaintiffs really believed that the fair report privilege defense presented a "pure issue of law" such that there could be no set of facts Defendants could allege that would support the defense, as they represented to the Court, then no possible prejudice to them could have resulted from agreeing to allow further amendments before filing a motion for judgment.

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

Nonetheless, because (1) Plaintiffs' counsel had represented that their motion would only raise a "pure issue of law," and (2) Defendants' counsel anticipated that Plaintiffs' motion would be filed not long thereafter, Defendants elected to wait for the motion for judgment, rather than file an anticipatory motion for leave to amend the Answer that might prove to be unnecessary.

E. **Plaintiffs Represent to the Court on January 10 that Amendments to the Pleadings Would Not Be Relevant to Plaintiffs' Anticipated Motion**

However, two and half months went by and when the parties appeared for a status conference on January 10, 2018, no motion had yet been filed. As a result, Defendants' counsel raised with the Court the concern that that because the current state of the pleadings reflected the parties' original agreement that no further motion practice confined to the pleadings would ensue, Defendants could be prejudiced if they did not have the opportunity to further amend the pleadings to allege the factual basis for the privilege defense. Defendants' counsel noted that privilege "involves applying law to facts." Ex. I (transcript) at 45. Defendants' counsel also noted that when the same issue arose in litigation in New York state court over the same article and dossier, counsel for the parties had agreed that the Defendants would file an Amended Answer, and then engaged in motion practice on the basis of the allegations pled in an Amended Answer. *Id.* at 44-45.

In response, Plaintiffs' counsel stated that "[w]e don't think that the way this motion is going to be presented to the Court is going to require any consideration of any fact that is either not stipulated to, or at least something that the defendants would say, 'Well, there's no possible way that we could plead something that would be contrary to this.'" *Id*. at 48. That argument, in and of itself, was somewhat different than positing the issue as a pure issue of law, unrelated to any underlying facts. Plaintiffs' counsel also represented for the first time that their motion would address another affirmative defense, in addition to the fair report privilege.

F. **The Pending Motion for Partial "Judgment on The Pleadings"**

On January 18, 2018, Plaintiffs' filed their Motion for Partial Judgment on the Pleadings (the "Motion" or "Mot."). But the Motion does not remotely raise a "pure issue of law." Rather, its legal arguments are premised upon numerous assertions of fact and citations to the actual discovery record. Many of Plaintiffs' assertions or characterizations of fact have not been, nor would be, "stipulated to." To the contrary, once discovery is complete Defendants believe they will be in a position to show why the undisputed material facts require summary judgment for

5

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

Defendants. Below is a list of many of the factual assertions upon which Plaintiffs' legal arguments are based, as well as conclusions of law for which no factual support is offered:

> "This is the sum total of any mention of government officials or government 'action' in the Article. The article says nothing about the memos being the subject of any investigation or official proceeding; makes no claim that such an investigation or official proceeding existed; and contains no reporting on any such investigation." Mot. at 4.
>
> "On January 11, 2017, Buzzfeed Editor Ben Smith was interviewed on Meet the Press. In that interview, Mr. Smith admitted that he and Buzzfeed had 'real solid reasons to distrust' the information contained in the Dossier at the time they published it." Mot. at 4 (citing an internet news transcript).
>
> "Webzilla is, undisputedly, a Florida corporation." Mot. at 7 n. 7.
>
> "Webzilla has suffered injury in Florida." *Id.*
>
> "Mr. Bensinger . . . has not claimed to have received the Dossier anywhere other than in California." *Id.*
>
> "Buzzfeed reporters worked on the defamatory article from Washington, D.C., California, and London." *Id.*
>
> "It is undisputed that Buzzfeed did not receive the Dossier from a government official or any other government source." Mot. at 8, citing Mot. Ex. 2 (a deposition transcript) and Ex. 4 (an exchange of e-mails between counsel).
>
> "It is undisputed that the Dossier . . . is not . . . a government document at all." Mot. at 8, citing Mot. Ex. 1 (a legal memorandum from a government attorney) & Ex. 3 (factual testimony of Glenn Simpson).
>
> "It is undisputed that the Defendants were not aware of any investigation at the time they published the Dossier, as opposed to knowledge that various government officials possessed or had discussed the Dossier as a whole." Mot. at 12, citing Mot. Ex. 5 (interrogatory responses, which say nothing of the kind).
>
> "[T]he Article neither mentions an investigation nor does it even suggest the existence of such an investigation." Mot. at 13.
>
> "The article says nothing about the memos being the subject of any investigation or official proceeding; makes no claim that such an investigation or official proceeding existed; and, of course, contains no reporting on any such investigation." Mot. at 14.

6

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

> "Plaintiffs are not public figures." Mot. at 18.
>
> "Buzzfeed itself did not believe the source of the information in the Dossier to be 'credible and reliable' at the time of publication." Mot. at 19 (citing a news interview).

Even more troubling is that the Motion does exactly what Plaintiffs represented it would not do. It repeatedly claims that Plaintiffs are entitled to judgment as a matter of law because the Amended Answer does not allege what Plaintiffs contend would be necessary facts to establish certain elements of the defenses at issue:

> "Defendants make no claim in their Answer to have received the Dossier from [a government] source, nor could they make such a claim even if given an opportunity to amend their answer." Mot. at 8.
>
> "Defendants have not alleged that the Dossier was presented in a 'public proceeding.'" *Id.* at 9.
>
> "Defendants have never actually claimed: (1) that there was any investigation relating to Plaintiffs, or (2) that there was any investigation into the December Memo (containing the defamatory statements about Plaintiffs) as opposed to the Dossier as a whole." *Id.* at 11.
>
> "Defendants do not claim that they knew of any actual 'investigation' into the Dossier as a whole prior to their publication of the same . . . ." *Id.*
>
> "Defendants cannot show that there was an investigation into Plaintiffs, the December Memo, or the Dossier at the time of publication; even if they could, they cannot show that they knew of – or relied on – any such investigation…." *Id.*

As discussed above, however, the reason the Amended Answer lacks any allegations at all of this nature is because there was a prior agreement that the Answer was sufficient to avoid motion practice that would challenge its sufficiency. In fact, the proposed Second Amended Answer contains detailed allegations that pertain to investigations into the Dossier, official actions with the Dossier (including the December memo), the source of the Dossier, and Defendants' knowledge about investigations and other official actions at the time of publication. *See* SAA, Second Defense ¶¶ 1-25. While the parties may continue to disagree about the legal import of the facts, Plaintiffs' repeated claims about what is supposedly "undisputed," what Defendants supposedly "claim," "do not claim," or "cannot show," are all premised on the absence of pleadings stating what Defendants actually claim and assert they will show.

7

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

**G.     PLAINTIFFS REJECT ANY FINAL EFFORT AT COMPROMISE**

Upon reviewing Plaintiffs' motion, it seemed apparent to Defendants' counsel that for all the reasons discussed above, the motion was not a proper Rule 12 motion and clearly did not even purport to raise any "pure issue of law." Moreover, it was replete with arguments premised on the absence of factual allegations – precisely the concern that Defendants have raised for months regarding Plaintiffs' intentions here, in light of the parties' prior agreement about the sufficiency of the Amended Answer. As a result, Defendants' counsel made one final effort to propose that Plaintiffs either (1) stipulate that the motion was really one for partial summary judgment, and pursuant to Rule 56(d) defer any deadline to respond to it until discovery was completed, or (2) consent to a motion for leave to amend the Answer, so that the issues could actually be litigated on the basis of the pleadings. Ex. J. Plaintiffs' counsel refused, claiming that "In any event, this is a discussion that I feel we have had multiple times in multiple ways and our position remains the same: **this is a motion that was specifically requested by Judge Ungaro** and in the procedural form in which she proposed it be filed. **We are not going to second-guess the Court** and we believe the motion is proper as filed." *Id*. (emphasis in the original).

## ARGUMENT

If, and only if, this Court wishes to address the question of whether the pleadings could support potentially viable fair report and neutral report privilege defenses, then it should grant Defendants' motion to amend its answer to state the factual basis of those affirmative defenses, for two primary reasons.

First, it would be only way for the Court to evaluate the potential viability of the privilege defenses at issue here. Second, to address the pleadings in their current form would be unfair. The Court's invitation to file this motion was predicated on Plaintiffs' representation that they could raise a "pure issue of law." That is not the motion they filed. Instead, Plaintiffs are essentially asserting that the Court's invitation to brief what they asserted was a "pure issue of law" somehow entitles them to take advantage of the parties' prior agreement and now argue they are entitled to judgment because the pleadings supposedly lack factual allegations. The important issues raised by this case should not be resolved on the basis of such "gotcha" tactics.

8

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

**I.    GOOD CAUSE EXISTS TO PERMIT AMENDMENT OF THE ANSWER**

In deciding whether to permit a party to amend pleadings after the expiry of the amendment deadline set by a scheduling order, a court must first assess whether good cause exists to modify the scheduling order deadline under Fed. R. Civ. P. 16(b). *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). If good cause does exist, the court then considers whether leave to amend is appropriate under the permissive Fed. R. Civ. P. 15(a)(2) test. *Id.* Here, good cause clearly exists. This is not a typical request for an amendment after the Court's deadline. There is good cause here because the need to amend arises not from any lack of diligence on Defendants' part, but from an event that took place after the deadline for amendments – Plaintiffs' representations regarding questions of law, which resulted in their filing the Motion months after originally agreeing that "a motion to strike [was] unnecessary."[1]

Moreover, one of the primary purposes of the Court's invitation to file the Motion was so that the Court would have the opportunity to learn more about the issues raised by these affirmative defenses, even if it turned out to be premature to actually resolve them. But to consider a Rule 12(c) motion filed by a plaintiff to dismiss defenses, the Court must apply the governing legal standards to the particular factual allegations that *Defendants* could assert to support these defenses. *Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir. 1949). That is, the factual record on a plaintiff's motion for judgment on the pleadings comes primarily from the answer – "[t]he fact allegations of the answer are to be taken as true, but those of the complaint are taken as true only where and to the extent that they do not conflict with those of the answer." *Id.*; *see also Bethel v. Escambia Cty. Sheriff's Office*, 2006 WL 1883426, at *1 (N.D. Fla. July 7, 2006) ("[T]he plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery."). In its current form, the result of a compromise between the parties in June, the Amended Answer does not contain sufficient factual detail to fully assess whether the defenses at issue could apply here.

As a matter of fundamental fairness, Defendants should be entitled to the benefit of the bargain that they made with the Plaintiffs – i.e., that Plaintiffs agreed that the allegations

---

[1] There is no meaningful difference between the Motion and a motion to strike an affirmative defense. *See Chavez v. Mercantil Commercebank, N.A.*, 2011 WL 13112229, at *2 (S.D. Fla. June 15, 2011) (citation omitted) (construing plaintiff's motion for partial judgment on pleadings as a motion to strike because "[i]f a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading, he should proceed under Rule 12(f) rather than under Rule 12(c) because the latter leads to an entry of judgment.").

contained in the Amended Answer were sufficient such that Plaintiffs would not move to strike those defenses. There is no reason why this Court's request for motion for judgment on the pleadings to potentially assess a "pure issue of law" should change the import of that agreement. On the contrary, bearing in mind that the Court invited the motion based on the understanding that Plaintiffs would *not* rely on assertions of fact or claims about the absence of facts, Plaintiffs should have agreed to allow Defendants to amend the answer such that the question of the legal sufficiency of these two privileges was ripe for decision. Instead, they are seeking to parlay the Court's request into a strategic opportunity to attack allegations that had been specifically tailored to address their previous objections to their sufficiency.

And there is no question that, despite Plaintiffs' claims at the January 10 conference, Ex. I at 48, that is exactly what they seek to do. Plaintiffs' motion makes legal arguments that rely heavily on facts they simply assert and claim are "undisputed," only because the Amended Answer does not contain factual allegations setting forth the basis of each element of the relevant defenses.

For instance, Plaintiffs argue in their motion (without attribution) that "it is undisputed that the Dossier…is not . . . a government document at all." Mot. at 8  While for the reasons set forth in Defendants' Opposition that is not the only (or even the primary) basis for asserting the fair report privilege, even if it were, Defendants *do* contend that the Dossier may be considered a government document, at least for purposes of the fair report privilege. Among the reasons why include the facts that: (a) the Dossier was compiled by Christopher Steele largely while he was functioning as an FBI source and regularly met with the FBI and other agencies as well, SAA, Second Defense ¶¶ 1-3, 5; (b) the Dossier was obtained and used by the FBI in its investigation into Russia's interference with the 2016 Presidential election, *id.* at ¶¶ 2, 4, 6, 13-14; (c) the Department of Justice and FBI used the Dossier to obtain and renew a warrant from the Foreign Intelligence Surveillance Court, *id.* at ¶¶ 4, 6; (d) Senator John McCain personally delivered a copy of the Dossier to FBI director James Comey, *id.* at ¶¶ 9-10; and (e) the President and Vice-President were given two-page synopses of the Dossier, and they, the President-elect and congressional leaders were briefed about it, *id.* at ¶¶ 13-14. And while the definition of what a "government document" is for these purposes would ultimately be a question for the Court, it is a question that can only be resolved on the basis of facts pertaining to the document.   Defendants'

10

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

proposed amendments would allow the court to assess whether the facts pled about the Dossier could *potentially* make it a "government document," at least for purposes of a Rule 12 motion.

Plaintiffs similarly argue that they are entitled to dismissal of the fair report defense because "Defendants do not claim that they knew of any actual 'investigation' into the Dossier as a whole prior to their publication of the same . . . ." Mot. at 9. But that is precisely the point – Defendants have not provided specific allegations explaining how they were aware of that because Plaintiffs agreed that they did not have to do so. Similarly, Plaintiffs make numerous arguments about what the "Article" supposedly does or does not say. As Defendants explain in their Opposition, however, the sources like the January 10 CNN report that the Article refers and links to are also relevant. But only the Article, and not those sources, is currently part of the pleadings. Defendants are entitled to an opportunity to particularize their allegations on this point in their Answer so that the Court may assess whether, if true, those allegations could support the privilege.

Finally, Plaintiffs argue that the neutral report privilege cannot apply here because the Dossier does not come from a "responsible, prominent" source. Mot. at 18. But on the present state of the pleadings the Court does not have any information before it that would allow it to assess that claim. Defendants' proposed amendments address this by adding detailed allegations about Mr. Steele's investigation, and the extent to which others, including the FBI and two United States Senators, considered him and the Dossier to be reliable. *See* SAA, Third Defense, ¶¶ 1-9.

In addition, there is no question that Defendants have been diligent in seeking to amend the answer. When seeking leave to amend after a scheduling order deadline has passed, "diligence is the key to satisfying the good cause requirement." *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672-73 (S.D. Fla. 2012) (Ungaro, J.); *see also Green Island Holdings, LLC v. British American Isle of Venice (BVI), Ltd.*, 521 F. App'x 798, 800 (11th Cir. 2013) ("Rule 16(b) does not define good cause, but the advisory committee note indicates that good cause exists if the schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'"). Good cause therefore exists where a defendant could not reasonably have anticipated the need to amend prior to the deadline. *See, e.g., Coton v. Televised Visual X-Ography*, 2008 WL 11336586, at *1 (M.D. Fla. Nov. 24, 2008) (intervening change in the law).

Here, Defendants have diligently sought to amend the answer because the need to amend arises from an unforeseeable change in circumstances – Plaintiffs moving to dismiss defenses they previously agreed were sufficiently pled. Defendants were entitled to rely on the representations of Plaintiffs' counsel in framing their defenses and deciding not to make further changes to their pleading. *See, e.g., Pears v. Mobile Cty.*, 645 F. Supp. 2d 1062, 1088 (S.D. Ala. 2009) (good cause for amendment of complaint past deadline existed because of "defendants' role in misleading [plaintiff] until that deadline had passed."); *Wolfson v. Lewis*, 168 F.R.D. 530, 534 (E.D. Pa. 1996) (rejecting defendants' objection to proposed amended complaint for lack of concision where "Plaintiffs…only amended their complaint after defendants' request at the pretrial conference for more specificity").

Had Plaintiffs indicated that they believed the Amended Answer was inadequate before the parties reached their prior agreement, Defendants could have amended as of right to address what Plaintiffs now contend are factual deficiencies. Even Plaintiffs have conceded that "the preferred procedure in the Southern District of Florida" is for a defendant to address objections related to affirmative defenses through amendment. Ex. C. Moreover, the predicate for Plaintiffs' present Motion was their representation to the Court and Defendants that their motion would only raise pure issues of law, so any amendments to the pleadings would be irrelevant. Defendants raised their concern about whether that was so several times over the past few months – both with Plaintiffs' counsel directly, and with the Court – but nonetheless relied on Plaintiffs' representations rather than initiate potentially wasteful motion practice.

But that is not what Plaintiffs have actually done. Rather, they now argue that a pleading they previously agreed "ma[d]e a motion to strike unnecessary" is factually inadequate, and they make numerous factual assertions of their own in the absence of any pleadings to the contrary. This is exactly the sort of unfairness that led one court to remark that allowing a plaintiff to "wait many months to file his Rule 12(c) motion and then deprive Defendant of relying on the vast majority of his affirmative defenses at trial" would be "in direct conflict with Rule 1's requirement that the rules 'should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Jou v. Adalian*, 2017 WL 3624340, at *4 (D. Haw. Aug. 23, 2017).

Plaintiffs' position appears to be that no amendment is necessary because it was the Court that first raised the possibility of a pleadings motion on Defendants' affirmative defenses at the

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

September status conference.  Ex. J.  But this misses the point: the issue here is not whether Plaintiffs are entitled to bring the Motion, but whether Defendants should have the chance to provide the Court with everything it needs to decide the kind of motion the Court actually invited Plaintiffs to bring.  And the Court certainly has not decided that issue.  In fact, at the January status conference it specifically noted that it would have to "wait and see what [the motion for judgment on the pleadings] looks like" before deciding whether amendments to the answer were necessary.  Ex. I at 48.

There is accordingly good cause for Defendants' proposed amendments.

## II.      LEAVE TO AMEND IS APPROPRIATE UNDER RULE 15

Because good cause exists, the issue becomes whether amendment is appropriate under the permissive standard set out in Fed. R. Civ. P. 15(a)(2), which states that the court "should freely give leave where justice so requires."  And, "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As noted above, the proposed amendments here could only have a salutary effect on this case, by more clearly defining the facts on which Defendants rely.  "Factual allegations of this kind, which clarify but do not reshape the action, are rarely a bad thing."  *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 324 (D.D.C. 2011) (granting leave to amend); *see also Hess v. Coca-Cola Refreshments USA, Inc.*, 2014 WL 5080258, at *3 (M.D. Fla. Sept. 29, 2014) (granting leave to amend "to add with more specificity factual allegations.").

Nor can there be any question of prejudice to Plaintiffs from these amendments, because the proposed amendments add no new defenses, and none of the new factual allegations will come as a surprise.  All come from materials like public documents, news reports to which the Article hyperlinks, published news reports, and information that has been obtained in discovery to date.  Plaintiffs are accordingly already aware of all of these facts, and they even anticipated many of these allegations in their Complaint.  *See* Compl. ¶ 24 (pleading that Dossier "is not an official document and was not created by any government entity."); *see also, e.g., Khan v. IBI*

13

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

*Armored Services, Inc.*, 2005 WL 2445473, at *1 (E.D.N.Y. Sept. 30, 2005) (granting defendant leave to amend answer where there would be no undue prejudice because "plaintiff was already aware of the Motor Carrier Exemption and anticipated the defense in his papers."). More detailed factual allegations in the answer, then, can only help the Court by "promot[ing] factual accuracy and encourag[ing] clarity of the record." *Hess*, 2014 WL 5080258, at *2. Leave to amend is therefore appropriate.

## CONCLUSION

For all these reasons, this Court should grant Defendants leave to file their proposed Second Amended Complaint.

Dated: February 9, 2018

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

The undersigned certify that Defendants' counsel have conferred with counsel for the Plaintiffs in a good-faith effort to resolve this motion. Plaintiffs' counsel indicated that they oppose this motion.

Respectfully submitted,

| | |
|---|---|
| /s/ Katherine M. Bolger<br>Katherine M. Bolger<br>Adam Lazier<br>Nathan Siegel<br>Alison Schary<br>Davis Wright Tremaine, LLP<br>1251 Avenue of the Americas, 21st Floor<br>New York, New York 10020<br>katebolger@dwt.com<br>adamlazier@dwt.com<br>nathansiegel@dwt.com<br>alisonschary@dwt.com | /s/ Roy Black<br>Roy Black<br>Jared Lopez<br>Black, Srebnick, Kornspan & Stumpf, P.A.<br>201 So. Biscayne Boulevard<br>Miami, Florida 33131<br>rblack@royblack.com<br>jlopez@royblack.com<br><br>Attorneys for Defendants |

14

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

**CERTIFICATE OF SERVICE**

      I CERTIFY that on February 9, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                      By: /s/ Jared Lopez
                                                                Jared Lopez, Esq.