# EXHIBIT "G"

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-60426-Civ-UNGARO

ALEKSEJ GUBAREV, et al.,          ) Pages 1-30
                                  )
              Plaintiffs,         )
                                  )
         -v-                      )
                                  )
BUZZFEED, INC., et al.,           )
                                  ) Miami, Florida
              Defendants.         ) September 29, 2017
----------------------------)       4:00 p.m.


TRANSCRIPT OF STATUS CONFERENCE

BEFORE THE HONORABLE URSULA UNGARO

U.S. DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs          BOSTON LAW GROUP, PC
                            BY:  VALENTIN GURVITS, ESQ.
                            825 Beacon Street - Suite 20
                            Newton Centre, Massachusetts   02459

                            TRIPP SCOTT
                            BY:  BRADY JAMES COBB, ESQ.
                            110 Southeast 6th Street - 15th Floor
                            Fort Lauderdale, Florida  33302-4245

(via speakerphone)          CIAMPA, FRAY-WITZER, LLP
                            BY:  EVAN FRAY-WITZER, ESQ.
                            20 Park Plaza - Suite 505
                            Boston, Massachusetts   02116
(continued)

REPORTED BY:                WILLIAM G. ROMANISHIN, RMR, FCRR, CRR
(305) 523-5558              Official Court Reporter
                            400 North Miami Avenue
                            Miami, Florida  33128


STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1   APPEARANCES (continued):

 2   For the Defendants        BLACK SREBNICK KORNSPAN & STUMPF
                               BY:  ROY E. BLACK, ESQ., and
 3                             JARED M. LOPEZ, ESQ.
                               201 South Biscayne Boulevard
 4                             Suite 1300
                               Miami, Florida  33131
 5
                               DAVIS WRIGHT TREMAINE, LLC
 6                             BY:  KATHERINE M. BOLGER, ESQ.
                               1251 Avenue of the Americas
 7                             21st Floor
                               New York, New York  10020
 8

 9            (Call to order of the Court)

10            THE COURT:  Good afternoon.

11            The case before the Court is Gubarev -- if I

12   pronounced that correctly -- versus Buzzfeed, 17-60426.

13            Who's here for the plaintiff, understanding

14   somebody's on the telephone I know?

15            MR. GURVITS:  Good afternoon, Your Honor.  Val

16   Gurvits for the plaintiffs, and on the phone is Evan

17   Fray-Witzer, and to my right is Brady Cobb.

18            THE COURT:  And who is going to speak for the

19   plaintiff today?

20            MR. GURVITS:  I will.

21            THE COURT:  Okay.  Fine.  You can have a seat.

22            And who's here for the defendants?

23            MR. BLACK:  Good afternoon, Your Honor.  Roy Black.

24   I'm here with Kathryn Bolger with the Davis Wright firm in New

25   York, and Jared Lopez, who's my partner.
```

```
1              THE COURT:  Okay.  Fine.  Thank you.  Thank you for
2    coming.
3              So let's try to figure out where we're going on
4    this.  I think that's the best we can do.
5              So who can tell me what's going on with Mr. Steele?
6              MR. GURVITS:  Your Honor, we, as Your Honor might
7    recall, have asked this Court to issue a letters rogatory.
8              Our UK counsel informed us that, apparently, the
9    Court where is he is to present it wants an original signed in
10   ink.  And we actually brought a blank copy and we're hoping
11   that Your Honor would sign it.  They don't accept an
12   electronic copy.
13             THE COURT:  I'm happy to sign it in ink.
14             MR. GURVITS:  Thank you, Your Honor.
15             THE COURT:  All right.  So where does this whole
16   thing stand, though?
17             MR. GURVITS:  Once we have the letters rogatory
18   signed in ink, we present it, or our UK counterpart presents
19   it, in a British court.  We've already been be on notice that
20   Mr. Steele's attorneys will oppose it, and frankly, there is a
21   possibility that the British Court will refuse to allow the
22   deposition to go forward.
23             Now, our entire schedule here --
24             THE COURT:  Well, how long do you think that process
25   will take?
```

```
 1              MR. GURVITS:  It can take about six weeks to two

 2    months, according to our UK counsel.  But we would like the

 3    trial to proceed as scheduled and certainly are not interested

 4    in delaying or asking this Court for any kind of a change to

 5    the scheduling order.  If we're unable to take Mr. Steele's

 6    deposition, it will be unfortunate, but we will be ready to

 7    proceed, nonetheless.

 8              THE COURT:  Okay.  Well, I'm going to be asking the

 9    defense this also.  But is there any other related litigation

10    that the plaintiffs have going on that might impact the

11    scheduling order, like FOIA requests or anything like that?

12              MR. GURVITS:  There is a UK lawsuit that is

13    completely separate from this one.  We're not seeking the same

14    damages in this lawsuit that are sought in that one, and

15    they're not in any way dependent on each other.  So we're

16    certainly not encumbered by any other process.

17              THE COURT:  Okay.  Well, what about the defense?

18    What's going on in the way of related litigation?

19              MR. BLACK:  Your Honor, there is a number of issues

20    that I think impact upon Your Honor's questions about

21    scheduling.

22              Yesterday the magistrate ordered Mr. Gubarev to turn

23    over a number of IP addresses, Internet things.  He has this

24    very large web of Internet connections that we are entitled to

25    look into.
```

1           THE COURT:  Actually, I was on a conference call and

2    I got a little distracted.  So I'm glad you brought this up.

3           So tell me what happened in front of Judge O'Sullivan

4    yesterday in a little bit of detail.

5           MR. BLACK:  Your Honor, Ms. Bolger argued it and

6    thunk it.  So I'll give her the floor.

7           THE COURT:  Okay.  So let me hear from Ms. Bolger

8    then.

9           Okay.  So tell me what went on, Ms. Bolger.

10          MS. BOLGER:  So we had dueling motions to compel,

11   Your Honor.  On our motion to compel we moved to compel the

12   plaintiff to produce documents in which I'll sort of broadly

13   characterize as three categories.

14          Sorry, Your Honor.  I have the world's worst cough.

15   I apologize.

16          THE COURT:  That's all right.

17          MS. BOLGER:  The first category to which Mr. Black

18   just referred was about information carried over the networks

19   that are operated by the plaintiff and his web of networks.

20          The reason we asked for the question -- and to be

21   clear, Your Honor, the plaintiff has a very wide network.

22   It's a little opaque to us because we haven't been given very

23   much information from the plaintiff about that, which was part

24   of the reason for the motion.  We did not ask for that.

25          What we asked for was, there have been certain public

1    reports since the DNC hack about IP addresses that are

2    compromised in relationship with the hack on the DNC and other

3    IP addresses that are compromised when it comes to other kinds

4    of malware, bots or other kinds of hacking mechanisms.

5          Several IP addresses affiliated with a subsidiary of

6    the plaintiff called root SA have been identified in those

7    reports.  What we asked for was information about what was

8    carried over those IP addresses.

9          The plaintiff originally declined to give that to

10   us.  Judge O'Sullivan ordered them to do so and we're to get

11   that in two weeks.

12         Relatedly, we asked for information about what kind

13   of software they use to monitor their network activity, which

14   would, of course, go to what they know, what they saw, and the

15   plaintiff refused to produce that.  But Judge O'Sullivan

16   ordered them to do so.  So we're hopeful we'll get that

17   information in two weeks.

18         Another category of documents were broad,

19   reputational types of information, things like any pending

20   criminal investigations or any civil causes of action or

21   anything out there that we ought to know about Mr. Gubarev's

22   expertise and Webzilla information.  Plaintiff had refused to

23   produce that.  Judge O'Sullivan ordered them to do so, and

24   we'll get that in two weeks.

25         And the last category was damages information, Your

1    Honor.  Plaintiff has provided us none, or very minimal.  We
2    asked for it to be compelled and it was produced.
3           So that was all resolved yesterday and we're hopeful
4    we'll get that in two weeks.
5           THE COURT:  Okay.  And tell me about your competing
6    motion to compel.
7           MR. GURVITS:  Thank you, Your Honor.
8           Buzzfeed has taken the position that New York law
9    applies to a reporter's privilege that they have asserted in
10   order to avoid responses to a broad area of questions,
11   including, for instance, questions regarding their own
12   profits.  Many of them were resolved by agreement of counsel
13   just before the hearing.  Others were resolved by Judge
14   O'Sullivan during the hearing.
15          And the one outstanding issue is fairly focused on
16   whether the source of the dossier can be withheld and whether
17   the New York statute, that we don't believe applies but
18   Buzzfeed would argue does apply, should apply.  And also, our
19   position is this is not an absolute privilege, whereas
20   Buzzfeed believes that it is.  So Judge O'Sullivan asked us to
21   file memorandums regarding this issue.
22          THE COURT:  In order to resolve discovery disputes.
23          MR. GURVITS:  Yes.  In order to resolve this
24   particular one.
25          I should point out, again, we have not scheduled

1   depositions yet because, frankly, until this week we have

2   received practically nothing from Buzzfeed.  So the first

3   substantial written response we received just a few days ago.

4          But we are going to be scheduling depositions for the

5   middle or end of October because we believe, even without this

6   particular focused issue, we can conduct depositions, and then

7   to the extent that we prevail on this issue, we can address

8   that with a very simple written request.

9          THE COURT:  So there is this choice of law issue

10  that's kicking around.  I take it that Judge O'Sullivan did

11  not resolve the choice of law issue.

12         MR. GURVITS:  Judge O'Sullivan said that he's never

13  really seen this issue before and wanted us to educate him a

14  little more on this.

15         THE COURT:  Okay.  So maybe I need to talk to Judge

16  O'Sullivan, because I assume the issue pervades the case.  It

17  doesn't just relate to discovery.

18         MS. BOLGER:  Your Honor, if I could be heard on

19  that.  In fact, there's very strong case law that the question

20  of asserting an evidentiary privilege -- and, of course, the

21  reporter's privilege is an evidentiary privilege --

22         THE COURT:  Right.

23         MS. BOLGER:  -- is separately decided from the law of

24  the case because of the particular kind of direction of

25  Federal Rule of Evidence 501, which points you to the law of

1   the state where the action is pending, which, of course, then

2   points you to Florida choice of law rules, which then throws

3   you into the Restatement.

4          Restatement 139 has a very clear instruction that in

5   assessing what law to apply, you are to look to the state with

6   the most significant relationship to the document sought to be

7   withheld.  Right.  So that's a separate analysis, that and the

8   law of the state, Your Honor.

9          Honestly, I believe and hope that you'll agree that

10  New York law applies to both.  But I think when it comes to

11  the evidentiary question, it's almost a slam dunk that these

12  documents have nothing to do with Florida.  So it's a

13  different question, Your Honor, but I think it does reach the

14  same outcome.

15         THE COURT:  Okay.  Thanks.

16         So now let's talk about parallel or related

17  litigation.  Is there related litigation going on that the

18  defendants have initiated or not?

19         MS. BOLGER:  There's, I think loosely described, a

20  bunch of related litigation.

21         The first, Your Honor, is that, as you know from our

22  joint status report, Buzzfeed has been since June endeavoring

23  to get disclosure from the Government, and as things go, the

24  Government -- it's been a very long back and forth and an

25  effort to try to negotiate the breadth of the subpoena.  We

```
 1   think that that information is very important.  We sort have
 2   two --
 3            THE COURT:  Well, did you serve a bunch of different
 4   agencies or there's --
 5            MS. BOLGER:  We served very narrow, I thought,
 6   requests on the FBI and Director Comey, the CIA and Director
 7   Brennan, and the ODNI, and we engaged in discussions over five
 8   months with one representative of the DOJ designated to handle
 9   all of it.  And then when we came to an impasse, we filed on
10   Wednesday a motion to compel the Government in the District of
11   Columbia.
12            So our motion to compel does not seek testimony
13   anymore from the CIA.  It seeks the testimony of one
14   individual who can provide answers to essentially ten
15   questions, and that could be the FBI or ODNI.  We would ask
16   the DOJ to designate their representative.  So that was filed
17   Wednesday, the 27th.
18            THE COURT:  So that sounds like something that might
19   move fairly quickly.
20            MS. BOLGER:  I can't vouch for that, Your Honor,
21   because my experience with the Government has been that they
22   don't move very quickly.  And I know that they're entitled to
23   ask for 60 days to respond.  So I don't know.
24            Your Honor, there's also -- and Your Honor may know
25   this -- there's a pending litigation against Buzzfeed based on
```

1   the same dossier in New York state court.

2          THE COURT:  Right.  I do know that.

3          MS. BOLGER:  And there's also a FOIA lawsuit, a FOIA

4   request.  That's not as significant because it's kind of

5   wrapped up in the Government motions.

6          THE COURT:  I'm sorry.  A FOIA request or a FOIA

7   lawsuit?

8          MS. BOLGER:  A FOIA appeal, Your Honor.  So it's not

9   quite at lawsuit.

10         THE COURT:  And who initiated that?

11         MS. BOLGER:  Buzzfeed itself.

12         THE COURT:  Buzzfeed.

13         And the FOIA request is directed at?

14         MS. BOLGER:  I believe there were a splattering of

15  them, Your Honor.  So they went to various agencies and

16  various individuals.

17         THE COURT:  Okay.  And they're just working their way

18  through the FOIA process.

19         MS. BOLGER:  Yes, Your Honor.

20         THE COURT:  And will result in possibly lawsuits in

21  the District of Columbia, I guess.

22         MS. BOLGER:  Your Honor, I would hope that we'd be

23  able to engage with the Government meaningfully in trying to

24  do this all in a way that would be very helpful to getting to

25  the bottom of it.  So I'm hopeful that we'll be able to work

```
 1    something out maybe or get something from the Government, and
 2    that would make the FOIA part of it go way, Your Honor.  But
 3    we'll see what happens.
 4              THE COURT:  All right.
 5              MR. FRAY-WITZER:  Excuse me, Your Honor.  Evan
 6    Fray-Witzer.
 7              I just want to flag for you that there was also one
 8    other proceeding.  The plaintiff had served a subpoena on
 9    Fusion GPS.  Fusion GPS has moved to quash the subpoena in the
10    District of Columbia.  And so we have opposed their motion to
11    quash, and that is also pending, Your Honor.
12              THE COURT:  So could somebody remind me what Fusion
13    GPS is, if I ever knew?
14              MR. GURVITS:  Your Honor, Fusion GPS, by all
15    accounts, was Mr. Steele's client who paid for the dossier or
16    ordered the dossier and to whom Mr. Steele transmitted the
17    dossier.
18              THE COURT:  So, Ms. Bolger, I think you're a First
19    Amendment expert, right?  Aren't you?
20              MS. BOLGER:  I am, Your Honor.
21              THE COURT:  Okay.
22              MS. BOLGER:  I hope to be.  I play one on TV.
23              THE COURT:  All right.  Correct me if I'm wrong.  You
24    have a lot of experience in defamation cases or not?
25              MS. BOLGER:  Yes, Your Honor.
```

```
 1            THE COURT:  So I guess, in anticipation that this
 2    case would bog down in these efforts to get documents from the
 3    Government, I haven't devoted a lot of time to analyzing the
 4    issues and whether there are preliminary issues that need to
 5    get resolved which might narrow the discovery.
 6            So are there any issues like that?
 7            MS. BOLGER:  No, Your Honor.
 8            There are significant issues of -- there's nothing
 9    really happening in America quite as significant as the
10    investigation into the President and his allies by Congress
11    and by the FBI and by everybody, and this dossier is --
12            THE COURT:  What I'm really talking about is, should
13    we have some preliminary litigation on the scope of some of
14    these privileges that Buzzfeed might be asserting.  Are there
15    issues, legal issues, that might be intertwined with facts but
16    are factual disputes but, nonetheless, that could be resolved
17    that would help to either narrow the litigation or move it
18    forward?
19            MS. BOLGER:  Your Honor, there is, of course, the
20    fair and true report privilege, which we've invoked.  And what
21    the fair and true report privilege does is it extends to a
22    report of any official proceeding of the American Government,
23    and that privilege is, obviously, fundamental to our belief
24    that citizens in our public need to know what their Government
25    is doing.  And, Your Honor, we honestly believe that at the
```

1  end of the day Buzzfeed is going to prevail in this litigation

2  because of the fair and true report privilege.

3          But there's a concern I have in terms of making a

4  threshold motion.  Very sincerely, Your Honor, there was a

5  case in the Seventh Circuit, and in the Seventh Circuit -- it

6  started in the Northern District of Illinois -- it's called

7  Globe -- sorry, Your Honor -- it's called Global Relief

8  Foundation.

9          In the Global Relief Foundation case the defendants

10  moved to dismiss a complaint on the fair and true report

11  privilege, and the court said you have not given us any

12  admissible evidence that there is in fact an investigation.

13          The case proceeded through discovery, and at the

14  summary judgment stage the defendants were able to find an

15  affidavit from an FBI agent in a file of another case that

16  said this is a pending investigation, and they were able to

17  bring that to court and move for summary judgment, and on that

18  basis the Court concluded that it was a fair and true report.

19          The reason we haven't made a threshold motion is that

20  we would like to get the evidence to get us to the point where

21  I can make the best fair and true report argument, because

22  again, Your Honor, I believe that this is a report of enormous

23  significance for the American public and that it's going to be

24  privileged, because this is what the First Amendment is for.

25  But I want to get you the best evidence.

1          THE COURT:  Okay.  Well, I appreciate that.

2          But what I'm asking you is, so does it make sense in

3     this case to sort of bifurcate the issues in a way?

4          MS. BOLGER:  Your Honor, I haven't spoken to

5     Mr. Black about this, so maybe we should.  There's the

6     question of whether this is privileged, Your Honor, and then

7     there's the question of whether it's true.

8          THE COURT:  Right.  So that's sort of what I'm trying

9     to get to.  Like, is there some way we can sort through the

10    privilege issue while you guys are working on gathering the

11    information to show it's true or not true?

12         Yes, Mr. Gurvits.

13         MR. GURVITS:  Your Honor, on the issue of privilege,

14    there's certain case law out there that if the Government

15    writes a document or if some document is produced as part of

16    an investigation, then this privilege can be invoked.  The

17    issue here is that the document was written by a third party

18    abroad, then was shown to somebody in the Government.

19         The focused issue that I see and with which I've been

20    struggling is that Buzzfeed seems to take the position that if

21    I write a letter to the Government accusing Brady here of

22    orchestrating 9-11 and then simultaneously send a copy to

23    Buzzfeed, Buzzfeed gets to print it because the Government is

24    reading it because it's part of their job.

25         And on the basis of that, they're seeking to subpoena

```
 1    the entire spy world of the United States and they're making
 2    the case, I feel, larger than it really is.
 3           What it is, this case is about three sentences
 4    focused on my client not having to do with my client's
 5    clients, not having to do with the allegations against
 6    President Trump.  Very focused.
 7           So to the extent that there can be a mechanism where
 8    we can determine whether it's proper for them to be going
 9    beyond that -- and I'm in favor of it -- but again, my client
10    wants the trial to happen as soon as possible.  So everything
11    I say starts with that foundation, and we would like for the
12    trial to be timely.  Thank you.
13           MR. BLACK:  As Your Honor can see, there is a dispute
14    among the facts.  That's why we need to conduct discovery.  Of
15    course, the plaintiff says there's no basis to this.  We, of
16    course, say there's an extremely serious basis.
17           I know what the Court would like to do is to enter an
18    order which focuses us on what the trial is going to be
19    about.  But before you can do that, you've got the legal part
20    of it, but there has to be a factual basis for it, and I think
21    that's why we need to go through the discovery process in
22    order to submit that to the Court.
23           The problem that we have is that the discovery
24    process is going to take a while, because this involves a lot
25    of people.  It's international.  Mr. Gubarev is in Cyprus
```

```
1    doing business out of Russia, Amsterdam and other places.

2    Trying to investigate this and get all this information is

3    extremely difficult.

4            And as you know -- and I know Your Honor has much

5    experience in dealing with the United States Government --

6    it's one of the most difficult things to do.  So I say that

7    only to tell you that I think it's going to take more time

8    than the Court originally set for this case.

9            MS. BOLGER:  And, Your Honor, I think the reason I'm

10   resisting bifurcation in some ways is because I feel like I

11   need evidence and I'm reluctant to say that I would want to

12   limit myself to one kind of evidence to make my fair and true

13   report argument.

14           The Government may not give me anything, Your Honor.

15   The Government may also give me an affidavit that says we

16   can't tell you anything because there's a pending

17   investigation, in which case I'd be happy to show you that.

18           I'm very reluctant to confine myself to --

19           THE COURT:  Well, let me ask you something else.  Are

20   you confronting, or do you expect to confront, a problem in

21   terms of being cleared with security clearances?

22           MS. BOLGER:  Your Honor, one of the defenses the

23   Government invoked, which was very confusing to me, was that

24   the dossier was a classified document.

25           THE COURT:  Well, I don't see how the dossier -- that
```

1   seems kind of silly.  But I can see how there could be

2   classified information that relates to the dossier.

3          MS. BOLGER:  Well, Your Honor, as I'm sure you know,

4   because we've all read about this, there have been many

5   published reports in which former Director Clapper and former

6   Director Brennan have said publicly that there is some sort of

7   investigation here.  Comey testified before Congress about

8   what he did with limited portions of the dossier.  He didn't

9   give me everything but he gave me an awful lot.

10          We actually confined our request to the Government

11  very narrowly, and in particular, our subpoena was targeted

12  very specifically to public statements made so that we could

13  try to get confirmation under oath of public statements made.

14          Harry Reid wrote a letter, Your Honor, to the

15  Government that was then published in the New York Times.  So

16  we've been looking for ways to -- your question about -- I'm

17  indirectly answering your question about classification.

18  We've been trying very hard, Your Honor, to use what is public

19  and get confirmation of that information.  So we haven't

20  blunderbuss sent anything out.

21          THE COURT:  Okay.  But have you considered the fact

22  that you might need security clearances to see some of this

23  information?

24          MS. BOLGER:  Your Honor, I think we've considered

25  every possible way to climb this particular mountain, and I'm

```
1   trying to get the carabiners to get there, Your Honor.  But,

2   you know, yes, Your Honor, we're considered a lot of things

3   and we're doing our level best to get this information.

4           MR. FRAY-WITZER:  Excuse me, Your Honor.  If I could

5   interject one quick thing.

6           THE COURT:  Sure.

7           MR. FRAY-WITZER:  Ms. Bolger has talked about the

8   privilege that Buzzfeed is looking to invoke as being a

9   privilege that protects them with respect to reporting about

10  Government investigations.  And I'd suggest that if we were to

11  turn back to the original article that Buzzfeed published in

12  which they attached the entire dossier, the original article

13  doesn't even talk about a Government investigation.

14          The original article talks extensively about the

15  dossier and the fact that they know that portions of it are

16  unverified, and so on and so forth.  They make mention, I will

17  admit, that certain people in the Government have seen the

18  document.  They make mention that the FBI had copies of some

19  of the memos.

20          But the original story that they wrote does not --

21  and this is the story that we are suing on -- the original

22  story is not a report of a Government investigation.  The

23  original story is a report of the existence of this unverified

24  dossier, and that may be an area in which we can certainly

25  brief and argue some of the privilege issues earlier without
```

1    having to delay the process of the trial.

2              MS. BOLGER:  Your Honor, the libel claim was about

3    the information published in the dossier.  There's nothing

4    about Mr. Gubarev in the article.  The plaintiff is making no

5    claim based on the article.  Mr. Gurvits just said it's three

6    sentences in a dossier.  The libel claim is about the dossier,

7    which is the report of a public investigation, and it's a fair

8    and true report, Your Honor, because it's a document in that

9    investigation, and that's the Testmasters case --

10             THE COURT:  Well, it's a report of an investigation

11   is done by Mr. Steele.

12             MR. FRAY-WITZER:  Yes.

13             MS. BOLGER:  No, Your Honor.  It's a --

14             THE COURT:  What's missing -- and maybe you can prove

15   it -- is that it's a report of an investigation of the

16   Government.

17             MS. BOLGER:  Well, Your Honor, there is a case in New

18   York called Fine, Fine versus ESPN.  In the Fine case there

19   was an audiotape that was submitted to the police department.

20   ESPN broadcast the audiotape.  The Court said that's a fair

21   and true report of an official investigation.

22             In the Testmasters case, there was a press release

23   that was created as a result of a New York City investigation.

24   It was actually the draft of a press release created in a New

25   York City investigation.  A reporter published the press

```
 1    release.  The Court said publishing that document submitted in
 2    an investigation is a fair and true report of the
 3    investigation.  The fair and true report privilege talks very
 4    broadly about the ability to publish this information.
 5           Some of these cases are New York cases, Your Honor,
 6    but some of them aren't.  The Global Relief cases I talked
 7    about earlier were in the Northern District of Illinois.  And
 8    there's a case in the Middle District of Florida, Ortega,
 9    which is in fact very similar on the facts.  And there's
10    another case called OFA Bank in Washington, DC, which is
11    actually about a Russian dossier, about Alpha Bank created by
12    private individuals, and the defendants moved to --
13           THE COURT:  Listen, Ms. Bolger, we can't resolve the
14    issue today.  It's an affirmative defense.  I suppose you
15    could move for judgment on the pleadings as to the affirmative
16    defense, Mr. Fray-Witzer, and the Court would review the
17    briefing and make a decision.
18           MR. COBB:  Your Honor, Brady Cobb.
19           On the discovery issue, Ms. Bolger said she's trying
20    to climb this large mountain and looking for carabiners.  I
21    would just submit I think we're climbing the wrong mountain.
22           This is not about the veracity of the dossier with
23    respect to Mr. Trump or any of Mr. Trump's activities and
24    these wide-ranging subpoenas to every federal government
25    agency that's in the security and intelligence business.  This
```

1   is about three lines with respect to our client.

2            MS. BOLGER:  And that is all we've sought to --

3            MR. COBB:  The wrong mountain is the bifurcation --

4            THE COURT:  So you've raised two issues about this

5   privilege.  One is how closely linked does the report have to

6   be to an actual Government investigation, and you've raised an

7   issue of how directly does the report -- so if three lines of

8   the report are not related to a Government investigation, does

9   that make it not privileged.

10           So these are issues that could be the subject of a

11   motion for judgment on the pleadings, right?

12           MR. COBB:  Yes, Your Honor.

13           THE COURT:  So just do it.  File your motion and it

14   can be briefed.  It will help.  Even if you lose, it will be

15   of great use to me because it will help me to educate myself

16   about this privilege that I have almost zero familiarity with.

17           MS. BOLGER:  But, Your Honor, I'm in the process of

18   seeking evidence to support that, and I am --

19           THE COURT:  Well, the only way they can prevail on a

20   motion for judgment on the pleadings is if it's a pure issue

21   of law, and if you're able to convince me it's not a pure

22   issue of law, they'll lose.

23           MS. BOLGER:  Your Honor, I ought to be able to take

24   discovery.

25           THE COURT:  I'm not suggesting you shouldn't.  I just

```
 1    would like to understand the privilege better, and seems to me
 2    this would be one reasonable way of approaching it.
 3            MS. BOLGER:  It's fine to file the motion, Your
 4    Honor, as long as it isn't, you know, the end of discovery.
 5    But, yes, okay, Your Honor.
 6            THE COURT:  I mean, it's always helpful to a court, I
 7    think, to have advocacy from both sides on an issue such as
 8    this so that I have a good starting point and am able to
 9    educate myself as to the issue and make a decision as to the
10    scope, the applicability of the privilege in this case and the
11    scope of the privilege and so forth.  It may be that I will
12    rule for the defendant.  I have no idea.  But I'd like to
13    educate myself better about it, and I think the best way for
14    me to do that is by hearing from lawyers who are skilled in
15    the area.
16            Now, it may be a nuisance and it may be expensive for
17    the parties.  But either you want --
18            MR. GURVITS:  Your Honor, we will be filing such a
19    motion.
20            THE COURT:  Okay.  Fine.  Thank you.
21            So, you know, look, I think, to be realistic, the
22    defense is right that it's going to be very difficult to meet
23    these deadlines, and I'm not one to put things off, as
24    Mr. Black, I think, would tell you.
25            But I think it is going to be tough.  And so I think,
```

```
 1    frankly, what we ought to do is we ought to get together
 2    periodically and see where we are.
 3              So Judge O'Sullivan ordered this exchange of
 4    documents in, what, 20 days?
 5              MR. COBB:  14, I believe.  But there was also a
 6    briefing scheduling on a couple issues of law, which was --
 7              MS. BOLGER:  30 days.
 8              MR. COBB:  30, 10.
 9              MS. BOLGER:  It was two, two, one.  So five weeks.
10              MR. COBB:  Correct.  Five weeks.
11              THE COURT:  And did he set another hearing or not?
12              MS. BOLGER:  He did not.
13              MR. COBB:  Not yet.
14              THE COURT:  Well, right now, the way things stand,
15    the discovery cutoff is --
16              MR. COBB:  November 22nd.
17              THE COURT:  I mean, really, it's not realistic.  I
18    think what we should do is this.  I think we should get back
19    together again in early November, let's say, how about
20    November 10th --
21              THE COURTROOM DEPUTY:  That's a holiday.
22              The 9th, Thursday.
23              THE COURT:  How about the 9th.  Let's get together on
24    November 9th and let's see where we are, and in all likelihood
25    we'll work out new dates at that point in time.  Okay?
```

1          MR. BLACK:  Very good, Your Honor.  Thank you.

2          MR. GURVITS:  Yes, Your Honor.

3          THE COURT:  I don't want to put it off, because,

4   really, it's not my style.  But, you know, I think we have to

5   be realistic also.  Okay?

6          MS. BOLGER:  Does it make sense to set a briefing

7   schedule on the motion?

8          Forget it.  We'll work it out.

9          THE COURT:  Let's get the motion first and then we'll

10  figure it out.  Okay?

11         MR. GURVITS:  Your Honor, two things.  One is, can we

12  get a signature on the letters rogatory?

13         THE COURT:  Yes.

14         MR. GURVITS:  May I approach, Your Honor?

15         THE COURT:  Yes.

16         MR. GURVITS:  Thank you.

17         THE COURT:  Have you seen this?  You've seen this,

18  right?

19         MS. BOLGER:  I saw the original, Your Honor.  And

20  Mr. Cobb told me it's the same, and I'm going to accept his

21  representation, Your Honor.

22         THE COURT:  Okay.  That's fine.

23         MR. GURVITS:  It is.

24         THE COURT:  And I'm dating it as of today.

25         MR. GURVITS:  Thank you, Your Honor.

1        THE COURT:  Okay.  Anything else anybody wants to

2  talk about?

3        MR. GURVITS:  Only that we have a mediation

4  scheduled.  I haven't raised it.  But should we be thinking

5  about are we keeping it, are we going to ask the Court to --

6        MR. BLACK:  Let's talk about it.  We can resolve

7  that.

8        MR. GURVITS:  To give Your Honor a heads up, we were

9  thinking that mediation should happen towards the end of

10  discovery.  So it's set up for that.  But given the discovery

11  push, it might make sense.  We'll be speaking about it amongst

12  ourselves.

13        MR. BLACK:  Your Honor, we can resolve discovery

14  issues, scheduling and all of that.

15        THE COURT:  Okay.  Fine.  All right.  Well, thank you

16  very much.

17        MR. GURVITS:  Thank you, Your Honor.

18        MS. BOLGER:  Thank you, Your Honor.

19        MR. BLACK:  Thank you.

20        (Recessed at 4:36 p.m.)

21    *    *    *    *    *    *    *    *    *    *

22        C E R T I F I C A T E

23    I certify that the foregoing is a correct transcript

24  from the record of proceedings in the above-entitled matter.

**William G. Romanishin**
Digitally signed by William G. Romanishin
DN: cn=William G. Romanishin, o=US District Court, ou=US Clerk's Office,
email=Bill_Romanishin@flsd.uscourts.gov, c=US
Date: 2017.10.06 10:09:47 -04'00'

25

**A**

ability 21:4
able 11:23,25 14:14,16
22:21,23 23:8
above-entitled 26:24
abroad 15:18
absolute 7:19
accept 3:11 25:20
accounts 12:15
accusing 15:21
action 6:20 9:1
activities 21:23
activity 6:13
actual 22:6
address 8:7
addresses 4:23 6:1,3,5,8
admissible 14:12
admit 19:17
advocacy 23:7
affidavit 14:15 17:15
affiliated 6:5
affirmative 21:14,15
afternoon 2:10,15,23
agencies 10:4 11:15
agency 21:25
agent 14:15
ago 8:3
agree 9:9
agreement 7:12
al 1:3,6
ALEKSEJ 1:3
allegations 16:5
allies 13:10
allow 3:21
Alpha 21:11
Amendment 12:19 14:24
America 13:9
American 13:22 14:23
Americas 2:6
Amsterdam 17:1
analysis 9:7
analyzing 13:3
answering 18:17
answers 10:14
anticipation 13:1
anybody 26:1
anymore 10:13
apologize 5:15
apparently 3:8
appeal 11:8
APPEARANCES 1:14
2:1
applicability 23:10
applies 7:9,17 9:10
apply 7:18,18 9:5
appreciate 15:1
approach 25:14
approaching 23:2
area 7:10 19:24 23:15
argue 7:18 19:25
argued 5:5
argument 14:21 17:13
article 19:11,12,14 20:4
20:5
asked 3:7 5:20,25 6:7,12
7:2,20
asking 4:4,8 15:2
asserted 7:9
asserting 8:20 13:14
assessing 9:5
assume 8:16
attached 19:12
attorneys 3:20
audiotape 20:19,20
Avenue 1:24 2:6

avoid 7:10
awful 18:9

**B**

back 9:24 19:11 24:18
Bank 21:10,11
based 10:25 20:5
basis 14:18 15:25 16:15
16:16,20
Beacon 1:16
belief 13:23
believe 7:17 8:5 9:9
11:14 13:25 14:22
24:5
believes 7:20
best 3:4 14:21,25 19:3
23:13
better 23:1,13
beyond 16:9
bifurcate 15:3
bifurcation 17:10 22:3
Biscayne 2:3
bit 5:4
Black 2:2,2,23,23 4:19
5:5,17 15:5 16:13
23:24 25:1 26:6,13,19
blank 3:10
blunderbuss 18:20
bog 13:2
Bolger 2:6,24 5:5,7,9,10
5:17 8:18,23 9:19 10:5
10:20 11:3,8,11,14,19
11:22 12:18,20,22,25
13:7,19 15:4 17:9,22
18:3,24 19:7 20:2,13
20:17 21:13,19 22:2
22:17,23 23:3 24:7,9
24:12 25:6,19 26:18
Boston 1:15,21
bots 6:4
bottom 11:25
Boulevard 2:3
Brady 1:18 2:17 15:21
21:18
breadth 9:25
Brennan 10:7 18:6
brief 19:25
briefed 22:14
briefing 21:17 24:6 25:6
bring 14:17
British 3:19,21
broad 6:18 7:10
broadcast 20:20
broadly 5:12 21:4
brought 3:10 5:2
bunch 9:20 10:3
business 17:1 21:25
Buzzfeed 1:6 2:12 7:8,18
7:20 8:2 9:22 10:25
11:11,12 13:14 14:1
15:20,23,23 19:8,11

**C**

C 26:22,22
call 2:9 5:1
called 6:6 14:6,7 20:18
21:10
carabiners 19:1 21:20
carried 5:18 6:8
case 1:2 2:11 8:16,19,24
13:2 14:5,9,13,15 15:3
15:14 16:2,3 17:8,17
20:9,17,18,22 21:8,10
23:10

cases 12:24 21:5,5,6
categories 5:13
category 5:17 6:18,25
causes 6:20
Centre 1:16
certain 5:25 15:14 19:17
certainly 4:3,16 19:24
certify 26:23
change 4:4
characterize 5:13
choice 9:11 9:2
CIA 10:6,13
CIAMPA 1:20
Circuit 14:5,5
citizens 13:24
City 20:23,25
civil 6:20
claim 20:2,5,6
Clapper 18:5
classification 18:17
classified 17:24 18:2
clear 5:21 9:4
clearances 17:21 18:22
cleared 17:21
client 12:15 16:4,9 22:1
client's 16:4
clients 16:5
climb 18:25 21:20
climbing 21:21
closely 22:5
Cobb 1:18 2:17 21:18,18
22:3,12 24:5,8,10,13
24:16 25:20
Columbia 10:11 11:21
12:10
comes 6:3 9:10
Comey 10:6 18:7
coming 3:2
compel 5:10,11,11 7:6
10:10,12
compelled 7:2
competing 7:5
complaint 14:10
completely 4:13
compromised 6:2,3
concern 14:3
concluded 14:18
conduct 8:6 16:14
conference 1:10 5:1
confine 17:18
confined 18:10
confirmation 18:13,19
confront 17:20
confronting 17:20
confusing 17:23
Congress 13:10 18:7
connections 4:24
considered 18:21,24
19:2
continued 1:22 2:1
convince 22:21
copies 19:18
copy 3:10,12 15:22
correct 12:23 24:10
26:23
correctly 2:12
cough 5:14
counsel 3:8 4:2 7:12
counterpart 3:18
couple 24:6
course 6:14 8:20 9:1
13:19 16:15,16
court 1:1,23 2:9,10,11
2:18,21 3:1,7,9,13,15
3:19,21,24 4:4,8,17

5:1,7,16 7:5,22 8:9,15
8:22 9:15 10:3,18 11:1
11:2,6,10,12,17,20
12:4,12,18,21,23 13:1
13:12 14:11,17,18
15:1,8 16:17,22 17:8
17:19,25 18:21 19:6
20:10,14,20 21:1,13
21:16 22:4,13,19,25
23:6,6,20 24:11,14,17
24:23 25:3,9,13,15,17
25:22,24 26:1,5,15
COURTROOM 24:21
created 20:23,24 21:11
criminal 6:20
CRR 1:23
cutoff 24:15
Cyprus 16:25

**D**

damages 4:14 6:25
dates 24:25
dating 25:24
Davis 2:5,24
day 14:1
days 8:3 10:23 24:4,7
DC 21:10
deadlines 23:23
dealing 17:5
decided 8:23
decision 21:17 23:9
declined 6:9
defamation 12:24
defendant 23:12
defendants 1:7 2:2,22
9:18 14:9,14 21:12
defense 4:9,17 21:14,16
23:22
defenses 17:22
delay 20:1
delaying 4:4
department 20:19
dependent 4:15
deposition 3:22 4:6
depositions 8:1,4,6
DEPUTY 24:21
described 9:19
designate 10:16
designated 10:8
detail 5:4
determine 16:8
devoted 13:3
different 9:13 10:3
difficult 17:3,6 23:22
directed 11:13
direction 8:24
directly 22:7
Director 10:6,6 18:5,6
disclosure 9:23
discovery 7:22 8:17 13:5
14:13 16:14,21,23
21:19 22:24 23:4
24:15 26:10,10,13
discussions 10:7
dismiss 14:10
dispute 16:13
disputes 7:22 13:16
distracted 5:2
District 1:1,1,12 10:10
11:21 12:10 14:6 21:7
21:8
DNC 6:1,2
document 9:6 15:15,15
15:17 17:24 19:18
20:8 21:1

documents 5:12 6:18
9:12 13:2 24:4
doing 13:25 17:1 19:3
DOJ 10:8,16
dossier 7:16 11:1 12:15
12:16,17 13:11 17:24
17:25 18:2,8 19:12,15
19:24 20:3,6,6 21:11
21:22
draft 20:24
dueling 5:10
dunk 9:11

**E**

E 2:2 26:22,22
earlier 19:25 21:7
early 24:19
educate 8:13 22:15 23:9
23:13
effort 9:25
efforts 13:2
either 13:17 23:17
electronic 3:12
encumbered 4:16
endeavoring 9:22
engage 11:23
engaged 10:7
enormous 14:22
enter 16:17
entire 3:23 16:1 19:12
entitled 4:24 10:22
ESPN 20:18,20
ESQ 1:15,18,20 2:2,3,6
essentially 10:14
et 1:3,6
Evan 1:20 2:16 12:5
everybody 13:11
evidence 8:25 14:12,20
14:25 17:11,12,22:18
evidentiary 8:20,21 9:11
exchange 24:3
Excuse 12:5 19:4
existence 19:23
expect 17:20
expensive 25:10
experience 10:21 12:24
17:5
expert 12:19
expertise 6:22
extends 13:21
extensively 19:14
extent 8:7 16:7
extremely 16:19 17:3

**F**

F 26:22
fact 8:19 14:12 18:21
19:15 21:9
facts 13:15 16:14 21:9
factual 13:16 16:20
fair 13:20,21 14:2,10,18
14:21 17:12 20:7,20
21:2,3
fairly 7:15 10:19
familiarity 22:16
favor 16:9
FBI 10:6,15 13:11 14:15
19:18
FCRR 1:23
federal 8:25 21:24
feel 16:2 17:10
figure 3:3 21:19
file 7:21 14:15 22:13
23:3

**filed** 10:9,16
**filing** 23:18
**find** 14:14
**fine** 2:21 3:1 20:18,18,18
23:3,20 25:22 26:15
**firm** 2:24
**first** 5:17 8:2 9:21 12:18
14:24 25:9
**five** 10:7 24:9,10
**flag** 12:7
**floor** 1:18 2:7 5:6
**Florida** 1:1,6,19,24 2:4
9:2,12 21:8
**focused** 7:15 8:6 15:19
16:4,6
**focuses** 16:18
**FOIA** 4:11 11:3,3,6,6,8
11:13,18 12:2
**foregoing** 26:23
**Forget** 25:8
**former** 18:5,5
**Fort** 1:19
**forth** 9:24 19:16 23:11
**forward** 3:22 13:18
**foundation** 14:8,9 16:11
**frankly** 3:20 8:1 24:1
**Fray-Witzer** 1:20,20
2:17 12:5,6 19:4,7
20:12 21:16
**front** 5:3
**fundamental** 13:23
**Fusion** 12:9,9,12,14

**G**

**G** 1:23
**gathering** 15:10
**getting** 11:24
**give** 5:6 6:9 17:14,15
18:9 26:8
**given** 5:22 14:11 26:10
**glad** 5:2
**Global** 14:7,9 21:6
**Globe** 14:7
**go** 3:22 6:14 9:23 12:2
16:21
**going** 2:18 3:3,5 4:8,10
4:18 8:4 9:17 11:4,23
16:8,18,24 17:7 23:22
23:25 25:20 26:5
**good** 2:10,15,23 23:8
25:1
**government** 9:23,24
10:10,21 11:5,23 12:1
13:3,22,24 15:14,18
15:21,23 17:5,14,15
17:23 18:10,15 19:10
19:13,17,22 20:16
21:24 22:6,8
**GPS** 12:9,9,13,14
**great** 22:15
**GROUP** 1:15
**Gubarev** 1:3 2:11 4:22
16:25 20:4
**Gubarev's** 6:21
**guess** 11:21 13:1
**Gurvits** 1:15 2:15,16,20
3:6,14,17 4:1,12 7:7
7:23 8:12 12:14 15:12
15:13 20:5 23:18 25:2
25:11,14,16,23,25
26:3,8,17
**guys** 15:10

**H**

**hack** 6:1,2
**hacking** 6:4
**handle** 10:8
**happen** 16:10 26:9
**happened** 5:3
**happening** 13:9
**happens** 12:3
**happy** 3:13 17:17
**hard** 18:18
**Harry** 18:14
**heads** 26:8
**hear** 5:7
**heard** 8:18
**hearing** 7:13,14 23:14
24:11
**help** 13:17 22:14,15
**helpful** 11:24 23:6
**holiday** 24:21
**honestly** 9:9 13:25
**Honor** 2:15,23 3:6,6,11
3:14 4:19 5:5,11,14,21
7:1,7 8:18 9:8,13,21
10:20,24,24 11:8,15
11:19,22 12:2,5,11,14
12:20,25 13:7,19,25
14:4,7,22 15:4,6,13
16:13 17:4,9,14,22
18:3,14,18,24 19:1,2,4
20:2,8,13,17 21:5,18
22:12,17,23 23:4,5,18
25:1,2,11,14,19,21,25
26:4,13,17,18
**Honor's** 4:20
**HONORABLE** 1:11
**hope** 9:11 12:22 12:22
**hopeful** 6:16 7:3 11:25
**hoping** 3:10

**I**

**idea** 23:12
**identified** 6:6
**Illinois** 14:6 21:7
**impact** 4:10,20
**impasse** 10:9
**important** 10:1
**including** 7:11
**indirectly** 18:17
**individual** 10:14
**individuals** 11:16 21:12
**information** 5:18,23 6:7
6:12,17,19,22,25 10:1
15:11 17:2 18:2,19,23
19:3 20:3 21:4
**informed** 3:8
**initiated** 9:18 11:10
**ink** 3:10,13,18
**instance** 7:11
**instruction** 9:4
**intelligence** 21:25
**interested** 4:3
**interject** 19:5
**international** 16:25
**Internet** 4:23,24
**intertwined** 13:15
**investigate** 17:2
**investigation** 13:10
14:12,16 15:16 17:17
18:7 19:13,22 20:7,9
20:10,15,21,23,25
21:2,3 22:6,8
**investigations** 6:20
19:10
**invoke** 19:8
**invoked** 13:20 15:16
17:23

**involves** 16:24
**IP** 4:23 6:1,3,5,8
**issue** 3:7 7:15,21 8:6,7,9
8:11,13,16 15:10,13
15:17,19 21:14,19
22:7,20,22 23:7,9
**issues** 4:19 13:4,4,6,8,15
13:15 15:3 19:25 22:4
22:10 24:6 26:14

**J**

**JAMES** 1:18
**Jared** 2:3,25
**job** 15:24
**joint** 9:22
**Judge** 1:12 5:3 6:10,15
6:23 7:13,20 8:10,12
8:15 24:3
**judgment** 14:14,17
21:15 22:11,20
**June** 9:22

**K**

**KATHERINE** 2:6
**Kathryn** 2:24
**keeping** 26:5
**kicking** 8:10
**kind** 4:6:12 8:24 11:4
17:12 18:1
**kinds** 6:3,4
**knew** 12:13
**know** 2:14 6:14,21 9:21
10:22,23,24 11:2
13:24 16:17 17:4,4
18:3 19:2,15 23:4,21
25:4
**KORNSPAN** 2:2

**L**

**large** 4:24 21:20
**larger** 16:2
**Lauderdale** 1:19
**law** 1:15 7:8 8:9,11,19
8:23,25 9:2,5,8,10
15:14 22:21,22 24:6
**lawsuit** 4:12,14 11:3,7,9
**lawsuits** 11:20
**lawyers** 23:14
**legal** 13:15 16:19
**let's** 3:3 9:16 24:19,23,24
25:9 26:6
**letter** 15:21 18:14
**letters** 3:7,17 25:12
**level** 19:3
**libel** 20:2,6
**likelihood** 24:24
**limit** 17:12
**limited** 18:8
**lines** 22:1,7
**linked** 22:5
**Listen** 21:13
**litigation** 4:9,18 9:17,17
9:20 10:25 13:13,17
14:1
**little** 5:2,4,22 8:14
**LLC** 2:5
**LLP** 1:20
**long** 3:24 9:24 23:4
**look** 4:25 9:5 23:21
**looking** 18:16 19:8 21:20
**loosely** 9:19
**Lopez** 2:3,25
**lose** 22:14,22
**lot** 12:24 13:3 16:24 18:9

19:2

**M**

**M** 2:3,6
**magistrate** 4:22
**making** 14:3 16:1 20:4
**malware** 6:4
**Massachusetts** 1:16,21
**matter** 26:24
**mean** 23:6 24:17
**meaningfully** 11:23
**mechanism** 16:7
**mechanisms** 6:4
**mediation** 26:3,9
**meet** 23:22
**memorandums** 7:21
**memos** 19:19
**mention** 19:16,18
**Miami** 1:6,24,24 2:4
**middle** 8:5 21:8
**minimal** 7:1
**missing** 20:14
**monitor** 6:13
**months** 4:2 10:8
**motion** 5:11,24 7:6
10:10,12 12:10 14:4
14:19 22:11,13,20
23:3,19 25:7,9
**motions** 5:10 11:5
**mountain** 18:25 21:20
21:21 22:3
**move** 10:19,22 13:17
14:17 21:15
**moved** 5:11 12:9 14:10
21:12

**N**

**narrow** 10:5 13:5,17
**narrowly** 18:11
**need** 8:15 13:4,24 16:14
16:21 17:11 18:22
**negotiate** 9:25
**network** 5:21 6:13
**networks** 5:18,19
**never** 8:12
**new** 2:7,7,24 7:8,17 9:10
11:1 18:15 20:17,23
20:24 21:5 24:25
**Newton** 1:16
**North** 1:24
**Northern** 14:6 21:7
**notice** 3:19
**November** 24:16,19,20
24:24
**nuisance** 23:16
**number** 4:19,23

**O**

**O'Sullivan** 5:3 6:10,15
6:23 7:14,20 8:10,12
8:16 24:3
**oath** 18:13
**obviously** 13:23
**October** 8:5
**ODNI** 10:7,15
**OFA** 21:10
**official** 1:23 13:22 20:21
**okay** 2:21 3:1 4:8,17 5:7
5:9 7:5 8:15 9:15
11:17 12:21 15:1
18:21 23:5,20 24:25
25:5,10,22 26:1,15
**Once** 3:17
**opaque** 5:22

**operated** 5:19
**oppose** 3:20
**opposed** 12:10
**orchestrating** 15:22
**order** 2:9 4:5,11 7:10,22
7:23 16:18,22
**ordered** 4:22 6:10,16,23
12:16 24:3
**original** 3:9 19:11,12,14
19:20,21,23 25:19
**originally** 6:9 17:8
**Ortega** 21:8
**ought** 6:21 22:23 24:1,1
**outcome** 9:14
**outstanding** 7:15

**P**

**p.m** 1:7 26:20
**paid** 12:15
**parallel** 9:16
**Park** 1:21
**part** 5:23 12:2 15:15,24
16:19
**particular** 7:24 8:6,24
18:11,25
**parties** 23:17
**partner** 2:25
**party** 15:17
**PC** 1:15
**pending** 6:19 9:1 10:25
12:11 14:16 17:16
**people** 16:25 19:17
**periodically** 24:2
**pervades** 8:16
**phone** 2:16
**places** 17:1
**plaintiff** 2:13,19 5:12,19
5:21,23 6:6,9,15,22
7:1 12:8 16:15 20:4
4:10
**plaintiffs** 1:4,15 2:16
4:10
**play** 12:22
**Plaza** 1:21
**pleadings** 21:15 22:11
22:20
**point** 7:25 14:20 23:8
24:25
**points** 8:25 9:2
**police** 20:19
**portions** 18:8 19:15
**position** 7:8,19 15:20
**possibility** 3:21
**possible** 16:10 18:25
**possibly** 11:20
**practically** 8:2
**preliminary** 13:4,13
**present** 3:9,18
**presents** 3:18
**President** 13:10 16:6
**press** 20:22,24,25
**prevail** 8:7 14:1 22:19
**print** 15:23
**private** 21:12
**privilege** 7:9,19 8:20,21
8:21 13:20,21,23 14:2
14:11 15:10,13,16
19:8,9,25 21:3 22:5,16
23:1,10,11
**privileged** 14:24 15:6
22:9
**privileges** 13:14
**problem** 16:23 17:20
**proceed** 4:3,7
**proceeded** 14:13
**proceeding** 12:8 13:22

proceedings 26:24
process 3:24 4:16 11:18
  16:21,24 20:1 22:17
produce 5:12 6:15,23
produced 7:2 15:15
profits 7:12
pronounced 2:12
proper 16:8
protects 19:9
prove 20:14
provide 10:14
provided 7:1
public 5:25 13:24 14:23
  18:12,13,18 20:7
publicly 18:6
publish 21:4
published 18:5,15 19:11
  20:3,25
publishing 21:1
pure 22:20,21
push 26:11
put 23:23 25:3

**Q**

quash 12:9,11
question 5:20 8:19 9:11
  9:13 15:6,7 18:16,17
questions 4:20 7:10,11
  10:15
quick 19:5
quickly 10:19,22
quite 11:9 13:9

**R**

R 26:22
raised 22:4,6 26:4
reach 9:13
read 18:4
reading 15:24
ready 4:6
realistic 23:21 24:17
  25:5
really 8:13 13:9,12 16:2
  24:17 25:4
reason 5:20,24 14:19
  17:9
reasonable 23:2
recall 3:7
received 8:2,3
Recessed 26:20
record 26:24
referred 5:18
refuse 3:21
refused 6:15,22
regarding 7:11,21
Reid 18:14
relate 8:17
related 4:9,18 9:16,17,20
  22:8
Relatedly 6:12
relates 18:2
relationship 6:2 9:6
release 20:22,24 21:1
Relief 14:7,9 21:6
reluctant 17:11,18
remind 12:12
report 9:22 13:20,21,22
  14:2,10,18,21,22
  17:13 19:22,23 20:7,8
  20:10,15,21 21:2,3
  22:5,7,8
REPORTED 1:23
reporter 1:23 20:25
reporter's 7:9 8:21

reporting 19:9
reports 6:1,7 18:5
representation 25:21
representative 10:8,16
reputational 6:19
request 8:8 11:4,6,13
  18:10
requests 4:11 10:6
resisting 17:10
resolve 7:22,23 8:11
  21:13 26:6,13
resolved 7:3,12,13 13:5
  13:16
respect 19:9 21:23 22:1
respond 10:23
response 8:3
responses 7:10
Restatement 9:3,4
result 11:20 20:23
review 21:16
right 2:17 3:15 5:16 8:22
  9:7 11:2 12:4,19,23
  15:8 22:11 23:22
  24:14 25:18 26:15
RMR 1:23
rogatory 3:7,17 25:12
ROMANISHIN 1:23
root 6:6
Roy 2:2,23
rule 8:25 23:12
rules 9:2
Russia 17:1
Russian 21:11

**S**

SA 6:6
saw 6:14 25:19
says 16:15 17:15
schedule 3:23 25:7
scheduled 4:3 7:25 26:4
scheduling 4:5,11,21 8:4
  24:6 26:14
scope 13:13 23:10,11
SCOTT 1:17
seat 2:21
security 17:21 18:22
  21:25
see 12:3 15:19 16:13
  17:25 18:1,22 24:2,24
seek 10:12
seeking 4:13 15:25 22:18
seeks 10:13
seen 8:13 19:17 25:17,17
send 15:22
sense 15:2 25:6 26:11
sent 18:20
sentences 16:3 20:6
separate 4:13 9:7
separately 8:23
September 1:7
serious 16:16
serve 10:3
served 10:5 12:8
set 17:8 24:11 25:6 26:10
Seventh 14:5,5
show 15:11 17:17
shown 15:18
sides 23:7
sign 3:11,13
signature 25:12
signed 3:9,18
significance 14:23
significant 9:6 11:4 13:8
  13:9
silly 18:1

similar 21:9
simple 8:8
simultaneously 15:22
sincerely 14:4
six 4:1
skilled 23:14
slam 9:11
software 6:13
somebody 12:12 15:18
somebody's 2:14
soon 16:10
sorry 5:14 11:6 14:7
sort 5:12 10:1 15:3,8,9
  18:6
sought 4:14 9:6 22:2
sounds 10:18
source 7:16
South 2:3
Southeast 1:18
SOUTHERN 1:1
speak 2:18
speakerphone 2:19
speaking 26:11
specifically 18:12
splattering 11:14
spoken 15:4
spy 16:1
SREBNICK 2:2
stage 14:14
stand 3:16 24:14
started 14:6
starting 23:8
starts 16:11
state 9:1,5,8 11:1
statements 18:12,13
States 1:1 16:1 17:5
status 1:10 9:22
statute 7:17
Steele 3:5 12:16 20:11
Steele's 3:20 4:5 12:15
story 19:20,21,22,23
Street 1:16,18
strong 8:19
struggling 15:20
STUMPF 2:2
style 25:4
subject 22:10
submit 16:22 21:21
submitted 20:19 21:1
subpoena 9:25 12:8,9
  15:25 18:11
subpoenas 21:24
subsidiary 6:5
substantial 8:3
suggest 19:10
suggesting 22:25
suing 19:21
Suite 1:16,21 2:4
summary 14:14,17
support 22:18
suppose 21:14
sure 18:3 19:6

**T**

T 26:22,22
take 3:25 4:1,5 8:10
  15:20 16:24 17:7
  22:23
taken 7:8
talk 8:15 9:16 19:13 26:2
  26:6
talked 19:7 21:6
talking 13:12
talks 19:14 21:3
targeted 18:11

telephone 2:14
tell 3:5 5:3,9 7:5 17:7,16
  23:24
ten 10:14
terms 14:3 17:21
testified 18:7
testimony 10:12,13
Testmasters 20:9,22
thank 3:1,1,14 7:7 16:12
  23:20 25:1,16,25
  26:15,17,18,19
Thanks 9:15
thing 3:16 19:5
things 4:23 16:9 19:23
  17:6 19:2 23:23 24:14
  25:11
think 3:4,24 4:20 9:10
  9:13,19 10:1 12:18
  16:20 17:7,9 18:24
  21:21 23:7,13,21,24
  23:25,25 24:18,18
  25:4
thinking 26:4,9
third 15:17
thought 10:5
three 5:13 16:3 20:5
  22:1,7
threshold 14:4,19
throws 9:2
thunk 5:6
Thursday 24:22
time 13:3 17:7 24:25
timely 16:12
Times 18:15
today 2:19 21:14 25:24
told 5:20
tough 23:25
transcript 1:10 26:23
transmitted 12:16
TREMAINE 2:5
trial 4:3 16:10,12,18
  20:1
TRIPP 1:17
true 13:20,21 14:2,10,18
  14:21 15:7,11,11
  17:12 20:8,21 21:2,3
Trump 16:6 21:23
Trump's 21:23
try 3:3 9:25 18:13
trying 11:23 15:8 17:2
  18:18 19:1 21:19
turn 4:22 19:11
TV 12:22
two 4:1 6:11,17,24 7:4
  10:2 22:4 24:9,9 25:11
types 6:19

**U**

U.S 1:12
UK 3:8,18 4:2,12
unable 4:5
understand 23:1
understanding 2:13
unfortunate 4:6
UNGARO 1:11
United 1:1 16:1 17:5
unverified 19:16,23
URSULA 1:11
use 6:13 18:18 22:15

**V**

v- 1:5
Val 2:15
VALENTIN 1:15

various 11:15,16
veracity 21:22
versus 2:12 20:18
vouch 10:20

**W**

want 12:7 14:25 17:11
  23:17 25:3
wanted 8:13
wants 3:9 16:10 26:1
Washington 21:10
way 4:15,18 11:17,24
  12:2 15:3,9 18:25
  22:19 23:2,13 24:14
ways 17:10 18:16
we'll 6:16,24 7:4 11:25
  12:3 24:25 25:8,9
  26:11
we're 3:3,10 4:5,13,15
  6:10,16 7:3 19:2,3
  21:21
we've 3:19 13:20 18:4,16
  18:18,24 22:2
web 4:24 5:19
Webzilla 6:22
Wednesday 10:10,17
week 8:1
weeks 4:6 11:17,24 7:4
  24:9,10
went 5:9 11:15
wide 5:21
wide-ranging 21:24
WILLIAM 1:23
withheld 7:16 9:7
work 11:25 24:25 25:8
working 11:17 15:10
world 16:1
world's 5:14
worst 5:14
wrapped 11:5
Wright 2:5,24
write 15:21
writes 15:15
written 8:3,8 15:17
wrong 12:23 21:21 22:3
wrote 18:14 19:20

**X**

**Y**

yesterday 4:22 5:4 7:3
York 2:7,7,25 7:8,17
  9:10 11:1 11:15 20:18
  20:23,25 21:5

**Z**

zero 22:16

**0**

02116 1:21
02459 1:16

**1**

10 24:8
10020 2:7
10th 24:20
110 1:18
1251 2:6
1300 2:4
139 9:4
14 24:5
15th 1:18
17-60426 2:12

17-60426-Civ-UNGA...
    1:2

---

**2**

**20** 1:16,21 24:4
**201** 2:3
**2017** 1:7
**21st** 2:7
**22nd** 24:16
**27th** 10:17
**29** 1:7

---

**3**

**30** 24:7,8
**305** 1:23
**33128** 1:24
**33131** 2:4
**33302-4245** 1:19

---

**4**

**4:00** 1:7
**4:36** 26:20
**400** 1:24

---

**5**

**501** 8:25
**505** 1:21
**523-5558** 1:23

---

**6**

**60** 10:23
**6th** 1:18

---

**7**

---

**8**

**825** 1:16

---

**9**

**9-11** 15:22
**9th** 24:22,23,24