UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| ALEKSEJ GUBAREV,<br>XBT HOLDING S.A., and<br>WEBZILLA, INC.<br>     Plaintiffs,<br><br>v.<br><br>BUZZFEED, INC. and<br>BEN SMITH<br>     Defendants. | Case No.<br><br>0:17-cv-60426-UU |

**PLAINTIFFS' REPLY IN SUPPORT OF PARTIAL MOTION FOR JUDGMENT ON
THE PLEADINGS WITH RESPECT TO DEFENDANTS' AFFIRMATIVE DEFENSES
OF "FAIR AND TRUE REPORTING PRIVILEGE" AND
<u>"NEUTRAL REPORTING PRIVILEGE"</u>**

*"Contrariwise, if it was so, it might be; and if it were so, it would be;
but as it isn't, it ain't.  That's logic."*

--Lewis Carroll, Through the Looking Glass

As this Court previously noted, Defendants in this action are represented by extremely experienced defamation counsel.  It is telling, then, that, in their Opposition to Plaintiff's Motion, such experienced counsel cite primarily to cases that are either easily distinguished or that have been widely criticized.  And, throughout their opposition, Defendants rely on a series of ever more tenuous "but-if-isms" – i.e. – yes, the Dossier was created by a private contractor (Christopher Steele) who had been hired and was being paid by an opposition research firm (Fusion GPS) working for a rival candidate, ***but if*** you consider the fact that Steele wanted to get copies of his research to the FBI ***and if*** you ignore the fact that the FBI stopped interacting with Steele prior to his creation of the relevant memorandum, then it is ***almost as if*** Steele was a government official and, even though Defendants didn't get the Dossier from Steele himself, it's ***almost as if*** Defendants did, so Defendants are entitled to the benefit of a privilege designed to protect reporting about documents received from government officials.  Or: maybe Defendants' article didn't actually contain any reporting about an official investigation, ***but*** it did include a

hyperlink to another article in which an investigation was mentioned (albeit one that doesn't mention Plaintiffs), which is *almost as if* Defendants had reported on an investigation.

When all of the "buts," "ifs," and "almosts" are set aside, though, it becomes clear that Defendants are not entitled to the protections of the privileges that they claim and those privileges should be stricken as a matter of law. In further support of their Motion, Plaintiffs state as follows.

## ARGUMENT

I. **Defendants' Publication Was Not a Report of an Official Proceeding.**

Defendants make the blanket contention that the fair report privilege protects the publication of "documents that were compiled by a private citizen and then provided to the government." Opp., p. 8. In support of this contention, Defendants cite to *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. 1990), and *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209 (N.D.N.Y. 2014). Neither case sweeps as broadly as the Defendants would have this Court believe and each decision rests on radically different facts than those presented here.

In *White*, the Plaintiff was a police officer who was required to pass a drug test in order to be promoted. White's (original) drug test, which he failed, was processed by the Maryland Police and Fire Department Clinic. A second sample was then taken and tested under suspicious circumstances. Two officials from the Police and Fire Department clinic reported the irregularities to the Fraternal Order of Police (FOP) and, as a result, the FOP's attorney reported the allegations to the U.S. Attorney and Mayor Marion Barry.[1] Mayor Barry subsequently appointed the Cox Committee to investigate the matter. Both the Washington Post and NBC News reported on the FOP's allegations and the Cox Committee's investigation.

The Washington Post wrote nine separate articles concerning the FOP's allegations and the Committee's investigation (none of which mentioned White by name). By contrast, NBC News broadcasted a report naming White and detailing the allegations made against him. The

---

[1] When Defendants claim the *White* case stands for the blanket proposition that the privilege encompasses information received by the government from a private individual, they are referring to the letters written by the FOP attorney reporting allegations made by employees of the Maryland Police and Fire Department Clinic. In other words, statements made by *public officials* concerning their *official duties* through their *official legal representative* for the sole purpose of instigating *official government action*.

2

only mention of the investigation made by NBC was the statement that "a three man task force assigned to investigate the matter is expected to issue a report soon." *Id*. at 516.

Both the Washington Post and NBC asserted that they were entitled to the protection of the fair report privilege. The Court found that the Washington Post – but not NBC – was entitled to the protection of the privilege. As the Court there held:

> The premise of the privilege is the interest of the public in obtaining information about what occurs in official proceedings and public meetings. Therefore, the privilege is only available to the media when their news reports are presented in such a manner that the average reader would be likely to understand the communication to be a report on -- or summary of -- an official document or proceeding.
>
> …The initial Post article, for example, began by stating that '[a] special police panel is investigating whether police officials . . . tampered with drug testing procedures' at the Police and Fire Clinic. The first and all subsequent articles summarized the gist of the allegations set out in the FOP letters which the 'special panel' was investigating, and consistently attributed the reported facts to those documents.

*White*, 909 F.2d at 527-28.

In contrast, the Court rejected the privilege for NBC, finding that NBC's "one-sentence reference to a 'three-man task force assigned to investigate the matter' seems at most an afterthought…." *Id.* at 528.

Far from standing for the blanket proposition that the fair report privilege encompasses information received by the government from a private individual, the case instead involves letters written by the FOP attorney reporting allegations made by employees of the Maryland Police and Fire Department Clinic. In other words, statements made by *public officials* concerning their *official duties* through their *official legal representative* for the sole purpose of instigating *official government action* can fall within the purview of the fair report privilege. And, even then, the *White* court found that the protection only extended to the media defendant whose reporting made it clear that it was reporting on an official government investigation. If *White* is relevant to this case at all it is in how it demonstrates that *this* case is not *that* case.

Nor does *Fine* provide support for the broad proposition for which the Defendants offer it. Because Defendants lean so heavily on *Fine*, a close examination of the facts of that case is in order.

*Fine* centered around allegations of sexual assault made by Robert Davis and his stepbrother, Mike Lang, against Syracuse University men's basketball coach, Bernie Davis. *See*,

3

*generally*, *Fine v. ESPN, Inc.*, Docket No. 21 ["*Fine I*"], attached hereto as Exhibit 1, and *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209 (N.D.N.Y. 2014) ["*Fine II*"].  In 2002, Mr. Davis surreptitiously recorded a phone call with Mr. Fine's wife, Laurie Fine, in which she appeared to acknowledge both the abuse by her husband and her knowledge that such abuse was occurring.  *Fine I*, pp. 2-3; *Fine v. ESPN, Inc.*, Docket No. 1 ["*Fine Complaint*"], attached hereto as Exhibit 2, pp. 9-11.  Ms. Fine was ultimately the plaintiff in the defamation litigation.

In 2003, Mr. Davis met with reporters from ESPN, told them of the alleged abuse, and provided them with a tape of the recorded telephone conversation.  ESPN investigated the allegations – including interviewing individuals whom Mr. Davis said would corroborate his story – but ultimately concluded that it could not verify Mr. Davis' account and, as a result, ESPN declined to report on the story.[2]  *Fine I*, p. 2.

Eight years later, in the wake of sexual abuse allegations made against Penn State football coach Jerry Sandusky, Davis's stepbrother, Lang, corroborated his brother's story, leading ESPN to report on the matter in a series of published articles and news reports.  ESPN's first report, published November 17, 2011 (and updated on November 18, 2011), did not mention the existence of the audio tape, but reported extensively on the fact that the police were investigating the allegations made against Fine.  *See*, "Syracuse's Bernie Fine placed on Leave," ESPN.com, dated November 17, 2011 (attached hereto as Exhibit 3).  The Complaint did not bring claims based on this first reporting by ESPN.  *See*, *generally*, *Fine Complaint*.

On November 27, 2011, ESPN published an article titled "Bernie Fine's wife had abuse concerns" (Exhibit 4 hereto) and ran a video segment as well.[3]  Both the article and the video discussed the audio tape in detail and the fact that the audio tape had been provided to the Syracuse Police Department ("SPD") and was part of the SPD's ongoing investigation.  On February 2, 2012, ESPN published an article titled, "Affidavit: Fine's wife slept with players," which reported in detail on a lawsuit brought against Syracuse University and one of its coaches and, in particular, Davis's affidavit in that case.  *See* Exhibit 5 hereto.

Ms. Fine's defamation claims were based entirely on the November 27, 2011 and February 2, 2012 reports.  In *Fine I,* the Court first dismissed those claims relating to the

---

[2] The irony should not be lost that Buzzfeed relies on a case in which the media defendants refused to publish a story with "explosive allegations" for eight years until it was in a position to corroborate those allegations.

[3] *See* https://www.youtube.com/watch?v=DLPAK6RIVyI, last accessed on Feb. 19, 2018

affidavit story inasmuch as it was indisputable that the reporting in that story was entirely concerning an active court case and an affidavit filed in connection with that case. In *Fine II* (cited by Defendants), the Court addressed the more difficult question of whether the fair report privilege protected ESPN's publication and broadcast of excerpts of the surreptitious phone recording in the November 27 article and broadcast.

Ultimately, the Court concluded that ***if (and only to the extent that)*** ESPN was reporting on the police investigation, such reporting would be covered by the privilege. Far from supporting Defendants' blanket assertion that *Fine* stands for the proposition that the fair report privilege immunizes all reporting on allegations made by private individuals, the *Fine* court made clear that the analysis was to be made claim-by-claim and the privilege applied only to the extent that the reporting was clearly concerning the official police investigation:

> Section 74 applies only where the challenged report is "of" a proceeding. …An overlap between the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on the proceeding.
>
> … However, a report's mere mention of an official proceeding does not automatically extend the privilege to an entire publication; the privilege may apply to some portions of a report and not others.

*Fine II*, 11 F.Supp.3d at 216-17.

Indeed, the *Fine* court then went statement-by-statement to determine which of the statements at issue were covered by the privilege. *Fine II*, 11 F.Supp.3d at 216-220.

In the present case, a review of Buzzfeed's article drives home that Buzzfeed was not reporting on an official investigation, much less any investigation that involved Plaintiffs. Certainly, the article states that elected officials had *seen* the Dossier, that a copy of the Dossier had been provided to the FBI, and that a two-page summary of (some of the) allegations in the Dossier was presented to Presidents Obama and Trump, but the article makes no mention of any official investigation, much less provide any actual reporting on an investigation. To the contrary, if one can even interpret Buzzfeed's article as mentioning an official proceeding, the article would seem to be precisely what the *Fine* court envisioned when it said that the "mere mention of an official proceeding does not automatically extend the privilege to an entire publication." *Fine II*, 11 F.Supp.3d at 217.

5

The Defendants hardly claim to the contrary. Instead, Defendants again engage in but-if-ism: Buzzfeed's article might not actually report on any investigation, **but if** a reader clicked on the hyperlinked words "CNN reported" in the sentence, "CNN reported Tuesday that a two-page synopsis of the report was given to President Obama and Trump," the reader would be taken to a CNN article in which CNN said that the FBI was attempting to investigate "the credibility and accuracy" of allegations in the Dossier that "Russian operatives claim to have compromising personal and financial information about Mr. Trump." See <u>Exhibit 6</u> hereto. Defendants insist that hyperlinking the words "CNN reported" is the same as actually reporting on an official investigation because it would bring the reader to an article that itself only mentions in passing the existence of an investigation.[4] In this instance, however, the purpose of the hyperlink was simply to show why Buzzfeed believed that Presidents Obama and Trump had been briefed on a summary of the Dossier (because CNN reported on it). The hyperlink wasn't intended to – and didn't – suggest to the reader that Buzzfeed was reporting on some official investigation, much less an investigation with any connection to the allegations about Plaintiffs.

In its Opposition, Buzzfeed attempts to brush aside this crucial failing, claiming that Plaintiffs are arguing that "Buzzfeed is liable because it should have written the Article a little differently." But it is not just Plaintiffs that make this claim – it is the applicable caselaw. The privilege extends to – and only to – reporting **on** official government activity. Claiming that they **could have** reported on the Dossier in that manner is not the same as having actually done so.

Defendants next attempt to equate the publication of the Dossier to a report of a government official, citing to *Steven H. v. Duval County School Board*, 1999 WL 1427666 (M.D. Fla. 1999), *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501 (Fla. Dist. Ct. App. 1993), and *Ortega v. Post-Newsweek Stations, Fla., Inc.*, 510 So. 2d 972 (Fla. Dist. Ct. App. 1987). Opp., pp. 9-10. The attempted analogy would require this Court to follow Defendants not just down the rabbit's hole, but all the way through the looking glass.

In *Steven H.*, the court applied the privilege to statements made by a public school teacher that concerned that teacher's official duties, explicitly finding that:

> [T]he statement was based on information supplied by Defendant Teifer. Morris Communications asserts that since the information was gathered from Defendant Teifer, who is a publicly-paid teacher and football coach at Wolfson High School, then the information was privileged because it was gathered from a public official.

---

[4] This is more than Buzzfeed's article ever did.

> Under Florida law, the fair reporting privilege gives the media a qualified privilege to republish statements of reports of government officials.… The Court finds that the statements at issue here were a fair and accurate report based on statements made by a public official, Defendant Teifer."

*Steven H*, *supra* at *1.

In *Woodward,* the Court found privileged an article where a newspaper reported on information its reporter received from the Office of the Attorney General and contained in official reports from the Florida Department of Law Enforcement because, under Florida law, "the news media has been given a qualified privilege to accurately report on the information they receive from government officials."[5]  616 So.2d at 502.

In attempting to squeeze their square peg into a round hole, Defendants argue that, because Steele provided the information he gathered as part of a paid, private, opposition research assignment to the FBI, he was a government informant and, as such, it is ***as if*** he was a government official and, as such, the publication of the Dossier was ***almost like*** publishing a report from a government official.  It is many bridges too far.  Preliminarily, Defendants' argument appears to be factually incorrect inasmuch as the FBI cut off contact with Steele in October of 2016, before he prepared the memorandum at issue.  See Exhibit 7 hereto, p. 4.  Even were this not the case, however, the mere fact that a private individual provides information to a government agency does not make that individual a "government official."  Being a neighborhood watch captain does not transform one into a "government official" no matter how many times one reports his neighbor for playing his stereo too loudly or mixing paper and plastic in the recycling, even if the local police credit the veracity of such reports.

**II.     The Neutral Reporting Privilege Fails as a Matter of Law.**

Finally, Defendants' attempt to invoke the neutral reporting privilege must fail.  As Plaintiffs argue in their opening brief, the privilege has been explicitly rejected in New York and its status under Florida law is, at best, questionable.[6]  Nevertheless, to the extent that either jurisdiction recognizes the privilege at all (and to the extent that the privilege would even apply to Plaintiffs, who are private figures), Defendants have not and cannot allege a crucial element of

---

[5] In addition to Steele not being a government official, Buzzfeed did not receive the Dossier from Steele, nor did it receive the Dossier from any "government official."

[6] And, even if the privilege exists under New York or Florida law, it is clear that: (a) it does not apply to private figures and (b) it can be overcome by a showing of actual malice.

the privilege – namely that the allegations concerning Plaintiffs were made by "a responsible, prominent organization." *Edwards v. National Audubon Soc.*, 556 F.2d 113, 120 (2d Cir. 1977).

Here, too, Defendants resort to their final bit of "but-if-ism." It is undisputed that the allegations against the Defendants contained in the Dossier did not themselves originate from Mr. Steele, but rather from a source who is (in the Dossier) unnamed and anonymous. Buzzfeed did not know the identity of this source at the time of its publication, nor does it claim to the contrary. Instead it claims (without any support whatsoever), that the privilege should really be read to encompass such anonymous rumors if they were passed along by someone who was supposedly responsible. First, it bears noting that the privilege requires the reporting itself to *identify* the allegedly responsible source in the reporting, which Buzzfeed did not do – even if one were to consider Mr. Steele to be the "source" of the information, which he was not. *Martin v. Wilson Pub. Co.*, 497 A.2d 322, 330 (R.I. 1985) ("We believe that *Cianci* supports a rule that republication of false defamatory statements about an individual may be printed only in the extremely limited situation in which the publication accurately attributes such statements to an identified and responsible source." (citing *Cianci v. New Times Publishing Co.*, 639 F.2d 54 (2d Cir. 1980))). Moreover, Mr. Steele was, indisputably, *not* the source of the defamatory information about Plaintiffs. Nevertheless, Defendants assert that this Court should impute Mr. Steele's alleged credibility to his unnamed source and thereby extend the privilege to cover this situation. Of course, this would destroy the entire rationale behind the privilege (that the media defendant is publishing information that it has good reason to trust because it comes from a known reliable source, which the reporting fully discloses to the reader), but, no mind, say Defendants, this is almost as good.

## **CONCLUSION**

For the reasons stated hereinabove and in Plaintiffs' Motion, Defendants' affirmative defenses of Fair Report Privilege and Neutral Report Privilege fail as a matter of law and, as such, Plaintiffs are entitled to a Judgment on the Pleadings striking each of those defenses.

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (Mass. Bar No. 564349 – *pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (Mass. Bar No. 643572 – *pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com

*Attorneys for Plaintiffs*

Dated: February 20, 2018

**CERTIFICATE OF SERVICE**

  **I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record this 20th day of February, 2018.

                /s/ Matthew Shayefar
                Matthew Shayefar

**SERVICE LIST**

Katherine M. Bolger
Adam Lazier
Davis Wright Tremaine, LLC
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
adamlazier@dwt.com

Nathan Siegel
Alison Schary
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, Suite 800
Washington, DC 20006
nathansiegel@dwt.com
alisonschary@dwt.com

Roy Eric Black
Jared M. Lopez
Black Srebnick Kornspan & Stumpf
201 S Biscayne Boulevard, Suite 1300
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com