UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-60426-UNGARO/O'SULLIVAN

ALEKSEJ GUBAREV, XBT HOLDING
S.A., and WEBZILLA, INC.,

    Plaintiffs,

v.

BUZZFEED, INC. and BEN SMITH,

    Defendants.
_____/

## SEALED ORDER[1]

THIS MATTER came before the Court on Non-Party David J. Kramer's Sealed Motion for Protective Order (DE# 130, 1/29/18).

## BACKGROUND

On December 13, 2017, Mr. Kramer was deposed in the instant action. Pursuant to the Amended Confidentiality Stipulation and Protective Order (DE# 97, 12/8/17) (hereinafter "Protective Order"), Mr. Kramer's deposition was marked "Attorneys' Eyes Only." Mr. Kramer's deposition was later re-designated "Confidential." See Non-Party David J. Kramer's Sealed Motion for Protective Order (DE# 130 at 2, 1/29/18) (stating that "the parties have agreed with the Court's approval to treat the deposition as Confidential rather than Attorneys' Eyes Only.").

---

[1] The undersigned has permitted the parties to file under seal legal memoranda in connection with the instant motion for protective order. See Order (DE# 128, 1/26/18); Order (DE# 136, 2/20/18). Local Rule 5.4(a) states that "[u]nless otherwise provided by law, Court rule, or Court order, proceedings in the United States District Court are public and Court filings are matters of public record." S.D. Fla. L. R. 5.4(a). For the reasons discussed in this Order, the undersigned finds good cause for this Order and the filings related to this Order to remain under seal at this time.

On January 17, 2018, Mr. Kramer filed Non-Party David J. Kramer's Motion for Protective Order (DE # 111, 1/17/18) which was stricken for failure to comply with the Court's informal discovery procedure. See Order (DE# 112, 1/18/18).

On January 26, 2018, the undersigned held an informal discovery conference on Mr. Kramer's request for a protective order. Following the informal discovery conference, the undersigned issued an Order allowing Mr. Kramer to file a written motion and setting a briefing schedule. See Order (DE# 128, 1/26/18). Due to concerns raised by Mr. Kramer at the informal discovery hearing, the undersigned permitted the parties to submit their filings under seal. Id.

On January 29, 2018, Mr. Kramer filed the instant motion. See Non-Party David J. Kramer's Sealed Motion for Protective Order (DE# 130, 1/29/18) (hereinafter "Motion"). The plaintiffs filed their response in opposition on February 2, 2018. See Plaintiffs' Opposition to David Kramer's Motion for Protective Order (DE# 131, 2/2/18). Mr. Kramer filed his reply on February 6, 2018. See Non-Party David J. Kramer's Reply to the Plaintiffs' Opposition to His Motion for Protective Order (DE# 132, 2/6/18) (hereinafter "Reply").

On February 20, 2018, the undersigned granted the defendants leave to respond to the instant motion and permitted the plaintiffs and Mr. Kramer to file replies to the defendants' response. See Order (DE# 136, 2/20/18). On February 21, 2018, the defendants filed their response. See Defendants' Response to Non-Party David Kramer's Motion for a Protective Order (DE# 139, 2/21/18) (hereinafter "Defendants' Response"). The plaintiffs filed their reply to the defendants' response on February 22, 2018. See Plaintiffs' Reply to Defendants' Response To Non-party David Kramer's

2

Motion for a Protective Order (DE# 142, 2/22/18) (hereinafter "Plaintiff's Reply"). Mr. Kramer did not file a reply.

This matter is ripe for adjudication.

## **ANALYSIS**

### **1.  Good Cause**

Rule 26(c)(1) of the Federal Rules of Civil Procedure provides that: "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending" and "[t]he court may, for good cause, issue an order to protect [that] party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). The burden falls on Mr. Kramer to establish good cause. See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1313 (11th Cir. 2001) (stating that "[t]he prerequisite [for a protective order] is a showing of "good cause" made by the party seeking protection."); Trinos v. Quality Staffing Servs. Corp., 250 F.R.D. 696, 698 (S.D. Fla. 2008) ("the party seeking the protective order must show good cause by demonstrating a particular need for protection.").

Mr. Kramer seeks a protective order maintaining the "Confidential" designation of his deposition testimony. Mr. Kramer argues that the public dissemination of his deposition testimony "would jeopardize his and his family's personal safety, as well as the integrity of ongoing [Congressional] investigations . . . ." Motion at 1. The plaintiffs seek to remove the "Confidential" designation in order to use Mr. Kramer's deposition

3

testimony to compel the deposition of Fusion GPS in a proceeding in Washington, D.C.[2] and the deposition of Christopher Steele in a proceeding in London, England. Response at 12. If successful, the plaintiffs also want to use Mr. Kramer's deposition during the depositions of Fusion GPS and Mr. Steele. Id. The undersigned will address the concerns of Mr. Kramer and the plaintiffs below.

### A.  Safety

With respect to safety concerns, Mr. Kramer argues that if his deposition testimony was publicly disclosed "persons or entities named in the Dossier . . . or those associated with them may seek to exact revenge on Mr. Kramer." Motion at 13. To underscore his safety concerns, Mr. Kramer lists four individuals who "died mysteriously" over a ten-year period, from 2006 through 2016, "including a person suspected of being a source for the Dossier . . . ." Id. at 13-14. Mr. Kramer states that after the Dossier was published by BuzzFeed, Mr. Kramer told "Mr. Bensinger that he was going to 'get people killed' and asked [Mr. Bensinger] to both remove the Dossier from BuzzFeed's website and to not disclose Mr. Kramer's name in connection with the Dossier." Id. at 15. Additionally, after the Dossier was published, "Mr. Steele, the purported author of the Dossier, went into hiding . . . ." Id. Mr. Kramer also notes that he was the target of two hacking attempts in the fall of 2016 and in the summer of 2017. Id. at 14.

---

[2] "On August 31, 2017, Fusion GPS . . . filed a motion in the United States District Court for the District of Columbia seeking to quash a third-party subpoena issued in connection with a defamation action currently pending in the United States District Court for the Southern District of Florida. In re Third Party Subpoena to Fusion GPS, No. 17-CV-60426-UU, 2018 WL 940553, at *1 (D.D.C. Feb. 16, 2018).

4

The plaintiffs maintain that Mr. Kramer's safety concerns are unfounded. The plaintiffs state that:

> it has already been widely reported that Mr. Kramer testified to Congress that he knew the identities of Christopher Steele's Russian sources and, in any event, Plaintiffs have stated that they are willing to keep confidential the portions of the transcript referring to Mr. Kramer's knowledge of the identities of these sources as well as those portions of testimony referencing the similarities between Mr. Kramer's deposition testimony and questions answered before Congress.

Response at 2. The plaintiffs also cite to several news articles from December 27-28, 2017 reporting that Mr. Kramer knew the names of the Russian sources for the Dossier. Id. at 5-6.

The plaintiffs further note that Mr. Kramer has not "behaved in a manner consistent with someone who believed that a connection with the Dossier would put him at risk: "Mr. Kramer briefed no fewer than a dozen reporters at eight different news outlets about his having received the Dossier from Mr. Steele and his providing the same to Senator McCain." Response at 2. The plaintiffs also note that Mr. Kramer has criticized Vladimir Putin's regime in numerous articles, speeches and a recent book. Id. at 2, 6-7. Moreover, the plaintiffs state that "Mr. Kramer's general involvement with the Dossier – that he flew to London, met with Mr. Steele, and provided the Dossier to Senator McCain is well-document[ed] in newspapers, magazines, and books." Id. at 8. Lastly, the plaintiffs note that Mr. Kramer provided briefings or copies of the Dossier to reporters from eight news organizations and appeared "[i]n an on-camera interview with ABC News" where he discussed the dossier. Id. at 10. The plaintiffs conclude that "[h]ad Mr. Kramer truly believed that his personal safety could have been compromised by any connection to the Dossier, he would have simply declined to speak with the

5

press about the Dossier – whether those conversations were confidential or not." Id.

In his reply, Mr. Kramer states that his argument that "the Court's de-designation of the transcript would put him in danger because it would reveal that he knows the names of Mr. Steele's sources" is a secondary concern and that "[Mr. Kramer's] primary concern comes with being identified as BuzzFeed's source for the Dossier." Reply at 6. Specifically, Mr. Kramer is concerned about reprisals from the Russian government and/or Russian government sympathizers if they learn that Mr. Kramer "was the cause-in-fact of the publication of" the Dossier. Id. at 1. Mr. Kramer notes that BuzzFeed's source has not been made public and press speculation about a connection between Mr. Kramer and the Dossier is materially different from "deposition testimony, which definitively confirms this connection." Id. at 2, 5. Mr. Kramer does not dispute that he has been a vocal critic of Vladimir Putin and states that rather than undermine his safety argument, this fact supports Mr. Kramer's concerns: "when you combine Mr. Kramer's past criticisms of the Putin regime with the role he played in the release of the Dossier, one can easily appreciate his concern about being a target for retribution." Id. at 5.

Mr. Kramer also states that his willingness to meet with the press in confidence does not undermine his safety concerns: "[b]ased on his past experiences and relationships with members of the press, Mr. Kramer had faith that the press would keep their meetings confidential." Id. at 6. Mr. Kramer notes that "the various reporters with whom Mr. Kramer met about the Dossier have not disclosed his identity or conveyed the substance of their meetings with him." Id.

The term "[g]ood cause 'generally signifies a sound basis or legitimate need to

take judicial action.'" Tillman v. C.R. Bard, Inc., 297 F.R.D. 660, 663 (M.D. Fla. 2014) (quoting In re Alexander Grant & Co. Litigation, 820 F.2d 352, 356 (11th Cir. 1987)). Mr. Kramer has shown a particularized need for protection: the safety of Mr. Kramer and his family. Mr. Steele, the purported author of the Dossier, has gone into hiding and a news report has speculated that at least one person suspected of being a source for information in the Dossier has died under suspicious circumstances. Mr. Kramer has demonstrated a critical distinction between being a vocal opponent of the Russian government and being the cause-in-fact of the publication of the Dossier. Notably, Mr. Kramer's meetings with members of the press were based on assurances of confidentiality. Mr. Kramer's criticisms of the Russian government are publically known, Mr. Kramer's role in providing the defendants with access to the Dossier is not. In sum, Mr. Kramer has shown good cause in the articulated safety concerns for himself and his family if Mr. Kramer's role in providing the defendants with access to the Dossier is made public.

### B. Congressional Investigations

Mr. Kramer has also raised concern for the integrity of ongoing Congressional investigations as a basis for maintaining his deposition testimony confidential. Mr. Kramer notes that "[b]oth the House and Senate Committees treat[ed] the testimony provided to them as confidential" and that "when asked during his deposition about the nature of the questions proposed by Congress, Mr. Kramer testified that the questions were '[j]ust very similar to what I have been asked here this morning. How I came into possession of The Dossier, and my contact with Mr. Steele or Mr. Simpson, and those things.'" Motion at 16 (quoting Dep. Tr. at 123:22-124:1). Thus, Mr. Kramer argues that

7

"if the Court allows the Plaintiffs to share the deposition publicly and/or outside the context of this case, it could threaten Congressional investigations, as it will reveal the Congressional Committees' knowledge regarding the information provided by Mr. Kramer to the Committees." Id. at 16-17.

The plaintiffs note that Mr. Kramer has not filed any purported written agreement with Congress; Mr. Kramer's depositions contains few details about his Congressional testimony and the plaintiffs have agreed to not "make public that portion of the testimony in which Mr. Kramer discusses his Congressional testimony." Response at 11. Mr. Kramer responds that his deposition testimony is "very similar" to his testimony before Congress. Reply at 7.

Given the plaintiffs' assurances that they will not make public the portions of Mr. Kramer's deposition which discuss Mr. Kramer's Congressional testimony, the undersigned concludes that Mr. Kramer's concern for the integrity of ongoing Congressional investigations is not well founded.

**2   Balancing Test**

As noted above, good cause exists to maintain the "Confidential" designation of Mr. Kramer's deposition based on Mr. Kramer's articulated safety concerns. [I]n some circumstances, "[f]ederal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement. This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." Tillman v. C.R. Bard, Inc., 297 F.R.D. at 664 (quoting Chicago Tribune Co., 263 F.3d 1304, 1313 (11th Cir. 2001)).

The undersigned must now balance Mr. Kramer's safety concerns with the

8

plaintiffs' need for the disclosure of Mr. Kramer's deposition. As noted above, the plaintiffs state that the de-designation of Mr. Kramer's deposition is necessary in compelling the deposition of Christopher Steele in the London proceeding and the deposition of Fusion GPS in the Washington, D.C. proceeding. Response at 12. The plaintiffs also want to use Mr. Kramer's deposition <u>during</u> the depositions of Fusion GPS and Mr. Steele. <u>Id.</u>

For the reasons stated below, the undersigned finds that Mr. Kramer's safety concerns outweigh the plaintiffs' stated need for the de-designation of Mr. Kramer's deposition.

### A. London Proceeding

In support of their argument that Mr. Kramer's deposition testimony is needed to compel the deposition of Christopher Steele, the plaintiffs have filed the declaration of Steven Frederick Loble, the solicitor who is representing the plaintiffs in the London proceeding involving Mr. Steele. <u>See</u> Declaration of Steven Loble (DE# 131-17). Mr. Loble states that Mr. Steele is seeking to avoid being deposed and "has raised as one of his arguments that he kept the dossier strictly confidential, providing it only to the FBI and Senator McCain." <u>Id.</u> at ¶ 3. According to Mr. Loble, Mr. Kramer's deposition testimony about being directed by Mr. Steele to brief news organizations and provide some news organizations with copies of the Dossier would be useful in countering Mr. Steele's argument. <u>Id.</u> at ¶ 4. Mr. Loble also states that if Mr. Kramer's deposition is used in the London proceeding, it will likely be made public since "[t]he general rule is that evidence used in the English Court can be obtained by members of the press or public by application to the Court" with the exception of "cases involving National

Security, intellectual property, or trade secrets evidence . . . ." Id. at ¶¶ 5-7.

Mr. Kramer disputes the plaintiffs' need for Mr. Kramer's deposition testimony to counter Mr. Steele's confidentiality argument. Reply at 2. Mr. Kramer notes that Mr. Loble's declaration "says nothing about either (1) the standard the English Court will apply when deciding whether to 'set aside' the court order requiring Mr. Steele to sit for a deposition or (2) whether an English Court considers material like Mr. Kramer's 'contradiction' testimony relevant to such an issue." Reply at 9. Mr. Kramer also notes that "the Nunes Memorandum[3] contains a treasure trove of material that contradicts Mr. Steele's claim of strict confidentiality." Id. (footnote added). Specifically, "[t]he [Nunes] Memorandum notes that Mr. Steele 'has admitted in British court filings that he met with Yahoo News—and several other outlets—in September 2016 at the direction of Fusion GPS'" and that "Mr. Steele went so far as to disclose his status as an FBI source to a magazine, Mother Jones, which resulted in the FBI suspending and then terminating him as a source." Id. at 9-10 (citing Nunes Memorandum at *2). Mr. Kramer concludes that "[t]he Nunes Memorandum's documentation of Mr. Steele's 'numerous encounters with the media' . . . is far more powerful evidence than Mr. Kramer's deposition testimony about Mr. Steele's indirect engagement with the media." Id. at 10 (citing Nunes Memorandum at *3).

In light of the information available in the Nunes Memorandum, the undersigned finds that the plaintiffs' articulated need for Mr. Kramer's deposition for use in the

---

[3] The Nunes Memorandum refers to a congressional memorandum that was declassified by the President on February 2, 2018 and relates in part to Mr. Steele. It was filed by Mr. Kramer at Attachment H (DE# 132-1 at 4-7).

10

London proceeding is not compelling and certainly does not outweigh Mr. Kramer's safety concerns.

### B. Washington, D.C. Proceeding

The plaintiffs similarly argue that Mr. Kramer's deposition testimony would be helpful in compelling the deposition of Fusion GPS. Response at 13. The plaintiffs state that Fusion GPS has argued in the Washington, D.C. proceeding that it should not be deposed "on confidentiality grounds." Id. At the same time, the plaintiffs note that Fusion GPS played a "role in encouraging Mr. Kramer to speak with the media . . . ." Id.

The plaintiffs have not sufficiently explained how Mr. Kramer's deposition would be helpful in procuring the deposition of Fusion GPS[4] or why the Washington, D.C. court would not permit the deposition of Mr. Kramer to be filed under seal, if the plaintiffs need to rely on Mr. Kramer's testimony to compel the deposition of Fusion GPS. The Washington, D.C. court is able to provide safeguards to ensure that Mr. Kramer's deposition testimony remains confidential while allowing the plaintiffs to cite to the deposition. Notably, in the Washington, D.C. proceeding the plaintiffs "have [already] agreed that any information Fusion [GPS] produces will be designated 'Attorneys' Eyes Only,' meaning that 'it will not be shared with anyone other than the lawyers working on the underlying case in Florida' and that it will not be shared with any of the parties or with lawyers working on related matters." In re Third Party Subpoena to Fusion GPS, No. 17-CV-60426-UU, 2018 WL 940553, at *1 (D.D.C. Feb. 16, 2018)

---

[4] Notably, the plaintiffs have already filed their opposition to the motion to quash in the Washington, D.C. proceeding without the assistance of Mr. Kramer's deposition testimony. See In re Third Party Subpoena to Fusion GPS, 2018 WL 940553, at *1 (citing opposition to motion to quash).

11

(citing Opp. to Mot. Quash Ex. 5).

### C.     Use of the Kramer Deposition During Other Depositions

If the plaintiffs succeed in compelling the deposition of Fusion GPS and/or the deposition of Mr. Steele, they state that they would like to use Mr. Kramer's deposition testimony during those depositions. Response at 13. The plaintiffs maintain that under the terms of the Protective Order (DE# 97, 12/8/17), they may only use Mr. Kramer's deposition during other depositions if those deponents agree to be bound by the Protective Order. Id. The plaintiffs further state that Mr. Steele and Fusion GPS would likely not agree to be bound by those terms. Id. According to the plaintiffs, the Court should therefore remove the Confidentiality designation from Mr. Kramer's deposition.

Mr. Kramer responds that "despite the Plaintiffs' claims to the contrary, the Plaintiffs do not need [a] sign-off from third-party witnesses in order to use Mr. Kramer's deposition when deposing such witnesses." Reply at 2-3. The defendants agree with Mr. Kramer, stating that "while the Protective Order requires that witnesses who are deposed be informed of the [Protective] Order, it does not require that they sign it as a condition for using Mr. Kramer's testimony as a basis for questions." Defendants' Response at 5.

Paragraph 6 of the protective order states in part:

6. Confidential Information shall not be delivered, disclosed or disseminated except to the following persons:

***

>   (d) witnesses and deponents in this action who are shown
>   the Confidential Information while testifying[.]

Protective Order (DE# 97 at ¶6, 12/8/17). Paragraph 6 does not require that the

12

deponent agree to be bound by the Protective Order before being shown documents that have been designated "Confidential." By contrast, paragraph 6(h) permits documents designated "Confidential" to be shown to "**any other person whom the parties agree**, in advance and in writing. . . **provided such person has executed the Notification of Protective Order attached hereto as Exhibit A**." Id. at ¶ 6(h) (emphasis added). Thus, the plaintiffs' argument that Mr. Steele and Fusion GPS would need to agree to be bound by the Protective Order (DE# 97 at ¶6, 12/8/17) before the plaintiffs may use Mr. Kramer's deposition during the depositions of Mr. Steele and Fusion GPS is not supported by the language of the Protective Order.

### 3. Public Access to the Courts

The plaintiffs further state that Mr. Kamer's deposition testimony should be de-designated because it is subject to the common-law right of access to judicial proceedings. Response at 14. There is "[n]o common law right of access to discovery material." Diaz-Granados v. Wright Med. Tech., Inc., No. 614CV1953ORL28TBS, 2016 WL 1090060, at *2 (M.D. Fla. Mar. 21, 2016) (quoting In re Alexander Grant & Co. Litigation, 820 F.2d 352, 355 (11th Cir. 1987)). "Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986). "[O]nce the information becomes a judicial record or public document, the public has a common-law right to inspect and copy the information." Diaz-Granados, 2016 WL 1090060, at *2 (citing In re Alexander

Grant & Co. Litigation, 820 F.2d at 355).

The plaintiffs note that they have filed Mr. Kramer's deposition transcript in support of their motion for judgment on the pleadings on some of the defendants' affirmative defenses. See Notice of Sealed Filing (DE# 124, 1/23/18). The plaintiffs also state that they intend on relying on Mr. Kramer's deposition testimony in moving for summary judgment. Response at 14.

The defendants accuse the plaintiffs of improperly including Mr. Kramer's deposition as part of their motion for judgment on the pleadings in order to compel the deposition's disclosure. See Defendants' Response at 4 (stating that "the only apparent purpose [Mr. Kramer's deposition] served was to provide a pretext for arguing in opposition to the instant motion that Mr. Kramer's testimony should become public because Plaintiffs had (gratuitously) filed the transcript.").

In order to rule on the instant motion, the undersigned does not need to make a determination on the plaintiffs' motives in citing to Mr. Kramer's deposition in the motion for judgment on the pleadings. The undersigned does conclude, however, that Mr. Kramer's deposition testimony is not relevant to any of the arguments raised in that motion.

The plaintiffs moved for a judgment on the pleadings on two affirmative defenses: the Fair Reporting Privilege and the Neutral Reporting Privilege. See Plaintiffs' Motion for Partial Judgment on the Pleadings with Respect to Defendants' Affirmative Defenses of "Fair and True Reporting Privilege" and "Neutral Reporting Privilege" (DE# 115, 1/18/18) ("Plaintiffs' Motion for Partial Judgment on the Pleadings"). The undersigned's review of the plaintiffs' motion and reply found one

citation to Mr. Kramer's testimony. See Plaintiffs' Motion for Partial Judgment on the Pleadings at 3 (stating that "[i]n late December of 2016, Buzzfeed reporter Ken Bensinger obtained a copy of the memos."). The plaintiffs' motion went on to state that this fact was not even disputed: "it is undisputed that Buzzfeed did not receive the Dossier from a government official or any other government source." Id. at 8. In its reply, the plaintiffs again stated that ". . . Buzzfeed did not receive the Dossier from Steele, nor did it receive the Dossier from any 'government official.'" Plaintiffs' Reply in Support of Partial Motion for Judgment on The Pleadings with Respect to Defendants' Affirmative Defenses of "Fair and True Reporting Privilege" and "Neutral Reporting Privilege" (DE# 137 at 7 n.5, 2/20/18). As evidenced by the plaintiffs' lone citation[5] to Mr. Kramer's deposition, the substance of Mr. Kramer's deposition testimony is not relevant to the Court's ruling on the sufficiency of the defendants' Fair Reporting Privilege and the Neutral Reporting Privilege affirmative defenses.

Accordingly, the common law right of access has not yet attached to Mr. Kramer's deposition testimony.

## CONCLUSION

For the reasons stated herein, it is

---

[5] The plaintiffs claim they did not need to cite to Mr. Kramer's deposition transcript in their reply in support of the motion for judgment on the pleadings because "the facts that needed to be in front of the Court were already in front of the Court." Plaintiff's Reply at 2-3. This argument is not well taken. The undersigned notes that the plaintiffs filed the entire 130-page deposition of Mr. Kramer in connection with the plaintiff's motion for judgment on the pleadings. If the information in Mr. Kramer's deposition was necessary to support the plaintiffs' arguments, it would be unreasonable for the plaintiffs to expect the Court to comb through all those pages to find support for the plaintiffs' motion for judgment on the pleadings.

ORDERED AND ADJUDGED that Non-Party David J. Kramer's Sealed Motion for Protective Order (DE# 130, 1/29/18) is **GRANTED**. The deposition transcript of David J. Kramer shall remain confidential.

DONE AND ORDERED, in Chambers, at Miami, Florida this __23__ day of February, 2018.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Ungaro
All counsel of record