```
               UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA
               Case No. 17-60426-Civ-UNGARO
```

ALEKSEJ GUBAREV, et al.,        ) Pages 1-51
                                )
              Plaintiffs,       )
                                )
         -v-                    )
                                )
BUZZFEED, INC., et al.,         )
                                ) Miami, Florida
              Defendants.       ) February 28, 2018
-----------------------------)  11:30 a.m.


               TRANSCRIPT OF STATUS CONFERENCE

           BEFORE THE HONORABLE URSULA UNGARO

                  U.S. DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs        BOSTON LAW GROUP, PC
                          BY:  VALENTIN GURVITS, ESQ., and
                          MATTHEW SHAYEFAR, ESQ. (via phone)
                          825 Beacon Street - Suite 20
                          Newton Centre, Massachusetts  02459

                          CIAMPA, FRAY-WITZER, LLP
                          BY:  EVAN FRAY-WITZER, ESQ.
                          20 Park Plaza - Suite 505
                          Boston, Massachusetts  02116

                          COBB EDDY, PLLC
                          BY:  DYLAN M. FULOP, ESQ.
                          642 Northeast 3rd Avenue
                          Fort Lauderdale, Florida  33304
(continued)

REPORTED BY:              WILLIAM G. ROMANISHIN, RMR, FCRR, CRR
(305) 523-5558            Official Court Reporter
                          400 North Miami Avenue
                          Miami, Florida  33128

     STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1   APPEARANCES (continued):

 2   For the Defendants        BLACK SREBNICK KORNSPAN & STUMPF
                               BY:  ROY E. BLACK, ESQ.
 3                             201 South Biscayne Boulevard
                               Suite 1300
 4                             Miami, Florida  33131

 5                             DAVIS WRIGHT TREMAINE, LLC
                               BY:  KATHERINE M. BOLGER, ESQ.
 6                             1251 Avenue of the Americas
                               21st Floor
 7                             New York, New York  10020
                                       -and-
 8                             BY:  NATHAN SIEGEL, ESQ.
                               1919 Pennsylvania Avenue
 9                             Washington, DC  20006

10           (Call to order of the Court)

11           THE COURT:  Good morning.  The case before the Court

12   is Gubarev, et al., versus Buzzfeed, 17-60426.

13           Who's here for the plaintiffs?

14           MR. FRAY-WITZER:  Good morning, Your Honor.  Evan

15   Fray-Witzer for the plaintiffs.

16           MR. GURVITS:  Val Gurvits for the plaintiffs.

17           MR. FULOP:  And Dylan Fulop for the plaintiffs.

18           THE COURT:  And there's somebody on the phone for the

19   plaintiffs?

20           MR. SHAYEFAR:  Yes, Your Honor.

21           THE COURT:  And who is that and why is that

22   necessary?

23           MR. GURVITS:  He has done a lot of work in the

24   discovery process, and to the extent that there will be

25   specific questions --
```

1           THE COURT:  He can listen but he cannot participate.

2    It's really irritating.  Why do we need four lawyers for the

3    plaintiffs and one guy on the phone.  Unnecessary.  He can

4    listen.  He cannot participate.  If he wants to participate,

5    he needs to get down here and appear in person.

6           Have a seat.

7           Who's here for the defense?

8           MS. BOLGER:  Katherine Bolger, Your Honor.

9           MR. SIEGEL:  Nathan Siegel, Your Honor.

10          MR. BLACK:  Good morning.  Roy Black.

11          THE COURT:  Okay.  Good morning.

12          All right.  So we're here for a status conference,

13   but a lot's going on now.

14          So yesterday I spoke to Judge McFadden -- is that his

15   name? -- in the D.C. district and agreed to accept the Fusion

16   GPS motion to quash.  So when it comes, it comes and I will

17   address it.

18          I've been looking at these motions that have been

19   filed.  I would say it is at this point just a very

20   preliminary review.  As you know, I was away, away for a

21   lengthy period of time.  I'm still catching up.

22          I am a little perplexed by something, which is, I

23   don't really see the need for this motion to amend that the

24   defense filed.  It seems to me that the tenor of the

25   correspondence between the two sides was, okay, you've

 1   asserted privileges; we'll live with that and we'll work it

 2   out in the course of the case.

 3        And I don't really see why the matters that are

 4   contained in the proposed amended answer are not matters that

 5   can be proffered in connection with the identification of

 6   issues of fact that the defense contends would defeat the

 7   plaintiffs' position that the privileges don't apply.

 8        So why do we have to have this extra layer of

 9   litigation that revolves around his motion to amend the

10   answer?  Is it really necessary?

11        MR. SIEGEL:  No, Your Honor.  We're certainly happy

12   to do it that way simply as a proffer.

13        THE COURT:  Okay.  And do you see a problem with

14   that, Mr. Fray-Witzer?  Isn't that really what you essentially

15   agreed to in this correspondence on the sufficiency of the

16   answer?

17        MR. FRAY-WITZER:  Yes, Your Honor.

18        THE COURT:  Okay.  Then, I'm going to deny the motion

19   as moot and just address myself to the motion for judgment on

20   the pleadings and address myself to whether or not there are

21   issues of fact and, if there are issues of fact, whether or

22   not it looks likes there are good faith disputes as to those

23   facts.

24        MS. BOLGER:  Your Honor, just so I understand, does

25   that mean you need us to make an additional proffer or will

1    you sort of take it as a proffer?

2         THE COURT:  Well, you know, again, I haven't looked

3    that carefully at the papers.  It did strike me that this

4    motion to amend was totally unnecessary.

5         But in your response to the motion for judgment on

6    the pleadings, did you not proffer or did you not identify

7    facts or factual disputes that would need to be resolved in

8    order to resolve the issue of whether or not a motion for

9    judgment on the pleadings was appropriate as to these two

10   privileges?

11        MS. BOLGER:  We did file a 5060 affidavit, Your

12   Honor, that listed the things that we thought made this --

13   that there were issues of fact, yes, Your Honor.

14        THE COURT:  Okay.  Well, why don't we just leave it

15   the way it is.  And then, you know, if I feel that there is

16   additional information I need, I'll let you know.  How's that?

17        MS. BOLGER:  Yes.

18        MR. SIEGEL:  I mean, this may be the simplest way to

19   do it.  We filed a motion for leave to amend.  But our brief

20   opposing the motion for judgment on the pleadings, essentially

21   you could call it proffers of those facts.  Those facts are

22   contained within the argument.

23        THE COURT:  Okay.  So, fine.

24        MR. SIEGEL:  You can take it that way.

25        THE COURT:  I think that that's an appropriate way of

1   addressing the motion for judgment on the pleadings.

2         Okay.  Do you see a problem with that,

3   Mr. Fray-Witzer?

4         MR. FRAY-WITZER:  No, Your Honor.

5         THE COURT:  All right.  Fine.  So I think that helps

6   to get rid of an extra layer of problems.

7         All right.  Now, I hate to ask this question because

8   it's going to show how ill-prepared I am.  But discovery is

9   supposed to terminate when?

10         MS. BOLGER:  March 15th, Your Honor.

11         THE COURT:  March 15th.  Okay.

12         And today is February 28th.

13         MS. BOLGER:  It is, Your Honor.

14         THE COURT:  So we're talking about only two weeks.

15         MS. BOLGER:  We have asked to extend that, Your

16   Honor.  We proposed a schedule in our interim status report.

17         The answer, Your Honor, is that we simply don't have

18   what we need to defend ourselves in this litigation either

19   from the plaintiffs or from third parties.  And I can explain

20   that a little further, if you'd like.

21         THE COURT:  Okay.  Just tell me how much more time

22   you want.

23         MS. BOLGER:  We proposed extending the discovery

24   cutoff by three months to June 15th, Your Honor.

25         THE COURT:  I know you oppose it, Mr. Fray-Witzer.

1        MR. FRAY-WITZER:  Yes.

2        THE COURT:  But let me hear from them as to what they

3   have to say and then I'll let you respond.  Okay?  Let me find

4   a pen because I don't have a pen up here.

5        Okay.  Go ahead.

6        MS. BOLGER:  I'll focus first on what we need from

7   the plaintiffs and then I'll move on to what we need from

8   other folk.

9        So, Your Honor, literally, last week, on February

10  20th, we received the most significant document production

11  that plaintiffs have made in this case, and last Friday, the

12  23rd, at 9:00 p.m. was the first time we saw any damages.  I'm

13  going to start with the damages discovery.

14        THE COURT:  Okay.

15        MS. BOLGER:  Your Honor, the damages report seeks the

16  absolutely unbelievable sum of between $62.5 million and

17  $170 million in damages.

18        And despite the fact that plaintiff has repeatedly

19  told Your Honor that this case is only about three sentences,

20  they seek damages for the publication of the entire dossier

21  and any story that ever linked to the Buzzfeed story about the

22  dossier.

23        We haven't even had time to process it.  They have

24  provided us 1,200 pages of financials.  400 of them came last

25  Friday night at nine o'clock.  And in addition, Your Honor,

1    there are glaring omissions.

2          For example, the expert opines the basis for his

3    opinion is predicated on things like banks froze their

4    accounts, threatened to close their accounts, and banks were

5    driven away by them.  But there's no naming of banks.  There's

6    no naming of accounts.  The only cite for that is a

7    conversation with their CFO.

8          So we are faced with this astronomical damages report

9    lacking information.  And more than that, we have to get our

10   arms around it.  It's been, you know, four, five days.  So

11   that's the damages piece, Your Honor.

12         In addition, the document production that we got on

13   February 20th contained information that is inconceivable to

14   us, hasn't been produced --

15         THE COURT:  Wait.  Can I just stop you for a moment?

16         So how long is the expert report?

17         MS. BOLGER:  68 pages, Your Honor.  And then it has

18   400 pages of exhibits.

19         THE COURT:  Who is the expert?

20         MS. BOLGER:  Mr. Anderson.

21         THE COURT:  Who's he?

22         MS. BOLGER:  I've assumed the reason for the numbers

23   and the reason he was chosen is he was Hulk Hogan's damage

24   expert, Your Honor.

25         THE COURT:  Okay.

1      MS. BOLGER:  And so the damages, we just need to

2  figure out what's going on, have an expert look through it,

3  understand what's happening.

4      THE COURT:  And what is his expertise?  Is he a CPA?

5  What is he?

6      MS. BOLGER:  He is a CPA, Your Honor.

7      THE COURT:  Okay.

8      MS. BOLGER:  So that's the damages piece.

9      Obviously, since it's a defamation case, the truth of

10  the underlying allegation is at issue.  Great.

11      In September we were before Magistrate O'Sullivan.

12  We told Judge O'Sullivan that 13 IP addresses associated with

13  the plaintiffs had been listed as IP addresses involved in

14  Russian election meddling, an obviously relevant fact.  We

15  asked for all documents related to that.  Judge O'Sullivan

16  ordered that they be produced on October 10th.

17      On February 20th, just last week, Your Honor, for the

18  first time we learned from a document production that the

19  plaintiffs were actually contacted by the Luxembourg police in

20  2016 before we published the dossier about these 13 IP

21  addresses and had some minimal investigation which showed that

22  some of those 13 addresses had --

23      THE COURT:  The Luxembourg police had done some

24  minimal investigation or the plaintiff had done some minimal

25  investigation?

```
 1              MS. BOLGER:  I apologize, Your Honor.  As far as we
 2     can tell, and we're not sure it's complete, there was some
 3     back and forth with the Luxembourg police, and then the
 4     plaintiffs did their own investigation.
 5              Found out that some of those IP addresses had abuse
 6     alerts for hacking activities.  But that's all we know.  And
 7     we just found this out on February 20th.  We, obviously, need
 8     to look at the information that was produced and see if it's
 9     relevant to our truth defense.
10              Then, the last thing we found out on February 20th,
11     for the first time -- oh, I should mention, Your Honor, that
12     plaintiffs' counsel actually gave an interview to the press on
13     February 27th in which he talked about how they had done this
14     internal investigation and cleared themselves.
15              But we don't know that.  We haven't even seen a
16     document.
17              THE COURT:  Who did the internal investigation?
18              MS. BOLGER:  A gentleman we had never heard of before
19     whose name is Marc Gottridge, who lives in Luxembourg.  We
20     asked to depose him, but the plaintiffs --
21              THE COURT:  He works for XBT or Webzilla?
22              MS. BOLGER:  He works for root SA, which is a
23     subsidiary of XBT and Webzilla.  As you remember, the dossier
24     talks about XBT, Webzilla and its affiliates.  root SA is a
25     affiliate.  We've never heard of them before.  We asked to
```

1   depose him.  The plaintiffs have told us they'll meet us in

2   Brussels to do his deposition.  So we've got to go to Brussels

3   to do his deposition.

4          THE COURT:  How sad.  Yes.

5          MS. BOLGER:  Never been there, Your Honor.

6          THE COURT:  It's very nice.

7          MS. BOLGER:  Clearly we need to follow this and we

8   need to be able to meaningfully cross-examine the plaintiff,

9   because we need to know what we're doing before we talk to the

10  plaintiff.

11         And then last, Your Honor, it's a defamation suit.

12  Whether the plaintiffs are public figures is obviously

13  significant.

14         On February 20th, we learned for the very first time

15  that the plaintiffs had retained a public relations firm in

16  2015 and 2016 to promote it in America, clearly relevant to

17  public figure status.  We got tons of press releases from

18  other news wires, clearly relevant to public figure status.

19  And, Your Honor, very honestly, we need to be able to follow

20  up on this to be able to meaningfully cross-examine the

21  plaintiff.

22         And I should mention, Your Honor, that we have

23  already issued a subpoena to the PR firm.  We did that maybe

24  yesterday or the day before.

25         THE COURT:  So let me ask you something.  So what

```
 1    have we done about scheduling Mr. Gubarev's deposition?  I
 2    take it, it's not scheduled because you don't know if I'm
 3    going to extend the discovery deadline or it is scheduled.
 4    What's going on?
 5              MS. BOLGER:  Originally the plaintiff proposed the
 6    first several days of March to take depositions.  We told
 7    them, no.  We're getting your damages disclosures February
 8    28th, at the end of February.  We can't possibly be ready to
 9    take the deposition.
10              So plaintiffs then proposed in and around the week of
11    March 13th, but only for certain people in Florida.  But then
12    other people are in Brussels or Cyprus.
13              Your Honor, we just can't possibly take depositions
14    on March 12th through 17th.  And we've asked for the following
15    people:  Mr. Gubarev; Mr. Mayor, who's the CFO;
16    Mr. Bezruchenko, who's their tech person; Mr. Luchian, who's
17    their Florida representative; Nick Dvas, a person we just
18    really found out about, who's their publicity person, relevant
19    public figure; the gentleman in Brussels.
20              And the plaintiff listed his wife, Ana Gubarev, on
21    the initial disclosures as a witness; and we told the
22    plaintiff we would forego that deposition unless they intended
23    to call her at trial.  But the plaintiff is intending to call
24    her at trial.  They've told us we have to go to Cyprus to take
25    that deposition.
```

1     So, Your Honor, they're proposing that we do all of

2 these and, I guess, a 30(b)(6) by March 15th.  I proposed the

3 dates of April 9th through 13th to depose the principals, or

4 April 23rd to 26th to depose the principals, and I proposed

5 going to Brussels on March 26th.  But the plaintiff rejected

6 my proposal.

7     THE COURT:  Well, because it was after the discovery

8 deadline?

9     MS. BOLGER:  Yes.

10    So that's what we need just from the plaintiff, Your

11 Honor.  But we also need things from third parties.

12    THE COURT:  Right.  So you have subpoenas out to who

13 in the Government?

14    MS. BOLGER:  So, Your Honor, I put the transcript of

15 the meeting for the Government -- of the oral argument for the

16 Government as part of the interim report.  It was very

17 interesting.  The hearing on our motion to compel was on

18 February 15th.

19    Between the last time we saw you and the hearing, of

20 course, Devin Nunes released the Nunes memo, the Grassley

21 letter and now the Democratic rebuttal, and it was very clear

22 that the release of those documents by the Government had

23 changed the character of our application to the Government.

24 In fact, Judge Mehta was explicit that it had changed the

25 character of our request.

1          So we had asked for nine categories of information

2     from the Government.   Judge Mehta and Mr. Siegel, are who are

3     arguing the motion, together sort of went through the list and

4     determined that the Nunes memo gave us essentially five of

5     those in what was likely to be in admissible form.

6          So there are only three issues outstanding.   The

7     three things are:   One, confirming that Senator McCain handed

8     a copy of the dossier to the FBI; two, confirming that Obama

9     was briefed on the dossier sometime before January 10th, which

10    was the date we published; and the last was confirming that

11    the Department of Justice actually received the two-page

12    December memo in which Mr. Gubarev is mentioned.   Those were

13    the three categories outstanding.

14          THE COURT:   And the plaintiff is not willing to

15    stipulate to those facts?

16          MS. BOLGER:   Plaintiff is not willing to stipulate

17    to -- well, we're working on it, I think.

18          We proposed a stipulation with respect to the Senator

19    McCain and the Obama briefing.   We proposed a stipulation that

20    we actually contacted Senator McCain's office, and he agreed

21    on the wording of the stipulation.

22          We proposed that to the plaintiffs' counsel, and the

23    plaintiffs' counsel has rejected it and modified it.   I think

24    we're still talking, but I don't know if we've hit an impasse,

25    and it has simply rejected the Obama stipulation other than

1    minimally agreeing to one paragraph.

2         So we will have to go back to Judge Mehta on March

3    1st, tomorrow, and I guess we will have to tell him our

4    request to stipulate has been rejected.  I think that's

5    ridiculous.  We all know these facts to be true.  And Senator

6    McCain has literally approved the wording of the stipulation.

7         But nonetheless, that is where things stand on those

8    first two prongs of the Government application.

9         The last prong, which is confirming that the two-page

10   memo actually made it to the Government, Judge Mehta required

11   the Government -- he was very explicit that all of the

12   Government's arguments regarding privilege had been pretty

13   much wiped out by the Nunes memo, and he said basically all

14   you have left is burden.  So go back, get me an affidavit as

15   to burden, and I'll think about it.  And that affidavit is

16   supposed to be served March 13th.  March 13th?

17        MR. SIEGEL:  Yeah.  Although they're going to make it

18   (inaudible).

19        MS. BOLGER:  So it's a little bit in flux as to that

20   third thing.

21        I will say, Your Honor, Judge Mehta was fairly direct

22   with the Government that the Nunes memo had changed everything

23   and their concerns about privilege he thought were really

24   affected by the Nunes memo.

25        So that's the Government, Your Honor.

```
 1            THE COURT:  Uh-huh.  Yes.

 2            MS. BOLGER:  We also subpoenaed the DNC.  That one is

 3  self-evident, Your Honor.  We asked the DNC for the remnants,

 4  the technical remnants of the hack.  So the analogy we used

 5  was we're asking for the tools the safecracker left in the

 6  safe rather than anything else.

 7            They opposed it.  We moved to compel.  That motion is

 8  pending.

 9            THE COURT:  What is the basis for their opposition?

10            MS. BOLGER:  Your Honor, the basis for the opposition

11  is that if we give them that information, it will make a hack

12  more likely -- sorry.  If they give us that information, it

13  will make a hack more likely in the future, which will

14  compromise the associational rights of their donors and

15  members.  So that's why we moved to compel, Your Honor.  We

16  felt like we had strong arguments to compel.

17            THE COURT:  So who's got that in the D.C. District

18  Court?

19            MS. BOLGER:  That is in the District of D.C.  But

20  it's not Judge Mehta.  It's Judge Jackson.

21            THE COURT:  What is the status of that?

22            MS. BOLGER:  They asked for an extension of time to

23  oppose.  Their opposition is due on March 9th, and our reply

24  is due on March 23rd.

25            THE COURT:  Okay.  That would seem to me to be very
```

```
 1    important information.  But what do I know.

 2            MS. BOLGER:  To us too, Your Honor.  That's why we've

 3    been pushing for it.

 4            The other thing we did was we subpoenaed two PR firms

 5    that the plaintiffs have hired.  That's to help us establish

 6    that they are in fact public figures.  One of them is a

 7    company called kglobal.  They initially objected to all of our

 8    requests.  But we're in the process of negotiating that, and

 9    I'm hopeful we can work that out.

10            THE COURT:  And where are they located?

11            MS. BOLGER:  They're in D.C.  The D.C. area, Your

12    Honor.

13            We just last week -- or just yesterday subpoenaed the

14    other PR firm that we just learned about, and we sent letters

15    of request to Cyprus for banks.

16            Your Honor, actually at the end of this hearing, with

17    the plaintiffs' permission, I'm going to ask you to re-sign

18    them again, because we're having a hard time getting clear

19    directions out of Cyprus, to put it mildly.  So if you would

20    re-sign them, I'd be grateful.  But those are in Cyprus.  We

21    just don't know how successful they'll be.

22            And the last thing, Your Honor, is that I mentioned

23    in the damages discovery that the plaintiffs talk about having

24    troubles with banks but don't name the banks.  We think there

25    are some banks in Amsterdam.  If we have a little more
```

```
1    information, we will be able to confirm that.  We'd like to
2    send a letter of request over to Amsterdam.  They are
3    drafted.  We just need to get the last bit of information.
4          So, Your Honor, we have a lot of third-party
5    discovery outstanding in addition to the plaintiffs, which is
6    why we've asked for the extension.
7          THE COURT:  Has anybody thought about bifurcation?
8          MS. BOLGER:  Do you mean with respect to the --
9          THE COURT:  Liability and damages.  I mean, it seems
10   to me the damages discovery is really going to be a problem
11   because of what you just said about the expert and about the
12   involvement of foreign banks.
13         MS. BOLGER:  We have not talked about bifurcation at
14   all internally, Your Honor.
15         THE COURT:  Okay.  Well, let me hear what the
16   plaintiff has to say about all of this.
17         MR. FRAY-WITZER:  There was a lot, Your Honor, and
18   I'll try and respond as much as I can.  If I fail to respond
19   to something that you want to hear about, please tell me.
20         THE COURT:  I mean, the real issue is, you know,
21   should I extend the discovery cutoff.  I have to say, I think
22   that as motions to extend discovery cutoffs go, the plaintiffs
23   are not being unreasonable in asking for an additional 90
24   days.  90 days in the overall scheme of things is not a huge
25   amount of time.  In fact, I'm actually surprised that they
```

```
 1    think they can finish in 90 days.
 2            That's not to say I'm going to grant the motion.  But
 3    on its face the motion does not seem to me to be outrageous.
 4            MR. FRAY-WITZER:  Let me start, Your Honor, at the
 5    end where the defendants have said, you know, we've issued
 6    these letters rogatory to Cyprus and we've been moving
 7    diligently on that.
 8            THE COURT:  I don't think you can address that
 9    without addressing to some degree the expert report if the
10    expert report is 68 pages and does not have the identity of
11    the banks and other creditors or business associates who your
12    client says now will not do business with them.
13            MR. FRAY-WITZER:  I will address that, Your Honor.
14            I just want to note that, although Your Honor signed
15    the letters rogatory more than a month ago --
16            THE COURT:  Right.
17            MR. FRAY-WITZER:  -- it was last night at 6:30 that
18    we got the e-mail with the letter saying, yes, they've been
19    FedEx'd to Cyprus.
20            So to the extent that there's been sort of this hue
21    and cry of we've been diligent, we've been diligent, they
22    waited five years since Your Honor issued the Letters Rogatory
23    to even send them to Cyprus.
24            MS. BOLGER:  We've been trying for five weeks, Your
25    Honor.  We didn't wait.  We've been trying.
```

 1            THE COURT:  Okay.  Well, let Mr. Fray-Witzer speak

 2    and then we'll let you respond.

 3            MR. FRAY-WITZER:  Obviously, when you have a report

 4    that is 68 pages but they've said that there were, you know,

 5    so many more pages that they got, it's because we've produced

 6    everything that the expert relied on.  It's all there.

 7            To the extent that there may be some specific

 8    conversations because there are these verbal exchanges that

 9    went on between Mr. Gubarev and people who were saying to him

10    we're cutting off your line of credit, there isn't a document

11    to produce.  There's an easy answer to that:  Depose

12    Mr. Gubarev.

13            We a long time ago said pick any day --

14            THE COURT:  Well, I mean, you don't think that

15    they're entitled to test whether, say, some bank in Amsterdam

16    had a line of credit that they had extended it to

17    Mr. Gubarev?

18            MR. FRAY-WITZER:  Absolutely.  And we have responded

19    to every request for bank information, for addresses, for the

20    names of the banks, for the names of the individuals.  I think

21    there were hundreds of individuals that we've listed in the

22    discovery.

23            And again, to the extent that they believe that there

24    is something that was a verbal communication that hasn't been

25    produced, we said, here are the dates.  Here are the dates for

```
 1    Mr. Gubarev.  We're willing to give you any time in March.  I
 2    think we even offered sort of the end of February.
 3            THE COURT:  It doesn't sound to me that all they're
 4    interested in are verbal communications.  It sounds to me like
 5    they're interested in not taking Mr. Gubarev's word for it but
 6    actually going to the institutions and testing what
 7    Mr. Gubarev claims.
 8            MR. FRAY-WITZER:  And we identified those
 9    institutions first back in October, most of them.  They then
10    came back and said, well, we want addresses.  I'm not sure why
11    you can't find your own address but --
12            THE COURT:  Hold on a minute.  Maybe you identified
13    institutions back in October.  But it was not in the context
14    of this 68-page expert report.
15            MR. FRAY-WITZER:  Absolutely.  But that report was
16    issued, Your Honor, on the date that this Court ordered us to
17    issue it.
18            THE COURT:  I'm not faulting you for that.  But it
19    came out when it came out.  You may have identified the
20    institutions earlier.  What Ms. Bolger is saying, though, is
21    that the institutions aren't necessarily linked up directly to
22    statements in the report.  They need to be linked up and then
23    they need to go test what the expert is saying by speaking to
24    those institutions.
25            Is that unreasonable?
```

1     MR. FRAY-WITZER:  I will say, Your Honor --

2     THE COURT:  Yes.

3     MR. FRAY-WITZER:  -- that we have been told -- and

4  the defendant's are, obviously, free to chase whatever rabbits

5  they want -- we've been told that they're going to get nowhere

6  with their requests to Cyprus because it's not the kind of

7  information that the Cyprian banks will release or verify.

8     THE COURT:  Am I surprised?  No, I am not surprised.

9  But that doesn't mean they shouldn't try.

10    MR. FRAY-WITZER:  No, no, absolutely.

11    But, you know, two months ago they were before you

12 saying we just need another 30 days for the Government.  And

13 then a month ago they just said we need another 30 days for

14 the Government.  Now they're saying we need other three

15 months.

16    But I think it's going to be the same case with the

17 banks, where they say, yes, we said we needed three months.

18 Now we need another three months.

19    There seems to be -- and I don't blame them.  They're

20 chasing down the things that they want to chase down.  But

21 there is a point in time where, even for us, we've been

22 chasing Fusion GPS for over six months right now.

23    If the Court were to say --

24    THE COURT:  Well, I'm going to try to solve that

25 problem for you in some way or the other.

1        MR. FRAY-WITZER:  And we greatly appreciate that.  We

2  were happy that it was -- I mean surprised that after ordering

3  all sorts of briefing, that it got sent here.  But at least

4  it's here where we think it will get addressed.

5        But there is a point in time when you have to say,

6  okay --

7        THE COURT:  You have to convince me of this?  You

8  don't have to convince me of this.  Of course, I understand

9  that.  But, on the other hand, you know, it's an unusual case.

10       MR. FRAY-WITZER:  It is an unusual case.

11       THE COURT:  It's not a slip-and-fall on a cruise

12  ship.  It's not even, you know, an SEC class action.  It's a

13  different kind of case, has a different kind of character, and

14  it has different kinds of characters, and it has a lot of

15  foreign tentacles, and it's something that drives me crazy,

16  frankly, when I have cases involving foreign defendants, for

17  instance, the problems that are encountered in affecting

18  service.  I'm always trying to find ways to pull the plug,

19  frankly, because it can go on interminably.

20       So, you know, you're kind of singing to the choir.

21  But, on the other hand, you know, we have to be realistic.

22       MR. FRAY-WITZER:  I do understand that.

23       Although I will say, Your Honor -- and again, it's

24  obvious that we have our own particular biases -- but we think

25  that a large portion of the third-party discovery that the

1    defendants are trying to take in D.C. is really kind of

2    irrelevant to the case.

3           If you look at the DNC and CrowdStrike, which they

4    didn't mention to you but they've tried to subpoena as well,

5    CrowdStrike is the forensics company that the DNC hired to

6    figure out who committed the attack.

7           Well, CrowdStrike issued a public report, and the

8    public report identifies IP addresses that they say were

9    responsible for the hack.  And guess what, none of them are

10   ours.

11          They want to say, hey, well, look, you know, we don't

12   have to trust that report.  That's true.  But the evidence --

13   and again, I'm starting to go in sort of a tangent.

14          But we learned from news reports last week, as you

15   may have, that apparently the defendants for the last six

16   months have had an international team of former FBI agents

17   trying to figure out if Gubarev, Webzilla and XBT Holdings

18   were responsible for the hack on the Democratic National

19   Committee.

20          We didn't get the name.  We didn't know of the

21   identity.  We didn't know that this investigation --

22          THE COURT:  It's hard to keep up with the news.  Can

23   you just explain to me what you're talking about, because I

24   missed it.

25          MR. FRAY-WITZER:  Last week, Your Honor, there was a

```
 1    news report, a large story in, I believe, Foreign Policy
 2    Magazine --
 3              THE COURT:  Not a publication I read with frequency.
 4    Okay.
 5              MR. FRAY-WITZER:  -- that reported that the
 6    defendants have for the last six months employed former FBI
 7    Agent Anthony Ferrante and his company, FTI, to conduct a
 8    worldwide investigation utilizing a team of former FBI agents
 9    to figure out what information they could get on Gubarev,
10    Webzilla and XBT.
11              We assumed that if there was even --
12              THE COURT:  How did this even get into Foreign
13    Policy?
14              MR. FRAY-WITZER:  I'd love to know.  It was news to
15    us, so it certainly didn't come from us.  That was the first
16    time we've learned about it.
17              THE COURT:  And that's what this article is about?
18              MR. FRAY-WITZER:  Yes.
19              THE COURT:  Or this is an aside in the article?
20              MR. FRAY-WITZER:  No.  That's what this article was
21    about.  It was entirely about the defense team having hired
22    this international group of former FBI agents to investigate
23    whether or not the plaintiffs did what they were alleged to
24    have done in the dossier.
25              We haven't seen a single piece of paper on it.  So I
```

1   can only assume that after six months, an international team

2   of former FBI agents have concluded exactly what we've been

3   saying, which is, it wasn't us, or, at a minimum, they've come

4   up with nothing, because if they had come up with something, I

5   would assume that it would have had to have been produced to

6   us in discovery.

7          Even if you say, well, you know, we've hired people

8   as part of work product, the facts, the facts that those

9   investigators come up with are not privileged, and we haven't

10  gotten a single thing.

11         THE COURT:  And you're not interested in deposing

12  these people?

13         MR. FRAY-WITZER:  We only learned last week because

14  of Foreign Policy reported all of us.  We're very interested

15  in deposing them.  I assume that when I issue the deposition

16  notice, I'm going to hear:  They're our agents; we hired them

17  in the course of the litigation, so on and so forth.

18         I don't think that will necessarily hold up, as I

19  said, with respect to the fact.  But the problem, Your Honor,

20  is I'm going to have to file that subpoena in Washington, DC,

21  where nothing ever seems to get adjudicated when FTI comes in

22  and says we're going to move to quash the subpoena.  I don't

23  want to be in another six-month track where I would --

24         THE COURT:  Wait a minute.  I don't know.  I could

25  see how the defendant could move to quash the subpoena.  But

1  FTI has no privilege.

2      MR. FRAY-WITZER:  I'm sorry.  I'm sort of distracted

3  on that.

4      With respect to the IP addresses that the defendants

5  are complaining about, what was really ordered by the

6  magistrate was that we produce logs -- that's what they asked,

7  logs -- connected to those IP addresses.  And we did.  We

8  produced everything that we had, not as much as they'd like.

9  But it's because they don't exist.  We can't create documents

10 that don't exist, or at least we're not required to.

11     With respect to the reports that we looked into these

12 allegations, we did.  What happened was there was a request

13 from the defendants with respect to certain IP addresses.  We

14 wondered why they were asking about these IP addresses.  We

15 did some research and found these IP addresses were located in

16 some report that talked about some hacking activities

17 unrelated to the DNC hacking.

18     But, in any event, at that point we said to the

19 clients, we'll figure it out.  They looked at it.  They

20 determined that there was absolutely no connection to any of

21 the plaintiffs and issued a report that said that.

22     The idea that we would have somehow suppressed that

23 report or kept it hidden strikes us as sort of silly, because

24 it's helpful to us.  We loved it.  They looked and they said,

25 even the sort of unrelated hacking information, it's just not

```
 1   us.  It's not related to us.  It's a report that, of course,

 2   we wanted to give them as soon as we could and tried to do

 3   just that.

 4          I'm sorry.  I'm looking at my notes for some of the

 5   complaints.

 6          I will note that I'm told that the actual damages

 7   report isn't 68 pages.  It's 15 pages.

 8          The one thing that I guess I want to stress, because

 9   what we are talking about is --

10          THE COURT:  Can I see the damages report?

11          MR. FRAY-WITZER:  Oh, absolutely, Your Honor.  I'd be

12   happy as soon as we're out to --

13          THE COURT:  Okay.

14          MR. FRAY-WITZER:  Yeah.  The rest is exhibits.  We

15   can e-mail it to the Court immediately.

16          THE COURT:  Yeah.  If somebody can just e-mail it to

17   me right now, I'll have my staff print it out.

18          MR. FRAY-WITZER:  Yeah.

19          THE COURT:  I'd like to take a look at it.

20          MR. FRAY-WITZER:  The point, though, from our point

21   of view -- and I understand both that this Court doesn't

22   lightly extend schedules -- we know that from experience.  But

23   the thing that I would make a point of is the damage that is

24   happening to the plaintiffs is ongoing.

25          Two weeks ago, Aleks Gubarev received a phone call
```

1    where he was told again we've just done our internal audits.

2    The case is still open.  The allegations are still out there.

3    There's been no sort of vindication of you.  Our audit

4    committee has decided that we can't take that risk.  We're

5    cutting you off.  The longer that this goes on --

6            THE COURT:  Actually, this is sort an aside, and I'm

7    sorry to do this.  Could you kind of explain to me the XBT and

8    Webzilla business in the sense of who utilizes these servers

9    and where they are?

10           MR. FRAY-WITZER:  So, XBT is sort of the umbrella

11   holding company and there are a number of different subsidiary

12   companies, which is Webzilla, root SA -- I think there's one

13   called Fazi.  And essentially what these companies do is they

14   are cloud storage in the simplest sense and they are utilized

15   primarily by businesses.

16           Their competitors are places like -- Amazon actually

17   has its own cloud storage company.  Google -- they're a

18   website host.

19           THE COURT:  I'm having trouble understanding who they

20   are in the universe of providers of this kind of service and

21   how big their profile is, and are they used by big companies,

22   little companies, companies in Russia.

23           MR. GURVITS:  If I may answer.  I've been working

24   with this company for the past ten years, so I can explain in

25   a little more detail.

1          THE COURT:  Okay.

2          MR. GURVITS:  It is one of top five Internet service

3    providers by size in Europe.  But 40 percent of its business

4    comes from the United States.

5          By contrast, just so you understand, Your Honor, I

6    believe only three percent come from Russia.  This a western

7    company based in Cyprus.

8          THE COURT:  And what percentage of the cloud storage

9    market does it have in the United States?  When I say "it," I

10   mean XBT and its affiliates.

11         MR. GURVITS:  I don't know off the top of my head.

12   But percentage -- worldwide, it has approximately 40,000

13   clients.  So I could, you know, maybe proportionately

14   extrapolate 40 percent of that might be here in the United

15   States.  At least certainly 40 percent of its business or its

16   revenue overall comes from the United States.  And so, you

17   know, it's large.  It's as large as GoDaddy, maybe not.

18         THE COURT:  And is it your position that the

19   plaintiff companies and Mr. Gubarev are experiencing most of

20   the adverse consequences here in the United States?

21         MR. GURVITS:  We believe that they are for the simple

22   reason that it's here in the United States that these lies

23   were published, most of all.  And, of course, being branded

24   essentially KGB spy is something that has a lot of relevance

25   here in the United States.

1           But banks, and especially banks in Europe, are very

2   squeamish about doing business with criminals, and they don't

3   need much of an excuse to say, you know what, our compliance

4   department is just not comfortable with this.  So they refuse

5   banking relationships.

6           What happens then is the company loses its credit

7   lines, and Mr. Gubarev just a few weeks ago was told by yet

8   another one of his personal banks they simply decided to stop

9   doing business with him, which is why there is this sense of

10  urgency for him personally as well as for the company to get

11  to trial.

12          THE COURT:  And the banks cited this case?

13          MR. GURVITS:  They told him this case.

14          The real problem is they don't need to specifically

15  say why.  They don't have to.  His contacts say to him, you

16  know, it's because of this.  But they almost never give you an

17  official letter that says for the following reasons we are

18  terminating the relationship.  They just simply say we've

19  determined --

20          THE COURT:  But then that's exactly why the

21  defendants, you know, should have an opportunity, right, to

22  speak to the banks to find out is this why or is it some other

23  reason.

24          MR. GURVITS:  I understand why they would want that

25  opportunity and I understand why they need to try.  We simply

 1   know that it's futile because the banks don't have to under

 2   applicable law disclose their rationale.

 3            But to the extent that they told their client

 4   point-blank, that's admissible evidence and you can certainly

 5   report that, as we have.

 6            THE COURT:  All right.  Thanks.  Okay.  I'm sorry.  I

 7   just wanted to get a little context.

 8            Okay.  Go ahead.

 9            MR. FRAY-WITZER:  I think the only other two things

10   I'll say, and then whatever the Court still would like to ask

11   about -- you asked a question about whether or not the

12   majority of the damages or how much of the damages were felt

13   in the U.S.  I'll just say there's a single publication rule

14   for defamation cases.  It's not like we get to sue here and

15   then we go to Europe and we sue there.  You sue once and

16   that's all of your damages.

17            And the only other thing that I will point out is

18   that it's been our belief, and it continues to be our

19   belief -- although Judge O'Sullivan said, look, they get to

20   take discovery about this and that's fine -- but it's our

21   belief that there is a fundamental issue that will come before

22   this Court very soon -- maybe we'll bring it in a motion in

23   limine soon -- but the defendants have attempted to confuse

24   the company's clients and the company.

25            And so what they've been saying is, well, our truth

```
 1    defense is geared not at Aleks Gubarev, not at XBT, not at

 2    Webzilla, but their clients, because their argument is, well,

 3    if we as a Web-hosting company had a client who was involved

 4    in the hacking, then it's enough, it's close enough,

 5    essentially.

 6            And when you read what the dossier actually said,

 7    it's not enough.  They accuse Aleks Gubarev of having been a

 8    KGB agent.  That's not the same as saying, well, you have a

 9    company; there's this client --

10            THE COURT:  Well, they're saying that he

11    intentionally made his facilities available to the hackers.

12            MR. FRAY-WITZER:  No.  That isn't, I mean --

13            THE COURT:  No?

14            MR. FRAY-WITZER:  And I'll just read it again.

15            THE COURT:  Okay.  Read it to me again.

16            MR. FRAY-WITZER:  Because I always get brought back

17    to this.

18            First of all, there's a redacted part.  It was

19    redacted originally.  So no one knows who made this

20    allegation.

21            But it says:  Redacted.  Reported that over the

22    period March to September 2016, a company called XBT,

23    Webzilla, and its affiliates had been using botnets and porn

24    traffic --

25            THE COURT:  That is right.  You're right.
```

1     MR. FRAY-WITZER:  And then it also says:  Entities

2  linked to one Aleks Gubarev were involved, and he and another

3  hacking expert both recruited under duress by the FSB were

4  significant players in the operation.

5     THE COURT:  You're right.

6     MR. FRAY-WITZER:  That's not our clients.  That is

7  us.  And so to the extent that the discovery is geared

8  towards, well, maybe we'll find out that one of your clients,

9  unbeknownst to you, had something to do with it, we don't

10  think even that's there.  But that's sort of a red herring

11  that is causing, we would think, more discovery than is

12  necessary.

13     THE COURT:  Well, I guess they would say, well, if

14  Gubarev had an agent that was using botnets and porn to get

15  access to computers, then that would suffice.

16     But I don't know if that's what they're saying.  I

17  mean, they would have to have their own --

18     MR. FRAY-WITZER:  We, of course, say we're sort of

19  like GoDaddy.  You know, GoDaddy registers domains, hosts

20  domains.  If someone is using a domain that GoDaddy is hosting

21  to do something improper, that is not the action of GoDaddy or

22  Jim Parsons.

23     THE COURT:  Well, this kind of goes to this

24  fundamental debate as to what is a Web-hosting service, right,

25  and is it a publisher; is it not a publisher; is it

 1    responsible in some way for the activities of people who

 2    use --

 3              MR. FRAY-WITZER:  Well, the CDA Section 230 would say

 4    that they're absolutely immune from suit on that basis.  If

 5    this was a suit against them for anything that their clients

 6    had published, the CDA is really clear about.

 7              THE COURT:  Right.

 8              MR. FRAY-WITZER:  And I guess the last thing -- I

 9    keep saying "the last thing" and I'm sorry.  The last thing

10    I'll say is a lot of the discovery that you've heard about,

11    the third-party discovery, is an attempt to now figure out if

12    there were investigations that the defendants didn't know

13    about and didn't write about when they actually published the

14    dossier.

15              THE COURT:  But that doesn't seem to be -- I mean, I

16    haven't sorted this out on the fair reporting privilege, you

17    know, at the level that ultimately it will get scrutinized.

18    But this actually is a matter of puzzlement to me at the

19    moment, which is, well, if they didn't know at the time they

20    published it but in fact there was a public investigation,

21    then are they permitted to take advantage of the privilege.

22              And my guess -- but this is just a guess, because I

23    haven't gotten into it -- or at least let me say this.  I

24    don't even want to guess.  I can see the argument.  I don't

25    know how it comes out.

1          MR. FRAY-WITZER:  And I'll just say that there are

2     two answers to that.  The first is, I think that the cases,

3     when they talk about the rationale, are clear that you have to

4     know that you're reporting on an investigation.

5          But even if that wasn't the case, even if you get

6     past that first argument, the second argument, I think, really

7     is clear, which is, you have to be reporting on an

8     investigation.  All the cases talk about that, and they say,

9     even sort of a vague mention that there's an investigation

10    isn't enough.

11         There's nothing in here.  This is simply a, hey, lots

12    of people have seen this, and so you should too.  That's not

13    an investigation.  You know, we think we win at the earlier

14    stages.  But if you get to that stage, we're pretty sure that

15    it knocks out the fair report privilege entirely.

16         If you just look at what they wrote, it's not

17    reporting about an investigation.  What they and try and say

18    is, well, there is a hyperlink to a CNN story, and the CNN

19    story, if you were to have gone there, does say that the FBI

20    is looking into the accuracy of these allegations.

21         And I would maintain that under the cases, you know,

22    even sort of a mention, an actual mention of an investigation

23    as opposed to relying on someone else's passing mention of an

24    investigation, wasn't enough.

25         THE COURT:  All right.  I'm going to give you a brief

```
 1    opportunity to respond, Ms. Bolger, like five minutes and
 2    that's it.
 3              MS. BOLGER:  I understand.
 4              Your Honor, the main thing I want to say is that
 5    we're talking about an extension of discovery.  What plaintiff
 6    didn't deny is that they've dumped a massive amount of
 7    incredibly relevant material on us on February 20th and
 8    February 23rd.  And this internal investigation that they're
 9    boasting about was created.  They had it on September 6th, and
10    I didn't get it until February 20th.
11              And by the way, in this thing, Mr. Gubarev yells at
12    his colleague for not having told him about the investigation
13    earlier but then still didn't get it to me for another five
14    months.  The point is, Your Honor, we just need more time to
15    look at what they gave us.
16              And even their expert report, the sentence, "Their
17    bank accounts in multiple countries were frozen and banks
18    threatened to close their accounts altogether," is cited to a
19    conversation with their CFO.  No listing of banks.
20              Your Honor, the point is, from a discovery point of
21    view, we need more time because of this massive amount of
22    information.
23              THE COURT:  So I'm sorry.  So discovery closes right
24    now March 15th?
25              MS. BOLGER:  Yes, Your Honor.  We asked for June
```

 1    15th.

 2              THE COURT:  Okay.  In the context of this case, with

 3    the foreign discovery, I just don't think it's unreasonable.

 4    I'm going to allow it.  But in the meantime, we're going to

 5    move ahead.  We're going to get these motions resolved as

 6    quickly as possible.

 7              I guess we'll need to move the motion cutoff to a

 8    date that's proportional to what we had before.

 9              MS. BOLGER:  In the interim report, I did propose a

10    schedule for everything, Your Honor.  I'm happy to --

11              THE COURT:  Well, first of all, let me just make sure

12    of something, because one of the problems here is probably me,

13    because my trial orders require you to get together and work

14    out an expert discovery schedule.  And I guess that didn't

15    happen, and in part, I preempted it by making you deliver the

16    damages report by February 20th, which is sort of late in the

17    game.  If you all had gotten together and worked out some kind

18    of expert discovery schedule, that wouldn't have happened.

19              So what other expert discovery is involved here?

20    Because I think maybe we need to nail down the expert

21    discovery deadline.

22              MS. BOLGER:  I agree with that, Your Honor.  If we

23    designate an expert who will talk about whether or not the

24    plaintiffs are involved by the hack, that would be an expert

25    we would contemplate identifying.  We would, obviously,

```
 1   identify that person and make reports available and him or her
 2   available to be deposed.
 3            THE COURT:  Well, when are you going to be in a
 4   position to do that?  We can't just wait forever.  It should
 5   have been done by now really.
 6            MS. BOLGER:  Well, no, Your Honor, it can't be done
 7   by now, because they won't give me information about this --
 8   they didn't give me the information about this entire internal
 9   investigation until February 20th, which has information
10   incredibly relevant to that expert.
11            In addition, Your Honor, I'm waiting for the DNC to
12   get back to me about information that will be relevant to that
13   expert.  But we'd be happy to disclose the expert two weeks
14   after the close of fact discovery or a month after the close
15   of fact discovery.  You know, we haven't talked about that.
16            THE COURT:  Well, now we're talking about a fact
17   discovery close date and then an expert discovery close date.
18   Now it's getting too protracted.
19            So I'm sorry.  Tell me again what the status is of
20   the DNC subpoena litigation.
21            MS. BOLGER:  The briefing will be complete on March
22   23rd.
23            THE COURT:  All right.  So, in the hopes it will not
24   have to be adjusted again, I'm just going to set an expert
25   disclosure deadline of May 18th.
```

```
 1              So are you done with your experts, Mr. Fray-Witzer,
 2    or not?
 3              MR. FRAY-WITZER:  There is a possibility of just one
 4    other expert.  We are contemplating whether or not it will be
 5    helpful to have an expert on journalistic ethics to --
 6              THE COURT:  And when are you going to be ready to
 7    disclose that report?  When are you going to be prepared to
 8    issue a report, the Rule 26 expert report?
 9              MR. FRAY-WITZER:  We'd be happy to have -- I'm
10    sorry.  Did Your Honor just say you're setting a May 18th
11    deadline for --
12              THE COURT:  Well, I was thinking about that.  But
13    then I thought maybe I should ask you what is your plan here.
14    It will be better if it were earlier.
15              MR. FRAY-WITZER:  Yes.  And we don't need that long,
16    certainly.
17              THE COURT:  So how about by April 13th?
18              MR. FRAY-WITZER:  That would be fine, Your Honor, for
19    all experts.
20              THE COURT:  I'm going to set an expert disclosure
21    deadline of May 18th for the defendants.
22              MS. BOLGER:  Your Honor, just in the interest of full
23    disclosure -- because I don't want to mislead you at all -- we
24    would also probably have a damages expert.  We would do that
25    disclosure then.  I just didn't want to mislead you about
```

```
 1    there only being one expert.

 2              THE COURT:  All right.  That's fine.

 3              And we'll go ahead and cut off all discovery June

 4    15th.

 5              Now, you can adjust, between the two of you, these

 6    expert deadlines.  I have no problem with it.  What's

 7    important to me is that the discovery come to an end by June

 8    15th one way or the other.  So, hopefully, you'll cooperate

 9    with each other.

10              It does seem like the discovery -- whether there's

11    been a lack of diligence or not, I can't tell right now.  But,

12    you know, it does seem like it's coming in drips and drabs,

13    even between the two of you.  What's important to me is that

14    all the discovery be done by June 15th.  And then we're going

15    to set a motion deadline of July 20th.  All right.

16              But in the meantime, we have the motion for judgment

17    on the pleadings.  We'll just move ahead with that, and we're

18    going to move ahead with the Fusion GPS issues.

19              MR. FRAY-WITZER:  Your Honor, we had previously

20    scheduled mediation for March 13th.  That was done under the

21    assumption that discovery would have been complete by then.  I

22    don't think that it makes sense to have a March 13th

23    mediation.

24              MS. BOLGER:  I told you that I'd be happy to reset.

25              MR. FRAY-WITZER:  Yeah.  But we would need an order
```

 1   from the Court enabling us to reset --

 2          THE COURT:  Well, I'd like you to mediate around the

 3   time of the close of discovery.  So I would hope you would

 4   mediate before the end of June.

 5          MR. GURVITS:  Your Honor, we were hoping that the

 6   mediation would be scheduled at the same time that Mr. Gubarev

 7   would be here in Miami for his deposition, so that he wouldn't

 8   have to come back.  So that's why we were asking for his

 9   deposition to take place around March 13th.  So we well try,

10   with the Court's permission, to schedule both at the same

11   time.

12          THE COURT:  Well, right now I'm just going to order

13   you to mediate by June 20th.  You know, I'm not that concerned

14   about making Mr. Gubarev come back to Miami.  It really isn't

15   that much of a problem.

16          Okay.  Yes.

17          MS. BOLGER:  Just in the interest of lack of

18   confusion, Your Honor, there are in the current scheduling

19   order dates for Daubert motions, motions in limine, pretrial

20   stip and trial, and I proposed new dates for those.  And I

21   wondered if we should -- I think we should, hopefully, try to

22   clear that up so we don't have confused dates.

23          THE COURT:  Okay.  We will work on it.  We'll get you

24   a new order.  Okay?

25          MR. FRAY-WITZER:  Thank you.

```
1              MR. BLACK:  Thank you, Your Honor.

2              THE COURT:  All right.  Anything else you want to

3    talk about?

4              MS. BOLGER:  May I just hand up these letters of

5    request to have you sign?

6              THE COURT:  Yes.

7              And could somebody go print out this expert report

8    that was emailed here, please.

9              MR. FRAY-WITZER:  It has been e-mailed.

10             THE LAW CLERK:  To which e-mail address?

11             MR. FRAY-WITZER:  I'm told it was sent to

12   ungaro@flsd.uscourts.gov.

13             THE COURT:  Okay.  So can I just ask, what has been

14   the delay in the transmission of these requests?

15             MS. BOLGER:  Very honestly, Your Honor, we hired some

16   lawyers who gave us the wrong advice and we had some false

17   starts and we have --

18             THE COURT:  Lawyers in Cyprus.

19             MS. BOLGER:  Yes, ma'am.  And we fixed the problem.

20   I mean, it took the plaintiff four months to serve theirs.  So

21   the irony is rich.  But that is what happened, Your Honor, is

22   that I ran into some bad advice in Cyprus.

23             MR. FRAY-WITZER:  We're not asking for a delay.

24             THE COURT:  What did you say?

25             MR. FRAY-WITZER:  We may have been slow in getting
```

1    our requests served in London.  But we're not asking for a

2    delay as a result of that.  We have to bear the burden on

3    that.

4             THE COURT:  What is going on with Mr. Steele?

5    Because we never talked about that.

6             MR. FRAY-WITZER:  Yeah.

7             MS. BOLGER:  We'll have an answer soon, I think, Your

8    Honor.

9             MR. FRAY-WITZER:  That is our understanding.  The

10   matter was argued to the courts in London three weeks ago.

11            MS. BOLGER:  On February 5th.

12            MR. FRAY-WITZER:  And our understanding is that we're

13   talking about any day now there will be some sort of order

14   from the courts as to whether or not Mr. Steele will be

15   required to sit for his deposition.

16            THE COURT:  And how will I get notice of that?

17            MR. FRAY-WITZER:  We would be happy to notify the

18   Court.

19            THE COURT:  Okay.  Just file something in the court

20   record, like a notice or something.

21            MR. FRAY-WITZER:  Okay.

22            THE COURT:  I'd love to see the opinion of the court

23   in London.

24            MR. FRAY-WITZER:  Absolutely, Your Honor.

25            THE COURT:  Okay.  All right.  Anything else?

1          I want you to hang around for a minute or two while I

2    look at this expert report.  Okay?

3          MR. FRAY-WITZER:  Yes, Your Honor.

4          THE COURT:  So you may or may not see me again.  But

5    if you don't, thank you for coming in.  It was helpful.

6          MR. FRAY-WITZER:  Thank you, Your Honor.

7          (Recessed at 12:31 p.m.)

8          (Resumed at 12:37 p.m.)

9          THE COURT:  Have a seat.

10         So I just skimmed the damages report.  Really, I just

11   skimmed it, obviously.  Right.  I was out of the courtroom

12   five minutes.

13         So it looks to me like the report just basically

14   says, look, there was a dip in revenues and we're attributing

15   it to the publication of the defamatory article.  And so we're

16   not saying there was any particular lost revenue, that there

17   was, for instance, a bank that cut us off because of the

18   defamatory article.  We're just saying revenues dipped.  It

19   must be because of the article.  Is that right?

20         MR. GURVITS:  Yes, Your Honor.

21         THE COURT:  Okay.  And so there's this underlying

22   causation assumption that I suppose the defendants want to

23   test.

24         MS. BOLGER:  Yes, Your Honor.

25         THE COURT:  Okay.  I just want to make sure I

1    understood that.

2          Okay.  Fine.  All right.  Thank you.  We'll get you a

3    new order.

4          MS. BOLGER:  Thank you, Your Honor.

5          MR. GURVITS:  Thank you, Your Honor.

6          (Recessed at 12:39 p.m.)

7      *    *    *    *    *    *    *    *    *    *

8                    C E R T I F I C A T E

9

10       I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

a.m 1:7
able 11:8,19,20 18:1
above-entitled 46:11
absolutely 7:16 20:18
  21:15 22:10 27:20
  28:11 35:4 44:24
abuse 10:5
accept 3:15
access 34:15
accounts 8:4,4,6 37:17
  37:18
accuracy 36:20
accuse 33:7
action 23:12 34:21
activities 10:6 27:16
  35:1
actual 28:6 36:22
addition 7:25 8:12 18:5
  39:11
additional 4:25 5:16
  18:23
address 3:17 4:19,20
  19:8,13 21:11 43:10
addressed 23:4
addresses 9:12,13,21,22
  10:5 20:19 21:10 24:8
  27:4,7,13,14,15
addressing 6:1 19:9
adjudicated 26:21
adjust 41:5
adjusted 39:24
admissible 14:5 32:4
advantage 35:21
adverse 30:20
advice 43:16,22
affidavit 5:11 15:14,15
affiliate 10:25
affiliates 10:24 30:10
  33:23
agent 25:7 33:8 34:14
agents 24:16 25:8,22
  26:2,16
ago 19:15 20:13 22:11
  22:13 28:25 31:7
  44:10
agree 38:22
agreed 3:15 4:15 14:20
agreeing 15:1
ahead 7:5 32:8 38:5 41:3
  41:17,18
al 1:3,6 2:12
Aleks 28:25 33:1,7 34:2
ALEKSEJ 1:3
alerts 10:6
allegation 9:10 33:20
allegations 27:12 29:2
  36:20
alleged 25:23
allow 38:4
altogether 37:18
Amazon 29:16
amend 3:23 4:9 5:4,19
amended 4:4
America 11:16
Americas 2:6
amount 18:25 37:6,21
Amsterdam 17:25 18:2
  20:15
Ana 12:20
analogy 16:4
and- 2:7
Anderson 8:20
answer 4:4,10,16 6:17
  20:11 29:23 44:7

answers 36:2
Anthony 25:7
anybody 18:7
apologize 10:1
apparently 24:15
appear 3:5
APPEARANCES 1:14
  2:1
applicable 32:2
application 13:23 15:8
apply 4:7
appreciate 23:1
appropriate 5:9,25
approved 15:6
approximately 30:12
April 13:3,4 40:17
area 17:11
argued 44:10
arguing 14:3
argument 5:22 13:15
  33:2 35:24 36:6,6
arguments 15:12 16:16
arms 8:10
article 25:17,19,20 45:15
  45:18,19
aside 25:19 29:6
asked 6:15 9:15 10:20,25
  12:14 14:1 16:3,22
  18:6 27:6 32:11 37:25
asking 16:5 18:23 27:14
  42:8 43:23 44:1
asserted 4:1
associated 9:12
associates 19:11
associational 16:14
assume 26:1,5,15
assumed 8:22 25:11
assumption 41:21 45:22
astronomical 8:8
attack 24:6
attempt 35:11
attempted 32:23
attributing 45:14
audit 29:3
audits 29:1
available 33:11 39:1,2
Avenue 1:21,24 2:6,8

**B**

back 10:3 15:2,14 21:9
  21:10,13 33:16 39:12
  42:8,14
bad 43:22
bank 20:15,19 37:17
  45:17
banking 31:5
banks 8:3,4,5 17:15,24
  17:24,25 18:12 19:11
  20:20 22:7,17 31:1,1,8
  31:12,22 32:1 37:17
  37:19
based 30:7
basically 15:13 45:13
basis 8:2 16:9,10 35:4
Beacon 1:16
bear 44:2
belief 32:18,19,21
believe 20:23 25:1 30:6
  30:21
better 40:14
Bezruchenko 12:16
biases 33:24
bifurcation 18:7,13
big 29:21,21
Biscayne 2:3

bit 15:19 18:3
Black 2:2,2 3:10,10 43:1
blame 22:19
boasting 37:9
Bolger 2:5 3:8,8 4:24
  5:11,17 6:10,13,15,23
  7:6,15 8:17,20,22 9:1
  9:6,8 10:1,18,22 11:5
  11:7 12:5 13:9,14
  14:16 15:19 16:2,10
  16:19,22 17:2,11 18:8
  18:13 19:24 21:20
  37:1,3,25 38:9,22 39:6
  39:21 40:22 41:24
  42:17 43:4,15,19 44:7
  44:11 45:24 46:4
Boston 1:15,19
botnets 33:23 34:14
Boulevard 2:3
branded 30:23
brief 5:19 36:25
briefed 14:9
briefing 14:19 23:3
  39:21
bring 32:22
brought 33:16
Brussels 11:2,2 12:12,19
  13:5
burden 15:14,15 44:2
business 19:11,12 29:8
  30:3,15 31:2,9
businesses 29:15
Buzzfeed 1:6 2:12 7:21

**C**

C 46:8,8
call 2:10 5:21 12:23,23
  28:25
called 17:7 29:13 33:22
carefully 5:3
case 1:2 2:11 4:2 7:11,19
  9:9 22:16 23:9,10,13
  24:2 29:2 31:12,13
  36:5 38:2
cases 23:16 32:14 36:2,8
  36:21
catching 3:21
categories 14:1,13
causation 45:22
causing 34:11
CDA 35:3,6
Centre 1:17
certain 12:11 27:13
certainly 4:11 25:15
  30:15 32:4 40:16
certify 46:10
CFO 8:7 12:15 37:19
changed 13:23,24 15:22
character 13:23,25
  23:13
characters 23:14
chase 22:4,20
chasing 22:20,22
choir 23:20
chosen 8:23
CIAMPA 1:18
cite 8:6
cited 31:12 37:18
claims 21:7
class 23:12
clear 13:21 17:18 35:6
  36:3,7 42:22
cleared 10:14
clearly 11:7,16,18
CLERK 43:10

client 19:12 32:3 33:3,9
clients 27:19 30:13 32:24
  33:2 34:6,8 35:5
close 8:4 33:4 37:18
  39:14,14,17,17 42:3
closes 37:23
cloud 29:14,17 30:8
CNN 36:18,18
COBB 1:20
colleague 37:12
come 25:15 26:3,4,9 30:6
  32:21 41:7 42:8,14
comes 3:16,16 26:21
  30:4,16 35:25
comfortable 31:4
coming 41:12 45:5
committed 24:6
committee 24:19 29:4
communication 20:24
communications 21:4
companies 29:12,13,21
  29:22,22 30:19
company 17:7 24:5 25:7
  29:11,17,24 30:7 31:6
  31:10 32:24 33:3,9,22
company's 32:24
compel 13:17 16:7,15,16
competitors 29:16
complaining 27:5
complaints 28:5
complete 10:2 39:21
  41:21
compliance 31:3
compromise 16:14
computers 34:15
concerned 42:13
concerns 15:23
concluded 26:2
conduct 25:7
conference 1:10 3:12
confirm 18:1
confirming 14:7,8,10
  15:9
confuse 32:23
confused 42:22
confusion 42:18
connected 27:7
connection 4:5 27:20
consequences 30:20
contacted 9:19 14:20
contacts 31:15
contained 4:4 5:22 8:13
contemplate 38:25
contemplating 45:4
contends 4:6
context 21:13 32:7 38:2
continued 1:22 2:1
continues 32:18
contrast 30:5
conversation 8:7 37:19
conversations 20:8
convince 23:7,8
cooperate 41:8
copy 14:8
correct 46:10
correspondence 3:25
  4:15
counsel 10:12 14:22,23
countries 37:17
course 4:2 13:20 23:8
  26:17 28:1 30:23
  34:18
court 1:1,24 2:10,11,11
  2:18,21 3:1,11 4:13,18
  5:2,14,23,25 6:5,11,14
  6:21,25 7:2,14 8:15,19
  8:21,25 9:4,7,23 10:17
  10:21 11:4,6,25 13:7
  13:12 14:14 16:1,9,17
  16:18,21,25 17:10
  18:7,9,15,20 19:8,16
  20:1,14 21:3,12,16,18
  22:2,8,23,24 23:7,11
  24:22 25:3,12,17,19
  26:11,24 28:10,13,15
  28:16,19,21 29:6,19
  30:1,8,18 31:12,20
  32:6,10,22 33:10,13
  33:15,25 34:5,13,23
  35:7,15 36:25 37:23
  38:2,11 39:3,16,23
  40:6,12,17,20 41:2
  42:1,2,12,23 43:2,6,13
  43:18,24 44:4,16,18
  44:19,19,22,22,25
  45:4,9,21,25
Court's 42:10
courtroom 45:11
courts 44:10,14
CPA 9:4,6
crazy 23:15
create 27:9
created 37:9
credit 20:10,16 31:6
creditors 31:1
criminals 31:2
cross-examine 11:8,20
CrowdStrike 24:3,5,7
CRR 1:23
cruise 23:11
cry 37:21
current 42:18
cut 41:3 45:17
cutoff 6:24 18:21 38:7
cutoffs 18:22
cutting 20:10 29:5
Cyprian 22:7
Cyprus 12:12,24 17:15
  17:19,20 19:6,19,23
  22:6 30:7 43:18,22

**D**

D.C 3:15 16:17,19 17:11
  17:11 24:1
damage 8:23 28:23
damages 7:12,13,15,17
  7:20 8:8,11 9:1,8 12:7
  17:23 18:9,10 28:6,10
  32:12,12,16 38:16
  40:24 45:10
date 14:10 21:16 38:8
  39:17,17
dates 13:3 20:25,25
  42:19,20,22
Daubert 42:19
DAVIS 2:5
day 11:24 20:13 44:13
days 8:10 12:6 18:24,24
  19:1 22:12,13
DC 2:9 26:20
deadline 12:3 13:8 38:21
  39:25 40:11,21 41:15
deadlines 41:6
debate 34:24
December 14:12
decided 29:4 31:8
defamation 9:9 11:11
  32:14
defamatory 45:15,18
defeat 4:6

defend 6:18
defendant 26:25
defendant's 22:4
defendants 1:7 2:2 19:5
  23:16 24:1,15 25:6
  27:4,13 31:21 32:23
  35:12 40:21 45:22
defense 3:7,24 4:6 10:9
  25:21 33:1
degree 19:9
delay 43:14,23 44:2
deliver 38:15
Democratic 13:21 24:18
deny 4:18 37:6
department 14:11 31:4
depose 10:20 11:1 13:3,4
  20:11
deposed 39:2
deposing 26:11,15
deposition 11:2,3 12:1,9
  12:22,25 26:15 42:7,9
  44:15
depositions 12:6,13
designate 38:23
despite 7:18
detail 29:25
determined 14:4 27:20
  31:19
Devin 13:20
different 23:13,13,14
  29:11
diligence 41:11
diligent 19:21,21
diligently 19:7
dip 45:14
dipped 45:18
direct 15:21
directions 17:19
directly 21:21
disclose 32:2 39:13 40:7
disclosure 39:25 40:20
  40:23,25
disclosures 12:7,21
discovery 2:24 6:8,23
  7:13 12:3 13:7 17:23
  18:5,10,21,22 20:22
  23:25 26:6 32:20 34:7
  34:11 35:10,11 37:5
  37:20,23 38:3,14,18
  38:19,21 39:14,15,17
  39:17 41:3,7,10,14,21
  42:3
disputes 4:22 5:7
distracted 27:2
district 1:1,1,12 3:15
  16:17,19
DNC 16:2,3 24:3,5 27:17
  39:11,20
document 7:10 8:12 9:18
  10:16 20:10
documents 9:15 13:22
  27:9
doing 11:9 31:2,9
domain 34:20
domains 34:19,20
donors 16:14
dossier 7:20,22 9:20
  10:23 14:8,9 25:24
  33:6 35:14
drabs 41:12
drafted 18:3
drips 41:12
driven 8:5
drives 23:15
due 16:23,24

dumped 37:6
duress 34:3
Dvas 12:17
Dylan 1:21 2:17

E
E 2:2 46:8,8
e-mail 19:18 28:15,16
  43:10
e-mailed 43:9
earlier 21:20 36:13
  37:13 40:14
easy 20:11
EDDY 1:20
either 6:18
election 9:14
else's 36:23
emailed 43:8
employed 25:6
enabling 42:1
encountered 23:17
entire 7:20 39:8
entirely 25:21 36:15
Entities 44:1
entitled 20:15
especially 31:1
ESQ 1:15,16,18,21 2:2,5
  2:8
essentially 4:14 5:20
  14:4 29:13 30:24 33:5
establish 17:5
et 1:3,6 2:12
ethics 40:5
Europe 30:3 31:1 32:15
Evan 1:18 2:14
event 27:18
evidence 24:12 32:4
exactly 26:2 31:20
example 8:2
exchanges 20:8
excuse 31:3
exhibits 8:18 28:14
exist 27:9,10
experience 28:22
experiencing 30:19
expert 8:2,16,19,24 9:2
  18:11 19:9,10 20:6
  21:14,23 34:3 37:16
  38:14,18,19,20,23,24
  39:10,13,13,17,24
  40:4,5,8,20,24 41:1,6
  43:7 45:2
expertise 9:4
experts 40:1,19
explain 6:19 24:23 29:7
  29:24
explicit 13:24 15:11
extend 6:15 12:3 18:21
  18:22 28:22
extended 20:16
extending 6:23
extension 16:22 18:6
  37:5
extent 2:24 19:20 20:7
  20:23 32:3 34:7
extra 4:8 6:6
extrapolate 30:14

F
F 46:8
face 19:3
faced 8:8
facilities 33:11
fact 4:6,21,21 5:13 7:18

9:14 13:24 17:6 18:25
  26:19 35:20 39:14,15
  39:16
facts 4:23 5:7,21,21
  14:15 15:5 26:8,8
factual 5:7
fail 18:18
fair 16:16 36:15
fairly 15:21
faith 4:22
false 43:16
far 10:1
faulting 21:18
Fazi 29:13
FBI 14:8 24:16 25:6,8,22
  26:2 36:19
FCRR 1:23
February 1:7 6:12 7:9
  8:13 9:17 10:7,10,13
  11:14 12:7,8 13:18
  21:2 37:7,8,10 38:16
  39:9 44:11
FedEx'd 19:19
feel 5:15
felt 16:16 32:12
Ferrante 35:7
figure 9:2 11:17,18
  12:19 24:6,17 25:9
  27:19 35:11
figures 11:12 17:6
file 5:11 26:20 44:19
filed 3:19,24 5:19
financials 7:24
find 7:3 21:11 23:18
  31:22 34:8
fine 5:23 6:5 32:20 40:18
  41:2 46:2
finish 19:1
firm 11:15,23 17:14
firms 17:4
first 7:6,12 9:18 10:11
  11:14 12:6 15:8 21:9
  25:15 33:18 36:2,6
  38:11
five 8:10 14:4 19:22,24
  30:2 37:1,13 45:12
fixed 43:19
Floor 2:6
Florida 1:1,6,22,25 2:4
  12:11,17
flux 15:19
focus 7:6
folk 7:8
follow 11:7,19
following 12:14 31:17
forego 12:22
foregoing 46:10
foreign 18:12 23:15,16
  25:1,12 26:14 38:3
forensics 24:5
forever 39:4
form 14:5
former 24:16 25:6,8,22
  26:2
Fort 1:22
forth 10:3 26:17
found 10:5,7,10 12:18
  27:15
four 3:2 8:10 43:20
frankly 23:16,19
Fray-Witzer 1:18,18
  2:14,15 4:14,17 6:3,4
  6:25 7:1 18:17 19:4,13
  19:17 20:1,3,18 21:8
  21:15 22:1,3,10 23:1

23:10,22 24:25 25:5
  25:14,18,20 26:13
  27:2 28:11,14,18,20
  29:10 32:9 33:12,14
  33:16 34:1,6,18 35:3,8
  36:1 40:1,3,9,15,18
  41:19,25 42:25 43:9
  43:11,23,25 44:6,9,12
  44:17,21,24 45:3,6
free 22:4
frequency 25:3
Friday 7:11,25
froze 8:3
frozen 37:17
FSB 34:3
FTI 25:7 26:21 27:1
full 40:22
Fulop 1:21 2:17,17
fundamental 32:21
  34:24
further 6:20
Fusion 3:15 22:22 41:18
futile 32:1
future 16:13

G
G 1:23
game 38:17
geared 33:1 34:7
gentleman 10:18 12:19
getting 12:7 17:18 39:18
  43:25
give 16:11,12 21:1 28:2
  31:16 36:25 39:7,8
glaring 8:1
go 7:5 11:2 12:24 15:2
  15:14 18:22 21:23
  23:19 24:13 32:8,15
  41:3 43:7
GoDaddy 30:17 34:19
  34:19,20,21
goes 29:5 34:23
going 3:13 4:18 6:8 7:13
  9:2 12:3,4 13:5 15:17
  17:17 18:10 19:2 21:6
  22:5,16,24 26:16,20
  26:22 36:25 38:4,4,5
  39:3,24 40:6,7,20
  41:14,18 42:12 44:4
good 2:11,14 3:10,11
  4:22
Google 29:17
gotten 26:10 35:23 38:17
Gottridge 10:19
Government 13:13,15
  13:16,22,23 14:2 15:8
  15:10,11,22,25 22:12
  22:14
Government's 15:12
GPS 3:16 22:22 41:18
grant 19:2
Grassley 13:20
grateful 17:20
Great 9:10
greatly 23:1
group 1:15 25:22
Gubarev 1:3 2:12 12:15
  12:20 14:12 20:9,12
  20:17 21:1,7 24:17
  25:9 28:25 30:19 31:7
  33:1,7 34:2,14 37:11
  42:6,14
Gubarev's 12:1 21:5
guess 13:2 15:3 24:9
  28:8 34:13 35:8,22,22

35:24 38:7,14
Gurvits 1:15 2:16,16,23
  29:23 30:2,11,21
  31:13,24 42:5 45:20
  46:5
guy 3:3

H
hack 16:4,11,13 24:9,18
  38:24
hackers 33:11
hacking 10:6 27:16,17
  27:25 33:4 34:3
hand 23:9,21 43:4
handed 14:7
hang 45:1
happen 38:15
happened 27:12 38:18
  43:21
happening 9:3 28:24
happens 31:6
happy 4:11 23:2 28:12
  38:10 39:13 40:9
  41:24 44:17
hard 17:18 24:22
hate 6:7
head 30:11
hear 7:2 18:15,19 26:16
heard 10:18,25 35:10
hearing 13:17,19 17:16
help 17:5
helpful 27:24 40:5 45:5
helps 6:5
herring 34:10
hey 24:11 36:11
hidden 27:23
hired 17:5 24:5 25:21
  26:7,16 43:15
hit 14:24
Hogan's 8:23
hold 21:12 26:18
holding 29:11
Holdings 24:17
honestly 11:19 43:15
Honor 2:14,20 3:8,9
  4:11,17,24 5:12,13 6:4
  6:10,13,16,17,24 7:9
  7:15,19,25 8:11,17,24
  9:6,17 10:1,11 11:5,11
  11:19,22 12:13 13:1
  13:11,14 15:21,25
  16:3,10,15 17:2,12,16
  17:22 18:4,14,17 19:4
  19:13,14,22,25 21:16
  22:1 23:23 24:25
  26:19 28:11 30:5 37:4
  37:14,20,25 38:10,22
  39:6,11 40:10,18,22
  41:19 42:5,18 43:1,15
  43:21 44:8,24 45:3,6
  45:20,24 46:4,5
HONORABLE 1:11
hope 42:3
hopeful 17:9
hopefully 41:8 42:21
hopes 39:23
hoping 42:5
host 29:18
hosting 34:20
hosts 34:19
How's 5:16
hue 19:20
huge 18:24
Hulk 8:23
hundreds 20:21

hyperlink 36:18

**I**

idea 27:22
identification 4:5
identified 21:8,12,19
identifies 24:8
identify 5:6 39:1
identifying 38:25
identity 19:10 24:21
ill-prepared 6:8
immediately 28:15
immune 35:4
impasse 14:24
important 17:1 41:7,13
improper 34:21
inaudible 15:18
inconceivable 8:13
incredibly 37:7 39:10
individuals 20:20,21
information 5:16 8:9,13
  10:8 14:1 16:11,12
  17:1 18:1,3 20:19 22:7
  25:9 27:25 37:22 39:7
  39:8,9,12
initial 12:21
initially 17:7
instance 23:17 45:17
institutions 21:6,9,13,20
  21:21,24
intended 12:22
intending 12:23
intentionally 33:11
interest 40:22 42:17
interested 21:4,5 26:11
  26:14
interesting 13:17
interim 6:16 13:16 38:9
interminably 23:19
internal 10:14,17 29:1
  37:8 39:8
internally 18:14
international 24:16
  25:22 26:1
Internet 30:2
interview 10:12
investigate 25:22
investigation 9:21,24,25
  10:4,14,17 24:21 25:8
  35:20 36:4,8,9,13,17
  36:22,24 37:8,12 39:9
investigations 35:12
investigators 26:9
involved 9:13 33:3 34:2
  38:19,24
involvement 18:12
involving 23:16
IP 9:12,13,20 10:5 24:8
  27:4,7,13,14,15
irony 43:21
irrelevant 24:2
irritating 3:2
issue 5:8 9:10 18:20
  21:17 26:15 32:21
  40:8
issued 11:23 19:5,22
  21:16 24:7 27:21
issues 4:6,21,21 5:13
  14:6 41:18

**J**

Jackson 16:20
January 14:9
Jim 34:22

journalistic 40:5
Judge 1:12 3:14 9:12,15
  13:24 14:2 15:2,10,21
  16:20,20 32:19
judgment 4:19 5:5,9,20
  6:1 41:16
July 41:15
June 6:24 37:25 41:3,7
  41:14 42:4,13
Justice 14:11

**K**

Katherine 2:5 3:8
keep 24:22 35:9
kept 27:23
KGB 30:24 33:8
kglobal 17:7
kind 22:6 23:13,13,20
  24:1 29:7,20 34:23
  38:17
kinds 23:14
knocks 36:15
know 3:20 5:2,15,16
  6:25 8:10 10:6,15 11:9
  12:2 14:24 15:5 17:1
  17:21 18:20 19:5 20:4
  22:11 23:9,12,20,21
  24:11,20,21 25:14
  26:7,24 28:22 30:11
  30:13,17 31:3,16,21
  32:1 34:16,19 35:12
  35:17,19,25 36:4,13
  36:21 39:15 41:12
  42:13
knows 33:19
KORNSPAN 2:2

**L**

lack 41:11 42:17
lacking 8:9
large 23:25 25:1 30:17
  30:17
late 38:16
Lauderdale 1:22
law 1:15 32:2 43:10
lawyers 3:2 43:16,18
layer 4:8 6:6
learned 9:18 11:14 17:14
  24:14 25:16 26:13
leave 5:14,19
left 15:14 16:5
lengthy 3:21
letter 13:21 18:2 19:18
  31:17
letters 17:14 19:6,15,22
  43:4
level 35:17
Liability 18:9
lies 30:22
lightly 28:22
likes 4:22
limine 32:23 42:19
line 20:10,16
lines 31:7
linked 7:21 21:21,22
  34:2
list 14:3
listed 5:12 9:13 12:20
  20:21
listen 3:1,4
listing 37:19
literally 7:9 15:6
litigation 4:9 6:18 26:17
  39:20

little 3:22 6:20 15:19
  17:25 29:22,25 32:7
live 4:1
lives 10:19
LLC 2:5
LLP 1:18
located 17:10 27:15
logs 27:6,7
London 44:1,10,23
long 8:16 20:13 40:15
longer 29:5
look 9:2 10:8 24:3,11
  28:19 32:19 36:16
  37:15 45:2,14
looked 5:2 27:11,19,24
looking 3:18 28:4 36:20
looks 4:22 45:13
loses 31:6
lost 45:16
lot 2:23 18:4,17 23:14
  30:24 35:10
lot's 3:13
lots 36:11
love 25:14 44:22
loved 27:24
Luchian 12:16
Luxembourg 9:19,23
  10:3,19

**M**

M 1:21 2:5
ma'am 43:19
Magazine 25:2
magistrate 9:11 27:6
main 37:4
maintain 36:21
majority 32:12
making 38:15 42:14
Marc 10:19
March 6:10,11 12:6,11
  12:14 13:2,5 15:2,16
  15:16 16:23,24 39:21
  33:22 37:24 39:21
  41:20,22 42:9
market 30:9
Massachusetts 1:17,19
massive 37:6,21
material 37:7
matter 35:18 44:10
  46:11
matters 4:3,4
MATTHEW 1:16
Mayor 12:15
McCain 14:7,19 15:6
McCain's 14:20
McFadden 3:14
mean 4:25 5:18 18:8,9
  18:20 20:14 22:9 23:2
  30:10 33:12 34:17
  35:15 43:20
meaningfully 11:8,20
meddling 9:14
mediate 42:2,4,13
mediation 41:20,23 42:6
meet 11:1
meeting 13:15
Mehta 13:24 14:2 15:2
  15:10,21 16:20
members 16:15
memo 13:20 14:4,12
  15:10,13,22,24
mention 10:11 11:22
  24:4 36:9,22,22,23
mentioned 14:12 17:22
Miami 1:6,24,25 2:4

42:7,14
mildly 17:19
million 7:16,17
minimal 9:21,24,24
minimally 15:1
minimum 26:3
minute 21:12 26:24 45:1
minutes 37:1 45:12
mislead 40:23,25
missed 24:24
modified 14:23
moment 8:15 35:19
month 19:15 22:13
  39:14
months 6:24 22:11,15,17
  22:18,22 24:16 25:6
  26:1 37:14 43:20
moot 4:19
morning 2:11,14 3:10,11
motion 3:16,23 4:9,18,19
  5:4,5,8,19,20 6:1
  13:17 14:3 16:7 19:2,3
  32:22 38:7 41:15,16
motions 3:18 18:22 38:5
  42:19,19
move 7:7 26:22,25 38:5
  38:7 41:17,18
moved 16:7,15
moving 19:6
multiple 37:17

**N**

nail 38:20
name 3:15 10:19 17:24
  24:20
names 20:20,20
naming 8:5,6
Nathan 2:8 3:9
National 24:18
necessarily 21:21 26:18
necessary 2:22 4:10
  34:12
need 3:2,23 4:25 5:7,16
  6:18 7:6,7 9:1 10:7
  11:7,8,9,19 13:10,11
  18:3 21:22,23 22:12
  22:13,14,18 31:3,14
  31:25 37:14,21 38:7
  38:20 40:15 41:25
needed 22:17
needs 3:5
negotiating 18:9
never 10:18,25 11:5
  31:16 44:5
new 2:7,7 42:20,24 46:3
news 11:18 24:14,22
  25:1,14
Newton 1:17
nice 11:6
Nick 12:17
night 7:25 19:17
nine 7:25 14:1
North 1:24
Northeast 1:21
note 19:14 28:6
notes 28:4
notice 26:16 44:16,20
notify 44:17
number 29:11
numbers 8:22
Nunes 13:20,20 14:4
  15:13,22,24

**O**

o'clock 7:25
O'Sullivan 9:11,12,15
  32:19
Obama 14:8,19,25
objected 17:7
obvious 23:24
obviously 9:9,14 10:7
  11:12 20:3 22:4 38:25
  45:11
October 9:16 21:9,13
offered 21:2
office 14:20
official 1:24 31:17
oh 10:11 28:11
okay 3:11,25 4:13,18
  5:14,23 6:2,11,21 7:3
  7:5,14 8:25 9:7 16:25
  18:15 20:1 23:6 25:4
  28:13 30:1 32:6,8
  33:15 38:2 42:16,23
  42:24 43:13 44:19,21
  44:25 45:2,21,25 46:2
omissions 8:1
once 32:15
ongoing 28:24
open 29:2
operation 34:4
opines 8:2
opinion 8:3 44:22
opportunity 31:21,25
  37:1
oppose 6:25 16:23
opposed 16:7 36:23
opposing 5:20
opposition 16:9,10,23
oral 13:15
order 2:10 5:8 41:25
  42:12,19,24 44:13
  46:3
ordered 9:16 21:16 27:5
ordering 23:2
orders 38:13
originally 12:5 33:19
outrageous 19:3
outstanding 14:6,13
  18:5
overall 18:24 30:16

**P**

p.m 7:12 45:7,8 46:6
pages 7:24 8:17,18 19:10
  20:4,5 28:7,7
paper 25:25
papers 5:3
paragraph 15:1
Park 1:19
Parsons 34:22
part 13:16 26:8 33:18
  38:15
participate 3:1,4,4
particular 23:24 45:16
parties 6:19 13:11
passing 36:23
PC 1:15
pen 7:4,4
pending 16:8
Pennsylvania 2:8
people 12:11,12,15 20:9
  26:7,12 35:1 36:12
percent 30:3,6,14,15
percentage 30:8,12
period 3:21 33:22
permission 17:17 42:10
permitted 35:21
perplexed 3:22

**person** 3:5 12:16,17,18 39:1
**personal** 31:8
**personally** 31:10
**phone** 1:16 2:18 3:3 28:25
**pick** 20:13
**piece** 8:11 9:8 25:25
**place** 42:9
**places** 29:16
**plaintiff** 7:18 9:24 11:8 11:10,21 12:5,20,22 12:23 13:5,10 14:14 14:16 18:16 30:19 37:5 43:20
**plaintiffs** 1:4,15 2:13,15 2:16,17,19 3:3 6:19 7:7,11 9:13,19 10:4,20 11:1,12,15 12:10 17:5 17:23 18:5,22 25:23 27:21 28:24 38:24
**plaintiffs'** 4:7 10:12 14:22,23 17:17
**plan** 40:13
**players** 34:4
**Plaza** 1:19
**pleadings** 4:20 5:6,9,20 6:1 41:17
**please** 18:19 43:8
**PLLC** 1:20
**plug** 23:18
**point** 3:19 22:21 23:5 27:18 28:20,20,23 32:17 37:14,20,20
**point-blank** 32:4
**police** 9:19,23 10:13
**Policy** 25:1,13 26:14
**porn** 33:23 34:14
**portion** 23:25
**position** 4:7 30:18 39:4
**possibility** 40:3
**possible** 38:6
**possibly** 12:8,13
**PR** 11:23 17:4,14
**predicated** 8:3
**preempted** 38:15
**preliminary** 3:20
**prepared** 40:7
**press** 10:12 11:17
**pretrial** 42:19
**pretty** 15:12 36:14
**previously** 41:19
**primarily** 29:15
**principals** 13:3,4
**print** 28:17 43:7
**privilege** 15:12,23 27:1 35:16,21 36:15
**privileged** 26:9
**privileges** 4:1,7 5:10
**probably** 38:12 40:24
**problem** 4:13 6:2 18:10 22:25 26:19 31:14 41:6 42:15 43:19
**problems** 6:6 23:17 38:12
**proceedings** 46:11
**process** 2:24 7:23 17:8
**produce** 20:11 27:6
**produced** 8:14 9:16 10:8 20:5,25 26:5 27:8
**product** 26:8
**production** 7:10 8:12 9:18
**proffer** 4:12,25 5:1,6
**proffered** 4:5

**proffers** 5:21
**profile** 29:21
**promote** 11:16
**prong** 15:9
**prongs** 15:8
**proportional** 38:8
**proportionately** 30:13
**proposal** 13:6
**propose** 38:9
**proposed** 4:4 6:16,23 12:5,10 13:2,4 14:18 14:19,22 42:20
**proposing** 13:1
**protracted** 39:18
**provided** 7:24
**providers** 29:20 30:3
**public** 11:12,15,17,18 12:19 17:6 24:7,8 35:20
**publication** 7:20 25:3 32:13 45:15
**publicity** 12:18
**published** 9:20 14:10 30:23 35:6,13,20
**publisher** 34:25,25
**pull** 23:18
**pushing** 17:3
**put** 13:14 17:19
**puzzlement** 35:18

---

**Q**

**quash** 3:16 26:22,25
**question** 6:7 32:11
**questions** 2:25
**quickly** 38:6

---

**R**

**R** 46:8
**rabbits** 22:4
**ran** 43:22
**rationale** 32:2 36:3
**re-sign** 17:17,20
**read** 25:3 33:6,14,15
**ready** 12:8 40:6
**real** 18:20 31:14
**realistic** 23:21
**really** 3:2,23 4:3,10,14 12:18 15:23 18:10 24:1 27:5 35:6 36:6 39:5 42:14 45:10
**reason** 8:22,23 30:22 31:23
**reasons** 31:17
**rebuttal** 13:21
**received** 7:10 14:11 28:25
**Recessed** 45:7 46:6
**record** 44:20 46:11
**recruited** 34:3
**red** 34:10
**redacted** 33:18,19,21
**refuse** 31:4
**regarding** 15:12
**registers** 34:19
**rejected** 13:5 14:23,25 15:4

**relevant** 9:14 10:9 11:16 11:18 12:18 37:7 39:10,12
**relied** 20:6
**relying** 36:23
**remember** 10:23
**remnants** 16:3,4
**repeatedly** 7:18
**reply** 16:23
**report** 6:16 7:15 8:8,16 13:16 19:9,10 20:3 21:14,15,22 24:7 8,12 25:1 27:16,21,23 28:1 28:7,10 32:5 36:15 37:16 38:9,16 40:7,8,8 43:7 45:2,10,13
**reported** 1:23 25:5 26:14 33:21
**Reporter** 1:24
**reporting** 35:16 36:4,7 36:17
**reports** 24:14 27:11 39:1
**representative** 12:17
**request** 13:25 15:4 17:15 18:2 20:19 27:12 43:5
**requests** 17:8 22:6 43:14 44:1
**require** 38:13
**required** 15:10 27:10 44:15
**research** 27:15
**reset** 41:24 42:1
**resolve** 5:8
**resolved** 5:7 38:5
**respect** 14:18 18:8 26:19 27:4,11,13
**respond** 7:3 18:18,18 20:2 37:1
**responded** 20:18
**response** 5:5
**responsible** 24:9,18 35:1
**rest** 28:14
**result** 44:2
**Resumed** 45:8
**retained** 11:15
**revenue** 30:16 45:16
**revenues** 45:14,18
**review** 3:20
**revolves** 4:9
**rich** 43:21
**rid** 6:6
**ridiculous** 15:5
**right** 3:12 6:5,7 13:12 19:16 22:22 28:17 31:21 32:6 33:25,25 34:5,24 35:7 36:25 37:23 39:23 41:2,11 41:15 42:12 43:2 44:25 45:11,19 46:2
**rights** 16:14
**risk** 29:4
**RMR** 1:23
**rogatory** 19:6,15,22
**ROMANISHIN** 1:23
**root** 10:22,24 29:12
**Roy** 2:2 3:10
**rule** 32:13 40:8
**Russia** 29:22 30:6
**Russian** 9:14

---

**S**

**SA** 10:22,24 29:12
**sad** 11:4
**safe** 16:6
**safecracker** 16:5

**saw** 7:12 13:19
**saying** 19:18 20:9 21:20 21:23 22:12,14 26:3 32:25 33:8,10 34:16 35:9 45:16,18
**says** 19:12 26:22 31:17 33:21 34:1 45:14
**schedule** 6:16 38:10,14 38:18 42:10
**scheduled** 12:2,3 41:20 42:6
**schedules** 28:22
**scheduling** 12:1 42:18
**scheme** 18:24
**scrutinized** 35:17
**seat** 3:6 45:9
**SEC** 23:12
**second** 36:6
**Section** 35:3
**see** 3:23 4:3,13 6:2 10:8 26:25 28:10 35:24 44:22 45:4
**seek** 7:20
**seeks** 7:15
**seen** 10:15 25:25 36:12
**self-evident** 16:3
**Senator** 14:7,18,20 15:5
**send** 18:2 19:2
**sense** 29:8,14 31:9 41:22
**sent** 17:14 23:3 43:11
**sentence** 37:16
**sentences** 7:19
**September** 9:11 33:22 37:9
**serve** 43:20
**served** 15:16 44:1
**servers** 29:8
**service** 23:18 29:20 30:2 34:24
**set** 39:24 40:20 41:15
**setting** 40:10
**SHAYEFAR** 1:16 2:20
**ship** 23:12
**show** 6:8
**showed** 9:21
**sides** 3:25
**Siegel** 2:8 3:9,9 4:11 5:18,24 14:2 15:17
**sign** 43:5
**signed** 19:14
**significant** 7:10 11:13 34:4
**silly** 27:23
**simple** 30:21
**simplest** 5:18 29:14
**simply** 4:12 6:17 14:25 31:8,18,25 36:11
**singing** 23:20
**single** 25:25 26:10 32:13
**sit** 44:15
**six** 22:22 24:15 25:6 26:1
**six-month** 26:23
**size** 30:3
**skimmed** 45:10,11
**slip-and-fall** 23:11
**slow** 43:25
**solve** 22:24
**somebody** 2:18 28:16 43:7
**soon** 28:2,12 32:22,23 44:7
**sorry** 16:12 27:2 28:4 29:7 32:6 35:9 37:23 39:19 40:10
**sort** 5:1 14:3 19:20 21:2

**24:13 27:2,23,25 29:3 29:6,10 34:10,18 36:9 36:22 38:16 44:13
**sorted** 35:16
**sorts** 23:3
**sound** 21:3
**sounds** 21:4
**South** 2:3
**SOUTHERN** 1:1
**speak** 20:1 31:22
**speaking** 21:23
**specific** 2:25 20:7
**specifically** 31:14
**spoke** 3:14
**spy** 30:24
**squeamish** 31:2
**SREBNICK** 2:2
**staff** 28:17
**stage** 36:14
**stages** 36:14
**stand** 15:7
**start** 7:13 19:4
**starting** 24:13
**starts** 43:17
**statements** 21:22
**States** 1:1 30:4,9,15,16 30:20,22,25
**status** 1:10 3:12 6:16 11:17,18 16:21 39:19
**Steele** 44:4,14
**stip** 42:20
**stipulate** 14:15,16 15:4 14:25 15:6
**stipulation** 14:18,19,21 14:25 15:6
**stop** 8:15 31:8
**storage** 29:14,17 30:8 36:19
**story** 7:21,21 25:1 36:18 36:19
**Street** 1:16
**stress** 28:8
**strike** 5:3
**strikes** 27:23
**strong** 16:16
**STUMPF** 2:2
**subpoena** 11:23 24:4 26:20,22,25 39:20
**subpoenaed** 16:2 17:4 17:13
**subpoenas** 13:12
**subsidiary** 10:23 29:11
**successful** 17:21
**sue** 32:14,15,15
**suffice** 34:15
**sufficiency** 4:15
**suit** 11:11 35:4,5
**Suite** 1:16,19 2:3
**sum** 7:16
**suppose** 45:22
**supposed** 6:9 15:16
**suppressed** 27:22
**sure** 10:2 21:10 36:14 38:11 45:25
**surprised** 18:25 22:8,8 23:2

---

**T**

**T** 46:8,8
**take** 5:1,24 12:2,6,9,13 12:24 24:1 28:19 29:4 32:20 35:21 42:9
**talk** 11:9 17:23 36:3,8 38:23 43:3
**talked** 10:13 18:13 27:16 39:15 44:5
**talking** 6:14 14:24 24:23

28:9 37:5 39:16 44:13
**talks** 10:24
**tangent** 24:13
**team** 24:16 25:8,21 26:1
**tech** 12:16
**technical** 16:4
**tell** 6:21 10:2 15:3 18:19 39:19 41:11
**ten** 29:24
**tenor** 3:24
**tentacles** 23:15
**terminate** 6:9
**terminating** 31:18
**test** 20:15 21:23 45:23
**testing** 21:6
**thank** 42:25 43:1 45:5,6 46:2,4,5
**Thanks** 32:6
**theirs** 43:20
**they'd** 27:8
**thing** 10:10 15:20 17:4 17:22 26:10 28:8,23 32:17 35:8,9,9 37:4,11
**things** 5:12 8:3 13:11 14:7 15:7 18:24 22:20 32:9
**think** 5:25 6:5 14:17,23 15:4,15 17:24 18:21 19:1,8 20:14,20 21:2 22:16 23:4,24 26:18 29:12 32:9 34:10,11 36:2,6,13 38:3,20 41:22 42:21 44:7
**thinking** 40:12
**third** 6:19 13:11 15:20
**third-party** 18:4 23:25 35:11
**thought** 5:12 15:23 18:7 40:13
**threatened** 8:4 37:18
**three** 6:24 7:19 14:6,7,13 22:14,17,18 30:6 44:10
**time** 3:21 6:21 7:12,23 9:18 10:11 11:14 13:19 16:22 17:18 18:25 20:13 21:1 22:21 23:5 25:16 35:19 37:14,21 42:3,6 42:11
**today** 6:12
**told** 7:19 9:12 11:1 12:6 12:21,24 22:3,5 28:6 29:1 31:7,13 32:3 37:12 41:24 43:11
**tomorrow** 15:3
**tons** 11:17
**tools** 16:5
**top** 30:2,11
**totally** 5:4
**track** 26:23
**traffic** 33:24
**transcript** 1:10 13:14 46:10
**transmission** 43:14
**TREMAINE** 2:5
**trial** 12:23,24 31:11 38:13 42:20
**tried** 24:4 28:2
**trouble** 29:19
**troubles** 17:24
**true** 15:5 24:12
**truth** 9:9 10:9 32:25
**try** 18:18 22:9,24 31:25

36:17 42:9,21
**trying** 19:24,25 23:18 24:1,17
**two** 3:25 5:9 6:14 14:8 15:8 17:4 22:11 28:25 32:9 36:2 39:13 41:5 41:13 45:1
**two-page** 14:11 15:9

**U**

**U.S** 1:12 32:13
**Uh-huh** 16:1
**ultimately** 35:17
**umbrella** 29:10
**unbeknownst** 34:9
**unbelievable** 7:16
**underlying** 9:10 45:21
**understand** 4:24 9:3 23:8,22 28:21 30:5 31:24,25 37:3
**understanding** 29:19 44:9,12
**understood** 46:1
**UNGARO** 1:11
**ungaro@flsd.uscourts...** 43:12
**United** 1:1 30:4,9,14,16 30:20,22,25
**universe** 29:20
**unnecessary** 3:3 5:4
**unreasonable** 18:23 21:25 38:3
**unrelated** 27:17,25
**unusual** 23:9,10
**urgency** 31:10
**URSULA** 1:11
**use** 35:2
**utilized** 29:14
**utilizes** 29:8
**utilizing** 25:8

**V**

**v-** 1:5
**vague** 36:9
**Val** 2:16
**VALENTIN** 1:15
**verbal** 20:8,24 21:4
**verify** 22:7
**versus** 2:12
**view** 28:21 37:21
**vindication** 29:3

**W**

**wait** 8:15 19:25 26:24 39:4
**waited** 19:22
**waiting** 39:11
**want** 6:22 18:19 19:14 21:10 22:5,20 24:11 26:23 28:8 31:24 35:24 37:4 40:23,25 43:2 45:1,22,25
**wanted** 28:2 32:7
**wants** 3:4
**Washington** 2:9 26:20
**wasn't** 26:3 36:5,24
**way** 4:12 5:15,18,24,25 22:25 35:1 37:11 41:8
**ways** 23:18
**we'll** 4:1,1 20:2 27:19 32:22 34:8 38:7 41:3 41:17 42:23 44:7 46:2
**we're** 3:12 4:11 6:14 10:2 11:9 12:7 14:17

14:24 16:5 17:8,18 20:10 21:1 26:14,22 27:10 28:12 29:4 34:18 36:14 37:5 38:4 38:5 39:16 41:14,17 43:23 44:1,12 45:14 45:15,18
**we've** 10:25 11:2 12:14 14:24 17:2 18:6 19:5,6 19:21,21,24,25 20:5 20:21 22:5,21 25:16 26:2,7 29:1 31:18
**Web-hosting** 33:3 34:24
**website** 29:18
**Webzilla** 10:21,23,24 24:17 25:10 29:8,12 33:2,23
**week** 7:9 9:17 12:10 17:13 24:14,25 26:13
**weeks** 6:14 19:24 28:25 31:7 39:13 44:10
**went** 14:3 20:9
**western** 30:6
**wife** 12:20
**WILLIAM** 1:23
**willing** 14:14,16 21:1
**win** 36:13
**wiped** 15:13
**wires** 11:18
**witness** 12:21
**wondered** 27:14 42:21
**word** 21:5
**wording** 14:21 15:6
**work** 2:23 4:1 17:9 26:8 38:13 42:23
**worked** 38:17
**working** 14:17 29:23
**works** 10:21,22
**worldwide** 25:8 30:12
**wouldn't** 38:18 42:7
**WRIGHT** 2:5
**write** 35:13
**wrong** 43:16
**wrote** 36:16

**X**

**XBT** 10:21,23,24 24:17 25:10 29:7,10 30:10 33:1,22

**Y**

**Yeah** 15:17 28:14,16,18 41:25 44:6
**years** 19:22 29:24
**yells** 37:11
**yesterday** 3:14 11:24 17:13
**York** 2:7,7

**Z**

**0**

**02116** 1:19
**02459** 1:17

**1**

**1,200** 7:24
**10020** 2:7
**10th** 9:16 14:9
**11:30** 1:7
**12:31** 45:7
**12:37** 45:8
**12:39** 46:6
**1251** 2:6

**12th** 12:14
**13** 9:12,20,22
**1300** 2:3
**13th** 12:11 13:3 15:16,16 40:17 41:20,22 42:9
**15** 28:7
**15th** 6:10,11,24 13:2,18 37:24 38:1 41:4,8,14
**17-60426** 2:12
**17-60426-Civ-UNGA...** 1:2
**170** 7:17
**17th** 12:14
**18th** 39:25 40:10,21
**1919** 2:8
**1st** 15:3

**2**

**20** 1:16,19
**20006** 2:9
**201** 2:3
**2015** 11:16
**2016** 9:20 11:16 33:22
**2018** 1:7
**20th** 7:10 8:13 9:17 10:7 10:10 11:14 37:7,10 38:16 39:9 41:15 42:13
**21st** 2:6
**230** 35:3
**23rd** 7:12 13:4 16:24 37:8 39:22
**26** 40:8
**26th** 13:4,5
**27th** 10:13
**28** 1:7
**28th** 6:12 12:8

**3**

**30** 22:12,13
**30(b)(6)** 13:2
**305** 1:24
**33128** 1:25
**33131** 2:4
**33304** 1:22
**3rd** 1:21

**4**

**40** 30:3,14,15
**40,000** 30:12
**400** 1:24 7:24 8:18

**5**

**505** 1:19
**5060** 5:11
**523-5558** 1:24
**5th** 44:11

**6**

**6:30** 19:17
**62.5** 7:16
**642** 1:21
**68** 8:17 19:10 20:4 28:7
**68-page** 21:14
**6th** 37:9

**7**

**8**

**825** 1:16

**9**

**9:00** 7:12

**90** 18:23,24 19:1
**9th** 13:3 16:23