# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: HON. ARLENE P. BLUTH
J.S.C.
*Justice*

PART 32

Index Number : 154895/2017
FRIDMAN, MIKHAIL
vs.
BUZZFEED, INC.
SEQUENCE NUMBER : 002
DISMISS

INDEX NO. _____
MOTION DATE _____
MOTION SEQ. NO. _____

The following papers, numbered 1 to __2__, were read on this motion to/for _dismiss affirmative defenses_

| | | |
|---|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits | +memo | No(s). 1 |
| Answering Affidavits — Exhibits | +memo | No(s). 2 |
| Replying Affidavits | +memo | No(s). ___ |

Upon the foregoing papers, it is ordered that this motion is

decided in accordance with the accompanying memorandum decision and order.

PC: 8-7-18 @ 2:15 p.m.

Dated: 5/4/18

_____, J.S.C.
HON. ARLENE P. BLUTH
J.S.C.

1. CHECK ONE: ............................ ☐ CASE DISPOSED   ☒ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ..........MOTION IS: ☐ GRANTED  ☐ DENIED  ☒ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ................. ☐ SETTLE ORDER   ☐ SUBMIT ORDER
   ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 32

-----------------------------------------------------------------X
MIKHAIL FRIDMAN, PETER AVEN, and GERMAN
KHAN,

                       Plaintiffs,

                       -against-

BUZZFEED, INC., BEN SMITH, KEN BENSINGER,
MIRIAM ELDER and MARK SCHOOFS,

                       Defendants.

-----------------------------------------------------------------X

**DECISION & ORDER**
**Index No. 154895/2017**

Mot. Seq. 002

The motion to dismiss defendants' affirmative defenses is granted in part.[1]

**Background**

This defamation action arises out of an article published by defendant BuzzFeed, Inc. ("BuzzFeed") on January 10, 2017. The story recounts the existence of a dossier ("Dossier") containing unverified allegations about then President-Elect Trump and alleged contacts between Trump aides and Russian operatives. Buzzfeed attached the entire Dossier to the article "so that Americans can make up their own minds about allegations about the president-elect that have circulated at the highest levels of government" (NYSCEF Doc. No. 28).

Plaintiffs, Russian businessmen, are named in the Dossier and allege that it contains false and harmful allegations about them. Plaintiffs contend that the publication of these unverified

---

[1] The Court did not consider any submissions made after the motion was fully submitted including NYSCEF Doc. Nos. 106-120.

allegations constitutes defamation because the Dossier insists that plaintiffs and their company (Alfa Group) engaged in criminal acts at the behest of the Russian government.

Plaintiffs move to dismiss defendants' four affirmative defenses.

**Discussion**

"On a motion to dismiss affirmative defenses pursuant to CPLR 3211(b), the plaintiff bears the burden of demonstrating that the defenses are without merit as a matter of law. In deciding a motion to dismiss a defense, the defendant is entitled to the benefit of every reasonable intendment of the pleading, which is to be liberally construed. A defense should not be stricken where there are questions of fact requiring trial" (*534 East 11th St. Hous. Dev. Fund Corp. v Hendrick*, 90 AD3d 541, 541-42, 935 NYS2d 23 [1st Dept 2011]).

**Fair Report Privilege**

Civil Rights Law § 74 provides that "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published."

"Civil Rights Law § 74 . . . confers an absolute privilege on a fair and true report of any official proceeding" (*Freeze Right Refrigeration and Air Conditioning Services, Inc. v City of New York*, 101 AD2d 175, 181, 475 NYS2d 383 [1st Dept 1984]). "[A] newspaper article which relies upon the findings of an official proceeding [does not] lose the protection of the statute merely because its publication precedes release of the official findings. Even the announcement of an investigation by a public agency, made before the formal investigation has begun, is

protected as a report of an official proceeding within the contemplation of the statute, as is a report of an ongoing investigation, as long as it is accurate" (*id.* at 182).

"[C]ase law has established a liberal interpretation of the 'fair and true' report standard of Civil Rights Law § 74 so as to provide broad protection to news accounts of judicial or other proceedings" (*Cholowsky v Civiletti*, 69 AD3d 110, 887 NYS2d 592 [2d Dept 2009] [internal quotations and citation omitted]).

Plaintiffs claim that the fair report privilege is inapplicable to the instant action because defendants failed to allege that the Dossier was obtained from a U.S. Government source or that the Dossier was part of a government proceeding. Defendants contend that BuzzFeed need not have gained the information from a government source. Defendants insist that they reported on a Dossier that was the subject of government interest and that the allegations had "circulated at the highest levels of government" (NYSCEF Doc. No. 28 [the January 10, 2017 article]).

This branch of plaintiffs' motion is denied. Defendants have alleged facts in their amended answer that the Dossier was part of an official proceeding. BuzzFeed alleges that the Dossier was part of briefings to President Obama, Vice President Biden and President-Elect Trump on January 6, 2017 and that the Dossier was given to the FBI Director (NYSCEF Doc. No. 16 at 6 [Amended Answer]). These allegations suggest that the article reported on an issue of national public interest and are therefore sufficient to defeat plaintiffs' motion to dismiss.

As the Court of Appeals held in *Holy Spirit Assn. for Unification of World Christianity v New York Times Co.* (49 NY2d 63, 68, 424 NYS2d 165 [1979]), "[N]ewspaper accounts of legislative or other official proceedings must be accorded some degree of liberality. When determining whether an article constitutes a 'fair and true' report, the language used therein

should not be dissected and analyzed with a lexicographer's precision. This is so because a newspaper article is, by its very nature, a condensed report of events which must, of necessity, reflect to some degree the subjective viewpoint of its author."

Plaintiffs' attempts to suggest that defendants failed to satisfy the 'elements' of the fair report privilege are meritless. Plaintiffs failed to cite any case law that explicitly holds that the government must be the source of the information. To the extent that plaintiffs claim that the specific allegations against plaintiffs made in the Dossier were not part of a government investigation, that does not compel a different outcome. The fact is that the Dossier itself, according to BuzzFeed, was part of the government's investigation. Under plaintiffs' theory, BuzzFeed could only publish the Dossier if it knew that every single statement in it was part of the alleged government investigation. That is not a logical reading of the fair report privilege.

**Neutral Report Privilege**

Plaintiffs contend that there is no constitutional neutral report privilege under New York law and defendants acknowledge that this issue "has yet to be definitively settled." Admittedly, there are few cases that consider the concept of 'neutral reportage' under New York law.

In *Hogan v Herald Co.* (84 AD2d 470, 446 NYS2d 836 [4th Dept 1982]), the Appellate Division concluded that New York courts do not recognize a neutral report privilege. The Court of Appeals affirmed the Fourth Department's decision without an opinion (*see Hogan v Herald Co.*, 58 NY2d 630, 458 NYS2d 538 (Mem) [1982]). Although defendants argue that "New York courts, while not using the words 'neutral report,' have acted to protect neutral reports on allegations about public figures by applying other doctrines within defamation law" (NYSCEF Doc. No. 24 at 23), the fact is that defendants failed to cite any binding New York cases that

Page 4 of 7

expressly contradict *Hogan*. This Court cannot ignore clear Court of Appeals precedent; accordingly, the second affirmative defense is severed and dismissed.

**Third Affirmative Defense**

The third affirmative defense, which claims that "the alleged defamatory statements in the Dossier, within the context of the Article, is protected by the First and Fourteenth Amendments to the Constitution, and/or Article I, Section 8 of the New York State Constitution" (NYSCEF Doc. No. 16 at 12) is severed and dismissed because it fails to state a defense. Citing generally to state and federal constitutional protections does not provide an affirmative defense to a claim of defamation. While defendants correctly point out that the First Amendment protects certain defamatory speech, defendants failed to cite any cases which hold that a general cite to constitutional protections creates an affirmative defense.

**Fourth Affirmative Defense: Public Figures**

"The essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public attention. Of course, not all persons reported upon in the media have sought the publicity. However, there are individuals who, for a variety of reasons, have strived to achieve a measure of public acclaim" (*James v Gannett Co., Inc.*, 40 NY2d 415, 422, 386 NYS2d 871 [1976]).

"The extent to which one becomes a public figure is a matter of degree. Those occupying high public office, Congressmen and Judges for example, may, by the nature of their governmental role, invite comments and reports on matters not immediately related to their performance of official duties. In effect, they may become public figures for all purposes. On the other hand, other public figures may invite publicity only with respect to a narrow area of

Page 5 of 7

interest, and publications, which unreasonably extend the scope of their reports, may be confronted with a lesser standard of proof" (*id.* at 423).

Plaintiffs move to dismiss defendants' fourth affirmative defense on the ground that plaintiffs are neither general public figures nor limited purpose public figures. Plaintiffs contend that defendants failed to allege whether plaintiffs met either category of public figures in their amended answer.

In opposition, defendants claim that they do not believe it is necessary to plead this affirmative defense because it is part of plaintiffs' burden to show defamation, but contend that the Court need not dismiss this defense.

The Court denies this branch of plaintiffs' motion. As an initial matter, the Court finds that defendants should have pled the public figures standard as an affirmative defense. "A party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading" (CPLR 3018[b]). Given that plaintiffs do not believe they are public figures under defamation law, it may have been unfair surprise if defendants had not included this affirmative defense.

In any event, at the pleadings stage, the Court declines to find that plaintiffs are not public figures because defendants have alleged facts in the amended answer that all three plaintiffs have been featured in numerous news articles covering the relevant time period in the Dossier (NYSCEF Doc. No. 16 at 13). Discovery may reveal that plaintiffs are or are not public figures for purposes of a defamation claim; it is too early to make that determination now.

Accordingly, it is hereby

ORDERED that plaintiffs' motion to dismiss defendants' affirmative defenses is granted only to the extent that the second and third affirmative defenses are severed and dismissed.

This is the Decision and Order of the Court.

The parties are directed to appear for a preliminary conference on August 7, 2018 at 2:15 p.m.

Dated: May 4, 2018
New York, New York

_____
ARLENE P. BLUTH, JSC.

HON. ARLENE P. BLUTH
J.S.C.