CHARLES E. GRASSLEY, IOWA, CHAIRMAN

ORRIN G. HATCH, UTAH  
LINDSEY O. GRAHAM, SOUTH CAROLINA  
JOHN CORNYN, TEXAS  
MICHAEL S. LEE, UTAH  
TED CRUZ, TEXAS  
BEN SASSE, NEBRASKA  
JEFF FLAKE, ARIZONA  
MIKE CRAPO, IDAHO  
THOM TILLIS, NORTH CAROLINA  
JOHN KENNEDY, LOUISIANA  

DIANNE FEINSTEIN, CALIFORNIA  
PATRICK J. LEAHY, VERMONT  
RICHARD J. DURBIN, ILLINOIS  
SHELDON WHITEHOUSE, RHODE ISLAND  
AMY KLOBUCHAR, MINNESOTA  
AL FRANKEN, MINNESOTA  
CHRISTOPHER A. COONS, DELAWARE  
RICHARD BLUMENTHAL, CONNECTICUT  
MAZIE K. HIRONO, HAWAII  

KOLAN L. DAVIS, Chief Counsel and Staff Director  
JENNIFER DUCK, Democratic Staff Director

**United States Senate**

COMMITTEE ON THE JUDICIARY
WASHINGTON, DC 20510-6275

January 4, 2018

**VIA ELECTRONIC TRANSMISSION**

The Honorable Rod J. Rosenstein  
Deputy Attorney General  
U.S. Department of Justice  
950 Pennsylvania Avenue, NW  
Washington, DC 20530  

The Honorable Christopher A. Wray  
Director  
Federal Bureau of Investigation  
935 Pennsylvania Avenue, NW  
Washington, DC 20535

Dear Deputy Attorney General Rosenstein and Director Wray:

Attached please find a classified memorandum related to certain communications between Christopher Steele and multiple U.S. news outlets regarding the so-called "Trump dossier" that Mr. Steele compiled on behalf of Fusion GPS for the Clinton Campaign and the Democratic National Committee and also provided to the FBI.

Based on the information contained therein, we are respectfully referring Mr. Steele to you for investigation of potential violations of 18 U.S.C. § 1001, for statements the Committee has reason to believe Mr. Steele made regarding his distribution of information contained in the dossier.

Thank you for your prompt attention to this important matter. If you have any questions, please contact Patrick Davis or DeLisa Lay of Chairman Grassley's staff at (202) 224-5225.

Sincerely,

Charles E. Grassley  
Chairman  
Committee on the Judiciary

Lindsey O. Graham  
Chairman  
Subcommittee on Crime and Terrorism  
Committee on the Judiciary

Enclosure: As stated.

cc: The Honorable Dianne Feinstein
Ranking Member
Committee on the Judiciary

The Honorable Richard Burr
Chairman
Senate Select Committee on Intelligence

The Honorable Mark Warner
Vice Chairman
Senate Select Committee on Intelligence

The Honorable Devin Nunes
Chairman
House Permanent Select Committee on Intelligence

The Honorable Adam Schiff
Ranking Member
House Permanent Select Committee on Intelligence

▬▬▬▬▬▬▬▬▬▬

MEMORANDUM

(U) FROM:     Charles E. Grassley, Chairman, U.S. Senate Committee on the Judiciary
Lindsey O. Graham, Chairman, Subcommittee on Crime and Terrorism, U.S. Senate Committee on the Judiciary

TO:     The Honorable Rod J. Rosenstein, Deputy Attorney General, U.S. Department of Justice

The Honorable Christopher A. Wray, Director, Federal Bureau of Investigation

RE:     Referral of Christopher Steele for Potential Violation of 18 U.S.C. § 1001

(U) As you know, former British Intelligence Officer Christopher Steele was hired by the private firm Fusion GPS in June 2016 to gather information about "links between Russia and [then-presidential candidate] Donald Trump."[1] Pursuant to that business arrangement, Mr. Steele prepared a series of documents styled as intelligence reports, some of which were later compiled into a "dossier" and published by *BuzzFeed* in January 2017.[2] On the face of the dossier, it appears that Mr. Steele gathered much of his information from Russian government sources inside Russia.[3] According to the law firm Perkins Coie, Mr. Steele's dossier-related efforts were funded through Fusion GPS by that law firm on behalf of the Democratic National Committee and the Clinton Campaign.[4]

(U) In response to reporting by the *Washington Post* about Mr. Steele's relationship with the FBI relating to this partisan dossier project, the Judiciary Committee began raising a series of questions to the FBI and the Justice Department about these matters as part of the Committee's constitutional oversight responsibilities.[5]

(U) The FBI has since provided the Committee access to classified documents relevant to the FBI's relationship with Mr. Steele and whether the FBI relied on his dossier work. As explained in greater detail below, when information in those classified documents is evaluated in light of sworn statements by Mr. Steele in British litigation, it appears that either Mr. Steele lied to the FBI or the British court, or that the classified documents reviewed by the Committee contain materially false statements.

---

[1] (U) Defence, *Gubarev et. Al v. Orbis Business Intelligence Limited and Christobpher Steele*, Claim No. HQ17D00413, Queen's Bench (Apr. 4, 2017), para. 9 [Hereinafter "Steele Statement 1"] [Attachment A].
[2] (U) *Id.* at para. 10; Ken Bensinger, Miriam Elder, and Mark Schoofs, *These Reports Allege Trump Has Deep Ties to Russia*, BUZZFEED (Jan. 10, 2017).
[3] (U) *Id.*
[4] (U) Adam Entous, Devlin Barrett and Rosalind S. Helderman, *Clinton Campaign, DNC Paid for Research that Led to Russia Dossier*, THE WASHINGTON POST (Oct. 24, 2017).
[5] (U) Tom Hamburger and Rosalind S. Helderman, *FBI Once Planned to Pay Former British Spy who Authored Controversial Trump Dossier*, THE WASHINGTON POST (Feb. 28, 2017).

(U) In response to the Committee's inquiries, the Chairman and Ranking Member received a briefing on March 15, 2017, from then-Director James B. Comey, Jr.

▮ That briefing addressed the Russia investigation, the FBI's relationship with Mr. Steele, and the FBI's reliance on Mr. Steele's dossier in two applications it filed for surveillance under the Foreign Intelligence Surveillance Act (FISA). Then, on March 17, 2017, the Chairman and Ranking Member were provided copies of the two relevant FISA applications, which requested authority to conduct surveillance of Carter Page. Both relied heavily on Mr. Steele's dossier claims, and both applications were granted by the Foreign Intelligence Surveillance Court (FISC). In December of 2017, the Chairman, Ranking Member, and Subcommittee Chairman Graham were allowed to review a total of four FISA applications relying on the dossier to seek surveillance of Mr. Carter Page, as well as numerous other FBI documents relating to Mr. Steele.

▮ In the March 2017 briefing with then-Director Comey, he stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(U) Similarly, in June 2017, former FBI Director Comey testified publicly before the Senate Select Committee on Intelligence that he had briefed President-Elect Trump on the dossier allegations in January 2017, which Mr. Comey described as "salacious" and "unverified."[6]

▮ When asked at the March 2017 briefing why the FBI relied on the dossier in the FISA applications absent meaningful corroboration—and in light of the highly political motives surrounding its creation—then-Director Comey stated that the FBI included the dossier allegations about Carter Page in the FISA applications because Mr. Steele himself was considered reliable due to his past work with the Bureau.

▮ Indeed, the documents we have reviewed show that the FBI took important investigative steps largely based on Mr. Steele's information—and relying heavily on his credibility. Specifically, on October 21, 2016, the FBI filed its first warrant application under FISA for Carter Page. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The bulk of the application consists of allegations against Page that were disclosed to the FBI by Mr. Steele and are also outlined in the Steele dossier. The application appears to contain no additional information corroborating the dossier allegations against Mr. Page, although it does cite to a news article that appears to be sourced to Mr. Steele's dossier as well.

---

[6] (U) Statement of James B. Comey, Jr., Hearing of the U.S. Sen. Select Comm. on Intelligence (June 8, 2017).

███████ The FBI discussed the reliability of this unverified information provided by Mr. Steele in footnotes 8 and 18 of the FISA warrant application. First, the FBI noted to a vaguely limited extent the political origins of the dossier. In footnote 8 the FBI stated that the dossier information was compiled pursuant to the direction of a law firm who had hired an "identified U.S. person"—now known as Glenn Simpson of Fusion GPS—███████
███████████████████████████████████████████
███████████████████████████████████ The application failed to disclose that the identities of Mr. Simpson's ultimate clients were the Clinton campaign and the DNC.

███████ The FBI stated to the FISC that "based on [Steele's] previous reporting history with the FBI, whereby [Steele] provided reliable information to the FBI, the FBI believes [Steele's] reporting to be credible." In short, it appears the FBI relied on admittedly uncorroborated information, funded by and obtained for Secretary Clinton's presidential campaign, in order to conduct surveillance of an associate of the opposing presidential candidate. It did so based on Mr. Steele's personal credibility and presumably having faith in his process of obtaining the information.

(U) But there is substantial evidence suggesting that Mr. Steele materially misled the FBI about a key aspect of his dossier efforts, one which bears on his credibility.



███████ Yet the FISA applications note the existence of a news article dated September 23, 2016, which in particular contained some of the same dossier information about Mr. Page compiled by Mr. Steele and on which the FBI relied in its application. While not explicitly stated, this is presumably the article by Michael Isikoff of *Yahoo News*, titled "U.S. Intel Officials Probe Ties Between Trump Adviser and Kremlin." ███████████████
███████████████████████████████████████, the application attempts to explain away the inconsistency between Mr. Steele's assertion to the FBI and the existence of the article, apparently to shield Mr. Steele's credibility on which it still relied for the renewal request. The application to the FISC said: "Given that the information contained in the September 23rd news article generally matches the information about Page that [Steele] discovered doing his/her research, ███████ █████ ███████████████
███████████████████████████████████████████

---

[7] ███████ The FBI has failed to provide the Committee the 1023s documenting all of Mr. Steele's statements to the FBI, so the Committee is relying on the accuracy of the FBI's representation to the FISC regarding those statements.

███ *The FBI does not believe* that [Steele] directly provided this information to the press" (emphasis added).

███ In footnote 9 of its January 2017 application to renew the FISA warrant for Mr. Page, the FBI again addressed Mr. Steele's credibility. At that time, the FBI noted that it had suspended its relationship with Mr. Steele in October 2016 because of Steele's "unauthorized disclosure of information to the press." The FBI relayed that Steele had been bothered by the FBI's notification to Congress in October 2016 about the reopening of the Clinton investigation, and as a result "[Steele] independently and against the prior admonishment from the FBI to speak only with the FBI on this matter, released the reporting discussed herein [dossier allegations against Page] to an identified news organization." However, the FBI continued to cite to Mr. Steele's past work as evidence of his reliability, and stated that "the incident that led to the FBI suspending its relationship with [Mr. Steele] occurred after [Mr. Steele] provided" the FBI with the dossier information described in the application. The FBI further asserted in footnote 19 that it did not believe that Steele directly gave information to *Yahoo News* that "published the September 23 News Article."

███ So, as documented in the FISA renewals, the FBI still seemed to believed Mr. Steele's earlier claim that he had only provided the dossier information to the FBI and Fusion— and not to the media—prior to his October media contact that resulted in the FBI suspending the relationship. Accordingly, the FBI still deemed the information he provided prior to the October disclosure to be reliable. After all, the FBI already believed Mr. Steele was reliable, he had previously told the FBI he had not shared the information with the press – and lying to the FBI is a crime. In defending Mr. Steele's credibility to the FISC, the FBI had posited an innocuous explanation for the September 23 article, based on the assumption that Mr. Steele had told the FBI the truth about his press contacts. The FBI then vouched for him twice more, using the same rationale, in subsequent renewal applications filed with the Foreign Intelligence Surveillance Court in April and June 2017.

(U) However, public reports, court filings, and information obtained by the Committee during witness interviews in the course of its ongoing investigation indicate that Mr. Steele not only provided dossier information to the FBI, but also to numerous media organizations **prior to** the end of his relationship with the FBI in October 2016.[8]

(U) In Steele's sworn court filings in litigation in London, he admitted that he "gave off the record briefings to a small number of journalists about the pre-election memoranda [*i.e.*, the dossier] in late summer/autumn 2016."[9] In another sworn filing in that case, Mr. Steele further

---

[8] (U) *See* Steele Statement 1; Defendants' Response to Claimants' Request for Further Information Pursuant to CPR Part 18, *Gubarev et. Al v. Orbis Business Intelligence Limited and Christopher Steele*, Claim No. HQ17D00413, Queen's Bench (May 18, 2017), [Hereinafter "Steele Statement 2"] [Attachment B]; Tom Hamburger and Rosalind S. Helderman, *FBI Once Planned to Pay Former British Spy who Authored Controversial Trump Dossier*, THE WASHINGTON POST (Feb. 28, 2017); Simpson Transcript, on File with Sen. Comm. on the Judiciary.

[9] (U) Steele Statement 1 at para. 32.

▮▮▮

stated that journalists from "the New York Times, the Washington Post, **Yahoo News**, the New Yorker, and CNN" were "briefed **at the end of September 2016** *by [Steele]* and Fusion at Fusion's instruction."[10] The filing further states that Mr. Steele "subsequently participated in further meetings at Fusion's instruction with Fusion and the New York Times, the Washington Post, and Yahoo News, which took place mid-October 2016."[11] According to these court filings, "[t]he briefings involved the disclosure of limited intelligence regarding indications of Russian interference in the US election process and the possible co-ordination of members of Trump's campaign team and Russian government officials."[12] In his interview with the Committee, Glenn Simpson of Fusion GPS confirmed this account by Mr. Steele and his company as filed in the British court.[13]

▮▮▮ The first of these filings was publicly reported in the U.S. media in April of 2017, yet the FBI did not subsequently disclose to the FISC this evidence suggesting that Mr. Steele had lied to the FBI. Instead the application still relied primarily on his credibility prior to the October media incident.

▮▮▮ The FBI received similar information from a Justice Department official, Bruce Ohr, who maintained contacts with Mr. Simpson and Mr. Steele about their dossier work, and whose wife also worked for Fusion GPS on the Russia project. ▮▮▮

▮▮▮

▮▮▮[14]▮▮▮

▮▮▮

▮▮▮

▮▮▮[15]▮▮▮

▮▮▮

▮▮▮ He also noted in the same interview that Mr. Steele was "desperate" to see that Mr. Trump was not elected president.[16] None of the information provided by Mr. Ohr in his interviews with the FBI was included in the FISA renewal applications, despite its relevance to whether Mr. Steele had lied to the FBI about his contacts with the media as well as its broader relevance to his credibility and his stated political motive.

---

[10] (U) Steele Statement 2 at para. 18. (emphasis added).
[11] ▮▮▮ *Id.* The filing also apparently described the media contact that resulted in the FBI's suspension of its relationship with Mr. Steele, stating: "In addition, and again at Fusion's instruction, in late October 2016 the Second Defendant briefed a journalist from Mother Jones by Skype."
[12] (U) *Id.*
[13] (U) Simpson Transcript, On File with the Sen. Comm. on the Judiciary at 205-07.
[14] ▮▮▮ Ohr FD-302 (Nov. 22, 2016).
[15] ▮▮▮ Ohr FD-302 (Dec. 12, 2016).
[16] ▮▮▮ Ohr FD-302 (Nov. 22, 2016).

■■■Whether Mr. Steele lied to the FBI about his media contacts is relevant for at least two reasons. First, it is relevant to his credibility as a source, particularly given the lack of corroboration for his claims, at least at the time they were included in the FISA applicdations. Second, it is relevant to the reliability of his information-gathering efforts.

(U) Mr. Steele conducted his work for Fusion GPS compiling the "pre-election memoranda" "[b]etween June and early November 2016."[17] In the British litigation, Mr. Steele acknowledged briefing journalists about the dossier memoranda "in late summer/autumn 2016."[18] Unsurprisingly, during the summer of 2016, reports of at least some of the dossier allegations began circulating among reporters and people involved in Russian issues.[19] Mr. Steele also admitted in the British litigation to briefing journalists from the *Washington Post*, *Yahoo News*, the *New Yorker*, and *CNN* in September of 2016.[20] Simply put, the more people who contemporaneously knew that Mr. Steele was compiling his dossier, the more likely it was vulnerable to manipulation. In fact, in the British litigation, which involves a post-election dossier memorandum, Mr. Steele admitted that he received and included in it ***unsolicited***—and unverified—allegations.[21] That filing implies that he similarly received unsolicited intelligence on these matters prior to the election as well, stating that Mr. Steele "***continued to receive unsolicited intelligence*** on the matters covered by the pre-election memoranda after the US Presidential election."[22]

(U) One memorandum by Mr. Steele that was not published by *Buzzfeed* is dated October 19, 2016. The report alleges ■■■■■■■■■■■■■■, as well as ■■■■■■■■ ■■■■■. Mr. Steele's memorandum states that his company "received this report from ■■ ■■■■, US State Department," that the report was the second in a series, and that the report was information that came from a foreign sub-source who "is in touch with ■■■■■■■, a contact of ■■■■■■■■■, a friend of the Clintons, who passed it to ■■■■." It is troubling enough that the Clinton Campaign funded Mr. Steele's work, but that these Clinton associates were contemporaneously feeding Mr. Steele allegations raises additional concerns about his credibility.

---

[17] (U) Steele Statement 1 at para. 9.
[18] (U) Steele Statement 1 at para. 32
[19] (U) Ahkmetshin Transcript, On File with the Sen. Comm. on the Judiciary (Mr. Ahkmetshin informed the Committee that he began hearing from journalists about the dossier before it was published, and thought it was the summer of 2016).
[20] (U) Steele Statement 2 at para. 18 (emphasis added).
[21] (U) Steele Statement 1 at para. 18 and 20c.
[22] (U) *Id.*; *see* Steele Statement 2 at 4 ("Such intelligence was not actively sought, it was merely received.")

████ Simply put, Mr. Steele told the FBI he had not shared the Carter Page dossier information beyond his client and the FBI. The Department repeated that claim to the FISC. Yet Mr. Steele acknowledged in sworn filings that he did brief *Yahoo News* and other media organizations about the dossier around the time of the publication of the *Yahoo News* article that seems to be based on the dossier.

(U) On September 23, 2016, *Yahoo News* published its article entitled "U.S. Intel Officials Probe Ties Between Trump Adviser and Kremlin."[23] That article described claims about meetings between Carter Page and Russians, including Igor Sechin. Mr. Sechin is described in the article as "a longtime Putin associate and former Russian deputy prime minister" under sanction by the Treasury Department in response to Russia's actions in the Ukraine.[24] The article attributes the information to "a well-placed Western intelligence source," who reportedly said that "[a]t their alleged meeting, Sechin raised the issue of the lifting of sanctions with Page."[25] This information also appears in multiple "memoranda" that make up the dossier.[26]

(U) In sum, around the same time *Yahoo News* published its article containing dossier information about Carter Page, **Mr. Steele and** Fusion GPS had briefed *Yahoo News* and other news outlets about information contained in the dossier.

████ These facts appear to directly contradict the FBI's assertions in its initial application for the Page FISA warrant, as well as subsequent renewal applications. The FBI repeatedly represented to the court that Mr. Steele told the FBI he did ***not*** have unauthorized contacts with the press about the dossier prior to October 2016. The FISA applications make these claims specifically in the context of the September 2016 *Yahoo News* article. But Mr. Steele has admitted—publicly before a court of law—that he ***did*** have such contacts with the press at this time, and his former business partner Mr. Simpson has confirmed it to the Committee. Thus, the FISA applications are either materially false in claiming that Mr. Steele said he did not provide dossier information to the press prior to October 2016, or Mr. Steele made materially false statements to the FBI when he claimed he only provided the dossier information to his business partner and the FBI.

████ In this case, Mr. Steele's apparent deception seems to have posed significant, material consequences on the FBI's investigative decisions and representations to the court. Mr. Steele's information formed a significant portion of the FBI's warrant application, and the FISA application relied more heavily on Steele's credibility than on any independent verification or corroboration for his claims. Thus the basis for the warrant authorizing surveillance on a U.S. citizen rests largely on Mr. Steele's credibility. The Department of Justice has a responsibility to

---

[23] (U) Michael Isikoff, *U.S. Intel Officials Probe Ties Between Trump Adviser and Kremlin*, YAHOO NEWS (Sept. 23, 2016).
[24] (U) *Id.*
[25] (U) *Id.*
[26] (U) Bensinger *et. al*, BUZZFEED.

determine whether Mr. Steele provided false information to the FBI and whether the FBI's representations to the court were in error.

(U) Accordingly, we are referring Christopher Steele to the Department of Justice for investigation of potential violation(s) of 18 U.S.C. § 1001.