# Exhibit 46

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF FLORIDA

 3                      MIAMI DIVISION

 4

 5   _____

 6   IN RE THIRD PARTY SUBPOENA TO   |   Case No.

 7   FUSION GPS                      |   0 18-mc-60528-UU

 8   _____|

 9   ALEKSEJ GUBAREV,                |

10   XBT HOLDING S.A. and            |

11   WEBZILLA, INC.                  |   Case No.

12        Plaintiffs,                |   0 17-cv-60426-UU

13   -v-                             |

14   BUZZFEED, INC., and             |

15   BEN SMITH                       |

16        Defendants.                |

17   _____|

18

19

20

21
```



1               P R O C E E D I N G S

2

3          THE VIDEOGRAPHER:  We're now on the record.

4  Here begins the video deposition of Peter R. Fritsch

5  taken in the matter of Aleksej Gubarev, et al, versus

6  BuzzFeed, Inc., et al.

7          Today's date is August 30th, 2018.  The time

8  is 10:04.

9          This deposition is being held at 1800 M

10 Street Northwest in Washington, D.C.

11         Our court reporter is Kenneth Norris, the

12 camera operator's Nhat Pham, both on behalf of

13 Esquire.

14         Will counsel please introduce themselves and

15 state who they represent?

16         MR. FRAY-WITZER:  Evan Fray-Witzer for the

17 plaintiff.

18         MR. SIEGEL:  Nathan Siegel for the

19 defendants.

20         MS. BOLGER:  Katherine Bolger for Defendants

21 and with me is Nabiha Syed, the client.



1        MR. LEVY:  Josh Levy for the deponent.

2        MS. CLATTENBURG:  Rachel Clattenburg for the

3   deponent.

4        THE VIDEOGRAPHER:  Will the court reporter

5   please swear in the witness?

6   Whereupon,

7                  Peter R. Fritsch,

8   a witness of lawful age, after being duly sworn to

9   tell the truth, the whole truth and nothing but the

10  truth, testified as follows:

11                     EXAMINATION:

12  BY MR. FRAY-WITZER:

13      Q.   Good morning.

14      A.   Good morning.

15      Q.   I'm Evan Fray-Witzer.  I represent the

16  plaintiffs in this matter.

17           If you wouldn't mind, please, first telling

18  us your name for the record?

19      A.   Sure.  It's Peter R. Fritsch, and that's

20  F-R-I-T-S-C-H.

21      Q.   Thank you.



```
 1  public record research on behalf of one of their
 2  clients.
 3  BY MR. FRAY-WITZER:
 4      Q.   And had Fusion hired Orbis prior to the
 5  Trump investigation?
 6      A.   I honestly don't recall.  We may have.  If
 7  we had, it would have been a small, limited
 8  engagement.  But I don't recall.
 9      Q.   How did Fusion come to engage Mr. Steele
10  and/or Orbis in connection with the Trump
11  investigation?
12      A.   Sure.
13           As I testified earlier, we had been looking
14  at Mr. Trump and his business record for the better
15  part of eight or nine months, during which time we had
16  come to a couple of decisions.  One was that we were
17  exhausting some of the public record material,
18  especially as they related to Donald Trump's
19  engagement with Russia.  Public records aren't --
20  aren't easily accessed in Russia or the former Soviet
21  Union.
```



1           We decided that that was a major area of
2    inquiry in which we could add value.
3           So Mr. Simpson and myself decided that we
4    would like to supplement our research with some more
5    human inquiries.
6           We considered a number of contractors who do
7    that kind of work and we decided after much discussion
8    that Mr. Steele was the most highly qualified and
9    reliable contractor we could hire, and so we did so.
10          You have to understand, too, that in that
11   line of work and especially when you're dealing with
12   Russia and the former Soviet Union, there's a large
13   amount of bad information and disinformation that can
14   flow through to someone like a research company like
15   ours.  We trusted Chris to identify, sort out, sift,
16   disqualify that sort of information.  That is what he
17   spent a career at MI6 learning how to do and we knew
18   him to have the most robust and experienced source
19   network in those countries.
20      Q.   When you say you knew him to have the most
21   robust source network in those countries, how did you



```
 1  know that?
 2          MR. LEVY:  I'm going to instruct the witness
 3  to not discuss sources, their identities pursuant to
 4  the Court's limitation in its order of July 28, 2018.
 5          Beyond that you can answer the question.
 6          THE WITNESS:  We had met with Chris many
 7  times and we knew the quality of his information and
 8  his knowledge and depth of his knowledge to be
 9  outstanding.
10          As I mentioned, he was the former head of
11  the Russia desk at MI6.  I don't know another
12  comparable source working in the private sector today.
13  BY MR. FRAY-WITZER:
14     Q.   When did -- when did you engage Mr. Simpson
15  and/or Orbis?
16          MR. LEVY:  Mr. Simpson?
17  BY MR. FRAY-WITZER:
18     Q.   Mr. Steele and/or Orbis?  Thank you.
19     A.   I believe it was in May, late May of 2016.
20     Q.   So in late May of 2016, Mr. Steele had been
21  gone from MI6 for seven years.  Do you know if he had
```



```
 1        A.   I believe that's right.  There may have been
 2   other communications or other memos but I don't
 3   recall.
 4        Q.   When did you first learn that Mr. Simpson
 5   had created what we are referring to as the December
 6   memo?
 7             MR. LEVY:  Objection, you said Mr. Simpson.
 8             MR. FRAY-WITZER:  Thank you.
 9   BY MR. FRAY-WITZER:
10        Q.   When did you -- when did you first learn
11   that Mr. Steele had created what we're referring to as
12   the December memo?
13        A.   Immediately after December 13th or soon
14   thereafter.
15        Q.   And how did it first come to Fusion's
16   attention that Mr. Simpson had created the December
17   memo?
18             MR. LEVY:  Objection.  It wasn't Mr.
19   Simpson.
20             MR. FRAY-WITZER:  All right.
21   BY MR. FRAY-WITZER:
```



1    Q.  How did it come to your attention that Mr.
2  Steele had created the December memo?
3    A.  We learned that Orbis created a memo dated
4  December 13th when Chris informed us that there was an
5  additional memo coming to us.  And I can't -- we can't
6  recall whether that was a telephonic communication or
7  an e-mail or encrypted message.
8    Q.  Is there a reason in this instance that you
9  are distinguishing a memo created by Orbis as opposed
10 to a memo created by Mr. Steele?
11   A.  Yes.  Because all these memoranda benefit
12 from the input of Orbis's -- Mr. Steele's company,
13 Orbis.
14   Q.  Okay.  But it's not --
15   A.  To the best of our understanding.
16   Q.  It's not that there's something different
17 about the --
18   A.  No.
19   Q.  -- December memo?
20   A.  No.  Sorry.
21   Q.  To the best of your recollection before



```
 1       Q.    In your experience do encrypted e-mails show
 2   some sort of indication that they are encrypted when
 3   you look at them?
 4             MR. LEVY:  Objection, vague.
 5             THE WITNESS:  I don't know.
 6   BY MR. FRAY-WITZER:
 7       Q.    Prior to receiving the December memo, did
 8   Fusion know who Alex Gubarev was?
 9       A.    No, we did not.
10       Q.    Prior to receiving the December memo, did
11   Fusion know who XBT Holding was?
12       A.    No, we did not.
13       Q.    And prior to receiving the December memo,
14   did Fusion know who Webzilla was?
15       A.    No, we didn't.
16             (Fritsch Exhibit No. 11 was marked for
17   identification.)
18   BY MR. FRAY-WITZER:
19       Q.    You're being shown what's been marked as
20   Exhibit Number 11.
21             Can you tell me, is this the December memo
```



```
 1              REPORTER'S CERTIFICATE

 2              District of Columbia

 3              County of Washington, to wit:

 4              I, KENNETH NORRIS, a Notary Public of

 5   the District of Columbia, County of Washington, do

 6   hereby certify that the within named witness

 7   personally appeared before me at the time and place

 8   herein set out, and after having been duly sworn by

 9   me, according to law, was examined.

10              I further certify that the examination

11   was recorded stenographically by me and this

12   transcript is a true record of the proceedings.

13              I further certify that I am not of

14   counsel to any of the parties, nor in any way

15   interested in the outcome of this action.

16              As witness my hand and notarial seal

17   this 30th day of August 2018.

18

19

20

21
```



ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com