# Exhibit 36

*James Madison Project v. Dep't of Justice*
No. 1:17-cv-00144-APM

Defendants' Motion for Summary Judgment

Ex. B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT and )
JOSH GERSTEIN, Politico, )
                                 Plaintiffs, )
)
v. )  Civil Action No. 17-cv-0144
)
DEPARTMENT OF JUSTICE, )
CENTRAL INTELLIGENCE AGENCY, )
OFFICE OF THE DIRECTOR OF NATIONAL )
INTELLIGENCE, and DEPARTMENT OF )
DEFENSE, )
)
                                 Defendants. )

## DECLARATION OF EDWARD M. GISTARO, DEPUTY DIRECTOR OF NATIONAL INTELLIGENCE FOR INTELLIGENCE INTEGRATION, OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE

I, Edward M. Gistaro, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I currently serve as the Deputy Director of National Intelligence for Intelligence Integration (DDNI/II), Office of the Director of National Intelligence (ODNI). Since joining ODNI in 2014, I have held the positions of Assistant Deputy Director of National Intelligence for Intelligence Integration and worked on the 2016 President-elect Transition Team. My intelligence career began with the Central Intelligence Agency (CIA) in 1991 where I served in a number of management and analytical positions including Deputy Director for the CIA/DI's Middle East and North Africa Office, Deputy Chief of the Iran Operations Division, and as the National Intelligence Officer for Transnational Threats. I have also served in the CIA's Counterterrorism Center, as a sub-Saharan Africa team chief and as member of the President's Daily Brief staff.

2. The mission of the DDNI/II is to lead Intelligence Community (IC) integration to optimize mission capabilities, inform enterprise decision and integrate and deliver relevant intelligence to our customers. As DDNI/II, I oversee the following components; Mission Integration Division;

1

National Intelligence Council, National Intelligence Management Council and the President's Daily Brief Staff.

3. Under a written delegation of authority by the Director of National Intelligence (DNI) pursuant to Section 1.3(c) of Executive Order 13526, I hold original classification authority (OCA) at the TOP SECRET level. I am authorized, therefore, to conduct classification reviews and to make original classification and declassification decisions for ODNI's intelligence information up to and including the TOP SECRET level. Section 1.1 of Executive Order 13526 provides that information may be originally classified if: (1) an OCA is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in Section 1.4 of the Executive Order , and (4) the OCA determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and the OCA is able to identify or describe the damage. Section 1.2(a) of E.O. 13526 provides that information should be classified at the TOP SECRET level if its unauthorized disclosure reasonably could be expected to cause exceptionally grave damage to the national security. Information should be classified at the SECRET level if its unauthorized disclosure reasonably could be expected to cause serious damage to the national security. At the time information is classified, it is normally assigned a date for declassification, often 25, 50, or even 75 years from the date of creation. However, prior to any declassification, the information is normally reviewed to ensure that there would be no harm to national security if declassified.

4. Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request received by ODNI/IMD via email on January 11, 2017.[1] (See Exhibit A). I submit this declaration in support of the federal defendants' Motion for Summary Judgment to be filed on July 7, 2017. The purpose of this declaration is to explain and justify, to the greatest extent possible on the public record, the actions taken by the Intelligence Community (IC)

---

[1] Identical FOIA requests were received by the Central Intelligence Agency (CIA), Federal Bureau of Investigation (FBI), and the National Security Agency (NSA).

defendants in response to plaintiffs' request for information under the FOIA, 5 U.S.C. § 552. In addition, I offer this declaration to explain the defendants' assertion of Exemptions (b)(1) and (b)(3) in response to the first part of plaintiffs' FOIA request; and the assertion of the Glomar response in conjunction with those same exemptions to the remainder of plaintiffs' requests. I note that ODNI is also submitting a classified declaration for the court's *in camera, ex parte* review to provide additional justification for IC defendants' response.

### I. Responsibilities and Authorities of the Director of National Intelligence (DNI) and the Office of the Director of National Intelligence (ODNI)

5. Congress created the position of the DNI in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1101(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (IRTPA) (amending Sections 102 through 104 of Title 1 of the National Security Act of 1947). Subject to the authority, direction, and control of the President, the DNI serves as the head of the IC,[2] and as the principal adviser to the President and the National Security Council for intelligence matters related to the national security. 50 U.S.C. §§ 3023(b)(1), (2). The National Security Act of 1947, as amended, also created the ODNI. The function of the ODNI is to assist the DNI in carrying out his duties and responsibilities under the Act and other applicable provisions of law, and to carry out such other duties as may be prescribed by the President or by law.

6. The responsibilities and authorities of the DNI are set forth in the National Security Act of 1947, as amended. These responsibilities include ensuring that national intelligence is provided to the President, heads of the departments and agencies of the Executive Branch, the Chairman of the Joint Chiefs of Staff and senior military commanders, and the Senate and House of Representatives and committees thereof. 50 U.S.C. § 3024(a)(1). The DNI is charged with establishing the

---

[2] The IC is comprised of ODNI; the CIA; the NSA; the Defense Intelligence Agency; the National Geospatial-Intelligence Agency (NGA); the National Reconnaissance Office; other offices within the Department of Defense for the collection of specialized national intelligence through reconnaissance programs; the intelligence elements of the Army, the Navy, the Air Force, the Marine Corps, the Coast Guard, the FBI, the Drug Enforcement Administration, and the Department of Energy; the Bureau of Intelligence and Research of the Department of State; the Office of Intelligence and Analysis of the Department of the Treasury; the Office of Intelligence and Analysis of the Department of Homeland Security; and such other elements of any other department or agency as may be designated by the President, or jointly designated by the DNI and heads of the department or agency concerned, as an element of the IC. See 50 U.S.C. § 3003(4); see also Executive Order 12333 (as amended), § 3.5.

3

objectives of; determining the requirements and priorities for; and managing and directing the tasking, collection, analysis, production, and dissemination of national intelligence by elements of the IC. 50 U.S.C. §§ 3024(f)(1)(A)(i) and (ii).

7. In addition, the National Security Act of 1947, as amended, provides that the DNI "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. §3024(i)(1). Consistent with this responsibility, the DNI establishes and implements guidelines for the IC for the classification of information under applicable law, Executive orders, or other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(2)(A), (B). See also Executive Order 12333 § 1.3(b)(8) (stating that the DNI "[s]hall protect, and ensure that programs are developed to protect, intelligence sources, methods, and activities from unauthorized disclosure"). By this language Congress expressed its determination that disclosure of intelligence sources and methods is potentially harmful and directed the DNI to protect them.

## II. Background

### a. The Intelligence Community Assessment

8. On December 6, 2016, then President of the United States, Barack Obama, assigned then DNI, James Clapper, the task of preparing an intelligence report addressing the activities of the Russian government in relation to the 2016 U.S. presidential election.

9. DNI Clapper assigned the task of preparing this report to the National Intelligence Council (NIC). The NIC is a key ODNI component composed of senior analysts and national security policy experts, who provide the IC's best judgments on crucial international issues. In drafting the analytical assessment, the NIC coordinated with, and drew intelligence from, CIA, FBI and NSA. On January 6, 2017, ODNI publicly released a declassified version of that classified IC assessment, entitled *Assessing Russian Activities and Intentions in Recent U.S. Elections*. The report "covers the motivation and scope of Moscow's intentions regarding U.S. elections and Moscow's use of cyber tools and media campaigns to influence U.S. public opinion."

10. The background to the report explains that it "is a declassified version of a highly classified

4

assessment that has been provided to the President and to recipients approved by the President." Additionally, the background explains that the IC "rarely can publicly reveal the full extent of its knowledge or the precise bases for its assessments as the release of such information would reveal sensitive sources or methods and imperil the ability to collect critical and foreign intelligence in the future." Accordingly, "while the conclusions in the report are all reflected in the classified assessment, the declassified report does not and cannot include the full supporting information, including specific intelligence and sources and methods."

### b. Plaintiffs' FOIA Requests

11. By letters dated January 11, 2017, plaintiffs submitted requests to ODNI, CIA, NSA, and FBI seeking "records, including cross-references, memorializing the following:

> 1) The two page "synopsis" provided by the U.S. Government to President-Elect Donald Trump ("President-Elect Trump") with respect to allegations that Russian Government operatives had compromising personal and financial information about President-Elect Trump;
>
> 2) Final determinations regarding the accuracy (or lack thereof) of any of the individual factual claims listed in the two page synopsis; and
>
> 3) Investigative files relied upon in reaching the final determination referenced in category #2."

Additionally, plaintiffs requested both expedited processing and a public interest fee waiver in their request. (Exhibit A).

12. For the purpose of "context," plaintiffs' FOIA request cited and described a CNN article, which reported that "during the presentation provided to President-Elect Trump regarding Russian interference in the 2016 election he was also provided with a two page synopsis appended to the presentation. The two page synopsis included allegations derived from a 35 page 'dossier' allegedly compiled by a former British intelligence operative."[3]

13. Before the IC defendants could substantively respond to their requests, plaintiffs filed their complaint in the instant action on January 23, 2017 and followed with an amended complaint on February 13, 2017. (*See* ECF Nos. 1 & 7).

---

[3] http://www.cnn.com/2017/01/10/politics/donald-trump-intelligence-report-russia/index.html (cited in Exhibit A).

5

14. ODNI states, on its behalf and on behalf of NSA and CIA[4], that for the reasons discussed *infra*, it is withholding one two-page document responsive to part 1 of Plaintiffs' FOIA request, pursuant to Exemptions (b)(1) and (b)(3) of the FOIA, and neither confirming nor denying IC possession of information responsive to parts 2 and 3 of Plaintiffs' request.

### III. Discussion of FOIA Exemptions Protecting Classified Information

#### a. Exemption (b)(1)

15. Exemption (b)(1) provides that the FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the information withheld pursuant to Exemption (b)(1) satisfies the procedural and the substantive requirements of Executive Order 13526, which governs classification. See E.O. 13526 § 1.1(a), § 1.4(c).

16. This information is owned by, and is under the control of, the U.S. Government. As described below, the information falls under classification categories § 1.4(c)-(d) of the Executive Order because it concerns, "intelligence activities (including covert action), [or] intelligence sources or methods…" and "foreign relations or foreign activities of the United States, including confidential sources." Further, unauthorized disclosure of this material could reasonably be expected to result in exceptionally grave damage to national security. None of the information at issue has been classified in order to conceal violations of law, inefficiency or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. Further, the responsive document is properly marked in accordance with § 1.6 of the Executive Order.

17. ODNI has identified a two-page document, which was included as an attachment to the

---

[4] In lieu of submitting three identical declarations—one each from ODNI, NSA and CIA, the USG is submitting one declaration representing the interests all three agencies.

classified NIC assessment described above and is responsive to the first portion of Plaintiffs' request. I have conducted a line-by-line review of the document at issue and have determined that all of its content is currently and properly classified. Disclosing any information in this document would reveal IC intelligence sources and methods. A defining characteristic of agency activities within the IC is that they are typically carried out through clandestine means, and therefore, they must remain secret in order to be effective. Any unauthorized disclosure of intelligence information could, for example, jeopardize the clandestine nature of its intelligence activities or otherwise reveal previously undisclosed information about its sources, methods, activities, capabilities, interests, strengths, limitations, weaknesses, and resources. Terrorist organizations, foreign intelligence services, and other hostile groups use IC information to thwart our activities or exploit perceived or identified weaknesses or limitations and attack the United States and its interests. Intelligence sources and methods include the basic business practices and methodological "tools" used by the IC to accomplish its mission. These sources and methods must be protected from disclosure in every situation where a certain intelligence interest, capability, or technique, if disclosed, would allow our adversaries to take countermeasures to nullify effectiveness. Likewise, weakness or limitations in the IC capabilities must also be protected from disclosure in order to protect against exploitation by our adversaries. As explained in the background to the unclassified, publicly-released version of the report, revealing the specific bases for the analytical assessments or supporting information would reveal sensitive sources and/or methods, which could reasonably be expected to damage the IC's continued ability to collect foreign intelligence. For these reasons, I have determined that the information must be withheld in full pursuant to Exemption (b)(1).

    **b. Exemption (b) (3)**

18.    Exemption (b)(3) protects information that is specifically exempted from disclosure by statute. A withholding statute under Exemption (b)(3) must (A) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish particular criteria for withholding or refer to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

19. Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (the "National Security Act"), which provides that the DNI "shall protect intelligence sources and methods from unauthorized disclosure," has been widely recognized by courts to constitute a withholding statute in accordance with Exemption (b)(3). All of the information withheld pursuant to Exemption (b)(1) constitutes intelligence sources and methods and I find it to be properly exempt from disclosure under the National Security Act. Although no harm rationale is required, for the reasons discussed above, the release of this information could significantly impair the IC's ability to carry out its core missions. As such, I have determined that such information, reflected in the responsive document, is properly withheld under Exemption (b)(3).

### c. Glomar response

20. In a typical scenario, a FOIA requester submits a request to an agency for information on a particular subject, and the agency conducts a search of non-exempt records and advises where responsive records have been located. If records are located, the agency provides the non-exempt records or reasonably segregable non-exempt portions of those records. In this typical circumstance, the agency's response – either to provide or not to provide information the requesters sought – actually confirms the existence or nonexistence of these records. Typically, this confirmation reveals neither classified information, nor intelligence sources or methods because the mere fact that the agency possesses records on a particular subject is often not a classified fact.

21. In other cases, the confirmation or denial of the existence or nonexistence of other responsive records would reveal a classified fact—for example, whether the IC agency has an intelligence interest in a particular individual or activity, or has access to a particular clandestine intelligence source or method. If a requester were to ask for documents that would reveal whether IC analysts have access to a classified intelligence source or method, the mere act of acknowledging the existence of responsive records – even if those records were withheld in full – would in and of itself reveal a classified fact, namely, the existence of the classified source or method. Accordingly, the IC agency would provide what is commonly referred to as a "Glomar

8

response," so that no classified information could be discerned by either confirmation or denial of the existence of the source or method.[5] Section 3.6(a) of Executive Order 13526 provides the authority for the IC to issue such a response, stating that: "An agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors."

22. Parts 2 and 3 of plaintiffs' request present just such a circumstance, wherein the mere confirmation or denial of the existence or nonexistence of responsive records would reveal a classified fact—namely, whether the IC has records "regarding the accuracy (or lack thereof) of any of the individual factual claims listed in the 2 page synopsis; and [i]nvestigative files relied upon in reaching [such] determinations . . . ."

23. In developing an analytical assessment, IC agencies rely on a number of sources and types of reporting. Depending on the source, the reporting may be accorded some degree of weight or could be entirely discredited. In some instances, the IC may merely provide the content of the reporting and take no stance on reliability or accuracy. The second part of plaintiffs' request presumes that the IC possesses "final determinations regarding the accuracy (or lack thereof) of any of the individual factual claims listed in the two page synopsis." However, the IC cannot confirm or deny whether it relied upon certain material in forming its intelligence assessment. To do so, would permit private individuals to try to pick apart the bases for a particular intelligence assessment. Here, if the IC were to confirm the existence of responsive records, it would reveal that the two-page synopsis played some role in the IC's conclusions, which would, in turn, be revealing of the analytic process employed for this intelligence assessment. Confirming or denying whether a particular product served as a basis for an intelligence assessment would reveal analytical tradecraft.

24. For the foregoing reasons, confirming or denying the existence of responsive materials

---

[5] The "Glomar" term comes from the case Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which upheld the CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning CIA's reported contacts with the media regarding Howard Hughes's ship, the "Hughes Glomar Explorer."

9

would create a harm protected by FOIA Exemption (b)(1) and the National Security Act in conjunction with Exemption (b)(3).

25. With respect to the third part of plaintiffs' request, seeking "[i]nvestigative files relied upon in reaching the final determinations referenced in category #2," this again presumes that the underlying two-page document has some significance – either for intelligence value or investigative purposes. Because the IC does not have investigative, nor law enforcement, authorities with respect to the subject matter of plaintiffs' request, I respectfully refer the Court to the declaration submitted by the FBI for additional details as to why confirming or denying the existence of responsive material would create a harm protected by FOIA Exemption (b)(7)(A).

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this __29__ day of June, 2017.

Edward M. Gistaro
Deputy Director of National Intelligence
Intelligence Integration

10

# EXHIBIT A

# The James Madison Project
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036


JAN 1 1 2017

(202) 498-0011
(202) 330-5610 fax

E-Mail: FOIA@JamesMadisonProject.org
http://www.JamesMadisonProject.org

January 11, 2017

**VIA E-MAIL**

Jennifer L. Hudson
Director, Information Management Division
Office of the Director of National Intelligence
Washington, D.C. 20511

Re:   FOIA Request – DNI Report

Dear Director Hudson:

    This is a request on behalf of The James Madison Project ("JMP") and Josh Gerstein ("Mr. Gerstein")(hereinafter referred to jointly as "the Requesters") under the Freedom of Information Act, 5 U.S.C. § 552, *et seq*. This request seeks copies of Office of Director of National Intelligence ("ODNI") records, including cross-references, memorializing the following:

1) The two page "synopsis" provided by the U.S. Government to President-Elect Donald Trump ("President-Elect Trump") with respect to allegations that Russian Government operatives had compromising personal and financial information about President-Elect Trump;

2) Final determinations regarding the accuracy (or lack thereof) of any of the individual factual claims listed in the two page synopsis; and

3) Investigative files relied upon in reaching the final determinations referenced in category #2.

    ODNI can limit the timeframe of its search from January 1, 2015, up until the date the agency begins conducting actual searches for responsive records. The Requesters expressly reject any effort by ODNI to set the end date for conducting searches as the date of acceptance of this FOIA request with respect to any of the categories of information sought. The scope of the

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

Case 0:17-cv-60426-UU Document 236-27 Entered on FLSD Docket 10/01/2018 Page 15 of 17
Case 1:17-cv-00144-APM Document 44 Filed 07/07/17 Page 14 of 16

The James Madison Project

searches should not be limited to ODNI-originated records and should be construed to include records that are currently in the possession of a U.S. Government contractor for purposes of records management.

For context, CNN has reported that during the presentation provided to President-Elect Trump regarding Russian interference in the 2016 election he was also provided with a two page synopsis appended to the presentation. The two page synopsis included allegations derived from a 35 page "dossier" allegedly compiled by a former British intelligence operative. *http://www.cnn.com/2017/01/10/politics/donald-trump-intelligence-report-russia/index.html* (last accessed January 11, 2017). That 35 page "dossier" was later published by Buzzfeed. *http://money.cnn.com/2017/01/10/media/buzzfeed-trump-report/* (last accessed January 11, 2017).

The Requesters are pre-emptively waiving any objection to the redaction of the names of any U.S. Government officials below a GS-14 position or whom otherwise were not acting in a supervisory position. The Requesters similarly waive any objection to redactions of the names of any U.S. Government contractors in a position of authority similar to that of a GS-13 series civilian employee or below.

In terms of all other third parties who work or worked for the U.S. Government and whose names appear in records responsive to this request, the Requesters submit that the privacy interests of those individuals have been diminished by virtue of their involvement in one or more of the U.S. Government functions described above as falling within the scope of this request. There is a recognized inverse relationship between the position of authority that a government employee holds and the strength of that employee's privacy interests. See Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984); Jefferson v. Dep't of Justice, 2003 U.S. Dist. LEXIS 26782, *11 (D.D.C. Nov. 14, 2003); see also Perlman v. Dep't of Justice, 312 F.3d 100, 107-109 (2d. Cir. 2002)(setting forth five factors to consider in weighing government employee's privacy interests against public interest in disclosure, including employee's rank and whether information sheds light on a government activity).

The work performed by these third parties (whether they be U.S. Government officials or contractors) was part of their official responsibilities on behalf of the U.S. Government and was not of a personal nature. They served in a position of trust and authority to, among other things, investigate the credibility of the allegations (as well as the source of the allegations himself) contained in the original 35 page dossier and to subsequently summarize findings regarding certain allegations in the two page synopsis. Given that responsive records memorializing the work they performed will shed light on government activity, particularly by revealing how and why ODNI viewed certain allegations as sufficiently credible to warrant including them in the two page synopsis (and others as lacking the credibility to warrant inclusion), it would be reasonable to conclude that the relevant third parties' respective (and diminished) privacy

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

Case 0:17-cv-60426-UU Document 226-27 Entered on FLSD Docket 10/01/2018 Page 16 of 17
Case 1:17-cv-00144-APM Document 44-4 Filed 07/07/17 Page 15 of 16

The James Madison Project

interests are outweighed by the public interest in disclosure of the information indexed to their name.[1]

We are also requesting a waiver of or, at a minimum, a reduction in fees. JMP and Mr. Gerstein qualify – in their own respective rights – for designation as representatives of the news media.

JMP is a non-partisan organization dedicating to promoting government accountability and the reduction of secrecy. *http://jamesmadisonproject.org/* (last accessed August 7, 2015). The organization is a frequent FOIA requester and litigator and Federal agencies routinely and regularly grant JMP fee waivers. Mr. Gerstein is senior White House reporter for Politico. *http://www.politico.com/staff/josh-gerstein* (last accessed December 22, 2016).

The Requesters have the ability to disseminate information on a wide scale and intend to use information obtained through this FOIA request in an original work, particularly through news articles published by Mr. Gerstein. According to 5 U.S.C. § 552(a)(4)(A)(ii),

> the term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

The Requesters can demonstrate their intent and ability to publish or otherwise disseminate information to the public. See Nat'l Security Archive v. Dep't of Defense, 880 F.2d 1381, 1386 (D.C. Cir. 1989). Mr. Gerstein maintains the ability to produce news articles that will be published by Politico. In the event that fees are ultimately assessed, please do not incur expenses beyond $25 without first contacting our office for explicit authorization.

There is considerable public interest in disclosure of the requested records. The possibility of one or more of the allegations being accurate raises significant concerns about possible exposure President-Elect Trump would have to foreign exploitation or blackmail. Disclosure of records responsive to this request would shed light on the degree to which (if at all) ODNI viewed any of the accusations as being credible.

Finally, and again in reliance upon the same public interest reasons outlined above, the Requesters are seeking expedited processing of their FOIA request. FOIA permits expedited processing when a "compelling need" exists. 5 U.S.C. § 552(a)(6)(E)(v). Specifically, "compelling need" means "with respect to a request made by a person primarily engaged in

---

[1] We acknowledge, of course, that some redactions or narrowly focused withholdings might ultimately be appropriate as ODNI processes the responsive records.

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

Case 0:17-cv-60426-UU Document 226-27 Entered on FLSD Docket 10/01/2018 Page 17 of 17
Case 1:17-cv-00144-APM Document 44-4 Filed 07/07/17 Page 16 of 16

The James Madison Project

disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." Id. at § 552(a)(6)(E)(v)(II).

The records responsive to this FOIA request clearly qualify as information regarding U.S. Government activity that the public has an urgent and active need to know. President-Elect Trump's expansive financial connections (much of the details of which remain private) already raised significant concerns regarding potential exposure to foreign influence, and arguably are implicated by the unverified claims contained in the 35 page "dossier" (and, most likely, the two page synopsis). *http://www.huffingtonpost.com/entry/donald-trump-turkey-business_us _5836188ae4b01ba68ac41d9f* (last accessed December 2, 2016); *http://www.cnn.com/2016 /11/21/politics/trump-overseas-business-interests/index.html* (last accessed December 2, 2016). In a press conference on January 11, 2017, President-Elect Trump announced that he will not be divesting his assets but rather will have two of his adult children run the company by way of a trust agreement. *https://www.yahoo.com/news/trump-business-pursue-us-deals-164541819.html* (last accessed January 11, 2017). This more than sufficiently satisfies the statutory requirement to demonstrate a "compelling need".

If ODNI denies all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. We request that any documents or records produced in response to this request be provided in electronic (soft-copy) form wherever possible. Acceptable formats are .pdf, .jpg, .gif, .tif. Please provide soft-copy records by email or on a CD if email is not feasible. However, the Requesters do not agree to pay an additional fee to receive records on a CD, and in the instance that such a fee is required, the Requesters will accept a paper copy of responsive records.

Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me at (202) 907-7945 or via e-mail at brad@jamesmadisonproject.org.

Sincerely,

/s/

Bradley P. Moss

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*