# EXHIBIT 9

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

-----------------------------------------------------------------X

MIKHAIL FRIDMAN, PETR AVEN, AND
GERMAN KHAN,
  c/o CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005,

                Plaintiffs,

    -v-

ORBIS BUSINESS INTELLIGENCE LIMITED
AND CHRISTOPHER STEELE,
9-11 Grosvenor Gardens
London SW1W OBD,

           Defendants.

-----------------------------------------------------------------X

**18- 0 0 0 2 6 6 7**

2018 CA _____

**COMPLAINT**

**COMPLAINT**
(JURY TRIAL DEMANDED
DEFAMATION)

Plaintiffs Mikhail Fridman, Petr Aven, and German Khan, by their attorneys

Carter Ledyard & Milburn LLP, allege as follows:

**INTRODUCTION**

1.    This is a defamation case brought by three international businessmen who

were defamed in widely disseminated political opposition research reports commissioned

by political opponents of candidate Donald Trump in the 2016 presidential election cycle.

The reports (which came to be known as the "Trump Dossier," the "Steele Dossier" and

simply as the "Dossier") were published both before and after the 2016 presidential

election by Defendants Orbis Business Intelligence Limited ("Orbis") and Christopher

Steele ("Steele" and, with Orbis, the "Orbis Defendants") pursuant to an engagement between Orbis and Fusion GPS ("Fusion")—a Washington, D.C. based firm specializing in political opposition research whose principal, Glenn Simpson ("Simpson"), is a former journalist. Fusion trafficked in procuring damaging information about political candidates from various sources, including willing suppliers of such information like Defendants. Defendants accepted this engagement by Fusion knowing it was intended to, and likely would, have profound effects in the United States, and specifically the District of Columbia, because the engagement was political opposition research intended to be used in connection with the election of the President of the United States.

2. One of the reports, written by Defendants and supplied to Fusion, is gravely damaging in that, directly or by implication from the rest of the Dossier, it falsely accuses the Plaintiffs—and Alfa ("Alfa"), a consortium in which the Plaintiffs are investors—of criminal conduct and alleged cooperation with the "Kremlin" to influence the 2016 presidential election. But neither the Plaintiffs nor Alfa committed any of the acts recklessly attributed to them by the Defendants. To the contrary, the Plaintiffs and Alfa are collateral damage in a U.S. political operation in which Defendants willingly and knowingly participated, whose focus was an alleged relationship (between the Kremlin and the Trump campaign) which has nothing whatsoever to do with the Plaintiffs.

3. The specific "report" that includes facially defamatory statements about the Plaintiffs is one of seventeen Company Intelligence Reports 2016 ("CIRs") authored by Defendants that comprise the Trump Dossier. The Defendants prepared Company Intelligence Report 112 (the "Report" or "CIR 112"), which makes statements about the Plaintiffs, for inclusion in the Trump Dossier, even though the Plaintiffs' past, current

-2-

and intended future activities have nothing to do with the Dossier's intended subject matter and purpose. Broadly, the Dossier purports to describe details of an alleged scheme between the Russian government and the Trump presidential campaign to unlawfully manipulate the result of the 2016 U.S. presidential election in favor of candidate Trump.

4.      The Defendants prepared CIR 112 as part of their engagement by Fusion to conduct "opposition research" (known as "oppo research" by its practitioners and the media) against Trump, even though its text, unlike that of the other reports, does not mention Trump or his campaign. Opposition research, in essence, is the gathering of information for the purpose of eventually discrediting or otherwise harming the candidacy of a candidate for a public office. Opposition research is neither objective nor neutral. Instead, it is skewed from the outset in favor of appearing to find negative information about individuals—the essence of the product that political opposition research practitioners such as the Defendants are hired to produce.

5.      Fusion and Simpson were initially hired to conduct opposition research by Republican Party political opponents of candidate Trump during the primary phase of the 2016 election cycle. That engagement was terminated when it became clear that Mr. Trump would be the Republican nominee. At that point, Fusion and Simpson solicited and obtained an engagement with the Democratic National Committee and the campaign of candidate Hillary Clinton to gather discrediting information about Mr. Trump, including any connections he might have to Russian businesses or Russia's government. In connection with that engagement, Fusion hired Orbis and Steele, who promptly went to work on the project in June, 2016. Steele used his network of "paid collectors" who

-3-

gathered information from "subsources" in Russia, which Steele compiled into written reports for Fusion over the course of several months in 2016. Eventually, the reports, including the false and defamatory report at the heart of this case, were assembled in the document that has come to be known to the public as the Trump Dossier.

6. Steele has acknowledged that his reports are unverified "raw intelligence" and has refused to identify his alleged "sources." Indeed, the report at the heart of this case, CIR 112, has never been verified and none of its sources has ever been publicly identified. Defendants recklessly placed the Dossier's allegations of misconduct, inclugin criminal action, by Plaintiffs beyond Defendants' control - which allowed those allegations to get into the hands of media devoted to breaking news on the hottest subjects of the day: the Trump candidacy and his election as President.

7. CIR 112, dated September 14, 2016, falsely accuses the Plaintiffs of criminal bribery in the 1990s, of an inappropriate relationship with Vladimir Putin over the course of decades, and of participation in an alleged Trump-Russia scheme to influence the 2016 U.S. presidential election. At all relevant times Defendants were aware that they had not verified the contents of CIR 112 and that its content was provided by sources who would remain unidentified - whose credibility could therefore not be assessed by a reader of the Dossier. Defendants could easily have removed that report from the Dossier before they delivered it to their client, and before they and their client Fusion started peddling it to media and journalists in September and October 2016. They chose not to do so. Nor did they attempt to determine the veracity of that report with the Plaintiffs themselves.

-4-

8.    At all times during the Defendants' engagement by Fusion, it was either intended or clearly foreseeable that if the Dossier's contents, including CIR 112, were made available to third parties, including journalists, such provocative material would be published and republished, including to the public at large. Indeed, that is the entire purpose of "oppo research" in American politics. Those third parties included government officials, persons with governmental positions who were acting in a private capacity, as well as news media and journalists who could make its content public.

9.    On information and belief, Fusion arranged for Defendant Steele to brief selected members of the print and online media about the information he was compiling on candidate Trump and his campaign. Consistent with the intended purpose of "oppo research" to publicly discredit its target, Steele's briefings were designed to generate interest in the Dossier and secure eventual public dissemination of its content. At least some of the briefings Steele personally provided were held in late summer, 2016, in Washington D.C. at the Tabard Inn, and attendees included *The New Yorker* reporter Jane Mayer.[1] Briefings were also held for journalists from the *New York Times*, the *Washington Post, CNN, Yahoo News*, and others in September 2016. *The New York Times, The Washington Post*, and *Yahoo News* were given a second briefing.[2] Shortly thereafter, *Yahoo News* published an article by Michael Isikoff that described some of the content of the Dossier (referred to there as "intelligence reports" and "reports"), which

---

[1]  Jane Mayer, *Christopher Steele, the Man Behind the Trump Dossier,* THE NEW YORKER, March 12, 2018, available at https://www.newyorker.com/magazine/2018/03/12/christopher-steele-the-man-behind-the-trump-dossier.

[2]  *Defendants' Response to Claimants Request For Information, Gubarev, et al. v. Orbis Business Intelligence Limited and Christopher Steele*, Claim No. HQ1700413, In the High Court of Justice, Queens Bench Division, May 18, 2017, at 8 ("The Orbis/Steele Response").

was still being compiled at that time.[3]  Many other media articles reported speculative accounts of the Dossier's existence and contents.  In late October 2016, Defendant Steele gave an interview to David Corn, a writer for *Mother Jones* magazine, which, on October 31, 2016, published an article by Corn headlined "A Veteran Spy Has Given The FBI Information Alleging a Russian Operation to Cultivate Donald Trump."[4]  Corn's article stated that he had "reviewed" the early reports in the Dossier, and then quoted from those reports as well as statements made by Steele in the interview.  The publication to third parties and public dissemination of the Dossier's content had begun in earnest.

10.  In addition to cultivating media interest, the Defendants also arranged and participated in a meeting in Great Britain between Defendant Steele and David Kramer, who held no public office but was the director of a private foundation affiliated with U.S. Senator John McCain.  A purpose of that meeting was to show Kramer the content of the sixteen pre-election reports in the Dossier so he could brief Senator McCain, who at the time was a well-known and outspoken critic of Trump's candidacy.  Subsequently, in November 2016, Orbis and Steele arranged for a copy of all sixteen of the Dossier's then existing reports to be provided to Kramer in D.C. by Fusion—for redelivery and further

---

[3]  Michael Isikoff, *U.S. intel officials probe ties between Trump advisor and Kremlin*, YAHOO NEWS, Sept. 23, 2016, available at https://www.yahoo.com/news/u-s-intel-officials-probe-ties-between-trump-adviser-and-kremlin-175046002.html.

[4]  David Corn, *A Veteran Spy Has Given the FBI Information Alleging a Russian Operation to Cultivate Donald Trump*, MOTHER JONES, Oct. 31, 2016, available at https://www.motherjones.com/politics/2016/10/veteran-spy-gave-fbi-info-alleging-russian-operation-cultivate-donald-trump.

publication to Senator McCain in D.C.—including the report (CIR 112) that falsely accuses and defames Plaintiffs.[5]

11. In September, 2016, in a Washington D.C. hotel room, Steele met with Jonathan Winer—then an official in the State Department —and briefed him on the contents of the Dossier. Steele had a long history of supplying Winer with intelligence; between 2013 and 2016, Steele provided Winer with more than 100 reports, many of which Winer then shared with his colleagues in the State Department.[6] Steele also briefed a D.C. based official from the Department of Justice, Bruce Ohr.

12. As the 2016 presidential election neared, both print and online media in the United States and abroad began to expand their coverage of the Dossier and its alleged content. That coverage only intensified after Trump won the election. On January 10, 2017, one of those media entities, BuzzFeed, Inc., published the entire Dossier on the Internet, describing it there as "explosive." The copy of the Dossier that BuzzFeed published included the false and defamatory allegations of CIR 112 about the Plaintiffs and Alfa, along with the article entitled "These Reports Allege Trump Has Deep Ties to Russia."[7] The Dossier misspells Alfa's name throughout, incorrectly spelling it as "Alpha." BuzzFeed's article did not mention CIR 112 or its allegations, but

---

[5] The Orbis/Steele Response, at 5-6.

[6] Jonathan M. Winer, *Devin Nunes is Investigating Me. Here's the Truth*, THE WASHINGTON POST, February 8, 2018, available at https://www.washingtonpost.com/opinions/devin-nunes-is-investigating-me-heres-the-truth/2018/02/08/cc621170-0cf4-11e8-8b0d-891602206fb7_story.html?utm_term=.81c6a33fccf4.

[7] Ken Bensinger, Miriam Elder, Mark Schoofs, *These Reports Allege Trump Has Deep Ties To Russia*, BUZZFEED NEWS, Jan. 10, 2017, available at https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia?utm_term=.is1Q2ka2J.

-7-

focused instead on president-elect Trump and his alleged relationships with Russia, explaining that it "was publishing the full document so that Americans can make up their minds about allegations about the president-elect that have circulated at the highest levels of the U.S. government."[8]

13.    The Defendants intended, anticipated, or foresaw a high likelihood that providing third parties (like David Kramer, Senator McCain, and Jonathan Winer) and journalists with access to the Dossier's defamatory content would result in its republication by news media outlets, including online news media such as BuzzFeed.

14.    Plaintiffs seek an award of compensatory and punitive damages for the harm to their personal and professional reputations, current business interests, and the impairment of business opportunities that resulted from the blatantly false and defamatory statements and implications about them published recklessly to third parties by the Defendants and republished by BuzzFeed and countless other media around the world.

## THE PARTIES

15.    Plaintiffs Fridman, Aven, and Khan are ultimate beneficial owners of Alfa. Fridman and Khan are each citizens of both Russia and Israel, and Aven is a citizen of Russia. Plaintiffs are not widely known in the United States, had no role or involvement in any aspect of the 2016 U.S. presidential election, and made no public comments about it.

---

[8] *Id.*

16.     On information and belief, defendant Orbis is a private limited company headquartered in London, England. Orbis and Steele have had working relationships with Washington D.C.-based Fusion and Simpson for a number of years. In or about July of 2016, Orbis was engaged by and contracted with Fusion and Simpson to research and compile reports, on Trump/Russia relationships for delivery to Fusion in Washington, D.C., where Fusion would evaluate them and deliver them to its clients for their political purposes, including dissemination to government officials, journalists and news media in Washington D.C. and elsewhere to oppose the candidacy of Donald Trump in the 2016 U.S. Presidential campaign.

17.     Defendant Christopher Steele, on information and belief, is a former British intelligence officer and a founder and a principal of Orbis. Over the years of their working relationship, defendant Steele was D.C.-based Fusion's contact at Orbis for engagements and was primarily responsible for researching and creating the Dossier to be provided to Fusion in D.C. for further dissemination here and elsewhere. Upon information and belief, as set forth above, Steele disseminated the defamatory material about Plaintiffs to journalists, including *The Washington Post*, *Yahoo News* and David Corn of *Mother Jones* magazine, and to third parties like David Kramer, Senator McCain, and Jonathan Winer, in Washington, D.C. in the fall of 2016. Mr. Winer recently stated publicly in an article in the Washington Post that after his 2013 return to the U.S. State Department, Steele provided him with more than 100 of his Russia-focused reports, which Winer shared with a senior State Department official.[9]

---

[9] Winer, *supra.* note 6.

18.     Both Steele and Simpson used their prior experiences as an operative in British intelligence who had covered Russian matters (Steele) and as an investigative journalist for the Wall Street Journal (Simpson) to give their oppo research output a gloss of credibility and reliability which, in this case, was unwarranted.

19.     Steele recently told a journalist that he did not interview his sources in Russia himself, but gathered his information through "paid collectors" and "subsources." And by Steele's own estimation, as much as 30% of the Dossier's content may not be "accurate."[10]

## JURISDICTION AND VENUE

20.     This Court has personal jurisdiction over the Orbis defendants pursuant to Section 13-423 of the Code of the District of Columbia because Orbis and Steele transacted business in the District of Columbia. Defendants also caused tortious injury to Plaintiffs by acts and omissions within or directed to the District of Columbia (the "District"). Upon information and belief, in the District in the late summer and fall of 2016, Orbis and Steele disseminated defamatory material to Fusion and to multiple journalists such as *The Washington Post,* David Corn (the District-based bureau chief of *Mother Jones* magazine) and Michael Isikoff of *Yahoo News.* At least one of the briefings at which Steele distributed defamatory material about Plaintiffs to journalists was held at the Tabard Inn in the District, including a briefing of *The New Yorker*

---

[10] Luke Harding, *How Trump walked into Putin's web*, THE GUARDIAN, Nov. 15, 2017, available at https://www.theguardian.com/news/2017/nov/15/how-trump-walked-into-putins-web-luke.

reporter Jane Mayer.[11] Steele also met with Jonathan Winer of the U.S. State Department at a hotel room in the District, and had discussions with District-based U.S. Department of Justice official Bruce Orh. In September, 2016, according to Winer, at the height of the presidential election campaign, Winer and Steele met in the District "and discussed the information now known as the 'dossier'" so that Winer could "alert the State Department," which he did by preparing a "two page summary for a senior official" of the Department in the District. Finally, Steele authorized District-based Fusion GPS to provide a copy of his reports to David Kramer in the District for forwarding to Senator McCain, also in the District. In sum, Steele, acting for himself and Orbis, has engaged in a persistent course of conduct, often with Fusion and Simpson, intended to have and which did have effects in the District, by meeting with District based media and government employees to bring his reports on "Russia matters" to their attention. Those reports included the defamatory statements about Plaintiffs. From within and without the District, Steele's actions, on behalf of Orbis and himself, resulted in the tortious injury to Plaintiffs alleged herein, and have subjected him and Orbis to the personal jurisdiction of this Court.

21.    In addition, Steele, on behalf of himself and Orbis, has engaged in other ongoing business relationships with entities located in the District. On information and belief, Steele and Orbis have been retained repeatedly by the District-based F.B.I to assist in various investigations between 2009 and 2016 and, as alleged above, Steele and Orbis have had an ongoing professional relationship with Fusion for years. And as also noted above, according to Winer, during his 2013-2016 employment at the State Department in

---

[11] Mayer, *supra*, at note 1.

-11-

the District, Steele/Orbis provided over 100 intelligence reports, many of which Winer shared with other State Department officials.

## FACTUAL ALLEGATIONS

22.     On information an belief, Orbis and Steele were engaged by Fusion during the 2016 U.S. presidential campaign to gather "oppo research," including compromising and salacious information about then presidential candidate Donald Trump. The scope of this engagement was not limited to Trump's business dealings in Russia, but also included the candidate's personal conduct. A significant purpose of this "research" was its ultimate intended use by Trump's political opponents to try to thwart his candidacy. Although Fusion had initially been hired by Republican opponents of Trump's candidacy, by the time Fusion engaged Orbis, Trump had secured the Republican nomination and the focus of opposition to Trump's candidacy had shifted to the Democrats. Fusion was engaged by Perkins Coie, a law firm with an office in D.C., in that firm's capacity as representing the Democratic National Committee (DNC) and HFACC, Inc., a campaign organization supporting Hillary Rodham Clinton's candidacy for President. Perkins Coie retained Fusion to provide such research services in April 2016, an engagement which continued until October 2016,[12] and Fusion, in turn, retained Defendants to carry out that task.

---

[12] Adam Entous, Devlin Barrett, Rosalind S. Helderman, *Clinton campaign, DNC paid for research that led to Russia dossier*, THE WASHINGTON POST, Oct. 24, 2017, available at https://www.washingtonpost.com/world/national-security/clinton-campaign-dnc-paid-for-research-that-led-to-russia-dossier/2017/10/24/226fabf0-b8e4-11e7-a908-a3470754bbb9_story.html?utm_term=.897b43950afc.

23.     On information and belief, the Orbis Defendants and Fusion communicated with one another to initiate and perform that engagement via postal or communicated with one another to initiate and perform that engagement via postal or courier services, email, facsimile, internet audio or video services and/or telephone calls between Washington, D.C. and London, England. Orbis and Steele also acted directly in the District, including in joint meetings to brief members of the news media.

24.     The Orbis Defendants proceeded to research Trump's personal behavior in Russia and business dealings with Russian government officials, business leaders, and business entities. Steele compiled the "investigative" results into at least seventeen written CIRs for delivery to Fusion in Washington, D.C. By Steele's own description, the CIRs were "raw intelligence" containing unverified information from sources he did not personally interview.[13] The CIRs produced between June 2016 and the end of October 2016 (including CIR 112) were provided and thus published to Fusion, and, in turn, to lawyers at Perkins Coie and their clients at the DNC and HFACC.

25.     After Trump received the Republican nomination for President in July 2016, many media reports subsequently surfaced asserting, correctly, that Fusion had entered into an engagement with Democratic Party operatives interested in using oppo research to support Hillary Clinton's candidacy. These media reports vastly increased other media's and the public's interest in the content of the Dossier.

26.     In the late Summer or early Fall of 2016, defendant Steele, acting on behalf of Orbis, personally provided briefings on the content of the Dossier he and Orbis had prepared to a select group of journalists in the United States. Those journalists

---

[13] The Orbis/Steele Response, at 7, #17.

included D.C.-based David Corn of *Mother Jones* magazine. *Mother Jones* then published an article by Mr. Corn about the existence, purpose, and content of the Dossier based on Steele's briefing to Corn and the author's review of the oppo research made available to him by Steele.

27.　Steele has admitted that, through a D.C. based intermediary who was not a government official, David E. Kramer, he provided the oppo research in the Dossier to Senator John McCain of Arizona, an outspoken political opponent of Donald Trump's candidacy.

28.　As they performed their work for Fusion's clients, the Orbis Defendants knew, anticipated or reasonably should have foreseen that, once in the hands of third parties such as David Kramer, Senator McCain, journalists like Michael Isikoff and David Corn, Perkins Coie, the political operatives at the DNC and HFACC, and their media contacts, the CIRs would be further disseminated publicly. Such further dissemination would inevitably foster widespread discussion about the CIRs in the United States. That is exactly what happened. Much of the ensuing media attention and public discussion focused on Orbis' and Steele's roles in the creation and dissemination of the Dossier, and the interviews solicited by them.

29.　Upon information and belief, during this campaign to promote the public dissemination of their oppo research, Orbis and Steele provided background briefings to the media without attribution. During those briefings, Defendants never vouched for the credibility of their sources or the accuracy and reliability of the content of the Dossier and/or of CIR 112 specifically.

-14-

30. Despite the fact that they did not know the unverified, anonymous, inherently harmful accusations in CIR 112 about Plaintiffs to be true, Defendants intentionally published CIR 112 [along with the other reports in the Dossier] to Fusion, David Kramer, and John McCain, and foresaw (or reasonably should have foreseen) that it would then be republished to (1) Perkins Coie; (2) Perkins Coie's clients (the DNC and the HFACC); (3) employees of the DNC and the HFACC; and (4) journalists and media. Elements of the Dossier, possibly including CIR112, may have been published even more extensively by being made available for viewing during arranged briefings of certain journalists by Defendant Steele. Worldwide publication of the entire Dossier, whether by BuzzFeed or anyone else, was inevitable after these reckless actions by Defendants.

31. CIR 112 specifically discusses the Plaintiffs. Its heading, "RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP CO-OPERATION," is defamatory in the Trump/Russia context of the entire Dossier, as this heading suggests that Alfa and its executives, including the Plaintiffs, cooperated in the alleged Kremlin-orchestrated campaign to interfere in the 2016 U.S. presidential election—the overriding focus of Steele's reports. This is a plausible and, indeed, inescapable inference a reasonable reader would draw from the heading of CIR 112, both because of its own content and based on the headings of fifteen of the sixteen other CIRs that Defendants dated and/or published before the end of October 2016. The Dossier's headings, as sequenced in the Dossier, are as follows:

US PRESIDENTIAL ELECTION: REPUBLICAN CANDIDATE DONALD TRUMP'S ACTIVITIES IN RUSSIA AND COMPROMISING RELATIONSHIP WITH THE KREMLIN (CIR 80 – JUNE 20, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: FURTHER INDICATIONS OF EXTENSIVE CONSPIRACY BETWEEN TRUMP'S CAMPAIGN TEAM AND THE KREMLIN ( CIR 95 – UNDATED)

RUSSIA: SECRET KREMLIN MEETINGS ATTENDED BY TRUMP ADVISOR, CARTER PAGE IN MOSCOW (JULY 2016) (CIR 94 – JULY 19, 2016)

RUSSIA-US PRESIDENTIAL ELECTION: KREMLIN CONCERN THAT POLITICAL FALLOUT FROM DNC E-MAIL HACKING AFFAIR SPIRALLING [sic] OUT OF CONTROL (CIR 97 – JULY 30, 2016)

RUSSIA/USA: GROWING BACKLASH IN KREMLIN TO DNC HACKING AND TRUMP SUPPORT OPERATIONS (CIR 100 - AUGUST 5, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: SENIOR KREMLIN FIGURE OUTLINES EVOLVING RUSSIAN TACTICS IN PRO-TRUMP, ANTI-CLINTON OPERATION (CIR 101 – AUGUST 10, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: REACTION IN TRUMP CAMP TO RECENT NEGATIVE PUBLICITY ABOUT RUSSIAN INTERFERENCE AND LIKELY RESULTING TACTICS GOING FORWARD (CIR 102 – AUGUST 10, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: FURTHER DETAILS OF TRUMP LAWYER COHEN'S SECRET LIAISON WITH THE KREMLIN (CIR 136 – OCTOBER 20, 2016)

RUSSIA/UKRAINE: THE DEMISE OF TRUMP'S CAMPAIGN MANAGER PAUL MANAFORT (CIR 105 – AUGUST 22, 2016)

RUSSIA/US: KREMLIN FALLOUT FROM MEDIA EXPOSURE OF MOSCOW'S INTERFERENCE IN THE US PRESIDENTIAL CAMPAIGN (CIR 111 – SEPTEMBER 14, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP CO-OPERATION (CIR 112 – SEPTEMBER 14, 2016)

RUSSIA/US PRESIDENTIAL ELECTION- REPUBLICAN CANDIDATE TRUMP'S PRIOR ACTIVITIES IN ST. PETERSBURG (CIR 113 – SEPTEMBER 14, 2016)

**RUSSIA: KREMLIN ASSESSMENT OF TRUMP AND RUSSIA INTERFER-
ENCE IN US PRESIDENTIAL ELECTION (CIR 130 – OCTOBER 12, 2016)**

**RUSSIA/US PRESIDENTIAL ELECTION: FURTHER DETAILS OF KREMLIN
LIAISON WITH TRUMP CAMPAIGN (CIR 134 – OCTOBER 18, 2016)**

**RUSSIA/US PRESIDENTIAL ELECTION: THE IMPORTANT ROLE OF
TRUMP LAWYER, COHEN IN CAMPAIGN'S SECRET LIAISON WITH THE
KREMLIN (CIR 135 – OCTOBER 19, 2016)**

32.     CIR 112 , in sections labeled "Summary" and "Detail," makes a series of

factual allegations about the "current closeness" of an "Alpha Group-PUTIN

relationship," including the allegations that "[s]ignificant favors continue to be done in

both directions" and that "FRIDMAN and AVEN [are] still giving informal advice to

PUTIN, especially on the US."

33.     The Summary section of CIR 112 identifies a former employee of Alfa,

Oleg Govorun, who is now the head of a government department in Putin's

administration, as a "key intermediary" in the "PUTIN-Alpha relationship." CIR 112

alleges that Govorun "delivered illicit cash directly to PUTIN" "throughout the 1990s,"

when Govorun was an "Alpha executive" and Putin was the Deputy Mayor of St.

Petersburg.

34.     The first paragraph of the Detail section of CIR 112 states the full names

of Plaintiffs Fridman, Aven, and Khan. It then includes a report from an unnamed

"Russian government official:"

> although they had [sic] had their ups and downs, the
> leading figures in Alpha currently were on very good terms
> with PUTIN. Significant favours continued to be done in
> both directions, primarily political ones for PUTIN and
> business/legal ones for Alpha. Also, FRIDMAN and
> AVEN continued to give informal advice to PUTIN on

-17-

> foreign policy, and especially about the US where he
> distrusted advice being given him by officials.

35.     Under any reasonable reading of CIR 112, alone, and in the context of the
full Dossier and the headings of sixteen of its seventeen CIRs ("the Trump/Russia
context"), Plaintiffs Fridman, Aven, and Khan, along with Alfa, are alleged to maintain a
highly inappropriate, and even criminal, relationship with Putin, based on criminal
interaction dating back to the 1990s. By clear and defamatory implication, CIR 112
purports to tie the Plaintiffs to a Kremlin-orchestrated campaign to interfere in the 2016
U.S. election.

36.     The second paragraph of the Detail section alleges that Mr. Fridman
"recently met directly with PUTIN" and that "much of the dialogue and business between
them was mediated" by Govorun, the former Alfa employee. The paragraph describes
Govorun as a "senior Presidential Administration official" who is "trusted by PUTIN:"

> during the 1990s GOVORUN had been Head of
> Government Relations at Alpha Group and in reality the
> "driver" and "bag carrier" used by FRIDMAN and AVEN
> to deliver large amounts of illicit cash to the Russian
> president, at that time deputy Mayor of St. Petersburg.
> Given that and the continuing sensitivity of the PUTIN-
> Alpha relationship, and need for plausible deniability,
> much of the contact between them was now indirect and
> entrusted to the relatively low profile GOVORUN.

37.     These allegations are false. And their defamatory nature, even when read
alone, is clear: CIR 112 alleges that, in the 1990s, Alfa (a member of "Alpha Group")
and two of its largest beneficial owners purportedly engaged in acts of criminal bribery
by arranging for the "deliver[y] of large amounts of illicit cash" to Putin to secure
favorable business treatment from him in his role as a public offical. Moreover, Oleg

-18-

Govorun was not even employed by Alfa Bank until after Mr. Putin left St. Petersburg to join the Yeltsin administration in Moscow.

38.     Those statements, on their own, and especially when considered in the Trump/Russia context of the Dossier as a whole, are defamatory. They imply that the alleged improper relationship between Alfa, the Plaintiffs, and Putin, which purportedly started in the 1990s, is ongoing. They also imply the fabrication that Govorun, the alleged "bag carrier" of the 1990s, who is now a senior official in Putin's administration, serves as the trusted intermediary between the Plaintiffs and Putin, including in connection with Plaintiffs' alleged involvement in Russia's interference in the U.S. election.

39.     The third paragraph of the Detail section characterizes the "PUTIN-Alpha relationship as both a carrot and stick:"

> Alpha held 'kompromat' on PUTIN and his corrupt business activities from the 1990s whilst although not personally overly bothered by Alpha's failure to reinvest the proceeds of its TNK oil company sales into the Russian economy since, the Russian president was able to use pressure on this count from senior Kremlin colleagues as a lever on FRIDMAN and AVEN to make them do his political bidding.

40.     This passage is defamatory in several ways. Read in the context of the Dossier's Trump/Russia theme, it suggests that Plaintiffs Fridman and Aven use their knowledge of past bribery of Putin—"kompromat"—as a means of criminally extorting favorable treatment for their business interests from his government. In the context of the other allegations, this passage also implies that Alfa and two of its largest beneficial owners, Plaintiffs Fridman and Aven, willingly maintain a close relationship with Putin and cooperated in some unspecified way in the Kremlin's alleged campaign to interfere

in the U.S. election in an effort to avoid retribution from Putin for not reinvesting business proceeds in Russia.

41.　The statements about the Plaintiffs in the context of the Dossier as a whole are false, defamatory, and gravely damaging. The statements in the Detail section of CIR 112 about Plaintiffs allege a criminal relationship with Mr. Putin in the 1990s. Even if considered independently, these statements raise substantial questions about why these almost twenty-year-old allegations were included by Defendants in a Dossier of "oppo research" about Donald Trump. The statements of CIR 112, published in an unverified report attributed to an anonymous "top level Russian official" of unknown credibility or existence, raise a clear and plausible inference of reckless disregard of truth or falsity by Defendants.

## CAUSE OF ACTION

42.　Plaintiffs repeat and reallege paragraphs 1-41 above.

43.　By their direct and intentional publication to third parties such as clients, news media, journalists, and others, and by the foreseeable republication of the Dossier and CIR 112 by someone in that group, the Defendants published to a worldwide public false and defamatory statements concerning Plaintiffs and Alfa, including that:

　　(a)　they are implicated in the scandalous allegations involving Russia and President Trump referred to in the heading of CIR 112 and the other CIRs in the Dossier;

　　(b)　they and other officials and employees of Alfa "cooperated" with an alleged Kremlin campaign to interfere in the U.S. presidential election;

-20-

(c)     they are parties to a highly inappropriate, and even criminal, relationship with Vladimir Putin;

(d)     they engaged in acts of criminal bribery of Vladimir Putin in the 1990s, then the Deputy Mayor of St. Petersburg, to secure favorable business treatment; and

(e)     they continue to use their knowledge of past bribery of Putin as a means of criminally extorting continuing favorable treatment for their business interests from the Putin government.

44.     Readers of the CIRs and the Dossier were also led to understand, incorrectly, that as a result of the Plaintiffs' alleged past—and current—close relationships and corrupt dealings with Mr. Putin, the Plaintiffs and Alfa were and are required to do Putin's bidding, including by cooperating in the Kremlin's alleged efforts to influence the outcome of the recent U.S. presidential election.

45.     The false statements by the Defendants referred to above defamed the Plaintiffs and Alfa, and have caused and will continue to cause serious injury to their personal, professional, and institutional reputations.

46.     The false and defamatory statements published and republished by the Defendants concerning the Plaintiffs and Alfa, as well as the obvious implications of those statements, were made negligently or with reckless disregard of whether they were true or false.

47.     Defendants are liable for the defamation of Plaintiffs and Alfa, and the resulting harm caused by the news media coverage of the Dossier, including the republication by BuzzFeed and countless other media.

-21-

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiffs Mikhail Fridman, Petr Aven, and German Khan demand judgment against Defendants Orbis and Steele for:

a.     compensatory damages in an amount to be proved at trial, together with interest and the costs and disbursements of this action, plus reasonable attorneys' fees;

b.     punitive damages in an amount to be determined at trial; and

c.     such other and further relief as this Court may deem just and proper.

Dated: Washington, D.C.
       April 16, 2018

By:     /s/ Kim Hoyt Sperduto
        Kim Hoyt Sperduto
        DC Bar No. 416127

        SPERDUTO THOMPSON PLC
        1133 Twentieth Street, N.W.
        Second Floor
        Washington, D.C. 20036
        202-408-8900
        202-408-8910 (f)
        ksperduto@sperdutothompson.com

        Alan S. Lewis
        John J. Walsh
        CARTER LEDYARD & MILBURN LLP
        2 Wall Street
        New York, NY 10005
        Telephone:   212-238-8647
        lewis@clm.com

        *Counsel for Plaintiffs*
        *Mikhail Fridman, et al.*

-22-



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

Mikhail Fridman, et al.
_____
                                    Plaintiff

                vs.                                    **18-0002667**

                                                       Case Number _____

Orbis Business Intelligence Limited
_____
                                    Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim Sperduto                                           _Clerk of the Court_
_____
Name of Plaintiff's Attorney

Sperduto Thompson PLC                      By _____
_____
Address
1133 20th St. NW, Second Floor, Washington, D.C. 20031

202-408-8900                               Date ____4/19/20___
_____
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Dể có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오        የአማርኛ ትርጉም አማካኝነት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                              Demandante

contra                                          Número de Caso: _____

_____
                              Demandado

## CITATORIO
Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandado. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                            *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

                              Por: _____
_____
Dirección                                          Subsecretario

_____
                              Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Dể có một bai dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 전화해 주십시오.       የትርጉም እርዳታ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS. O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde pueda pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Mikhail Fridman, et al.

_____
Plaintiff

vs.

**18-0002667**

Case Number _____

Christopher Steele

_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim Sperduto
_____
Name of Plaintiff's Attorney

Sperduto Thompson PLC
_____
Address
1133 20th St. NW, Second Floor, Washington, D.C. 20036

202-408-8900
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date 4/19/2018
_____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Dè có một bản dịch hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요     ват'ист ት-ፈን-ም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                          Demandante
contra
                                                    Número de Caso: _____

_____
                          Demandado

## CITATORIO
Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                    *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

                                          Por: _____
_____
Dirección                                              Subsecretario

                                          Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 전화주십시오.         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

## INFORMATION SHEET      **18-0002667**

Mikhail Fridman, Petr Aven, and German Khan,

Case Number: _____

vs

Date: _April 16, 2018_____

Orbis Business Intelligence Limited and Christopher Steele

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Kim Hoyt Sperduto | Relationship to Lawsuit |
| Firm Name:<br>Sperduto Thompson PLC | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>202-408-8900          416127 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury      ☒ 6 Person Jury      ☐ 12 Person Jury

Demand: $ _75,000+_____      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____  Judge: _____  Calendar #:_____

Case No.:_____  Judge: _____  Calendar#:_____

---

NATURE OF SUIT:      *(Check One Box Only)*

### A. CONTRACTS                    COLLECTION CASES

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
    Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
    Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
    Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
    Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
    Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting. D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☒ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
    Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
    Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE      IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301 et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-1 (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structural Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

---

/s/ Kim Hoyt Sperduto         April 16, 2018

Attorney's Signature         Date

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

---------------------------------------------------------------X

MIKHAIL FRIDMAN, PETR AVEN, AND
GERMAN KHAN,
  c/o CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005,

                Plaintiffs,

    -v-

ORBIS BUSINESS INTELLIGENCE LIMITED
AND CHRISTOPHER STEELE,
9-11 Grosvenor Gardens
London SW1W OBD,

           Defendants.

---------------------------------------------------------------X

**18-0002667**

2018 CA _____

**COMPLAINT**

**COMPLAINT**
(JURY TRIAL DEMANDED
DEFAMATION)

Plaintiffs Mikhail Fridman, Petr Aven, and German Khan, by their attorneys

Carter Ledyard & Milburn LLP, allege as follows:

**INTRODUCTION**

1.    This is a defamation case brought by three international businessmen who

were defamed in widely disseminated political opposition research reports commissioned

by political opponents of candidate Donald Trump in the 2016 presidential election cycle.

The reports (which came to be known as the "Trump Dossier," the "Steele Dossier" and

simply as the "Dossier") were published both before and after the 2016 presidential

election by Defendants Orbis Business Intelligence Limited ("Orbis") and Christopher

-1-

Steele ("Steele" and, with Orbis, the "Orbis Defendants") pursuant to an engagement between Orbis and Fusion GPS ("Fusion")—a Washington, D.C. based firm specializing in political opposition research whose principal, Glenn Simpson ("Simpson"), is a former journalist. Fusion trafficked in procuring damaging information about political candidates from various sources, including willing suppliers of such information like Defendants. Defendants accepted this engagement by Fusion knowing it was intended to, and likely would, have profound effects in the United States, and specifically the District of Columbia, because the engagement was political opposition research intended to be used in connection with the election of the President of the United States.

2.     One of the reports, written by Defendants and supplied to Fusion, is gravely damaging in that, directly or by implication from the rest of the Dossier, it falsely accuses the Plaintiffs—and Alfa ("Alfa"), a consortium in which the Plaintiffs are investors—of criminal conduct and alleged cooperation with the "Kremlin" to influence the 2016 presidential election. But neither the Plaintiffs nor Alfa committed any of the acts recklessly attributed to them by the Defendants. To the contrary, the Plaintiffs and Alfa are collateral damage in a U.S. political operation in which Defendants willingly and knowingly participated, whose focus was an alleged relationship (between the Kremlin and the Trump campaign) which has nothing whatsoever to do with the Plaintiffs.

3.     The specific "report" that includes facially defamatory statements about the Plaintiffs is one of seventeen Company Intelligence Reports 2016 ("CIRs") authored by Defendants that comprise the Trump Dossier. The Defendants prepared Company Intelligence Report 112 (the "Report" or "CIR 112"), which makes statements about the Plaintiffs, for inclusion in the Trump Dossier, even though the Plaintiffs' past, current

-2-

and intended future activities have nothing to do with the Dossier's intended subject matter and purpose. Broadly, the Dossier purports to describe details of an alleged scheme between the Russian government and the Trump presidential campaign to unlawfully manipulate the result of the 2016 U.S. presidential election in favor of candidate Trump.

4.    The Defendants prepared CIR 112 as part of their engagement by Fusion to conduct "opposition research" (known as "oppo research" by its practitioners and the media) against Trump, even though its text, unlike that of the other reports, does not mention Trump or his campaign. Opposition research, in essence, is the gathering of information for the purpose of eventually discrediting or otherwise harming the candidacy of a candidate for a public office. Opposition research is neither objective nor neutral. Instead, it is skewed from the outset in favor of appearing to find negative information about individuals—the essence of the product that political opposition research practitioners such as the Defendants are hired to produce.

5.    Fusion and Simpson were initially hired to conduct opposition research by Republican Party political opponents of candidate Trump during the primary phase of the 2016 election cycle. That engagement was terminated when it became clear that Mr. Trump would be the Republican nominee. At that point, Fusion and Simpson solicited and obtained an engagement with the Democratic National Committee and the campaign of candidate Hillary Clinton to gather discrediting information about Mr. Trump, including any connections he might have to Russian businesses or Russia's government. In connection with that engagement, Fusion hired Orbis and Steele, who promptly went to work on the project in June, 2016. Steele used his network of "paid collectors" who

-3-

gathered information from "subsources" in Russia, which Steele compiled into written reports for Fusion over the course of several months in 2016. Eventually, the reports, including the false and defamatory report at the heart of this case, were assembled in the document that has come to be known to the public as the Trump Dossier.

6.      Steele has acknowledged that his reports are unverified "raw intelligence" and has refused to identify his alleged "sources." Indeed, the report at the heart of this case, CIR 112, has never been verified and none of its sources has ever been publicly identified. Defendants recklessly placed the Dossier's allegations of misconduct, inclugin criminal action, by Plaintiffs beyond Defendants' control - which allowed those allegations to get into the hands of media devoted to breaking news on the hottest subjects of the day: the Trump candidacy and his election as President.

7.      CIR 112, dated September 14, 2016, falsely accuses the Plaintiffs of criminal bribery in the 1990s, of an inappropriate relationship with Vladimir Putin over the course of decades, and of participation in an alleged Trump-Russia scheme to influence the 2016 U.S. presidential election. At all relevant times Defendants were aware that they had not verified the contents of CIR 112 and that its content was provided by sources who would remain unidentified - whose credibility could therefore not be assessed by a reader of the Dossier. Defendants could easily have removed that report from the Dossier before they delivered it to their client, and before they and their client Fusion started peddling it to media and journalists in September and October 2016. They chose not to do so. Nor did they attempt to determine the veracity of that report with the Plaintiffs themselves.

-4-

8.    At all times during the Defendants' engagement by Fusion, it was either intended or clearly foreseeable that if the Dossier's contents, including CIR 112, were made available to third parties, including journalists, such provocative material would be published and republished, including to the public at large. Indeed, that is the entire purpose of "oppo research" in American politics. Those third parties included government officials, persons with governmental positions who were acting in a private capacity, as well as news media and journalists who could make its content public.

9.    On information and belief, Fusion arranged for Defendant Steele to brief selected members of the print and online media about the information he was compiling on candidate Trump and his campaign. Consistent with the intended purpose of "oppo research" to publicly discredit its target, Steele's briefings were designed to generate interest in the Dossier and secure eventual public dissemination of its content. At least some of the briefings Steele personally provided were held in late summer, 2016, in Washington D.C. at the Tabard Inn, and attendees included *The New Yorker* reporter Jane Mayer.[1] Briefings were also held for journalists from the *New York Times*, the *Washington Post, CNN, Yahoo News*, and others in September 2016. *The New York Times, The Washington Post*, and *Yahoo News* were given a second briefing.[2] Shortly thereafter, *Yahoo News* published an article by Michael Isikoff that described some of the content of the Dossier (referred to there as "intelligence reports" and "reports"), which

---

[1]  Jane Mayer, *Christopher Steele, the Man Behind the Trump Dossier,* THE NEW YORKER, March 12, 2018, available at https://www.newyorker.com/magazine/2018/03/12/christopher-steele-the-man-behind-the-trump-dossier.

[2]  *Defendants' Response to Claimants Request For Information, Gubarev, et al. v. Orbis Business Intelligence Limited and Christopher Steele*, Claim No. HQ1700413, In the High Court of Justice, Queens Bench Division, May 18, 2017, at 8 ("The Orbis/Steele Response").

was still being compiled at that time.[3] Many other media articles reported speculative

accounts of the Dossier's existence and contents. In late October 2016, Defendant Steele

gave an interview to David Corn, a writer for *Mother Jones* magazine, which, on October

31, 2016, published an article by Corn headlined "A Veteran Spy Has Given The FBI

Information Alleging a Russian Operation to Cultivate Donald Trump."[4] Corn's article

stated that he had "reviewed" the early reports in the Dossier, and then quoted from those

reports as well as statements made by Steele in the interview. The publication to third

parties and public dissemination of the Dossier's content had begun in earnest.

10.    In addition to cultivating media interest, the Defendants also arranged and

participated in a meeting in Great Britain between Defendant Steele and David Kramer,

who held no public office but was the director of a private foundation affiliated with U.S.

Senator John McCain. A purpose of that meeting was to show Kramer the content of the

sixteen pre-election reports in the Dossier so he could brief Senator McCain, who at the

time was a well-known and outspoken critic of Trump's candidacy. Subsequently, in

November 2016, Orbis and Steele arranged for a copy of all sixteen of the Dossier's then

existing reports to be provided to Kramer in D.C. by Fusion—for redelivery and further

---

[3] Michael Isikoff, *U.S. intel officials probe ties between Trump advisor and Kremlin*, YAHOO NEWS, Sept. 23, 2016, available at https://www.yahoo.com/news/u-s-intel-officials-probe-ties-between-trump-adviser-and-kremlin-175046002.html.

[4] David Corn, *A Veteran Spy Has Given the FBI Information Alleging a Russian Operation to Cultivate Donald Trump*, MOTHER JONES, Oct. 31, 2016, available at https://www.motherjones.com/politics/2016/10/veteran-spy-gave-fbi-info-alleging-russian-operation-cultivate-donald-trump.

-6-

publication to Senator McCain in D.C.—including the report (CIR 112) that falsely accuses and defames Plaintiffs.[5]

11.     In September, 2016, in a Washington D.C. hotel room, Steele met with Jonathan Winer—then an official in the State Department —and briefed him on the contents of the Dossier. Steele had a long history of supplying Winer with intelligence; between 2013 and 2016, Steele provided Winer with more than 100 reports, many of which Winer then shared with his colleagues in the State Department.[6] Steele also briefed a D.C. based official from the Department of Justice, Bruce Ohr.

12.     As the 2016 presidential election neared, both print and online media in the United States and abroad began to expand their coverage of the Dossier and its alleged content. That coverage only intensified after Trump won the election. On January 10, 2017, one of those media entities, BuzzFeed, Inc., published the entire Dossier on the Internet, describing it there as "explosive." The copy of the Dossier that BuzzFeed published included the false and defamatory allegations of CIR 112 about the Plaintiffs and Alfa, along with the article entitled "These Reports Allege Trump Has Deep Ties to Russia."[7] The Dossier misspells Alfa's name throughout, incorrectly spelling it as "Alpha." BuzzFeed's article did not mention CIR 112 or its allegations, but

---

[5] The Orbis/Steele Response, at 5-6.

[6] Jonathan M. Winer, *Devin Nunes is Investigating Me. Here's the Truth*, THE WASHINGTON POST, February 8, 2018, available at https://www.washingtonpost.com/opinions/devin-nunes-is-investigating-me-heres-the-truth/2018/02/08/cc621170-0cf4-11e8-8b0d-891602206fb7_story.html?utm_term=.81c6a33fccf4.

[7] Ken Bensinger, Miriam Elder, Mark Schoofs, *These Reports Allege Trump Has Deep Ties To Russia*, BUZZFEED NEWS, Jan. 10, 2017, available at https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia?utm_term=.is1Q2ka2J.

-7-

focused instead on president-elect Trump and his alleged relationships with Russia, explaining that it "was publishing the full document so that Americans can make up their minds about allegations about the president-elect that have circulated at the highest levels of the U.S. government."[8]

13.     The Defendants intended, anticipated, or foresaw a high likelihood that providing third parties (like David Kramer, Senator McCain, and Jonathan Winer) and journalists with access to the Dossier's defamatory content would result in its republication by news media outlets, including online news media such as BuzzFeed.

14.     Plaintiffs seek an award of compensatory and punitive damages for the harm to their personal and professional reputations, current business interests, and the impairment of business opportunities that resulted from the blatantly false and defamatory statements and implications about them published recklessly to third parties by the Defendants and republished by BuzzFeed and countless other media around the world.

## THE PARTIES

15.     Plaintiffs Fridman, Aven, and Khan are ultimate beneficial owners of Alfa. Fridman and Khan are each citizens of both Russia and Israel, and Aven is a citizen of Russia. Plaintiffs are not widely known in the United States, had no role or involvement in any aspect of the 2016 U.S. presidential election, and made no public comments about it.

---

[8] *Id.*

16.     On information and belief, defendant Orbis is a private limited company headquartered in London, England. Orbis and Steele have had working relationships with Washington D.C.-based Fusion and Simpson for a number of years. In or about July of 2016, Orbis was engaged by and contracted with Fusion and Simpson to research and compile reports, on Trump/Russia relationships for delivery to Fusion in Washington, D.C., where Fusion would evaluate them and deliver them to its clients for their political purposes, including dissemination to government officials, journalists and news media in Washington D.C. and elsewhere to oppose the candidacy of Donald Trump in the 2016 U.S. Presidential campaign.

17.     Defendant Christopher Steele, on information and belief, is a former British intelligence officer and a founder and a principal of Orbis. Over the years of their working relationship, defendant Steele was D.C.-based Fusion's contact at Orbis for engagements and was primarily responsible for researching and creating the Dossier to be provided to Fusion in D.C. for further dissemination here and elsewhere. Upon information and belief, as set forth above, Steele disseminated the defamatory material about Plaintiffs to journalists, including *The Washington Post, Yahoo News* and David Corn of *Mother Jones* magazine, and to third parties like David Kramer, Senator McCain, and Jonathan Winer, in Washington, D.C. in the fall of 2016. Mr. Winer recently stated publicly in an article in the Washington Post that after his 2013 return to the U.S. State Department, Steele provided him with more than 100 of his Russia-focused reports, which Winer shared with a senior State Department official.[9]

---

[9] Winer, *supra.* note 6.

18.     Both Steele and Simpson used their prior experiences as an operative in British intelligence who had covered Russian matters (Steele) and as an investigative journalist for the Wall Street Journal (Simpson) to give their oppo research output a gloss of credibility and reliability which, in this case, was unwarranted.

19.     Steele recently told a journalist that he did not interview his sources in Russia himself, but gathered his information through "paid collectors" and "subsources." And by Steele's own estimation, as much as 30% of the Dossier's content may not be "accurate."[10]

## JURISDICTION AND VENUE

20.     This Court has personal jurisdiction over the Orbis defendants pursuant to Section 13-423 of the Code of the District of Columbia because Orbis and Steele transacted business in the District of Columbia. Defendants also caused tortious injury to Plaintiffs by acts and omissions within or directed to the District of Columbia (the "District"). Upon information and belief, in the District in the late summer and fall of 2016, Orbis and Steele disseminated defamatory material to Fusion and to multiple journalists such as *The Washington Post,* David Corn (the District-based bureau chief of *Mother Jones* magazine) and Michael Isikoff of *Yahoo News.* At least one of the briefings at which Steele distributed defamatory material about Plaintiffs to journalists was held at the Tabard Inn in the District, including a briefing of *The New Yorker*

---

[10] Luke Harding, *How Trump walked into Putin's web*, THE GUARDIAN, Nov. 15, 2017, available at https://www.theguardian.com/news/2017/nov/15/how-trump-walked-into-putins-web-luke.

reporter Jane Mayer.[11] Steele also met with Jonathan Winer of the U.S. State Department at a hotel room in the District, and had discussions with District-based U.S. Department of Justice official Bruce Orh. In September, 2016, according to Winer, at the height of the presidential election campaign, Winer and Steele met in the District "and discussed the information now known as the 'dossier'" so that Winer could "alert the State Department," which he did by preparing a "two page summary for a senior official" of the Department in the District. Finally, Steele authorized District-based Fusion GPS to provide a copy of his reports to David Kramer in the District for forwarding to Senator McCain, also in the District. In sum, Steele, acting for himself and Orbis, has engaged in a persistent course of conduct, often with Fusion and Simpson, intended to have and which did have effects in the District, by meeting with District based media and government employees to bring his reports on "Russia matters" to their attention. Those reports included the defamatory statements about Plaintiffs. From within and without the District, Steele's actions, on behalf of Orbis and himself, resulted in the tortious injury to Plaintiffs alleged herein, and have subjected him and Orbis to the personal jurisdiction of this Court.

21.    In addition, Steele, on behalf of himself and Orbis, has engaged in other ongoing business relationships with entities located in the District. On information and belief, Steele and Orbis have been retained repeatedly by the District-based F.B.I to assist in various investigations between 2009 and 2016 and, as alleged above, Steele and Orbis have had an ongoing professional relationship with Fusion for years. And as also noted above, according to Winer, during his 2013-2016 employment at the State Department in

---

[11] Mayer, *supra*, at note 1.

the District, Steele/Orbis provided over 100 intelligence reports, many of which Winer shared with other State Department officials.

## FACTUAL ALLEGATIONS

22.     On information an belief, Orbis and Steele were engaged by Fusion during the 2016 U.S. presidential campaign to gather "oppo research," including compromising and salacious information about then presidential candidate Donald Trump. The scope of this engagement was not limited to Trump's business dealings in Russia, but also included the candidate's personal conduct. A significant purpose of this "research" was its ultimate intended use by Trump's political opponents to try to thwart his candidacy. Although Fusion had initially been hired by Republican opponents of Trump's candidacy, by the time Fusion engaged Orbis, Trump had secured the Republican nomination and the focus of opposition to Trump's candidacy had shifted to the Democrats. Fusion was engaged by Perkins Coie, a law firm with an office in D.C., in that firm's capacity as representing the Democratic National Committee (DNC) and HFACC, Inc., a campaign organization supporting Hillary Rodham Clinton's candidacy for President. Perkins Coie retained Fusion to provide such research services in April 2016, an engagement which continued until October 2016,[12] and Fusion, in turn, retained Defendants to carry out that task.

---

[12] Adam Entous, Devlin Barrett, Rosalind S. Helderman, *Clinton campaign, DNC paid for research that led to Russia dossier*, THE WASHINGTON POST, Oct. 24, 2017, available at https://www.washingtonpost.com/world/national-security/clinton-campaign-dnc-paid-for-research-that-led-to-russia-dossier/2017/10/24/226fabf0-b8e4-11e7-a908-a3470754bbb9_story.html?utm_term=.897b43950afc.

23.     On information and belief, the Orbis Defendants and Fusion communicated with one another to initiate and perform that engagement via postal or communicated with one another to initiate and perform that engagement via postal or courier services, email, facsimile, internet audio or video services and/or telephone calls between Washington, D.C. and London, England.  Orbis and Steele also acted directly in the District, including in joint meetings to brief members of the news media.

24.     The Orbis Defendants proceeded to research Trump's personal behavior in Russia and business dealings with Russian government officials, business leaders, and business entities.  Steele compiled the "investigative" results into at least seventeen written CIRs for delivery to Fusion in Washington, D.C.  By Steele's own description, the CIRs were "raw intelligence" containing unverified information from sources he did not personally interview.[13]  The CIRs produced between June 2016 and the end of October 2016 (including CIR 112) were provided and thus published to Fusion, and, in turn, to lawyers at Perkins Coie and their clients at the DNC and HFACC.

25.     After Trump received the Republican nomination for President in July 2016, many media reports subsequently surfaced asserting, correctly, that Fusion had entered into an engagement with Democratic Party operatives interested in using oppo research to support Hillary Clinton's candidacy.  These media reports vastly increased other media's and the public's interest in the content of the Dossier.

26.     In the late Summer or early Fall of 2016, defendant Steele, acting on behalf of Orbis, personally provided briefings on the content of the Dossier he and Orbis had prepared to a select group of journalists in the United States.  Those journalists

---

[13] The Orbis/Steele Response, at 7, #17.

included D.C.-based David Corn of *Mother Jones* magazine. *Mother Jones* then published an article by Mr. Corn about the existence, purpose, and content of the Dossier based on Steele's briefing to Corn and the author's review of the oppo research made available to him by Steele.

27.    Steele has admitted that, through a D.C. based intermediary who was not a government official, David E. Kramer, he provided the oppo research in the Dossier to Senator John McCain of Arizona, an outspoken political opponent of Donald Trump's candidacy.

28.    As they performed their work for Fusion's clients, the Orbis Defendants knew, anticipated or reasonably should have foreseen that, once in the hands of third parties such as David Kramer, Senator McCain, journalists like Michael Isikoff and David Corn, Perkins Coie, the political operatives at the DNC and HFACC, and their media contacts, the CIRs would be further disseminated publicly. Such further dissemination would inevitably foster widespread discussion about the CIRs in the United States. That is exactly what happened. Much of the ensuing media attention and public discussion focused on Orbis' and Steele's roles in the creation and dissemination of the Dossier, and the interviews solicited by them.

29.    Upon information and belief, during this campaign to promote the public dissemination of their oppo research, Orbis and Steele provided background briefings to the media without attribution. During those briefings, Defendants never vouched for the credibility of their sources or the accuracy and reliability of the content of the Dossier and/or of CIR 112 specifically.

-14-

30.     Despite the fact that they did not know the unverified, anonymous, inherently harmful accusations in CIR 112 about Plaintiffs to be true, Defendants intentionally published CIR 112 [along with the other reports in the Dossier] to Fusion, David Kramer, and John McCain, and foresaw (or reasonably should have foreseen) that it would then be republished to (1) Perkins Coie; (2) Perkins Coie's clients (the DNC and the HFACC); (3) employees of the DNC and the HFACC; and (4) journalists and media. Elements of the Dossier, possibly including CIR112, may have been published even more extensively by being made available for viewing during arranged briefings of certain journalists by Defendant Steele. Worldwide publication of the entire Dossier, whether by BuzzFeed or anyone else, was inevitable after these reckless actions by Defendants.

31.     CIR 112 specifically discusses the Plaintiffs. Its heading, "RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP CO-OPERATION," is defamatory in the Trump/Russia context of the entire Dossier, as this heading suggests that Alfa and its executives, including the Plaintiffs, cooperated in the alleged Kremlin-orchestrated campaign to interfere in the 2016 U.S. presidential election—the overriding focus of Steele's reports. This is a plausible and, indeed, inescapable inference a reasonable reader would draw from the heading of CIR 112, both because of its own content and based on the headings of fifteen of the sixteen other CIRs that Defendants dated and/or published before the end of October 2016. The Dossier's headings, as sequenced in the Dossier, are as follows:

US PRESIDENTIAL ELECTION: REPUBLICAN CANDIDATE DONALD TRUMP'S ACTIVITIES IN RUSSIA AND COMPROMISING RELATIONSHIP WITH THE KREMLIN (CIR 80 – JUNE 20, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: FURTHER INDICATIONS OF EXTENSIVE CONSPIRACY BETWEEN TRUMP'S CAMPAIGN TEAM AND THE KREMLIN ( CIR 95 – UNDATED)

RUSSIA: SECRET KREMLIN MEETINGS ATTENDED BY TRUMP ADVISOR, CARTER PAGE IN MOSCOW (JULY 2016) (CIR 94 – JULY 19, 2016)

RUSSIA-US PRESIDENTIAL ELECTION: KREMLIN CONCERN THAT POLITICAL FALLOUT FROM DNC E-MAIL HACKING AFFAIR SPIRALLING [sic] OUT OF CONTROL (CIR 97 – JULY 30, 2016)

RUSSIA/USA: GROWING BACKLASH IN KREMLIN TO DNC HACKING AND TRUMP SUPPORT OPERATIONS (CIR 100 - AUGUST 5, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: SENIOR KREMLIN FIGURE OUTLINES EVOLVING RUSSIAN TACTICS IN PRO-TRUMP, ANTI-CLINTON OPERATION (CIR 101 – AUGUST 10, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: REACTION IN TRUMP CAMP TO RECENT NEGATIVE PUBLICITY ABOUT RUSSIAN INTERFERENCE AND LIKELY RESULTING TACTICS GOING FORWARD (CIR 102 – AUGUST 10, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: FURTHER DETAILS OF TRUMP LAWYER COHEN'S SECRET LIAISON WITH THE KREMLIN (CIR 136 – OCTOBER 20, 2016)

RUSSIA/UKRAINE: THE DEMISE OF TRUMP'S CAMPAIGN MANAGER PAUL MANAFORT (CIR 105 – AUGUST 22, 2016)

RUSSIA/US: KREMLIN FALLOUT FROM MEDIA EXPOSURE OF MOSCOW'S INTERFERENCE IN THE US PRESIDENTIAL CAMPAIGN (CIR 111 – SEPTEMBER 14, 2016)

RUSSIA/US PRESIDENTIAL ELECTION: KREMLIN-ALPHA GROUP CO-OPERATION (CIR 112 – SEPTEMBER 14, 2016)

RUSSIA/US PRESIDENTIAL ELECTION- REPUBLICAN CANDIDATE TRUMP'S PRIOR ACTIVITIES IN ST. PETERSBURG (CIR 113 – SEPTEMBER 14, 2016)

**RUSSIA: KREMLIN ASSESSMENT OF TRUMP AND RUSSIA INTERFER-
ENCE IN US PRESIDENTIAL ELECTION (CIR 130 – OCTOBER 12, 2016)**

**RUSSIA/US PRESIDENTIAL ELECTION: FURTHER DETAILS OF KREMLIN
LIAISON WITH TRUMP CAMPAIGN (CIR 134 – OCTOBER 18, 2016)**

**RUSSIA/US PRESIDENTIAL ELECTION: THE IMPORTANT ROLE OF
TRUMP LAWYER, COHEN IN CAMPAIGN'S SECRET LIAISON WITH THE
KREMLIN (CIR 135 – OCTOBER 19, 2016)**

32.     CIR 112 , in sections labeled "Summary" and "Detail," makes a series of

factual allegations about the "current closeness" of an "Alpha Group-PUTIN

relationship," including the allegations that "[s]ignificant favors continue to be done in

both directions" and that "FRIDMAN and AVEN [are] still giving informal advice to

PUTIN, especially on the US."

33.     The Summary section of CIR 112 identifies a former employee of Alfa,

Oleg Govorun, who is now the head of a government department in Putin's

administration, as a "key intermediary" in the "PUTIN-Alpha relationship." CIR 112

alleges that Govorun "delivered illicit cash directly to PUTIN" "throughout the 1990s,"

when Govorun was an "Alpha executive" and Putin was the Deputy Mayor of St.

Petersburg.

34.     The first paragraph of the Detail section of CIR 112 states the full names

of Plaintiffs Fridman, Aven, and Khan. It then includes a report from an unnamed

"Russian government official:"

> although they had [sic] had their ups and downs, the
> leading figures in Alpha currently were on very good terms
> with PUTIN. Significant favours continued to be done in
> both directions, primarily political ones for PUTIN and
> business/legal ones for Alpha. Also, FRIDMAN and
> AVEN continued to give informal advice to PUTIN on

-17-

> foreign policy, and especially about the US where he
> distrusted advice being given him by officials.

35.    Under any reasonable reading of CIR 112, alone, and in the context of the

full Dossier and the headings of sixteen of its seventeen CIRs ("the Trump/Russia

context"), Plaintiffs Fridman, Aven, and Khan, along with Alfa, are alleged to maintain a

highly inappropriate, and even criminal, relationship with Putin, based on criminal

interaction dating back to the 1990s. By clear and defamatory implication, CIR 112

purports to tie the Plaintiffs to a Kremlin-orchestrated campaign to interfere in the 2016

U.S. election.

36.    The second paragraph of the Detail section alleges that Mr. Fridman

"recently met directly with PUTIN" and that "much of the dialogue and business between

them was mediated" by Govorun, the former Alfa employee. The paragraph describes

Govorun as a "senior Presidential Administration official" who is "trusted by PUTIN:"

> during the 1990s GOVORUN had been Head of
> Government Relations at Alpha Group and in reality the
> "driver" and "bag carrier" used by FRIDMAN and AVEN
> to deliver large amounts of illicit cash to the Russian
> president, at that time deputy Mayor of St. Petersburg.
> Given that and the continuing sensitivity of the PUTIN-
> Alpha relationship, and need for plausible deniability,
> much of the contact between them was now indirect and
> entrusted to the relatively low profile GOVORUN.

37.    These allegations are false. And their defamatory nature, even when read

alone, is clear: CIR 112 alleges that, in the 1990s, Alfa (a member of "Alpha Group")

and two of its largest beneficial owners purportedly engaged in acts of criminal bribery

by arranging for the "deliver[y] of large amounts of illicit cash" to Putin to secure

favorable business treatment from him in his role as a public offical. Moreover, Oleg

-18-

Govorun was not even employed by Alfa Bank until after Mr. Putin left St. Petersburg to join the Yeltsin administration in Moscow.

38.     Those statements, on their own, and especially when considered in the Trump/Russia context of the Dossier as a whole, are defamatory. They imply that the alleged improper relationship between Alfa, the Plaintiffs, and Putin, which purportedly started in the 1990s, is ongoing. They also imply the fabrication that Govorun, the alleged "bag carrier" of the 1990s, who is now a senior official in Putin's administration, serves as the trusted intermediary between the Plaintiffs and Putin, including in connection with Plaintiffs' alleged involvement in Russia's interference in the U.S. election.

39.     The third paragraph of the Detail section characterizes the "PUTIN-Alpha relationship as both a carrot and stick:"

> Alpha held 'kompromat' on PUTIN and his corrupt business activities from the 1990s whilst although not personally overly bothered by Alpha's failure to reinvest the proceeds of its TNK oil company sales into the Russian economy since, the Russian president was able to use pressure on this count from senior Kremlin colleagues as a lever on FRIDMAN and AVEN to make them do his political bidding.

40.     This passage is defamatory in several ways. Read in the context of the Dossier's Trump/Russia theme, it suggests that Plaintiffs Fridman and Aven use their knowledge of past bribery of Putin—"kompromat"—as a means of criminally extorting favorable treatment for their business interests from his government. In the context of the other allegations, this passage also implies that Alfa and two of its largest beneficial owners, Plaintiffs Fridman and Aven, willingly maintain a close relationship with Putin and cooperated in some unspecified way in the Kremlin's alleged campaign to interfere

-19-

in the U.S. election in an effort to avoid retribution from Putin for not reinvesting business proceeds in Russia.

41.     The statements about the Plaintiffs in the context of the Dossier as a whole are false, defamatory, and gravely damaging.  The statements in the Detail section of CIR 112 about Plaintiffs allege a criminal relationship with Mr. Putin in the 1990s.  Even if considered independently, these statements raise substantial questions about why these almost twenty-year-old allegations were included by Defendants in a Dossier of "oppo research" about Donald Trump.  The statements of CIR 112, published in an unverified report attributed to an anonymous "top level Russian official" of unknown credibility or existence, raise a clear and plausible inference of reckless disregard of truth or falsity by Defendants.

## CAUSE OF ACTION

42.     Plaintiffs repeat and reallege paragraphs 1-41 above.

43.     By their direct and intentional publication to third parties such as clients, news media, journalists, and others, and by the foreseeable republication of the Dossier and CIR 112 by someone in that group, the Defendants published to a worldwide public false and defamatory statements concerning Plaintiffs and Alfa, including that:

    (a)     they are implicated in the scandalous allegations involving Russia and President Trump referred to in the heading of CIR 112 and the other CIRs in the Dossier;

    (b)     they and other officials and employees of Alfa "cooperated" with an alleged Kremlin campaign to interfere in the U.S. presidential election;

-20-

(c)      they are parties to a highly inappropriate, and even criminal, relationship with Vladimir Putin;

(d)      they engaged in acts of criminal bribery of Vladimir Putin in the 1990s, then the Deputy Mayor of St. Petersburg, to secure favorable business treatment; and

(e)      they continue to use their knowledge of past bribery of Putin as a means of criminally extorting continuing favorable treatment for their business interests from the Putin government.

44.      Readers of the CIRs and the Dossier were also led to understand, incorrectly, that as a result of the Plaintiffs' alleged past—and current—close relationships and corrupt dealings with Mr. Putin, the Plaintiffs and Alfa were and are required to do Putin's bidding, including by cooperating in the Kremlin's alleged efforts to influence the outcome of the recent U.S. presidential election.

45.      The false statements by the Defendants referred to above defamed the Plaintiffs and Alfa, and have caused and will continue to cause serious injury to their personal, professional, and institutional reputations.

46.      The false and defamatory statements published and republished by the Defendants concerning the Plaintiffs and Alfa, as well as the obvious implications of those statements, were made negligently or with reckless disregard of whether they were true or false.

47.      Defendants are liable for the defamation of Plaintiffs and Alfa, and the resulting harm caused by the news media coverage of the Dossier, including the republication by BuzzFeed and countless other media.

-21-

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiffs Mikhail Fridman, Petr Aven, and German Khan demand judgment against Defendants Orbis and Steele for:

a.    compensatory damages in an amount to be proved at trial, together with interest and the costs and disbursements of this action, plus reasonable attorneys' fees;

b.    punitive damages in an amount to be determined at trial; and

c.    such other and further relief as this Court may deem just and proper.

Dated: Washington, D.C.
April 16, 2018

By:    <u>/s/ Kim Hoyt Sperduto</u>
        Kim Hoyt Sperduto
        DC Bar No. 416127

        SPERDUTO THOMPSON PLC
        1133 Twentieth Street, N.W.
        Second Floor
        Washington, D.C. 20036
        202-408-8900
        202-408-8910 (f)
        ksperduto@sperdutothompson.com

        Alan S. Lewis
        John J. Walsh
        CARTER LEDYARD & MILBURN LLP
        2 Wall Street
        New York, NY 10005
        Telephone:  212-238-8647
        lewis@clm.com

        *Counsel for Plaintiffs*
        *Mikhail Fridman, et al.*



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Mikhail Fridman, et al.

_____
Plaintiff

vs.

**18-0002667**

Case Number _____

Orbis Business Intelligence Limited

_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim Sperduto
_____
Name of Plaintiff's Attorney

Sperduto Thompson PLC
_____
Address
1133 20th St. NW, Second Floor, Washington, D.C. 20036

202-408-8900
_____
Telephone

*Clerk of the Court*

By _____

Date _____4/19/2018_____

如需翻译,请打电话 (202) 879-4828   Veuillez appeler au (202) 879-4828 pour une traduction   Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요   የአማርኛ ትርጉም አስፈላጊ ከሆነ (202) 879-4828   ይደውሉ።

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Demandante

contra

Número de Caso: _____

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

Por: _____

_____
Dirección

Subsecretario

_____
Teléfono

Fecha _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오     ያስተረጉም ከፈለጉ ለማስተርጎም (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS. O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Mikhail Fridman, et al.
_____
               Plaintiff

vs.

Christopher Steele
_____
               Defendant

**18-0002667**

Case Number _____

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim Sperduto
_____
Name of Plaintiff's Attorney

Sperduto Thompson PLC
_____
Address
1133 20th St. NW, Second Floor, Washington, D.C. 20036

202-408-8900
_____
Telephone

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Dè có một bài dịch hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요     ኣማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

*Clerk of the Court*

By _Adrienne Naish_
            Deputy Clerk

Date _4/19/2018_

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





Demandante

contra

Número de Caso: _____

Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____                                    *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

_____          Por: _____
Dirección                                                              Subsecretario

_____          Fecha _____
Teléfono
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Dê có một bài dịch, hãy gọi (202) 879-4828
번역을원하시면(202) 879-4828 로전화주십시요.          ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

## CIVIL DIVISION- CIVIL ACTIONS BRANCH

### INFORMATION SHEET

**18-0002667**

Mikhail Fridman, Petr Aven, and German Khan,

Case Number: _____

vs

Date: April 16, 2018

Orbis Business Intelligence Limited and Christopher Steele

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)*<br>Kim Hoyt Sperduto | Relationship to Lawsuit |
|---|---|
| Firm Name:<br>Sperduto Thompson PLC | ☒ Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.: 202-408-8900     Six digit Unified Bar No.: 416127 | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury

Demand: $ 75,000+      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____ Judge: _____ Calendar #: _____

Case No.: _____ Judge: _____ Calendar#: _____

---

**NATURE OF SUIT:** *(Check One Box Only)*

### A. CONTRACTS      COLLECTION CASES

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
    Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
    Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
    Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
    Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
    Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☒ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
    Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
    Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE      IF USED

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301 et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D. REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

/s/ Kim Hoyt Sperduto
_____
Attorney's Signature

April 16, 2018
_____
Date



GERMAN KHAN et al
    Vs.                                               C.A. No.      2018 CA 002667 B
ORBIS BUSINESS INTELLIGENCE LIMITED et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                              Chief Judge Robert E. Morin

Case Assigned to: Judge ANTHONY C EPSTEIN
Date: April 20, 2018
Initial Conference: 9:30 am, Friday, July 20, 2018
Location: Courtroom 200
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

                                                                    CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation

Chief Judge Robert E. Morin