## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
    Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
    Defendants.

**Case No.**

**0:17-cv-60426-UU**

## PLAINTIFFS' OPPOSITION TO
## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
## <u>ON THE ISSUE OF PLAINTIFFS' STATUS AS PUBLIC FIGURES</u>

Pursuant to Local Rule 56.1(a), Plaintiffs Aleksej Gubarev, XBT Holding S.A. ("XBT") and Webzilla, Inc. ("Webzilla") hereby submit this opposition to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Partial Summary Judgment on the Issue of Plaintiffs' Status as Public Figures.[1]

1.      Undisputed.

2.      DENIED to the extent it implies that Webzilla is a direct subsidiary of XBT, instead of a subsidiary of a subsidiary of XBT.  Opp. Ex. 141 [Gubarev Decl.], ¶ 1.

3.      Undisputed.

4.      DENIED as to the first sentence.  Gubarev testified only that he "invest[ed] money to organize this conference" and that his "team was organizing it."  Ex. 3 [Gub. I. Depo.], 57:5-6; 74:7.  Gubarev specifically denied that the conference was for the "pornography" industry.  *Id.*, 115:10-14.  Gubarev's passive connection in the conference stopped in 2012 and he has not received any income from it since 2009.  Opp. Ex. 141 [Gubarev Decl.], ¶ 2.

5.      DENIED.  Referenced document does not support the statements in this paragraph, only that Gubarev acknowledged that such awards existed at the conference.

6.      DENIED as to second sentence.  The referenced document is unauthenticated and, on its face, is not a "conference brochure," but a printout of an online forum.

7.      Undisputed, but misleading as indicating involvement with the conference.  *Supra* ¶ 4.

8.      Undisputed that in 2006 Gubarev started a company that founded the Magazine. DENIED as to the rest.  Ex. 16 was unauthenticated and Gubarev testified that he had never seen it before.  Ex. 3 [Gub. I Dep.], 82:15-17.  "Enhancing their legitimacy" is also unsupported.

9.      DENIED as misleading.  The name was used by several people in connection with AWMOpen.  Ex. 3 [Gub. I Dep.], 12:2 ("It was used not only me, but several people.").

10.     DENIED that the referenced document "emphasizes" as stated.

11.     DENIED.  Documents do not support that crutop.nu or Redeye were a "principal" sponsor, that any money was received from either, or that Redeye was running crutop.nu.  *See*

---

[1] All citations to "Ex." are to exhibits accompanying the Declaration of Nathan Siegel filed with Defendants' Statement of Undisputed Material Facts.  All citations to "Opp. Ex." are to exhibits accompanying the Declaration of Matthew Shayefar in Opposition to Defendants' Public Figure Motion for Summary Judgment, fired herewith.

Ex. 3 [Gub. I Depo.], 91:7-11 (crutop.nu only posted information about event), 81:15-82:2 (Gubarev doesn't know if Vrublevsky (Redeye) ran Crutop); Opp. Ex. 141, ¶ 3.

      12.     Undisputed.

      13.     DENIED as based on inadmissible hearsay and/or unauthenticated documents. Furthermore, misleading and irrelevant as to time.  For instance, Ex. 19 is from the year 2013, well after crutop.nu was an informational sponsor.  Gubarev had no personal knowledge of these allegations at the time or afterwards.  Opp. Ex. 141, ¶ 4.

      14.     DENIED as misleading and irrelevant as to time – document is from the year 2013, well after any claims of connection to AWMOpen.  Gubarev had no personal knowledge of these allegations at the time or afterwards.  Opp. Ex. 141, ¶ 4.

      15.     Undisputed.

      16.     DENIED as based on inadmissible hearsay and/or unauthenticated documents and misleading and irrelevant as to time.  The "public links" are from *after* sponsorship.

      17.     DENIED as ambiguous and misleading as to time.  Documents state 3fn.net was a sponsor in 2005.

      18.     DENIED as based on inadmissible hearsay and/or unauthenticated documents and misleading and irrelevant as to time.  3fn.net is alleged to be shut down four years *after* sponsorship in 2005.

      19.     Undisputed.

      20.     Undisputed, but no evidence to support that these statements actually came to pass.

      21.     Undisputed.

      22.     Undisputed.  However, XBT never used the domain name and sold it on January 2, 2016, and never created a forum to educate people about online safety.  Opp. Ex. 141, ¶¶ 5-6.

      23.     Undisputed.  However, XBT never used the domain name and sold it on January 2, 2016, and never created a forum to educate people about online safety.  Opp. Ex. 141, ¶¶ 5-6.

      24.     Undisputed.

      25.     DENIED.  Specifically denied that (a) Plaintiffs "tasked" Cutler PR with writing article, (b) work was focused on U.S. Market, and (c) Plaintiffs hired Cutler PR.  Cutler PR created the proposal for services to be performed. Ex. 38 [Dvas Depo.], 51:15-23.  The XBT

subsidiary Servers.com hired Cutler PR.  Ex. 39.  Servers.com had no specific market in mind when it hired Cutler PR.  Ex. 38 [Dvas Depo.], 59:2-4.

26.    Undisputed.

27.    Undisputed.

28.    DENIED.  The proposal was for Servers.com, not XBT.  *See* Ex. 39.

29.    DENIED.  Statements not supported by referenced documents.  There was no intention by Plaintiffs with the referenced approach – the strategy was proposed by Cutler PR.  Ex. 38 [Dvas Depo.], 51:15-23.  Also, establishing "credibility" was not the intention of the proposed approach, but instead a means of "position[ing] Servers.com as an expert."  Ex. 41

30.    DENIED that Dvas was an executive of Plaintiffs at the time.  Dvas was the Chief Operating Officer of Servers.com at the time.  Ex. 38 [Dvas Depo.], 63:24-64:2.

31.    DENIED as unsupported that *Inc.* is a "prestigious business publication."

32.    DENIED to the extent that the statements in this paragraph misstate the referenced Russian privacy law.

33.    DENIED as unsupported that publicity was "considerable."

34.    DENIED as to the extent that Ex. 52 is misquoted as referring to XBT – the referenced document is about Servers.com.

35.    DENIED to the extent stated that XBT issued the Ex. 52 press release, which is on its face from Servers.com.

36.    Undisputed.

37.    Undisputed.

38.    DENIED to the extent that it is misleading as to the extent of coverage received in media.  Based upon the single document referenced, there coverage obtained was very minor.

39.    DENIED as misleading.  Klimenko did not attend the event.  Opp. Ex. 141, ¶ 7.

40.    DENIED.  Relevant portion of Ex. 59 does not refer to XBT, but to Servers.ru.

41.    DENIED.  Ex. 53 is in connection with Servers.ru, and not XBT.  Quoted portion of Ex. 54 refers to "Exepto," not "XBT's entry into Russia."

42.    Undisputed.

43.    DENIED as misleading.  Gubarev did not speak to the entire conference, but only to a small room with approximately 100-150 people in it.  Opp. Ex. 141 [Gubarev Decl.], ¶ 9.

This is at a conference that boasts that it draws more than 10,000 participants.  *See* Opp. Ex. 144, p. 3.

44.    DENIED.  That Klimenko or others are "responsible for the Internet" is unsupported and absurd.  Gubarev's meeting with Klimenko was less than 2 minutes of small talk.  Opp. Ex. 141, ¶ 8.

45.    Undisputed.

46.    DENIED.  Documents do not support statements.  Ex. 62 is an email from a PR manager, not XBT's marketing director.  Ex. 38 [Dvas Depo.], 60:14-18.  The referenced documents do not support that the PR manager "lobbied" anyone.  Instead, she only wrote that there was a "possibility" that Gubarev would speak.  Ex. 62.  In the end, Gubarev did not speak at the SPIEC.  Opp. Ex. 141, ¶ 10.

47.    DENIED as based on inadmissible hearsay and/or unauthenticated documents.

48.    Undisputed.

49.    Undisputed.

50.    Undisputed.

51.    DENIED.  The cited references do not support that KGlobal pitched Gubarev (or anyone else) as a thought leader or expert on Russia.  *See* Ex. 67 (no use of "expert" in connection with Russia or otherwise); Ex. 68 ("present you as thought leader, expert and businessman," but not in connection to Russia"); Ex. 3 [Gub. I. Dep.], 246:6-8 (no references to expert or Russia).

52.    Undisputed.

53.    Undisputed.

54.    Undisputed.

55.    Undisputed.

56.    Undisputed.

57.    Undisputed.

58.    Undisputed.

59.    DENIED.  Gubarev opinion was NOT on the "allegations of collusion," but instead solely on the technical claims of the people looking into the allegations.  *See*, *generally*, Ex. 88 (questioning how it is possible to get logs to a computer you do not control).

60.    DENIED.  Gubarev asked if there would be a reference for "us."  Ex. 88.

61.     Undisputed.

62.     Undisputed.

63.     DENIED as unsupported.  There was no "major story," but instead the allegations received limited media attention and Plaintiffs were never contacted about them.  *See* Opp Exs. 142 and 143; Ex. 3 [Gub. I Depo.], 170:3-22 (no one ever contacted XBT about the alleged fraud).  Furthermore, there is no support (admissible, authenticated, or otherwise) that the alleged operation was in actuality "criminal."

64.     Undisputed that White Ops published a report with those statements, but DENIED as hearsay that the statements are true.  They are simply allegations of a non-governmental party.

65.     DENIED that the media coverage was widespread.  *See* Opp Exs. 142 and 143.

66.     DENIED.  There is no competent evidence that there was actually "bot activity."  Plaintiffs also deny that the IP addresses were "attached" to servers leased by the XBT group's customer.  *See*, Ex. 3 [Gub. I Depo.], 170:3-22 (no one ever contacted XBT about the alleged fraud); Ex. 38 [Dvas Depo.], 186:20-22 ("This report included IP addresses *announced* [not attached] from the networks of Webzilla and Servers.com.").

67.     DENIED on basis that XBT never had a "Methbot customer."  *See* Ex. 96 (makes no reference to "Methbot" or "Methbot" customer).  The customer alleged to be involved with the White Ops allegations was Alexander Zhukov.  Ex. 38 [Dvas Depo.], 189:23-25.

68.     DENIED on basis that XBT never had a "Methbot customer."  *Supra*, ¶ 67.

69.     Undisputed.

70.     Undisputed.

71.     DENIED as to second sentence as unsupported by documents.  Webzilla's "ambivalent episodes" was not stated as a reason for only referencing Webzilla, but instead as a caution about Brian Krebs.  *See* Ed. 98 ("Please, be very careful with Mr. Krebs.  He has been performing lots of research in connection with cybercrime originating from Russia, and he might jump to some sort of unnecessary conclusions.").

72.     Undisputed.

73.     DENIED that there was an "internal memo" – Ex. 103 is an email from Nick Dvas to Charles Dolan.

74.     DENIED that *de Volkskrant* is a "leading" Dutch newspaper and unsupported.

75.     DENIED.  Referenced documents state that Hill & Knowlton was retained by Webzilla Limited.

76.     Undisputed as stated, but DENIED to the extent it implicates that the efforts were successful.

77.     Undisputed.

78.     DENIED.  Statements are misleading and incomplete.  Gubarev ultimately has no idea how or why he, XBT and Webzilla were referred in the dossier.  Opp. Ex. 141 [Gub. Decl.], ¶ 12.  Gubarev has considered a few theories, but is unable to prove any of them and he does not know which (if any) of them are more likely.  *Id.*  One theory is that someone was trying to get retribution against him for making a purely technical and non-political comment that was used in a new article that turned out to have political ramifications.  *Id.*  Another is that a potential competitor of his and XBT/Webzilla wanted to spread lies about them to damage their reputations and to gain an unfair advantage.  *Id.*  There have even been suggestions that Steele and Fusion GPS simply made up the allegations themselves, but, because they have not revealed the supposed source of the allegations, there is no way to know.  *Id.  See*, *also*, Ex. 118, p.2 ("'I don't know why I was there,' Gubarev said, adding that perhaps a competitor sought to discredit him.  'I still don't understand the true reason for this report.'").

79.     Undisputed.

80.     DENIED.  Ex. 129 is not an example of "press scrutiny" as, from its face, it is a blog post on a personal blog.  Ex. 130 is an article that simply reiterates some of the claims made in Ex. 129 and, rather than "scrutinizing" Webzilla, states that "If a child pornography site is hosted by a Dutch company, internet companies will cooperate in removing it as quickly as possible."  Ex. 131 is yet another article based on Ex. 129 and again does not "scrutinize" Webzilla, but only references it in passing.  Ex. 132 is a post made on CNN iReport, which from its face appears to be a portion of the CNN website where any person may make any post they desire.  The post is made by a purported "andrewmorgan" and it specifically states that it is "Not verified by CNN."  *See*, *also*, Opp. Ex. 145 ("Everything you see on iReport starts with someone in the CNN audience.  The stories here are not edited fact-checked or screened before they post.").  Accordingly, there is no support that Webzilla was subject to press scrutiny.

Dated: October 5, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com

*Attorneys for Plaintiffs*