SUBJECT TO PROTECTIVE ORDER ENTERED AUGUST 24, 2018
ATTORNEYS' EYES ONLY

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### Case No.: 17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.
_____/

## REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
1251 Avenue of the Americas, 21st Floor
New York, New York 10020

BLACK, SREBNICK, KORNSPAN &
STUMPF, P.A.
Roy Black
Jared Lopez
201 So. Biscayne Boulevard
Miami, Florida 33131

*Of Counsel*:
Nabiha Syed
BuzzFeed, Inc.
11 E. 18th Street, 13th Floor
New York, New York 10003

*Attorneys for Defendants*

Plaintiff's Opposition argues that the question of whether a news organization can publish one of the most consequential documents in contemporary American politics comes down to font size and whether someone actually said the words "Gubarev" or "XBT" to President Obama. But this Court has already determined that the law does not require that, and Plaintiffs' effort to re-litigate that decision only reinforces why it was right the first time. Otherwise, Plaintiffs argue that because BuzzFeed honestly told its readers that the Dossier was unverified, it lost its First Amendment right to publish it. But the law does not support that either, and so summary judgment should be entered for Defendants.

## I. DEFENDANTS' PUBLICATION IS PRIVILEGED AS A FAIR REPORT

Plaintiffs' arguments regarding the fair report privilege mostly just seek reconsideration of this Court's prior decision, Dkt. 171 (the "Decision"). They provide no grounds to do so.

### A. **BuzzFeed's Publication Was "Fair and True"**

Plaintiffs first claim that the Article was not a "fair and true" account of official action. Dkt. 234-1 ("Opp.") at 3-7. The Decision disposed of that question in a single sentence. Dkt. 171 at 14. Nonetheless, Plaintiffs begin by boldly asserting that "at least three other facts needed to be established" by Defendants in order to satisfy that element, such as when exactly the Obama briefing took place and whether the intelligence community took the Dossier seriously. Opp. 4. This is sheer invention; those "facts" have nothing to do with whether BuzzFeed made a "fair and true" report of official action. Indeed, this Court already told Defendants what they have to establish: "that the official actions described in the CNN article (the classified briefings and FBI investigation) actually occurred." Dkt. 171 at 19. Moreover, even if facts Plaintiffs now raise were somehow relevant, *those facts have been established*.

Despite Plaintiffs' efforts to obscure it, the record clearly shows that the basis of the classified briefings and the synopsis was the full Dossier, including the December memo. The Priestap Declaration confirms that the "Dossier" used to brief President Obama was "the 35 pages published by BuzzFeed." *See* Dkt. 214-3 ("Bolger Decl.") Ex. 8 ¶¶ 4, 6(c). The Gistaro Declaration also confirms that President-elect Trump received a two-page synopsis based on allegations "derived from a 35 page 'dossier' allegedly compiled by a former British intelligence operative." Bolger Decl. Ex. 36 ¶¶ 11-12, 17. Likewise, the evidence shows, to use Plaintiffs' words, that that FBI "was taking the *contents* of the Dossier itself (and not just its existence) seriously." Opp. 4. Since at least September 2016, there was an FBI counterintelligence

investigation which included assessing the veracity of the Dossier's contents. Dkt. 214-2 ("SUMF") ¶¶ 11-16, 18-19. Well into 2017, the FBI was exercising a FISA warrant obtained in part using information in the Dossier. *See id.* ¶ 46. And the NSA considered the synopsis as part of its approval of the classified ICA presented to both Presidents. *Id.* ¶ 43.[1]

Next, Plaintiffs effectively seek reconsideration of the Decision's holding that BuzzFeed's report was "fair and true" because "[w]ithout editorializing, the Article accurately reproduces the Dossier, albeit with the source's name redacted." Dkt. 171 at 14. Plaintiffs claim that the Article's characterization of their conduct was "more serious" than the accusations against them made in the Dossier. Opp. 3. To try to make that point, Plaintiffs contradict what they have argued about the fair report privilege for almost two years. Up to now, Plaintiffs have vigorously maintained the Article does not say anything about them *at all*. *See, e.g.*, Dkt. 115 at 4, 14 ("[T]he article makes no claims concerning the only relevant memo, the December Memo, which contained the defamatory content."). Likewise, the Complaint does not allege that anything in the Article defamed them. But now they argue that the Article "leave[s] the reader with a different impression about the allegations concerning Plaintiffs than would a fair and true report," because they claim the Article implies that President Obama was briefed about *them*, and that Senators McCain and Reid each had particular concerns about *them*. Opp. 6. They note that

---

[1] Plaintiffs selectively object to some of those facts, calling the public reports cited, like the Nunes Memo, "inadmissible hearsay" and inauthentic. *See* Dkt. 234-2 ("Opp. SUMF") ¶¶ 12-16, 18-19, 41-46. At the same time, they rely on those documents for facts they like. *Id.* ¶ 17. Even ignoring this inconsistency, their objections lack merit. Congressional reports are self-authenticating, FRE 902(5), and the only element of those reports Defendants rely on are the "factual findings from a legally authorized investigation." *Id.* 803(8)(A)(iii). And Defendants only cite facts common to the reports issued by the majority and minority. Such facts are admissible if "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." *Id.* 803(8)(B). Plaintiffs offer no such showing, which moots their objection. *United States v. Nichola*, 2015 WL 12683831, at *2 (M.D. Fla. June 22, 2015), *R&R adopted*, 2015 WL 12696191 (M.D. Fla. Sept. 10, 2015); *see also James Madison Project v. Dep't of Justice*, 320 F. Supp. 3d 143, 150-51 (D.D.C. 2018) (holding that Nunes Memo was official acknowledgment of existence of FBI's investigation into the Dossier). Notably, Judge Mehta indicated at the hearing on Defendants' motion to compel government evidence that it "can't be any clearer" that the *facts* within the Nunes Memo and similar documents would be admissible under FRE 803(8), and he limited the questions he compelled the government to answer based on that assumption. Reply Declaration of Katherine M. Bolger ("Bolger Reply Decl.") Ex. 1 (Transcript) at 9:21-15:6. By contrast, Plaintiffs liberally cite to obviously inadmissible hearsay, like books and media interviews, *see* Opp. SUMF ¶¶ 42-45, as well as CNN data filed without any declaration. *See* Dkt. 234-3 ("Shayefar Decl.") ¶ 22 & Ex. 81.

the BuzzFeed and CNN articles referred to those Senators reviewing the "documents" or a "full copy," before Christopher Steele wrote the December memo. *Id*. 5-7.

It is rather late in the game for Plaintiffs to be alleging newly-minted theories of defamation by implication. But more than that, the "editorializing" that Plaintiffs now divine simply does not exist in either the BuzzFeed or CNN articles, as the Decision correctly noted. Neither article implied anything specific about the conduct of Plaintiffs. The articles simply reported that a two-page synopsis was discussed with the President and President-elect and say nothing about whether the Senators mentioned or gave any more (or less) credence to any particular allegation – let alone the one about Plaintiffs. Indeed, consistent with the requirement that the privilege not be analyzed "with a lexicographer's precision," New York courts have found news reports to be "fair and true" even when they did give at least some credence to the specific allegations about a plaintiff. For example, in *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, which like this case involved a news report about unverified allegations contained in intelligence documents, the New York Court of Appeals held:

> Here, there is no showing that defendant misquoted any material contained in the intelligence reports. While the use of the phrases "stated as fact" and "confirmed and elaborated" may denote to some degree, a sense of legitimacy which, in hindsight, could be characterized as imprudent given the unverified nature of the reports, this observation does not, in and of itself, render the newspaper articles unfair.

49 N.Y.2d 63, 68 (1979). Moreover, whether the two Senators saw 33 rather than 35 pages is likewise a classic example of why "it is enough that the substance of the article be *substantially accurate*," not literally accurate in every detail. *Id.* at 67 (emphasis added).[2]

**B.     The Dossier Was Part of an Official Proceeding**

Turning to the "official proceeding" element, the Decision held that "it would undermine the privilege to require that one who reports on official action tie every specific allegation in the report to a specific instance of official action." Dkt. 171 at 18-19. As a New York court

---

[2] That is all the more true here when the publication is viewed as a whole, as it must be. *See, e.g.*, *Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 236 (1992). The Article reported that McCain delivered the Dossier to the FBI on December 9, and CNN reported that Reid saw it in October. But the December memo is clearly dated December 13, so anyone who actually read the allegations against Plaintiffs could see that it post-dated those events. Plaintiffs' bald allegation that BuzzFeed intentionally included this trivial inaccuracy is also meritless. Opp. 5. Kramer testified that he told Ken Bensinger, mistakenly, that Senator McCain had received all 35 pages. Bolger Reply Decl. Ex. 7 at 110:14-22.

observed when rejecting similar arguments, "plaintiffs' theory [that] BuzzFeed could only publish the Dossier if it knew that every single statement in it was part of the alleged government investigation" was "not a logical reading of the fair report privilege." *See* Dkt. 165-1 at 4. Nonetheless, Plaintiffs claim the Court required Defendants to do exactly that by pointing to one part of a different sentence in the Decision, which said readers must be able to ascertain "that there is an official proceeding underway or official action being taken regarding the allegedly defamatory matter." Opp. 7 (quoting Dkt. 171 at 13). Plaintiffs read that to hold that Defendants must prove that each "particular defamatory statement was part of" an official proceeding, *id.*, and in addition that either (1) Plaintiffs themselves were being personally investigated, *or* (2) there was "official action. . . concerning. . .the December Memo." Opp. 9-10.

Neither the Decision nor New York law requires anything of the kind. To the contrary, the Decision held that "the privilege applies if *the Dossier* was part of or subject to an official proceeding." Dkt. 171 at 15 (emphasis added); *see also id.* at 14 ("The issues, thus, are whether an official proceeding concerning *the Dossier* was underway when BuzzFeed published it.") (emphasis added); *id.* at 16 (report must permit "an ordinary reader to understand that *the Dossier* was the subject of classified briefings or an FBI investigation.") (emphasis added). The Decision correctly applied New York law on this point, which applies the privilege to "[q]uotations from, and summaries of, documents or other material that the report indicates are part of a proceeding." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 216-17 (N.D.N.Y. 2014); *see also Branca v. Mayesh*, 101 A.D.2d 872, 873 (N.Y. App.) *aff'd*, 63 N.Y.2d 994 (1984). Because the Dossier was a "document" that the Article (including the hyperlinked CNN Article) "indicate[d] was part of" classified briefings and an FBI investigation, any "allegedly defamatory matter" within the Dossier is privileged. And as discussed above, the briefings and the FBI investigation indisputably occurred. Put another way, Plaintiffs' position is that BuzzFeed could only have published the Dossier if it was accompanied by an article describing how each instance of official activity related to each one of the forty or so names in all seventeen of the memos. Both this Court and the New York court have rejected this.

Moreover, the arbitrary requirements Plaintiffs ask this Court to impose prove too much, because even if it were somehow required BuzzFeed has "establish[ed] that an official proceeding existed concerning . . . the December Memo." Opp. 10. As the Decision noted, generally the December memo was about alleged collusion between the Trump campaign and

4

Russia. Dkt. 171 at 18. That was what the FBI investigation was all about, and the full, 35-page Dossier was the starting point for the Presidential briefings. But more specifically, the final sentence of *the very paragraph Plaintiffs sue over* refers to Steele's earlier reports about Carter Page. Those allegations were the subject of official action, including a FISA warrant. *See* SUMF ¶¶ 15, 46. The December memo also explicitly refers back to earlier memos (Nos. 135 and 136), which likewise discuss Page as well as Paul Manafort, who now sits in prison.

### C. The Article Reported on "Official Action"

Finally, the Decision held that readers would understand the Article to report on official actions because "the hyperlink [to the CNN Article] here is conspicuous. It appears in the body of the Article, within the words 'CNN reported,' which are written in blue." Dkt. 171 at 18. Nonetheless, Plaintiffs argue that the link was not conspicuous because it was not also underlined. Opp. 12. If so, this Court must also be engaging in consumer deception, because all the hyperlinks on the Court's website are also blue without underlining (no lines appear unless a link is accessed). And many of the hyperlinks on XBT and Webzilla's homepages are *neither* colored nor underlined. *See* http://xbtholding.com/; https://webzilla.com/blog/.

In any event, BuzzFeed's CNN link was not remotely comparable to "the contract line of cases to which *Adelson* analogizes." Opp. 12. The "insufficiently conspicuous" hyperlinks *Adelson* noted were all set off or concealed at the bottoms or ends of multiple pages. *Adelson v. Harris*, 402 P.3d 665, 669-70 (Nev. 2017). And, in any event, hyperlinks serve a very different function in contract law because they must demonstrate actual consent to a meeting of the minds. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014).[3] In defamation cases, on the other hand, they just indicate attribution and context. *Boley v. Atlantic Monthly Grp.*, 950 F. Supp. 2d 249, 262 (D.D.C. 2013). For this reason, although there are several New York cases finding hyperlinks to satisfy attribution requirements for purposes of defamation law, none suggest such strict formatting requirements. *See Biro v. Condé Nast*, 2014 WL 4851901, at *4 (S.D.N.Y. 2014), *aff'd in part*, 807 F.3d 541 (2d Cir. 2015) and 622 F. App'x 67 (2d Cir.

---

[3] And even in the contract context courts find colored hyperlinks to be conspicuous. *See, e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 552-53 (S.D.N.Y. 2018); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *9 and App. A (S.D.N.Y. Nov. 20, 2017); *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014). By contrast, *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017), upon which Plaintiffs rely, found a link to be inconspicuous based on "the totality of the circumstances," including that "the text [was] difficult to read" and appeared in "the smallest font on the screen." *Id*. at 466-67.

2015); *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (N.Y. App. 2011); *Silvercorps Metals, Inc. v. Anthion Mgmt. LLC*, 2012 WL 3569952, at *10 (N.Y. Sup. Ct. 2012).

Plaintiffs' remaining argument is that the hyperlink must not have been conspicuous because a small percentage of the Article's readers used it to access the CNN Article. Opp. 13-14. But neither *Adelson* nor any other case suggests that the conspicuousness of a hyperlink depends on how many users actually clicked it. In fact, the opposite is true – even in the contract context, courts have rejected that logic. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("Whether or not the consumer bothers to look is irrelevant"). As the district court in *Adelson* recognized, no one questions that a footnote is a proper form of attribution, yet far fewer readers likely consult sources listed in footnotes as compared to clicking on hyperlinks. *Adelson v. Harris*, 973 F. Supp. 2d 467, 485 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017). Moreover, the facts here underscore why Plaintiffs can point to no precedent finding the statistics they proffer to be relevant. The CNN story was a major, widely followed story – both on CNN and as it was immediately re-reported by numerous other news outlets. *See, e.g.,* Bolger Decl. Exs. 42, 43, 46; Bolger Reply Decl. Exs. 2-4. Thus, any reader of the Article who already knew what "CNN report[ed]" could recognize the attribution in the link without accessing the same story again. In a digital media world where news organizations routinely build on what others have reported, the number of clicks on a hyperlink can never accurately measure the extent of readers' recognition or knowledge of the underlying content.

## II. BUZZFEED MADE NO DEFAMATORY STATEMENTS OF FACT

Plaintiffs' arguments on this issue simply ignore the line of cases cited in the opening brief. Plaintiffs are correct that as a general rule, one "who republishes a defamatory statement" can be liable for it. Opp. 14. But Plaintiffs do not really address the cases that also hold that where a defendant raises questions based on defamatory allegations, but "indicates [the defendants'] lack of definitive knowledge about the issue," *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (citation omitted), or "present[s] both favorable and unfavorable views, but does not ultimately adopt any particular answer as correct," *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir. 1994), then the "republisher" in that context is not liable for each underlying accusation. *See* Mot. 13 & n.6 (citing cases).

The cases cited by Plaintiffs are also consistent with that proposition. In most of them, a publisher included defamatory statements made by others in support of the publisher's own

defamatory thesis. *See Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 61 (2d Cir. 1980); *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 462 (S.D.N.Y. 2012). By contrast, *Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997), which Plaintiffs also cite, held that republishing various theories implicating the plaintiff in a murder did not amount to actionable statements of fact by the publisher, because "[b]oth the book and the article emphasize that the facts . . . remain unknown." *Id.* at 197. Likewise, BuzzFeed made clear that the allegations were "unverified" and the product of opposition research, and noted errors that it found. As such, by publishing the Dossier only in that context, Defendants made no defamatory statements of fact.

## III. SUMMARY JUDGMENT IS WARRANTED ON THE ELEMENT OF FAULT

Finally, Plaintiffs fail to create an issue of fact as to fault. When dealing with a 35-page document like the Dossier, the actual malice inquiry is clear. "[D]efamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement." *Tavoulareas v. Piro*, 817 F.2d 762, 793-94 (D.C. Cir. 1987); *see also, e.g.*, *Schiller v. Viacom, Inc.*, 2016 WL 9280239, at *8 (S.D. Fla. Apr. 4, 2016). Thus, actual malice requires clear and convincing proof that Defendants knew or had serious doubts about the accuracy of *the allegations against Plaintiffs*.

Yet Plaintiffs barely purport to point to *any* evidence – let alone clear and convincing evidence – that Ben Smith or anyone else involved had serious doubts about those particular allegations, which merely identified some participants in a cyber-operation whose existence had been conclusively confirmed. The only item they try to loosely tie to those allegations is that BuzzFeed redacted information identifying Michael Cohen's father-in-law. Plaintiffs assert that occurred because Defendants knew "that the allegations were not true," Opp. 20, but they point to no evidence to support that. Smith's uncontradicted testimony was that his name was redacted because in Smith's view the Dossier made no substantive allegations against him. Bolger Decl. Ex. 59 (Smith Deposition) at 67:20-25. No substantive allegations against *Cohen* were redacted.

Otherwise, pointing to the Article and Smith's interviews, Plaintiffs just repeat how BuzzFeed made clear that (1) it had neither verified nor falsified various allegations in the Dossier, and (2) there were some factual errors it found. But that is not actual malice. The fact that an article "remained 'agnostic' with respect to the truth" of an allegation does not equate to believing it to be false. *Howard v. Antilla*, 294 F.3d 244, 252-54 (1st Cir. 2002). Rather, "there is a critical difference between not knowing whether something is true and being highly aware

7

that it is probably false. Only the latter establishes reckless disregard in a defamation action." *Liberman v. Gelstein*, 80 N.Y.2d 429, 438-39 (1992). And most relevant here, "reporting perspectives contrary to the publisher's own should be interpreted as helping to rebut, not establish, the presence of actual malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016); *see also* Mot. 16 n.8 (citing cases). Indeed, courts find no malice even where the defendant was far less forthright with its audience. *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1241 n.33, 1243 (11th Cir. 1999) (no actual malice where reporter stated "[the] truth is irrelevant to me", chose "not to include statements" favorable to the plaintiff, and knew there was a "[d]ifference of opinion as to the truth" of allegations).

For much the same reasons, another specific piece of evidence Plaintiffs point to clearly shows the *absence* of malice. They point to an email exchange between Smith and CNN's Jake Tapper, in which Smith explained why the Article described the Dossier's author as someone who "claimed to be a former British intelligence official." Smith explained that although BuzzFeed "widely understood" that is who Steele was, "there is no official list" of secret agents and MI6 had not actually confirmed that information, so BuzzFeed could not be "100% certain" for purposes of reporting that as a confirmed fact. Shayefar Decl., Exs. 61, 62. In short, Smith carefully distinguished between what he personally *believed*, and what he thought could be objectively *reported* as a definitive fact. Not only is that the opposite of actual malice – Smith made clear he understood Steele to be a former official – it was consistent with Smith's overall approach to distinguishing between personal views and objectively confirmed facts when reporting on the Dossier. Bolger Decl. Ex. 2 (Smith Declaration) ¶¶ 20-21.

Another court recently rejected an even stronger version of the argument Plaintiffs now make, holding on an anti-SLAPP motion that another group of defamation plaintiffs (the principals of Alfa Bank) could not demonstrate that Steele acted with actual malice when he shared the Dossier. *Khan v. Orbis Bus. Intelligence Ltd.*, No. 2018 CA 002667 B (D.C. Sup. Ct. Aug. 20, 2018) (Ex. 5 to the Bolger Reply Declaration). Those plaintiffs focused on statements from Steele estimating that "between 10 and 30 percent of his 'raw intelligence' would ultimately prove inaccurate.'" *Id*. at 21. Just as Plaintiffs do here with Ben Smith's statements, the plaintiffs in *Khan* argued that this raised a triable issue of actual malice. The court rejected this argument because the plaintiffs could not connect Steele's doubts about the Dossier in the abstract to the particular statements about them in one of the memos (Report No. 112):

8

> In any event, "defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement." *Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) (en banc) (emphasis in original). Plaintiffs do not allege that Mr. Steele subjectively believed that the 10-30% of the Steele Dossier that would ultimately turn out to be inaccurate included CIR 112 or that Mr. Steele knew any fact stated or implied in CIR 112 was false or acted with reckless disregard to its falsity.

*Id*. at 21. The same is true with Smith's statements.

Otherwise, Plaintiffs just recite facts that courts consistently hold are *not* actual malice. Plaintiffs emphasize that Defendants did not contact or specifically investigate them before publication, Opp. 18, but a lack of investigation is not actual malice. *See, e.g.*, *Michel*, 816 F.3d at 703. They simply invent a supposed BuzzFeed policy of sending a "no surprise" letter "before it publishe[s] allegations about someone." Opp. 18. BuzzFeed's policy is not directed at merely "anyone" or "someone" – rather, its policy is to send a letter where a person is the "subject of an investigation" by BuzzFeed. Bolger Reply Decl. Ex. 6 (Smith Deposition) at 76:10-78:9. Here, Plaintiffs were not the subject of any BuzzFeed investigation, nor was the story BuzzFeed published directed at them. *Id*. In any event, none of that relates to malice.[4] Plaintiffs also cite the unsurprising fact that Smith, as the editor of a for-profit, digital media organization, considered among other things "the positive effect the publication would have on BuzzFeed's web traffic." Opp. 18. It is well-settled that "the fact that the defendant published the defamatory material in order to increase its profits [does not] suffice to prove actual malice . . . If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times* to *Hustler Magazine* would be little more than empty vessels." *Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).

Plaintiffs further contend that relying on Steele was akin to an unverified, anonymous phone call because BuzzFeed did not know who Steele's sources were. Opp. 19. That is wholly incorrect – *Steele*'s identity and reputation were known to Defendants and they believed him to be credible, SUMF ¶ 58(d), and journalists rely all the time on reputable sources of information

---

[4] *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (contentions that defendants engaged in "poor journalistic practices," "did not follow ... editorial guidelines," and "failed to conduct a thorough investigation" were not evidence of malice); *Jankovic v. Int'l Crisis Grp.*, 72 F. Supp. 3d 284, 309-14 (D.D.C. 2014) (same for contentions that defendant "disregard[ed] its own operating procedures", "fail[ed] to investigate" certain information, cited "questionable" foreign articles, and relied on "shadowy" confidential sources), *aff'd*, 822 F.3d 576 (D.C. Cir. 2016).

who have their own confidential sources. *See, e.g., OAO Alfa Bank v. Ctr. for Public Integrity*, 387 F. Supp. 2d 20, 53-54 (D.D.C. 2005) (where defendants' report relied on Russian intelligence documents, "[t]he failure to investigate exactly who provided the information to the FSB officials or the KGB major is not evidence of actual malice"). Put another way, BuzzFeed's reliance on Steele was no more "actual malice" than its reliance on CNN, which published its article based on its own confidential sources. Moreover, BuzzFeed knew that respected experts like David Kramer, and apparently Senator McCain, also took Steele's allegations seriously. SUMF ¶ 58(e)-(f). And Plaintiffs do not point to any "obvious reason to doubt the veracity" of Steele's reporting *about them*. The record similarly belies Plaintiffs' claim that Defendants "purposeful[ly] avoid[ed] the truth." Opp. 19. To the contrary, Defendants worked hard to find the truth after they received the Dossier, and when they were unable to prove what was or wasn't true, they explained that to their readers.

Finally, if Plaintiffs are private figures, their only basis for claiming they have demonstrated a fact question about gross irresponsibility or negligence is their argument about actual malice. Opp. 21. Their failure to create a triable issue of fact on malice thus warrants summary judgment regardless of their status. Moreover, Plaintiffs are wrong about gross irresponsibility – they cannot rely solely on actual malice to establish that. *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 104-06 (2d Cir. 2000). Summary judgment is, therefore, required because Plaintiffs have proffered no evidence of gross irresponsibility.

Finally, as to the choice of law, Plaintiffs offer no explanation why the standard of fault should be treated any differently than the fair report privilege, since the gross irresponsibility standard functions as a "conditional privilege" that "exist[s] to protect speakers, not to provide Plaintiffs a remedy." *See* Dkt. 171 at 9-10; Mot. 18. Moreover, Florida is simply not "the law of the jurisdiction" of Plaintiffs, whatever that means. Opp. 21. None were headquartered there at any relevant time, two have no presence, and Plaintiffs offer no response to the undisputed record showing that they have not produced a scintilla of evidence that any of them suffered any actual injury in this state – not a single customer, credit relationship, or anything else. Florida thus has no significant interest in this case, and certainly not one greater than New York's.

## CONCLUSION

Defendants respectfully request that summary judgment be entered in their favor.

Dated: October 12, 2018

*Of Counsel*:
Nabiha Syed
BuzzFeed, Inc.
11 E. 18th Street, 13th Floor
New York, New York 10003

Respectfully submitted,

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 12th day of October, 2018.

By: /s/ Jared Lopez
Jared Lopez, Esq.

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com