# Exhibit 6

# In the Matter Of:

## GUBAREV vs BUZZFEED

17-CV-60426-UU

# BENJAMIN SMITH

*February 08, 2018*

*Confidential*



800.211.DEPO (3376)
EsquireSolutions.com

```
            IN THE UNITED STATES DISTRICT COURT

               SOUTHERN DISTRICT OF FLORIDA



 ALEKSEJ GUBAREV, XBT HOLDING    )Case No.
 S.A., AND WEBZILLA, INC.,       )17-CV-60426-
                                 )UU
              Plaintiffs,        )
                                 )
            vs.                  )
                                 )
 BUZZFEED, INC. AND BEN          )
 SMITH,                          )
                                 )
              Defendants.        )
 --------------------------------)




            DEPOSITION OF BENJAMIN SMITH

                New York, New York

             Thursday, February 8, 2018











 Reported by:
 TAMI H. TAKAHASHI, RPR, CSR
 JOB NO. J1400363
```



800.211.DEPO (3376)
*EsquireSolutions.com*

```
 1                CONFIDENTIAL - Smith
 2   anyone -- I didn't have any reason to think
 3   anyone had reached out to Michael Cohen.
 4           (Plaintiffs' Exhibit 3, Article
 5        entitled, "Buzzfeed's Ben Smith on
 6        What's Wrong (and Right) With the
 7        Media," marked for identification as of
 8        this date.)
 9   BY MR. FRAY-WITZER:
10        Q.   You've been shown what's been
11   marked as Exhibit 3.  Can you tell me if you
12   recognize that document?
13        A.   Yes.
14        Q.   And what is that document?
15        A.   It's an interview I did in July of
16   2016 with New York Magazine.
17             Do you mind if I read it --
18        Q.   No.
19        A.   -- to refresh my memory?
20             (Witness reviewing document.)
21             MR. FRAY-WITZER:  I don't want to
22        interrupt you, but I will tell you that
23        I'm only going to ask you something
24        about page 1.
25             THE WITNESS:  Okay, I've read
```



```
 1                CONFIDENTIAL - Smith
 2        page 1.
 3   BY MR. FRAY-WITZER:
 4        Q.   So as part of one of your answers
 5   here you stated, "I do think before you
 6   publish something, at least, you should not
 7   surprise people.  And we have a practice here
 8   of writing what we call a 'no surprises'
 9   letter to the subject of an investigation
10   that lays out in great, great detail what's
11   in a story.  And then you make sure you slip
12   that under their door, you mail it to them,
13   you e-mail it to them, you send it to their
14   lawyer.  It often adds to your reporting.
15   There's no reason that the subject of a story
16   should be surprised.  Maybe there's
17   occasionally a reason, but in most cases,
18   there isn't a reason, and you should test
19   your stronger reporting against their
20   response before you publish, not after."
21             Did I read that correctly?
22        A.   Yes.
23        Q.   Was it accurately reported that you
24   said that?
25        A.   Yes.
```



```
 1                CONFIDENTIAL - Smith
 2       Q.   Why not send a "no surprises"
 3   letter to the plaintiffs?
 4       A.   Well, we didn't write a story about
 5   the plaintiffs.  We wrote a story about a
 6   document that had been briefed to two
 7   presidents that was this extra -- subject of
 8   this extraordinary interest and by the top
 9   levels of the U.S. intelligence community.
10       Q.   Did you take into consideration at
11   any point before publishing the dossier what
12   effect there might be on individuals named in
13   the dossier if the allegations against them
14   were not true?
15       A.   I don't remember having that
16   specific thought through my mind.
17       Q.   Do you think that's important?
18       A.   Could you rephrase the question.
19       Q.   You're publishing a document that
20   makes serious allegations against people.
21   Don't you think it is important to consider
22   the effect that your publication might have
23   on them if the allegations are untrue?
24       A.   We certainly -- I certainly
25   considered the effect that -- you know,
```



```
 1
 2                C E R T I F I C A T E
 3     STATE OF NEW YORK      )
 4                            : ss.
 5     COUNTY OF NEW YORK     )
 6
 7            I, TAMI H. TAKAHASHI, a Notary
 8       Public within and for the State of New
 9       York, do hereby certify:
10            That BENJAMIN SMITH, the witness
11       whose deposition is hereinbefore set
12       forth, was duly sworn by me and that
13       such deposition is a true record of the
14       testimony given by the witness.
15            I further certify that I am not
16       related to any of the parties to this
17       action by blood or marriage, and that I
18       am in no way interested in the outcome
19       of this matter.
20            IN WITNESS WHEREOF, I have hereunto
21       set my hand this 13th day of February
22       2018.
23
                         
24                       _____
25                       TAMI H. TAKAHASHI
```