UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No: 0:17-cv-60426-UU-Ungaro/O'Sullivan

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

        Plaintiffs,

v.

BUZZFEED, INC. AND BEN SMITH,

        Defendants.

_____/

## THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE AND FOR ACCESS TO JUDICIAL RECORDS

The New York Times Company ("The Times"), publisher of *The New York Times*, seeks

leave to intervene in this action for the limited purpose of moving this Court to unseal judicial

records in this matter related to the parties' motions for summary judgment [D.E. 208, 225, 226,

240, 241].[1]  Grounds for this motion are set forth in the following memorandum of law.

## MEMORANDUM OF LAW

### I.  BACKGROUND

To say that there is a public interest in this case is an understatement.  For almost two

years, national and international political debate has revolved around the notorious "Dossier" – a

document that contains explosive, and at times salacious, allegations about President Trump's

connections to Russia.  After Buzzfeed published the Dossier online, Plaintiff, a Russian

businessman named in the Dossier, sued for libel.  While such civil litigation is routinely

---

[1] The Times has standing to intervene in this proceeding for the purpose of seeking access to the records at issue.  As the Eleventh Circuit has recognized, members of the news media are entitled to challenge the denial of access to judicial proceedings and records.  *See, e.g.*, *United States v. Ellis*, 90 F.3d 447, 449 (11th Cir. 1996); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983).

conducted in public view, even in low-profile cases, the parties here have engaged in widespread redaction of dispositive motions, denying the public the ability to monitor this case effectively. Redactions block out, in full or part, such critical sections of the parties' briefs as those dealing with whether the plaintiffs are public figures and whether the fair report privilege, applicable to governmental documents, applies to the document.

The Dossier traces its origin to 2015, when Fusion GPS began investigating then-candidate Trump under a contract with a conservative website.  After Mr. Trump became the Republican Party's presumptive presidential nominee, Fusion GPS was then retained by a member of Hillary Clinton's campaign to continue the investigation.  At that point, Fusion GPS hired Christopher Steele, a former British intelligence agent with ties to the FBI, to examine Mr. Trump's ties in Russia.  The Dossier actually consists of several memos prepared by Mr. Steele. On his own initiative, and without permission from Fusion GPS, Mr. Steele shared his findings with the FBI.

On January 10, 2017, CNN first reported that President Obama and President-elect Trump had been briefed by intelligence chiefs on classified documents (*i.e.*, the Dossier) containing allegations that Russian operatives had compromising personal and financial information about Mr. Trump that could be used to blackmail him.  CNN reported that the allegations were presented to the President and President-elect in a two-page synopsis appended to a report on Russian interference in the 2016 election, and that the FBI was investigating the credibility and accuracy of the allegations.  Shortly thereafter, BuzzFeed published a story that included a copy of the 35-page Dossier.  BuzzFeed wrote it was "publishing the full document so that Americans can make up their own minds about allegations about the president-elect that have circulated at the highest levels of the US government."

Of the many allegations in the Dossier, one memo accused Plaintiffs, Russian entrepreneur Aleksej Gubarev and his technology companies, of secretly working for the Russian intelligence agency known as the FSB.  Specifically, the Dossier alleges that Plaintiffs "had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic party leadership."  Plaintiffs deny that they helped Russia with its cyber operations against Hillary Clinton's campaign and the Democratic National Committee and have sued BuzzFeed and its Editor-in-Chief Ben Smith for defamation.

 This litigation, while contentious and generating significant public debate, has largely taken place in public.  However, large swaths of the parties recently filed dispositive motions for summary judgment are redacted and a significant number of exhibits are withheld from public view.  The redacted and sealed information in the dispositive motions is a matter of immense public interest and will almost certainly play a critical role in this Court's analysis of the merits of the motions.  The Times seeks to intervene for the limited purpose of ensuring that the public's rights of access are considered and adhered to in this case as it pertains to the redaction and sealing of the summary judgment motions and their exhibits.

## II.  THE RIGHT OF ACCESS TO COURT RECORDS

It is well-settled that the public enjoys a presumptive right of access to civil court proceedings.  "Judicial records are presumed to be public documents because '[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case.'"  *Hargett v. Fla. Atl. Univ. Bd. Of Trs.*, No. 15-cv-80349, 2016 U.S. Dist. LEXIS 193194, *2 (S.D. Fla. Sept. 1, 2016) (quoting *Brown v. Advantage Eng., Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)).  The right of access is, therefore, grounded in the long-standing precept that "[w]hat transpires in the courtroom is public property."  *Craig v. Harney*, 331 U.S. 367, 374 (1947).  As

4841-9391-9864, v. 1

the Eleventh Circuit has explained, "[t]he operation of the courts and the judicial conduct of judges are matters of utmost public concern and the common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).  As such, the presumption of access encompasses the right to inspect and copy judicial records. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)

In applying the right of access to judicial records, courts distinguish between items that are properly considered public and those that are not, with the presumption of access attaching to the former but not the latter.  *Id.*  By way of example, the public typically does not have access to unfiled discovery material to which the right of access does not attach.  *Id.*  In contrast, when discovery material is filed in connection with pretrial motions that require judicial resolution of the merits, the right of access attaches.  *Id.* at 1312-13.  "Judges deliberate in private but issue public decisions after public arguments based on public records. . . . Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification."  *Perez-Guerrero v. Unites States AG*, 717 F.3d 1224, 1235 (11th Cir. 2013) (quoting *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006)).

Thus, although a court has discretion to determine whether a judicial record should be sealed, its discretion is guided by the presumption of public access.[2]  *Id.* at 1235; *Flaum v.*

---

[2] The Local Rules confirm that presumptive right of access by acknowledging court files are, by default, open to the public.  L.R. 5.4.  Local Rule 5.4 recognizes there exist limitations on the presumptive right of access to judicial records by establishing a procedure for filing matters under seal.  A motion to seal must be filed setting forth the basis for "departing from the general policy of a public filing" and generally describing the contents of the sealed filing.  L.R. 5.4.B.2. The Court must enter an order, either accepting the proposed document under seal or denying closure (in which case the Clerk returns the proposed filing to the filer).  L.R. 5.4.C.  As written, the Local Rule does not contemplate the motion to seal is itself sealed, nor does it specifically contemplate the Court's order regarding closure would likewise be sealed.  L.R. 5.4.B.2, 5.4.C.

4

*Doctor's Assocs.*, No. 16-61198-CIV, 2017 U.S. Dist. LEXIS 184480, *2-3 (S.D. Fla. Jan. 27, 2017).  The presumption of access requires a balancing of competing interests to determine whether there is good cause to deny public scrutiny of the document.  *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013).  Importantly, "the Eleventh Circuit requires a strong showing by the proponent of a motion to seal before the Court will deny public access to judicial proceedings."  *Schojan v. Papa John's Int'l, Inc.*, Case No. 8:14-cv-1218, 2014 U.S. Dist. LEXIS 131007, *4 (M.D. Fla. Sept. 18, 2014).

Whether good cause exists to support sealing of a judicial record depends on the nature and character of the information in question.  *Romero*, 480 F.3d at 1246.  To that end, the Eleventh Circuit has identified several relevant factors, including whether the records are sought for illegitimate purposes, such as to promote scandal or to gain an unfair commercial advantage; whether access is likely to promote public understanding of a historically significant event; and whether the press has already been permitted substantial access to the contents of the records. *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983).  Additionally, courts consider whether access would impair legitimate privacy interests; the degree and likelihood of any injury; whether there is an opportunity to respond to the information; whether the information concerns public officials or public concerns; and the availability of a less onerous alternative to sealing. *Romero*, 480 F.3d at 1246.

### III. ACCESS TO RECORDS IN THIS CASE

In anticipation of their motions for summary judgment and to support the anticipated filing of discovery material, the parties submitted a Joint Motion Regarding Sealing of Motion Papers.  [D.E. 209].  The basis for the prospective request to seal was the previously entered Protective Orders, which required discovery material designated as confidential and an FBI

declaration to be filed under seal.  [D.E. 97, 194].  The Joint Motion did note, however, that

"[t]he parties also agree that once a public version of each Motion Paper is filed, any party to this

litigation or the Court on its own initiative, may at that point seek to unseal in whole or in party

any Motion Paper that is filed in redacted form."  [D.E. 209].  The Court entered an Order

granting the Joint Motion and directed the parties to file a notice with each sealed document

setting forth good cause for the sealing.  [D.E. 210].

Pursuant to the Court's sealing order, the parties have redacted substantial portions of

their summary judgment motion and opposition papers.[3]  [D.E. 208, 208-1, 225, 225-2, 226, 226-

2, 240, 240-1, 241, 241-1].  Defendants' Motion for Summary Judgment on the issue of

Plaintiffs' status as a public figure contains 63 sealed exhibits.  [D.E. 225-5, 225-15, 225-16,

225-43, 225-63, 225-67, 225-69, 225-73, 225-77, 225-88, 225-90, 225-92].  Plaintiffs' Motion

for Summary Judgment on Defendants' public figure defense contains 28 sealed exhibits [D.E.

208-6, 208-9, 208-11, 208-13, 208-15, 208-17, 208-19] and their opposition to Defendants'

public figure motion contains 5 sealed exhibits [D.E. 241-3, 241-4].  Defendants' dispositive

motion for summary judgment contains 16 sealed exhibits [D.E. 226-10, 226-16, 226-32] and

Plaintiffs' opposition contains 15 sealed exhibits [240-3, 240-4, 240-6].  The summary judgment

filings reveal broad categories of critical information that has been redacted and sealed, such as

information related to the origin of the Dossier; the Government's investigation of the Dossier,

including Senator McCain's receipt and production of the Dossier to the FBI; BuzzFeed's

investigation of the Dossier; and Plaintiffs' advocacy and involvement in public controversies.

---

[3] Plaintiffs filed an emergency motion to keep portions of Defendants' summary judgment motion under seal [D.E. 223], which the Court granted [D.E. 224].  The emergency motion and order are sealed.  However, this Court did provide Defendants an opportunity to respond to the emergency motion and briefing is scheduled to be complete by October 19, 2018.  [D.E. 231].

4841-9391-9864, v. 1

However, given the nature of the redacted and sealed filings, it is impossible to determine precisely what has been sealed and the grounds for closure.[4]

The Court also sealed an FBI declaration [D.E. 203] pursuant to an Unopposed Motion to Seal filed by Defendants [D.E. 201]. The FBI declaration was provided to the parties pursuant to an order from the District Court for the District of Columbia. *BuzzFeed, Inc. v. U.S. Dep't of Justice*, No 17-mc-02429 (APM) (D.D.C. Aug. 3, 2018) (copy attached as Exhibit 1). The declaration addresses three narrow issues: when the FBI (or other agencies) came into possession of the Dossier (or a two-page memorandum within it), whether the FBI received the first 33 pages of the Dossier from Senator McCain in December 2016, and when President Obama was briefed about the allegations of the Dossier. Although Judge Mehta ordered that the declaration be provided pursuant to a protective order (which this Court entered [D.E. 194]), he acknowledged that the Florida court could order otherwise with respect to sealing. *See* Ex. 1, p. 25.

The Times respectfully requests that the Court provide public access to the unredacted motions for summary judgment, statements of material facts and oppositions thereto, and requests the Court unseal any exhibits, including the FBI declaration, filed in conjunction with such papers.

**A.  The presumption of access is particularly weighty**

As noted above, the right of access attaches to any pretrial motions that require judicial resolution of the merits, including motions for summary judgment and discovery material filed in support thereof. *See Chicago Tribune*, 263 F.3d at 1312-13. "Material filed in connection with

---

[4] Defendants filed notices of sealed filings, which generally state that good cause exists because the documents contain material designated as confidential pursuant to the Court's Protective Orders.  [D.E. 225-1, 226-1].  Undersigned counsel was unable to locate any notice on the public docket with respect to Plaintiffs' sealed filings.

any substantive motion, unrelated to discovery, is subject to the common law right of access."
*Romero*, 480 F.3d at 1246; *see also*, *AbbVie*, 713 F.3d at 64 (finding a complaint and its exhibit, which included a financial analysis and benefits of settlement, subject to presumptive right of access).  Here, there can be no question that the filings related to the motions for summary judgment are subject to the presumptive right of access.[5]  *Travelers Prop. Cas. Co. of Am. v. Barkley*, No. 16-617-68-CIV, 2017 U.S. Dist. LEXIS 212214, *2 (S.D. Fla. June 2, 2017) ("Defendant's Motion for Final Summary Judgment is a substantive pretrial motion, requiring a showing of good cause to overcome the presumption of public access.").

The public interest in openness is especially high in this case. The Dossier, and BuzzFeed's challenged reporting, touch on a foreign government's possession of compromising information on the President of the United States and Russian interference in the 2016 election. Disclosure of the material redacted from the parties' filings would shed greater light on the Dossier's origins and its path into the hands of the FBI, among other things.  The public interest in this case goes beyond truth of the allegations in the Dossier itself; it is about the conduct of Government officials in acting on those allegations.  Unsealing the redacted material would also put in the public's hands greater information about Plaintiffs and whether they played a direct role in Russia's campaign of interference.  Simply put, this case concerns public officials and public concerns at the highest levels.  *See Romero*, 480 F.3d at 1246 (finding motion that related to merits of the case – which contained "sordid allegations of intrigue, corruption and assassination in Columbia" – and the conduct of the court to be "at the heart of the interest protected by the right of access").  Access is certain to promote public understanding of the historically significant events at issue in this litigation and public confidence in the judicial

---

[5] With respect to the FBI declaration, Judge Mehta determined that the information is "directly relevant to BuzzFeed's fair report-privilege defense."  Ex. 1, p. 13.

system, which is being asked to adjudicate fairly a case that reverberates with political

implications.

Moreover, despite these sealed documents, the press has had access to a large portion of

the docket and has widely reported on these proceedings as well as the Dossier.  For example, in

ordering disclosure of the FBI declaration, Judge Mehta opined:

> Caution and discretion – typically hallmarks of federal criminal and national
> security investigations – have given way to unprecedented public disclosures.
> President Trump has declassified substantial information about the Dossier's
> provenance and its use by federal investigators, largely through the authorized
> release of two congressionally drafted memoranda and the Foreign Intelligence
> Surveillance Act (FISA) warrant applications targeting the President's former
> campaign advisor, Carter Page.

Ex. 1, p. 21.  These public disclosures have already revealed a substantial amount of information

about the Dossier's origin and its use in an ongoing investigation.  *Id.* at 23. That declassification

both makes it unlikely that unsealing here would cause harm and provides important context for

the information that would be released here.

The Times seeks access to the redacted information and sealed material in furtherance of

its reporting on this highly important public matter.  Obtaining court records for news purposes is

clearly one which is legitimate and in fact *promotes* public understanding of these proceedings.

*E.g., U.S. v. Abegg*, No. 92-8022-cr, 21 Media L. Rep. 1442, *1 (S.D. Fla. March 18, 1993)

(noting that press access to court records is a legitimate purpose that enhances public

understanding).

### B.  Countervailing factors do not overcome the presumption of access

The only basis in the public court file for the sealing is the parties' confidentiality

agreements and protective orders.  The fact that the documents may be subject to a

confidentiality agreement and protective order when produced in discovery does not provide a

sufficient basis to overcome the right of access to such material when it is filed in connection

with a substantive pretrial motion.  *Schojan*, 2014 U.S. Dist. LEXIS 131007, *3 ("Plaintiffs'

conclusory assertion that the documents are subject to a protective order is insufficient to justify

shielding [judicial records] from the public.").  "If a party cannot otherwise show good cause to

seal information, the litigants' own arrangements to remove such information from public

scrutiny will not manufacture good cause."  *Hargett*, 2016 U.S. Dist. LEXIS 193194, *4.

Therefore, a court must carefully review even an uncontested sealing request.  *Carbiener

v. Lender Processing Servs.*, No. 3:13-cv-970, 2015 U.S. Dist. LEXIS 184103, *2-3 (M.D. Fla.

March 6, 2015).  The parties must proffer more than "stereotyped and conclusory statements" to

establish good cause.  *Romero*, 480 F.3d at 1247.  There is nothing in the public record that

justifies sealing materials in this case.

There is no identified privacy interest that would justify secrecy.[6]  For example, the

sealed filings do not *instigate* public scandal or libel.  The Dossier and its findings have been

made public.  Plaintiffs initiated a public court case against Defendants for defamation.  "Many a

litigant would prefer that the subject of the case . . . be kept from the curious . . ., but the tradition

that litigation is open to the public is of very long standing."  *Carbiener*, 2015 U.S. Dist. LEXIS

184103, *2-3 (quoting *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000)).  The

fact that Plaintiffs deny the allegations in the Dossier and BuzzFeed's reporting is not a

legitimate basis for sealing.  *Romero*, 480 F.3d at 1247.  Moreover, most of the sealings relate to

Plaintiffs' status as a public figure.  Whether Plaintiffs are public figures focuses on Plaintiffs'

involvement in a *public* controversy – the very antithesis of a matter that warrants privacy.  [D.E.

---

[6] Even in the face of legitimate privacy interests, courts are reluctant to seal information that
is crucial to a claim or defense.  *See Carbiener*, 2015 U.S. Dist. LEXIS 184103, *6 (denying
request to seal medical information because balance tipped in favor of disclosure).

225, pp. 12-19]. To seal information related to Plaintiffs' public involvement in public controversies would turn the public figure analysis on its head.

Similarly, there is also no evidence that disclosure would impede any law enforcement interest. With respect to the FBI declaration, Judge Mehta expressly found that given the information already in the public domain, "any threat posed by the release of the requested information to an ongoing law enforcement investigation is minimal." Ex. 1, p. 23. To further minimize any potential risk to an ongoing investigation, Judge Mehta even reworded the three inquiries he ordered the FBI to respond to increase the likelihood of a simple "yes" or "no" response. *Id.* p. 24. Any nominal threat – especially when considered in conjunction with the publicly available information regarding the Dossier – cannot carry the day and overcome the presumption of access.

Finally, although this case is of the utmost public importance, the extensive coverage it has received is not a valid basis for closure. *Romero*, 480 F.3d at 1247 (noting that even pervasive and concentrated pretrial publicity does not automatically lead to an unfair trial). In light of all the coverage, there is no reason to think that the information sought here would have a material effect on whatever prejudice may exist among some potential jurors, if it does exist. It is just as likely that the new information will provide context and balance for those watching the case closely.

## IV. CONCLUSION

The public's right of access to information in this case is more than powerful enough to overcome any interest in secrecy. The Times respectfully requests that the redacted and sealed materials filed in conjunction with the parties' motions for summary judgment be made public, or, alternatively that the parties be required to demonstrate why the material should remain under

11

seal.  If they seek to do so, The Times respectfully requests the opportunity to reply and otherwise be heard.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that counsel for The Times has conferred with the parties in a good faith effort to resolve the issues raised in the Motion and has been unable to do so.  Plaintiffs' counsel opposes the Motion.  Defendants' counsel has no objection to the unsealing of documents and information supplied by the parties in this litigation and takes no position on unsealing information or documents provided by non-parties.

Respectfully submitted,

SHULLMAN FUGATE PLLC

/s/ Rachel E. Fugate
Rachel E. Fugate
Florida Bar No. 0144029
100 South Ashley Dr., Suite 600
Tampa, Florida 33602
Telephone: (813) 935-5098
Email: rfugate@shullmanfugate.com
Deanna K. Shullman
Florida Bar No. 514462
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619
Email: dshullman@shullmanfugate.com

Attorneys for Intervenor
The New York Times Company

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 17, 2018 that a true and correct copy of the

foregoing has been furnished to via CM/ECF to all counsel of record.

**Matthew Shayefar**
**Valentin D. Gurvits**
BOSTON LAW GROUP
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

**Evan Fray-Witzer**
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Evan@CFWLegal.com

**Brady J. Cobb**
**Dylan Fulop**
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Counsel for Plaintiffs*

**Katherine M. Bolger**
**Nathan Siegel**
**Adam Lazier**
**Alison Schary**
Davis Wright Tremaine, LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonshcary@dwt.com

**Roy Black**
**Jared Lopez**
Black, Srebnick, Kornspan & Stumpf, P.A.
201 S. Biscayne Blvd.
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Counsel for Defendants*

*/s/ Rachel E. Fugate*
Rachel E. Fugate

4841-9391-9864, v. 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| BUZZFEED, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Case No. 17-mc-02429 (APM)** |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OPINION AND ORDER

## I.     INTRODUCTION

On January 10, 2017, BuzzFeed News published an article on its website titled "These Reports Allege Trump Has Deep Ties to Russia."  The Article includes an embedded document containing what is now popularly referred to as the "Dossier"—a 35-page collection of memoranda prepared by former British intelligence officer Christopher Steele.[1]  The Dossier discusses Russian efforts to influence the 2016 U.S. presidential election and contains allegations of ties between Russia and the campaign of then candidate Donald J. Trump.

This matter concerns the final two pages of the Dossier embedded in the Article:  a memorandum entitled "Company Intelligence Report 2016/166" and dated "13 December 2016" ("Report 2016/166").  The second to last paragraph of Report 2016/166 alleges that "a company called XBT/Webzilla" and an individual named "Aleksei GUBAROV" were involved in a scheme to use "botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering

---

[1] Throughout this opinion, the term "Dossier" is meant to refer only to the 35 pages of memoranda published by BuzzFeed News.  No other inference ought to be drawn regarding the contents or composition of Christopher Steele's reporting from the court's usage of the term "Dossier."

EXHIBIT

1

operations' against the Democratic Party leadership." Apparently, Aleksej Gubarev (not Aleksei Gubarov) was not pleased to have his and his companies' names associated with such allegations. So, shortly after BuzzFeed published the Dossier, Aleksej Gubarev, XBT Holdings S.A., and Webzilla, Inc., sued BuzzFeed, Inc., and its editor-in-chief, Ben Smith (collectively, "BuzzFeed"), in Florida state court for defamation, alleging that the penultimate paragraph of the Dossier falsely identifies them as having been involved in Russian efforts to hack Democratic Party leaders.

In the underlying Florida litigation, BuzzFeed has asserted several affirmative defenses. Among them is the "fair report privilege," which generally shields persons from liability for publishing fair and accurate reports of official government proceedings. *See generally* Restatement (Second) of Torts § 611 (1977). BuzzFeed contends that its publication of the Dossier, including Report 2016/166, is protected by the fair report privilege because the Dossier was the subject of official proceedings—namely, a government investigation and a confidential briefing of President Barack Obama and then President-elect Donald Trump by senior executive branch officials. To support this defense, BuzzFeed subpoenaed several federal government agencies and employees, seeking testimony that would confirm, among other things, that prior to the Article's publication on January 10, 2017, the FBI (and possibly other law enforcement or intelligence agencies) possessed all 35 pages of the Dossier and President Obama had been briefed on the Dossier's contents. When the government parties balked at producing the requested testimony and records in that proceeding, BuzzFeed filed a Motion to Compel in this District Court. In the case's present posture, BuzzFeed does not seek compliance with the full scope of the original subpoenas; rather, it asks the court to order a response to three narrow questions about the Dossier.

Upon consideration of the parties' briefs, and for the reasons set forth below, the court concludes that the subpoena—as substantially narrowed during the course of this litigation—is not unduly burdensome, and that BuzzFeed has made a sufficient showing of need to overcome the law enforcement privilege. The testimony that BuzzFeed seeks is essential to its defense against the defamation action and it cannot be obtained from any other source. Additionally, the release of the testimony will have a minimal impact, if any, on law enforcement interests, particularly in light of the substantial amount of information already officially acknowledged about the Dossier's provenance and subsequent use by the FBI.

Accordingly, the court grants the Motion to Compel and orders the Government to produce, subject to a protective order, an affidavit that is responsive to the three topics set forth in BuzzFeed's narrowed request.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    The Article

BuzzFeed News published an article on its website titled "These Reports Allege Trump Has Deep Ties to Russia" on January 10, 2017. *See* Mot. to Compel, ECF No. 1 [hereinafter MTC], at 1; *see also* MTC, Ex. 1, ECF No. 1-3 [hereinafter Fla. Compl.], Ex. 2 [hereinafter Article].[2] As relevant here, the Article includes an embedded document containing the 35-page "Dossier." Article at 3. The Article describes the Dossier as "a collection of memos . . . . prepared for political opponents of Trump by . . . a former British intelligence agent" containing "explosive—but unverified—allegations that the Russian government has been 'cultivating,

---

[2] The Article, which is attached as an exhibit to the Florida Complaint, can be found at pages 18–21 of the document labeled ECF No. 1-3. The Article is also available at: https://www.buzzfeed.com/kenbensinger/these-reports-allege-trump-has-deep-ties-to-russia.

supporting and assisting' President-elect Donald Trump for years and gained compromising information about him." *Id.* at 1–2.  BuzzFeed decided to publish the Dossier, the Article explains, "so that Americans can make up their own minds about allegations about the president-elect that have circulated at the highest levels of the US government." *Id.* at 2.

The Article goes on to detail the Dossier's use by federal officials.  It states that Senator John McCain "gave a 'full copy' of the memos to [FBI Director James] Comey on Dec. 9, but that the FBI already had copies of many of the memos." *Id.*  It also states that "a two-page synopsis of the report was given to President Obama and Trump." *Id.*  Additionally, the Article cites and links to a CNN article, which specifically reports that the FBI was actively investigating the truth of the Dossier's allegations and that four of the senior-most U.S. intelligence directors—Director of National Intelligence James Clapper, FBI Director James Comey, CIA Director John Brennan, and National Security Agency Director Mike Rogers—presented a two-page synopsis of the Dossier to President Obama and President-elect Trump as part of a classified briefing.  *See id.* (linking to CNN article); Evan Perez et al., *Intel Chiefs Presented Trump with Claims of Russian Efforts to Compromise Him*, CNN (updated Jan. 12, 2017, 5:26 PM), https://www.cnn.com/2017/01/10/politics/donald-trump-intelligence-report-russia/index.html. The synopsis purportedly discloses, among other things, that Russia allegedly had compromising personal and financial information about President-elect Trump, continuously exchanged information with surrogates of his campaign, and released information to harm Hillary Clinton's campaign. *Id.*

### 2.   *The Underlying Florida Litigation*

On February 3, 2017, shortly after BuzzFeed published the Article, Aleksej Gubarev, XBT Holdings S.A., and Webzilla, Inc. (collectively, "the Florida plaintiffs") filed suit against

4

BuzzFeed in Florida state court, asserting one count of defamation. *See generally* Fla. Compl.

Gubarev is a "venture capitalist," "tech expert," and chairman and CEO of XBT Holdings S.A.,

which owns Webzilla, Inc. *See id.* ¶¶ 6–7, 16. Both companies specialize in "internet hosting

solutions, network services, and web development services." *Id.* ¶ 21; *see id.* ¶ 16. In their

Complaint, the Florida plaintiffs allege that the following paragraph in the Dossier falsely

identifies them as having participated in "computer hacking of the Democratic Party," *see id.*

¶¶ 25–27:

> [redacted] reported that over the period March–September 2016 a
> company called XBT/Webzilla and its affiliates had been using
> botnets and porn traffic to transmit viruses, plant bugs, steal data and
> conduct "altering operations" against the Democratic Party
> leadership. Entities linked to one Ale[ks]ei GUBAROV were
> involved and he and another hacking expert, both recruited under
> duress by the FSB, Seva KAPSUGOVICH, were significant players
> in this operation. In Prague, COHEN agreed [sic] contingency plans
> for various scenarios to protect the operations, but in particular what
> was to be done in the event that Hillary CLINTON won the
> presidency. It was important in this event that all cash payments
> owed were made quickly and discreetly and that cyber and other
> operators were stood down/able to go effectively to ground to cover
> their traces.

*Id.* ¶ 26 (alteration and emphasis omitted); *see also* Fla. Compl., Ex. 3 [hereinafter Dossier], at

35.[3] As noted, the Dossier is a compilation of separate memoranda. The above-quoted language

can be found in the penultimate paragraph of the last of the memoranda published by BuzzFeed,

which is dated December 13, 2016, and identified as "Company Intelligence Report 2016/166."

*See* Dossier at 34–35. As discussed below, the date by which the Government received Report

2016/166 turns out to be critical information that BuzzFeed seeks to mount its defense.

---

[3] The Dossier, which is reproduced and attached as an exhibit to the Florida Complaint, can be found at pages 22–57 of the document labeled ECF No. 1-3. Citations herein refer to the page numbers of the Dossier itself.

BuzzFeed subsequently removed the case to the U.S. District Court for the Southern District of Florida. *See Gubarev v. BuzzFeed*, No. 0:17-cv-60426-UU (S.D. Fla. removed Feb. 28, 2017). In its Answer, BuzzFeed raises several affirmative defenses, including that the "publication of the allegedly defamatory statements in the Dossier, within the context of the Article, is protected by the fair report privilege" under New York law, or alternatively under Florida or Texas law. MTC, Ex. 2, ECF No. 1-4, at 9.

> 3. *The Subpoenas*

On June 28, 2017, BuzzFeed issued seven subpoenas seeking documents and deposition testimony on ten topics relating to the Dossier. *See* MTC at 10; Defs.' Opp'n to Pls.' Mot. to Compel, ECF No. 8 [hereinafter Opp'n], at 4; *see also* MTC, Ex. 3, ECF No. 1-5; MTC, Ex. 4, ECF No. 1-6; MTC, Ex. 5, ECF No. 1-7. The subpoenas sought testimony from a designated representative of four federal agencies—the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), and the Office of the Director of National Intelligence ("ODNI")—as well three former officials of those agencies—Comey, Brennan, and Clapper. MTC at 10; Opp'n at 4.

The government agencies and former agency employees responded to the subpoenas in August 2017, and refused to provide any records or testimony. *See* MTC at 10–11; Opp'n at 5–6. In September 2017, counsel for BuzzFeed met with government counsel and proposed to narrow the scope of its original subpoenas. MTC at 11; Opp'n at 6. Specifically, BuzzFeed offered to withdraw subpoenas addressed to the CIA and Brennan in full; to withdraw any request for documents as to all other subpoenas; and to limit its deposition inquiries to nine topics: seven directed to the DOJ, the FBI, or Comey, and two topics to be elicited from Clapper. *See id.* These topics, generally speaking, "cover[ed] the public statements previously made [by the Government]

about briefings, the existence of an investigation, and merely confirming the receipt of material

from Senator McCain." MTC at 11; *see* MTC, Ex. 9, ECF No. 1-11. The Government rejected

BuzzFeed's proposal. MTC at 12; Opp'n at 6; *see* MTC, Ex. 10, ECF No. 1-12.

### B. Procedural History

#### 1. *BuzzFeed's Narrowing of the Subpoenas*

On September 27, 2017, BuzzFeed filed a motion to compel in this court against the DOJ,

the FBI, the ODNI, Comey, and Clapper (collectively "the Government Respondents") under

Rules 26 and 45 of the Federal Rules of Civil Procedure. *See generally* MTC. In their Motion to

Compel, BuzzFeed sought "slightly narrower discovery" than that which they proposed to the

Government Respondents in their narrowed request. *See id.* at 12. In particular, BuzzFeed asked

the court to compel the Government Respondents to designate and produce "no more than two

witnesses" from DOJ and/or FBI, and if necessary ODNI, for a deposition limited to roughly the

same nine topics of testimony discussed above. *See* MTC at 12–13.[4] The Government

Respondents opposed the Motion to Compel on November 13, 2017, objecting to BuzzFeed's

subpoena request, even as further narrowed, on three grounds: (1) relevance, (2) undue burden,

and (3) the law enforcement privilege. *See* Opp'n at 1–2. The Opposition included an ex parte, in

---

[4] Those topics are as follows: (1) "Whether the content of the Dossier was being investigated as of January 10"; (2) Whether the Dossier was the subject of a counter-intelligence investigation, or any other form of investigation, as of January 10"; (3) "Whether DOJ had all the pages of the Dossier that BuzzFeed published as of January 10"; (4) "That Mr. Comey confirm his written statement to the Senate about his January 6 briefing of President-elect Trump"; (5) "Whether a summary of the Dossier's contents was included in material provided to President-elect Trump"; (6) "Whether Mr. Comey participated in briefing President Obama about the Dossier on or about January 6 in his official capacity as the FBI Director"; (7) "Whether DOJ/FBI received the Dossier from Senator McCain's office on December 9, and whether DOJ/FBI received anything else subsequently from Senator McCain's office or any other representative of Senator McCain"; (8) "That Brennan, Clapper and Rogers also participated in briefing President Obama about the Dossier on January 6, in their official capacities and provided a written synopsis of the Dossier"; and (9) "That agencies of the US Government were attempting to verify the contents and sourcing of the Dossier prior to January 10, as referenced in Mr. Clapper's May 8 testimony before the Senate Judiciary Committee." MTC at 12–13. Moreover, as in BuzzFeed's initial narrowed request, the Motion to Compel only seeks deposition testimony, not records, *see id.* at 12, and does not seek to compel enforcement of the subpoenas issued to the CIA and Brennan, *see id.* at 11 n.2.

camera submission, *see generally* Opp'n, Defs.' Notice of Lodging of Ex Parte, In Camera Decl., ECF No. 8-1, whose filing BuzzFeed opposed, *see* Mot. to Strike, or in the Alternative, for Order Compelling Defs. to File Redacted Version of Ex Parte, In Camera Decl., ECF No. 11.

The court held oral argument on the Motion to Compel on February 15, 2018. *See* Hr'g Tr., ECF No. 20. At the hearing, prodded by the court, BuzzFeed agreed to narrow the scope of its subpoenas even more by (1) withdrawing their request for testimony with respect to Topics 1– 2, 4–6, and 9 without prejudice, *see id.* at 11–15, 40–41, 46–47, and (2) agreeing to accept an affidavit from a government official in lieu of deposition testimony on the remaining topics, i.e., Topics 3, 7, and 8, *see id.* at 15, 17–18, 40–41. *See generally supra* note 4 (outlining the nine topics in BuzzFeed's original request). On March 1, 2018, BuzzFeed filed a Status Report reiterating its willingness "to accept an affidavit from the Government, in lieu of testimony, provided that the language of that affidavit is clear and responsive to the topics of testimony requested." Status Report, ECF No. 22 [hereinafter March Status Report], at 2. BuzzFeed proposed the following topics of inquiry, which are narrowed even further than was discussed at the February 15, 2018, hearing:

> Narrowed Topic No. 3: Whether, prior to 5:20 p.m. Eastern time on January 10, 2017, the FBI and/or any of the other Defendant agencies had the last two pages of the Dossier as it was published by BuzzFeed. Alternatively, if the Defendants were able to simply confirm that as of that time and date the FBI and/or any of the other Defendant agencies had the 35 pages of the Dossier that were published by BuzzFeed, that would be acceptable.

> Narrowed Topic No. 7: Whether on or about December 9, 2016, the FBI received from Senator John McCain a copy of the Dossier containing the first 33 pages published by BuzzFeed. . . . .

Narrowed Topic No. 8: Whether, prior to January 10, 2017,
Mr. Clapper, Mr. Rogers, Mr. Brennan, and/or Mr. Comey briefed
President Obama about the Dossier and provided a synopsis of it.

*Id.* at 2–3 (footnotes omitted). Thus, what began as a request for documents and records on nine

different topics is now limited to three discrete questions, the answers to which BuzzFeed will

accept by sworn affidavit.

## 2. *Classification Review of Requested Information*

Notwithstanding BuzzFeed's willingness to substantially narrow its initial requests, the

Government Respondents took the position at the February 15, 2018, hearing that compliance with

the requested discovery, even as modified, would be burdensome and would compromise sensitive

law enforcement interests. *See* Hr'g Tr. at 32–34. In particular, the Government Respondents

insisted that disclosing *when* federal authorities received the Dossier's final two pages, i.e., Report

2016/166, would adversely impact law enforcement interests "in a very real way." *Id.* at 32. The

court invited the Government Respondents to state specifically how the disclosure of such

information would affect law enforcement interests, noting that the Government's first ex parte, in

camera submission had been too general to be useful. *Id.* at 33–34, 50.

The Government Respondents accepted the court's invitation and filed a second ex parte,

in camera declaration, on March 19, 2018. *See* Defs.' Notice of Lodging of Classified Ex Parte,

In Camera Decl., ECF No. 23. On May 25, 2018, the court held a classified, ex parte, in camera

hearing to discuss the newly filed declaration. *See* Minute Entry, May 25, 2018. In that

declaration, the Government Respondents asserted that certain of the information sought was in

fact classified. That assertion prompted the court to issue an ex parte, in camera order that, among

other things, asked the Government Respondents whether they intended to invoke the state secrets

privilege with respect to the classified material. *See* Notice of Ex Parte, In Camera Order, ECF

No. 26.  Ultimately, the Government Respondents indicated that they did not intend to assert the state secrets privilege, and that the information initially classified would be declassified.  *See* Resps.' Notice of Lodging of Classified, Ex Parte Filing, ECF No. 29; Resps.' Notice of Lodging of Classified, Ex Parte Filing, ECF No. 31; Resps.' Notice of Lodging of Classified, Ex Parte Filing, ECF No. 32.  Thus, the only privilege that the Government Respondents assert is the one that they invoked at the outset: the law enforcement privilege.

The court now turns to the merits of BuzzFeed's Motion to Compel.

## III.    LEGAL STANDARD

"Disputes over third-party subpoenas to agencies in civil litigation . . . must commence in the district court under Rule 45," which "authorizes court-issued subpoenas to obtain discovery from third parties."  *Watts v. SEC*, 482 F.3d 501, 503, 507 (D.C. Cir. 2007).  As an initial matter, when deciding a motion to compel under Rule 45, the district court first must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined in Rule 26(b)(1).  *See In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013); *cf. Watts*, 482 F.3d at 507.  Next, the court must assess any objections to the subpoena under the standards supplied by Rule 45, which "requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden."  *Watts*, 482 F.3d at 508; *see* Fed. R. Civ. P. 45(d)(3)(A).  This is true for "both document and testimonial subpoenas," including "subpoenas issued to third-party [federal] agencies or agency employees in federal civil suits."  *Watts*, 482 F.3d at 508.  "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged."  *In re Micron Tech., Inc. v. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010).

## IV.  DISCUSSION

The Government Respondents oppose the Motion to Compel on three grounds.  First, they argue that BuzzFeed's subpoenas seek information that is irrelevant to the underlying Florida litigation.  Opp'n at 12–22.  Second, they contend that compliance with the subpoenas—even as narrowed—would be unduly burdensome.  *Id.* at 23–31.  Third and finally, they assert that the information sought—again, even as narrowed—is protected by the law enforcement privilege.  *Id.* at 31–37.  The court addresses each of these arguments in turn.

### A.     Relevance

The court begins, as it must, with the relevance inquiry.  *See In re Denture Cream*, 292 F.R.D. at 123.  According to BuzzFeed, the testimony sought in its subpoena is "highly relevant to [its] ability to establish that the publication of the Article, including the Dossier, is a fair and accurate report of records that were a basis of official government actions and thus is protected by [the] fair report privilege."  MTC at 14.[5]  In response, the Government Respondents offer a litany of reasons why the fair report privilege is inapplicable as a matter of law, and thus why the requested testimony is irrelevant to BuzzFeed's ability to avail itself of that privilege in the Florida litigation.  *See* Opp'n at 12–22.  Yet what started arguably as a difficult question is no more:  The District Court in Florida has ruled that the fair report privilege is a viable defense for BuzzFeed and that, to prevail, BuzzFeed must support the defense with evidence.

In the underlying litigation, BuzzFeed's Answer asserts the fair report privilege as an affirmative defense.  *See* MTC, Ex. 2, ECF No. 1-4, at 9.  At the Florida court's prompting, the

---

[5] In its Motion to Compel, BuzzFeed also argues that the requested testimony is "highly relevant" because it could establish that the Article is not false.  *See id.* at 14–15.  The court, however, need not assess this separate theory of relevance.  As discussed below, the Florida court already has determined that discovery concerning the existence of an FBI investigation into the truth of the Dossier's allegations, as well as classified presidential briefings related to those allegations, is relevant to BuzzFeed's assertion of the fair report privilege as an absolute defense in the underlying litigation.

plaintiffs moved for partial judgment on the pleadings, asserting that the fair report privilege did not apply. *See* Notice of Suppl. Authority, ECF No. 27, Ex. A, Corrected Order, ECF No. 27-1 [hereinafter *Gubarev* Order], at 4. The court rejected the plaintiffs' motion. *See id.* at 18–19. Finding that New York law applied, *see id.* at 3–11 (citing N.Y. Civ. Rights Law § 74), the court stated that whether BuzzFeed could rely on the fair report privilege as an absolute defense turned on two questions: (1) "whether an official proceeding concerning the Dossier was underway when BuzzFeed published it," and (2) "whether the Court can conclude as a matter of law that an ordinary reader would have understood that the Dossier was the subject of official action," *id.* at 14; *see also id.* (reasoning that the court only needed to resolve these two issues, given that there was no dispute that "the Article *accurately* reproduces the Dossier, albeit with the source's name redacted" (emphasis added)).

As to the first question, the court held that the privilege would apply "if the Dossier was part of or subject to an official proceeding," which the court interpreted broadly to mean "any official action." *Id.* at 14–15. Notably, the court held that "[a] confidential briefing to the President and the President-elect by the four most senior intelligence directors in the country is official action taken by those empowered to do so." *Id.* at 15. So, too, "is an FBI investigation into the truth of the Dossier's allegations." *Id.* As to the second question, the court reasoned that while "[t]he Article itself does not permit an ordinary reader to understand that the Dossier was the subject of classified briefings or an FBI investigation," an ordinary reader could nevertheless reach such a conclusion here because the Article includes a "conspicuous" hyperlink to a CNN article, which explicitly mentions the aforementioned official actions. *See id.* at 16–18 (following *Adelson v. Harris*, 402 P.3d 665 (Nev. 2017)); *see also Adelson*, 402 P.3d at 669–70 (explaining that "the hyperlink is the twenty-first century equivalent of the footnote for purposes of attribution in

defamation law," and holding that a hyperlink therefore renders a report privileged so long as it is "conspicuous" (internal quotation mark and alteration omitted)).

Thus, having answered both of these questions in the affirmative, the Florida court held that it "cannot conclude as a matter of law that the Article is other than a fair and true report of an official proceeding." *Gubarev* Order at 18. Critically, and directly pertinent to these proceedings, the court added that its legal ruling "does not dispose of the case." *Id.* Rather, the court explained that the success or failure of BuzzFeed's fair-report-privilege defense will "turn[ ] on whether facts essential to its application are disputed." *Id.* at 19. Thus, although the court presumed as true for purposes of the motion that the "the official actions described in the CNN article (the classified briefings and the FBI investigation) actually occurred," BuzzFeed still must support the occurrence of those official actions *with proof*. *See id.* As the court put it succinctly, "[i]f discovery reveals that they did not [occur], then there was, in fact, no official action." *Id.*

Based on the Florida court's decision, it is evident that the testimony that BuzzFeed seeks to compel in *this* litigation—i.e., testimony regarding whether and when the FBI or any other Government Respondent acquired the Dossier, and whether senior intelligence officials briefed President Obama on its contents prior to the Article's publication—is directly relevant to BuzzFeed's fair-report-privilege defense in the Florida litigation. The Government Respondents' argument to the contrary therefore is easily dismissed.

**B.    Undue Burden**

Because the court finds that the requested testimony is relevant, the court must next assess whether compliance would impose an undue burden on the Government Respondents under Rule 45.

Two principles guide the court's analysis in making this determination. *See Watts*, 482 F.3d at 509. First, "[t]he Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Id.* Second, Rule 26(b) requires district courts in all discovery matters "to consider a number of factors potentially relevant to the question of undue burden," *id.*, including: (1) whether the discovery sought is "unreasonably cumulative or duplicative"; (2) whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; and (3) whether the discovery sought is "proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," *see* Fed. R. Civ. P. 26(b)(1), (2)(C).[6]

Starting with the question of costs, the Government Respondents' argument is that compelling them to answer even the limited inquires posed by BuzzFeed would divert crucial resources away from important law enforcement and intelligence community priorities. Opp'n at 12, 31. To be sure, "discovery under Rules 26 and 45 must properly accommodate 'the government's serious and legitimate concern that its employee resources not be commandeered

---

[6] Although the D.C. Circuit phrased the third factor slightly differently in *Watts*, *see* 482 F.3d at 509 (quoting Fed. R. Civ. P. 26(b)(1)–(2) (2006)), Rule 26(b) has been revised since that decision, *see* Fed. R. Civ. P. 26(b)(1)–(2) (2015). However, the Circuit's observation in *Watts* that Rule 26(b)(1)–(2) requires district courts to consider a number of factors potentially relevant to the question of undue burden "remains true of the present language." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-2361, 2018 WL 3150217, at *6 & n.4 (D.D.C. June 27, 2018). Indeed, the Advisory Committee Notes make clear that the 2015 amendment—which moved the concept of proportionality from Rule 26(b)(2) to Rule 26(b)(1)—did not meaningfully change the court's obligation to limit discovery where the "burden or expense of the proposed discovery outweighs its likely benefit," *Watts*, 482 F.3d at 509. *See generally* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery. . . . Restoring the proportionality factors to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality . . . . Rule 26(b)(2)(C)(iii) is amended to reflect the transfer of the considerations that bear on proportionality to Rule 26(b)(1). The court must still limit the frequency or extent of proposed discovery . . . if it is outside the scope permitted by Rule 26(b)(1).").

into service by private litigants to the detriment of the smooth functioning of government operations.'" *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)). Here, however, that concern is heavily mitigated by BuzzFeed's substantial narrowing of its original subpoenas. What started as a demand for documents and testimony covering nine separate topics is now a request to respond by sworn affidavit to three discrete questions, which likely can be answered with a simple "yes" or "no." Not a heavy lift. *Compare* March Status Report, *with Davis Enters. v. EPA*, 877 F.2d 1181 (3d Cir. 1989) (rejecting request for deposition testimony of agency employee during work hours); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194 (11th Cir. 1991) (rejecting request for deposition testimony of agency employee who was noted AIDS researcher); *Town of Sw. Ranches v. ICE*, No. 15-cv-21924, 2016 WL 4264049 (S.D. Fla. Aug. 12, 2016) (rejecting request for deposition of one current and one former agency employee). Thus, any concern that might have been present at the start of this matter about the commandeering of government resources creating an undue burden has largely evaporated.

Nor is there a serious concern that granting BuzzFeed's request in this case will open the floodgates to other discovery demands that would place a strain on government resources. Because the target of the subpoenas here are federal government agencies and officials, the court must also consider the *cumulative* effect of allowing some form of discovery. *See Watts*, 482 F.3d at 509 (citing *Davis Enters.*, 877 F.2d at 1187, where the court held the "agency had 'legitimate concern with the potential cumulative effect' and 'proliferation of testimony by its employees' that compliance with [an] individual subpoena would entail"); *id.* (citing *Moore*, 927 F.2d at 1197–98, in which the court found that an "expected 'onslaught of subpoenas' in similar litigation raised substantial concern about [the] 'cumulative impact' of [an] individual subpoena"). To that end,

the Government Respondents assert that granting BuzzFeed's request would spawn a wave of similar future requests due to "*the proliferation of lawsuits* concerning or tangentially related" to the Dossier. Opp'n at 24 (emphasis added). That concern, however, is vastly overstated. In its papers, the Government Respondents cite only one other case arising out of the Dossier's publication, *see id.* (citing *Fridman v. Bean LLC a/k/a Fusion GPS*, No. 17-cv-2041 (D.D.C. filed Oct. 3, 2017)), and BuzzFeed identifies a third case, which appears to be related to the one cited by the Government, *see* Reply Mem. in Supp. of Mot. to Compel, ECF No. 15, at 14 & n.3 (citing *Fridman v. BuzzFeed, Inc. et al.*, Index No. 154895/2017 (Sup. Ct. N.Y. Cty.)). Three lawsuits in the nearly 18 months since the Dossier's publication—only one of which involves a demand on the Government—does not suggest there will be, as the Government Respondents fear, a mass "proliferation" of actions. *Cf. Moore*, 927 F.2d at 1198 & n.3 (agreeing with district court's conclusion that "given the present proliferation of AIDS-related litigation, an onslaught of subpoenas . . . requesting testimony by CDC employees . . . would seem to be inevitable" if the court compelled the CDC's lead researcher to testify, and noting, by way of example, that "[b]y 1989, AIDS litigation relating to just . . . the situation in the present case[ ] had produced more than 200 cases," prompting "more than fifty requests for AIDS-related deposition testimony" from three of CDC's employees). Moreover, the prospect of future similar lawsuits wanes by the day. *See, e.g.*, D.C. Code § 12-301(4) (providing one-year limitations period for libel and slander claims); N.Y. C.P.L.R. § 215(3) (same); Fla. Stat. § 95.11(4)(g) (establishing two-year limitations period for libel and slander claims). Thus, granting BuzzFeed's limited request here is not likely to unleash the blizzard of demands that the Government Respondents fear.

Turning next to the Rule 26(b) considerations, they too point towards a finding of no undue burden. To begin, the requested discovery is not "unreasonably cumulative or duplicative." *See*

Fed. R. Civ. P. 26(b)(2)(C)(i). Nor can it be obtained from some other source. *See id.* BuzzFeed's narrowed request, in sum and substance, asks the Government Respondents to confirm: (1) whether, prior to January 10, 2017, the FBI (and DOJ or ODNI, if applicable) had all 35 pages of the Dossier published by BuzzFeed, or at least the last two pages of it, i.e., Report 2016/166; (2) whether Senator McCain delivered the first 33 pages of the Dossier to the FBI on or about December 9, 2016; and (3) whether senior intelligence officials briefed President Obama about assertions contained in the Dossier before the Article's publication date. *See* March Status Report at 2–3. To state the obvious, this information is uniquely within the possession of the Government Respondents, and they do not contend otherwise. *Cf.* Opp'n at 12 (arguing that the subpoenas are unduly burdensome because they seek testimony that "would require the Government . . . to disclose previously nonpublic, sensitive information"). Thus, the limited information sought is not cumulative nor duplicative of any discovery in the underlying litigation, let alone unreasonably so. And it cannot be obtained from "some other source that is more convenient, less burdensome, or less expensive." *See* Fed. R. Civ. P. 26(b)(2)(C)(i).[7]

BuzzFeed's revised demand also is "proportional to the needs of the [underlying] case." *See* Fed. R. Civ. P. 26(b)(1). The discovery sought here is clearly "importan[t] . . . [to] resolving the issues" in the Florida litigation. *Watts*, 482 F.3d at 509; *see* Fed. R. Civ. P. 26(b)(1). As the Florida court has made clear, BuzzFeed must bring forward proof to support the fair report privilege in order to prevail. *See Gubarev* Order at 19. Indeed, the privilege may prove to be dispositive of the Florida plaintiffs' claims. *See* N.Y. Civ. Rights Law § 74 ("A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any . . . official proceeding . . . ."); *Gubarev* Order at 6 (characterizing the fair report privilege

---

[7] Arguably, some of the requested evidence could come from Senator McCain, but that route poses its own challenges. *See, e.g.*, U.S. Const., art. I, § 6, cl. 1 (Speech or Debate Clause).

as "absolute" under New York law); *see also Fine v. ESPN, Inc.*, No. 5:12-cv-0836, 2013 WL 528468, at *3 (N.D.N.Y. Feb. 11, 2013) ("Under New York Civil Rights Law § 74, 'fair and true' reports of official proceedings . . . receive *absolute* privilege in libel actions." (emphasis added)). And, contrary to the Government Respondents' effort to diminish "the importance of the issues at stake" in the Florida litigation, *see* Opp'n at 30, the Florida case presents an important issue concerning the scope of legal protections afforded to media organizations who publish source documents, especially in matters of significant national and international attention. Instead of denigrating that substantial interest, the Government Respondents should endorse it.

Moreover, "the amount in controversy" favors compelling disclosure. *See* Fed. R. Civ. P. 26(b)(1). Although the Florida plaintiffs' complaint does not specify a dollar amount sought in compensatory damages, it is not hard to imagine that the plaintiffs will seek substantial sums in compensatory damages for the reputational harm they allegedly incurred, given the worldwide and persistent attention the Dossier has received. *See* Fla. Compl. at 10–12. The Florida plaintiffs also seek punitive damages. *Id.* at 11. And, finally, for the reasons discussed, "the burden or expense of the proposed discovery" does not "outweigh[ ] its likely benefit," Fed. R. Civ. P. 26(b)(1); *Watts*, 482 F.3d at 509.

For these reasons, the court does not find the requested testimony to be unduly burdensome.[8]

---

[8] The Government Respondents assert that undue burden would result for two other reasons: (1) disclosure would require the revelation of "previously undisclosed details about an ongoing law enforcement investigation," Opp'n at 26 n.11; and (2) the public interest favors "allowing government officials to attend to their official responsibilities," particularly where those responsibilities involve "ongoing intelligence and law-enforcement activities," rather than providing evidence in a matter "in which the Government has [no] interest," *id.* at 31. Although these are valid considerations in analyzing the extent of the burden, *see In re Micron*, 264 F.R.D. at 9–10, these factors are likewise relevant to the question of whether the law enforcement privilege protects against BuzzFeed obtaining the sought-after evidence. So, to avoid redundancy, the court addresses these two factors in the next section.

### C. Law Enforcement Privilege

At last, the court addresses the issue of privilege. Here, the Government Respondents urge the court to deny BuzzFeed's Motion to Compel on grounds that the testimony sought is protected by the federal law enforcement privilege. *See* Opp'n at 31–37.

To invoke the privilege, the government must satisfy three procedural requirements:

> (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

*In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). The court finds that, based on the multiple in camera, ex parte declarations submitted by the Government Respondents, these three procedural elements are satisfied. The court thus focuses its analysis on the merits on the privilege invocation.

The law enforcement privilege "aims to protect the integrity of law enforcement techniques, sources, and investigations—disclosure of which would be 'contrary to the public interest in the effective functioning of law enforcement.'" *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017) (quoting *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999) (per curiam)); *see also A.N.S.W.E.R. Coal. v. Jewell*, 292 F.R.D. 44, 50 (D.D.C. 2013) (noting that the privilege serves, among other things, to prevent interference with law enforcement investigations). The privilege, however, is a qualified one. *In re Sealed Case*, 856 F.2d at 272. The court therefore must weigh "[t]he public interest in nondisclosure . . . against the need of a particular litigant for access to the privileged information." *Id.* To make this determination, the court must consider a bevy of factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given

> information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; [and] (10) the importance of the information sought to the plaintiff's case.

*Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (quoting *In re Sealed Case*, 856 F.2d at 272). As these factors demonstrate, the evaluation of "need" is an "elastic concept that does not turn only on the availability of the information from an alternative source." *Id.* Once, as here, the government has properly claimed the privilege, the burden rests on the requesting party to establish its need for the disclosure. *In re Anthem*, 236 F. Supp. 3d at 158; *see Tuite*, 98 F.3d at 1417–19; *cf. In re Sealed Case*, 121 F.2d 729, 737–38 (D.C. Cir. 1997).

Balancing these factors, the court finds that the requested testimony is not protected by the law enforcement privilege because BuzzFeed's need for the limited information sought outweighs the public's interest in non-disclosure. To start, the following factors, per their numbering in *Tuite*, already have been determined to weigh in favor of disclosure: (4) the information sought is purely factual; (5) BuzzFeed is not a defendant in a current or potential criminal proceeding; (8) BuzzFeed's Motion to Compel is non-frivolous and brought in good faith; (9) the answers that BuzzFeed seeks are not available through other discovery or from other sources; and (10) the discovery demanded is critical to BuzzFeed's defense in the Florida litigation. On the other hand, the court summarily can identify one factor that weighs against disclosure: (6) the DOJ's and the

20

FBI's investigation into Russian interference with the 2016 presidential election is ongoing. The court devotes greater discussion to the remaining pertinent considerations, factors (1) and (2).[9]

The court is unconvinced that the disclosure of the limited discovery here (1) will thwart government processes by discouraging citizens from sharing information with the government, or (2) will result in revealing the identity of a source of information. Ordinarily, this court would be disinclined to compel even modest factual disclosures about an ongoing law enforcement investigation. The risk attendant to such judicial intervention is obvious. But this is no ordinary investigation. Caution and discretion—typically hallmarks of federal criminal and national security investigations—have given way to unprecedented public disclosures. President Trump has declassified substantial information about the Dossier's provenance and its use by federal investigators, largely through the authorized release of two congressionally drafted memoranda and the Foreign Intelligence Surveillance Act (FISA) warrant applications targeting the President's former campaign advisor, Carter Page. From one congressional memorandum, the public now knows that former British intelligence operative, Christopher Steele, drafted the Dossier; that the FBI relied in part on portions of the Dossier's contents to secure a FISA warrant on Carter Page in October 2016; that, at the same time, the FBI was undertaking efforts to corroborate the allegations contained with the Dossier; and, perhaps most significant to this case, that "in early January 2017, Director Comey briefed President-elect Trump on a summary of the Steele dossier." *See* Notice of Suppl. Information, ECF No. 18, Ex. A, ECF No. 18-1 (Nunes Memo). The second congressional memorandum reveals additional details. It informs that: Steele shared his "reporting . . . with an FBI agent . . . through the end of October 2016"; the counterintelligence

---

[9] Neither factor (3)—the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure—nor factor (7)—whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation—appear to have any relevance to this matter.

team at the FBI investigating Russian interference did not receive "Steele's reporting" until "mid-September 2016"; the Department of Justice applied for the Carter Page FISA warrant on October 21, 2016; and "[t]he FBI has undertaken a rigorous process to vet allegations from Steele's reporting." *See* Memorandum from the House Permanent Select Committee on Intelligence to All Members of U.S. House of Representatives (Jan. 29, 2018), https://docs.house.gov/meetings/IG/IG00/20180205/106838/HMTG-115-IG00-20180205-SD002.pdf (Schiff Memo).[10]    Finally, the released Carter Page FISA application confirms that Steele—identified in the application as "Source #1"—has been an FBI source and that he turned over "reporting" to the FBI. *See In re Carter W. Page*, "Verified Application," U.S. Foreign Intelligence Surveillance Court (Oct. 2016), at 15 & n.8, 16, https://int.nyt.com/data/documenthelper/95-carter-page-fisa-documents-foia-release/full/optimized.pdf.[11]   And there is one more pertinent piece of public information:  Senator McCain has publicly acknowledged that he turned over the Dossier to Director Comey. *See* MTC, Ex. 18, ECF No. 2-7 (Press Release from Senator John McCain, dated January 11, 2017) ("*Late last year*, I received sensitive information *that has since been made public*. . . . I delivered the

---

[10] For the accompanying declassification letter from the DOJ, see Press Release, U.S. House of Representatives Permanent Select Committee on Intelligence, Democrats, Intel Committee Ranking Member Schiff Releases Democratic Response Memo (Feb. 24, 2018), https://democrats-intelligence.house.gov/news/documentsingle.aspx?DocumentID=358 (attached under "Related Files" as "Letter to Chairman 2.24.18").

[11] The New York Times published the 412-page document containing the redacted Carter Page FISA application(s) on July 21, 2018, apparently after it was released to the Times in connection with underlying Freedom of Information Act ("FOIA") litigation in the U.S. District Court for the Southern District of New York. *See* Charlie Savage, *Carter Page FISA Documents Are Released by Justice Department*, N.Y. Times (July 21, 2018), https://www.nytimes.com/2018/07/21/us/politics/carter-page-fisa.html (click "Read documents here"); *see also N.Y. Times v. U.S. Dep't of Justice*, No. 18-cv-2054 (S.D.N.Y. filed Mar. 7, 2018).  As published, the Bates-stamped page numbers in the document bear the case name "17-cv-597," a clear reference to another FOIA case that is pending before this court, *see James Madison Project v. U.S. Dep't of Justice*, No. 17-cv-597-APM (D.D.C. filed Apr. 4, 2017). In that case, the Government recently confirmed that 412 pages of material reviewed in connection with the Page FISA applications were declassified and released.  *See* Status Report, *James Madison Project*, No. 17-cv-597, ECF No. 36, at 1–2.

information to the Director of the FBI." (emphasis added)); *accord* John McCain et al., *The Restless Wave* 238 (2018).

As all of these disclosures show, an unprecedented amount of information about the Dossier's origin and its use in an ongoing investigation is already in the public domain. What BuzzFeed seeks to confirm through its subpoenas would add to this information only at the margins. More than anything, in its three inquiries, BuzzFeed asks the Government Respondents to confirm dates by which the FBI acquired pages of the Dossier, including from Senator McCain, and when President Obama was briefed on its contents. The disclosures already authorized by President Trump, by comparison, are of a far greater magnitude. The court can only assume that the information declassified and released, at the President's direction, was determined to be of the kind whose disclosure would not discourage citizens from coming forward with information and would not compromise a source's identity. *Cf. McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983) (holding in FOIA context that courts should "defer to CIA judgment as to the harmful results of publication" and apply the "presumption of regularity" if a rational explanation for classification is offered). On the public record, the Government Respondents offer no convincing reason to conclude otherwise.

Admittedly, the Government Respondents make more specific arguments to justify protecting the requested testimony from disclosure in their in camera, ex parte submissions. The court addresses and rejects those arguments in an addendum to this opinion, which the court files under seal and serves only on the Government Respondents, *see* Notice of Ex Parte, In Camera Sealed Addendum, ECF No. 34.

In sum, the court finds that any threat posed by the release of the requested information to an ongoing law enforcement investigation is minimal, and such nominal threat cannot carry the

day when balanced against BuzzFeed's critical need for the information to defend itself in the Florida litigation. Thus, the court finds that the information sought by BuzzFeed is not protected by the law enforcement privilege.

## V.    CONCLUSION AND ORDER

For the reasons stated above, the court finds that the testimony sought in BuzzFeed's narrowed subpoena demand: (1) seeks testimony that is relevant to its affirmative defense in the underlying Florida litigation based on the fair report privilege; (2) does not impose an undue burden on the Government Respondents; and (3) does not call for disclosure of privileged information, as the Government is unable to claim the qualified protection of the federal law enforcement privilege in this case. Accordingly, the court grants BuzzFeed's Motion to Compel, ECF No. 1, as modified by its March 1, 2018 Status Report, *see* ECF No. 22, and in accordance with the terms this Order.

The Government shall produce a sworn affidavit that is responsive to the three narrowed topics of testimony set forth in BuzzFeed's Status Report dated March 1, 2018, as modified below, within three business days of entry of the protective order in the Florida litigation, *see infra*. In the exercise of its discretion, *see Watts*, 482 F.3d at 509, the court has reworded the three inquires to increase the likelihood of a simple "yes" or "no" response. For purposes of these interrogatories, the term "Dossier" shall mean the 35 pages published by BuzzFeed as embedded in the Article.

> *Revised* Narrowed Topic No. 3: The Government need only respond to one of the following and shall specify in its affidavit whether it is answering (A) or (B):
>
> (A) Prior to 5:20 p.m. EST on January 10, 2017, did the FBI and/or any of the other Defendant agencies possess the two-page memorandum contained within the Dossier dated December 13, 2017, i.e., Report 2016/166?

(B) Prior to 5:20 p.m. EST on January 10, 2017, did the FBI and/or any of the other Defendant agencies possess all 35 pages of the Dossier?

*Revised* Narrowed Topic No. 7:  Did the FBI receive from Senator John McCain a copy of the first 33 pages of the Dossier (i.e., all pages other than Report 2016/166) on or about December 9, 2016?

*Revised* Narrowed Topic No. 8:  Did Mr. Clapper, Mr. Rogers, Mr. Brennan, and/or Mr. Comey, before January 10, 2017, brief President Obama about allegations contained in the Dossier?

Furthermore, to protect "both the litigant's right to evidence and the government's interest in not being used as a speakers' bureau for private litigants," *id.* (internal quotation marks omitted), the affidavit submitted by the Government Respondents shall be produced subject to a protective order.  Such a protective order should include, at a minimum, the following conditions: (1) BuzzFeed may use the affidavit on an "Attorneys' Eyes Only" basis solely to support its defense in the Florida litigation; (2) the affidavit may be disclosed to the Florida plaintiffs on an "Attorneys' Eyes Only" basis, upon the plaintiffs' counsel's agreement to be bound by the protective order; (3) unless the Florida court orders otherwise, the affidavit shall be filed under seal if used in connection with any motions practice; and (4) unless the Florida court orders otherwise, the affidavit's use at a hearing or trial will be subject to use restrictions agreed-upon by BuzzFeed and the Government Respondents.  The parties shall file such a protective order for the Florida court's signature no later than August 24, 2018.

Finally, because the court grants BuzzFeed's Motion to Compel, the court denies as moot BuzzFeed's "Motion to Strike or, in the Alternative, for an Order Compelling Defendants to File a Redacted Version of Their *Ex Parte*, *In Camera* Declaration," ECF No. 11.

This is a final, appealable order.

Dated:  August 3, 2018

Amit P. Mehta
United States District Judge