# Exhibit 6

**In the Matter Of:**

GUBAREV vs BUZZFEED

17-CV-60426-UU

---

**BENJAMIN SMITH**

*February 08, 2018*

---

*Confidential*



800.211.DEPO (3376)
EsquireSolutions.com

```
 1

 2        IN THE UNITED STATES DISTRICT COURT

 3           SOUTHERN DISTRICT OF FLORIDA

 4

 5   ALEKSEJ GUBAREV, XBT HOLDING   )Case No.
     S.A., AND WEBZILLA, INC.,      )17-CV-60426-
 6                                  )UU
               Plaintiffs,          )
 7                                  )
             vs.                    )
 8                                  )
     BUZZFEED, INC. AND BEN         )
 9   SMITH,                         )
                                    )
10             Defendants.          )
     -------------------------------)
11

12

13           DEPOSITION OF BENJAMIN SMITH

14               New York, New York

15           Thursday, February 8, 2018

16

17

18

19

20

21

22

23

24   Reported by:
     TAMI H. TAKAHASHI, RPR, CSR
25   JOB NO. J1400363
```



```
 1                   CONFIDENTIAL - Smith
 2      anyone -- I didn't have any reason to think
 3      anyone had reached out to Michael Cohen.
 4               (Plaintiffs' Exhibit 3, Article
 5           entitled, "Buzzfeed's Ben Smith on
 6           What's Wrong (and Right) With the
 7           Media," marked for identification as of
 8           this date.)
 9      BY MR. FRAY-WITZER:
10          Q.   You've been shown what's been
11      marked as Exhibit 3.  Can you tell me if you
12      recognize that document?
13          A.   Yes.
14          Q.   And what is that document?
15          A.   It's an interview I did in July of
16      2016 with New York Magazine.
17               Do you mind if I read it --
18          Q.   No.
19          A.   -- to refresh my memory?
20               (Witness reviewing document.)
21               MR. FRAY-WITZER:  I don't want to
22           interrupt you, but I will tell you that
23           I'm only going to ask you something
24           about page 1.
25               THE WITNESS:  Okay, I've read
```



```
 1                CONFIDENTIAL - Smith
 2          page 1.
 3    BY MR. FRAY-WITZER:
 4          Q.   So as part of one of your answers
 5    here you stated, "I do think before you
 6    publish something, at least, you should not
 7    surprise people.  And we have a practice here
 8    of writing what we call a 'no surprises'
 9    letter to the subject of an investigation
10    that lays out in great, great detail what's
11    in a story.  And then you make sure you slip
12    that under their door, you mail it to them,
13    you e-mail it to them, you send it to their
14    lawyer.  It often adds to your reporting.
15    There's no reason that the subject of a story
16    should be surprised.  Maybe there's
17    occasionally a reason, but in most cases,
18    there isn't a reason, and you should test
19    your stronger reporting against their
20    response before you publish, not after."
21               Did I read that correctly?
22          A.   Yes.
23          Q.   Was it accurately reported that you
24    said that?
25          A.   Yes.
```



```
 1                 CONFIDENTIAL - Smith
 2          Q.   Why not send a "no surprises"
 3     letter to the plaintiffs?
 4          A.    Well, we didn't write a story about
 5     the plaintiffs.  We wrote a story about a
 6     document that had been briefed to two
 7     presidents that was this extra -- subject of
 8     this extraordinary interest and by the top
 9     levels of the U.S. intelligence community.
10          Q.   Did you take into consideration at
11     any point before publishing the dossier what
12     effect there might be on individuals named in
13     the dossier if the allegations against them
14     were not true?
15          A.    I don't remember having that
16     specific thought through my mind.
17          Q.   Do you think that's important?
18          A.    Could you rephrase the question.
19          Q.    You're publishing a document that
20     makes serious allegations against people.
21     Don't you think it is important to consider
22     the effect that your publication might have
23     on them if the allegations are untrue?
24          A.    We certainly -- I certainly
25     considered the effect that -- you know,
```



1

2                    C E R T I F I C A T E

3   STATE OF NEW YORK    )

4                             : ss.

5   COUNTY OF NEW YORK   )

6

7           I, TAMI H. TAKAHASHI, a Notary

8        Public within and for the State of New

9        York, do hereby certify:

10          That BENJAMIN SMITH, the witness

11       whose deposition is hereinbefore set

12       forth, was duly sworn by me and that

13       such deposition is a true record of the

14       testimony given by the witness.

15          I further certify that I am not

16       related to any of the parties to this

17       action by blood or marriage, and that I

18       am in no way interested in the outcome

19       of this matter.

20          IN WITNESS WHEREOF, I have hereunto

21       set my hand this 13th day of February

22       2018.

23

24       
         _____

25                 TAMI H. TAKAHASHI