UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
   Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
   Defendants.

Case No.

0:17-cv-60426-UU

**FILED UNDER SEAL**

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CONTINUE TO SEAL
PORTIONS OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS AND
STATEMENTS OF FACT**

1

## Introduction

Perhaps nothing better illustrates *Plaintiffs'* point than *Defendants'* own Preliminary Statement. Defendants start by claiming that they really take no position with respect to whether any of the materials produced by either party should continue to be designated as confidential under the Amended Protective Order,[1] and then note that they are really seeking to unseal only those documents that they classify as being "publicly available" and arguments concerning those documents.

Calling these documents "publicly available," however is more than a little misleading. It would be much more accurate to say that these documents are "publicly available" to anyone willing to spend more than **4 million dollars** trying to dig up irrelevant dirt on a party opponent, as Buzzfeed has done here. *See*, *e.g*, Deposition Transcript of Anthony Ferrante, pp. 42, 192 ("Q. To date how much has FTI billed BuzzFeed in connection with the present engagement? A. I believe the figure is just below $4,100,000"; "Q. And I believe you testified that [certain articles] were not included in your expert report because they weren't relevant to XBT's reputation... THE WITNESS: I don't know if I said exactly that, but they were not included in my expert report because they did not speak to the **negative** aspects to XBT's reputation." (emphasis added)). *See*, *also*, *generally*, *Plaintiffs' Daubert Motion to Exclude Testimony of Anthony Ferrante*.

It is also no conincidence that the entire universe of documents that Defendnats *do* want to unseal (and discuss publicly) consists of wildly irrelevant, inadmissible, unreliable documents that serve no legitimate purpose, but instead have been inserted into the record solely for their slanderous and salacious nature. In other words, with respect to those documents that may actually speak to the facts to be decided in this case, Defendants are (they claim) agnostic; but with respect to the truly irrelevant, but for the benefit to Defendants in being able to publicly smear Plaintiffs, they have found religion and preach the need for public access. And, while Plaintiffs concede that it is not Defendants' burden, it bears noting that Defendants do not even attempt to posit a good faith rationale for why such documents need to be released now, when they might prejudice the potential jury, as opposed to following a trial, when the Court will know

---

[1] If Defendants truly take "no position" with respect to the materials they have designated as confidential, they are free to de-designate such materials and allow them to be publicly filed. Clearly, Defendants have taken and continue to "take a position" with respect to those materials.

which of these documents (if any) were actually found to be relevant and admissible.[2]

## Argument

### I. Legal Standard.[3]

Preliminarily, Defendants are correct when they state that most materials filed with a dispositive motion are (generally) presumed to be subject to the common law right of access[4] and that such a presumption can be overcome with a "showing of good cause."[5] Defendants also properly identify some of the facts considered by the Court in weighing the interest of public access against the interests of a party in keeping materials confidential:

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the

---

[2] Credit should be given where credit is due: Defendants' apparent recruitment of the *New York Times* to move to unseal documents at precisely the moment this motion is pending is nothing if not inspired advocacy. Unlike Defendants, who have no legitimate rationale for why documents should be unsealed, the *New York Times* at least comes before the Court with a good faith basis for their arguments (which Plaintiffs will address in due course). In reality, though, the *New York Times*' motion points up the main problem with Defendants' position here: unlike Defendants' Opposition, the *New York Times* at least presents colorable arguments as to why some of the information sought by the newspaper – *i.e.*, "information related to the origin of the Dossier; the Government's investigation of the Dossier including Senator McCain's receipt and production of the Dossier to the FBI; [and] Buzzfeed's investigation of the Dossier" (Docket No. 254, p. 6) – should be released to the public. Indeed, it is on *that* information that Defendants "take no position." And, when the *New York Times* argues (in terms that sound suspiciously similar to Defendants' arguments) that the Court should order the release of information concerning "Plaintiffs' advocacy and involvement in public controversies," it does so with a clear misunderstanding of the materials at issue. As Plaintiffs argue in their Summary Judgment Motion, their oppositions to Defendants' Summary Judgment Motions, and their *Daubert* motions, the salacious materials that Defendants hope to dump wholesale into the public record have no actual bearing on any "advocacy and involvement in public controversies." Finally, the very fact that the country's best newspaper – with an army of the best reporters at their disposal – have not, on their own, dug up the irrelevant information Defendants want to publicize prior to a trial simply proves Plaintiffs' point: this "information" is not "public" in any meaningful way.

[3] There is something more than a little unseemly in Defendants having engineered a situation in which Plaintiffs were required to file their motion on an emergency basis by refusing to maintain the status quo until the present motion is decided and then decrying the paucity of Plaintiffs' legal citations in their admittedly rushed motion.

[4] *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007).

[5] *Travelers Prop. Cas. Co. of Am. v. Barkley*, 2017 U.S. Dist. LEXIS 212214 (S.D. Fla. June 2, 2017).

3

> information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.... A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information.

*Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

Defendants' statement of the law is correct as far as it goes, but it is incomplete:

> It is uncontested ... that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." ... Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, ... or as sources of business information that might harm a litigant's competitive standing....

*Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978) (multiple citations omitted). *See*, *also*, *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000) ("Among the factors that courts have recognized as warranting restricting access to court records is the use is the illegitimate purposes such as to promote scandal.")

"A finding of good cause requires 'balancing the asserted right of access against the other party's interest in keeping the information confidential." *Center for Indiviual Rights v. Chevaldina*, 2018 U.S. Dist. LEXIS 89847 at *19 (S.D. Fla. 2018). "The Supreme Court ... neither drafted explicit limits nor assigned specific weight to this common law right of access. The Court, rather, acknowledged 'the presumption however gauged in favor of public access to judicial records,' as one of the interests to be weighed on the broadcasters' 'side of the scales.'" *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. 1981) (quoting *Nixon*, 435 U.S. at 602). "Ultimately, the decision to allow public access is a matter of the Court's supervisory and discretionary power." *Center for Indiviual Rights*, *supra* at *19.

The Court has a "responsibility to exercise an informed discretion as to the release… with a sensitive appreciation of the circumstances that led to their production. Otherwise, there would exist a danger that the Court could become a partner in the use of the subpoenaed material to gratify private spite or promote public scandal ... with no corresponding assurance of public benefit." *Nixon*, 435 U.S. at 603.

Indeed, where courts have found that materials – even materials that had previously been made public such as a counsel's "Tweets" on Twitter – were unrelated to the facts at issue and

4

were instead included with motions "simply to embarrass ... and for no other purpose" they were instead subject to being sealed by the Court. *Jackson v. Deen*, 2013 U.S. Dist. LEXIS 65814 *16-17 (S.D. Ga. 2013). As the *Jackson* court explained, such materials are not properly considered legitimate judicial records:

> [T]he defendants used this record as a mere garbage dump for material designed to embarrass opposing counsel. Such materials do not constitute legitimate judicial records. *See In re Policy Management Systems Corp.*, 67 F.3d 296 (4th Cir. Sept. 13, 1995) (unpublished) ("we hold that the mere filing of a document with a court does not render the document judicial. [It] becomes a judicial document when a court uses it in determining litigants' substantive rights.... [A] document must play a relevant and useful role in the adjudication process" before the public's right of access attaches.). The documents foisted by defendants into this record bear no relation to any issue in this case, and the normal presumption of public access to judicial records does not apply in this context. Accordingly, the Court declines to unseal these materials.

*Id.* at *18-19. *See, also*, *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir. 1995) ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."); *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) ("When considering whether the common law right of access applies, the cases turn on whether the documents that are sought constitute 'judicial records.' Such records are those 'materials on which a court relies in determining the litigants' substantive rights.'"); *Luzzi v. ATP Tour, Inc.*, 2011 U.S. Dist. LEXIS 74796, at *5-9 (M.D. Fla. July 12, 2011) (finding first that "the plaintiffs did not need to attach the sealed documents in responding to the Motion for Summary Judgment and the Court did not utilize them in reaching its decision. It is not certain that the Eleventh Circuit would find a presumptive right of public access to filed documents that played no role in the adjudication process" and that, even if the Court assumed such a presumpive right of access existed, "the Eleventh Circuit held in *Chicago Tribune* that Rule 26 confidentiality is not automatically foregone because confidential materials are submitted with a substantive motion" before holding that the documents should remain sealed because the release of "gratuitously filed and unvarnished data ... would serve little or no public or First Amendment purpose" (citing *Chicago Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001))). *See, also*, *United States v. Byrd*, 11 F. Supp. 3d 1144, 1148 (S.D. Ala. 2014)

5

("'[J]udicial documents' have been defined as 'materials on which a court relies in determining the litigants' substantive rights....'"); *Johnson v. Blackburn*, 2014 U.S. Dist. LEXIS 190813, at *3 (W.D. Tex. May 4, 2014) ("[T]he Court does not rely upon the letter in 'determining the litigants' substantive rights.' ... The Court accordingly finds that the letter is not a judicial document to which there is a presumptive right of access.").

II.     **The Materials are Not as "Public" as Defendants Would Have the Court Believe.**

Defendants first assert that their arguments that reference thirty-six documents they submitted with their summary judgment motions (and the documents themselves) should not be sealed because they are otherwise "publically available." Out of those 36 documents, however, more than a third of them (fourteen)[6] are web pages that are no longer actively available on the internet and another four are not in English. See Exhibit A hereto and Declaration of Matthew Shayefar filed herewith. Nine more of these documents make no mention whatsoever of Plaintiffs or any of their related businesses and instead represent attempts by Defendants to link "Russians" generally to bad acts and actors. *Id.* Two other documents (one 98 pages in length and the other 20 pages in length) contain each a single reference to Webzilla – along with other hosting providers – as having clients whose websites contain materials that allegedly infringe on the copyrights of others (nothing even remotely connected to the allegations contained in the Dossier). And, generally, many of the articles are a decade old; generally unavailable or otherwise seemingly-unindexed (meaning they cannot be easily found with a Google search); and contain topics unrelated to any of the allegations in the Dossier (meaning that the documents are not "publically available" to the average person, without a four million dollar budget and the motivation to spend those funds on finding dirt with which to smear the Plaintiffs).[7]

---

[6] Eleven of those pages can only be found through the Internet Archive's "Wayback Machine." Pages on the Wayback Machine are not indexed through Google – a user needs to know precisely what defunct URL address they are looking for in order to find historical records of those pages. Others appear not to even been indexed on the Wayback machine. See Exhibit A.

[7] Overlapping in these categories, many of the documents are unauthenticated and contain second- or third-level hearsay.

**III.     The Materials Defendants Seek to Have Released are Unrelated to the Actual Facts in Dispute and Have Been Attached to (and Referenced in) Defendants' Summary Judgment Materials for No Other Reason than to Unduly Prejudice the Jury.**

As is discussed in greater detail in Plaintiffs' Motion for Summary Judgment, Plaintiffs' oppositions to Defendants' Motions for Summary Judgment, and Plaintiffs' *Daubert* motions already on file with the Court (and forthcoming motions *in limine*), the materials that Defendants have attempted to dump wholesale into the public record by virtue of attaching them to their Summary Judgment motions simply have no place in the record: they are irrelevant to the issues in front of the Court; are largely unverified and inadmisisble totem-pole hearsay; and include documents that make no mention whatsoever about Plaintiffs or their businesses, but instead attempt to paint Russians in general as cyber-criminals or attempt to engage in guilt-by-association by including articles about the alleged criminal activities of individuals who appeared at the same conferences as Plaintiffs.

As an example of the lengths Defendants have gone to introduce irrelevant and slanderous materials into this case – Defendants have identified Exhibit 140 to the Siegel Declaration as one of the public documents they believe should be part of the public record. Exhibit 140 is an Associated Press article from 2001 – *four years before Mr. Gubarev ever founded Webzilla* – entitled "Overseas Web Kid Porn Laws Loose." The article discusses, generally, how police in Indonesia and Russia claim that it is difficult to crack down on websites located in those two countries that contain images of child pornography. *The article does not, in any way, shape, or form involve or reference any of the Plaintiffs (certainly it would be hard to reference companies that did not exist 17 years ago)*. In other words, there is absolutely no legitimate justification for this article to be included in Defendants' materials and no possible relevance to this case. The materials are included *solely* because they are salacious and defamatory and solely so that Defendants can say "child pornography" in their motion, fully

7

intending for the media to make some improper connection with Plaintiffs.[8]  This is precisely the type of "garbage dump" of irrelevant materials that Courts have deemed not to be "judicial records" entitled to a presumption of access, even if attached to a dispositive motion.[9]  *Jackson*, *supra*.

> IV. **The Unsealing of Wholly Irrelevant Salacious Materials Now Would Unnecessarily Risk Plaintiffs' Right to a Fair Trial Without any Concomitant Benefit to the Public's Right to Information About Actual Issues in Dispute.**

The documents at issue here (and the arguments referring to those documents) have not yet played any "role in the adjudication process."  And, if Plaintiffs are correct, they never will play any role in the adjudication process precisely because they are irrelevant, unverified, unreliable, and unduly prejudicial.  Yet, if the Court were to unseal these documents *now*, it will be a bell that cannot be unrung even if the Court ultimately grants Plaintiffs' *Daubert* motions, motions in limine, or objections at trial.  Once in the public domain, there will be no way to know if these wholly irrelevant documents have improperly influenced the jury.  Indeed, as the *New York Times*' motion makes clear, Plaintiffs' fear is in no way speculative: the media stand ready to broadcast these salacious arguments if and when the Court allows the sealed materials to be placed into the public domain.  To the extent that the materials in question are ever deemed to be relevant, reliable, and admissible, they may be presented to a jury and, at that point in time, be made part of the public record.  Certainly, however, there is neither a basis nor rationale for doing so now, nor have Defendants articulated any legitimate need for the documents to be unsealed at this point in time.

> V. **The Balance of Concerns Favors Continuing the Status Quo.**

As was noted above, the Eleventh Circuit permits this Court to consider, "among other

---

[8] The four other exhibits of this type (Siegel Exhibits 129-132) fare no better.  The articles, each a decade old, include a report from a Dutch blogger who purports to repeat information told to her by Dutch authorities; a "CNN iReport," which was CNN's experiment in allowing random people to post anything they considered to be newsworthy without any vetting or editing from CNN itself (Shayefar Declaration filed herewith, Exhibit 3); and two other Dutch articles that simply repeat the allegations of the first.  There is no world in which any of these articles would be admissible at trial, could be considered on a motion for summary judgment, or are even relevant to the defamatory statements made by Defendants about Plaintiffs.

[9] Defendants complain that Plaintiffs painted them as engaging in "Darth Vader"-like behavior to which Plaintiffs can only respond that, when one dons the black helmet and whispers "Luke, I am your father," comparisons will be made.

8

factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.... A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information." *Romero*, 480 F.3d at 1246.

In the present case, given how incendiary (yet irrelevant) the materials are, allowing access may well impair the Court's ability to insure Plaintiffs a fair trial. So too, the "degree and likelihood of injury if made public" favors Plaintiffs: there is no question but that these irrelevant and baseless allegations will be publicized if made public. Indeed, the *New York Times*' motion makes that clear.

And, as the Court will see as it examines the relevant motions, the "evidence" presented by Defendants is the furthest thing from reliable as one might imagine. Although there may be an opportunity for Plaintiffs to respond to the allegations once released, such an opportunity is hardly meaningful if the minds of potential jurors have already been influenced by Defendants standing on a soap box yelling "child porn" as loudly as they can.

With respect to the "public concern" element, while it is true that the case itself presents a matter of public concern, the materials Defendants seek to have made public simply do not. And, although there is no less onerous alternative to sealing the documents for now, the Court is always free to reconsider the matter after trial, once it is obvious what materials did and did not play a "role in the adjudication process."

Finally, one other argument raised by Defendants should be addressed: Defendants claim that, simply by bringing this lawsuit, Plaintiffs have forfeited any rights they may have not to be subjected to the proliferation of baseless and irrelevant attacks on them, so long as such attacks are made in connection with a dispositive motion. If Defendant's position is correct, then only those about whom nothing bad has *ever* been said or alleged is entitled to the protections of libel laws and everyone else may be defamed at will because, if they have the temerity to fight back in an attempt to vindicate their name, they may be re-victimized at will by defendants willing to place into the record every bad thing that any anonymous person on the internet has said about them, truth be damned. This simply cannot possibly be the law. *See, e.g., Sanford v. Bos. Herald-Traveler Corp.*, 318 Mass. 156, 158, 61 N.E.2d 5, 6 (1945) ("[W]e are not prepared to

concede that the general right of inspection of public records enables one in every instance to publish such records broadcast without regard to the truth of defamatory matter contained in them.").

## Conclusion

For the reasons stated hereinabove and in Plaintiffs' Emergency Motion, the Court should – at least until after trial has been completed – order that the portions of Defendants' motions discussing pornography, adult-content conferences, child pornography, the Methbot fraud, and the alleged wrongdoing of persons other than Plaintiffs (and the exhibits connected to such arguments) remain confidential and under seal until such time as this Court orders otherwise.

Dated: October 19, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com

*Attorneys for Plaintiffs*