1        **IN THE UNITED STATES DISTRICT COURT**
           **SOUTHERN DISTRICT OF FLORIDA**

2

            **FORT LAUDERDALE DIVISION**

3

        **CASE NO.:  17-cv-60426-UU**

4

5

6

7  ALEKSEJ GUBAREV, XBT HOLDING, )
    S.A., and WEBZILLA,       )

8                        )
            Plaintiffs,  )         September 5, 2018

9                        )
    v.                    )

10                      )        Pages 1 - 24
    BUZZFEED, INC. and BEN SMITH, )

11                      )
            Defendants.    )

12  _____/

13

14

15                HEARING PROCEEDINGS

16

       BEFORE THE HONORABLE JOHN J. O'SULLIVAN

17          UNITED STATES MAGISTRATE JUDGE

18

19

20

21

    APPEARANCES:

22

    On behalf of the Plaintiffs:

23

               CIAMPA FRAY-WITZER, LLP

24              20 Park Plaza
              Suite 505,

25              Boston, MA 02116
              BY:  EVAN FRAY-WITZER,  ESQ.

```
 1   APPEARANCES CONTINUED:

 2   On behalf of the Defendants:

 3                           DAVIS WRIGHT TREMAINE, LLC
                             1251 Avenue of the Americas,
 4                           21st Floor,
                             New York, NY 10020.
 5   (Telephonically:)       BY:  KATHERINE M. BOLGER, ESQ.

 6

 7
                             DAVIS WRIGHT TREMAINE, LLC
 8                           1919 Pennsylvania Avenue NW,
                             Suite 8001899 L Street, NW
 9                           Washington, DC 20006
     (Telephonically:)       BY:  NATHAN SIEGEL, ESQ.
10

11

12   On behalf of David Kramer:

13                           MARCOS D. JIMENEZ, P.A.
                             255 Alhambra Circle
14                           Suite 800,
                             Coral Gables, FL 33134
15                           BY:  MARCOS D. JIMENEZ, ESQ.

16

17   On behalf of Christopher Steele:

18                           ALSTON & BIRD, LLP
                             1201 W. Peachtree Street, NW
19                           Atlanta, GA 30308
     (Telephonically:)       BY:  CHRISTINA H. EIKHOFF, ESQ.
20

21

22   Transcribed By:

23
                             BONNIE JOY LEWIS, R.P.R.
24                           7001 SW 13 Street
                             Pembroke Pines, FL  33023
25                           954-985-8875
                             caselawrptg@gmail.com
```

1          (Thereupon, the following proceedings were held:)

2          THE COURT:  Good morning.

3          We are here today in the case of Guabarev and others

4   versus Buzzfeed and others; Case Number 17-cv-60426.

5          Could I have appearances first for the Plaintiffs.

6          MR. FRAY-WITZER:  Good morning, Your Honor.

7          Evan Fray-Witzer for Plaintiffs.

8          THE COURT:  Okay.  And who is here for the Defendants?

9          MS. BOLGER:  Good morning, Your Honor.

10          On the line are Katherine Bolger and also Nathan

11   Siegel on behalf of Defendants.

12          THE COURT:  Okay.  And who he is here for Mr. Kramer?

13          MR. JIMENEZ:  I am, Your Honor; Marcos Jimenez.

14          THE COURT:  And just for the record, you are the only

15   one in the courtroom and everybody else is on the phone?

16          MR. JIMENEZ:

17          THE COURT:  Who is here on behalf of Mr. Steele?

18          MS. EIKHOFF:  I am, Your Honor.  This is Christina

19   Hull Eikhoff also on the phone.

20          THE COURT:  Okay.  Very good.

21          Just so I understand it, the Plaintiff and the

22   Defendant, do you have any position on this?

23          MR. FRAY-WITZER:  Your Honor, Evan Fray-Witzer for the

24   Plaintiffs.

25          We really don't, Your Honor, other than to say the

4

```
 1    protective order has a process for when we receive a request
 2    from a Government committee.  We received requests from the
 3    Senate and House.  We followed the process and other than that,
 4    we really don't take a position.
 5              THE COURT:  Okay.  And for the Defendant?
 6              MS. BOLGER:  Similarly, Your Honor, we have no
 7    position on the application.
 8              THE COURT:  Okay.  So let me hear from whoever wants
 9    to address the Court other than Mr. Kramer or Mr. Steele's
10    counsel.
11              MR. JIMENEZ:  If it is okay with you, Your Honor, I
12    will go first.
13              THE COURT:  Okay.
14              MR. JIMENEZ:  We are here because the Chairs of the
15    Senate Judiciary Committee on July 25 and the House Permanent
16    Select Committee on Intelligence, which I will call HPSCI on
17    August 17th -- and the timing is interesting which I will
18    explain in a minute -- have sent requests to Plaintiffs'
19    counsel for the voluntary production of Mr. Steele's
20    deposition.
21              It is curious that they ask Plaintiffs' counsel for
22    this, but it is also curious that during the deposition of Mr.
23    Steele, Plaintiffs' counsel not only asked Mr. Steele about
24    portions of Mr. Kramer's protected deposition, but they attach
25    the entire deposition transcript as an exhibit to Mr. Steele's
```

1   deposition.

2          As the Court will recall, the Plaintiffs supposedly

3   because they needed Mr. Kramer's deposition to compel Mr.

4   Steele's deposition unsuccessfully opposed the continued

5   designation of Mr. Kramer and this Court in a sealed order

6   granted protective order and that was back in late February of

7   this year.

8          The Plaintiffs have advised us or the reason why we

9   are here in court today, the Plaintiffs advised us they were

10   going to produce the deposition.  They have stated publically

11   in reports by right wing publications like the Daily Caller

12   that they have been instructed by their client to voluntarily

13   and fully cooperate with any committee requests or any

14   Government requests.

15          So we are here, Your Honor, because we want the Court

16   to continue to protect Mr. Kramer's deposition because of his

17   safety concerns, which I will note have only gotten stronger

18   since we were last here.

19          As the Court will recall, President Trump traveled to

20   I think it is Helsinki -- I can't say that today -- if I am

21   correct, to meet with Vladimir Putin.  It was televised around

22   the world.

23          After that there was some discussion by him about how

24   great it might be if Russians could come to the U.S. and

25   interrogate certain people.

1          Later the Russian Prosecutor General actually issued a

2     list of people that they would like to interrogate in the

3     United States and Mr. Kramer is on that list as are others who

4     are now on what is infamously called the Putin enemies list.

5          So I don't think I have to get into too much about

6     what has happened in England with the poisoning of individuals

7     and the actions that the British Government is taking.

8          I believe just yesterday there was an arrest relating

9     to the poisoning.  So Mr. Kramer's safety concerns have only

10    gotten stronger.

11         So two quick points:  First is, Your Honor, the

12    protective order envisions that there are competing obligations

13    between the protective order and some other legally mandated

14    request.  Here we don't have those competing obligations.

15         In the last letter that Senator Grassley sent, it is

16    clear --

17         THE COURT:  In the August 31st letter?

18         MR. JIMENEZ:  Yes, Your Honor.  I think that's right.

19         It is clear he says and I quote:  "Recipients of these

20    voluntary requests..."

21         THE COURT:  Where are you reading from?

22         MR. JIMENEZ:  I am reading from, it's Exhibit D.

23         THE COURT:  I have the letter.  I am just wondering

24    where in the letter.  It is three pages long.

25         MR. JIMENEZ:  Yes.

1    MS. BOLGER:  It is on Page 2, Your Honor.

2    THE COURT:  Page 2?

3    MS. BOLGER:  Yes.

4    THE COURT:  Do you have it in front of you?  What

5 portion of Page 2?

6    MR. JIMENEZ:  Your Honor, it is on the --

7    MS. BOLGER:  Mr. Jimenez, are you referring to the

8 voluntary request language?

9    MR. JIMENEZ:  Yes.  It is at the end of the first

10 paragraph --

11    THE COURT:  The end of the first paragraph.

12    MR. JIMENEZ:  -- which begins with indeed.

13    THE COURT:  Right.

14    MR. JIMENEZ:  He says:

15    "Indeed recipients of these voluntary requests do not

16 take the form of a subpoena typically respect them as

17 legitimate committee inquiries.  As such the recipients

18 frequently provide responsive documents."

19    So we don't have that tension here.  And secondly --

20    THE COURT:  Why do you say that it has to be a

21 subpoena when the protective order itself says -- it mentions

22 subpoena, government agency, or committee request, or other

23 legally mandated request?

24    MR. JIMENEZ:  We think that that phrase other legally

25 mandated phrase applies under the cannons of interpretation has

1  to consider the context.  And so it deals with subpoenas.  It

2  deals with agency or requests, or other legally mandated

3  requests.

4         THE COURT:  Yes, but perhaps we do not have that other

5  legally mandated request because they have not issued a

6  subpoena, but we do have what is before that which is

7  government agency or committee request.

8         So by having other legally mandated request, I think

9  that is talking about other ways.  You know, it could be

10 another Court ordering it or some other thing.  We do not have

11 a subpoena.  We do not have another legally mandated request,

12 but we do have a government agency or a committee request.

13        Particularly a committee request.  I mean, I am not

14 aware of anything else that that could refer to, other than a

15 congressional that is Senate or House Committee because those

16 are the only committees that I am aware of.

17        I guess it could be a committee appointed by the

18 President or something who is investigating something, but it

19 seems like it comes squarely within the protective order that

20 it is a committee request.

21        MR. JIMENEZ:  Your Honor, I was not involved in the

22 drafting of this.

23        THE COURT:  Okay.

24        MR. JIMENEZ:  I can tell you that obviously in court

25 here and throughout the country, typically in cases when we

1  refer to the Government, we refer to the Executive Branch.

2          THE COURT:  Yes.

3          MR. JIMENEZ:  And they are our Government.

4          There are lots of government executive agencies and

5  lots of government executive committees.  My point simply was

6  we believe that the legally mandated language is meant to cover

7  the entire paragraph.

8          In other words, it gives meaning and context to the

9  types of things that would create an obligation.  So the point,

10 I think regardless of what this order says, Your Honor, the

11 point is there is no subpoena that the Senator has said it is a

12 voluntary production.  It is a voluntary request.

13         THE COURT:  Right.

14         MR. JIMENEZ:  So even if the Court considers that

15 somehow as a permissive, or as a category that allows the

16 Plaintiff to provide the information, we then think the Court

17 should, if the Court goes that route, we then think the Court

18 should balance the interest here.

19         And that would require an evidentiary hearing and it

20 would require someone to stand up from the Senate and House

21 Committees to explain why they really need this information.

22 And Mr. Kramer could then examine those witnesses about what

23 has happened to him.

24         And without getting into too much detail, I will tell

25 you -- and here is where I get to the timing point.  The first

1  letter that was received from Senator Grassley was July 25th,

2  as I mentioned.

3         In the interim, Mr. Kramer's Washington counsel Larry

4  Robbins of the Robbins Russell firm and his colleagues had

5  conversations with the Senate staff about whether or not they

6  could reach some sort of an agreement as to the treatment of

7  Mr. Kramer's deposition.

8         During those conversations, the Senate staff made it

9  very clear to my co-counsel that if there might be confidential

10 treatment, but that would not preclude the deposition from

11 ultimately being disclosed by the Senate.

12        The Senate has a public informing function.  So if

13 they wanted to attach it to a final report or a request, or

14 show it to a witness they would do it.

15        We asked them if they would ask witnesses that they

16 show the deposition to, to sign the acknowledgment that the

17 protective order has that would bind the other witness to keep

18 the deposition confidential and they said no.

19        So we have absolutely zero confidence that this

20 deposition would not be disclosed.  As part of the normal

21 Senate function because they won't agree to respect the

22 protective order.

23        So then we get to the real problem which are leaks.

24 Again, if we brief this, I am happy to provide any information

25 to the Court that Mr. Robbins has sent two letters to the House

11

1   Committee, Mr. Nunez' committee, which makes it exceedingly

2   clear and we have not just the two letters, but the articles to

3   back it up in the press that after Mr. Kramer was told that his

4   appearance at the House Committee would be treated at HPSCI

5   would be treated confidential.

6          Within a few days Mr. Kramer's counsel, Mr. Robbins,

7   got a call from another Washington counsel who at that point

8   represented the President's private lawyer, Mr. Cohen, and

9   discussing the testimony that Mr. Cohen had given.

10          THE COURT:  Mr. Kramer already gave testimony to the

11  House Committee?

12          MR. JIMENEZ:  Yes, Your Honor, he did.

13          THE COURT:  And the Senate Committee?

14          MR. JIMENEZ:  He did not.  He has not been requested

15  by the Senate Committee or has not received a subpoena from the

16  Senate Committee.

17          Now the House, let me get back to the timing point

18  because I didn't digress, but the timing point is interesting.

19  During these considerations that we were having with senate

20  staff we were having them with a particular Senate staffer.

21          And we wrote a letter to the Senate staffer or an

22  e-mail to the Senate staffer on August 15 saying:

23          "Thank you, Mr. Staffer we really appreciate the

24  conversation that we've had, but under the terms and under the

25  discussion we've just had we cannot agree to the voluntary

```
 1   production of Mr. Kramer's deposition."

 2         And it was two days later that Mr. Nunez sent his

 3   letter on August 17th requesting the production of Mr. Steele's

 4   deposition with Mr. Kramer's deposition attached.

 5         THE COURT:  What is wrong with that?

 6         MR. JIMENEZ:  Well, I think that that shows that there

 7   is clearly -- and here is what is wrong with that.

 8         There is clearly a cooperation between the two

 9   committees.  And what is wrong with that is that the House has

10   leaked Mr. Kramer's appearance, his testimony.  And in detail

11   which, like I said, I am happy to share some of them because

12   some of them are in newspaper articles.

13         But we have zero confidence that either of these two

14   committees will keep their word and maintain any

15   confidentiality, unless they are ordered to do so.  And unless

16   a protective order attaches to any production of Mr. Kramer's

17   deposition to either committee.

18         So that is the point, Your Honor.  So I don't think I

19   have much more to say.  I will say one legal point which is

20   there were some cases and things like that cited in some of the

21   letters, but these cases were not cited.

22         If Congress does end up issuing a subpoena for Mr.

23   Kramer's deposition, they will have to make an extraordinary

24   showing that it should be produced despite the protective order

25   or in contravention of the protective order.
```

13

1          There is a case called *In Re Beef Industries* and I

2    trust litigation which we are happy to brief.  It's a Northern

3    District of Texas 1978 case, which says that when the sole

4    question was:

5          "Whether Congress can subpoena documents in the hands

6    of a litigant in a federal court proceeding from that litigant

7    who would not otherwise have them, except for the discovery

8    procedures of the federal courts when there has been no showing

9    of extraordinary circumstances."

10         And the Northern District of Florida in our state, in

11   *McCarty v. Bankers Insurance Company* has this excerpt which

12   says in that case *In Re Beef*:

13         "It was determined that Congress may not subpoena

14   documents or materials pursuant to a federal protective order,

15   unless it can show extraordinary circumstances.  Allowing a

16   congressional subcommittee to do so would interfere with the

17   processes of a federal court."

18         So I think that if the Court ends up requiring

19   briefing or desires briefing and we have a hearing we're going

20   to establish that they certainly don't have extraordinary

21   circumstances that would overcome Mr. Kramer's demonstrated

22   safety concern.

23         We would also show that the House Committee has leaked

24   Mr. Kramer's information already and cannot be trusted and we

25   are prepared to do so.

14

```
 1            THE COURT:  Okay.  All right.  For Mr. Steele?
 2            MS. EIKHOFF:  Good morning, Your Honor.  This is
 3   Christina Eikhoff and I have not had the opportunity to appear
 4   in your courtroom before.  So I appreciate the opportunity you
 5   have given us today to participate in this hearing.
 6            Just to give you a background because I am not sure if
 7   the Court is absolutely familiar with the Mr. Steele's
 8   involvement as a third party witness in this case.
 9            Mr. Steele's deposition was requested with a letter
10   rogatory who sought to intervene to state objections to that
11   here and the U.S. Court.  Our motion to intervene was denied,
12   but Judge Ungaro said that we could state our objections in the
13   UK through the Hague Convention processes.
14            The objections were litigated in the UK.  Ultimately,
15   the High Court in England ordered a very limited deposition to
16   proceed extremely limited in scope.  And that deposition
17   occurred on June 18th of 2018 and was designated as attorney's
18   eyes only under the protective order.  That attorney's eyes
19   only designation has never been challenged and so it stands.
20            Your Honor, our position is that the voluntary letter
21   request are both procedurally and substantively insufficient to
22   permit disclosure of the protected materials.
23            We agree with Mr. Kramer's counsel that this voluntary
24   letter request does not fall within the scope of legally
25   mandated requests.
```

```
 1            THE COURT:  Okay.  Why is it -- excuse me.
 2            Why does it not fall within the phrase government
 3   agency or committee request?
 4            MS. EIKHOFF:  I think because it --
 5            THE COURT:  Go ahead.  I'm sorry.
 6            MS. EIKHOFF:  To answer your question, Your Honor,
 7   because we don't think that those words could be read in a
 8   vacuum in isolation.
 9            I think they have to be read under construction rules
10   with the context in which they appear.  And they appear smack
11   dab in the middle of a list of only legally mandated request
12   order subpoena other legally mandated request.
13            And so we believe that those words which are rather
14   vague, should be construed in the contest in which they were
15   written.  And even so --
16            THE COURT:  Let me interrupt you.
17            To me it does not seen vague because it has those
18   legally mandated requests.  In other words, an order, a
19   subpoena, but then in the middle of that it says government
20   agency or committee request which is not, as I understand it,
21   legally mandated.
22            Although I am not very familiar with the rules of the
23   Senate or the House, but based on at least what Senator
24   Grassley indicated that it is a voluntary request, I would
25   agree that it is not legally mandated.  It is not a subpoena,
```

16

1   but it does clearly have a government agency or committee

2   request, which it seems to me that falls squarely within there.

3          In other words, you could have a legal mandate, or a

4   government agency, or a committee requesting it and it would

5   come under the protective order.

6          MS. EIKHOFF:  Right.

7          And so, Your Honor, we would dispute that reading.

8   Although Your Honor has certainly made clear its meaning of it.

9   And so I want to further to say that even if we grant that that

10  would fall within that this voluntary request which Senator

11  Grassley has conceded is a voluntary request, even if it does

12  fall within Section 16.

13         Paragraph 16 goes on to say that if a request appears,

14  or if a subpoena appears, then that does not mean the request

15  appears and then the party who has been requested just hands it

16  over.

17         On the contrary.  It says that the requested party

18  shall not produce or disclose the requested information without

19  consent and (inaudible) the information, which they do not have

20  here, or until ordered by a court of competent jurisdiction to

21  do so.

22         THE COURT:  Yes.

23         MS. EIKHOFF:  And so this Court could still evaluate

24  the request.

25         And Your Honor, this binding case law that requires,

1  as Mr. Jimenez has listed for this Court, the binding case law

2  that requires a showing of extraordinary circumstances and no

3  such showing has been made.

4          And I wanted to mention that the case that he cited *In*

5  *Re Beef* and antitrust litigation F. Supp. 210 from the Northern

6  District of Texas was affirmed by the Fifth Circuit 589 F.2d

7  786 from the Fifth Circuit, which is now the Eleventh Circuit

8  and continues to be binding on this Court.

9          And Your Honor, the case law is really interesting in

10  this arena because this is not the first time this has

11  happened.  It has actually happened, I think with surprising

12  frequency, that political actors even committee chairman,

13  congressional committee chairman have sought to reach into

14  private civil litigation to grab discovery materials for their

15  investigative or other purposes.

16          And the Courts have made clear that if they do that

17  there are procedural requirements and there are substantive

18  requirement.

19          Procedurally, Your Honor, they have to intervene in

20  the case.  They cannot do it from afar.  They cannot send a

21  letter to one of the attorneys for one of the parties and say

22  hand this over.  And then, have one of the attorneys of the

23  parties send the letter to the Court and pass it through that

24  channel to the Court.  They need to appear and they are not

25  here today and they are not in the case at all.

1        And Your Honor, I cite to the Fifth Circuit's

2   affirmant of *In Re Beef Industries* that says, I am quoting:

3        "There is no question that the procedurally correct

4   course for the chairman would have first obtain status as

5   intervenors."

6        So that's another procedural shortfall here, but even

7   if we jump over the procedural shortfalls, we have to look at

8   the substantive sufficiency that they have not made any showing

9   of extraordinary circumstances or of compelling need.

10       And I would cite to the Northern District of Florida

11  case, *McCarty v. Banker's Insurance Company*, 195 F.R.D. 39 that

12  says:

13       "That the Government has certain investigative powers

14  that would enable it to gain access to protected materials

15  where other civil non parties may be denied access.  Those

16  circumstances are often limited and require a special showing

17  of compelling need."

18       And here there has been no showing of extraordinary

19  circumstances or compelling need.  On several of the letters

20  that we have received in the absent chairman in this case is

21  essentially just give it to us because we are interested in it

22  and it may be relevant to our broad investigation.

23       The cases really rely on two principles, Your Honor,

24  in supporting civil litigants and protecting civil litigants.

25  One is separation of powers and the other is policy.

1          And specific as to policy, the Courts have said that

2    when a party is subpoenaed to give a deposition against their

3    will -- which happened in the case of my client -- and they

4    give that testimony, they create materials as compelled, but

5    they do so under a protective order that they are entitled to

6    rely on that protective order.

7          The Second Circuit addressed this, Your Honor, in the

8    *Martindell* case, 594 F.2d 291 when it said:

9          "In short witnesses might be expected frequently to

10   refuse to testify pursuant to protective orders if their

11   testimony were made available to the Government for criminal

12   investigatory purposes in disregard of those orders."

13         And Your Honor, we would say that the voluntary

14   request that has been made by letter here pass through the

15   Court by counsel is insufficient under the binding law on this

16   Court to have this, to lead this Court to order disclosure,

17   which is what would be required under Paragraph 16.

18         THE COURT:  Okay.  Let me just see.  Plaintiffs, do

19   you have anything else to add?

20         MR. FRAY-WITZER:  Your Honor, Evan Fray-Witzer for

21   Plaintiffs.

22         The only thing that I would add at all and again it is

23   not really to the substance of the question, but both counsel

24   repeatedly said, oh, well, Plaintiffs are voluntary turning

25   this over and so on and so forth.

1          Mr. Guabarev and the Plaintiffs were accused in the

2    dossier of all sorts of false things about undermining the

3    United States Government.

4          Their position from the beginning was we are going to

5    cooperate from anyone who wants to ask us questions because we

6    haven't done anything wrong.

7          We still take no position on whether or not the

8    materials should be provided to the committees.  It is simply

9    that we are following the instructions of the amended

10   protective order Paragraph 16.  We got the requests.  We

11   notified Mr. Steele's attorney and Mr. Kramer's attorney and

12   that is why we are here.

13         THE COURT:  Okay.  Hold on.

14         Does the Defendant have anything further?

15         MS. EIKHOFF:  No, Your Honor.

16         THE COURT:  Okay.  Good.

17         Go ahead, Mr. Jimenez.

18         MR. JIMENEZ:  I just want to say that Mr. Steele's

19   counsel actually mentioned or discussed the portions of my

20   outline that I had neglected to mention.

21         I completely agree that if the Senate Committee and

22   House Committee want to obtain this information that under the

23   binding of the Fifth Circuit case on appeal they would have to

24   intervene.

25         Secondly, Mr. Kramer voluntarily appeared to the House

1   based on a promise of confidentiality that which was breached.

2   So that is why he is not proceeding any further voluntarily

3   because, fool me once shame on you, fool me twice shame on me.

4           So regardless of how the Court deals with the aspect

5   of whether it is voluntary, or legally mandated or not, the

6   real point here, Your Honor, they have not made that

7   extraordinary circumstance showing.

8           And they have certainly not agreed to provide for Mr.

9   Kramer's protection and they have not agreed to comply with the

10  protective order.

11          THE COURT:  Okay.  Just give me a moment.

12          All right.  So I am ready to rule.

13          As I see it, the way the Senate Committee and the

14  House Committee proceeded, I believe up to this point was

15  appropriate in that they became aware of these depositions and

16  they informally or asked for them to be provided voluntarily.

17          The parties acted appropriately in that the Plaintiffs

18  notified the two affected parties who now have moved in front

19  of me to not issue an order allowing the release of the

20  depositions to the two committees.  So up until now I do not

21  see that anybody has done anything inappropriate or proceeded

22  in the wrong way.

23          What concerns me, though, is that having heard the

24  cited law and even before having heard that cited law, my

25  thought was after I read the letters, I really need the Senate

1  Committee and the House Committee to come here and explain to

2  me why it is appropriate for them to obtain these documents.

3          Why they believe if they do receive the documents that

4  they are not bond by the protective order and not required to

5  sign the attachment, which requires them to maintain the

6  confidentiality of, here would be the depositions, and why the

7  manner in which they are requesting the documents is

8  appropriate.

9          So I am not going to order that the depositions be

10  released.  They will continue to be protected under the

11  protective order.

12          I encourage Mr. Kramer's attorney as well as Mr.

13  Steele's attorney to continue to negotiate with both those

14  Committees and see if you can come to some kind of a resolution

15  on the production of those materials if it be limited or

16  subject to some confidentiality protections.

17          Of course, Mr. Steele, if you were to reach an

18  agreement, you would not be permitted to release the attachment

19  of Mr. Kramer's deposition without the authority of Mr. Kramer.

20          If you are unable to do that, then, I would encourage

21  either the Senate or the House, or both of them to intervene in

22  this matter and to tell the Court why these documents are

23  necessary.

24          And if the case law is cited, the Fifth Circuit case

25  law citing that you must provide a compelling need or

1  extraordinary circumstances has either been met or does not

2  apply in this matter.

3         I know Senator Grassley's committee is probably busy

4  this week because I saw them on TV yesterday in the Supreme

5  Court hearings.  So I am not going to put a time limit on that.

6         When they decide that it is appropriate for them to

7  intervene, they are welcome to do that.  And at that point in

8  time, unless there is some case law that says that it has to be

9  timely, I will address the matter and expect briefing from

10  counsel for each of the witnesses and the Plaintiff and

11  Defendant if they deem it appropriate.

12         So does everybody understand what my order is?

13         Essentially, things are on hold until I hear from

14  either the Senate or the House who either intervenes or makes

15  some other appropriate motion to advise the Court of why these

16  matters should be disclosed to their subcommittees or

17  committees.

18         MR. JIMENEZ:  Your Honor, I understand it clearly.

19         And in terms of memorializing this, I am happy to

20  order the transcript and just have it be available to the

21  parties.  I am also happy to have an order drafted if that is

22  what the Court would prefer.

23         THE COURT:  I am going to draft a short order.

24         You are welcome to have it transcribed and provide

25  that to the Senator and to the Congressman so that they can see

24

1    the arguments that were made and, you know, whether or not they

2    feel it is appropriate to come here in court.

3          I do not know whether or not a subpoena is necessary.

4    I am not addressing that today whether, you know, it would be

5    necessary for them to subpoena the documents, but because I

6    just have not received any briefing from them, other than I

7    have an opportunity to review a letter from Senator Grassley

8    that was dated August 31st.

9          All right.  Is there anything else I can help anybody

10   with today?

11         MS. EIKHOFF:  No, Your Honor.

12         MR. JIMENEZ:  Thank you, Your Honor.

13         MS. BOLGER:  Thank you, Your Honor.

14         THE COURT:  All right.  Nice to hear from you.

15         All right.  Court is in recess.

16         (Thereupon, the proceedings concluded.)

17

18

19

20

21

22

23

24

25

1

2                              CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5    accurate transcript of the audio recorded proceedings in the

6    above-entitled matter.

7

8

9

10
     10/02/18                    Bonnie Joy Lewis,
11                         Registered Professional Reporter
                             CASE LAW REPORTING, INC.
12                           7001 Southwest 13 Street,
                           Pembroke Pines, Florida 33023
13                               954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25