## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
   Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
   Defendants.

**Case No.**

**0:17-cv-60426-UU**

## PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE THE EXPERT OPINIONS OF ANTHONY J. FERRANTE

### Introduction

███████████████ doesn't buy what it used to in an expert witness.  In this case, it apparently does not buy an expert opinion that does what it purported to set out to do, namely provide any admissible expert testimony that is actually related to the factual issues to be decided by the jury.  And so, recognizing apparently that former FBI agent Anthony Ferrante would be unable to find any evidence that would prove the truth of the actual defamatory statements published about Plaintiffs by Buzzfeed, Defendants instead instructed Mr. Ferrante to try to prove statements that, while not actually contained in the defamatory article, might be "close enough" so that no one would notice.  Specifically, whereas the defamatory statements accuse Mr. Gubarev *personally* of having been pressured by the FSB into using his companies to hack into the Democratic Party leadership as part of a plot to undermine the United States Presidential elections – Defendants instead charged Mr. Ferrante with ██████████████████████ ████████████████████████████████████████████████████████

The entirety of Mr. Ferrante's report, then, is based on proving facts that are not relevant to the

---

█ ████████████████████████████████████████████████████
█████████████████████████████████████████████

questions to be answered by the jury.  And, even if Mr. Ferrante had been investigating relevant questions, his report cannot support the opinions offered.  Because his report does not meet the requirements for an expert report articulated by the United States Supreme Court in *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) and the requirements of Rule 702 of the Federal Rules of Evidence, Plaintiffs move to exclude the expert report and opinions of Anthony J. Ferrante in their entirety.

**Argument**

## I.    <u>Legal Standard</u>

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court addressed the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable."  509 U.S. at 589.  "The trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."  *Id.* at 592.  *See*, *also*, *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004) ("The district court's role is especially significant since the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it.' Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case." (internal citation omitted) (quoting *Daubert*, 509 U.S. at 595)).

In *Kumho*, the Court extended Daubert to non-scientist experts and confirmed that the *Daubert* gatekeeping requirement is vital one. As the Supreme Court held in *Kumho Tire*:

> [T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the

2

same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho*, 526 U.S. at 152.

The Eleventh Circuit, in turn, developed a rigorous three-part test to determine whether to admit an expert report or opinion under *Daubert*. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (Rule 702 requires a "rigorous three-part inquiry"). "Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). *See*, *also*, *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.").

"Even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming his expert opinion must be sufficiently reliable under *Daubert* and its progeny." *Bowe v. Pub. Storage*, 2015 U.S. Dist. LEXIS 178180 at *18 (S.D. Fla. June 2, 2015). An expert's "rank speculation would only unfairly prejudice Plaintiffs by advocating for a certain result in the guise of offering expert opinions. This is unacceptable." *Id.* at *13.

"[A]n expert must, in his report, provide 'a complete statement of all opinions the witness will express *and the basis and reasons for them*.'… [A] naked reference to his own background … is no showing of reliability at all…." *Harrison v. Royal Caribbean Cruises, Ltd.,* 2013 U.S. Dist. LEXIS 202067, at *7 (S.D. Fla. Nov. 7, 2013) (quoting Fed.R.Civ.P. 26(a)(2)(B)(i)) (emphasis in original).

Where a witness is "'relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, *why* that experience is a sufficient basis for the opinion, and *how* that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."'" *Affiliati*

*Network, Inc. v. Wanamaker*, 2017 U.S. Dist. LEXIS 217403, at *7-8 (S.D. Fla. Aug. 14, 2017) (quoting *Frazier*, 387 F.3d at 1261).

## II.   The Expert Testimony of Anthony J. Ferrante is Unreliable and Will Not Assist the Trier of Fact.

The Ferrante Report, attached hereto as <u>Exhibit 1</u>, is particularly remarkable in one important respect ███████████████████████: despite being offered as an expert witness to provide evidence of the truth of the statements made about Plaintiffs in the December Memo, Mr. Ferrante acknowledges outright that he was not actually asked to render an opinion on – and does not render an opinion on – the allegations made in the December memo concerning Plaintiffs.  Instead, apparently knowing that they would find no evidence to support the actual allegations made in the December Memo, Defendants charged Mr. Ferrante with finding evidence of what they believed he could find (despite it not being the same as the defamatory statements made) and, moreover, instructed him specifically to focus solely on the evidence that painted Plaintiffs in a negative light, and to ignore evidence to the contrary.

More specifically, the December Memo alleged that:

> [O]ver the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership.  Entities linked to one Aleksei GUBAROV [sic] were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation.  In Prague, COHEN agreed contingency plans for various scenarios to protect the operations, but in particular what was to be done in the event that Hillary CLINTON won the presidency. It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and that cyber and other operators were stood down / able to go effectively to ground to cover their traces.

*See* December Memo, attached as <u>Exhibit 2</u>.

In other words, what the December Memo *actually* accused Plaintiffs of was: (1) having been personally involved, albeit under duress in (2) using botnets and porn traffic to (3) transmit viruses, plant bugs, steal data, and conduct "altering operations" against the Democratic Party leadership. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ pp. 44-47 (statement that "Entities linked to

one Aleksei GUBAROV [sic] were involved and he and another hacking expert, both recruited

under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation" was

outside the scope of the assignment); ████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████

As an overarching matter, then, Mr. Ferrante's report should be deemed inadmissible inasmuch as it fails to meet the relevance requirements of *Daubert*.  To the extent that Defendants are attempting to prove the truth of the statements contained in the December Memo, those statements accuse the defendants of ***directly*** hacking the Democratic Party leadership under pressure from the FSB. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ As a result, not only would Mr. Ferrante's testimony "fail to assist" the factfinder in determining an actual "fact in issue," it would actively mislead the jury into believing that Mr. Ferrante had discovered evidence of the truth of the actual statements contained in the December Memo, where he clearly did not.  As such, his testimony must be excluded.  *See United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) ("Because of the powerful and potentially misleading effect of expert evidence ... sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403.  Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury....  Indeed, 'the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than over lay witnesses.' ...  Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." (citations omitted)); *Bowe v. Pub. Storage*, 2015 U.S. Dist. LEXIS 178179, *12 (S.D. Fla. June 2, 2015) (rejecting expert testimony where expert's opinion "does not test the relevant inquiry" and is therefore "irrelevant to any issue before the jury" and "because they have very little probative value which would be substantially outweighed by their potential to confuse the jury").

In addition to the above reasons why Mr. Ferrante's report must be rejected in its entirety, the individual opinions proffered by Mr. Ferrante must additionally be rejected for the following reasons.

**A.** █████████████████



████████████ And, although Plaintiffs would obviously want to point this fact out to the jury if Mr. Ferrante were allowed to testify to the jury at all, this conclusion simply serves to emphasize how Mr. Ferrante's report does nothing to prove the truth of the allegations contained

_____

█ ██████████████████

in the December Memo, which are the subject of this lawsuit.  As such, Mr. Ferrante's testimony
should be excluded in its entirety.

**B.**





As this Court held in *Bowe v. Pub. Storage*, 2015 U.S. Dist. LEXIS 178180 (S.D. Fla. June 2, 2015):

> Skorheim's opinions are also misleading because they are presented as expert analysis where they are instead hypothetical musings not grounded in actual facts or based on any specific methodology, and appear to be Skorheim's self-directed Socratic inquiry.  Finally, Skorheim's opinion that Plaintiffs have not produced sufficient evidence to fairly establish and estimate economic harm is a decision that the jury can, and will, decide based on the evidence presented.  Skorheim's rank speculation would only unfairly prejudice Plaintiffs by advocating for a certain result in the guise of offering expert opinions.  This is unacceptable.  *See Evans v. Mathis Funeral Home, Inc.,* 996 F.2d 266, 268 (11th Cir. 1993) (affirming exclusion of expert testimony where testimony was within common knowledge of jurors and testimony was based on assumptions that were not supported by the record); *King v. Cessna Aircraft Co.,* No. 03-20482-CIV, 2010 U.S. Dist. LEXIS

50728, 2010 WL 1980861, at \*5 (S.D. Fla. May 18, 2010) ("We thus cannot cast a blind eye to such rank speculation being presented to our jury under the guise of reliable expert testimony.").

*Id.* at \*13.  *See*, *also*, *Eberli v. Cirrus Design Corp.,* 615 F. Supp. 2d 1357, 1365 (S.D. Fla. 2009) ("The fact that the opinion itself merely lists potential causes instead of drawing any conclusion underscores how speculative it is.").

**C.**  ███████████████████

███████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████

████████████████████████████████

███████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

███████████████  This is, then, not simply rank speculation, but rank speculation on an issue that (even if actual evidence supported Mr. Ferrante's conclusion) is still ***not*** what was actually alleged about the Plaintiffs in the December Memo.

**D.**  ███████████████████

███████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████

████████████████████████████████

███████████████████████████████████

█████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

███████████████████████████████

████████████████████████████████████

10



In reaching this conclusion, Mr. Ferrante offers no explanation for what experience he is drawing upon, or how or why it applies to the facts at issue.  Instead, he is asking the Court to "take the expert's word for it."  *See*, *e.g.*, *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004) ("[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient



basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *Witt v. Stryker Corp.,* 648 F. App'x 867, 873 (11th Cir. 2016) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.' ...  If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong.").  Here, too, Mr. Ferrante's conclusion must be excluded.

**E.** 

Mr. Ferrante does not appear to have any expertise concerning the running of a hosting company or what contracts hosting companies should enter into, nor does he cite any source for his opinion or explain how his expertise might make this opinion useful to a

jury.  In short, Mr. Ferrante's random conclusion does not comport with the requirements of *Daubert* in any respect.

**F.** 

Ultimately, for each of these alleged malicious events, Mr. Ferrante fails to discuss the reliability of the sources relied upon and, for the most part, fails to demonstrate how he applied his expertise to the facts alleged, as opposed to simply repeating statements made by others about wholly irrelevant matters.

**G.    Statements from Deposition Testimony**

Mr. Ferrante includes a section in his report, pages 28-31, where he reviews the deposition testimony of two of XBT's personnel, Mr. Konstantin Bezruchenko and Mr. Marc Goederich, and comes to the conclusion that ████████████████████████████ The entirety of this section should be

excluded for two reasons.  First, the section is irrelevant to the subject at hand – specifically whether Webzilla/XBT "had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership," which are the defamatory statements in this action.  *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999) ("The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value.").  Second, the entire section is nothing more than Mr. Ferrante claiming that the Court should "trust him" that ███████████████████████████████

███████     Where a witness is "'relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply "taking the expert's word for it."'"  *Affiliati Network, Inc. v. Wanamaker*, 2017 U.S. Dist. LEXIS 217403, at *7-8 (S.D. Fla. Aug. 14, 2017) (quoting *Frazier*, 387 F.3d at 1261).  Mr. Ferrante has failed to do so and, as such, his testimony here too must be rejected.

     **H.**  ███████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

14



### Conclusion

For the reasons stated hereinabove and in accordance with *Daubert v. Merrill Dow Pharms., Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137 (1999) and FRE 702, this Court should exclude the expert report and opinions of Anthony J. Ferrante in their entirety.

Dated: October 15, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com

*Attorneys for Plaintiffs*

# Exhibit 1
# [REDACTED]

Exhibit
2

COMPANY INTELLIGENCE REPORT 2016/166

## US/RUSSIA: FURTHER DETAILS OF SECRET DIALOGUE BETWEEN TRUMP CAMPAIGN TEAM, KREMLIN AND ASSOCIATED HACKERS IN PRAGUE

### Summary

- TRUMP's representative COHEN accompanied to Prague in August/September 2016 by 3 colleagues for secret discussions with Kremlin representatives and associated operators/hackers

- Agenda included how to process deniable cash payments to operatives; contingency plans for covering up operations; and action in event of a CLINTON election victory

- Some further details of Russian representatives/operatives involved; Romanian hackers employed; and use of Bulgaria as bolt hole to "lie low"

- Anti-CLINTON hackers and other operatives paid by both TRUMP team and Kremlin, but with ultimate loyalty to Head of PA, IVANOV and his successor/s

### Detail

1. We reported previously (2016/135 and /136) on secret meeting/s held in Prague, Czech Republic in August 2016 between then Republican presidential candidate Donald TRUMP's representative, Michael COHEN and his interlocutors from the Kremlin working under cover of Russian 'NGO' Rossotrudnichestvo.

2. ███████████████████████████████████████████████

   provided further details of these meeting/s and associated anti-CLINTON/Democratic Party operations. COHEN had been accompanied to Prague by 3 colleagues and the timing of the visit was either in the last week of August or the first week of September. One of their main Russian interlocutors was Oleg SOLODUKHIN operating under Rossotrudnichestvo cover. According to ███████████, the agenda comprised questions on how deniable cash payments were to be made to hackers who had worked in Europe under Kremlin direction against the CLINTON campaign and various contingencies for covering up these operations and Moscow's secret liaison with the TRUMP team more generally.

3. ███████████ reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership. Entities linked to one Aleksei GUBAROV were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation. In Prague, COHEN agreed contingency plans for various scenarios to protect the operation, but in particular what was to be done in the event that Hillary CLINTON won the presidency. It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and other operators were stood down/able to go effectively to ground to cover their traces. (We reported earlier that the involvement of political operatives Paul MANAFORT and Carter PAGE in the secret TRUMP-Kremlin liaison had been exposed in the media in the run-up to Prague and that damage limitation of these also was discussed by COHEN with the Kremlin representatives).

4. In terms of practical measures to be taken, it was agreed by the two sides in Prague to stand down various "Romanian hackers" (presumably based in their homeland or neighbouring eastern Europe) and that other operatives should head for a bolt-hole in Plovdiv, Bulgaria where they should "lay low". On payments, IVANOV's associate said that the operatives involved had been paid by both TRUMP's team and the Kremlin, though their orders and ultimate loyalty lay with IVANOV, as Head of the PA and thus ultimately responsible for the operation, and his designated successor/s after he was dismissed by president PUTIN in connection with the anti-CLINTON operation in mid August.

**13 December 2016**

35

Exhibit 3
[REDACTED]

# Exhibit 4
# [REDACTED]