**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

    Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.

_____/

**DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE EVIDENCE AND
ARGUMENT REGARDING ALLEGED LOST BUSINESS VALUE, "BENEFIT TO
BUZZFEED," AND LOST PROFITS AS MEASURES OF CLAIMED DAMAGES, AND
INCORPORATED MEMORANDUM OF LAW**

    Defendants BuzzFeed, Inc. and Ben Smith move this Court *in limine* to exclude all

documents, testimony, and argument regarding the following as a measure of damages:

(a) XBT's alleged "lost business value"; (b) alleged "benefit to BuzzFeed" of publishing the

statements at issue as a measure of damages; and (c) XBT's alleged "lost profits."

**ARGUMENT**

    As set forth in Defendants' *Daubert* Motion to Exclude Jeff Anderson (Dkt. 260),

Plaintiffs are seeking to recover "lost business value" as a measure of XBT's damages in this

action, and have further employed their expert to identify approximately $14 million in "benefit

to BuzzFeed" as a measure of damages.  Each of these proposed measures of damages are legally

impermissible.  Moreover, to the extent that Plaintiffs will try to recycle their impermissible "lost

business value" calculation as an estimation of general damage, such a calculation is more

prejudicial than probative and should be excluded pursuant to Fed. R. Evid. 403.  While

Defendants' *Daubert* motion is specifically directed at Mr. Anderson, this motion seeks to

exclude such impermissible evidence regardless of the witness by which it is offered, as well as

to exclude attorney argument to the jury on these theories of damages.

    Further, because Plaintiffs have *only* quantified their alleged damages based on these two

theories – and have not disclosed any calculation of damages based on an alternative theory such

as "lost profits" – Plaintiffs may not change course at trial and seek to argue a novel theory of damages.  Accordingly, Defendants ask this Court to preclude Plaintiffs from offering a theory of "lost profits" – or any other theory not disclosed and quantified during discovery – as a measure of damages at trial.

### A.        Plaintiffs May Not Employ "Lost Business Value" as a Measure of Damages

Just as "lost business value" is an impermissible measure of damages for Mr. Anderson's testimony, *see* Dkt. 260 at 12-13, plaintiffs may not seek to prove this theory of damages through fact witnesses or offer it through attorney argument.  Unless a business has suffered "complete destruction," its economic damages must be measured as lost profits.  *See In re Sherwood Invs. Overseas Ltd.*, 2016 WL 5719450, at *9-10 (M.D. Fla. Sept. 30, 2016) (damages calculated as "lost profits" are only available to continuing businesses and "lost business value" is only available where there has been complete destruction of a business).  *See also Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2009 WL 10668573, at *2 (S.D. Fla. Apr. 13, 2009) ("It is well established that, under Florida law, '[i]f a business is completely destroyed, the proper measure of damages is the market value of the business on the date of the loss ... [but if] the business is not completely destroyed, then it may recover lost profits.'") (citation omitted); *Montage Grp., Ltd. v. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 193 (Fla. 2d DCA 2004) ("If a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss.").

XBT has obviously not suffered total destruction.  It recorded approximately $58.4 million in revenue in 2017 (an increase of 17.5% over 2016)[1] and Mr. Anderson estimated it to be worth $415 million as of January 2018.  Accordingly, XBT may not seek to recover "lost business value" as a measure of damages at trial.[2]

---

[1] Ex. 1 (XBT 2017 audited financials) at 5.

[2] Notably, Plaintiffs did not offer a proposed jury instruction as to "lost business value" as a measure of damages in connection with the parties' Joint Pretrial Stipulation.  *See* Dkt. 253-7 at 10-11.

**B.**     **Plaintiffs May Not Employ "Benefit to BuzzFeed" or "Unjust Enrichment" as a Measure of Damages**

Similarly, just as Mr. Anderson should be precluded from testifying about alleged "benefit to BuzzFeed" as a measure of damages, *see* Dkt. 260 at 13-14, Plaintiffs may not elicit the same impermissible measure through other witnesses or attorney argument.

This theory of damages would seek to disgorge from BuzzFeed, and enrich Plaintiffs, in the amount of the "benefit" BuzzFeed supposedly received from publishing the statements at issue. No matter what Plaintiffs attempt to call it, this is plainly a calculation of "unjust enrichment," which is an equitable remedy. *See High Frequency Prods., Inc. v. Wynn's Climate Sys., Inc.*, 892 F. Supp. 1515 (S.D. Fla. 1995), *aff'd*, 91 F.3d 167 (Fed. Cir. 1996); *see also Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). As an equitable remedy, unjust enrichment is not available where there is an adequate legal remedy. *High Frequency Prods.*, 892 F. Supp. at 1520. Plaintiffs are suing for defamation and seek almost $150 million, so they cannot allege they have no adequate remedy at law. Plaintiffs therefore may not also seek recovery for alleged unjust enrichment. *See Vandermus v. Milhous*, 2012 WL 12855474, at *4 (S.D. Fla. Aug. 14, 2012).

Indeed, courts specifically addressing claims for unjust enrichments awards in defamation cases have consistently rejected them because "there is an adequate remedy at law available for public figures – money damages for defamation." *Ventura v. Kyle*, 825 F.3d 876, 887–88 (8th Cir. 2016) (internal quotation marks and citations omitted), *cert. denied*, 137 S. Ct. 667 (2017).[3] Accordingly, Plaintiffs may not offer evidence or arguments of any alleged "benefit" to BuzzFeed or similar theories of unjust enrichment.

Further, Plaintiffs have articulated no theory of "unjust enrichment" stemming specifically from the publication of the allegedly defamatory statements. Rather, the only computation relating to this theory was proffered by Mr. Anderson, and that was based on the alleged benefit of publishing the entire Dossier, the article in which the Dossier was embedded,

---

[3] *See also Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172 (2d Cir. 2001) (defamation provides for an adequate legal remedy, consequently, equitable remedies are not appropriate); *Alberti v. Cruise*, 383 F.2d 268 (4th Cir. 1965) (defamation provides an adequate remedy at law); *McMahon v. Kindlarski*, 512 F.3d 983 (7th Cir. 2008); *Oorah, Inc. v. Schick*, 2012 WL 3233674, at *4 (E.D.N.Y. Aug. 6, 2012) ("Oorah may seek damages if the School commits libel or slander; as it failed to demonstrate the inadequacy of that remedy, equitable relief was inappropriate."), *aff'd*, 552 F. App'x 20 (2d Cir. 2014).

*plus* eight additional articles, none of which Plaintiffs have alleged to be defamatory in this action. *See* Dkt. 260 at 10-12, 14-15.

### C.    Plaintiffs May Not Change Course at Trial to Seek "Lost Profits" or Other Theories of Damages Not Disclosed in Discovery

On April 25, 2017, Plaintiffs served initial disclosures pursuant to Rule 26(a) stating that they were "unable at this time to present a full and accurate calculation of their damages arising from the actions and omissions of Defendants." Ex. 2 at 3. While "explicitly reserving the right to supplement these disclosures as further information comes to light and discovery continues," Plaintiffs stated that they suffered "damage to reputation/value" in an amount over $10 million; punitive damages in an amount over $10 million; and "emotional distress suffered by Gubarev" in an amount of at least $2 million. Plaintiffs further stated that they had "currently unknown" amounts of damages attributable to "marketing & PR costs," "lost client/profits," "damage to lender relationships," "other consequential damages," and "costs and attorney's fees." *Id.* at 4. Plaintiffs never served a supplemental or amended version of these disclosures.

At the status conference on January 10, 2018, the Court ordered Plaintiffs to provide, by the end of February 2018, "a damages analysis that identifies the element of damages and the source of the damage, and the amounts." Ex. 3 at 32:14-17.

On February 18, 2018, XBT served its third and final supplemental responses to Defendants' first interrogatories, which stated again that XBT "is unable at this time to provide a full accounting of all damages it has suffered as a result of the acts and omissions of Defendants, in part because damages are still ongoing." Ex. 4 at 2. On February 23, 2018, Plaintiffs served Mr. Anderson's expert report.

In its supplemental response to Interrogatory No. 10, XBT claimed that "the XBT family" of businesses lost "$8,327,325.70 in revenue as compared to December 2016." This number was apparently calculated by assuming that XBT's revenue would have stayed at least at the level of December 2016 for all future months, determining the difference in revenue between the December 2016 number and each month's revenue from January 2017 through July 2017, and adding those numbers together (which XBT considered "lost revenue"). XBT further stated that the "actual lost revenue" by XBT was "significantly higher" than that $8.3 million figure due to "the growth that XBT was experiencing." Ex. 4 at 3. XBT never quantified this higher "actual lost revenue" figure, and Mr. Anderson did not employ this method in his damages

analysis. *See* Ex. 5 (Anderson Dep.) at 62:21-63:9 (testifying that lost business value is "the only measure of damages I have presented").

XBT further stated that the $8.3 million "lost revenue" number was over-inclusive, since it "constitutes total loss from the defamatory actions of Defendants as well as Christopher Steele and Orbis Business Intelligence"; that "Plaintiffs do not seek to hold Buzzfeed responsible for the damages it suffered as an account of the actions and omissions of Christopher Steele and Orbis Business Intelligence"; and that "the damages at this time have not been apportioned." Ex. 4 at 3. XBT never supplemented its response to apportion these damages as promised, and Mr. Anderson testified that he did not make any effort to apportion damages between this case and Plaintiffs' suit against Mr. Steele and Orbis in the United Kingdom. Ex. 5 (Anderson Dep.) at 65:23-66:24.

In addition to the "lost revenue" figure, XBT stated that Plaintiffs "suffered damage to their reputation and value, which they estimate to be over $10,000,000, the precise amount of which will have to be determined by an appropriate expert." Ex. 4 at 3. The only damages expert that XBT disclosed was Mr. Anderson, and as noted above, he used "lost business value" as the only measure of damages. Finally, XBT stated that Plaintiffs "suffered damages to lender relationships, the dollar amount of which cannot at this time be determined by Plaintiffs themselves." *Id.* Plaintiffs never supplemented this response to identify a "dollar amount" attributable to this alleged "damage[] to lender relationships," and Mr. Anderson's report does not include such a calculation.[4]

Rule 26(a) requires disclosure of "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(e) requires parties to supplement disclosures made under Rule 26(a) or through responses to interrogatories or requests for production "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been

---

[4] Mr. Anderson admitted at his deposition that he did not conduct any independent investigation or speak with any lenders to determine whether there had, in fact, been *any* financial damage based upon lender relationships. Ex. 5 (Anderson Dep.) at 19:17-24:14,134:1-135:25, 137:21-148:15. Mr. Anderson admitted that he simply assumed that XBT had "trouble with banks" because XBT CFO Rajesh Mishra told him so (and he took Mr. Mishra's word for it), and based on his review of a single email between a Dutch bank and a Dutch Webzilla entity that is not a party to this case, where the bank simply asked for additional information as part of "know your client" protocols.

made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). *See also Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010). If a party fails to comply with Rule 26(a) or (e), the Court can forbid the use of "that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party in breach of Rule 26(a) or (e) bears the burden of establishing substantial justification or harmlessness to the opposing party." *Mortg. Payment Prot., Inc. v. Cynosure Fin., Inc.*, 2010 WL 11507658, at *2 (M.D. Fla. Nov. 5, 2010).

Plaintiffs have never disclosed an amount or computation of damages based upon a theory of "lost profits" at any point during discovery, including in their Rule 26(a) disclosures, their interrogatory responses, or their expert report. Plaintiffs' mere production of audited financial statements is not enough to satisfy Rule 26; Plaintiffs "may not shift to Defendants the burden of attempting to determine the amount of Plaintiff's alleged damages" and cannot satisfy Rule 26(a) simply by "providing–without an explanation–undifferentiated financial statements." *Azure LLC v. Figueras Seating U.S.A., Inc.*, 2014 WL 12512542, at *1 (S.D. Fla. Jan. 10, 2014). "Rather, Plaintiff must compute in dollars how much it claims for each category of damages." *Id.* "A damages computation is especially necessary when plaintiff seeks complex damages such as lost profits." *Water v. HDR Eng'g, Inc.*, 2011 WL 13176484, at *5 n.10 (M.D. Fla. May 11, 2011).

Accordingly, Plaintiffs should be precluded from seeking lost profits – or any other new category of damages not disclosed to Defendants in discovery – at trial. *See, e.g.*, *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 2010 WL 11506057, at *12 (S.D. Fla. Aug. 31, 2010) (precluding plaintiff from presenting evidence of lost profits at trial because it failed to serve disclosures detailing its computation of alleged lost profits during discovery); *Mortg. Payment Prot.*, 2010 WL 11507658, at *4 (granting motion to strike "lost profits" theory of damages newly added after the close of discovery); *Mee Indus.*, 608 F.3d at 1222 (upholding exclusion of plaintiff's "loss of goodwill" theory of damages where plaintiffs failed to disclose this theory until joint pretrial statement and failed to provide any computation of such damages); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 293–97 (2d Cir. 2006) (upholding exclusion of lost profits evidence based on lack of notice or computation of such damages).

Dated:  October 29, 2018        Respectfully submitted,

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 29th day of October, 2018.

By: /s/ Adam Lazier_____
Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com