**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.

    Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

    Defendants.

_____/

**Case No.:**
**17-cv-60426-UU**

**DEFENDANTS' RESPONSE TO PLAINTIFFS' *DAUBERT* MOTION**
**TO EXCLUDE THE EXPERT OPINIONS OF MICHAEL J. SULICK**

    Michael J. Sulick, former Director of the United States National Clandestine Service ("NCS") and former United States Central Intelligence Agency ("CIA") senior representative in Russia, is an expert in Russian intelligence and counterintelligence. He has been retained by Defendants BuzzFeed, Inc. and Ben Smith to provide the necessary political and historical context to the claims and defenses raised by the parties in this litigation. Based on his unique career expertise, his academic background focused on Russia, and years of research on current Russian Intelligence issues, Mr. Sulick is qualified to testify on the Russian interference in the US elections, espionage principles and methods, as well as the present and past state of the US, British, and Russian intelligence services. These subjects are key issues to understand the circumstances under which the Dossier was created by the former British Secret Intelligence Service (MI6) agent Christopher Steele, investigated by the U.S. government, and ultimately published by BuzzFeed. For these reasons, Plaintiffs' *Daubert* Motion to Exclude the Testimony of Michael J. Sulick should be denied.

## Michael J. Sulick's Background

Mr. Sulick is fluent in Russian and is a specialist in Russia and Eastern Europe. Mr. Sulick earned an M.A. and B.A. in Russian Studies from Fordham University, in 1971 and 1972 respectively, and a Ph.D. in Comparative Literature from the City University of New York in 1977. For more than 11 years, Mr. Sulick served in the CIA abroad: in the former Soviet Union, Asia, and Latin America. As a Senior CIA representative in Russia and Eastern Europe, he managed operations and foreign intelligence relationships during an era of dramatic post-Cold War change. In 1991, he was the first CIA officer to enter the Soviet Union to forge new relationships with intelligence services of the newly independent former Soviet Republic.

Mr. Sulick held a number of senior positions in the CIA. He was chief of the Central Eurasia Division responsible for intelligence collection operations and managing foreign liaison relationships in Russia, Eastern Europe and the former republics of the Soviet Union. He then became chief of CIA counterintelligence, where he strengthened collaboration with the United States Federal Bureau of Investigation ("FBI") on major espionage cases. In 2004, he served as the deputy in CIA's NCS.

In 2007, he became Director of the NCS, where he was responsible for coordinating the espionage activities of the U.S. Intelligence Community and managing global covert operations.

Mr. Sulick retired in 2010 and has since served as a national security consultant to US and foreign corporations and lectured on intelligence topics at various universities and public forums. He has written two books and multiple articles about espionage and Russian intelligence. *See, e.g.* Michael Sulick, *Spying in America: Espionage from the Revolutionary War to the Dawn of the Cold War* (Georgetown University Press reprint ed. 2014); Michael Sulick, *American Spies: Espionage against the United States from the Cold War to the Present* (Georgetown University

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

Press 2013).

## Legal Standard

The Federal Rules of Evidence "embody a strong preference for admitting any evidence that may assist the trier of fact" and have "a liberal policy of admissibility" with respect to expert testimony. *Langbord v. U.S. Dept. of the Treasury*, CIV.A. 06CV05315, 2009 WL 1312576, at *1–2 (E.D. Pa. May 7, 2009) (citing *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)).

Pursuant to Federal Rule of Evidence 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or *other specialized knowledge* will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added).

"[I]t is by now axiomatic" that a district court "enjoys considerable leeway" in making decisions regarding "the admissibility of expert testimony and the reliability of an expert opinion." *United States v. Frazier*, 387 F.3d 1244, 1258-59 (11th Cir. 2004) (citing *Kumho Tire Co., Ltd. v. CarMr.,* 526 U.S. 137, 142 (1999)). In determining the admissibility of expert testimony, a court must engage in a three-part inquiry and consider whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address;
(2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and
(3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

*Frazier*, 387 F.3d at 1260 (citing *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998)); *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005). These factors — qualification, reliability, and helpfulness (or fitness to the case)— are especially relevant to assess the admissibility of an expert whose role is to educate the factfinder about general principles. Fed. R. Evid. 702 advisory committee's note (2000 amends.).

The district court's exercise of its discretion, however, must not "supplant the adversary system or the role of the jury." *Frazier*, 387 F.3d at 1272 (citing *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1311 (11th Cir.1999)). "As the ultimate fact-finder, it is the jury that must determine, finally, where the truth in any case lies, and the district judge as gatekeeper may not usurp this function." *See id.* (citing Fed. R. Evid. 102 ("These rules shall be construed . . . to the end that the truth may be ascertained and proceedings justly determined.")).

## Discussion

### 1.  Mr. Sulick Is Qualified to Render his Opinion

To admit expert testimony, courts must first determine that the expert is qualified. *Frazier*, 387 F.3d at 1260. As the *Frazier* court observed, "experts may be qualified in various ways." *Id.* at 1260-61. "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Id.* Rule 702 emphasizes that expert status may be based on "knowledge, skill, *experience,* training, or education." Fed. R. Evid. 702 (emphasis added). The Committee Note to the 2000 Amendments of Rule 702 explained that "[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony." Fed. R. Evid. 702 advisory committee's note (2000 amends.).

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

Mr. Sulick testimony is based on his career expertise, his academic background, and his research on Russian intelligence issues. Mr. Sulick served 28 years in the CIA with a specialty in Russian intelligence and counterintelligence. As a long-time operations officer in the CIA, with two tours in Russia, the second of which as senior CIA representative, Mr. Sulick has the experience necessary to testify on the issues of Russian intelligence, counterintelligence and their modus operandi, including the history of Russian interference with US elections. Additionally, Mr. Sulick's academic credentials reflect that he has studied Russia extensively. Finally, he has and continues to research the issue of Russian intelligence, as reflected by his numerous publications and lectures on the subject. *See* List of Publications attached as **Exhibit A**.

Further, Mr. Sulick's multiple senior positions in the CIA, including as Head of the NCS, where he was in charge of coordinating the espionage activities of the U.S. Intelligence Community and managing global covert operations, gave him personal knowledge of the inner workings of intelligence communities, including the U.S. and the British intelligence.

For these reasons, Mr. Sulick is qualified to opine on the topics covered by his report.

**2. Mr. Sulick's Expert Testimony Is Reliable and Uncontroverted by Plaintiffs**

Once a trial court has established that an expert is adequately qualified, the court then must assess the reliability of the offered testimony. *Frazier*, 387 F.3d at 1260. To evaluate the reliability of the expert opinion, the trial court must consider, to the extent possible, the following *Daubert* criteria:

(1) whether the expert's theory can be and has been tested;
(2) whether the theory has been subjected to peer review and publication;
(3) the known or potential rate of error of the particular scientific technique; and
(4) whether the technique is generally accepted in the scientific community.

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). These factors, however, are "illustrative, not exhaustive" and "not all of them will apply in every case." *Frazier*, 387 F.3d at 1261-62. These factors may aid in determining reliability but "sometimes other questions may be more useful." *Id.* at 62. "To the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not automatically rendered unreliable by their non-susceptibility to empirical verification." *United States v. Levinson*, No. 10–80166–CR, 2011 WL 1467225, at *4 (S.D. Fla. Mar. 17, 2011) (citing *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009)). The reliability test is "flexible" and "[w]hether the *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co. v. CarMr.*, 526 U.S. 137, 153 (1999) ("[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."); *see also McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005).

It is also "well-established that an expert's reliable methodology may consist primarily of applying his personal knowledge and experience to the facts of a case." *See id.* (citing *Kumho,* 526 U.S. at 1560); *United States v. Poulsen*, 543 F. Supp. 2d 809, 811 (S.D. Ohio 2008) ("It is well established that experience-based testimony satisfies *Daubert's* reliability requirements"). When a witness' expertise is based purely on experience, a trial court should assess whether the expert's preparation is of a kind that others in the field would recognize as acceptable. *Frazier*, 387 F.3d at 1262 (11th Cir. 2004); *Poulsen*, 543 F. Supp. 2d at 809 (finding that defense expert's testimony on government's investigatory practices and techniques, which was not based on any scientific principles, but on his extensive experience investigating crime as an FBI agent, was not susceptible

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

to exclusion just because he failed to articulate a precise methodology that could be tested for its accuracy.)

Mr. Sulick's reliability is based on his experience as a CIA officer. During the 28 years spent working for the Agency, Mr. Sulick has gained insight into the world of espionage and exposure to the Russian intelligence gathering methods and active measures. *See Chavez v. Carranza*, 559 F.3d 486, 496-97 (6th Cir. 2009) (holding that Ambassador's expert testimony was admissible because it was "based on intelligence gathered by himself, his staff, and other government agents."). His testimony stems from his observation as CIA agent conducting secret operations, his oversight of the NCS, his frequent interactions with United States agencies such as the FBI or with the Congressional Intelligence Committees and his exposure to the historical and institutional knowledge of the CIA. As the former Director of the United States National Clandestine Service, the methods used by Mr. Sulick to analyze Russian intelligence are generally accepted in the intelligence community. *See United States v. Cordoba*, No. 12-20157-CR, 2012 WL 3620306, at *4 (S.D. Fla. Aug. 21, 2012) (admitting expert testimony as to general money laundering practices because "when the expert's reliability focuses on experience, courts 'particularly emphasize' general acceptance in the community."). Plaintiffs take issue with the fact that Mr. Sulick does not precisely identify the materials he relies on. *See* Plaintiffs' Daubert Mot. to Exclude Testimony of M. J. Sulick at 5. However, as noted above, when an expert report is based purely on experience, the trial court should only assess whether the expert preparation is "of a kind that others in the field would recognize as acceptable." *Frazier*, 387 F.3d at 1262. Social science "research, theories and opinions cannot have the exactness of hard science methodologies." "[P]eer review, publication, potential error rate, etc . . . are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

expert, rather than the methodology or theory behind it." *Id.* (citing *United States v. Hankey,* 203 F.3d 1160, 1169 (9th Cir. 2000)). Plaintiffs' concerns with Mr. Sulick's specialized knowledge and experience can be properly addressed on cross-examination and goes to the testimony's weight and not its admissibility. *Chery v. C.R. Bard, Inc.*, 17-60637-CIV, 2017 WL 7726741, at \*2 (S.D. Fla. Apr. 18, 2017) (finding that the qualification standard for expert testimony is not stringent and so long as the expert is minimally qualified and objections to the level of the expert's expertise go to credibility and weight, not admissibility.'"); *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at \*3 (S.D. Fla. June 25, 2009); *Chavez*, 559 F.3d at 497 (affirming admission of expert who discussed "her credentials as an expert in the politics of Latin America including: the military strategies of both the Salvadoran military and security forces and the armed opposition, the command structure of the Salvadoran military, the corruption of the Salvadoran military and security forces, and the practice of death squads"); *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995) (admitting an expert in fume dispersal patterns based on his extensive practical experience gained through experience, training and education and noting the place to "quibble with [an expert's] academic training" is "on cross-examination" and goes to his "testimony's weight ... not its admissibility.").

In fact, Mr. Sulick's testimony is mostly uncontroverted by Plaintiffs. Plaintiffs did not deem necessary to take his deposition nor present a rebuttal expert.

### 3. Mr. Sulick's Expert Testimony is Helpful to the Trier of Fact

The third and final requirement for admissibility of expert testimony under Rule 702 is that "it assist the trier of fact." *Frazier*, 387 F.3d at 1262. With this inquiry, the court must ascertain that the expert testimony address "matters that are beyond the understanding of the average lay person." *Id*. (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

admissible if it offers something "beyond the understanding and experience of the average citizen")). The expert testimony must offer more than "what lawyers for the parties can argue in closing arguments." *Id.* at 63.

While the members of the jury have heard about the U.S., British, and Russian intelligence in spy fiction novels, in historical or biographical works, or in the news, few among them will have had exposure to accounts from actual CIA operations agents or top CIA officials. Especially in this context of polarized politics and widespread misinformation on social media, it is valuable to the jury to hear the opinion of an expert in espionage and intelligence operations.

Plaintiffs argue that Mr. Sulick's testimony is not relevant to the facts of the case. *See* Plaintiffs' Daubert Mot. to Exclude Testimony of M. J. Sulick at 1-12. Plaintiffs' argument is misplaced—Mr. Sulick's testimony is directly relevant to several key issues in this case. Mr. Sulick addresses the following topics:

    Section 3: Structure of the U.S. Intelligence
    Section 4: Structure of the British Intelligence
    Section 5: History of Russian Intelligence
    Section 6: Russian Intelligence Methods
    Section 7: Russian Active Measures
    Section 8: Active Measures in the U.S. Elections
    Section 9: Russian Use of Front Companies in Intelligence Operations
    Section 10: Russian Use of Civilians in Intelligence Operations
    Section 11: Putin's Rise through the KGB
    Section 12: Political Assassinations
    Section 13: DNC Hacking
    Section 14: Russian Monitoring of Internet Activity
    Section 15: Source Reliability
    Section 16: Building Source Trust; Protection of Sources

Knowledge of the structure of U.S. and British intelligence agencies is necessary to understand the ramifications of this case. Defendants are arguing that the Dossier was in possession of or being investigated by various U.S. agencies, including the FBI, the CIA and the NSA. One

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

of the key pieces of evidence for the defense is an affidavit from the FBI. Further, the Dossier was created by Christopher Steele, a former MI6 agent, who was collaborating with the FBI. Christopher Steele's background as a British intelligence officer is directly relevant to the reliability assigned by BuzzFeed or the various U.S. government agencies to his methods of information collection and the credibility of his findings.

The remainder of Mr. Sulick's expert testimony relates to Russian intelligence, its past and present modus operandi, and its active measures in the U.S. elections. These topics are directly relevant to the content of the Dossier, the circumstances under which it was created, and its credibility. Tellingly, even Plaintiffs concede that Russian intelligence methods or active measures "approach an issue that has some relevance to the allegations in this case." *See* Plaintiffs' *Daubert* Mot. to Exclude Testimony of M. J. Sulick at 7. They argue, however, that this evidence may confuse and mislead the jury and therefore should be excluded as prejudicial under Rule 403. *Id.* at 7-8, 10; Fed. R. Evid. 403. Plaintiffs argue that the jury may draw conclusions concerning Plaintiffs Aleksej Gubarev ("Alex Gubarev") and XBT Holding S.A. ("XBT") and Webzilla, Inc ("Webzilla"). *See* Plaintiffs' *Daubert* Mot. to Exclude Testimony of M. J. Sulick at 10. Plaintiffs' argument misses the mark. First, it is not the province of the court to usurp the role of the jury and it is entitled to determine where the truth lies. *Frazier*, 387 F.3d at 1272.

Second, Plaintiffs argue that Mr. Sulick's testimony should be excluded because it does *not* link his testimony to Alex Gubarev, XBT, or Webzilla. *See* Plaintiffs' *Daubert* Mot. to Exclude Testimony of M. J. Sulick at 4. There is no requirement that the testimony of an expert be directly tied to the facts of the case. On the contrary, it has been recognized that "it might . . . be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702, Committee

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

Note to the 2000 Amendments of Rule 702 ("For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case."); *Goodie v. ExxonMobile Oil Corp.*, CV 13-5228, 2014 WL 12768497, at *1 (E.D. La. Apr. 21, 2014) (finding that an expert may testify as to general principles regarding future wage calculations leaving to the jury the task of applying these principles to the facts presented through other evidence).

Further courts have recognized the benefit of providing historical expert testimony to assist the factfinder. *Chavez*, 559 F.3d at 497 (affirming admission of expert who discussed "her credentials as an expert in the politics of Latin America including: the military strategies of both the Salvadoran military and security forces and the armed opposition, the command structure of the Salvadoran military, the corruption of the Salvadoran military and security forces, and the practice of death squads"); *Langbord v. U.S. Dept. of the Treasury*, CIV.A. 06CV05315, 2009 WL 1312576, at *8 (E.D. Pa. May 7, 2009) (finding that an expert on the history of coins would help the jury understand facts not within their common knowledge in a dispute over allegedly stolen coins); *Denson v. Stack*, 997 F.2d 1356, 1363-68 (11th Cir. 1993) (discussing historical testimony on navigability of Florida's Waccasassa River in 1845 in a case involving water rights); *Oneida Indian Nation of Wisconsin v. State of N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984) (discussing the need for expert testimony on the historical events in a case where native American were seeking the invalidation of purchase of land); *Rose v. Am. Tobacco Co.*, 3 Misc. 3d 1103(A), 787 N.Y.S.2d 681 (Sup. Ct. 2004) (discussing the testimony of a historian on the issue of public awareness and popular understanding of the relationship between cigarette smoking and disease in a tobacco case).

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

The testimony of Mr. Sulick will inform the trier of fact as to the practices of intelligence agencies beyond what is generally understood by the general population. As such, Mr. Sulick's expert testimony will be helpful to the trier of fact and should be admitted.

## **Conclusion**

For these reasons, this Court should allow the expert testimony of Mr. Sulick and deny Plaintiffs' *Daubert* Motion. In the alternative, Plaintiffs' request an opportunity to amend and supplement Mr. Sulick's report with additional information regarding the methodology employed and the sources used.

Dated:  October 29, 2018

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

Respectfully submitted by:

Davis Wright Tremaine, LLP
1251 Avenue of the Americas, 21ˢᵗ Floor
New York, New York 10020
Tel:     (212) 489-8230

By: /s/ Katherine M. Bolger
        Katherine M. Bolger, Esq.
        Adam Lazier, Esq.
        Nathan Siegel, Esq.
        katebolger@dwt.com
        adamlazier@dwt.com
        nathansiegel@dwt.com

-and-

Black, Srebnick, Kornspan & Stumpf, P.A.
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel:     (305) 371-6421

By: /s/ Jared Lopez
        Roy Black, Esq.
        Florida Bar No. 126088
        Jared Lopez, Esq.
        Florida Bar No. 103616
        rblack@royblack.com
        jlopez@royblack.com
        civilpleadings@royblack.co

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

        Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

        Defendants.

                              /

## CERTIFICATE OF SERVICE

I CERTIFY that the foregoing was served this 29th day of October, 2018, to all persons

listed below via email.

By: /s/     Jared Lopez
           Jared Lopez, Esq.

Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com

matt@bostonlawgroup.com

Brady J. Cobb (Fla. Bar No. 031018)
Dylan Mr. Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
dfulop@cobbeddy.com
bcobb@cobbeddy.com

*Attorneys for Plaintiffs*

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone 305-371-6421 • Fax 305-371-6322 • www.RoyBlack.com