**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.
_____/

**DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO PRECLUDE PLAINTIFFS FROM OFFERING HEARSAY EVIDENCE IN SUPPORT OF CLAIMED DAMAGES AND INCORPORATED MEMORANDUM OF LAW**

Although Plaintiffs claim vast sums of damages in this case, they took no discovery of a single customer, supplier, business partner, banker, or lender who they claim stopped or altered their way of doing business with them.  Nor have they identified any witnesses who would provide such testimony at trial.  Instead, Plaintiffs intend to rely on hearsay evidence to prove injury to their reputation and other damages, including pecuniary damages.  This they may not do.

Defendants therefore seek to exclude hearsay evidence introduced to support Plaintiffs' claim of damages.  Such evidence includes, but may not be limited to, (1) statements attributed to lenders, such as credit facilities and banks, to the effect that credit lines for various subsidiaries of Plaintiffs were frozen or otherwise affects as a result of the Dossier's publication, (2) statements attributed to lenders, such as banks and credit facilities, that Plaintiffs or some of their subsidiaries were too high risk as a result of their connection with the Dossier, or (3) statements attributed to third parties regarding the reputation of Plaintiffs and/or various subsidiaries following the publication of the Dossier.  As such evidence is categorically inadmissible and any purported probative value would be substantially outweighed by its prejudicial effect, Plaintiffs should be precluded from introducing it in these proceedings.

## FACTUAL BACKGROUND

Plaintiffs' claims for damages in this matter allege, in part, that they lost business value and suffered reputational injury as a result of Defendants' publication of the Dossier. *See, e.g.,* Ex. 1 (Anderson report) at 7-12. When substantiating and offering evidence in support of their claim for these damages through written discovery, depositions, and their designation of exhibits for trial, Plaintiffs repeatedly relied on impermissible hearsay. For example, as purported proof of lost financing opportunities, Gubarev stated the following in a written discovery response:

> In or about October or November of 2016, [RCB CY Bank in Cyprus] granted me a loan of approximately $9,000,000 for investment in commercial properties in Russia and Cyprus. When I tried to utilize the loan in 2017, after the publication of the Dossier by Defendants, **the management of the bank informed me personally that the loan amount would not be released and that it will instead be postponed/frozen until such time as the court cases prove that the statements made about me in the Dossier were false. They said that my risk factors were now too high.** As a result of this postponement/freezing, I lost the opportunity to purchase some properties at a good price and I further lost the ability to make other beneficial investments. I cannot remember the name of everyone that I spoke to at the bank, but my major conversations were with Vladimir Zrazevskiy, the COO of the bank. We spoke in person at some time in March or April of 2017, and other times by phone, but I do not remember the exact dates. **He told me that the only way I would be able to get a loan from the bank would be if I won in this lawsuit** because, as it currently stands, the bank could not give me a loan because of high compliance issues and the allegations of criminal conduct that Buzzfeed published about me.
>
> …
>
> I have also applied for three more loans from Astrobank, Bank of Cyprus, and Societe Gerarale Bank (SGB). **SGB has said they would not give me a loan. Astrobank has also rejected me for the same reason as the other banks**. **Bank of Cyprus responses on October 22, 2017 via email that they will not be able to work with me.**

Ex. 2 at 2-3 (emphasis added). Additionally, Gubarev stated that lenders refused to provide financial support because Plaintiffs were too "high risk" following their association with the BuzzFeed publication.

> **Some banks were ready to close my account due to what they said were high risks associated with me after Buzzfeed's publication** of the false statements about me. The banks I had to speak to about the situation were RCB CY (with Vladimir Zrazevskiy), Hellenic Bank (George Georgiou) and CimBanque (Anna Romanova). Now it is extremely difficult or even impossible for me to open new

2

> bank accounts because of Know Your Client rules, compliance and regulations at banks. **Banks have also told me that it is not possible for me at this time to get any financial support or loans,** while they were ready to provide them to me before Buzzfeed's publication of false statements about me.

Ex. 3 at 3 (emphasis added).

Likewise, when asked to explain XBT's claim that lenders froze Plaintiffs' credit after the publication of the Dossier, CFO Rajesh Mishra testified that this claim was based only on comments and/or inaction by the lending companies.

> Q.  We'll talk about those in a second, but are there any creditors outside of the Netherlands that you remember freezing credit or taking any other action?
>
> A.  I think some of them from U.S. I don't remember the name, but they made, after that, it was very difficult to get new lease. **Whenever we contacted to the leasing company, they talk and at the last moment they say, can you comment to me about what is an Internet dossier, and they hand up after and never respond back.**

Ex. 4 (Mishra Dep.) at 193:15-24 (emphasis added). Likewise, in the Joint Pretrial Stipulation Plaintiffs have identified numerous exhibits they intend to introduce at trial, which consist of e-mails from bankers and lenders. *See* Plaintiffs' Exhibit Nos. F1-F21, G21-23, F50-53, F60-62.

With respect to alleged harm to his reputation, and that of his businesses, Gubarev again relied on hearsay statements:

> My reputation has been tarnished as a result of Buzzfeed's publication of the false statements about me. **People, particularly those that I worked with, now question my integrity**. . . . Although some of them understood the situation, **they told me that they will place a freeze on growing their business with me and my companies because of the high risks and concerns**. . . . Some long-term **business associates have asked us to remove any traces of our association with them because they are afraid to be connected with Buzzfeed's false story about me and my businesses** – specifically, on January 25, 2017, Telin, a business we have worked with in Singapore emailed us to ask us to remove evidence of affiliation. **I have also had inquiries from almost all of XBT's vendors asking about the allegations in the Dossier**. Specifically, I can remember having conversations with Dell and Level3 Communications about it.

Ex. 2 at 4-5 (emphasis added). Along the same lines, Plaintiffs have identified text messages, emails, and other similar communications from friends, associates, and family members to Gubarev. *See* Plaintiffs' Exhibit Nos. D4, F62, N26-29.

3

These hearsay statements were expressly relied upon by Plaintiffs' damages expert Jeffrey Anderson in preparation of his report and opinion.  For example, Mr. Anderson declares that "XBT suffered increased bank scrutiny following the publication of the Defamatory Article. Their bank accounts in multiple countries were frozen … the banks dramatically increased their scrutiny on potential new clients … driving away many clients in the process."  Ex. 1 (Anderson report) at 6-7.  As he testified to at his deposition, these statements were based only on the hearsay statements either as reported to Anderson by XBT CFO Mishra and other members of XBT or as set forth in Plaintiffs' Complaint.  Ex. 5 at 19:17-25:23; 132:11-140:2.

## ARGUMENT

Hearsay evidence, other than that which falls within limited and strictly imposed exceptions, is universally precluded by courts.  Plaintiffs are subject to the same restrictions barring the use of hearsay evidence as any other party to a judicial proceeding.  Nonetheless, Plaintiffs' written discovery responses, deposition testimony, and the report of their damages expert indicate that they intend to rely heavily on hearsay evidence to support their claim of damages against Defendants.

Specifically, Defendants anticipate that Plaintiffs will seek to introduce inadmissible hearsay testimony regarding statements purportedly from banks, creditors, and other business associates in support of Plaintiffs' claim that they suffered lost business value, reputational harm, or were otherwise damaged as a result of BuzzFeed's publication of the Dossier.  For the reasons set forth below, the Court should exclude such evidence.

Hearsay is "a statement that the declarant does not make while testifying at the current trial or hearing ... offer[ed] in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  In the absence of a procedural rule or statute, hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804, or 807.  Fed. R. Evid. 802.  Should Plaintiffs offer the anticipated hearsay testimony at trial, it would indisputably be for the proof of the matter asserted – that Plaintiffs in fact suffered lost business value, business opportunities, and reputational harm as a result of the publication of the Dossier.  Any other purpose for which the statements could be offered would

be completely irrelevant to the issues at trial and would thus be inadmissible under Fed. R. Evid. 402.[1]

The traditional justification for excluding hearsay – that it is inherently untrustworthy as a result of the fact that it has not been subjected to the traditional means of exposing deceit or inaccuracy – is particularly relevant in this case. While Plaintiffs claim between $32 and $137 million in lost business value, Plaintiffs admit that they cannot point to a single client they lost as a result of Defendants' publication of the Dossier. *See* Ex. 4 (Mishra Dep.) at 183:14-17 (Q: "[C]an you identify any specific customers that any XBT subsidiary lost because of the dossier story?" A: "No, I can't. I don't know."); *see also Cont'l Nut Co. v. Robert Berner Co.*, 393 F.2d 283, 286-87 (7th Cir. 1968) (business lost allegedly as a result of libel not compensable where "plaintiff has not produced the testimony of a single customer or former customer"). Instead, as reflected in Plaintiffs' deposition testimony and proposed exhibits, Plaintiffs offer only alleged statements by third-parties, which Plaintiffs offer as evidence that the publication of the article caused Plaintiffs to lose financing and other business opportunities, ultimately leading to its "lost business value" and reputational harm.

Plaintiffs' proffered testimony that lenders froze Plaintiffs' credit as a result of the Dossier's publication, that Plaintiffs were considered too risky to banks and creditors as a result of the Dossier, and that Plaintiffs' reputation suffered due to the Dossier's publication is impermissible hearsay under Fed. R. Evid. 801(c). The testimony itself is hearsay as it is out of court statements which Plaintiffs will offer to prove the truth of the matters asserted, *i.e.*, that banks in fact did freeze Plaintiffs' loans as a result of the Dossier's publication, that lenders considered Plaintiffs too risky to do business with because of Plaintiffs' association with the Dossier, and that Plaintiffs lost financing opportunities and clientele because of their affiliation with the Dossier. Plaintiffs cannot establish that the statements meet any exception to the hearsay rule under Rules 803 or 804(b) (assuming those witnesses are unavailable).

Courts have excluded as inadmissible hearsay exactly the type of evidence Plaintiffs seek to admit, such as alleged communications from bankers:

> Here, the Affidavit describes conversations that Ms. Taylor says she had with a banker about plaintiff. And, plaintiff offers these statements to prove damage to

---

[1] There are also other grounds to exclude much of this evidence set forth in other motions *in limine*, such as the fact that much of it relates to subsidiaries other than the named Plaintiffs. This motion addresses only reasons to exclude evidence based on the hearsay rule.

5

> his reputation. The statements thus are out-of-court written statement[s] ... now offered to prove the truth of the matter asserted. Plaintiff offers no exception to the hearsay rule that would permit the court to consider these statements on summary judgment. The court thus concludes that the statements are inadmissible hearsay and excludes them.

*Clark v. Time Inc.*, 242 F. Supp. 3d 1194, 1204 (D. Kan. 2017) (alteration in original; internal quotation marks and citations omitted). *See also Sandidge v. Fed. Nat'l Mortgage Ass'n*, 2017 WL 2362016, at *9 (N.D. Tex. May 31, 2017) (excluding as hearsay testimony claiming others said negative things about plaintiff), *aff'd*, 722 F. App'x 389 (5th Cir. 2018); *Jackson v. Quebecor World (USA), Inc.*, 2008 WL 4372368, at *3 (W.D. Okla. Sept. 23, 2008) ("Plaintiff's effort to identify who said what to whom, which allegedly resulted in lost employment opportunities, damage to her reputation, and emotional distress is based wholly on speculation and hearsay evidence.").

Finally, any purported probative value of this testimony is substantially outweighed by its prejudicial effect. "[J]ustice requires that the testimony of the witnesses be given in open court, under oath, and subject to cross-examination." *Gillin v. Fed. Paper Bd. Co.*, 479 F.2d 97, 99 (2d Cir. 1973) (quoting the district court's opinion, 52 F.R.D. 383, 385 (D. Conn. 1970)). Here, none of three requirements would be met if the hearsay testimony was permitted. Defendants will have no opportunity to cross-examine the declarants of these hearsay statements to confirm whether in fact (1) they did freeze Plaintiffs' credit, or if so (2) for how long and (3) that the decision to do so was based on Plaintiffs' association with the Dossier.[2] Likewise, there will be no opportunity for the jury to observe the demeanor and otherwise assess the credibility of the purported source of the hearsay statement. Finally, the statements would be introduced into evidence without being made under oath—unlike all other testimony introduced at trial. Without these safeguards to ensure that the truthfulness of the statement can be fairly evaluated, Defendants will be substantially prejudiced.

## CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that the Court preclude Plaintiffs from introducing any hearsay evidence in support of their claimed damages.

---

[2] For example, Mishra testified that all the examples of supposed credit freezes or queries he pointed to were resolved within a matter of a weeks or a month after the Dossier was published. Ex. 4 at 193:18-195:18, 204:20-205:16.

Dated:  October 29, 2018	Respectfully submitted,

<div style="margin-left: 3em;">

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 29th day of October, 2018.

By: /s/ Adam Lazier
Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com