**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.
_____/

**DEFENDANTS' MOTION *IN LIMINE* NO. 10
TO HAVE THE JURY REVIEW THE ARTICLE AND DOSSIER AND FOR THE
COURT TO DELIVER PRELIMINARY INSTRUCTIONS PRIOR TO OPENING
STATEMENTS, AND INCORPORATED MEMORANDUM OF LAW**

      Defendants BuzzFeed, Inc. and Ben Smith respectfully submit this motion *in limine* requesting that the Court direct the jurors, upon being seated, to read the Article and Dossier in their entirety, and that the Court instruct the jury on the law to be applied in this case prior to opening statements.

**PRELIMINARY STATEMENT**

      By now, the Court is well aware that this is not a run-of-the-mill tort case.  It involves a 35-page document that has dominated this country's politics and headlines for almost two years, politically explosive allegations, and constitutionally-based defenses.  Experience teaches that juries in defamation cases like this one are better able to perform their duties if given certain information at the outset of trial, rather than at its conclusion – specifically, if they are given access to the challenged publication and if they are instructed on key principles of the law that they will be asked to apply to the facts of this case.  These two case-management techniques have successfully been employed by other courts in similar circumstances, and will promote the efficient trial of this case and maximize the jury's ability to render a correct verdict.

# ARGUMENT

## A. The Jurors Should be Instructed to Read the Complete Text of the Article and Dossier Prior to Opening Statements

First, the Court should give the members of the jury exactly what BuzzFeed published – its article together with the complete Dossier – prior to opening statements, and instruct them to read both in full.

Both New York and Florida courts recognize that an allegedly defamatory publication must be assessed as a whole. *See, e.g.*, *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985) ("The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader."); *James v. Gannett Co.*, 40 N.Y.2d 415, 419-20 (1976) (holding that "[i]n analyzing the words in order to ascertain whether a question of fact exists for resolution upon trial, the court will not pick out and isolate particular phrases but will consider the publication as a whole," and the court must consider "the whole scope and apparent object of the writer," and read the paragraph at issue "as a whole with the entire article."); *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) ("[A] publication must be considered in its totality. 'The court must consider all the words used, not merely a particular phrase or sentence.' When words and pictures are presented together, each is an important element of what, *in toto,* constitutes the publication. Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines… A correlative principle is that the trial court must evaluate the publication, not by 'extremes, but as the common mind would naturally understand it.'") (citations omitted); *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 589 (Fla. 1st DCA 1983) ("It is sound principle that an allegedly defamatory publication must be considered in its entirety rather than with an eye constrained to the objectionable feature alone."). In other words, in deciding whether plaintiffs have satisfied the elements of a defamation claim, courts and juries look not to what the plaintiffs complain about, but what the defendants actually published. *See, e.g.*, *Parsi v. Daioleslam*, 595 F. Supp. 2d 99, 110 (D.D.C. 2009) (striking portion of complaint that "misconstrues defendant's actual statement"). For this reason, courts and juries will even read entire books to understand the statements at issue in context. *See, e.g.*, *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1226 (11th Cir. 2002); *Chau v. Lewis*, 935 F. Supp. 2d 644, 661 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014); *Price v. Viking Penguin, Inc.*, 676 F. Supp. 1501, 1504 (D. Minn. 1988), *aff'd*, 881 F.3d 1426 (8th Cir. 1989).

4845-7827-4681v.2 0100812-000009

In this case, many of the key issues that the jury will be asked to resolve require it to assess the contents of the Article and the Dossier – and not only the December memo that contains the statements Plaintiffs complain of.  Jurors should therefore be afforded the opportunity to review the publication at issue, in its entirety, for themselves *before* they hear opening statements or other descriptions of what BuzzFeed published from the mouths of counsel.  By allowing the jury to read the Article and Dossier before hearing from counsel, jurors can assess the evidence they receive and the arguments they hear in the context of their own evaluation of the relevant publication.  Such a procedure will further the overarching goal of a jury verdict based on an objective and reasoned evaluation of the evidence.  *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 106[02], at 106-17 (quoting McCormack, *Evidence* § 56, at 131 (1954)) (danger posed by prospect that fact-finder will misunderstand statement taken out of context "'is not completely averted by a later, separate instruction supplying of the relevant omitted parts.  The distorted impression may sometimes linger and work its influence at the subconscious level'").

An analogous procedure was employed successfully in *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394 (9th Cir. 1996).  *Masson* focused on a jury's assessment of the contents of a lengthy magazine article.  The plaintiff claimed that the article contained several specific quotations that had been falsely attributed to him.  The defendants countered that, when read in the context of the entire work, the quotations were substantially accurate.  The trial court determined that, to resolve this dispute intelligently, the jury should be instructed to read the article prior to hearing opening statements or receiving any other evidence.  Accordingly, after the jury was selected, each juror was provided with a copy of the article and instructed to read it prior to the commencement of trial.

In this case, Plaintiffs complain about a single paragraph that appears on the last page of the 35-page Dossier, and which was published by BuzzFeed in conjunction with an article that, among other things, explained to readers that the allegations in the Dossier were "unverified" and contained certain errors, and had become the subject of government activity.  Plaintiffs claim that the statements they complain of are false and that Defendants published them with actual malice.  Both sides, however, recognize that the publication as a whole is relevant here.  Plaintiffs rely on other parts of the Dossier, as well as the Article, in support of their actual malice argument.  *See, e.g.*, Dkt. 234-1 (Plaintiffs' Opposition to Motion for Summary

3

Judgment) at 17 (claiming that qualifications in article provide "direct evidence" of actual malice); *id.* at 19-20 (arguing that redactions of allegations regarding Michael Cohen's father-in-law from October 18 memo is evidence of actual malice).  In English proceedings seeking to enforce the subpoena against Christopher Steele, Plaintiffs' English counsel told the court that evidence about "'the dossier' as a whole could well be relevant or is relevant to the issues in the proceedings between the parties in the United States," and that "to undermine the credibility of 'the dossier' as a whole would go to undermine a part."  Ex. 1 (transcript of February 5, 2018 hearing) at 53.

Defendants likewise rely on the publication as a whole, arguing that that the context and qualifiers in the article establish both that they did not defame Plaintiffs and that, even if they did, they did not act with the requisite degree of fault.  *See, e.g.*, Dkt. 214 (Defendants' Motion for Summary Judgment) at 12-13, 15-16, 18-20.  Defendants also argue that their decision to publish was justified because "the specific statements about Plaintiffs were details within Steele's larger narrative [in the Dossier] of a cyber operation whose basic outline had been established in early January 2017," *id.* at 15, and because corroboration of other details in the Dossier supported the credibility of the document as a whole.  *See* Dkt. 214-2 (Defendants' Statement of Undisputed Material Facts) ¶ 58(i)-(l).

Accordingly, allowing jurors to review the article and the Dossier before they hear argument puts the jurors in the best position to determine the reaction of the average reader of BuzzFeed's publication.  As in *Masson*, the jury in this case should be instructed to review the publication in issue untainted by the arguments of counsel, before it undertakes to consider the merits of the parties' contentions concerning the tone, tenor, and meaning of that publication.

### B. The Court Should Instruct the Jury on the Law of Defamation Before Opening Statements

This Court should also give the jury impartial instructions about the law they are expected to apply, before it hears from counsel.  In *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987), then-Judge Ruth Bader Ginsburg observed that, in defamation cases where significant constitutional issues are to be determined by the jury, it is especially important for trial judges to "explain, instruct, or clarify continuously, from the commencement of the trial through to the jury's deliberations," including by "instructing the jury, in plain English, at the opening of the case and at appropriate times during trial, as well as at the close of the case."  *Id.* at 807 (Ginsburg, J., concurring) (footnote omitted); *see also Harte-Hanks Commc'ns, Inc. v.*

4

*Connaughton*, 491 U.S. 657, 666 n.7 (1989) (noting that trial judge can prevent juror confusion in defamation actions by offering instructions at appropriate junctures throughout trial); William W. Schwarzer, *Reforming Jury Trials*, 132 F.R.D. 575, 583 (1991) ("The case for giving the jury preliminary instructions at the start of the trial is compelling. . . . [N]ot giving preinstructions is like telling jurors to watch a baseball game and decide who won without telling them the rules until the end of the game.").[1]  The legal terminology that states the law of defamation and the defenses, both common law and constitutional, is not the stuff of daily life and will, as a practical matter, be foreign to most non-lawyers serving on a civil jury.  Accordingly, the jury's ability to perform its function properly in this case will be enhanced materially if it receives preliminary instructions concerning these concepts prior to opening statements.

For the same reasons, the jury should be provided with copies of the preliminary instructions and should be encouraged to consult them as they receive the evidence.  These steps will acknowledge the wisdom of then-Judge Ginsburg's observation that, in defamation cases such as this, the trial judge should take pains to "explain, instruct or clarify continuously, from the commencement of the trial through to the jury's deliberations," *Tavoulareas*, 817 F.2d at 807 (Ginsburg, J., concurring).  As Judge Ginsburg noted, "[t]he challenge for the trial judge" in explaining difficult legal concepts to a jury "demands attention throughout the proceedings.  It is

---

[1] *See also, e.g.*, Stephen Susman, Richard Lorren Jolly & Roy Futterman, *Innovating for Wise Juries: Preliminary Instructions*, Law360, July 14, 2017 ("By giving jurors preliminary instructions, the court provides jurors more context for what they are about to hear, so that they will be better able to understand, process, retain and prioritize information as it comes in."); Franklin Strier, *The Road to Reform: Judges on Juries and Attorneys*, 30 LOY. L.A. L. REV. 1249, 1256 (Apr. 1997) (benefits of pre-instruction include "improving juror integration of law and facts, enhancing juror recall, improving juror focus on the relevant issues, enhancing jurors' chances of applying the correct rule to the evidence, reducing juror questions during deliberations, creating more informed verdicts, and increasing juror satisfaction") (footnotes omitted); William H. Erickson, *Criminal Jury Instructions*, 1993 U. ILL. L. REV. 285, 291-92 (1993) ("By waiting until the end of the case to deliver instructions . . . a trial judge may deprive jurors of important guidelines to use in observing and evaluating the evidence and demeanor presented throughout the trial. . . . Moreover, instructions at the start of the trial may steer jurors away from irrelevant issues."); Joe S. Cecil, et al., *Citizen Comprehension of Difficult Issues: Lessons From Civil Jury Trials*, 40 AM. U. L. REV. 727, 770 (Winter 1991) ("Empirical research suggests that preliminary instructions increase juror satisfaction with trials, and assist jurors in following legal guidelines.") (footnotes omitted); Judge Mark A. Frankel, *A Trial Judge's Perspective on Providing Tools for Rational Jury Decisionmaking*, 85 NW. U. L. REV. 221, 225 (Fall 1990) ("There is no question in my mind that providing jurors with additional tools such as preliminary instruction . . . enhances the rational aspects of the jury's fact-finding role.").

not met by allowing jurors to listen, without education, as the evidence unfolds and then submitting the case for their general verdict after 'dous[ing] [them] with a kettleful of law during the charge that would make a third-year law-student blanch.'" *Id.* (citations omitted, alterations in original); *see also Harte-Hanks*, 491 U.S. at 666 n.7 (quoting, with approval, then-Judge Ginsburg's comments).  This is especially so where, as here, it appears that the trial will likely be lengthy and the evidence will be complex.  Pre-trial instructions will greatly assist the jurors as they begin the serious task of hearing the testimony and evaluating the evidence offered at trial.

## CONCLUSION

For all these reasons, Defendants request that the Court direct the jurors, upon being seated, to read the Article and Dossier in their entirety, and that the Court instruct the jury on the law to be applied in this case prior to opening statements.

Dated:  October 29, 2018

Respectfully submitted,

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

4845-7827-4681v.2 0100812-000009

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 29th day of October, 2018.

By: /s/ Adam Lazier
      Adam Lazier

**SERVICE LIST**

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

7