UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
    Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
    Defendants.

Case No.

0:17-cv-60426-UU

**PLAINTIFFS' MOTION *IN LIMINE* #2
TO PRECLUDE THE INTRODUCTION OF TESTIMONY OR EVIDENCE
CONCERNING VARIOUS IRRELEVANT/HIGHLY PREJUDICIAL TOPICS**

## Introduction

Given Defendants' repeated attempts to make this case about anything other than what it is actually about, it is important to start with a basic reminder of what lies at the heart of this case. On January 10, 2017, Defendants published a collection of seventeen privately-produced memos that had been created as part of a paid opposition-research assignment for a political candidate. The memos were created over the span of many months and only the last of those memos is at issue in this case. That memo, referred to herein as the "December Memo," stated, in relevant part, that:

> [Redacted] reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership. Entities linked to one Aleksei GUBAROV [sic] were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation. In Prague, COHEN agreed contingency plans for various scenarios to protect the operations, but in particular what was to be done in the event that Hillary CLINTON won the presidency. It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and that cyber and other operators were stood down/able to go effectively to ground to cover their traces.

1

In other words, Buzzfeed's publication accused Plaintiffs of: (1) specifically using botnets and porn traffic to transmit viruses, plant bugs, steal data, and conduct "altering operations" against the Democratic Party Leadership, (2) being agents of the FSB, (3) being part of an elaborate conspiracy that would need to go into hiding if Hillary Clinton had won the Presidency, and (4) (implicitly) attempting to undermine the 2016 United States Presidential election. These are the statements that Plaintiffs allege to be defamatory.

In this Motion, Plaintiffs move for the Court to preclude Defendants from offering evidence or testimony at trial concerning: (1) allegations of child pornography being hosted on customer websites in Plaintiff's networks; (2) other allegations of wrongdoing by Plaintiffs' customers on Plaintiffs' networks; (3) Plaintiffs' having, at one point in time, sponsored adult entertainment webmaster trade conferences; and (4) evidence of companies in which Mr. Gubarev has only passive investments.

## Argument

Federal Rule of Evidence 401 provides, in relevant part, that evidence is only "relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Federal Rule of Evidence 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Bowe v. Pub. Storage*, 2015 U.S. Dist. LEXIS 178180, at *12 (S.D. Fla. June 2, 2015). Additionally, "because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (citation omitted).

Pursuant to Federal Rule of Evidence 801(c), "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Although experts may sometimes rely on hearsay in forming their expert opinions, an expert cannot, simply by virtue of being an expert, include in his report or testimony hearsay that fall outside the expert's area of expertise. *Bowe v. Pub. Storage*, 2015 U.S. Dist. LEXIS 178180, at *27-28 (S.D. Fla. June 2, 2015) ("Dr. Hausman's opinions regarding the economic factors surrounding the self-storage

2

market and the economic reasonableness of the access fee are irrelevant to this inquiry.  Dr. Hausman's relevant opinions, that a reasonable consumer would not find the access fee important, are not based on his expertise and instead constitute a presentation of other evidence in the guise of an expert opinion." (*citing Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony."))).

I. **Defendants Should be Precluded from Offering Evidence or Testimony Concerning Allegations of Child Pornography Being Hosted on Plaintiffs' Networks.**

Few topics are more of a third-rail than child pornography, whether generally or more specifically when it comes to hosting providers.  To be absolutely clear, Plaintiffs have zero tolerance for the use of their servers or networks by customers to host child pornography; they immediately remove any such materials when if they are made aware of their existence on their networks, and they cooperate fully with every local, national, and international law enforcement agency that alerts them to allegations that customer websites contain child pornography.  Additionally, there has *never* been any suggestion – either in this litigation or otherwise – that Plaintiffs themselves have ever had anything to do with child pornography.  Instead, Defendants have sought to offer (primarily, though not exclusively through the testimony of their expert witness, Anthony Ferrante), unsubstantiated hearsay primarily in the form of blog articles (some anonymous) from almost a decade ago that suggest that some of Plaintiffs' customers had websites that contained child pornography (without even any allegation that Plaintiffs failed to act on them when they found out about it).

First, there is no question whatsoever that the allegations are contained wholly and exclusively within documents that are inadmissible hearsay.  The documents offered are translations of two Dutch blog articles, an English reprint of one of those articles, and an anonymous web posting.  As has been discussed in detail in Plaintiffs' *Daubert* Motion seeking to preclude the admission of testimony from Anthony Ferrante, Plaintiffs' Motion to Keep Certain Materials Under Seal, and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Public Figure Defense, the documents in question are unverified, more than a decade old, and some are not even generally available on the Internet anymore.

In addition, the documents have no relevance to any legitimate facts at issue in this case.  The allegations contained in the December Memo concerning Plaintiffs have nothing to do with child pornography at all, much less allegations that Plaintiffs' customers had child pornography

3

that was stored on Plaintiffs' servers.  There is also no question but that these allegations are far more prejudicial than probative and should be excluded on that basis.  (Indeed, given that the allegations have no bearing on any actual issue in this case, there is no probative value to them at all.)

To the extent that Defendants are trying to argue not that the documents are relevant to the defamatory statements, but rather Plaintiffs' "reputation," they remain irrelevant and inadmissible.  As noted above, the documents are inadmissible hearsay.  That Mr. Ferrante "considered" them does not alter this calculation.  In addition, given that the documents are either not available on the internet or not indexed in a way that anyone would find them means that they do not – in actuality – speak to Plaintiffs' "reputation."  Moreover, Mr. Ferrante lacks any expertise that would allow him to speak to Plaintiffs' "reputation."  Indeed, Mr. Ferrante admitted during his deposition that, prior to being retained by Defendants he had never heard of either Webzilla or XBT Holdings and that he only vaguely remembered hearing Mr. Gubarev's name in some "media reporting."  Ferrante Depo. (Dkt No. 248-4), pp. 16-17.  Mr. Ferrante also admitted not only that he did not know if the allegations made in the reports about Webzilla having hosted customer sites that contained child pornography were true, but that it would not make a difference to his "data points" if the reports were wholly false.  *Id.*, pp. 162-173.

In sum, Mr. Ferrante's so-called "reliance" on decade-old inadmissible hearsay (that he did not know if was true or not); that was not generally available on the internet, in order to opine about Webzilla's "reputation," which is outside his area of expertise, cannot possibly be properly allowed to be put into evidence.

II. **Defendants Should be Precluded from Offering Evidence or Testimony Concerning the Actions of Plaintiffs' Customers as Opposed to Plaintiffs Themselves.**

The December Memo does ***not*** allege that Plaintiffs' ***customers*** utilized Plaintiffs' ***infrastructure*** to use "botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership;" it alleges that the Plaintiffs themselves did these things.  This issue has been discussed at length in Plaintiffs' *Daubert* Motion to exclude the testimony of Anthony Ferrante (which Plaintiffs incorporate by reference herein) and will not be repeated in detail.  However, a few points do need to be stressed here.

First, it is important to note that there isn't even any evidence that Plaintiffs' ***customers*** were actually connected to any of the things alleged in the December Memo.  Instead, Mr.

4

Ferrante opined only that an IP address owned by an XBT subsidiary and used by one of Plaintiffs' customers was one of dozens of IP addresses that had generated a number of similar bitly links, one of which had been clicked on by John Podesta, which compromised the DNC's computers. Mr. Ferrante acknowledged that he had no way of knowing if "the bitlink created using the Root S.A. IP address was ever sent to or received by John Podesta." Ferrante Report (Dkt. No. 248-2), p. 14; Ferrante Depo. (Dkt No. 248-4), pp. 92-96. The importance of this point, however, can hardly be overstated. If the December Memo had said, for example, that Amazon CEO Jeff Bezos was a Russian spy who had hacked into the Democratic National Committee in order to influence the 2016 Presidential election, it would be no defense to say that a website operated by Harvard Medical School (which hosts its websites with Amazon Web Services) was involved in suspicious activities. That is what Defendants attempt to do here.

Aside from this non-evidence concerning something that allegedly occurred on one of Plaintiffs' customers' servers, none of the other evidence about Plaintiffs' customers that Defendants want to admit into evidence have anything to do with the specific allegations contained in the Dossier. Instead, Defendants seek to offer evidence about other instances in which Plaintiffs' "infrastructure" was allegedly misused by its customers in ways unrelated to the allegations in the December Memo. Indeed, Mr. Ferrante repeatedly testified that his assignment was *only* "to conduct a technical investigation and collect evidence that links XBT *infrastructure* to the described malicious cyber activity in the Steele dossier" and that his conclusions and opinions were related only to the use of Plaintiffs' computer infrastructure. See extensive quotations from Ferrante Deposition, detailed in Ferrante *Daubert* Motion (Dkt. No. 248-1), pp. 4-5. Mr. Ferrante's testimony makes clear that the *exclusive* purpose of this evidence is an attempt to show that, since Plaintiffs' customers (allegedly) did bad things on Plaintiffs' infrastructure in the past, it would be fair for a jury to conclude that Plaintiffs' infrastructure was misused here as well. *See*, *e.g.*, Ferrante Depo. (Dkt. No., 248-4), p. 88 ("It's my opinion that XBT and its infrastructure -- XBT infrastructure is linked to a pattern of significant malicious activity.").

Indeed, Mr. Ferrante goes a step further and argues that – even if Plaintiffs' customers did bad things *at a time that they were not customers of Plaintiffs and not utilizing Plaintiffs' infrastructure* – that this is *still* evidence from which a jury could and should conclude that Plaintiffs' infrastructure was misused here. *See* Ferrante Depo. (Dkt. No., 248-4), pp. 148-149

5

("Q: In 2009 McHost was not a customer of XBT. So how does it possibly reflect on XBT that a customer that they did not have at the time this report was written may have done some bad things? A. Because it shows a continued pattern of believed -- entities believed to be facilitating malicious cyber activity at the hands of Russian state actors utilizing XBT infrastructure at one time or another. Q. So these folks, McHost, allegedly did bad things when they were not a customer of XBT, and you believe that that reflects poorly on XBT? A. I believe it speaks to the type of clientele that they attract. And that's exactly the data point that I wish to represent.").

This is impermissible character evidence on steroids. Fed. R. Evid. 404(b) provides that "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Here, Defendants are not even attempting to admit evidence that Plaintiffs acted in conformity with alleged prior bad acts, but that Plaintiffs' *customers* did so (and, even then, there isn't even a suggestion that Plaintiffs' customers who allegedly did the bad things in the past are the same customers that allegedly did the bad things at issue in this case) or that companies that one day became Plaintiffs' customers (but weren't at the time of the alleged wrongful acts) did so. There is absolutely no basis or reason for such evidence to be admitted.

**III.    Defendants Should be Precluded from Offering Evidence or Testimony Concerning Adult Webmaster Trade Conferences.**

This topic, too, has been extensively briefed elsewhere (Plaintiffs' Memo and Reply in support of their Motion for Summary Judgment on Public Figure Defense and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on the same topic, each of which are incorporated by reference herein) and will not be repeated at length here. Again, however, a few additional points are unique to the present motion. First, because Defendants have primarily argued that evidence concerning the adult webmaster trade conferences was relevant to the question of Plaintiffs' status as private or public figures, it is entirely possible that the Court's ruling on the Parties' summary judgment motion would render the entire argument moot. However, to the extent that the introduction of such evidence or testimony remains a live issue, Plaintiffs' motion here should be allowed because the proffered evidence and exhibits (a) are irrelevant, (b) rest in part or in whole on unverified hearsay, and (c) are unduly prejudicial with no concomitant probative value.

Other than arguing that Plaintiffs were somehow limited public figures with respect to a public controversy involving Russian attempts to undermine the 2016 U.S. Presidential election

because a company in which Mr. Gubarev invested sponsored trade conferences for adult webmasters (something which, by Defendants' own accounts had ended four years before they published the December Memo), Defendants' have also suggested that it would be appropriate for the jury to consider the alleged bad acts of other conference sponsors and attendees of the conferences.  Again, this impermissible character-evidence-by-proxy serves no legitimate purpose and should be excluded.

IV. **Defendants Should Be Precluded from Offering Evidence or Testimony Concerning Aleksej Gubarev's Passive Investments in Non-XBT Companies.**

Just as testimony and evidence concerning Plaintiffs' sponsorship of adult webmaster trade conferences has no relevance to any fact to be decided at trial, Mr. Gubarev's passive investment in the companies that helped organize those conferences is even a step further removed from relevance.  Although it is unclear how or why Defendants would seek to put such information before the jury, the amount of time Defendants spent questioning Mr. Gubarev on these topics at depositions certainly suggests Defendants' intent to do so.  Again, it would appear that Defendants' real motive is simply to be allowed to say Plaintiffs' names and the word "pornography" together as many times as possible without any actual legitimate purpose.  Because Mr. Gubarev's passive investments are irrelevant to any fact in dispute in this case and introduction of evidence concerning such investments would be unduly prejudicial and offer no probative value, such testimony and evidence should be excluded.

## Conclusion

For the reasons stated hereinabove, Defendants should be precluded from offering evidence or testimony at trial concerning: (1) allegations of child pornography being hosted on customer websites in Plaintiff's networks; (2) other allegations of wrongdoing by Plaintiffs' customers on Plaintiffs' networks; (3) Plaintiffs' having, at one point in time, sponsored an adult entertainment webmaster trade conferences; and (4) evidence of companies in which Mr. Gubarev has only passive investments.

Dated: October 29, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
Dylan Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Attorneys for Plaintiffs*