UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
   Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
   Defendants.

Case No.

0:17-cv-60426-UU

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO EXCLUDE TESTIMONY OF ERIC COLE**

     Dr. Eric Cole was engaged by Plaintiffs as a rebuttal expert to present his opinions concerning the expert report prepared by Defendants' designated expert witness, Mr. Anthony J. Ferrante and the conclusions contained therein. Mr. Ferrante, a former FBI agent (who, at the time of his deposition, had already billed Defendants approximately $4.1million for his work), apparently sought *not* to prove the allegations in the December Memo which form the basis of this action, but instead to find evidence that "suggests" an "inference that Plaintiffs have failed to meet their burden of proving the statements at issue to be substantially false." Defendants' Motion to Exclude the Testimony of Eric Cole and Incorporated Memorandum of Law ("Motion"), p. 10. Plaintiffs have already filed a motion to exclude Mr. Ferrante's testimony as being irrelevant, based on inadmissible hearsay, outside of his area of expertise, and being more prejudicial than probative (Dkt. No. 248). However, if Mr. Ferrante's testimony is permitted to be presented to the jury, then Plaintiffs intend to present the testimony of Dr. Cole, a 25-year veteran of the cyber and technical information security industry and a member of the European InfoSec Hall of Fame (Cole Report, ¶ 2), who will explain to the jury how and why what Mr. Ferrante says does not mean what Defendants imply – specifically, how the "evidence" found by Mr. Ferrante does not "suggest" that anything in the December Memo regarding Plaintiffs is actually true (or even substantially true). As Dr. Cole's report makes clear, he does so by

1

reviewing Mr. Ferrante's report and critiquing the unexplained, misleading, incomplete and unsupportable allegations, speculations, and leaps of faith contained therein.

Defendants, however, in their Motion, appear to forget that it is the classic duty of a rebuttal expert witness to solely act as a check on the reliability and accuracy of a main expert's testimony, and instead repeatedly attack Dr. Cole for enumerating Mr. Ferrante's errors, purportedly because Dr. Cole did not redo the work that Mr. Ferrante failed to do or did wrong. Defendants claim that this somehow makes Dr. Cole's critiques of Mr. Ferrante "unreliable." As detailed below though, Dr. Cole's critiques are not unreliable and there is no basis upon which Dr. Cole's testimony should be excluded from trial.

I. **Plaintiffs Misconstrue Dr. Cole's Testimony as Opining on the Truth of the December Memo, When Dr. Cole Only Opined as to Whether Mr. Ferrante Had Evidence to Support His Conclusions, Requiring No Independent Investigation**

Defendants claim that Dr. Cole's entire testimony should be excluded from trial because Dr. Cole did no independent investigation of the allegations in the Dossier, and that therefore his opinions are "unreliable" and must be excluded. However, given that Dr. Cole's role was solely as a rebuttal expert to show the inaccuracies in Mr. Ferrante's report, there is no basis for this argument and it is simply misplaced. There is NO authority that requires a rebuttal expert who is attacking the methodology of another witness to conduct independent research in support of their conclusions – quite to the contrary, there is a legion of law that NO such requirement exists. *See*, *e.g.*, *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1302–03 (N.D. Fla. 2017) ("Roddewig prepared a standard rebuttal report of the type the Court would expect to see in response to Fruitticher's Appraisal Report. Roddewig does not offer a stand-alone appraisal or opinion on stigma damages in this case; rather, his report is limited to a critique of Fruitticher's methodology. This was entirely appropriate. The task of a rebuttal expert is different from that of an affirmative expert. A rebuttal expert, by definition, criticizes or rebuts the methodology and opinions of another expert."); *Marlite, Inc. v. Eckenrod*, 2010 WL 11505547, at *3 (S.D. Fla. June 18, 2010) ("Neither party has cited binding Eleventh Circuit case law directly supporting whether the reliability prong requires that a rebuttal expert conduct independent research in support of his or her conclusions."); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party."); *In re Zyprexa Products Liability Litigation*, 489 F.Supp.2d 230, 285 (E.D.N.Y. 2007) ("[D]efendant's experts have a less demanding task, since they have no

2

burden to produce models or methods of their own; they need only attack those of plaintiff's experts."); *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 65 (N.D. Ind. 1996) (noting that "as a rebuttal witness, [an expert] may criticize [plaintiff's] damage theories and calculations without offering alternatives"); *Henkel v. Wagner*, 2016 WL 1271062, at *12 (S.D.N.Y. Mar. 29, 2016) ("But Dr. Abboud does not need a 'model or theory' to identify purported flaws in Mr. Hall's testimony.  Rather, she needs only her expertise and the 'method' identified at the beginning of her report—namely, reviewing the documents in this case, along with Mr. Hall's report, and arriving at an opinion as to Mr. Hall's analysis of the alleged economic damages to Henkel.").

**II.     Dr. Cole Does Not Offer an Opinion as to the Truth of the Defamatory Statements – Only that Mr. Ferrante's Report Does Not Provide Support for Them**

Defendants next demand that Dr. Cole's testimony should be excluded because, they claim, Dr. Cole concluded that the Dossier's allegations about Plaintiffs were "false."  Dr. Cole did no such thing – Defendants' quotations of the word "false" from Dr. Cole's report are taken out of context.

As Dr. Cole makes explicitly clear in his report, his opinion was not directed to the question of whether Plaintiffs hacked the Democratic Party leadership,[1] but rather that, based on his review of Mr. Ferrante's report, "It is my opinion that defendants had no factual information or proof to support the claims made against plaintiffs."  Cole Report, ¶ 18.  *See, also, Id.*, ¶ 19 ("In addition, I have found that Anthony J. Ferrante's expert report lacks accuracy and forensic soundness, and does not provide any supporting evidence to back the statements made by the defendants."), ¶ 58 ("It is my opinion that the defendants had no factual information or proof to support the claims made against the plaintiffs.").  And then, based on his opinion that Ferrante has provided no evidence that supports the defamatory statements made in this case (or that are even relevant to this case), Dr. Cole notes that Mr. Ferrante's claims "would provide no justification for the false and defamatory statements made by defendants."  *Id.*, ¶ 59.

---

[1] Even Mr. Ferrante, after expending over $4.1 million, was unable to find any evidence that linked Plaintiffs to the hacking of the Democratic Party Leadership, as asserted in the December Memo, published by Defendants.  There is, of course, a reason that Mr. Ferrante was unable to produce such evidence despite, apparently, being given an unlimited budget to do so: the allegations are simply not true.

3

Yes, Dr. Cole does use the word "false" three times in connection with the December Memo statements, but those are not in a context where he is opining directly as to Memo's truthfulness. The first is in his introduction, where he explains that he has been engaged in the above captioned case, where the allegations are in fact that Defendants made "false" statements about Plaintiffs. Cole Report, ¶ 1 ("I, Dr. Eric B. Cole, have been retained as a technical expert on behalf of plaintiffs, in connection with the above-captioned defamation case, in which the defendants made false and inaccurate statements regarding the plaintiffs."). This is not an opinion, but a description of the allegations in this case. The second time that Dr. Cole uses the word "false" to refer to the statements in the December Memo comes in paragraph 41, where, in context, he is simply explaining that, given Mr. Ferrante's failure to produce any actual evidence that Plaintiffs were engaged in the hack of the Democratic Party leadership, it would be false to claim that they did. *See* Cole Report, ¶¶ 40-41 ("XBT/Webzilla is not responsible for every bit of data that a bad actor passes over its infrastructure any more than a post office is responsible for the actions of the Unabomber. It is therefore false and defamatory for Buzzfeed to make a blanket statement that the plaintiffs are using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership. XBT/Webzilla enables the transmission of data, but so does every other autonomous system on the planet."). Finally, in paragraph 59, Dr. Cole only uses the word "false" when he states that there is no justification for the conclusion drawn by Mr. Ferrante. *See* Cole Report, ¶ 59 ("Mr. Ferrante provides zero deposition transcripts in his report and shows zero evidence to support this claim. Mr. Ferrante seems to think it is acceptable to make false claims backed up by zero factual evidence. In addition, whether or not XBT did or did not have adequate enterprise infrastructure is not relevant to the case and would provide no justification for the false and defamatory statements made by the defendants."). In each of these cases, when actually presented in context, it is clear that Dr. Cole is not actually making an affirmative statement as to the truth of the defamatory statements, but only that it would be improper or "false" to rely upon Mr. Ferrante's conclusions to support the defamatory statements. As Defendants rightly point out, Dr. Cole was not assigned to determine the veracity of the defamatory statements, and accordingly he is not, did not and would not opine to the truth of the statements.

Finally, Defendants take issue to a single instance in which Dr. Cole states that the allegations in the December Memo are "unfounded." Cole Report, ¶ 18. "Unfounded" is

4

defined by Merriam-Webster as "lacking a sound basis; groundless, unwarranted." And that is exactly the point which Dr. Cole is qualified to opine on – Mr. Ferrante's purported forensic analysis and investigation does not provide a sound basis for the conclusions set forth in the December Memo (or even the irrelevant issues that Mr. Ferrante did opine on).

Finally, Dr. Cole's use of the word "false" three times in his report, even if Defendants' stretched interpretation is to be given any weight, does not and cannot constitute a basis upon which the *entirety* of Dr. Cole testimony should be excluded from trial.

**III. Dr. Cole's Testimony Relating to the Meaning of Some of the Language in the December Memo is Helpful and Admissible Because Some of the Language is Technical in Nature and Because Mr. Ferrante's Testimony Could Otherwise Be Misunderstood to Be Directly Relevant to the Defamatory Statements**

Defendants next seek to exclude Dr. Cole's testimony that touches on what certain words in the December Memo mean because his explanation would, they claim, not assist the jury. But this is incorrect for a number of reasons. Dr. Cole's report and testimony, *inter alia*, explains to the Court and the jury how the assertions made by Mr. Ferrante in his report are incorrect and do not mean what Mr. Ferrante asserts they mean. Specifically, Mr. Ferrante's report misleads the reader into believing that what Mr. Ferrante investigated and set forth in his report has some sort of relevance to the allegations in the December Memo, essentially by attempting to redefine (or ignore) the actual words in the December Memo. Dr. Cole's expertise is necessary and helpful to counteract Mr. Ferrante's misleading testimony. *See Crowley v. Chait*, 322 F. Supp.2d 530, 551 (D.N.J. 2004) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party.").

Mr. Ferrante starts his report by stating that "FTI investigated whether it could find any technical connections between XBT and the allegations made in the Dossier about XBT and its affiliates, including Webzilla...." Ferrante Report (Dkt No. 246-1), p. 11. As this Court is well aware, however, the allegations about XBT in the December Memo are that "a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership."

Notwithstanding that the language in the December Memo makes claims about Plaintiffs' direct activities against the Democratic Party leadership, Mr. Ferrante claims that he conducted no such investigation into the actual allegations. *See, e.g.*, Ferrante Depo., p. 15 ("The scope of my assignment was to conduct a complex technical investigation to collect evidence, to identify

5

evidence that linked XBT *infrastructure* to the described malicious activity in the Steele dossier and to serve as an expert witness on that evidence." (emphasis added)); pp. 44-47 (statement that "Entities linked to one Aleksei GUBAROV [sic] were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation" was outside the scope of the assignment); p. 50 ("Q. Was part of your engagement by BuzzFeed to conduct a factual inquiry into the truth or falsity of allegations contained in the dossier, separate and aside from the cyber aspect of it?  A. The scope of our assignment was to conduct a technical investigation and to collect evidence that linked XBT to the allegations stated in the Steele dossier."); pp. 59-60 ("Q. In your high-priority objectives you talk about botnets and porn traffic being hosted by XBT and Webzilla. ***Why were you considering the question of hosting as opposed to whether or not XBT and Webzilla were themselves doing those things***? A. … ***I would say because the scope of our assignment was to identify evidence that linked XBT infrastructure to this malicious activity as stated in the Steele dossier***.  Q.  And so you have not concluded in your report or otherwise that XBT itself used botnets and porn traffic as opposed to its infrastructure.  Is that correct?  A.  Other than the fact that was -- Other than the fact that the malicious cyber activity described in the Steele dossier was facilitated by using their infrastructure.  Q. And I'm sorry. I think I understand your answer, but I just want to clarify You've -- Your conclusion, your opinion is that XBT and/or Webzilla's infrastructure was utilized to do the malicious things described in the Steele dossier, correct?  A.  Correct." (emphasis added)); pp. 62-63 ("Q.  I understand that you don't want to answer the question that I'm actually asking.  But the question that I'm actually asking is: Putting aside the infrastructure question, were you able to determine that any XBT employee used botnets or porn traffic to transmit viruses, plant bugs, steal data or conduct altering operations?  THE WITNESS: I think we can disagree that I believe I have answered the question. But I will further state that other than the fact that XBT employees did little to nothing to detect, stop and prevent the significant malicious activity, ***I have no evidence of them actually sitting behind a keyboard***." (emphasis added)); p. 63 ("Q. And you have no evidence that Aleks Gubarev personally did any of the things alleged in the Steele dossier?  A. Other than the fact that Aleksej Gubarev owns and operates XBT and related entities, he was outside the scope of my assignment.").

Instead, Mr. Ferrante has stated that the investigation that he conducted is still relevant to the allegations in the Dossier, which is nothing more than Mr. Ferrante attempting to redefine the allegations in the Dossier – i.e., whether the December Memo means that Plaintiffs hacked the Democratic Party leadership themselves (as the December Memo actually says) or whether hacking might have occurred, without Plaintiffs' knowledge or participation, by third parties abusing its networks. Because of this, Dr. Cole's expertise and testimony is not unneeded, but is in fact vital to ensure that the jury is not improperly swayed by Mr. Ferrante's misleading testimony.

This is compounded because, contrary to Defendants' assertions, the language in the December Memo relating to Plaintiffs *does* contain language that a juror would need assistance to understand. A juror is not likely to understand what a "botnet" is and that "botnets" are not inherently malicious or bad. Although "bot" is simply a generic term for any automated programs that performs some function, legitimate or otherwise, the public generally perceives the term to refer to something "malicious."[2] *See*, *e.g.*, "Most Americans have heard about social media bots; many think they are malicious and hard to identify," Pew Research Center (October 15, 2018), attached hereto as Exhibit 1. Dr. Cole also notes that the December Memo improperly uses the term "plant bugs," which in the digital realm would instead be referred to as using "spyware." Cole Report, ¶ 56. And Dr. Cole's report is the first time in this case that anyone has ever explained what "altering operations" are, which Dr. Cole indicates are such things as "ransomware or destructive malware."

Dr. Cole's report thereafter explains how, by Mr. Ferrante's own admissions, what Mr. Ferrante was investigating was not actually what the December Memo alleged about Plaintiffs, how Mr. Ferrante's conclusions are not relevant to the allegations in the December Memo, and what Mr. Ferrante should have done if he had hoped to actually find evidence that "supported" a connection between Plaintiffs and the allegations in the December Memo. Even a cursory look

---

[2] Indeed, Buzzfeed itself began as an "instant messaging bot." *See*, *e.g.*, "How BuzzFeed CEO Jonah Peretti took an instant messaging bot and turned it into a $1.5 billion media empire," Business Insider (June 1, 2017), attached hereto as Exhibit 2. Similarly, Buzzfeed utilized bots to collect information related to the 2016 United States Presidential elections. *See*, *e.g.*, "Bot or Not? News organizations try to engage users with chatbots," NYU Journalism (March 2, 2017), attached hereto as Exhibit 3 ("In the news space, chatbots have been used to both gather and disseminate information. BuzzFeed, for instance, used Buzzbot to survey people's reactions to the 2016 Democratic and Republican National Conventions.").

at each of the paragraphs sought to be excluded by Defendants makes it clear that Dr. Cole's opinions are relevant, helpful and necessary to understand the December Memo and how Mr. Ferrante's report is irrelevant to it:

- Paragraph 37: "Mr. Ferrante also makes an unsupported claim that XBT has poor security practices.... While there is zero proof in his report that this is true, even if it was, it is irrelevant to this case. Buzzfeed did not accuse Webzilla of having poor security practices and vetting procedures, they accused 'XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership.'" This is not just Dr. Cole opining about his understand of the meaning of the December Memo – Dr. Cole is here explaining how what Mr. Ferrante claims is relevant is not, in fact, relevant to the allegations in the Dossier.

- Paragraphs 40-41: "XBT/Webzilla is not responsible for every bit of data that a bad actor passes over its infrastructure any more than a post office is responsible for the factions of the Unabomber. It is therefore false and defamatory for Buzzfeed to make a blanket statement that the plaintiffs are using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership. XBT/Webzilla enables the transmission of data, but so does every other autonomous system on the planet." Here, Dr. Cole again does not posit a meaning about the December Memo, but instead presents an explanation of what Mr. Ferrante has alleged and why Mr. Ferrante's conclusions are flawed.

- Paragraphs 53-54: As part of an introduction as to what Mr. Ferrante should have done if he was going to opine as to whether Plaintiffs were "using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations,'" Dr. Cole states that "'Using' means active action and/or application that is verifiable." This was a necessary first step so that Cole could then explain what Mr. Ferrante, if he was going to apply a reliable and appropriate methodology to his investigation, would have done to actually confirm that Plaintiffs had engaged in these highly technical activities (or that there was any evidence to support such an inference). In Paragraph 56, Dr. Cole lists the "most

8

basic of questions" that should have been answered about the four categories of virus transmission, planting bugs, stealing data and conducting 'altering operations,' which include:

- "What viruses?  What virus or malware code was discovered on XBT or XBT affiliate servers, standalone hard drives, USB drives, optical media, etc?"
- "What analysis was done on the data exfiltration malware to determine what data was successfully stolen from Democratic party machines and to where this data was sent?"
- "What ransomware or destructive malware indicators were discovered on Democratic party machines?"

Accordingly, not only is Dr. Cole's explanation of what some of the December Memo's words mean necessary and helpful for the jury to understand what is actually at issue in this case, Dr. Cole's explanation is necessary and helpful for the jury to understand how what Mr. Ferrante has concluded in his report is not relevant to or supportive of what is alleged in the December Memo.

- Paragraph 59: As part of an extended critique of Mr. Ferrante's executive summary, Dr. Cole notes that, in one small portion, Mr. Ferrante's claim that "XBT does not have an adequate enterprise infrastructure monitoring process in place" is not only "backed up by zero factual evidence," but it is also irrelevant to the case.  Given the technical nature of the allegations in Mr. Ferrante's report, the danger that a jury will take Mr. Ferrante's irrelevant speculation as proof of the claims in the December Memo is significant.  Therefore, to the extent that this Court does not exclude Mr. Ferrante's testimony wholesale, Dr. Cole's rebuttal and explanation of how Mr. Ferrante's assertions do not mean what Mr. Ferrante implies they do is invaluable and necessary for the jury to be able to properly weigh Mr. Ferrante's conclusions.

IV. **Dr. Cole's Criticisms of the Ferrante Report are Admissible**

Finally, Defendants attempt to exclude Dr. Cole's report by claiming that Dr. Cole set up a straw man by claiming that Mr. Ferrante did not prove the allegations in the December Memo.  By doing so, however, Defendants themselves make a straw man of Dr. Cole.  Dr. Cole did not

9

misconstrue Mr. Ferrante's report. Dr. Cole early-on criticizes Mr. Ferrante for not doing the very thing that Defendants acknowledge he did not do – namely, proving anything at all. Dr. Cole's Report very clearly opines that Mr. Ferrante never even offered opinions as to actual proof, but that he instead only presented suggestions: "It is important to note the word 'suggests' was used 4 times in the Executive Summary (9 times total in the report) to describe specific 'findings' that had no definitive evidence or proof.... In addition, the FTI report never once uses the words 'prove' 'proves' or 'proof' and uses the term 'forensic' only in reference to the forensic accounting in the Qualifications section." Cole Report, ¶ 20. Notwithstanding that Mr. Ferrante never claims to have proved anything, Dr. Cole's main criticism of Mr. Ferrante's report is that Mr. Ferrante does not even provide a sufficient technical foundation to "suggest" his conclusions. *Id.*, ¶ 19 ("I have found that Anthony J. Ferrante's expert report lacks accuracy and forensic soundness, and does not provide any supporting evidence to back the statements made by the defendants.").

As already explained in depth above, *and* in Plaintiffs' motion to exclude Mr. Ferrante's testimony, *and* in a separate motion *in limine* being filed, the gulf between what Mr. Ferrante testified to and what is actually relevant in the case is wide, and can also be misunderstood by a non-technical jury, which is why Dr. Cole's criticisms of Mr. Ferrante's report and testimony are so vitally necessary.

After noting that Mr. Ferrante did not do what is actually relevant in this case (i.e., opining as to the truth of the December Memo), Dr. Cole makes clear that even Mr. Ferrante's findings which he believes suggest "an inference that Plaintiffs have failed to meet their burden," (Motion, p. 10), are in fact unsupported by the technical evidence offered by Mr. Ferrante. Dr. Cole's report makes clear that all of the evidence that Mr. Ferrante has found that "suggests" an "inference" could be applied to virtually every other internet service provider and hosting provider in the world, and therefore cannot be considered a meaningful suggestion as to anything whatsoever. *See, e.g.*, Cole Report, ¶ 23 ("Mr. Ferrante's analysis would be true for any ISP or company, and, indeed, would even be true for Buzzfeed.... [T]he NSA report referenced by Mr. Ferrante lists thousands of IP addresses, of which XBT address[es] are only a tiny fraction of a percent."), ¶ 36 (questioning why Ferrante did not also find that "AT&T, Verizon, Sprint, and CenturyLink which own the Internet backbones" were also not being held accountable), ¶ 38 ("Buzzfeed could have easily claimed that Seagate was at fault because viruses were stored on

10

their hard drives or that Microsoft ware at fault because a virus targeted a Windows operating system."), ¶ 39 (GoDaddy and Google were also on a list of "bad actors" referenced by Ferrante), ¶ 51 (IP addresses provided by the Democratic National Committee resolve not to Webzilla, but to a number of other hosting providers, including OVH, Leaseweb, China Telecom, Choopa, Swiftway, and Amazon). Dr. Cole is, accordingly, not "misconstruing" Mr. Ferrante's report, but instead explaining how Mr. Ferrante's report cannot, in good faith, reach the conclusions that it reaches.

Defendants, of course, also claim issue with this by arguing that "Cole's comparisons of XBT to competitors are meaningless because, as he admitted at his deposition, he does not know what services XBT offers." Motion, p. 12. But Defendants here blatantly misconstrue Dr. Cole's report. At no point does Dr. Cole in his report ever refer to XBT's "competitors," despite Defendants' Motion using that word in quotes on multiple occasions. *See*, *also*, Cole Deposition, 18:17-22 ("Q Who do you think their competitors are? ... A That was outside the scope of my analysis. I didn't perform a competitive analysis."). What Dr. Cole did do, however, is accurately point out that Mr. Ferrante's suggestions could be applied to any number of internet service providers around the world, which is completely independent of what specific services XBT may or may not provide and who XBT's competitors are. Accordingly, Dr. Cole's testimony has nothing to do with who XBT's "competitors" are, regardless of how many times Defendants intimate that Dr. Cole made any references to them. In any case, Defendants' criticism is simply absurd because there is no dispute in this case that XBT provides internet and computer services.

Defendants also challenge Dr. Cole's critique of Mr. Ferrante's technical analysis of the Bitly Data and SSL Certificates because Dr. Cole did not himself perform the analysis that Mr. Ferrante improperly applied. However, as already explained above, because Dr. Cole's assignment as a rebuttal expert is nothing more than to critique Mr. Ferrante's methodology, there is no reason that Dr. Cole would have to redo what Mr. Ferrante did wrong himself. *See*, *e.g.*, *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1302–03 (N.D. Fla. 2017) ("Roddewig prepared a standard rebuttal report of the type the Court would expect to see in response to Fruitticher's Appraisal Report. Roddewig does not offer a stand-alone appraisal or opinion on stigma damages in this case; rather, his report is limited to a critique of Fruitticher's methodology. This was entirely appropriate. The task of a rebuttal expert is different from that

11

of an affirmative expert. A rebuttal expert, by definition, criticizes or rebuts the methodology and opinions of another expert."); *Marlite, Inc. v. Eckenrod*, 2010 WL 11505547, at *3 (S.D. Fla. June 18, 2010) ("Neither party has cited binding Eleventh Circuit case law directly supporting whether the reliability prong requires that a rebuttal expert conduct independent research in support of his or her conclusions.").

Finally, Defendants disagree with Dr. Cole's assertion that Mr. Ferrante "fails to provide any of the depositions, communications, or any other factual information to support" the claim that XBT did not have an adequate enterprise infrastructure monitoring process. Defendants assert that Dr. Cole is wrong, and that Mr. Ferrante did provide supporting evidence. However, this is not a basis upon which an expert's testimony can be excluded from trial. Disagreements as to whether an expert's conclusions are correct or not go to the weight of the testimony, not to its admissibility. *See*, *e.g.*, *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence.... Quite to the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993))); *Marlite, Inc. v. Eckenrod*, 2010 WL 11505461, at *4 (S.D. Fla. June 18, 2010) ("Finally, we find that the alleged list of errors in damage calculations do not warrant excluding Negreira's testimony. The *Daubert* inquiry does not require consideration of whether the expert's testimony is correct, but only whether the testimony is reliable and should be considered by the jury." (citing *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292-93 (11th Cir. 2005))).

## Conclusion

For the reasons set forth above, Plaintiffs respectfully request that this honorable Court DENY Defendants' Motion to Exclude the testimony of Eric Cole in its entirety.

Dated: October 29, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
Dylan Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Attorneys for Plaintiffs*