UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
   Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
   Defendants.

Case No.

0:17-cv-60426-UU

**PLAINTIFFS' PARTIAL OPPOSITION TO THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE AND FOR ACCESS TO JUDICIAL RECORDS**

**Introduction**

    The New York Times Company (the "Times") has brought the present motion premised on its assumption that the materials and information redacted are both relevant and probative to the present case, a case which the Times has properly noted is of interest to the public. The Times' position is understandable: it does not know what it does not know. Specifically, it does not know that much of the information that it seeks to have released is *not* relevant to the underlying case, does *not* have any probative value, is *not* admissible; and has *not* been included in Defendants' filings with this Court for any legitimate purpose.

    Instead, Defendants have intentionally included with their summary judgment filings materials that serve no legitimate purpose, cannot be considered on summary judgment (or at trial), and are without any evidentiary basis for the very specific purpose of (further) defaming Plaintiffs before the potential jurors that will hear the present case. The Times' own motion recognizes, as it must, that this Court may deny access to records where information has been placed in the record for " illegitimate purposes, such as to promote scandal…." Times' Motion, p. 5 (citing *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983)). But, again, the Times simply does not know what it does not know.

    It is no accident that Defendants strategically included with their summary judgment filings the *full* deposition transcripts of Plaintiffs' witnesses (where Defendants asked about every irrelevant topic under the sun), while including only a *partial* transcript from one of their

1

own witnesses and others they might not have found as favorable. Nor is it an accident that Defendants included with their summary judgment (and other) filings every bit of unsubstantiated and irrelevant dirt that their team of former FBI agents were able to find after expending more than ███████ in the search. Defendants are looking to improperly utilize their summary judgment filings as a vehicle to (further) defame Plaintiffs in advance of trial. This time, though, they have looked to their colleagues in the media to do their work for them: after all, if a media outlet simply reports on the defamatory materials that Defendants have dumped willy-nilly into their filings with this Court, that outlet will *actually* be legitimately protected by the Fair Report Privilege.

That Defendants have concoted a clever way to defame-by-proxy, though, does not mean that the Court should "become a partner in the use of" such materials "to gratify private spite or promote public scandal ... with no corresponding assurance of public benefit." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 603 (1978).

## Argument

### I. Legal Standard

Preliminarily, Plaintiffs do not dispute the Times' standing to bring the present motion. Nor do Plaintiffs dispute the general proposition that most materials filed with a dispositive motion are (typically) presumed to be subject to the common law right of access[1] and that this presumption can be overcome with a "showing of good cause."[2] The Eleventh Circuit has identified some of the factors to be considered by the Court in *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007):

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.... A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information.

---

[1] *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007).
[2] *Travelers Prop. Cas. Co. of Am. v. Barkley*, 2017 U.S. Dist. LEXIS 212214 (S.D. Fla. June 2, 2017).

The Supreme Court has further explained, however, that:

It is uncontested ... that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." ... Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption ... or as sources of business information that might harm a litigant's competitive standing...."

*Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978) (multiple citations omitted). *See*, *also*, *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000) ("Among the factors that courts have recognized as warranting restricting access to court records is the use is the illegitimate purposes such as to promote scandal.").

"A finding of good cause requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Center for Individual Rights v. Chevaldina*, 2018 U.S. Dist. LEXIS 89847 at *19 (S.D. Fla. May 30, 2018) (quoting *Chicago Tribune Co. v. Bidgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001)). "The Supreme Court ... neither drafted explicit limits nor assigned specific weight to this common law right of access. The Court, rather, acknowledged 'the presumption however gauged in favor of public access to judicial records,' as one of the interests to be weighed on the broadcasters' 'side of the scales.'" *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. 1981) (quoting *Nixon*, 435 U.S. at 602). "Ultimately, the decision to allow public access is a matter of the Court's supervisory and discretionary power." *Center for Individual Rights*, *supra* at *19.

The Court has a "responsibility to exercise an informed discretion as to the release ... with a sensitive appreciation of the circumstances that led to their production. Otherwise, there would exist a danger that the Court could become a partner in the use of the subpoenaed material to gratify private spite or promote public scandal ... with no corresponding assurance of public benefit." *Nixon*, 435 U.S. at 603.

Indeed, where courts have found that materials – even materials that had previously been made public such as a counsel's "Tweets" on Twitter – were unrelated to the facts at issue and were instead included with motions "simply to embarrass ... and for no other purpose" they were properly subject to being sealed by the Court. *See*, *e.g.*, *Jackson v. Deen,* 2013 U.S. Dist. LEXIS

3

65814 *16-17 (S.D. Ga. 2013). As the *Jackson* court explained, such materials are not properly considered legitimate judicial records:

> [T]he defendants used this record as a mere garbage dump for material designed to embarrass opposing counsel. Such materials do not constitute legitimate judicial records. *See In re Policy Management Systems Corp*., 67 F.3d 296 (4th Cir. Sept. 13, 1995) (unpublished) ("we hold that the mere filing of a document with a court does not render the document judicial. [It] becomes a judicial document when a court uses it in determining litigants' substantive rights . . . . [A] document must play a relevant and useful role in the adjudication process" before the public's right of access attaches.). The documents foisted by defendants into this record bear no relation to any issue in this case, and the normal presumption of public access to judicial records does not apply in this context. Accordingly, the Court declines to unseal these materials.

*Id.* at *18-19. *See*, *also*, *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."); *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) ("When considering whether the common law right of access applies, the cases turn on whether the documents that are sought constitute 'judicial records.' Such records are those 'materials on which a court relies in determining the litigants' substantive rights.'"); *Luzzi v. ATP Tour, Inc*., 2011 U.S. Dist. LEXIS 74796, at *5-9 (M.D. Fla. July 12, 2011) (finding first that "the plaintiffs did not need to attach the sealed documents in responding to the Motion for Summary Judgment and the Court did not utilize them in reaching its decision. It is not certain that the Eleventh Circuit would find a presumptive right of public access to filed documents that played no role in the adjudication process" and that, even if the Court assumed such a presumpive right of access existed, "the Eleventh Circuit held in *Chicago Tribune* that Rule 26 confidentiality is not automatically foregone because confidential materials are submitted with a substantive motion" before holding that the documents should remain sealed because the release of "gratuitously filed and unvarnished data ... would serve little or no public or First Amendment purpose" (citing *Chicago Tribune Co. v. Bidgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001))). *See*, *also*, *United States v. Byrd*, 11 F. Supp. 3d 1144, 1148 (S.D. Ala. 2014) ("'[J]udicial documents' have been defined as 'materials on which a court relies in determining the litigants' substantive rights....'" (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.

1986))); *Johnson v. Blackburn*, 2014 U.S. Dist. LEXIS 190813, at *3 (W.D. Tex. May 4, 2014) ("[T]he Court does not rely upon the letter in 'determining the litigants' substantive rights.' ... The Court accordingly finds that the letter is not a judicial document to which there is a presumptive right of access.").

## II. The Materials Plaintiffs Seek to Keep Sealed are not the Topics of Public Concern, Despite the Times' Assumptions to the Contrary.

In its Motion, the Times asserts that it is entitled to have unsealed four "broad categories of critical information that has been redacted and sealed, such as information related to the origin of the Dossier; the Government's investigation of the Dossier, including Senator McCain's receipt and production of the Dossier to the FBI; Buzzfeed's investigation of the Dossier; and Plaintiffs' advocacy and involvement in public controversies." Times' Motion, p. 6. With respect to the first three categories of information, Plaintiffs take no position other than to note that there are others, including the Federal government, who have been assured continued confidentiality and who have not been provided an opportunity to weigh in on the Times' motion.

With respect to the fourth category – and as has been argued extensively in Plaintiffs' various filing concerning Defendants' public figure affirmative defense (and Plaintiffs' *Daubert* Motion to strike the testimony of Anthony Ferrante and Plaintiffs' Motions *in Limine*) – there exists only a single legitimate area of inquiry concerning Plaintiffs' alleged "involvement in public controversies,"[3] namely Mr. Gubarev's response to an inquiry from a *Bloomberg* reporter on a technical issue involving servers, that was ultimately included in an article with political ramifications. It is precisely because this was a legitimate area of inquiry that **Plaintiffs did _not_ redact those facts or the documents supporting such facts**. The remainder of the materials, however, do not fall into any of these categories and are simply "the defendants us[ing] this record as a mere garbage dump for material designed to embarrass...."[4]

---

[3] To be clear, this area of inquiry is wholly insufficient to establish Plaintiffs as public figures. Plaintiffs concede only that the topic area is at least a legitimate one unlike the remainder of the baseless and irrelevant "information" included in Defendants' filings.

[4] The specifics of the other materials are discussed at length in other filings with this Court and are not repeated at length here so as not to (ironically) create a document that itself has to be extensively redacted.

### III. The Unsealing of Wholly Irrelevant Salacious Materials Now Would Unnecessarily Risk Plaintiffs' Right to a Fair Trial Without Any Concomitant Benefit to the Public's Right to Information About Actual Issues in Dispute.

The documents at issue here (and the arguments referring to those documents) have not yet played any "role in the adjudication process." And, if Plaintiffs are correct, they never will play any role in the adjudication process precisely because they are irrelevant, unverified, unreliable, and unduly prejudicial. Yet, if the Court were to unseal these documents *now*, it will be a bell that cannot be unrung even if the Court ultimately grants Plaintiffs' *Daubert* motions, motions *in limine*, or objections at trial. Once in the public domain, there will be no way to know if these wholly irrelevant documents have improperly influenced the jury. Indeed, as the Times' very own Motion makes clear, Plaintiffs' fear is in no way speculative: the media stand ready to broadcast these irrelevant and salacious arguments if and when the Court allows the sealed materials to be placed into the public domain. To the extent that the materials in question are ever deemed to be relevant, reliable, and admissible, they may be presented to a jury and, at that point in time, made part of the public record. Certainly, however, there is neither a basis nor a rationale for doing so now.

### IV. The Balance of Concerns Favors Continuing the Status Quo.

As is noted above, the Eleventh Circuit permits this Court to consider, "among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.... A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information." *Romero*, 480 F.3d at 1246.

In the present case, given how incendiary (yet irrelevant) the materials are, allowing access may well impair the Court's ability to ensure Plaintiffs a fair trial. So too, the "degree and likelihood of injury if made public" favors Plaintiffs' position: there is no question but that these irrelevant and baseless allegations will be publicized if made public.

And, as the Court will see as it examines the relevant motions, the "evidence" presented by Defendants that would be unsealed if the Times' Motion is granted is the furthest thing from reliable as one might imagine. Although there may be an opportunity for Plaintiffs to respond to

the allegations once released, such an opportunity is hardly meaningful if the minds of potential jurors have already been influenced by reporting on the false, irrelevant, unverifiable allegations (some of which have been made by anonymous internet trolls) dumped into the record by Defendants without legitimate basis.

With respect to the "public concern" element, while it is true that the case itself presents a matter of public concern, the materials Plaintiffs seek to keep sealed are not, both because they are irrelevant to the issues in this case and because they are presented simply to advance (untrue) scandal.  And, although there is no less onerous alternative to sealing the documents for now, the Court is always free to reconsider the matter after trial, once it is obvious what materials did and did not play a "role in the adjudication process."

Finally, the Times asserts that the presumption in favor of release is particular strong here, because: "Access is certain to promote public understanding of the historically significant events at issue in this ligitation…."  Times' Motion, p. 8.  Surely, that was true as well in *Nixon*, and yet the Court there recognized that "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption...." 435 U.S. at 598.  *See*, *also*, *Sanford v. Bos. Herald-Traveler Corp.*, 318 Mass. 156, 158 (1945) ("[W]e are not prepared to concede that the general right of inspection of public records enables one in every instance to publish such records broadcast without regard to the truth of defamatory matter contained in them.").

Again, the Times' position is understandable: undoubtedly the Times assumes that Defendants have included in their filings only materials that are relevant, reliable, and inadmissible.  On that front, however, the Times is mistaken.

## Conclusion

For the reasons stated hereinabove and in Plaintiffs' Emergency Motion to Continue to Seal Portions of Defendants' Summary Judgment Motions and Statements of Fact, and Plaintiffs' Reply in support of the same, the Court should – at least until after trial has been completed – order that the portions of Defendants' motions discussing the topics identified in Plaintiffs' Emergency Motion and the Reply (and the exhibits connected to such topics) remain confidential and under seal until such time as this Court orders otherwise.

Dated: October 31, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
Dylan Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the service list below on October 31, 2018.

/s/ Matthew Shayefar
Matthew Shayefar

## SERVICE LIST

Katherine M. Bolger
Adam Lazier
Davis Wright Tremaine, LLC
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
adamlazier@dwt.com

Nathan Siegel
Alison Schary
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, Suite 800
Washington, DC 20006
nathansiegel@dwt.com
alisonschary@dwt.com

Roy Eric Black
Jared M. Lopez
Black Srebnick Kornspan & Stumpf
201 S Biscayne Boulevard, Suite 1300
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com