# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## Case No.: 17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.

_____/

**DEFENDANTS' RESPONSE TO THE NEW YORK TIMES' MOTION TO INTERVENE AND FOR ACCESS TO JUDICIAL RECORDS**

      Defendants BuzzFeed, Inc. and Ben Smith submit this Response to the *New York Times*' Motion to Intervene and for Access to Judicial Records (Dkt. 254).

      Defendants support granting the *New York Times* (the "*Times*") standing to intervene in this case. With respect to its motion for access to judicial records, Defendants' position is as follows. As explained in their Opposition to Plaintiffs' Emergency Motion to Seal, Dkt. 242, Defendants believe that the parties' summary judgment motions and related materials may be divided into three categories for purposes of sealing disputes:

      1.    Materials that were not marked by anyone as "Confidential" or "Attorneys' Eyes Only" pursuant to any Protective Order. For the reasons set forth in their Opposition and discussed further herein, Defendants support the *Time*s' motion as applied to those materials, and to those portions of the briefs discussing those materials.

      2.    Materials that were marked "Confidential" or "Attorneys' Eyes Only" by the Parties, which do not also contain any information marked "Confidential" or "Attorneys' Eyes Only" by any non-parties. These materials were properly filed under seal initially to comply with the Protective Orders in this case, but Defendants also support the *Time*s' motion as applied to those materials, and to those portions of the briefs discussing those materials. For the reasons set forth in the *Times*' motion, Defendants agree that the interests in public access at this point in

the case outweigh any confidentiality considerations of any of the parties, including Defendants, with respect to those materials.[1]

3. Materials that contain information marked "Confidential" or "Attorneys' Eyes Only" by non-parties. This category includes materials produced directly by non-parties, as well as testimony from party witnesses and briefs that make reference to those materials. Defendants take no position with respect to this category of materials, which require balancing the interests of non-parties with the public's interest in access. Defendants defer to the Court's balancing of those interests with respect to those materials. Defendants note that some of those materials have also been the subject of prior litigation and orders regarding non-disclosure. *See* Dkt. 103, 199.

Moreover, Defendants note that, by the time briefing on the *Times*' motion is concluded, the Court will have before it at least seven motions, responses, and/or replies concerning sealing that have been filed within the past month. To avoid continued, piecemeal sealing litigation, with respect to the first two categories discussed above Defendants also submit that it would be appropriate for the Court to now unseal materials in those categories that the Parties have submitted in connection with the *Daubert* motions, motions *in limine*, and these various motions relating to sealing. Defendants see no more reason to keep those motions heavily sealed than the summary judgment motions.

Defendants are filing the above portion of this Response on the public record so that counsel for the *Times* (and the public) will at least have a statement of Defendants' position. However, Defendants cannot fully explain the basis for that position without making reference to materials and memoranda of law that are currently filed under seal. Therefore, most of the rest of this Response will be filed under seal and redacted from the publicly-filed version.

Up to this point, Plaintiffs' arguments regarding sealing have little to do with good faith legal argument and much to do with employing the rhetorical techniques of propagandists, such as trying to give legitimacy to a falsehood merely by repeating it incessantly.[2] Thus, Plaintiffs' main argument for sealing is to repeat dozens of times that Defendants are salting the record by

---

[1] Defendants note that they have consistently removed any references to confidential sources before any materials were ever produced to Plaintiffs, so those materials appear redacted in the record because that is how they were originally produced. Defendants will of course vigorously continue to assert all rights to protect sources in this case.

[2] This technique is known as the "illusory truth effect." *See* Ian Maynard Begg, Ann Anas, and Suzanne Farinacci, *Dissociation of Processes in Belief: Source Recollection, Statement Familiarity, and the Illusion of Truth*, 121 Journal of Experimental Psychology 446 (1992).

dumping materials solely "for their [allegedly] slanderous and salacious nature." Dkt. 257 [Pls. Reply ISO Mot. to Seal] at 2.[3] Along the way, Plaintiffs weave in references to other, sinister-sounding facts that have nothing to do sealing, but rhetorically are used to foster the illusion that Defendants must be up to no good – such as the amount Defendants paid the expert who found that Plaintiffs' infrastructure was used to hack Democrats. *See id.* at 2, 6. And Plaintiffs level similar charges at that newspaper. They more than imply that the *Times* is some kind of feckless mouthpiece available to be "recruited" by BuzzFeed to intervene in this case and "stand ready to broadcast these salacious arguments" at its direction. *Id.* at 3 n.2 & 8.

Perhaps the best illustration of the difference between their rhetoric and any legal or factual reality is when Plaintiffs purport to prove their *ad hominem* accusations by pointing to some specific exhibits and proclaiming breathlessly that "The article does not, in any way, shape, or form involve or reference any of the Plaintiffs (certainly it would be hard to reference companies that did not exist 17 years ago)." *Id.* at 7. That statement is likewise repeated to give it the illusion of significance. *See id.* at 6 ("Nine more of these documents make no mention whatsoever of Plaintiffs or any of their related businesses"); *id.* at 7 (the materials "include documents that make no mention whatsoever about Plaintiffs or their businesses."). Plaintiffs maintain that the absence of any reference to them in these exhibits is proof positive that "there is absolutely no legitimate justification for this article to be included in Defendants' materials and no possible relevance to this case," and so all "[t]he materials are included *solely* because they are salacious and defamatory. . . ." *Id.*

---

[3]*See also, e.g.*, Dkt. 223 [Pls. Emerg. Mot.] at 1 ("Defendants are engaged in a blatant attempt to publicly smear Plaintiffs – employing a campaign of public innuendo"); *id.* at 2 ("is designed solely to improperly prejudice potential jurors"); *id.* at 3 ("Defendants gratuitously throw into their motion facts"); *id.* ("this is the type of smear suggested by Defendants' Motion"); *id.* ("Injecting such vile innuendo into the public."); Dkt. 257 [Pls. Reply ISO Mot. to Seal] at 4 ("simply to embarrass . . . and for no other purpose"); *id.* at 6 ("finding dirt with which to smear the Plaintiffs"); *id.* at 7 ("the materials that Defendants have attempted to dump wholesale into the public record"); *id.* ("attempt[ing] to paint Russians in general as cyber-criminals"); *id.* ("[t]he materials are included *solely* because they are salacious and defamatory"); *id. (*"solely so that Defendants can say "child pornography"); *id.* at 8 ("'garbage dump' of irrelevant materials"); *id.* at 9 ("given how incendiary (yet irrelevant) the materials are"); *id.* ("Defendants standing on a soap box yelling "child porn" as loudly as they can"); *id.* ("defendants willing to place into the record every bad thing that any anonymous person on the internet has said about them, truth be damned").

3

One only needs to pause briefly to recognize why this is rhetorical nonsense. To start with the last point, the unstated premise of Plaintiffs' argument is that only exhibits which specifically mention a plaintiff could possibly have any relevance to a defendant's summary judgment motion. That proposition is absurd as a general matter, and certainly so here.[4]

As Plaintiffs are well aware, both parties have moved for partial summary judgment on the question of whether Plaintiffs are limited public figures. That analysis requires the Court to determine, among other things, whether there were one or more pre-existing, public controversies into which the Plaintiffs injected themselves. *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1495 (11th Cir. 1988); *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980). By definition, and as numerous cases have recognized, the best evidence of such controversies is typically media coverage of a particular issue starting *before* Plaintiffs became involved and continuing thereafter – which necessarily would not mention Plaintiffs. *Little v. Breland*, 93 F.3d 755, 757-58 (11th Cir. 1996). Thus, Exhibit 140 to the Siegel Declaration in Support of Defendants' Motion for Partial Summary Judgment, which Plaintiffs hold up as their supposed smoking-gun evidence of Defendants' supposed nefarious tactics (Dkt. 257 [Pls. Reply ISO Mot. to Seal] at 7), was a 2001 *Associated Press* article discussing how "so-called Webmasters" operating from Russia and Indonesia were distributing child pornography worldwide, and why "loose laws governing the Internet and pornography there" were drawing criticism from law enforcement officials and child welfare advocates. That exhibit was specifically cited by Defendants' Motion for Partial Summary Judgment as one of several which support the point that "malicious cyber-activity emanating from Russian state and non-state actors has . . . long been" a public controversy – and indeed one which the Dossier repeatedly references. Dkt. 212 [Defs. MPSJ] at 15. The same purpose is served by ten more of what Plaintiffs characterize as supposedly "inappropriate" exhibits. *See* Dkt. 257 [Pls. Reply ISO Mot. to Seal] Ex. A (citing Siegel Decl. Exs. 18-20, 22-27, 140).

Likewise, the next step in the public figure analysis is to assess whether Plaintiffs voluntarily involved themselves in those controversies. *Silvester*, 839 F.2d at 1494. Sixteen of the other exhibits Plaintiffs label "inappropriate" (Dkt. 257 [Pls. Reply ISO Mot. to Seal] Ex. A (citing Siegel Decl. Exs. 4-17, 21, 28)) specifically support the point that by 2003, Gubarev

---

[4] Equally nonsensical is the charge that articles which never mention the Plaintiffs are "slanderous" and "defamatory" of the Plaintiffs.

began to inject himself into that controversy by launching conferences and publishing a magazine that was expressly billed as "the leading magazine for Adult Webmastering" aimed at "improv[ing]the status of the Russian language segment in . . . international online business." Dkt. 212 [Defs. MPSJ] at 2. Another eight supposedly "inappropriate" exhibits demonstrate that after Gubarev and Webzilla used those conferences and publications to let "Adult Webmasters" know about Webzilla's "liberal rules," journalists and NGOs took notice and published media articles and reports which criticized Webzilla for its practices regarding the porn traffic on its servers, including the presence of both child and pirated pornography. Dkt. 257, Ex. A (citing Siegel Decl. Exs 129-36). Defendants did not invent those reports, and evidence of media coverage of Plaintiffs prior to the publication of the Dossier, including specifically coverage related to illicit cyber-activity and "porn traffic," is obviously relevant to considering their status as public figures. *Silvester*, 839 F.2d at 1494.[5]

But perhaps most disturbing is that Plaintiffs rushed to this Court to obtain emergency relief requiring that any mention of the "Methbot fraud" be sealed, claiming that there is "no *legitimate* reason" for any reference to that scandal to be in the record. Dkt. 223 [Pls. Emerg. Mot.] at 3. As the numerous subsequent filings by all Parties demonstrate, Plaintiffs' involvement in the Methbot fraud is highly relevant to almost every issue in the case – including public figure status and the elements of falsity and damages. Most striking is that just two days ago, Plaintiffs filed a sealed brief acknowledging that their own expert (Mr. Anderson) revised his damages estimates to take Methbot into account, and they actually rely on that fact to argue that his methodology is reliable and admissible. Dkt. 278 [Opp. to Anderson *Daubert*] at 8. Of course, since Anderson's Supplemental Report was produced in May 2018, Plaintiffs knew that long before they made their representations to this Court to obtain emergency relief.

Finally, it bears emphasis that all of Plaintiffs' arguments going to the merits of the public figure issue and the relevance of various exhibits are actually *irrelevant* to the question of whether the *Times* motion should be granted, either in whole or in part. Plaintiffs have wholly mischaracterized the legal standard governing access to summary judgment motions, which is specifically what is at issue in the *Times*' motion. Essentially, Plaintiffs have argued that the

---

[5] It is also more than a little disturbing that for all their efforts to sling mud at Defendants, Plaintiffs never actually deny the factual statements made about them in these materials they contend are "inappropriate."

5

only materials to which the public has a right of access are those which the Court ultimately deems relevant, in some evidentiary sense, to its ultimate decision on summary judgment, or perhaps even only at trial. Dkt. 223 [Pls. Emerg. Mot.] at 2. As a result, Plaintiffs ask the Court to continue to seal all of these materials until "following the trial," or perhaps until at the earliest after the Court rules on the summary judgment motions. Dkt. 257 [Pls. Reply ISO Mot. to Seal] at 2.

If Plaintiffs were right, then all summary judgment motions, and indeed all pre-trial motions period, may be filed under seal unless and until a court ultimately rules and/or tries the case and determines what is "relevant." And even then, only the "relevant" materials need be unsealed. But that is not the law, and indeed Plaintiffs' position is *exactly* what courts consistently hold to be antithetical to the reasons why court records are presumptively open to the public.

The presumption of access to judicial documents is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). In order to achieve that, public access to summary judgment materials is *not* limited to what the Court concludes at some future point is "relevant," nor may public access be delayed for months or years until after summary judgment or even trial. Because if the public is only allowed to see what the Court ultimately concludes is "relevant" in an evidentiary sense, it would have no way of assessing and holding courts accountable for whether their decisions on those very points reflect the fair administration of justice. *Lugosh v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2009) ("If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision . . . documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision.")

Plaintiffs try to support their argument by quoting in isolation language from cases like like *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir. 1995) ("We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."), and *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) ("When considering whether the common law right of access applies, the cases turn on whether the documents that are sought constitute 'judicial records.' Such records are those 'materials on which a court relies in determining the litigants' substantive rights.'"). But

6

those Circuits, and others to consider the question, have expressly rejected efforts by litigants like Plaintiffs to suggest that such language supports broad sealing of substantive motions until after some relevance determination is made about the merits of the case. *See, e.g.*, *id.* at 58 ("[W]e explicitly rejected an approach to public access that would turn on whether the documents at issue actually played a role in the court's deliberations."); *Lugosh*, 435 F.3d at 123; *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 252–53 (4th Cir. 1988); *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1102 (9th Cir. 1999); *In re Continental Ill. Secs. Litig.*, 732 F.2d 1302, 1309 (7th Cir. 1984).

By contrast, the cases Plaintiffs rely on, *see* Dkt. 284 at 4-5, do not remotely support the proposition that either (1) materials not subject to any Protective Order – some of which are publicly available – may be sealed, or (2) that there is any basis for sealing any of the materials related solely to the Parties in this case. In fact, none of the cases Plaintiffs have cited relate to summary judgment motions, *Daubert* motions, motions *in limine*, or other motions in civil cases adjudicating the substantive rights of parties. *Jackson v. Deen*, 2013 WL 1911445 (S.D. Ga. May 8, 2013), actually held that all tweets submitted in connection with motions addressed to the parties should be unsealed. The only tweets it held should be sealed related to a motion to disqualify one of the parties' counsel, and the sealed tweets were purely personal communications between that counsel and his friends – not tweets by counsel concerning that litigation (which were actually unsealed as well). *Amodeo*, 44 F.3d 141, involved an investigative report by law enforcement implicating law enforcement interests and the privacy interests of non-parties. *Kravetz*, 706 F.3d 47, ordered most of the record unsealed, except for materials related to certain requests for the court to issue criminal discovery subpoenas. *Luzzi v. ATP Tour*, *Inc.*, 2011 WL 2693542 (M.D. Fla. July 12, 2011), also involved confidential investigative documents that would infringe on the privacy interests of non-parties. *United States v. Byrd*, 11 F. Supp. 3d 1144 (S.D. Ala. 2014), concerned sentencing letters that were also sealed to protect "the privacy interests of innocent third parties," and *Johnson v. Blackburn*, 2014 U.S. Dist. LEXIS 190813 (W.D. Tex. May 5, 2014), related to a letter submitted by a non-party not attached in connection with any substantive motions. There is, therefore, no support in the law for Plaintiffs' position.

## CONCLUSION

For the foregoing reasons, as set forth herein Defendants support the *Times*' motion to intervene, support in part its Motion for Access to Judicial Records, and take no position with respect to the rest of its motion.

Dated: October 31, 2018

Respectfully submitted,

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 31st day of October, 2018.

By: /s/ Adam Lazier
      Adam Lazier

# SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com