**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.
_____/

**DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO EXCLUDE TESTIMONY ABOUT THE MEANING OF STATEMENTS AT ISSUE AND INCORPORATED MEMORANDUM OF LAW**

Defendants BuzzFeed, Inc. and Ben Smith respectfully submit this motion *in limine* to exclude opinion testimony concerning the meaning of the statements at issue in this action.

**PRELIMINARY STATEMENT**

Plaintiffs' plan for attempting to prove that the Dossier was false is now clear: they plan on calling witnesses to tell the jury what the Dossier means, and then insist that their version of the Dossier's meaning is not true. But the jury does not need help from witnesses to interpret the Dossier, and evidence about its meaning should be excluded because it is irrelevant and amounts to inadmissible opinion evidence. And, even if the Court deems it marginally relevant, the evidence should be excluded because its probative value is outweighed by the danger of unfair prejudice.

**ARGUMENT**

As this Court knows, this case is about Defendants' publication of the Dossier, and particularly the passage on page 35 that says:

> [REDACTED] reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates have been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership. Entities linked to one Alexei GUBAROV [sic.] were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operations.

Plaintiffs bear the burden of proving that the statements at issue were false. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). In order to determine this, of course, the jury must first decide what they mean. Defendants believe that the statements are substantially true if Plaintiffs' servers and networks facilitated the malicious cyberactivity described in the Dossier, regardless of whether Plaintiffs themselves were at the keyboard initiating that activity. Plaintiffs' strategy, however, seems clear – they intend to call witnesses to testify that the Dossier accuses them of "being Russian spies, committing serious crimes and attempting to undermine the 2016 United States Presidential Election," Dkt. 253 at 2, and then attempt to show that not to be true. This has been borne out in Plaintiffs' deposition testimony. For example, as discussed in Defendants' *Daubert* motion seeking to exclude his evidence, Plaintiffs' purported technical expert Dr. Eric Cole explicitly purports to define parts of the Dossier in his report. *See* Ex. 1 ¶¶ 53-54 ("Buzzfeed definitively printed 'XBT/Webzilla and its affiliates had been **using** botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct 'altering operations' against the Democratic Party leadership'[.] 'Using' means active action and/or application that is verifiable.'"); *id.* ¶ 56 ("The term 'plant bugs' typically refers to the covert or illegal installation of a physical listening device in a home or office and is not a term used when referring to digital operations which is regularly referred to as 'spyware'"). And Dr. Cole acknowledged at his deposition that what he calls the "key point" of his report rests entirely on his belief that the Dossier says "that XBT itself undertook the bad acts." Ex. 2 (Cole Dep.) at 124:15-125:25.

The same is true about Plaintiffs' main fact witnesses. Aleksej Gubarev, Konstantyn Bezruchenko (XBT's Chief Technology Officer), and Nick Dvas (XBT's Chief Executive Officer) stated at their depositions that they know the allegations to be false – even without investigating them – because the Dossier accused them of personally hacking the Democratic leadership. *See* Ex. 3 (Gubarev Dep.) at 50:13-54:4 (stating that he knew Dossier was false because "dossier say that I'm personally and XBT hack democratic party servers. I know 100 percent we don't do it."); Ex. 4 (Bezruchenko Dep.) at 294:17-295:6; 302:3-303:6 (stating that he knew the allegations were false without investigation because the Dossier "specifically said Aleksej Gubarev and XBT hack it," and "we didn't do it – it's that simple."); Ex. 5 (Dvas Dep.) at 268:16-23; 279:21-281:5 (stating that he was immediately "sure" that the Dossier's allegations

2

were untrue, and "wasn't interested" in whether Bezruchenko found any link between XBT client servers and Democratic Party hack.).

The law is clear, though, that it is the role of the judge to determine whether the statements at issue are capable of defamatory meaning, and the role of the jury to determine how ordinary readers would actually understand the words.  *See, e.g.*, *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997); *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15 (11th Cir. 1985).  Testimony about meaning, whether from experts or laypeople, is inadmissible.  This evidence is irrelevant to the jury's task of assigning the words the natural meaning that would be given to them by reasonable people, and it amounts to inadmissible opinion evidence.  And even if it were relevant, any limited probative value to this testimony is far outweighed by the serious danger of prejudice.

*First*, testimony on meaning – whether from Dr. Cole or fact witnesses – should be excluded because the jury is perfectly capable of interpreting the Dossier for itself.  Under both Florida and New York law, the trier of fact must interpret the words at issue "in the context of the entire statement or publication as a whole, tested against the understanding of the average reader," *Dillon v. City of N.Y.*, 261 A.D.2d 34, 38 (N.Y. App. Div. 1999), and must "give the language a natural reading rather than strain to read it as mildly as possible at one extreme, or to find defamatory innuendo on the other."  *Weiner v. Doubleday & Co.*, 74 N.Y.2d 586, 592 (1989); *see also, e.g.*, *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) ("The court must consider all the words used, not merely a particular phrase or sentence," and "the trial court must evaluate the publication, not by 'extremes,' but as the common mind would naturally understand it.") (citations omitted); *Schiller v. Viacom, Inc.*, 2016 WL 9280239, at *8 (S.D. Fla. Apr. 4, 2016) (Ungaro, J.) ("[T]he Court must examine how a reasonable and common mind would understand the statements, and it should not give the statements a tortured interpretation.").

New York and Florida courts both recognize that no one is better placed to "give the language a natural reading," and determine "how a reasonable and common mind would understand the statements" at issue than the jury itself – and that testimony about how a particular witness understood the statements at issue is therefore irrelevant and inadmissible.  *See, e.g.*, *Burdick v. Shearson Am. Express, Inc.*, 160 A.D.2d 642, 642-43 (N.Y. App. Div. 1990) (trial court did not err in striking testimony about witnesses' "own, personal understanding of the

3

term 'forgery' as used by defendant," because "[i]t was for the jury to determine whether the word 'forgery', when taken in its natural and ordinary meaning, was susceptible to a defamatory connotation."); *Levin v. McPhee*, 917 F. Supp. 230, 238 n.7 (S.D.N.Y. 1996) (noting that "given that the issue with respect to defamatory meaning is the likely construction by proverbial reasonable person, the issue arguably is properly left to the trier of fact," and citing cases excluding such evidence), *aff'd*, 119 F.3d 189 (2d Cir. 1997); *Julian v. Am. Bus. Consultants, Inc.*, 2 N.Y.2d 1, 19 (1956) ("The direct questions put to a witness … were improper and the answers inadmissible as they sought the witness' opinion that the publication attacked the plaintiff."); *Seropian v. Forman*, 652 So. 2d 490, 498 (Fla. 4th DCA 1995) (trial judge committed "highly prejudicial error" by admitting expert evidence about meaning, because if statements at issue "conveyed the obloquy that plaintiff suggests, that fact should be readily understood by an ordinary jury without a political scientist swearing that it does.").

Because it is not helpful to the jury, such evidence is also inadmissible under the rules governing lay and expert opinion evidence. *See* Fed. R. Evid. 701 (lay opinion testimony inadmissible unless it would be "helpful to clearly understanding the witness's testimony or to determining a fact in issue"); *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (expert opinion evidence only admissible if it "assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.").

Here, then, testimony about the meaning of the Dossier should be excluded as irrelevant and unhelpful to the jury. In fact, it is difficult to imagine anyone *less* qualified to help the jury understand how an ordinary person would understand the allegations in question – without "strain[ing] to find defamation 'where none exists,'" *Dillon*, 261 A.D.2d at 38 – than Plaintiffs' witnesses. Dr. Cole never read the Dossier as a whole, Ex. 2 (Cole Dep.) at 8:20-25, meaning that his opinion will not help the jury consider BuzzFeed's publication in its totality. And Mr. Gubarev and the two XBT executives have a vested interest in the outcome of this litigation. Even aside from their obvious bias, those three men are unable to give evidence as to how the Dossier was understood by the general public because they are not, and have never been, ordinary members of that public when it comes to the Dossier. Though XBT executives are free to jump to "extreme" conclusions of their own conclusions about what the Dossier meant, that is exactly what the jury is not supposed to do.

4

*Second*, even if it is marginally relevant, testimony by Plaintiffs' witnesses about their opinions and personal understanding of the Dossier's meaning is likely to cause significant prejudice and should be excluded under the balancing test of Federal Rule of Evidence 403, which permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Because Plaintiffs' chosen witnesses can offer the jury little meaningful insight into how the average person would have understood the Dossier, their testimony "transforms a common sense issue into a technical one" and is therefore "more apt to confuse than to enlighten, more unfairly prejudicial than probative."  *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1264-65 (S.D.N.Y. 1989) (excluding expert evidence on meaning).  Such evidence would also open the door to rebuttal evidence from Defendants about how other people did not share Plaintiffs' witnesses' interpretation of the Dossier.  All of this testimony would be cumulative, confusing, and ultimately of little or no assistance to the jury's determination based on its own review of the plain language of BuzzFeed's article and the Dossier.  This evidence should therefore be excluded.

## CONCLUSION

For all these reasons, Defendants request that the Court exclude testimony concerning the meaning of the Dossier, or any statements at issue in this action.

Dated:  October 29, 2018          Respectfully submitted,

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black

5

        Roy Black
        Jared Lopez
        Black, Srebnick, Kornspan & Stumpf, P.A.
        201 So. Biscayne Boulevard
        Miami, Florida 33131
        rblack@royblack.com
        jlopez@royblack.com

*Attorneys for Defendants*

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 29th day of October, 2018.

By: /s/ Adam Lazier
Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

4838-0886-0281v.3 0100812-000009

# EXHIBITS 1-5

# REDACTED