# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.

_____/

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF ERIC COLE

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
1251 Avenue of the Americas, 21st Floor
New York, New York 10020

BLACK, SREBNICK, KORNSPAN &
STUMPF, P.A.
Roy Black
Jared Lopez
201 So. Biscayne Boulevard
Miami, Florida 33131

*Attorneys for Defendants*

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition to Defendants' Motion to Exclude the Testimony of Dr. Eric Cole is remarkable for what it does not dispute. Plaintiffs agree that Dr. Cole should not be permitted to opine on the truth of the allegations in the Dossier; they do not contest that his critique of Anthony Ferrante's opinions relies on factual assumptions that are not only speculative, but at odds with Plaintiffs' own deposition testimony; and they do not even bother to defend his unqualified and groundless opinions about journalism standards. Plaintiffs instead defend a limited rebuttal report that critiques Mr. Ferrante's opinions and goes no further. Unfortunately for them, however, that is not the report Dr. Cole produced or the testimony he proposes to give, and try as they might, Plaintiffs cannot rewrite Dr. Cole's report or opinions to comply with *Daubert* or the Federal Rules of Evidence. Dr. Cole's testimony should, therefore, be excluded.

Alternatively, even if the Court accepts Plaintiffs' argument that Dr. Cole's proposed testimony could contain *some* permissible rebuttal, it should issue an order tightly limiting Dr. Cole's testimony.

**ARGUMENT**

**A.    Dr. Cole's Conclusion That The Dossier is "False" Should Be Excluded**

Defendants began their motion ("Mot.") by arguing that Dr. Cole should be precluded from expressing an opinion about the truth or falsity of the allegations in the Dossier, becuase he conceded at his deposition that he had failed to conduct any investigation into whether Plaintiffs had actually engaged in the activities that the Dossier alleges. *See* Mot. at 6-8.

Remarkably, Plaintiffs *concede* in their Opposition that, "[a]s Defendants rightly point out, Dr. Cole was not assigned to determine the veracity of the defamatory statements, and accordingly he is not, did not and would not opine to the truth of the statements." Opp. at 4.[1] In

---

[1] Plaintiffs go on to a make a convoluted argument that Dr. Cole is not "opining *directly* as to [the Dossier's] truthfulness" and that his repeated descriptions of the Dossier as "false" mean "only that it would be improper or 'false' to rely upon Mr. Ferrante's rely upon Mr. Ferrante's conclusions to support the defamatory statements." *Id*. (emphasis added). In fact, however, Dr. Cole's report belies this tortured reading: the report could hardly be more clear that Dr. Cole goes beyond his criticism of the Ferrante Report to assert that, in Dr. Cole's own words, "the defendants made false and inaccurate statements regarding the plaintiffs." Mot. Ex. 2 (Cole report) ¶ 1; *see also id*. ¶¶ 18, 41, 59. And, even if it were accurate, Plaintiffs' reading of Dr. Cole's report – which would have the Court believe that he simply neglected to include important qualifiers like "allegedly," and failed to distinguish between criticisms of Mr. Ferrante

other words, Plaintiffs agree that an order precluding Dr. Cole from giving evidence about the truth of the allegations in the Dossier would be appropriate.

This Court should therefore issue an order making that clear, and precluding any evidence from him about the truth of the Dossier.

### B. Dr. Cole's Opinions About the Meaning of the Dossier Should Be Excluded

Next, Plaintiffs argue that Dr. Cole should be permitted to express his opinion about the meaning of the allegations at issue in the Dossier because it "*does* contain language that a juror would need assistance to understand," and because of "the danger that a jury will take Mr. Ferrante's irrelevant speculation as proof of the claims in the December Memo." Opp. at 7-9. Plaintiffs' argument here once again misconstrues their own expert's opinion.

First, Dr. Cole himself testified at his deposition that he used no special expertise to understand the meaning of the Dossier. To the contrary, Dr. Cole said that he was only "taking the statement on face value" when he concluded that "the fundamental question at issue in this case is that XBT itself undertook the bad acts," Mot. Ex. 3 (Cole Dep.) at 124:15-125:25. And even Plaintiffs' examples of the kinds of technical terms Dr. Cole could define for the jury highlight the weaknesses of their arguments – Plaintiffs claim, for example, that Dr. Cole's expertise is needed for example to explain what a "botnet" is, Opp. at 7, but Dr. Cole actually never defines the term "botnet" or says anything about botnets' "inherent malicious[ness]." He does, however, purport to define the word "using," Mot. Ex. 2 (Cole report) ¶¶ 53-54 – something that jurors will have no problem understanding for themselves. And Dr. Cole's broader claims that the Dossier is "defamatory," *id.* ¶¶ 41, 59, likewise have nothing to do with explaining specific technical language. The bottom line is that the jury is just as capable of "taking the statement on face value" as Dr. Cole, meaning that his testimony should be excluded as unhelpful – just as other courts have excluded similar expert evidence on meaning, both in defamation cases and other circumstances. *See* Mot. at 8 (citing cases); *see, e.g., Seropian v. Forman*, 652 So.2d 490, 498 (Fla. 4th DCA 1995) (trial court erred by admitting expert evidence of meaning because "[i]f *influence peddling* conveyed the obloquy that plaintiff suggests, that fact should be readily understood by the ordinary jury without a political scientist swearing that

---

and criticisms of the Dossier itself, Opp. at 4 – portrays their own expert as so sloppy with his words that his testimony cannot be trusted to help the jury.

2

it does"); *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1264-65 (S.D.N.Y. 1989) (excluding expert evidence of meaning in defamation case "[b]ecause it transforms a common sense issue into a technical one"); *cf. Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271, 282 (M.D. Fla. 2017) (noting that "[c]ourts regularly exclude expert opinions that opine on the interpretation of written contracts").   Plaintiffs simply ignore this caselaw, and fail to cite a single case in which a court has permitted expert evidence on this issue.

Second, Plaintiffs' other justification for letting Dr. Cole testify about defamatory meaning is that Mr. Ferrante is supposedly "attempting to redefine the allegations in the Dossier" by offering evidence on whether Plaintiffs' networks were involved in hacking the Democratic leadership, and that the jury needs Dr. Cole to explain "what is actually relevant in this case." Opp. at 7, 10; *see, e.g.*, Mot. Ex. 2 (Cole report) ¶ 37 ("While there is zero proof in his report that [XBT has poor security practices], even if it was [true], it is irrelevant to this case."); *id.* ¶ 59 ("In addition, whether or not XBT did or did not have adequate enterprise infrastructure is not relevant to the case…").  As Plaintiffs describe it, they anticipate using Dr. Cole to advocate for their preferred reading of the statements at issue, and then to opine as an expert that Mr. Ferrante's opinions are not "relevant" to that specific interpretation.  Opp. at 5-9.[2]   But relevance is a question of law to be decided based on the parties' legal arguments, meaning that expert evidence about relevance is inadmissible.  *See, e.g., Commodores Entm'nt Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (expert's "legal conclusions were properly struck.  The district court was the only source of the law, and [the expert's] testimony would have invaded the court's exclusive prerogative."); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."); *see also BNY Mellon, N.A. v. Affordable Holdings, Inc.*, 2011 WL 2746301, at *1 (N.D. Miss. July 12, 2011) ("Federal courts have consistently held that legal opinions are not a proper subject of expert testimony because they do not assist the trier of fact in understanding the evidence, instead merely telling the trier of fact what result to reach.").

---

[2] Because Plaintiffs are repeating their arguments from their *Daubert* motion to exclude Mr. Ferrante, Defendants respectfully refer the Court to their Opposition to that motion for a discussion of why Mr. Ferrante's proposed -evidence is plainly relevant and admissible.  *See* Dkt. 275 at 7-14.

3

At bottom, Plaintiffs are really just asking the Court to let Dr. Cole deliver their arguments about the meaning of the Dossier and the relevance of Mr. Ferrante's testimony from the witness stand. This is not a proper use of expert evidence. *See, e.g.*, *In re BankAtlantic BanCorp, Inc. Secs. Litig.*, 2010 WL 6363027, at *7 (S.D. Fla. Sept. 9, 2010) (Ungaro, J.) (excluding evidence that "amounts to nothing more than [the expert] reciting arguments defense counsel can argue in summation"); *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1378 (S.D. Fla. 2005) ("[P]roffered expert testimony will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments…. Mr. Seymour's proposed testimony will not assist the trier of fact. It is simply his opinion about what he would do if he were a juror considering the facts which need no interpretation by an 'expert.'"). Dr. Cole's opinions about the Dossier's meaning should therefore be excluded as unhelpful to the jury.

### C. Dr. Cole's Criticism of the Ferrante Report Should Be Excluded

Plaintiffs' attempts to defend the reliability of Dr. Cole's criticism of the Ferrante Report are no more persuasive. In this motion, Defendants argued that Dr. Cole's testimony should be excluded because he did not bother to gather any information about Plaintiffs or to re-do Mr. Ferrante's technical analysis before offering his opinion. Plaintiffs' primary argument in response is that Dr. Cole's failure to find out anything about the companies and events he is opining on does not matter because he is a rebuttal witness. But Plaintiffs cannot circumvent the *Daubert* standard simply by slapping a "rebuttal" label on Dr. Cole's deficient analysis. In fact, the law is clear that all expert witnesses – whether offered in chief or in rebuttal – must have a reliable basis for any factual assumptions on which they base their evidence. *See, e.g.*, *Friebel v. Paradise Shores of Bay Cty., LLC*, 20111 WL 2420230, at *3-*5 (N.D. Fla. June 13, 2011) (excluding rebuttal expert who lacked important underlying data); *In re Mentor Corp. Obtape Transorturator Sling Prods. Liab. Litig.*, 2010 WL 3522753, at *4 (M.D. Ga. Sept. 1, 2010) (precluding rebuttal experts from testifying that alternative causes actually caused plaintiffs' injuries where experts failed to conduct independent analysis).[3] Accordingly, Dr. Cole's failure

---

[3] The cases Plaintiffs cite in support of their argument that rebuttal experts need not conduct an independent investigation actually illustrate how deficient Dr. Cole's factual inquiry was. In *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017), for instance, the rebuttal expert had consulted with a local real estate appraiser about market trends specific to the area about which he was opining, and he "replicated and tested [the opposing expert's] regression

to do any research whatsoever into his XBT and/or redo Mr. Ferrante's analysis renders his opinion inadmissible.

In response to Defendants' argument that Dr. Cole should be excluded because he has no factual basis for his conclusion that Mr. Ferrante's findings could be applied to any number of internet service providers around the world, Mot. at 11-12, Plaintiffs do not deny that Dr. Cole did not actually know whether XBT is an internet service provider or who its competitors are, but claim instead that Dr. Cole's opinion is still reliable because it "is completely independent of what specific services XBT may or may not provide and who XBT's competitors are." Opp. at 11. That is absurd. Dr. Cole's actual report (as opposed to Plaintiffs' counsel's efforts to rewrite it) explicitly relies on specific claims about Plaintiffs' services and competitors. He (1) devotes more than four pages of his report to an analogy between XBT and internet service providers (companies that he describes as "similar service providers" to XBT, Mot. Ex. 2 (Cole report) ¶ 24);[4] (2) explicitly compares XBT to other ISPs mentioned in two articles he pulled off the internet and excerpted at length, *id.* ¶ 46 ("To further emphasize the challenge all ISPs have with respect to malicious traffic, please see the highlighted sections in the articles quoted below");

---

models, visually inspected the subject homes and the surrounding neighborhoods, [and] reviewed literature on appraisal standards and statistical modeling." *Id.* at 1302-03; *see also In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 290 (E.D.N.Y. 2007) (expert had directed research studies on topic of his opinion); *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 65-66 (N.D. Ind. 1996) (expert based opinion on "the record of this case"); *Henkel v. Wagner*, 2016 WL 1271062, at *12 (S.D.N.Y. Mar. 29, 2016) (expert "review[ed] the documents in this case" along with opposing report). Dr. Cole, by contrast, did not even bother to read the whole Dossier, he did not review the discovery in this case or interview Mr. Gubarev, and he did not redo Mr. Ferrante's analysis.

[4] *See also* Mot. Ex. 2 (Cole report) ¶ 39 ("[I]t is not uncommon for legitimate companies to appear on the list [of bad actors], *especially if they are an ISP.*") (emphasis added); *id.* ¶ 42 ("Mr. Ferrante fails to state that [his conclusion that Plaintiffs provided "gateways to the Internet for cybercriminals" and others] is *true for every ISP* and is not unique to XBT/Webzilla.") (emphasis added); *id* ¶ 44 (arguing that it would have been difficult for Plaintiffs to monitor its users' traffic because, "[w]hen a web site does use HTTPS, an ISP cannot see URLs and content in unencypted form"); *id.* ¶ 45 (Plaintiffs could not easily monitor user traffic because "[i]t is common practice for ISP users to utilize virtual private network (VPN) tools *which reduces what an ISP is able to see* ….") (emphasis added); *id.* ¶ 52 (saying that Ferrante described "technical functions that are normal in any ISP environment and have no relevance to actual actions taken by XBT/Webzilla."); *id.* ¶ 59 (criticizing Ferrante for "a mischaracterization of how ISPs work and operate.").

5

and (3) makes specific claims about the specific services XBT provides, stating that the company "transmit[s] over 500 Gbit/s of data (equivalent of 13+ DVD disks) per second," and that it "ENABLES the successful transmission of millions of legitimate emails and files every day." *Id*. ¶¶ 24, 41. As Defendants have pointed out, it is clear from Dr. Cole's report and deposition that he had no basis whatsoever for these factual claims. Mot. at 12. Because an expert may not base opinions on factual assumptions he has pulled out of thin air, *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004), this is fatal to the admissibility of this part of his proposed evidence.[5]

Next, Plaintiffs argue that Dr. Cole's utter failure to conduct any independent fact-gathering or to double-check Mr. Ferrante's work is not a problem because "Dr. Cole's assignment as a rebuttal expert is nothing more than to critique Mr. Ferrante's methodology." Opp. at 2-3, 11. Whatever Dr. Cole's "assignment" may have been, that is not what he opined. Dr. Cole does much more than "critique Mr. Ferrante's methodology" – he proposes to tell the jury that Mr. Ferrante's investigation was inadequate and his conclusions "baseless" because Mr. Ferrante failed to take specific steps in his investigation. *See Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 2004 WL 5486964, at *6 (M.D. Fla. Oct. 5, 2004) (excluding rebuttal expert where he "did not confine himself to merely criticizing the methodology and conclusions of [opponents'] experts," but "went well beyond that to offer his own opinions"). But, as Defendants pointed out in this motion, Dr. Cole's failure to find out anything about XBT or its business makes these opinions worthless and misleading. He chastises Mr. Ferrante, for instance, for failing to review server logs – but never took the time to find out that Defendants asked for those server logs to review them and were told many of them do not exist. *See* Mot. at 8; *see also* Ex. 1 hereto. And, indeed, Plaintiffs' claim that they did not keep certain server logs was one factor in Mr. Ferrante's conclusion that Defendants had inadequate infrastructure. *See* Mot. Ex. 1 (Ferrante report) at 29.

---

[5] Plaintiffs bizarrely claim that none of this matters because "there is no dispute in this case that XBT provides internet and computer services." Opp. at 11. The vagueness of this phrase is telling, because as the Court is likely aware the parties disagree about essentially everything else to do with XBT's business – including whether, as Dr. Cole asserts, XBT's business bears any resemblance at all to that of the major internet service providers to which Dr. Cole compares it, and whether Dr. Cole's specific claims about the amount of legitimate traffic processed by XBT are accurate.

6

And, even more oddly, Dr. Cole derides Mr. Ferrante's analysis of XBT's security practices as unsupported by "any of the depositions, communications, or any other factual information," Mot. Ex. 2 (Cole report) ¶ 37, because Mr. Ferrante failed to consult the testimony of people (XBT's "chief security officer," "security manager," or "security engineer") who appear not to exist. Mot. at 12-13. Had Dr. Cole bothered to read the deposition transcripts, he would have known that XBT's Chief Technology Officer, whose deposition Mr. Ferrante did rely on, testified that *he* was "directly responsible for network security and monitoring." *Id.* at 13. Remarkably, Plaintiffs do not dispute that Dr. Cole got these very basic facts underlying his strident criticism of Mr. Ferrante wrong. Yet still they claim that he should be allowed to repeat his misconceptions to the jury.

This is much more than a "[d]isagreement[] as to whether an expert's conclusions are correct or not" that goes to the weight of expert testimony. *See* Opp. at 12. It is exactly the sort of speculation – and even outright misrepresentation[6] – that *Daubert* and Rule 702 require the Court to preclude entirely. If the Court's gatekeeping role does not require it to exclude an opinion based on *undeniably incorrect* facts, it is difficult to imagine when expert testimony would ever be inadmissible.

Plaintiffs' attempt to defend Dr. Cole's criticism of Mr. Ferrante's technical analysis of the Bitly Data and SSL Certificate as just more rebuttal, Opp. at 11, only serves to emphasize the problems with Dr. Cole's proposed evidence. Far from "critiqu[ing] Mr. Ferrante's methodology," Dr. Cole actually agrees that Mr. Ferrante's "technical conclusions *do show* that specific IP addresses assigned to Webzilla did have traffic pass over them that 'suggested' certain types of behavior," Mot. Ex. 2 (Cole report) ¶ 47 (emphasis added), which is all Mr. Ferrante ever claimed. Dr. Cole's opinion that Mr. Ferrante's "statement that 'technical evidence suggests' is completely false, because he failed to provide any technical evidence," *id.* ¶ 59, therefore flatly contradicts his own analysis.

---

[6] Dr. Cole claims in his report, for instance, that Mr. Ferrante "provides zero deposition transcripts in his report" to support his analysis of XBT security practices. Mot Ex. 2 (Cole report) ¶ 59. There is simply no way to square that claim with the fact that Mr. Ferrante included no fewer than 21 citations to deposition transcripts in this portion of his report. Mot. Ex. 1 (Ferrante report) at 28-31.

7

Finally, Plaintiffs never even bother responding to Defendants' argument that Dr. Cole's critique is inadmissible because it goes beyond addressing "the specific contentions made by the other party's experts." *See, e.g.*, *Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, 2014 WL 12605648, at *1 (N.D. Ala. Sept. 3, 2014). That is, Dr. Cole's report responds to an opinion Mr. Ferrante does not offer – Dr. Cole argues that Mr. Ferrante's report is flawed because it presents "no definitive evidence or proof," Mot. Ex. 2 (Cole report) ¶ 20, but Mr. Ferrante never claimed to have found "definitive evidence or proof." In fact, he repeatedly and candidly acknowledged the limitations of his investigation. *See* Mot. Ex. 1 (Ferrante report) at 14-15 ("Based on information currently available, FTI cannot definitively state that the bitlink created using the Root S.A. IP address was ever sent to or received by John Podesta… FTI was not able to identify a direct technical connection to XBT infrastructure based on an analysis of the five malware samples…. FTI notes that because this is an indirect link, more data from CrowdStrike and/or the DNC is required to determine if XBT infrastructure supported the DNC Hack."). But Mr. Ferrante did find that, among other things (1) the user who successfully duped John Podesta into disclosing his email password targeted Podesta from an IP address owned by an XBT subsidiary; (2) several command-and-control IP addresses used by the Russian cyber-espionage group FANCY BEAR in the hack of the Democratic National Committee shared a unique technical identifier with an IP address owned by the same subsidiary; (3) that unique technical identifier was also used in the cyber-attack on the German parliament and was affiliated with the same method of attack upon the Democratic party described in the indictment of 12 Russian nationals; and (4) 13 of the IP addresses identified in the US Government's GRIZZLY STEPPE report on the Democratic hack belonged to that same XBT subsidiary – all of which indicates that Plaintiffs' infrastructure was likely used by Russian cyber-espionage groups to attack Democratic party leadership and is circumstantial evidence that the allegations in the Dossier are substantially true. Because rebuttal evidence that mischaracterizes the evidence-in-chief is both improper and unhelpful to the jury, Dr. Cole's critique should be excluded on this basis as well.

### D. Dr. Cole's Opinions on Journalism Standards Should Be Stricken

To their credit, Plaintiffs at least appear to acknowledge that it not worth wasting their breath over the most indefensible part of Dr. Cole's report, where he – a man with no evident journalism expertise and who admittedly knows nothing about BuzzFeed's investigation into the

8

Dossier – purports to opine on what "an organization like BuzzFeed would be expected to know or at least verify before publishing an article." Mot. Ex. 2 (Cole report) ¶ 56.

No doubt recognizing that Dr. Cole is patently unqualified to offer these opinions, and that the opinions themselves are groundless and unreliable, Plaintiffs wisely ignore this issue entirely. In the absence of any opposition from Plaintiffs, this Court should preclude Dr. Cole from offering the jury his views on journalism standards.

### E.     In the Alternative, the Court Should Strictly Limit Dr. Cole's Testimony

Alternatively, even if the Court accepts that Plaintiffs' concessions in response to this motion can salvage some aspect of Dr. Cole's testimony as proper rebuttal, it should nonetheless issue an order precluding Dr. Cole from testifying on any of the issues on which his testimony is plainly inadmissible. This would include, at a minimum, precluding testimony (1) about the truth or falsity of allegations in the Dossier; (2) about the meaning of the Dossier, and about whether Mr. Ferrante's evidence is relevant to this case; (3) criticizing Mr. Ferrante for not taking specific steps in his investigation; (4) about the services Plaintiffs provide, and comparing Plaintiffs to other companies; and (5) about the reasonableness of Defendants' conduct, journalistic standards, or what "an organization like BuzzFeed would be expected to know or at least verify before publishing an article."

### CONCLUSION

For all these reasons, Defendants request that the Court strike the expert report of Dr. Eric Cole and exclude his testimony at trial.

Dated:  November 5, 2018            Respectfully submitted,

<u>/s/ Katherine M. Bolger</u>
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

9

<u>/s/ Roy Black</u>
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 5th day of November, 2018.

By: /s/ Adam Lazier
Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

4846-2408-6393v.3 0100812-000009