**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

  Defendants.

_____/

**DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION TO**
**EXCLUDE THE EXPERT OPINIONS OF ANTHONY FERRANTE**

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
1251 Avenue of the Americas, 21st Floor
New York, New York 10020

BLACK, SREBNICK, KORNSPAN &
STUMPF, P.A.
Roy Black
Jared Lopez
201 So. Biscayne Boulevard
Miami, Florida 33131

*Of Counsel*:
Nabiha Syed
BuzzFeed, Inc.
11 E. 18th Street, 13th Floor
New York, New York 10003

*Attorneys for Defendants*

**PRELIMINARY STATEMENT**

Plaintiffs' motion to exclude the expert opinions of Anthony Ferrante is exactly what Defendants have come to expect—a witty and superficial treatment of a complicated topic to distract this Court from the weakness of their position.

And it is no wonder why.  Anthony Ferrante—a former Director for Cyber Incident Response on the U.S. National Security Council, former Chief of the Staff of the FBI's Cyber Division, and the current Global Head of Cybersecurity at FTI Consulting, Inc. ("FTI")[1]—has found irrefutable technical evidence of something that Plaintiffs have denied since the Dossier's publication: ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

In addition, Mr. Ferrante found evidence that ████████████████████ ████████

███████████████████████████████████████████████

████████████████████ He further identified evidence that ██████████████████

██████ █████████████████████████████████████████

██████ He also concluded that XBT and its affiliates ██████████████████ ████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

But Plaintiffs ask this Court to strike this evidence as irrelevant because, they claim,

███████████████████████████████████████████████

---

[1] *See* Plaintiff's Motion to Exclude Anthony Ferrante, Ex. 1 ("Ferrante Report" or "Report") at 2.



That argument fails as a matter of law, for multiple reasons.

*First*, defamation law allows defendants to offer evidence that an allegedly defamatory statement was *substantially true*.  Contrary to Plaintiffs' self-serving arguments, ███████████

*Second*,

*Third*, Mr. Ferrante's evidence supports

*Finally*, Mr. Ferrante's evidence regarding ███████████ is directly relevant to other issues in the case, including damages and the nature of Plaintiffs' reputation before the Dossier's publication.

Plaintiffs' objections also "plainly go to the weight and sufficiency of [Mr. Ferrante's] opinions rather than to their admissibility."  *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001).  Plaintiffs complain that Mr. Ferrante's conclusions do not prove false their own self-serving reading of the Dossier and fault him for noting when the data "suggests" rather than unequivocally proves certain conclusions.  But "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence."  *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK* Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  Instead, these arguments should be raised at trial through "[v]igorous cross-examination" and "presentation of contrary evidence."  *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 596 (1993).

Finally, Plaintiffs provide no other basis to strike Mr. Ferrante's opinion.  Plaintiffs do

not challenge Mr. Ferrante's qualifications as an expert, and they do not offer any basis to find that his methodologies are unreliable under *Daubert* and *Kumho*.  As for Plaintiffs' obsession with how much Mr. Ferrante was paid, they are free to raise that at trial too.  But it should hardly come as a surprise that conducting a complex investigation about a subject that government authorities have already spent hundreds of millions of dollars investigating— ███████████ ████████████████████████████████████████████████████████████—is an expensive undertaking.  Accordingly, Plaintiffs' *Daubert* motion should be denied.

## FACTUAL BACKGROUND

### A.     The Ferrante Report

As his Report discloses, Mr. Ferrante conducted a technical investigation that involved reviewing available technical data related to the malicious cyberattacks on Democratic institutions during the 2016 election, as well as recent major cyberattacks the world-over, to determine ████████████████████████████████ ████████████████████████████████████████ ████████████████████  Based on this methodology, Mr. Ferrante made several findings:

████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ █ █████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

---

[2] Unless indicated otherwise, all cited exhibits are annexed to the Declaration of Katherine M. Bolger in Support of Defendants' Opposition filed herewith.





████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

██████████████████████████████ Mr. Ferrante reviewed the depositions of XBT's CTO Konstyantin Bezruchenko and Root's Managing Director Marc Goederich**,** and identified numerous areas where XBT and Root ████████████████████████████████ ████████████████████████████████

██████████████████████████████████████ Mr. Ferrante reviewed public sources and discovered that ████████████████████████ ███████████████████████████████████ ██████ █████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████

**ARGUMENT**

In determining the admissibility of expert testimony pursuant to Fed. R. Evid. 702, the

████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████

█

Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." *Id.*.

The Court's focus in a *Daubert* motion "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC–8*, 326 F.3d at 1341. Accordingly, a party's "challenges to the weight and sufficiency" of expert testimony "are not properly raised under *Daubert*." *Walters v. Altec Indus., Inc.*, 2003 WL 25686829, at *2 (M.D. Fla. Sept. 3, 2003) (burden "is not to prove that the proffered opinions are correct, but that by a preponderance of the evidence they are reliable and relevant").

## I.    MR. FERRANTE'S TESTIMONY IS RELEVANT AND HELPFUL

### A.    Mr Ferrante's Testimony Is Relevant

Taking the *Frazier* test in reverse order, it is clear that Mr. Ferrante's testimony is relevant to whether Plaintiffs can prove that the Dossier is materially false and to their measure of damages. Expert evidence is relevant if it "logically advances a material aspect of the proposing party's case." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted). There is no question that Mr. Ferrante serves this purpose.

#### 1.    Mr. Ferrante's Testimony Is Relevant To Material Falsity

The Dossier includes the statement that "a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic . . . to steal data . . . [from] the Democratic Party leadership. Entities linked to one Aleksei Gubarov were involved . . . ." Ex. 1 (Dossier). The day after the Dossier was published, XBT released a statement, which included the following:

> Online publication Buzzfeed published an unsubstantiated report on Tuesday, January 10, that alleged that Webzilla, its parent company XBT Holding and their representatives were connected to the emails leaked from the Democratic Party in

the United States. Webzilla and XBT Holding absolutely deny having had any
connection with this activity.
There has been absolutely no involvement by Webzilla, XBT or any of its other
subsidiaries with the people or alleged activities in this unsubstantiated report.

Ex. 12 (Jan. 12, 2017 XBT Statement).  Mr. Ferrante's investigation, however, concluded that ██



███████████████████████████████████████████

███████████████████████████████████████████

████████████████████ Mr. Ferrante's evidence likewise indicates that the public

statement XBT released in response to the Dossier was false, because ██████████████

███████████████████████████████████████████

██████████████████████ It is an insult to common sense to suggest that

such testimony is irrelevant to the jury's assessment of whether the Dossier's allegations against

Plaintiffs were materially false.  And it certainly has no basis in defamation law.

Plaintiffs "bear the burden of showing that the speech at issue is false." *Philadelphia
Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986).    But "[t]he alleged false statement does
not have to be 'perfectly accurate' if the 'gist' or the 'sting' of the statement is true." *Turner v.
Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016) (citation omitted), *aff'd*, 879 F.3d 1254 (11th
Cir. 2018); *see also* Hon. Robert D. Sack, SACK ON DEFAMATION, LIBEL, SLANDER AND RELATED
PROBLEMS, § 3.7 (2006) ("The proof of truth or falsity must go to the 'gist' or 'sting' of the
defamation").  Thus, defendants are entitled to prevail in defamation actions when they can show
that the statement at issue is substantially true—even if not accurate in every detail.  *See Printers
II, Inc. v. Prof'ls Publ'g, Inc.,* 784 F.2d 141, 146-47 (2d Cir. 1986); *Vetere v. Associated Press,
Inc.,* 1989 WL 39664 (S.D.N.Y. Apr. 17, 1989) (statement that plaintiff is "a former member of
the American Nazi Party" substantially true even though he "denies that he was ever a member
of the American Nazi Party" because he distributed literature on behalf of National Socialist
White People's Party and participated in one of their marches); *Miller v. Journal-News*, 211
A.D.2d 626 (N.Y. App. Div. 1995) (statement that plaintiff was suspended was substantially true
even though he was only placed on administrative leave); *Weber v. Multimedia Entm't, Inc.*,
2000 WL 526726, at *10 (S.D.N.Y. May 2, 2000) (description of plaintiff as drug addict was
substantially true because plaintiff "admits to having used cocaine and marijuana, and possibly
amphetamines, albeit some years before the taping of the Program").  A "statement is not
considered false unless it would have a different effect on the mind of the reader from that which

the pleaded truth would have produced." *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) (citation and internal quotation marks omitted). And in this case, whether "as a whole" the statement at issue in the Dossier "is substantially true is an issue for the jury." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014). Thus, Mr. Ferrante's testimony is highly relevant because Defendants are entitled to argue to the jury that if the Dossier had simply recounted the facts as Mr. Ferrante will testify to them, it would not have had a materially different effect on the minds of the readers than the words Christopher Steele actually used.

Mr. Ferrante concludes that █████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████

Nonetheless, Plaintiffs claim that ███████████████████ ████████████████████████████████████████████ █████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████████████████████ ███████████████████████████████████

█


Plaintiffs are free to argue to the jury they should interpret the Dossier that way, but how to interpret what the Dossier alleges is the jury's province, not something to be dictated by Plaintiffs.  *See* Defendants' Motion *In Limine* No. 9.

If the jury credits that position, it could reasonably conclude that that "gist or sting" of the Dossier does not materially "differ[] from the actual truth."  *Klayman*, 22 F.Supp.3d at 1254.

That is especially so because Plaintiffs have spent the last two years denying that any election-related hacking activity was conducted from their infrastructure by anyone, period. XBT's public statement on January 12, 2017 claimed "absolutely no involvement" with the "alleged activities" in the Dossier.  Ex. 12.  But the only evidence Plaintiffs have ever offered to support that is their own self-serving *ipse dixits* and an expert opinion based entirely on self-serving *ipse dixits*.[5]  XBT executives

simply asserted that they "knew" it was not true.[6]  *See, e.g.*, Ex. 6 at 302:25-303:6 ("Q. You're saying it is because I say it is . . . why are you so sure you didn't do it? A. Because we didn't do it.  It's—it's that simple.

_____

We didn't do it."); 

; Ex. 14 (Deposition of Jochem Steman) at 79:9- 82:20 ("Q: Sitting here today, do you believe the allegations are true? A: No. Q: How do you know? A: Because I know.").

Plaintiffs have changed their story and the nature of their *ipse dixits*.

They offer no evidence to support that assertion, but rather just demand that this Court "take their word for it." Report at 11. But that is a credibility question for the jury to decide; the Court is certainly not required to credit Plaintiffs every time they come up with a new, self-serving story in response to expert testimony whose substance they do not contest. To the contrary, the jury is entitled to consider whether Mr. Ferrante's evidence, Plaintiffs' shifting explanations, and other evidence in the case support the conclusion that Plaintiffs' protestations of innocence lack credibility. *See City of St. Petersburg*, 2009 WL 3335013, at *4; *Walters*, 2003 WL 25686829, at *3; *see also Klayman*, 22 F.Supp.3d at 1254.

For example in *Wells v. Liddy*, the plaintiff, a secretary who worked in the DNC office that was the target of the Watergate break-in, sued Gordon Liddy for saying she was involved in a call-girl ring. 37 F. App'x 53, 55 (4th Cir. 2002). The court admitted evidence that there was prostitution in a building with which Wells was affiliated because it was evidence of substantial truth. *Wells*, 37 F. App'x at 60-61. The Fourth Circuit concluded the admission of this evidence was proper because "evidence that a prostitution ring was operating at the Columbia Plaza is only one piece of circumstantial evidence that Liddy presents in an attempt to draw the conclusion that Wells was connected with the prostitution ring. It is a well-settled principle that

"circumstantial evidence is no less probative than direct evidence." *Wells*, 37 F. App'x at 68 n.9 (citation omitted); *see also Galaxy Computer Servs., Inc. v. Baker*, 325 B.R. 544, 563 (E.D. Va. 2005) (denying motion to exclude computer expert who could testify that files at issue "were deleted or altered sometime after June 19, 2003" but could not "specify who deleted the data from the hard drives or when the data was deleted"). Here as well, Mr. Ferrante offers important evidence, both direct and circumstantial, that is relevant to establishing the substantial truth of the allegedly defamatory statement however the jury may construe it.

        2.    <u>Mr. Ferrante's Evidence Supports That Defendants<br>Reasonably Published Christopher Steele's Allegations</u>

Mr. Ferrante's evidence also supports Christopher Steele and his sources' credibility, another key issue in dispute. Whatever the standard of fault in this case, Plaintiffs will argue that it was irresponsible of Defendants to publish unverified allegations made by Mr. Steele and based on Steele's sources. Mot. at 4-5. But Mr. Ferrante's evidence demonstrates that there was good reason for Mr. Steele's sources to ██████████████████████████████ ████████████████████████████████████████████████████████, and that it was thus not irresponsible of Defendants to view Mr. Steele as a highly credible source.

        3.    <u>Mr. Ferrante's Testimony Is Relevant to Damages</u>

Finally, Mr. Ferrante's testimony is also relevant to the issue of damages. As explained more fully in Defendants' motion to exclude Jeffrey Anderson (Dkt. 260), after Defendants raised ████████████ during the depositions of XBT executives, Plaintiffs' damages expert hastily revised his estimate █████████ ████████████████████████████ █████ ██████████████████████. Plaintiffs have thus conceded that ██████ is directly relevant to whether their alleged damages were caused by the Dossier or other factors.

Regardless of whether Mr. Anderson is permitted to testify, Plaintiffs will presumably try to offer some theory of actual damages, as their trial exhibits indicate.[7] If the Court permits that, Defendants will be entitled to challenge their claims and point out ████████████████████ ████████████████████████████████████████. Mr. Ferrante's expert testimony will help explain to the jury what ████████████████████████ ███████ which will help the jury's assessment of ████████████████████████ claimed damages.

---

[7] As set forth in Defendants' Motion in Limine No. 7, Defendants object to any attempts by Plaintiffs to use a theory of damages not disclosed in discovery.

Mr. Ferrante's testimony about ████████████████████████ ████████████████████████ and ████████████████████████████ ████████████████████████ are also highly relevant to damages.  Courts have long recognized that, even if a defendant's statements are false, a plaintiff's other disreputable conduct mitigates damages because a defendant can show that "if [the defendant] had printed the truth about [the plaintiff], his reputation would have been tarnished."  *Lawlor v. Gallagher Presidents' Report, Inc.*, 394 F. Supp. 721, 734 n.26 (S.D.N.Y. 1975), *remanded without opinion*, 538 F.2d 311 (2d Cir. 1976); *see also Condit v. Dunne*, 225 F.R.D. 100, 110 n.4 (S.D.N.Y. 2004) (plaintiff's previously unreported sexual relationships relevant to mitigation of damages because "both publicly available information and Condit's private actions could have contributed to Condit's alleged reputation damage"); *Crane v. N.Y. World Telegram Corp.*, 308 N.Y. 470, 476 (1955) ("Well settled is the basic rule that the amount of plaintiff's recovery may be reduced by proof of facts 'tending but failing to prove the truth' of the libel's charge.") (citation omitted).  "In an action for defamation or libel … the issue of the plaintiff's reputation and character scarcely can be avoided because the plaintiff typically seeks to recover compensation for damage to his or her reputation."; *Schafer v. Time, Inc.*, 142 F.3d 1361, 1370 (11th Cir. 1998) (holding that evidence regarding specific instances of misconduct by plaintiff are admissible in libel case under Fed. R. Evid. 405(b)).  It is also well-established that defendants in a defamation action may offer evidence of pre-existing information critical of Plaintiffs.  *See Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir.1986) (allowing evidence of public knowledge of plaintiff's prior bad acts on the question of substantial truth and damages).  In their motion to exclude, Plaintiffs object to the reliability of the sources that Mr. Ferrante surveyed.  *See* Mot. at 2-3, 12.  But Plaintiffs' belief that the sources are not credible is a topic for cross-examination, not a basis to exclude.  Mr. Ferrante's testimony is, therefore, certainly relevant to this proceeding.

### B.    Mr. Ferrante's Testimony Will Help Explain Complex Concepts for the Jury

Finally, Mr. Ferrante's testimony will be helpful to the jury because this case involves complex technical concepts, including web-hosting, IP addresses, hacking, botnets, and technical indicators of compromise.  Expert testimony is appropriate where it "would doubtless assist the jury in understanding the concepts and issues of this case."  *Remington v. Newbridge Secs. Corp.*, 2014 WL 505153, at *3 (S.D. Fla. Feb. 7, 2014) (holding expert's testimony would assist the jury "given the highly technical nature" of issues in the case); *see also Palm Beach Golf Ctr.-*

13

*Boca, Inc. v. Sarris*, 2016 WL 4154912, at *2 (S.D. Fla. May 24, 2016) (holding expert testimony was necessary where the dispute's issues where "arcane and inaccessible even to many legal professionals not versed in the subject").  Here, Plaintiffs' fact witnesses have some fluency in these topics by nature of their profession, but Defendants will need to rely on Mr. Ferrante to offer direct testimony to explain these terms and concepts, to contextualize Defendants' cross-examination of Plaintiffs' witnesses, and to provide a foundation for Defendants' arguments to the jury.  And given that Mr. Ferrante was a university professor with more than 10 years' experience investigating cybercrimes, he is perfectly suited to provide that testimony.  Because Mr. Ferrante's testimony would be relevant and helpful, he should be permitted to testify at trial.

## II.    MR. FERRANTE'S TESTIMONY IS RELIABLE

### A.  Plaintiffs Do Not Challenge the Methodology of Mr. Ferrante's Technical Investigation

As an initial matter, and perhaps most tellingly, nowhere in their *Daubert* motion do Plaintiffs challenge Mr. Ferrante's methodology, as detailed in his Report.  As a matter of law, *Daubert* motions must challenge the expert witness' methodology not the weight and sufficiency of his conclusions.  *Walters*, 2003 WL 25686829, at *3.[8]  *See also City of St. Petersburg v. Total Containment, Inc.*, 2009 WL 3335013, at *4 (S.D. Fla. Mar. 19, 2009).  And here, Plaintiffs do not challenge:

- Mr. Ferrante's methods for identifying the infrastructure of IP addresses that have historically been registered to XBT subsidiaries (Report at 9-11).  ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████

- Mr. Ferrante's methodology for analyzing the Bitly data, identifying the four bitlinks designed to look like custom Google security pages for Clinton campaign manager John Podesta, translating the encoded URLs ████████████████████████ ████████████████████████████

- Mr. Ferrante's methodology for identifying an SSL certificate ████████████████ ████████████████████; and

- ████████████████████████████████████████████████████████

Plaintiffs also do not (and cannot) dispute that ████████████████████████ ████████████████████████████████████████████████████████████████████

---

[8] In fact, Mr. Ferrante's findings are also highly relevant, as explained in Section III *infra*.



Nor do Plaintiffs dispute the accuracy of the testimony attributed to Konstyantin Bezruchenko and Marc Goederich, or provide any basis to doubt the reliability of Mr. Ferrante's assessments of ███████████████ ██████████████████████████████. Report at 29-31.

In fact, Plaintiffs have ***no substantive response whatsoever*** to the findings from Mr. Ferrante's technical investigation regarding the Bitly link in the Podesta email, Ex. 17 (Report Ex. 4) at 7. Their own rebuttal expert, Dr. Eric Cole, admitted that he did not even review the data produced by Bitly and did not otherwise attempt to replicate any of Mr. Ferrante's technical analysis. Dkt. 259-3 (Deposition of Eric Cole) at 12:1-13:6, 15:1-17:9; 33:14-43:11; 50:12-51:5, 116:23-117:13, 131:18-133:4. Neither Dr. Cole's report nor Plaintiffs' *Daubert* motion even mentions the SSL certificate finding; instead, Plaintiffs simply assert that ███████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ Because Plaintiffs did not challenge Defendants' methodology, therefore, there motion to exclude should be denied.

**B. Mr. Ferrante's Opinions Are Not "Unreliable"**

Lacking any basis on which to challenge Mr. Ferrante's methodologies, Plaintiffs instead try to argue that various data Mr. Ferrante examined is "unreliable" for four reasons, each of which is unconvincing. *First*, Plaintiffs claim it is unreliable because it came from reports published by governments and other security firms or from third parties other than the Plaintiffs.[9] But "[e]xperts routinely rely on the work of others, a practice permitted by Fed.R.Evid. 703, so long as the facts or data on which they rely is of the type reasonably relied on by experts in the relevant field." *City of St. Petersburg*, 2009 WL 3335013, at *4; *see also U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768, 775 (N.D. Ill. 2009) ("That Florez mentions other facts in evidence in his reports—facts that a competent investigator would no doubt regularly

---

[9] Plaintiffs refused to produce the vast majority of the technical log data that Defendants requested, claiming that the company did not maintain such logs. *See* Ex. 18 (October 2017 Emails Between Plaintiffs' and Defendants' Counsel).

rely on for context in the field—is not a basis to exclude his testimony.").  As Mr. Ferrante explained in his Report and at his deposition, it is "a common industry investigative technique" to rely on repositories of IOCs and other data published by third parties, including threat intelligence reports by governments and cybersecurity firms.  Ex. 2 at 122:20-123:4; *see also* Report at 9 n.5 (explaining that "[c]ybersecurity experts, including myself, regularly rely on this information in our work").  Plaintiffs do not dispute that this is common investigative practice, nor does Plaintiffs' rebuttal expert: indeed Mr. Cole copies and pastes two third-party articles *in their entirety* into his report.  Dkt. 259-2 at 12-15.  ███████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████      ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████      ████████████Accordingly, Plaintiff's claim that Mr. Ferrante is relying on data that is "anonymous and unsubstantiated" is simply incorrect.

*Second*, Plaintiffs incorrectly argue that Mr. Ferrante's analysis of this data is "rank speculation."  Mot. at 8-9.[12]  To the contrary, Mr. Ferrante meticulously explained the basis for



[12] The cases cited by Plaintiff are inapposite.  In *Affiliati Network, Inc. v. Wanamaker*, No. 1:16-cv-24097-UU, 2017 WL 7361048 (S.D. Fla. Aug. 14, 2017), the court excluded an expert who relied solely on anonymous online complaints and ratings to conclude an ultimate issue in the case: whether the defendant had caused damage to the plaintiff's reputation.  *Id.* at *9.  Similarly, in *Bowe v. Pub. Storage*, No. 1:14-cv-21559-UU, 2015 WL 10857339 (S.D. Fla. June 2, 2015),

his opinions, documented the technical evidence that he found, and noted the limits of his information where applicable.  Plaintiffs are again really just criticizing Mr. Ferrante's evidence for being circumstantial, but as noted above, that is no basis for excluding it.  *See, e.g.*, *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998).  Most importantly, Mr. Ferrante's opinions—in direct contrast to those offered by Plaintiffs' rebuttal expert, Dr. Eric Cole[13]—do not invade the province of the jury by offering definitive assertions of whether the statements in the Dossier are "true" or "false," or whether they are "defamatory."

   *Third*, Plaintiffs claim that because Mr. Ferrante describes the evidence as "suggesting" certain conclusions, that means his opinions are "speculation" and unreliable.  That is not remotely the case.  "[A]bsolute certainty is not required" of an expert.  *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988); *see also United States v. Barnes*, 481 F. App'x 505, 514 (11th Cir. 2012) (affirming admission of experts who testified that hair and footprints found at scene were "consistent with" and "corresponded" to defendant and "could have" come from him).  As Mr. Ferrante explained to Plaintiffs' counsel at his deposition:

> I think you're oversimplifying complex cyber investigations. They're not binary.
> They're not black and white.  And what we've done is collect substantial
> evidence that most certainly links XBT to the described malicious activity.

Ex. 2 (Ferrante Dep.) at 61:16-21.  Unlike Dr. Cole, Mr. Ferrante was conservative in his language and did not offer opinions that overstated the underlying evidence.  That makes his testimony *more* reliable, not less.

   *Finally*, Plaintiffs claim that because Mr. Ferrante relied on his professional experience to critique XBT's practices and policies, his opinions must be "unreliable."  But, "[e]xperts have knowledge of the standards that govern their fields—that is part of what qualifies them as

---

this Court excluded an expert who opined about the sufficiency of the evidence to prove an element of the case, thereby invading the province of the jury.  *Id.* at *4. In that case, the expert had sought to offer literal "hypotheticals"— i.e., speculating about harm to a hypothetical plaintiff.  There is nothing hypothetical about Mr. Ferrante's Report, which details the specific technical data upon which it relies.

[13] As discussed more fully in Defendants' *Daubert* motion to exclude the testimony of Dr. Eric Cole (Dkt. 259), Dr. Cole repeatedly asserted that the statements in the Dossier were "false" and "defamatory," despite admitting that he undertook *no* investigation to determine their truth or falsity (relying only on Plaintiffs' say-so) and has no expertise in defamation.  *See* Dkt. 259 (Cole *Daubert*) at 3-4, 6, 8, 10. This is precisely the type of "advoca[cy] for a certain result in the guise of offering expert opinions" that is inadmissible.  *Bowe*, 2015 WL 10857339, at *4.

experts." *Erickson v. Baxter Healthcare, Inc.*, 131 F. Supp. 2d 995, 1001 (N.D. Ill. 2001).  For this reason, "there is no question that an expert may still properly base his testimony on professional study or personal experience."  *Maiz*, 253 F.3d at 669 (internal quotation marks omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)) (rejecting party's claim that exert testimony was not reliable because it was "based largely on his personal experience rather than verifiable testing or studies").  Mr. Ferrante's professional experience includes leading complex cyber-investigations and directing responses to malicious cyber-activity in the public and private sector, and he currently leads FTI's practice providing expertise on "cybersecurity resilience, prevention, response, remediation, and recovery services."  Report at 2.  There is no question that Mr. Ferrante's experience permits him to testify about best practices within the industry in which he has worked at the highest levels for more than a decade.



    Moreover, Mr. Ferrante did not simply make a conclusory statement that ███████████ ████████████; he identified specific statements by Bezruchenko and Goederich and ██████████████████████████████████████████████████████████████ ██████████████████[14]  Similarly, Plaintiffs' insistence that Mr. Ferrante ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████  Mr. Ferrante obviously has extensive experience with best practices regarding cybersecurity for tech companies, which include web-hosting companies.  And even if he did not directly work with web-hosting companies, he is still entitled to testify "regarding narrow sub-topics within his broader expertise."  *Remington*, 2014 WL 505153, at *4.  ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████

    Accordingly, Mr. Ferrante's methodology in reaching his conclusions is "sufficiently reliable" to be admitted.  *Frazier*, 387 F.3d at 1260.

## III.   MR. FERRANTE IS QUALIFIED AS AN EXPERT

    Finally, Plaintiffs do not even appear to dispute the first of the *Frazier* factors – i.e. they do not challenge to Mr. Ferrante's qualification as an expert.  *See, e.g., Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 390 (S.D.N.Y. 2010) (computer forensics expert was qualified

---

[14] Plaintiffs never asked Mr. Ferrante to provide additional detail about any of these opinions at his deposition.

under *Daubert* where he had "twelve years of law enforcement experience in computer crime forensics and three years of experience in private computer forensics" and taught classes on the subject). Nor could they: Mr. Ferrante is obviously qualified to testify on the subjects set forth in his expert report. As disclosed in his Report, Mr. Ferrante has "more than 15 years of top-level cybersecurity experience, providing incident response and preparedness planning to more than 1,000 private sector and government organizations, including over 175 Fortune 500 companies and 70 Fortune 100 companies." Report at 2; *see also* Ex. 20 (Ferrante CV, Report Ex. 1). Mr. Ferrante is currently the Senior Managing Director and Global Head of Cybersecurity at FTI Consulting, Inc. ("FTI"), where his consulting practice focuses on "cybersecurity resilience, prevention, response, remediation, and recovery services." *Id.* In this role, Mr. Ferrante assists clients with both "proactive" and "reactive" cybersecurity services, including compliance with regulatory standards, breach response, and complex cyber-investigations. Mr. Ferrante testified that such investigations may "rang[e] from an audit of an organization to ensure that they are compliant with new defense regulatory requirements, an internal investigation to identify an insider threat, a cybersecurity incident that may have been facilitated by an internal or external actor, to after an incident would occur to reconstruct the events and determine what happened, how it happened, and who was responsible." Ex. 2 at 7:20-13:22.

Prior to joining the private sector, Mr. Ferrante served on the U.S. National Security Council as the Director for Cyber Incident Response, coordinating "U.S. response to unfolding domestic and international cybersecurity crises and issues." Before that, he was Chief of Staff for the FBI's Cyber Division, having joined the FBI in 2005 and served as a member of its "Cyber Action Team." Mr. Ferrante has also taught as an adjunct professor of computer science at Fordham University's graduate school, where he founded and co-directed the Masters of Science in the Cybersecurity Program and served as co-director of the cybersecurity research program. Report at 2; Ex. 20.

As Plaintiffs implicitly concede by declining to challenge his qualifications, Mr. Ferrante is qualified to serve as an expert.

## CONCLUSION

For the reasons set forth above, Defendants' *Daubert* motion to exclude Anthony Ferrante should be denied in full.

Dated:  October 29, 2018                    Respectfully submitted,

<u>/s/ Katherine M. Bolger</u>
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine, LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

<u>/s/ Roy Black</u>
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 29th day of October, 2018.

By: /s/ Adam Lazier
　　　　Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

21