# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# Case No.: 17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.

_____/

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF JEFF ANDERSON

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
1251 Avenue of the Americas, 21st Floor
New York, New York 10020

BLACK, SREBNICK, KORNSPAN &
STUMPF, P.A.
Roy Black
Jared Lopez
201 So. Biscayne Boulevard
Miami, Florida 33131

*Attorneys for Defendants*

**PRELIMINARY STATEMENT**

Plaintiffs' arguments make clear that this Court need not consider the specifics of Mr. Anderson's methodology, because the end product – his estimates of XBT's alleged "lost business value" and the supposed "benefit to BuzzFeed" from publishing the Dossier and nine news reports – are flatly inadmissible as a matter of law. And even a cursory review of those estimates makes clear that a calculation tied to a wholly arbitrary date untethered from the occurrence of any concrete injury, which produces a "range" of alleged damages where the high and low ends are ███ million apart, fails to satisfy Florida's requirement that damages be calculated with "reasonable certainty." And even if the Court does wade into the "data points" Anderson used, Plaintiffs' arguments merely reinforce why his methodology is unreliable and thus fails *Daubert*'s threshold for admissibility. Mr. Anderson's testimony should therefore be excluded.

**ARGUMENT**

**I.     ANDERSON'S OPINIONS ARE IRRELEVANT AND THEREFORE INADMISSIBLE.**

**A.     <u>XBT May Not Seek "Lost Business Value" to its Ongoing Business</u>**

Plaintiffs argue that under Florida law a viable business may recover either its lost business value ("LBV") or its lost profits. Opp. at 11-12. They point to no case that says that, and Florida law is expressly to the contrary. *See Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2009 WL 10668573, at *2 (S.D. Fla. Apr. 13, 2009). ("It is well established that, under Florida law, '[i]f a business is completely destroyed, the proper measure of damages is the market value of the business ... [but if] the business is not completely destroyed, then it may recover lost profits.'") (citation omitted); *see also In re Sherwood Invs. Overseas Ltd.*, 2016 WL 5719450, at *9-10 (M.D. Fla. Sept. 30, 2016) (damages calculated as "lost profits" are only available to continuing businesses and "lost business value" is only available where there has been complete destruction of a business). *See also Montage Grp., Ltd. v. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 193 (Fla. 2d DCA 2004) ("If a business is completely destroyed, the proper total measure of damages is the market value of the business on the date of the loss.").

Indeed, the Florida standard jury instructions for business tort cases, which both parties relied on in their Proposed Jury Instructions, make this unambiguously clear:

1

> 504.4 DAMAGES FOR COMPLETE DESTRUCTION OF BUSINESS
>
> If (claimant) proved that (defendant) completely destroyed (claimant's) business, then you must award (claimant) damages based upon the market value of (claimant's) business on the date (claimant's) business was destroyed.
>
> NOTE ON USE FOR 504.4
>
> The court should give this instruction when the claimant seeks damages for the complete destruction of a business.  **If a business has not been completely destroyed, then damages based upon the market value of the business are not appropriate, and the court should not give this instruction.  Instead, the court should give instruction 504.3 regarding lost profits.**

Ex. 1 (emphasis added).  Consistent with Florida law, Plaintiffs in their Proposed Jury Instructions therefore *never seek an instruction on LBV* – instead, they only seek instruction 504.3 on lost profits.  Dkt. 237 (Joint Pretrial Stipulation) Ex. C at 10-11.  That Plaintiffs do not request a jury instruction on the damage theory Anderson proffers, and instead ask that the jury be instructed on a measure of damages Anderson does *not* use, underscores why his testimony is inadmissible as a matter of law and would be highly prejudicial.

Plaintiffs' position that viable businesses may elect between seeking LBV and lost profits also misunderstands the point of the two different ways of measuring damages.  As the above jury instruction illustrates, LBV is a retrospective calculation of what a business's value was as of the actual date it was destroyed.  *Montage Grp.*, 889 So. 2d at 193.  It is the most accurate measure of damages in those circumstances because it is tied to the specific date on which a business was destroyed.  But Plaintiffs cite no case holding that an ongoing business may seek LBV as of any arbitrary date it picks, even though an estimate of LBV necessarily bears no relation to the actual, total impact of a defendant's alleged conduct.  To the contrary, Florida law eschews damage theories that are "too speculative and dependent upon changing circumstances to warrant a judgment for their loss."  *Levitt–ANSCA Towne Park P'ship v. Smith & Co.*, 873 So. 2d 392, 396 (Fla. 4th DCA 2004) (citations omitted).  By contrast, lost profits are a *prospective* estimate of the total impact of the defendants' conduct in the past, present and future.  *W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989) (an existing "business can recover lost prospective profits").  It is therefore the only appropriate measure of damages for a continuing business, since such losses cannot be tied to some fixed point in time in the past such as the date of destruction.

2

Plaintiffs point to a single, 25-year-old case in which they claim the Eleventh Circuit "has summarily approved" LBV damages where a business was not destroyed. Opp. at 11 (citing *United Aluma Glass v. Bratton Corp.*, 8 F.3d 756 (11th Cir. 1993)). But *United Aluma* never addressed whether LBV was an appropriate measure of damages in that case, because the defendant did not raise that issue. Rather, the basis of the appeal was only that the amount awarded was not supported by the evidence, *id*. at 758, and it is telling that in 25 years no court has cited *United Aluma* for the proposition espoused by Plaintiffs here. Plaintiffs also cite two other cases which have nothing to do with Florida law, but in any event both refute Plaintiffs' argument because they both involved circumstances in which a business was lost. *See Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 661 (5th Cir. 1974) (defendants' antitrust violations allegedly "drove [the plaintiff] out of his service station business"); *Gustafson v. General Motors Acceptance Corp.*, 470 F.2d 1057, 1059 (8th Cir. 1973) (allegedly slanderous statement "forced [the plaintiff] to lose and sell his business"). Anderson's testimony regarding LBV must therefore be excluded.

B.  **Anderson's Opinion on the "Benefit to BuzzFeed" is Also Irrelevant.**

Anderson's second opinion is also inadmissible, for either of two reasons. First, Plaintiffs never dispute that in defamation cases a plaintiff may not seek any recovery for alleged unjust enrichment. Their intention to present to the jury the supposed "value" of publishing the Dossier is obviously an attempt to do just that, and they cite no authority supporting their argument that there is some "other reason" why they may seek to do indirectly what the law expressly bars them from doing directly. Moreover, their claim that "this calculation is NOT a calculation of damages" contradicts their own expert's reports.[1] Opp. at 12.

But even if a calculation of some "benefit" were admissible for some purpose, Anderson's estimate is not admissible because it does not purport to be an estimate of the benefit to BuzzFeed of *publishing the allegedly defamatory statements*. Rather, Anderson admits that it estimates the benefit to BuzzFeed of publishing both the *entire* Dossier and nine news articles

---

[1] Anderson's first Expert Report stated that "our analysis included two components of *damages*; the lost business value of XBT, and the *unjust enrichment* of Buzzfeed." Defendants' Motion Seeking to Exclude Testimony of Jeff Anderson ("Mot.") Ex. 1 at 2 (emphasis added). His Supplemental Report removed the term "unjust enrichment," but still explained that "CONSOR was asked to analyze and provide an opinion on the *damages* stemming from the Defendants [sic] publication …. Our analysis included: the lost business value of XBT, and the benefit to Buzzfeed…." *Id*. Ex. 2 (supplemental report) at 2 (emphasis added).

3

about a variety of topics which contain a link to the January 10, 2017 Article in which the Dossier was embedded. In effect, Anderson estimates the "benefit" to BuzzFeed of *reporting* about the Dossier, period, regardless of whether that reporting or the rest of the Dossier had anything to do with Plaintiffs. *See* Mot. Ex. 3 at 177:13-178:25; 190:6-15, 208:18-22; Opp. at 13 ("However, it is still a calculation that is relevant to this case for the purposes of indicating to the jury the value that Buzzfeed obtained from publishing the Dossier, which the jury may consider for any number of permissible reasons including (among others) a determination of punitive damages.").

But as a matter of First Amendment law, Plaintiffs may not seek to punish Defendants for publishing the entire Dossier, let alone for nine other news reports, because to do so would publish Defendants for publishing protected speech that is not alleged to be defamatory. Indeed, if Plaintiffs' position accurately reflected the law, then each of the roughly forty persons mentioned in the Dossier could sue BuzzFeed regarding a discrete sentence or two within the 35-page document, but recover the benefit to BuzzFeed of publishing the whole thing – thus potentially subjecting BuzzFeed to paying forty times its actual supposed "benefit" of publishing the document. In short, both of Anderson's opinions are inadmissible as a matter of law and so his testimony should be excluded on that ground alone.

## II.     ANDERSON'S OPINIONS ARE ALSO UNRELIABLE ON THEIR FACE

Plaintiffs' own cases concede that they bear the burden of demonstrating that Anderson's opinions are "reliable." Opp. at 6 (citing *In re TMI Litig.*, 193 F.3d 613, 692 (3d Cir. 1999)). Nonetheless, they start their brief by distinguishing between the supposed "data points" Anderson used and his "methodology," to claim that neither Defendants nor their rebuttal expert challenged the latter. Opp. at 1-3. That is just an exercise in semantics, because the "data points" and other assumptions an expert uses are an integral part of his or her methodology. *Marine Travelift, Inc. v. Marine Lift Sys.*, 2013 WL 3289076 (E.D. Wisc. June 28, 2013); *Fla. Power & Light Co. v. Qualified Contractors, Inc.*, 2005 WL 5955702, at *3 (S.D. Fla. Dec. 6, 2005); *see also Martinez v. Rabbit Tanaka Corp.*, 2006 WL 5100536, at *14 (S.D. Fla. Jan. 6, 2006) ("As a result of [the expert's] reliance on a number of unsupported and unverified assumptions, his ultimate opinion on damages amounts to nothing more than his own *ipse dixit*. Such an opinion is the product of an unreliable and inadmissible methodology.") (citations omitted).

But even before addressing the specifics of his methodology, Anderson's LBV estimate is unreliable and speculative on its face. Florida law requires that a business's damages be proved with "reasonable certainty," and methods that produce estimates of damages that are "too speculative and dependent upon changing circumstances to warrant a judgment for their loss" must be disallowed. *Levitt–ANSCA Towne Park P'ship*, 873 So. 2d at 396 (citations omitted); *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1339 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008). Anderson's estimates fail that test, for either of two reasons.

First, presenting the jury with a range of damages between ▋ and ▋ million is the antithesis of "reasonable certainty." *See Marine Airlift,* 2013 WL 3289076, at *4 (expert opinion that lost profits were within a "possible" range of $564,000 to $4.1 million was too speculative and uncertain to be admissible); *Hong v. Lee*, 2015 WL 9487642, at *8 (Cal. App. Dec. 29, 2015) (rejecting damages estimate as "nothing but speculation and conjecture" where "the range of the estimates are so broad as to create significant uncertainty in any award"). Plaintiffs make a tortured argument to try to claim that "the range is not a '▋ times' difference," but really "less than ▋." Opp. at 15. That is simply false; some of the data points within Anderson's formulas differ by that amount, but what they ultimately produce is an enormous and uncertain "range" of actual, claimed damages. Indeed, Plaintiffs' own authority makes that clear. The only case they point to, *United Aluma Glass*, 8 F.3d at 758, involved a range of $180,000 between the low and high end – not ▋ million. Plaintiffs are certainly correct that damages need not "be calculate[d] to the cent," Opp. at 14, but that is a far cry from concluding that they may differ by plus or minus ▋.

Second, as noted above, Anderson admits that he arbitrarily selected a valuation date of January 1, 2018 on which to calculate Plaintiff's purported LBV. Mot. Ex. 3 (Anderson Dep.) at 58:7-59:20. Anderson further admits that his valuation calculation could have been different had he selected a different date. *Id.* at 60:16-25. Plaintiffs' try to argue that Anderson's use of January 1, 2018 was a reasonable decision because it was "the date on which Anderson would have the most accurate numbers for his calculation would be immediately after the close of the books – specifically, January 1, 2018. Opp. at 4. That is not the justification Anderson himself gave, which was simply that "it was around the time that we were retained" and so the numbers "could have been" different had he been retained six months later. Mot. Ex. 3 (Anderson Dep.)

5

at 60:16-25.  In any event, none of that speaks to the fundamental point that using a particular 12-month period is a purely artificial exercise that produces a "LBV" that does not even purport to estimate the actual alleged impact over time on XBT.  As to Plaintiffs' complaints that "Defendants would have apparently criticized *any* date selected by Anderson," Opp. at 4, Plaintiffs are correct – because the need to select some arbitrary date illustrates why LBV is not an appropriate method to calculate damages for an ongoing business.

Finally, Plaintiffs misunderstand Defendants' argument regarding the simple point that XBT may not seek to recover damages that were actually incurred by its subsidiaries. Defendants do not argue that "you can't claim damages to subsidiaries of XBT"; this motion does not reach that issue.  Rather, Defendants' point is that you cannot try to claim damages to subsidiaries of XBT who were not joined as plaintiffs in this case, just as, if the shoe were on the other foot, BuzzFeed could not sue XBT for injuries allegedly caused by one of its subsidiaries. Opp. at 12.  That is not "cruel," but rather reflects the reality that the enormous benefits that come with creating legally-recognized subsidiaries also impose some modest costs.

Moreover, Plaintiffs inaccurately claim that "XBT is a holding company with its revenues accruing through the businesses of its subsidiaries." *Id.*  Rather, the statements and projections Anderson used to calculate "business value" reflected the *consolidated* financial results of all XBT subsidiaries.  Any resulting estimate of "business value" therefore reflects the sum of the value of all subsidiaries, not the holding company itself.  If a buyer wished to purchase the entire company for a price reflecting Anderson's estimate of its "business value," the buyer would need to actually purchase all the subsidiaries as well.  Thus, Anderson's report should also be excluded because it is not tied to the actual named Plaintiffs.

### III.   ANDERSON'S METHODOLOGY IS UNRELIABLE

To perform its role as gatekeeper, a trial court may admit only that testimony which is reliable and relevant and, further, it is a court's obligation to "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see also Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  Nonetheless, Plaintiffs essentially argue that a trial court need not concern itself at all with the reliability of the assumptions and/or "data points" an expert uses, because those are issues all reserved for the jury.  Opp. at 3.  That is simply not so.

6

Defendants' *Daubert* motion cited a host of cases excluding expert testimony that employed methodologies founded on merely parroting the assumptions of the financial projections of the expert's client, without performing any meaningful, independent testing of those assumptions. Mot. at 17-18. Plaintiffs offer no meaningful response to them. And the case they principally rely on, *Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.*, 2014 WL 12621218, at *1-2 (M.D. Fla. Dec. 8, 2014), supports Defendants' argument. *Flying Fish* permitted expert testimony over the defendant's objection that the expert relied on unqualified sources of information, such as a business broker. By contrast, here the question is not whether an independent source is or is not qualified. Rather, the issue is that Anderson's source was the untested assumptions of the CFO of Plaintiff, who has a self-serving interest in making optimistic projections. *See* Mot. at 4-7, 17-19. That is often a basis to exclude expert testimony as unreliable. *MasForce Europe, BVBA v. MEC3 Co.*, 2013 WL 12156469, at *6 (M.D. Fla. Dec. 4, 2013).

1.  <u>Anderson's Reliance on Untested XBT Projections</u>. Plaintiffs' try to cloak Anderson's methodology with a patina of reliability by repeatedly claiming that he relied on "the financial statements of XBT audited by KPMG, one of the four most-respected auditing firms in the world . . . ." Opp. at 7. That is simply incorrect, in two key respects.

First, fundamentally Anderson's methodology is based on assuming the validity of XBT's *projections* for 2017. Those projections were never audited by anyone, but rather were contained within an annual "business plan" that was designed to help XBT executives pitch the company to potential investors. Ex. 2 (Mishra Dep.) at 156:15-158:1. And contrary to Plaintiffs' contentions, Anderson's sworn deposition testimony reflects that he *did not* compare the reliability of the 2016 predictions with prior projections other than one projection of one element for one year. *See* Mot. Ex. 3 (Anderson Dep.) at 84:9-13, 99:3-16. Nor in his Supplemental Report did Anderson ████████████████████████████████████ based on any independent research. Rather, he realized that Mishra had given him an old business plan by reading Mishra's deposition, but just substituted Mishra's revised numbers – again, without any effort to verify them. *See id.* at 113:15-115:2; Mot. Ex. 2 (Suppl. Rep.) at 12 n.29 (██████████████████████████████████████████████████████████████████████████████████████████████████████). Nor do Plaintiffs dispute that the

7

only outside report Anderson consulted to try to compare XBT's projections to "the industry as a whole" expressly stated that its analysis was inapplicable to companies like XBT.

Second, even for purposes of comparing those projections to XBT's actual performance in 2017, Anderson did not rely on any audited financial statements for that year because none were available. Mot. Ex. 3 at 70:4-16. Instead, Anderson made a variety of assumptions about XBT's performance, which especially with respect to the expense side have *already* proved to be wildly inaccurate once that actual audited numbers were released. Mot. at 8.

2. Causation. Though it is correct that an expert may assume causation, it is an entirely different matter for an expert to opine on and promote causation – which is what Anderson does. For example, in his report he states: "**As a result of the Buzzfeed publication,** Mr. Gubarev has, found 'his personal and professional reputation in tatters.'" Mot. Ex. 2 (Anderson Suppl. Rep.) at 6 (emphasis added). Later in his report, he similarly opines on causation:

> The projected increase in EBITDA margin from 2016's actual margin of ▬ was attributed to the planned evolution of the company's business model to one based on owned physical storage. **If not for the setbacks following the publication of the Defamatory Articles**, this transition would have continued to increase XBT's profitability.

*Id.* at 11 (emphasis added). Consistent with these *opinions* on causation, during his testimony Anderson repeatedly opined that damages to Plaintiffs were due to the publication of the dossier and not attributable to any other factor, despite acknowledging he had no factual knowledge to support this opinion. *See* Mot. Ex. 3 (Anderson Dep.) at 151:9-156:16 ("I have stated I don't know. You asked me for my opinion on it."). Anderson's opinions on causation and his admitted lack of any factual basis for such opinions renders his testimony unreliable and therefore inadmissible.

3. Comparable Companies. Finally, there is no question that Anderson's calculations of business value are premised on a rather large EBITDA multiplier (17x) taken from his choice of companies supposedly "comparable" to XBT. Plaintiffs argue that it is outside the province of the Court to evaluate an expert's selection of comparable companies for purposes of a damages analysis, citing a case which had nothing to do with selecting comparable companies. Opp. at 9 (quoting *Quiet Tech. DC-8 Inc. v. Hurel-Dubois U.K. Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003)). Plaintiffs never address the Florida case law that expressly rejects their

8

position. *See Devon Med., Inc. v. Ryvmed Med., Inc.*, 60 So. 3d 1125, 1129 (Fla. 4th DCA 2011).

But even more striking is how Plaintiffs' own arguments make clear why, in 2018 when Anderson performed his analysis, most of the companies Anderson borrowed from a five-year KPMG Equity Valuation are not comparable to XBT. Plaintiffs maintain that half of those companies are comparable today because they "all provide data center services," just as "XBT offers data center services through its subsidiary Datacenter.com." Opp. at 9-10. But Datacenter.com is *not* a subsidiary of XBT. Rather it is a separate company that is also primarily owned by Gubarev. Ex. 2 (Mishra Dep.) at 26:11-23. Its financial results are therefore not included in any of the financial statements or projections that are incorporated in Anderson's calculations. *See* Mot. Ex. 14 at 24 (listing XBT subsidiaries included in Consolidated Financial Statement).

## CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that the Court grant Defendant's motion to strike the Report of Plaintiff's damages expert, Jeff Anderson, and exclude Mr. Anderson from testifying at trial.

Dated: November 5, 2018                Respectfully submitted,

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine, LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131

rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 5th day of November, 2018.

By: /s/ Adam Lazier
      Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

4848-1810-0090v.1 0100812-000009