**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO
PRECLUDE EVIDENCE CONCERNING (1) THE DOSSIER AS A WHOLE, AND (2)
PLAINTIFFS' EFFORTS TO OBTAIN PUBLICITY**

Defendants BuzzFeed, Inc. and Ben Smith respectfully submit this Opposition to

Plaintiffs' Motion *In Limine* No. 3.

**PRELIMINARY STATEMENT**

BuzzFeed published the Dossier because, as it said in the article that accompanied it,

there was a compelling public interest in "publishing the full document so that Americans can

make up their own minds about allegations about the president-elect that have circulated at the

highest levels of the US government." Ex. A (Compl.) Ex. 2 (Article). In other words, to use the

language of Plaintiffs' motion, BuzzFeed says that it published the Dossier because it believed

there would be a "benefit to the public in having the Dossier as a whole in the public domain."

Dkt. 276 ("Mot.") at 2. To the extent that Plaintiffs may be moving to bar BuzzFeed from

explaining why it published the Dossier, that motion should be denied because such evidence is

critical to the issue of fault in this case.

Otherwise, Plaintiffs' motion is far too vague for Defendants to even formulate a

response, and the Court should deny it and take up any objections to specific evidence or lines of

argument if they become an issue at trial. The same reasoning applies to the second part of this

motion, which seeks to exclude evidence about Plaintiffs' "general publicity efforts," whatever

that may mean. Defendants do not likely intend to put on evidence solely for purposes of

establishing "general publicity efforts," but there are a variety of specific issues, including damages and/or material falsity, to which discrete pieces of evidence about public statements Plaintiffs made or actions they took to seek publicity will likely be relevant.  Plaintiffs' Motion *In Limine* No. 3 should therefore be denied, without prejudice to Plaintiffs' right to object to any particular piece of evidence at trial.

## ARGUMENT

### A.  This Court Should Not Exclude Evidence Concerning the Public Benefit of Publishing the Dossier as a Whole

This Court should deny Plaintiffs' motion because the evidence Plaintiffs seek to exclude concerning the public benefit of publishing the Dossier as a whole is plainly relevant to important issues before the Court and goes to the heart of Defendants' justification for publishing the Dossier – a justification they have advanced since the moment they published the document.

1.  The Requested Relief is Too Vague to be Granted

As an initial matter, it is not even clear what Plaintiffs are asking for with this motion, which is reason enough to deny it.  *See, e.g.*, *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 2006 WL 1071997, at *2 (M.D. Fla. Apr. 24, 2006) (denying motion *in limine* where "[i]t is unclear … what evidence [the motion] refers to"); *Weiss v. La Suisse, Société D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 407 (S.D.N.Y. 2003) (noting that "[a] motion in limine may properly be denied where it is too sweeping in scope," and denying motion that "lacks sufficient specificity with respect to the evidence to be excluded").  "Testimony and argument about the purported benefit in having the Dossier as a whole in the public domain," Mot. at 2, is not exactly a self-defining category of evidence, and Plaintiffs point to no specific evidence or even prior testimony that falls into this category.  For that reason alone, the motion should be denied.

2.     The Motion Also Fails on Its Merits

Plaintiffs concede that the Dossier as a whole is relevant to this case, acknowledging that, at a minimum, "it is certainly useful and necessary for the jury to have a basic understanding of the so-called 'Dossier' as a whole." *Id.* at 2.  Indeed, in their summary judgment arguments Plaintiffs pointed to other elements of the Dossier as supposed support for their arguments. *See, e.g.*, Dkt. 234-1 (Pls.' Opp. to Mot. for Summ. J.) at 17 (claiming that qualifications in article, and errors in other parts of Dossier, provide "direct evidence" of actual malice); *id.* at 19-20 (arguing that redactions of allegations regarding Michael Cohen's father-in-law from October 18

2

memo is evidence of actual malice).  Plaintiffs did the same when seeking Christopher Steele's testimony before the U.K. courts. Ex. B (Tr. of Feb. 8, 2018 hearing) at 53 (arguing that Steele's evidence on the whole dossier would be relevant to substantial truth because "to undermine the credibility of 'the dossier' as a whole would go to undermine a part").

The "December memo" was not written as a standalone document, and it can therefore only be understood by reference to the rest of the Dossier.  The "December memo" begins by explicitly referring back to two earlier parts of the Dossier that reported "on secret meeting/s held in in Prague, Czech Republic in August 2016 between then Republican presidential candidate Donald TRUMP's representative, Michael COHEN and his interlocutors from the Kremlin," and notes that its purpose is to "provide[] further details of these meeting/s and associated anti-CLINTON/Democratic Party operations" – including the fact that Cohen travelled to Prague in part to make "contingency plans for various scenarios to protect the operation" in which Plaintiffs were allegedly implicated.  Ex. A (Compl.) Ex. 3 (Dossier) at 34-35.  And the very sentence that follows the ones Plaintiffs allege are defamatory refers back to previous memos regarding Carter Page.  *Id*. at 35.

Nonetheless, while they do not appear to challenge the admissibility of the Dossier as a whole for other purposes, Plaintiffs seek to exclude "testimony and argument about the purported benefit in having the Dossier as a whole in the public domain." Mot. at 2.[1]  Their motion should be denied because the evidence Plaintiffs seek to exclude is central to the element of fault in this case.  Defendants did not publish the December memo or the four sentences about which Plaintiffs complain on their own.  Instead, Defendants received the 35-page Dossier as single document and published it as a single document, even emphasizing in the accompanying article that they believed it was important to publish "the *full* document, so that Americans can make up their own minds …."  Ex. A (Compl.) Ex. 2 (Article) (emphasis added).  Their decision is impossible to understand or examine without looking at the entire document that Defendants published.

---

[1] To the extent that Plaintiffs instead seek to exclude *all* evidence concerning the Dossier as a whole, *see* Mot. at 3 (seeking order "limiting Defendants' arguments and presentation of testimony regarding the so-called Dossier as a whole"), that request would be even more misplaced.  The Dossier as a whole is relevant not only to the issues identified in this Opposition, but as Plaintiffs themselves recognize in their motion and argued before the U.K. court, it is relevant to other issues including defamatory meaning and material falsity as well.

If the fault standard in this case is actual malice, *why* Defendants published the Dossier in full is precisely the type of evidence the jury needs to see.  Actual malice turns on the Defendants' subjective mindset in publishing the allegedly defamatory statements.  *Turner v. Wells*, 879 F.3d 1254, 1273 (11th Cir. 2018).  But Plaintiffs' motion seeks to preclude Defendants from explaining to the jury that they published the Dossier in its entirety, including the allegedly defamatory statements, because they thought that "the public had a right to see the specifics of these documents that were informing the action of their government at the highest levels."  Ex. C (Smith Decl.) ¶¶ 16, 23.  And since Plaintiffs challenge the credibility of Defendants' claims that they published out of a good-faith belief that doing so was in the public interest, Defendants are certainly entitled to substantiate their belief by pointing to the role the Dossier has come to play in public debate and government activity since they published it.

And should the Court decide that Plaintiffs are private figures, evidence about the Dossier as a whole would be relevant to deciding whether they acted with gross irresponsibility or negligence.  Indeed, the public interest in publishing the complete Dossier is an important, well-established consideration under either standard.  The jury must look at "the nature of the interests that the defendant was seeking to promote by publishing the communication," and "[i]nforming the public as to a matter of public concern is an important interest in democracy" that weighs heavily against a finding of gross irresponsibility or negligence.  Restatement (Second) of Torts § 580B, cmt. h (discussing negligence standard);[2] *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 103 (2d Cir. 2000) (holding that it was not grossly irresponsible for insurance company to publish investigative report without redactions because "Prudential's censorship of the reports, even for the purpose of sparing the reputation of third parties, would have undermined its justifiable objective of baring all that the investigators had to say about the results of their inquiry").  Defendants are also entitled to point to the fact that, after they published the Dossier, many reputable news organizations linked to the document or analyzed its allegations in detail, *see* Dkt. 214-2 (Defs.' Statement of Undisputed Material Facts) ¶ 64, which is a clear sign that BuzzFeed acted with "due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties," *Chapadeau*

---

[2] The Supreme Court of Florida cited Section 580B of the Restatement in *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

4814-0414-1690v.4 0100812-000009

*v. Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975), and was therefore neither grossly irresponsible nor negligent.

Moreover, the theory of their case Plaintiffs have been articulating in their motions *in limine* is that it is about "whether publishing the December memo *without redaction* constituted defamation." Mot. at 2 (emphasis added). Plaintiffs have never articulated what "redactions" they contend BuzzFeed should have made, but their theory seems to imply that BuzzFeed had some sort of affirmative duty to redact their names and/or other related information. As we have noted, a duty to selectively censor published material is not one that is recognized by defamation law, and that may need to be another issue the parties address either before or at trial.

But if Plaintiffs are allowed to pursue that theory, Defendants will need to demonstrate that any argument to redact Plaintiffs from the "December memo" would likely have necessitated redacting numerous other persons and/or information as well throughout the Dossier. If so, then the published document would have been worthless, and unlikely to have served the public interest even today. Plaintiffs cannot have it both ways. They cannot argue that Defendants have some duty to selectively edit them out of the rest of the Dossier, and then try to preclude Defendants from explaining why doing so would have undermined the purpose of publishing the whole Dossier.

Finally, this evidence is also relevant to Plaintiffs' claim for punitive damages. Both New York and Florida law require that a plaintiff seeking punitive damages prove, along with actual malice, that the defendant acted with "common-law" or "express" malice, which is defined as spite or ill will towards the plaintiff. *See, e.g.*, *Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 480 (1993); *Hunt v. Liberty Lobby*, 720 F.2d 631, 650-51 & n.36 (11th Cir. 1983). The plaintiff must prove that such animus was the "one and only cause for the publication" (under New York law), or the defendant's "primary purpose" (under Florida law). *Morsette v. "The Final Call,"* 309 A.D.2d 249, 255 (N.Y. App. Div. 2003); *Schiller v. Viacom, Inc.*, 2016 WL 9280239, at *12 (S.D. Fla. Apr. 4, 2016) (Ungaro, J.). Defendants are entitled to respond to Plaintiffs' punitive damages claim with evidence that they published the Dossier for reasons that have nothing to do with any animus towards Plaintiffs.

### B. This Court Should Not Exclude Evidence of "Plaintiffs' General Publicity Efforts"

The second part of Plaintiffs' motion, which halfheartedly asks the Court to exclude "evidence of Plaintiffs' (largely unsuccessful) attempts to obtain general publicity for their

5

business offerings," is even vaguer than the first part.  Plaintiffs never identify any specific evidence (or even types of evidence) they believe should be excluded, and they never explain what they mean by "general publicity."  Because "[i]t is unclear…what evidence [the motion] refers to," this part of the motion should also be denied.  *Equity Lifestyle Props.*, 2006 WL 1071997, at *2.

But it should also be denied because at least some of the evidence Plaintiffs likely consider "general publicity efforts" is relevant to other issues in the case.  Assuming that the Court resolves the issue of Plaintiffs' public-figure status in its summary judgment rulings, Defendants do not intend to introduce at trial all the evidence they submitted in connection with those motions.  Nor would they likely address "general publicity efforts" at trial.  But there are certainly particular pieces of evidence that may have involved Plaintiffs' public-relations efforts, but are relevant to other issues in the case.

For example, as discussed in Defendants' response to Plaintiffs' Motion *In Limine* No. 4, Plaintiffs' efforts to "shift the blame" from Servers.com to Webzilla in connection with the Methbot fraud is relevant to what role Plaintiffs actually played in that fraud.  Similarly, evidence that Plaintiffs were aggressively pursuing their entry into the Russian market at the time the Democratic leadership was hacked is further circumstantial evidence of a motive to engage in the conduct alleged in the Dossier.  And as a general matter, media interviews granted by Gubarev may be relevant for impeachment and other purposes.  Indeed, Plaintiffs in their case rely heavily on media interviews granted by Ben Smith.  *See, e.g.,* Dkt. 234-1 (Pls.' Opp. to Defs.' Mot. for Summ. J.) at 17-18; Dkt. 237 (Joint Pretrial Stip.) Ex. A, Exs. C3-C5, C7.

Evidence of Plaintiffs' "publicity efforts" is also relevant to damages.  Plaintiffs assert that their reputations were "unblemished" and "untarnished" when BuzzFeed published the Dossier, Ex. A (Compl.) ¶¶ 5, 22, and that they have suffered grievous reputational harm as a result of being associated by the Dossier with, among other things, online pornography traffic.  But the evidence Plaintiffs now seek to exclude belies those claims.  It reveals that Gubarev in fact voluntarily spent years working hard to promote himself as an outspoken, international advocate for the online pornography industry, and that his companies promoted their services (including their "liberal" hosting rules) to that industry.  *See* Dkt. 212 (Defs.' Mot. for Partial Summ. J.) at 1-3, 17; Dkt. 228 (Defs.' Opp. to Pls' Mot. for Partial Summ. J.) at 4-5; Dkt. 242 (Defs.' Opp. Pls.' Sealing Mot.) at 8-9; Dkt. 244 (Defs.' Reply in Supp. of Mot. for Partial

Summ. J.) at 6-8.  Having worked so hard to raise their profile in the pornography industry, Plaintiffs may not now plausibly claim that their reputations were harmed when the Dossier connected them with it.  Similarly, in the context of considering a PR response to the Methbot fraud, Plaintiffs admitted to their PR firm that Webzilla "had some ambivalent episodes in its history and has had some customers with doubtful reputation" *see* Ex. D, which also speaks directly to their pre-existing reputation.

In short, Plaintiffs motion is both vague and likely sweeps in categories of evidence that are clearly admissible for multiple reasons in this case.  It should therefore be denied.

## CONCLUSION

For all these reasons, Defendants ask that Plaintiffs' Motion *In Limine* No. 3 be denied.


Dated:  November 13, 2018                    Respectfully submitted,

                                             /s/ Katherine M. Bolger
                                             Katherine M. Bolger
                                             Nathan Siegel
                                             Adam Lazier
                                             Alison Schary
                                             Davis Wright Tremaine LLP
                                             1251 Avenue of the Americas, 21st Floor
                                             New York, New York 10020
                                             katebolger@dwt.com
                                             nathansiegel@dwt.com
                                             adamlazier@dwt.com
                                             alisonschary@dwt.com

                                             /s/ Roy Black
                                             Roy Black
                                             Jared Lopez
                                             Black, Srebnick, Kornspan & Stumpf, P.A.
                                             201 So. Biscayne Boulevard
                                             Miami, Florida 33131
                                             rblack@royblack.com
                                             jlopez@royblack.com

                                             *Attorneys for Defendants*

4814-0414-1690v.4 0100812-000009

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 13th day of November, 2018.

By: /s/  Adam Lazier
Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

4814-0414-1690v.4 0100812-000009