# **EXHIBIT 6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| *IN RE* THIRD PARTY SUBPOENA TO FUSION GPS | Case No. 0:18-mc-60528-UU |
| ALEKSEJ GUBAREV, XBT HOLDING S.A., and WEBZILLA, INC.<br>  Plaintiffs,<br><br>v.<br><br>BUZZFEED, INC. and BEN SMITH<br>  Defendants. | Case No. 0:17-cv-60426-UU |

**PLAINTIFFS' OPPOSITION TO FUSION GPS'S RECAST MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

**Introduction**

For close to a year now, Fusion GPS has resisted providing a single document or any testimony requested pursuant to a valid Rule 45 subpoena by making various claims of privilege, confidentiality, and relevance, all while publicly calling for the Congressional testimony of its founder, Glenn Simpson (covering many similar topics) to be made public. The passage of time and intervening developments and revelations have only served to make Fusion's arguments weaker and, indeed, to call into question the veracity of the representations Fusion has made to this Court. In opposing Fusion's Motion, Plaintiffs rely on their Memorandum in Opposition to Fusion's Motion (D.E. 5); Notice of Supplemental Authority (D.E. 13); and Supplement to their Opposition (D.E. 38).

In further support of this Opposition, Plaintiffs state as follows.

**Argument**

I. **Legal Standards**

As this Court is aware, the scope of discovery under a Rule 45 subpoena is "the same as the scope of discovery under Rule 26" which provides that "'[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *AFSCME v. Scott*, 277 F.R.D. 474, 476-77 (S.D. Fla. 2011) (quoting F.R.C.P. 26). As such, discovery should only be denied where it: "'(1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1) or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Id.* (quoting *Wagner v. Viacost.com*, 2007 WL 1879914, at *1 (S.D. Fla. June 29, 2007).

II. **The Scope of the Inquiry of Christopher Steele is Irrelevant Here**

Preliminarily, and given Fusion's arguments throughout, it is important to note that the limitations on the scope of inquiry imposed by the British Court in connection with the examination of Christopher Steele are irrelevant in this proceeding. The British court system does not permit discovery – nor discovery depositions – in the manner permitted under the Federal Rules of Civil Procedure. Unlike the Rules of Federal Rules of Civil Procedure, which permits discovery of matters reasonably calculated to lead to the discovery of admissible evidence, the law of the United Kingdom permits only inquiry into matters that will be directly admissible at trial. *See*, *e.g.*, *Radio Corp of America v Rauland Corp* [1956] 1 Q.B. 214; [1956] 1 All E.R. 549; DC; *Burchard v Macfarlane* [1891] 2 Q.B. 241; *Penn-Texas Corp v Murat Anstalt* [1964] 1 Q.B. 40; [1963] 1 All E.R. 258.

The deposition of Mr. Steele will be a trial deposition and, under British rules, the questions that can be put to Mr. Steele are strictly limited by British law to those questions that could be asked of a witness during a trial as conducted under British law. *Id.* In other words, the discovery that is explicitly permitted under the United States Rules of Civil Procedure is explicitly prohibited under British law. *See*, *e.g.*, Evidence (Proceedings in Other Jurisdictions) Act 1975, CHAPTER 34, §2(4);

With that in mind, the British Court's view that some of the original categories of questions were overbroad or constituted a "fishing exercise" are understandable – *under British law*. And, although Plaintiffs flatly dispute Fusion's attempt to characterize Plaintiffs' subpoena

2

as a "fishing expedition," it should be recalled that the United States Supreme Court held more than 70 years ago that:

> [T]he deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case.

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947). *See*, *also*, *AIG Centennial Ins. Co. v. O'Neill*, 2010 U.S. Dist. LEXIS 114148, at *9-10 (S.D. Fla. Oct. 18, 2010) ("The Advisory Committee Notes to Rule 26 indicate that '[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case.'… Indeed, the Advisory Committee Notes approvingly cite language from a case stating that 'the Rules ... permit fishing for evidence as they should.'" (citations omitted)); *Adelman v. BSA*, 2011 U.S. Dist. LEXIS 54277, at *8 (S.D. Fla. May 19, 2011) ("BSA's argument that the requests are a mere 'fishing expedition' is not persuasive. [T]he purpose of discovery is to allow a broad search for facts ... or any other matters which may aid a party in the preparation or presentation of his case, and, while subject to relevance, undue burden, overbreadth, and privilege limitations, the Rules ... permit 'fishing for evidence.'" (internal citations and quotation marks omitted)); *Companhia Energetica Potiguar v. Caterpillar Inc.,* 307 F.R.D. 620, 622 n.2 (S.D. Fla. 2015) ("Indeed, Judge Robin Rosenbaum, now a circuit court appellate judge, noted in *AIG Centennial Ins. Co.* that the Advisory Committee Notes to the 1947 Amendment cite favorably to a case for the notion that a fishing-for-evidence approach supports the view that discovery may be relevant even if not admissible at trial.").

**III. Fusion's Arguments Concerning the Specific Categories of Inquiry and Documents to be Produced are Without Basis.**

Although Plaintiffs will address each of Fusion's arguments in turn, below, it bears noting that, in accordance with the Rules of Civil Procedure, Fusion is required only to sit for a total of seven (7) hours of deposition testimony in a location convenient to Fusion. The topics to be covered are not extensive and, indeed, Mr. Simpson – having already testified twice before Congress on similar topics – will have to do little (if any) preparation to be able to respond to questions in the specified areas of inquiry. In short, Mr. Simpson's claims of "undo burden" are simply without foundation.

3

A. Areas of Inquiry for Rule 30(b)(6) Deposition

**Area of Inquiry No. 1: General background concerning Fusion GPS, its ownership, the scope of its business, and the operation of the same.**

Fusion objects to this inquiry on the basis of "relevance." The objection is borderline frivolous. Plaintiffs here seek only the kind of background information necessary to establish at trial what Fusion is, what kind of services it provides, and how (in general) it operates. In addition to being relevant for trial simply to provide the jury with an understanding of the company that produced the December Memo (and the Dossier), the information is also relevant to demonstrate that the December Memo (and the Dossier) were produced by a private company, hired by private interests, to produce opposition research, and not by or for any kind of government-affiliated organization.

**Area of Inquiry No. 2: Fusion's engagement to conduct the research that led directly or indirectly to the creation of the December Memo.**

Fusion raises two objections to this line of inquiry. First, Fusion claims that the inquiry is irrelevant because "the December Memo was created by Christopher Steele after the client engagement had ended and was not produced pursuant to any client engagement." The veracity of this claim is belied by the House Permanent Select Committee on Intelligence's "Report on Russian Active Measures," dated March 22, 2018 (*see* Exhibit 1 hereto), in which it was revealed that, after the election, Fusion GPS was paid by a new client, the Penn Quarter Group, to continue its research. Indeed, these revelations led Senator Grassley to conclude that Fusion's similar claim before Congress "was extremely misleading, if not an outright lie.... [D]espite the fact Mr. Simpson said he had no client after the election, he in fact did, and that client revealed himself to the FBI." *See* Exhibit 2 hereto. Mr. Steele has sought to portray his creation of the December Memo as nothing more than the act of a concerned global citizen, an argument Defendants may well try to adopt in its defense. Plaintiffs have every right to discover the possible motivations underlying the creation of the December Memo which may result in directly admissible evidence or which may lead to the discovery of admissible evidence.

Fusion also argues that inquiry into this area implicates its First Amendment rights. This argument has not only been addressed in Plaintiffs' earlier memoranda, but has also now been

4

explicitly rejected in a well-reasoned opinion by Judge Richard Leon of the District Court for the District of Columbia (*see* Opinion at D.E. 13-1).

**Area of Inquiry No. 3: Fusion GPS's client or clients in connection with the creation of the Dossier.**

Fusion again repeats its assertion that the December memo was created after the election when Fusion allegedly had no client. For the reasons articulated above, this argument fails.

**Area of Inquiry No. 4: Fusion GPS's use and/or engagement of contractors or subcontractors in connection with the Dossier.**

Fusion again repeats its assertion that the December Memo was created after the election when Fusion allegedly had no client. For the reasons articulated above, this argument fails. In addition, Fusion objects to this area of inquiry to the extent that it mentions the Dossier as a whole as opposed to the December Memo. As Fusion is aware, however (and as discussed in earlier briefings), the intent of the expanded inquiry is necessary *only* so that Fusion cannot avoid questions directly related to the December Memo by claiming, for example, that it hired contractors in connection with the Dossier as a whole (and not the December Memo specifically). Fusion has already displayed its willingness to rely on such incomplete representations. *See*, *e.g.*, Exhibit 3 hereto.

**Area of Inquiry No. 5: The sources of information for the December Memo.**

Fusion claims that revealing the identity of the source of the information could potentially put the source in danger. Although Plaintiffs question the legitimacy of this claim, as Fusion is well-aware, Plaintiffs have repeatedly offered to drop this area of inquiry based on Fusion's safety claims and do so again here.

**Area of Inquiry No. 6: The hiring of Fusion GPS to compile or produce the Dossier.**

Fusion again repeats its assertion that the December Memo was created after the election when Fusion allegedly had no client and that the category references the dossier as a whole. For the reasons articulated above, these arguments fail. Fusion also cites the limitations imposed on

5

the questioning of Mr. Steele and its First Amendment arguments. As discussed above, these arguments also fail.

**Area of Inquiry No. 7: Payments made to Fusion GPS in connection with the Dossier.**

Fusion again repeats its assertion that the December Memo was created after the election when Fusion allegedly had no client and that the category references the Dossier as a whole. For the reasons articulated above, these arguments fail. Fusion also cites the limitations imposed on the questioning of Mr. Steele and its First Amendment arguments. As discussed above, these arguments also fail.

**Area of Inquiry No. 8: All steps taken by Fusion GPS, and/or those working on its behalf to obtain information that led to the creation of the December Memo.**

Putting aside the arguments discussed above (and repeated by Plaintiffs here), and with the understanding that Plaintiffs will not ask for the identity of the source of the information for the December Memo, Fusion argues (without explanation) that this request is somehow overly burdensome. The objection is nonsensical. To the extent that Fusion knows how the information contained in the December Memo was gathered, there is no burden to it in providing testimony. Indeed, if Mr. Steele's prior statements are to be believed, the information contained in the December Memo was both unsolicited and unverified. Presumably, Fusion's responses would be the same and – if so – there is no burden at all in responding to such inquiries.

**Area of Inquiry No. 9: The preparation of the December Memo.**

In addition to the already-discussed objections, Fusion argues: (1) that Plaintiffs can ask Steele about the preparation of the December Memo, and (2) that the inquiry is irrelevant because it asks about Fusion's conduct. Neither objection has any legal relevance. That Plaintiffs may be able to ask Mr. Steele certain limited questions does not mean that it has any less of a right to ask Fusion for the information that *it* possesses. And, to the extent that Fusion will testify that it did nothing to verify the allegation concerning Plaintiffs, such information is directly relevant to Plaintiffs' burden of proving a false statement.

6

**Area of Inquiry No. 10: The engagement of Christopher Steele in connection with the Dossier.**

Here, Fusion only repeats the same objections discussed above. For the same reasons, those objections should be rejected.

**Area of Inquiry No. 11: Fusion's efforts (or lack of efforts) to verify allegations in the December Memo.**

Here, Fusion only repeats the same objections discussed above. For the same reasons, those objections should be rejected. In particular, Fusion's relevance objections are absurd inasmuch as the area of inquiry is directly related to Plaintiffs' burden of showing an untrue statement.

**Area of Inquiry No. 12: The provision of the Dossier, including the December Memo, to media outlets.**

Here, Fusion only repeats the same objections discussed above. For the same reasons, those objections should be rejected. In particular, Fusion's relevance objections are unfounded inasmuch as Plaintiffs have a right to inquire into what each media outlet was told when provided with a copy of the Dossier. For example, if Fusion cautioned each outlet that the materials in the December Memo (or the Dossier) were unverified and should not be published, this is clearly relevant to Plaintiffs' arguments that Buzzfeed was either negligent or acted with actual malice in publishing the December Memo.

**Area of Inquiry No. 13: Communications between Fusion GPS and Buzzfeed Concerning the Dossier and, in particular, the December Memo and information contained therein.**

Here, Fusion makes a number of objections, none of which have any legal or factual basis and which are, indeed, contradicted by Fusion's own statements. First, Fusion claims that it need not provide this information because Plaintiffs can ask Buzzfeed about its communications with Fusion. This is not a legal justification to avoid providing testimony on this highly relevant topic. Next, Fusion claims that it "searched for and did not find any pre-publication communications between the Buzzfeed Defendants and Fusion concerning the publication of the Dossier." This is simply false. ***Fusion has repeatedly told Plaintiffs that there were pre-***

7

*publication communications between Buzzfeed and Fusion, specifically that Buzzfeed requested copies of the Dossier from Fusion and that Fusion refused to provide Buzzfeed with the same.* Although there may be no *written* communications that are responsive, the area of inquiry is not limited to written communications. Additionally, Fusion's attempt to limit the scope of inquiry to pre-publication communications is without a valid basis. For example, in his testimony before the House Intelligence Committee, Fusion's principal Glen Simpson testified, with respect to Buzzfeed's publication of the Dossier, that:

> I was not happy when this was published. I was very upset. I thought it was a very dangerous thing and that someone had violated my confidences, in any event.

Glenn Simpson House Testimony, pp. 67-68 (D.E. 38-2).

To the extent that Fusion had conversations with Buzzfeed *after the publication of the Dossier* in which it informed Buzzfeed that its publication of the Dossier had been reckless; that the publication was unauthorized; that the information contained in the Dossier was unverified and should not have been published; or other similar conversations, such conversations are clearly relevant to Plaintiffs' case and are discoverable.

**Area of Inquiry No. 14: Communications between Fusion GPS and Ben Smith Concerning the Dossier and, in particular, the December Memo and information contained therein.**

Fusion's objections are identical to those raised in connection with Area No. 13 and Plaintiffs' responses are the same.

**Area of Inquiry No. 15: The provision of the Dossier and/or the December memo to other third parties.**

In addition to objections raised and refuted, above, Fusion objects to this area of inquiry on relevance grounds. The relevance of this category is obvious – as this Court has noted the question of whether the December Memo was provided to the FBI (and when) is of direct relevance to Defendants' fair report defense.

8

**Area of Inquiry No. 16: Communications with others concerning the Dossier and, in particular, the December Memo and the allegations contained therein.**

Here, Fusion only repeats the same objections discussed above. For the same reasons, those objections should be rejected.

**Area of Inquiry No. 17: Any and all information concerning Aleksej Gubarev.**
**Area of Inquiry No. 18: Any and all information concerning XBT Holdings, SA.**
**Area of Inquiry No. 19: Any and all information concerning Webzilla, Inc.**

In addition to objections raised and refuted, above, Fusion objects to these areas of inquiry on relevance grounds. Given that Fusion continued its research past the election (and perhaps to the current day), it is entirely possible that Fusion has discovered information demonstrating the falsity of the allegations concerning Plaintiffs contained in the December Memo. Such information is clearly relevant. In addition, to the extent that Fusion was unaware of the existence of any of Plaintiffs prior to the December Memo, such information is relevant to Plaintiffs' argument that they are not public figures.

    **B.    Document Requests**

**Document Request No. 1: The December Memo, in its unredacted form.**

Fusion claims that revealing the identity of the source of the information could potentially put the source in danger. Although Plaintiffs question the legitimacy of this claim, as Fusion is well-aware, Plaintiffs have repeatedly offered to withdraw this request based on Fusion's safety claims and do so again here.

**Document Request No. 2: All documents concerning Aleksej Gubarev.**
**Document Request No. 3: All documents concerning XBT Holdings, SA.**
**Document Request No. 4: All documents concerning Webzilla, Inc.**

Fusion complains that the provision of the requested documents would somehow be overly burdensome. This is a ridiculous claim that the Court should require Fusion to justify. Plaintiffs have every reason to believe that, prior to the December Memo, no such documents existed. To the extent documents exist in connection to the December Memo (also unlikely), such documents are clearly relevant and limited in scope. And, to the extent that such documents

9

post-date the December Memo, they would also be limited in scope and likely to demonstrate that the allegations contained about the Plaintiffs in the December Memo were without basis.

**Document Request No. 5: All communications between Fusion GPS and Buzzfeed concerning the Dossier.**
**Document Request No. 6: All communications between Fusion GPS and Ben Smith concerning the Dossier.**

Fusion again tries to limit its response to pre-publication communications, of which it simultaneously claims to have none and to claim that the request is unduly broad and overly burdensome. Either Fusion finds it very taxing to say "we have no responsive documents" or it cannot honestly make that claim. Neither is particularly persuasive. Nor should Fusion be permitted to limit the request to pre-publication communications. Again, if Fusion responded to the publication of the Dossier (including the December Memo), such communications are clearly relevant.

**Document Request No. 7: All documents reflecting or relating to the sources of Information concerning Aleksej Gubarev.**
**Document Request No. 8: All documents reflecting or relating to the sources of Information concerning XBT Holdings, Inc.**
**Document Request No. 9: All documents reflecting or relating to the sources of Information concerning Webzilla.**

Fusion claims that revealing the identity of the source of the information could potentially put the source in danger. Although Plaintiffs question the legitimacy of this claim, as Fusion is well-aware, Plaintiffs have repeatedly offered to withdraw these requests based on Fusion's safety claims and do so again here.

**Document Request No. 10: All communications with Christopher Steele concerning the December Memo.**

Aside from the same objections discussed in connection with other requests, above, Fusion argues that its communications with Mr. Steele concerning the December Memo are irrelevant. The objection is silly. Such communications may (among countless other possibilities) demonstrate that the allegations concerning Plaintiffs were false; may demonstrate

10

that the December Memo was never provided to the FBI; or may demonstrate that Buzzfeed's publication of the December Memo was negligent or demonstrated actual malice.

**Document Request No. 11: All documents concerning the provision of the Dossier and/or the December Memo to third parties.**

Aside from the same objections discussed in connection with other requests, above, Fusion argues that its provision of the December Memo to third parties is irrelevant. Clearly, that is not the case. As this Court has noted the question of whether the December Memo was provided to the FBI (and when) is of direct relevance to Defendants' fair report defense. In addition, the communications accompanying the provision of the December Memo to third parties might itself contain caveats or warnings that the information contained therein was unverified or even outright untrue. Obviously, such communications would be directly relevant here.

## Conclusion

For the reasons stated hereinabove and in Plaintiffs' Memorandum in Opposition to Fusion's Motion (D.E. 5); Notice of Supplemental Authority (D.E. 13); and Supplement to their Opposition (D.E. 38), Plaintiffs respectfully request that Fusion's Motion to Quash Subpoena or, in the Alternative, for Protective Order be denied in its entirety (aside from those areas in which Plaintiffs have voluntarily offered to withdraw their requests).

Dated: June 15, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (Mass. Bar No. 564349 – *pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505, Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (Mass. Bar No. 643572 – *pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20, Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com

*Attorneys for Plaintiffs Aleksej Gubarev, XBT Holding S.A. and Webzilla Inc.*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record this 15th day of June, 2018.

/s/ Matthew Shayefar
Matthew Shayefar