# EXHIBIT 8

# In The Matter Of:

*ALEKSEJ GUBAREV, XBT HOLDING SA and WEBZILLA, INC v.*
*BUZZFEED, INC and BEN SMITH*

*Mr Christopher Steele*
*June 18, 2018*



*Original File C Steele Deposition.txt*
*Min-U-Script® with Word Index*

```
                                                               1
 1                    Mr Christopher Steele

 2        CONFIDENTIAL - ATTORNEYS' EYES ONLY
          IN THE UNITED STATES DISTRICT COURT
 3             SOUTHERN DISTRICT OF FLORIDA
   _____
 4                                    :
   ALEKSEJ GUBAREV, XBT HOLDING        : Case No:
 5   SA and WEBZILLA, INC              : 17-cv-60426-UU
                                      :
 6             Plaintiffs              :
                                      :
 7              -v-                    :
                                      :
 8   BUZZFEED, INC and BEN SMITH       :
                                      :
 9             Defendants              :
   _____:
10

11            Videotaped deposition

12                    of

13            Mr Christopher Steele

14

15        On Monday, June 18th 2018

16

17        Commencing at 9.35 am

18

19              Taken at:

20              15 Old Bailey

21                 London

22                EC4M 7EF

23            United Kingdom

24

25   Reported by: Miss Pamela Henley
```

45

1            Mr Christopher Steele
2       Q.    And, again, just for the record,
3  prior to receiving this unsolicited raw
4  information had you ever heard of Aleksej Gubarev?
5            MR MILLAR:  Same objections.
6       A.    Same answer.
7  BY MR FRAY-WITZER:
8       Q.    You have stated that you have
9  considered that the unsolicited raw intelligence
10 needed to be further analyzed and verified, so
11 focussing your attention first on the time between
12 when you received this information and when you
13 included it in the December memo what steps did
14 you take to independently verify the allegations
15 concerning XBT?
16           MS EIKHOFF:  Object to form.
17      A.    Could you clarify what you mean by,
18 "independently verify"?
19           MR MILLAR:  I do not know what he
20 means.
21 BY MR FRAY-WITZER:
22      Q.    Did you take any steps to verify
23 the information concerning XBT?
24      A.    I did.
25      Q.    What steps were those?

46

Mr Christopher Steele

A. I believe the only step I can describe within the bounds of the order is what we could call an open source search.

Q. What is an open source search?

A. It is where you go into the Internet and you access material that is available on the Internet that is of relevance or reference to the issue at hand or the person under consideration.

Q. So if I understand your testimony the extent of your attempts to verify information about XBT is that you did some Internet searches as to who or what XBT was, is that accurate?

A. It is not accurate.

Q. Please tell how that is not accurate.

A. It is not accurate because other efforts to verify relate to sources or sources and, therefore, are not allowed under the terms of the order.

Q. What can you tell us about any efforts that you made to verify allegations concerning Webzilla?

A. The same. So open source searches.

47

Mr Christopher Steele

1
2   Q.   And what efforts did you make to
3 verify the allegations concerning Mr Gubarev?
4   A.   The same.
5   Q.   What did you learn about XBT?
6   A.   From the open source search?
7   Q.   If that is what you are willing to
8 tell us about.
9   A.   We did not find anything of
10 relevance on XBT from the open source search.
11   Q.   Did you find anything of relevance
12 concerning Webzilla?
13   A.   We did.
14   Q.   And what was that?
15   A.   It is an article I have got here,
16 which is -- was posted on 28 July 2009, on
17 something called CNN iReport, which is -- I can
18 circulate it if you like.
19   Q.   What do you understand iReports to
20 be on CNN?
21   A.   I do not have any particular
22 knowledge of that.
23   Q.   Do you understand that they have no
24 connection to any CNN reporters?
25   A.   I do not.

Mr Christopher Steele

1
2      THE VIDEOGRAPHER:  Back on the
3  record at 10.43.
4  BY MR FRAY-WITZER:
5      Q.   Mr Steele, did you travel to Russia
6  to verify any of the allegations contained in the
7  December memo?
8      A.   No.
9      Q.   Have you traveled to Russia at any
10 time since leaving the FCO?
11     A.   Not since 2009.
12     Q.   You describe the information
13 contained in the December memo as raw
14 intelligence, is that correct?
15     A.   Yes.
16     Q.   Tell us, please, what it means for
17 something to be raw intelligence?
18     A.   I would define it as information
19 that is passed to you directly from a source.
20 That source could be human.  Could be technical in
21 its original form, and which, therefore, is
22 pre-analysis, so it has not been analyzed as such.
23 Does not mean it has not been looked at in terms
24 of verification, but has not been fully analyzed.
25      (Exhibit 6 marked for identification)

```
 1                    Mr Christopher Steele
 2         Q.    Mr Simpson says, and, again,
 3   supposedly paraphrasing you:
 4               "It is HUMIT, right?  It is human
 5   source information...  and humans sometimes lie,
 6   and more frequently they just get it wrong."
 7               Did you say words to that effect to
 8   Mr Simpson?
 9               MR MILLAR:  The objection is the
10   same, it is not within topic 2.
11               MR FRAY-WITZER:  The response is
12   the same.
13               THE EXAMINER:  My opinion is the
14   same.  The witness can --
15         A.    I am choosing not to answer again.
16   BY MR FRAY-WITZER:
17         Q.    In making efforts to verify the
18   allegations about the plaintiffs contained in the
19   December memo did you take into account the fact
20   that raw intelligence might later prove to be
21   incorrect or untrue?
22               MS EIKHOFF:  Object to form.
23         A.    Yes.
24   BY MR FRAY-WITZER:
25         Q.    In making your efforts to verify
```

67

1             Mr Christopher Steele
2 the information contained in the December memo
3 about the plaintiffs did you take into account the
4 fact that raw intelligence might include
5 deliberately false information?
6        A.     Yes.
7        Q.     In attempting to verify the
8 information contained in the December memo
9 concerning the plaintiffs did you take into
10 account the possibility that a Russian business
11 competitor might give false information in order
12 to harm a competitor?
13            MS EIKHOFF: Object to form.
14            MR MILLAR: I am going to object to
15 that on the basis that we are straying very near
16 to increasing the existing risk of confidential
17 intelligence sources being identified.
18            If the question could be rephrased
19 in a way that does not require the witness to
20 positively aver the status of his source that
21 might avoid the problem.
22            THE EXAMINER: US plaintiffs, do
23 you want to reformulate?
24            MR FRAY-WITZER: I am certainly
25 happy to try.

91

1  Mr Christopher Steele
2  do you know if the December memo was provided to
3  the Penn Quarter Group?
4      A.   Not to my understanding, no.
5           THE EXAMINER:  It is actually
6  nearly 10 to 12, and I have just been informed the
7  tape is running low, could we take a 5-minute
8  break for the sake of both recordings.
9           THE VIDEOGRAPHER:  This is the end
10 of media 1 in the deposition of Christopher
11 Steele. Going off the record at 11.39.
12           (Recess taken)
13           THE VIDEOGRAPHER:  This is the
14 beginning of media 2 in the deposition of
15 Christopher Steele.  Going on the record at 11.48.
16 BY MR FRAY-WITZER:
17     Q.   In providing the December memo to
18 Fusion GPS did you give Fusion GPS any cautions or
19 warnings concerning the nature of the information
20 contained in the December memo?
21          MS EIKHOFF:  Objection.
22     A.   I cannot remember precisely, but
23 the memo would have been covered by the same
24 caveats that all memos were covered by in the
25 provision of them to Fusion.

92

Mr Christopher Steele

BY MR FRAY-WITZER:

Q. And what prior caveats had you given to Fusion that would apply to the December memo?

A. I cannot remember exact wording, but the standard wording is along the lines of this is material from human source or sources regarded as credible, and it is produced to the best of our knowledge and ability to be accurate and true.

Q. When you provided the December memo to Mr Simpson did you caution him that a central problem when you are a Russian intelligence expert is disinformation and the Russians have a long history and advanced capability in disinformation?

MS EIKHOFF: Object to form.

MR MILLAR: This is not covered by topics 3, 4 and 5.

THE EXAMINER: US plaintiffs.

MR FRAY-WITZER: This is about what was said during the provision of the memo to Fusion GPS. It is precisely within the topics.

THE EXAMINER: My opinion is that it is outside the topics which are provision, and

```
 1                    Mr Christopher Steele
 2                    THE EXAMINER:  Well, I cannot see
 3     that there is a question within a question, do you
 4     object to this, Mr Millar?
 5                    MR MILLAR:  Well, I will withdraw
 6     the objection to this question.  I will listen for
 7     the next one.
 8                    MS EIKHOFF:  I do object to form.
 9                    THE EXAMINER:  Mr Steele, you can
10     choose whether to answer, but the objection has
11     been withdrawn.
12          A.     Well, I will answer then.  2 points
13     really, one, is that a general understanding
14     existed between us and Fusion during this topic --
15     during this project, that all material contained
16     this risk, but that any information that was
17     actually provided would have been subject to
18     scrutiny in respect of this risk, and a warning,
19     specific warning would have been issued had we
20     believed that, as we would say, I think, the
21     source was intending to influence as well as
22     inform.  I think that covers the point.
23                    The other point is that this memo
24     was not for the consumption of Fusion or for their
25     former client, it was for the consumption of
```

144

## CERTIFICATE OF COURT REPORTER

I, Pamela E Henley, Court Reporter, do hereby certify that I took the stenotype notes of the foregoing deposition and that the transcript thereof is a true and accurate record transcribed to the best of my skill and ability

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

_____

Pamela E Henley