# Exhibit 1

```
          IN THE UNITED STATES DISTRICT COURT

             SOUTHERN DISTRICT OF FLORIDA


 ALEKSEJ GUBAREV, XBT HOLDING    )Case No.
 S.A., AND WEBZILLA, INC.,       )17-CV-60426-
                                 )UU
              Plaintiffs,        )
                                 )
          vs.                    )
                                 )
 BUZZFEED, INC. AND BEN          )
 SMITH,                          )
                                 )
              Defendants.        )
 --------------------------------)



            DEPOSITION OF BENJAMIN SMITH

                 New York, New York

              Thursday, February 8, 2018










 Reported by:
 TAMI H. TAKAHASHI, RPR, CSR
 JOB NO. J1400363
```



```
 1
 2   B E N J A M I N   S M I T H, called as a
 3      witness, having been duly sworn by a
 4      notary public, was examined and testified
 5      as follows:
 6                    EXAMINATION
 7   BY MR. FRAY-WITZER:
 8      Q.    Good morning.
 9      A.    Good morning.
10      Q.    Let me start by asking you if you
11   have ever been deposed before.
12      A.    No, I haven't.
13      Q.    Okay.  So I'm going to lay out for
14   you some of the ground rules of a deposition.
15           The first thing is that I will ask
16   you a series of questions.  Hopefully you'll
17   give a series of answers.  All of your
18   answers need to be verbal so head nods,
19   um-hums, uh-uhs, can't be recorded accurately
20   by the transcriptionist, so I would ask that
21   if you're giving an answer -- yes-or-no
22   answer that you say "yes" or "no"; if it's a
23   longer answer, that you give your longer
24   answer but your answers be verbal.
25           Is that okay?
```



```
 1             CONFIDENTIAL - Smith
 2   stand up or to knock down the allegations.
 3        Q.   Had you attempted to verify the
 4   allegations made about Aleksej Gubarev?
 5        A.   Well, we had sent a reporter to
 6   Prague to try to either confirm or disprove
 7   that Michael Cohen had been in Prague for a
 8   meeting about your client's alleged activity
 9   but we hadn't -- we weren't able to.
10        Q.   That talks to trying to confirm or
11   disprove Michael Cohen's presence in Prague.
12   Did you do anything to try and confirm or
13   deny --
14             Let's start with the allegation
15   that Aleksej Gubarev was an unwitting agent
16   of the FSB.
17        A.   No.
18        Q.   Did you do anything to try and
19   confirm or deny the allegations that Aleksej
20   Gubarev or Webzilla or XBT were acting to
21   hack into the Democratic National Committee?
22        A.   No.
23        Q.   Before you published the dossier,
24   were you aware that those allegations were in
25   the dossier?
```



```
 1                  CONFIDENTIAL - Smith
 2        A.   Yes, though -- though I'm not sure
 3   your last statement is a direct literal quote
 4   from the dossier, but --
 5        Q.   At the time that you decided to
 6   publish the dossier, were you aware that the
 7   dossier said that "over the period March to
 8   September 2016, a company called XBT/Webzilla
 9   and its affiliates had been using botnets and
10   porn traffic to transmit viruses, plant bugs,
11   steal data and conduct 'altering operations'
12   against the democratic party leadership"?
13        A.   Yes.
14        Q.   Were you aware that the dossier
15   said, "Entities linked to one Aleksei (sic)
16   Gubarev were involved and he and another
17   hacking expert, both recruited under duress
18   by the FSB, Seva Kapsugovich, were
19   significant players in this operation"?
20        A.   Yes.
21        Q.   Did you understand those to be
22   serious allegations?
23        A.   Yes.
24        Q.   Did you attempt to contact Aleksej
25   Gubarev before publishing the dossier?
```



```
 1                CONFIDENTIAL - Smith
 2        A.   No.
 3        Q.   Why not?
 4        A.   Well, the story we wrote on
 5   January 10th wasn't about Aleksej Gubarev.
 6   It was about the dossier, about a document
 7   that had been briefed to the president of the
 8   United States, the president-elect of the
 9   United States, by the top intelligence
10   officials in the country, and it was -- and
11   it was -- yeah.
12        Q.   Why not redact out the names of the
13   plaintiffs before you published the dossier?
14        A.   The details in the dossier were
15   important parts of an incredibly important
16   document.
17        Q.   Did you make any redactions to the
18   document?
19        A.   Yes.
20        Q.   What did you redact from the
21   document?
22        A.   We redacted the name of Michael
23   Cohen's father-in-law who was mentioned in
24   passing but was not the subject of -- was not
25   central to the dossier.
```



```
 1                  CONFIDENTIAL - Smith
 2        Q.   If the justification for publishing
 3   the dossier is that the information contained
 4   therein was so important that the president
 5   and president-elect were being briefed on it
 6   but you have no idea if the president and
 7   president- elect were being briefed about the
 8   allegations concerning the plaintiffs, why
 9   not redact out the information about the
10   plaintiffs?
11        A.   Well, this wasn't a story about the
12   plaintiffs; it was a story about the document
13   and the document that had been -- was seen as
14   so important by the U.S. intelligence
15   community that had been the subject of this
16   extraordinary briefing to two presidents.
17        Q.   The allegations concerning the
18   plaintiffs weren't the subject of the
19   briefing to two U.S. presidents?
20        A.   The dossier was the subject of the
21   briefing to two U.S. presidents.
22        Q.   Certain portions of the dossier?
23        A.   I'm not -- I'm not personally
24   familiar with the details of the briefing.
25        Q.   It was a two-page briefing, I think
```



```
 1                    CONFIDENTIAL - Smith
 2        A.   Yes.
 3        Q.   -- "of how much annotation.  We did
 4   point out that things that we really, were
 5   very, very confident were false, in part to
 6   say to the reader, caveat --"
 7             Again, why not redact out the names
 8   of individuals against whom allegations are
 9   made if you don't know that those allegations
10   are true?
11        A.   Well, this was an extraordinarily
12   important document that had been the subject
13   of an extraordinary briefing to two
14   presidents, that was the subject of intense
15   interest at the very highest levels of the
16   law enforcement and intelligence community,
17   and it's -- and there are circumstances in
18   which you use the word "alleged" and report
19   on allegations in journalism, and this was
20   one of them.
21        Q.   You said that BuzzFeed redacted out
22   the name of Michael Cohen's father-in-law,
23   correct?
24        A.   Yes.
25        Q.   Who made the decision to redact out
```



```
 1                CONFIDENTIAL - Smith
 2   that name?
 3        A.   It was my decision ultimately.
 4        Q.   Did you read the entire dossier and
 5   make conscious determinations as to what you
 6   would and would not redact?
 7        A.   The discussions about redactions
 8   were with our lawyer.
 9        Q.   And I don't want to know that,
10   so --
11             After the dossier was published,
12   did you believe that it was a mistake to have
13   included Alex Gubarev's name in it?
14        A.   No.
15        Q.   Was there discussion at BuzzFeed
16   that it was a mistake to have included his
17   name?
18        A.   I can't speak for all discussions
19   at BuzzFeed.
20        Q.   Were there discussions that you
21   were party to in which people said it was a
22   mistake to include his name?
23        A.   When Mr. Gubarev sued us, there
24   were many discussions with our lawyers.
25        Q.   Without lawyers, were there
```



```
 1
 2              C E R T I F I C A T E
 3   STATE OF NEW YORK    )
 4                        : ss.
 5   COUNTY OF NEW YORK   )
 6
 7          I, TAMI H. TAKAHASHI, a Notary
 8   Public within and for the State of New
 9   York, do hereby certify:
10          That BENJAMIN SMITH, the witness
11   whose deposition is hereinbefore set
12   forth, was duly sworn by me and that
13   such deposition is a true record of the
14   testimony given by the witness.
15          I further certify that I am not
16   related to any of the parties to this
17   action by blood or marriage, and that I
18   am in no way interested in the outcome
19   of this matter.
20          IN WITNESS WHEREOF, I have hereunto
21   set my hand this 13th day of February
22   2018.
23
24          _____
25                  TAMI H. TAKAHASHI
```

