UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| ALEKSEJ GUBAREV,<br>XBT HOLDING S.A., and<br>WEBZILLA, INC.<br>    Plaintiffs,<br><br>v.<br><br>BUZZFEED, INC. and<br>BEN SMITH<br>    Defendants. | Case No.<br><br>0:17-cv-60426-UU |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 9
TO EXCLUDE TESTIMONY ABOUT THE MEANING OF STATEMENTS AT ISSUE**

*"Gaslight: to attempt to make (someone) believe that he or she is going insane (as by subjecting that person to a series of experiences that have no rational explanation)"*

- Merriam-Webster Dictionary

It is hard to understand Defendants' Ninth Motion *in Limine* as anything but some elaborate attempt to gaslight Plaintiffs and the Court. On the one hand, Defendants claim that their motion is intended to preclude Plaintiffs' witnesses (both expert and lay) from offering any testimony concerning the meaning of the statements made about them in the December Memo and, on the other hand, Defendants continue to maintain their right to present evidence that the actual words contained in the December Memo mean something than their plain meaning, as presented in the context of the December Memo.

As has been the case with many of the Plaintiffs' recent filings with this Court, it seems particularly important to again highlight the precise words used in the December Memo that are the basis for the present action:

> [Redacted] reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership. Entities linked to one Aleksei GUBAROV [sic] were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH, were significant players in this operation. In Prague, COHEN agreed contingency plans for various scenarios to protect the operations, but in particular what was to be done in the event that Hillary CLINTON won the presidency. It was important in this event that all cash payments owed were made quickly and discreetly and that cyber and that cyber and other operators were stood down/able to go effectively to ground to cover their traces.

In other words, Buzzfeed's publication accused Plaintiffs of: (1) using botnets and porn traffic to transmit viruses, plant bugs, steal data, and conduct "altering operations" against the Democratic Party Leadership, (2) being agents of the FSB, (3) being part of an elaborate conspiracy that would need to go into hiding if Hillary Clinton had won the Presidency, and (4) (implicitly) attempting to undermine the 2016 United States Presidential election.

In their Motion, Defendants argue (as they have elsewhere) that: (1) the allegations that Plaintiffs *used* botnets and porn traffic to *steal data and conduct 'altering operations'* could just as easily means that some unknown customer or third party made use of Plaintiffs' infrastructure (with or without their knowledge) to do the things alleged in the dossier; (2) the allegation that Mr. Gubarev *was involved* and *was recruited under duress by the FSN* and was a *significant player in the operation* actually means that Mr. Gubarev owned the companies whose infrastructure may have been used by some unknown customer or third party (with or without his knowledge); and (3) the allegation that Mr. Gubarev was receiving cash payments for all of this and had plans to go into hiding if Hillary Clinton won the Presidency really means that… well, actually, Defendants simply drop that part of the relevant paragraph out of their discussions, apparently unable to redefine these words into something they believe would be useful.

2

Having thus turned the English language upside-down, Defendants next assert that it would be unfair for Plaintiffs to testify as to the plain meaning of the words as they appear in the December Memo, as opposed to Defendants' alternative-reality version of the words they published.  To put a point on Defendants' argument – Defendants are not simply seeking to preclude expert testimony with which they disagree (though they are seeking to do that as well), they are also seeking a ruling that would preclude Plaintiffs' witnesses from simply testifying that the December Memo accuses *them* of doing certain things, individually, and that they did not themselves do any of the things actually alleged in the December Memo.

This is simply absurd.  It is, without exaggeration, seeking to both prevent Plaintiffs from offering straightforward testimony as to the falsity of the actual statements contained in the December Memo while at the same time allowing Defendants to argue that Plaintiffs have failed to disprove statements that are not actually made in the defamatory publication.

There is, however, one aspect of their argument in which Defendants have a point – it is simply not the point they believed they were making.  Defendants argue that Plaintiffs' rebuttal expert, Eric Cole, should not be permitted to testify as to the meaning of the words contained in the December Memo because they words are clear and need no explanation.  Plaintiffs agree that the words are, indeed, clear and that expert testimony concerning the words used in the December Memo do not need to be explained by an expert witness.[1]  This is, however, precisely what Defendants' expert witness, Anthony Ferrante, does throughout his report.  Indeed, in his report and in his deposition, Mr. Ferrante repeatedly acknowledged that the scope of his assignment was limited solely to "conduct[ing] a technical investigation and collect evidence that

---

[1] In respect, at least, to the non-technical terms.  Defendants' instant Motion to does not appear to seek to prohibit Mr. Cole or others from explaining what the technical terms "botnets," "plant bugs," and "conduct 'altering operations'" mean.

3

links XBT *infrastructure* to the described malicious cyber activity in the Steele dossier." Ferrante Depo., p. 14 (emphasis added).  Mr. Ferrante also testified that he did not even *consider* Mr. Gubarev's involvement other than to the extent that he owned XBT.  Ferrante Depo., p. 44-45 ("So just so that I understand, the second sentence that I had read: 'Entities 21 linked to one Aleksej Gubarev were involved and he and another hacking expert, both recruited under duress by the FSB, Seva Kapsugovich, were significant players in this operation.'  Do I understand you to be saying that you were not investigating the part that I just read?  A. Other than the fact that Aleksej Gubarev owned and operated XBT, it was outside the scope of my investigation."); Ferrante Depo., p. 63 ("And you have no evidence that [Mr.] Gubarev personally did any of the things alleged in the Steele dossier?  A. Other than the fact that Aleksej Gubarev owns and operates XBT and related entities, he was outside the scope of my assignment.").

In other words, Mr. Ferrante's entire testimony hinges on Defendants' tortured attempts to make the words of the December Memo mean something *other* than the plain meaning of those words.  And, Defendants' entire motion then hinges on Plaintiffs being precluded from testifying about – or responding to – Defendants' transmogrification of allegations that Plaintiffs did certain things themselves into allegations that others may have used Plaintiffs' infrastructure to commit certain alleged acts.  Defendants should not be permitted to insist that black means white and then insist also that Plaintiffs cannot say that black is, in reality, black.[2]

---

[2] Defendants' stated concern disappears entirely if Mr. Ferrante's testimony is excluded, as Plaintiffs urge it should be in their *Daubert* Motion.  If Mr. Ferrante's testimony is excluded, Plaintiffs would have no cause to call Dr. Cole to rebut the excluded testimony.

**Conclusion**

For the reasons stated hereinabove, Defendants' Motion in Limine No. 9 to Exclude Testimony About the Meaning of Statements at Issue should be denied in its entirety.

Dated: November 13, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
Dylan Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Attorneys for Plaintiffs*