**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-60426-UU**

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

  Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

  Defendants.

_____/

**OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO PRECLUDE THE INTRODUCTION OF TESTIMONY OR EVIDENCE CONCERNING THE RELIABILITY OF CHRISTOPHER STEELE OR FUSION GPS OR ANY EFFORTS ALLEGEDLY UNDERTAKEN BY EITHER TO VERIFY ALLEGATIONS CONTAINED IN THE DOSSIER**

**INTRODUCTION**

The undersigned counsel has been practicing law for a long time. This may be the first time, however, they have ever seen a party file a motion *in limine* to exclude its own evidence, after telling three courts in two countries that it is "so obvious" that the evidence is "highly material" to a critical element of *its* prima facie case that it would be "absurd" to claim that it would not be admissible at trial. Plaintiffs' motion should be denied because what Plaintiffs told courts in Florida, Washington, D.C., and the United Kingdom (with Defendants' agreement) was correct. As the author and initial distributors of the Dossier, evidence from Christopher Steele and Fusion GPS about their efforts to verify the Dossier's allegations is obviously relevant to whether the allegedly defamatory allegations are true or false, which is an essential element of Plaintiffs' defamation claim. It is therefore admissible for at least that purpose.

**FACTUAL BACKGROUND**

As an initial matter, it is not clear to Defendants what evidence Plaintiff's seek to exclude. Plaintiffs' assert that "Defendants have designated significant portions of Mr. Steele's and Fusion GPS' deposition testimonies in which ████████████████████████████ ██████████████████████████████ Pls.' MIL No. 4 at 2. However, they do not specify to which designations they are referring. In addition, in fact, when it comes to Mr. Steele, both parties have designated substantial portions of his deposition testimony. There are relatively few designations in dispute, and Defendants have not identified any that would seem to fall into the category to which Plaintiffs are objecting in this Motion *in Limine*. And while there are more differences in the parties' designations when it comes to Fusion GPS, it is still not completely clear what evidence Plaintiff are seeking to exclude. As a result, this Opposition will address the merits of Plaintiffs' arguments as to the testimony of both Steele and Fusion.[1]

**A.      Plaintiffs Compel Christopher Steele's Deposition**

As this Court no doubt recalls, Plaintiffs not only sought the depositions of both Steele and Fusion, but also spent months and months in three different jurisdictions compelling them to testify, over their vigorous objections. As to Mr. Steele, Plaintiffs first obtained a Request for International Judicial Assistance from this Court (Dkts. 52, 55) and then successfully overcame, in part, Steele's objections to testifying in the High Court of Justice in London. Dkts. 156, 167. In the course of the U.K. litigation, Plaintiffs reached an agreement with Steele's counsel that if the U.K. court were to compel Steele to testify, his deposition would be limited to questions surrounding the allegedly defamatory statements within Report No. 166. Dkt. 156-1 at 15; Ex. 3 (Second Witness Statement of Steven Loble) at 6-7. Specifically, Plaintiffs agreed that the deposition would focus on the limited inquiry which Plaintiffs stated was the most essential to

---

[1] It is also important to note that the Fusion GPS ("Fusion") deposition was taken pursuant to Rule 30(b)(6). The subpoena pursuant to which Fusion's deposition was taken specifically called for Fusion to designate a representative who would testify on behalf of its "contractors." Ex. 1 (*In re Third Party Subpoena to Fusion GPS*, No. 0:18-mc-60528-UU, Dkt. 1-3) at 5 ("For purposes of this request, the term "Fusion GPS" shall refer to Fusion GPS, its owners, operators, directors, officers, managers, employees, agents, contractors and freelancers."); Ex. 2 (Fusion Dep.) 18:17-19 ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

2

their case—i.e., "whether or not the contents of the relevant paragraph of the dossier . . . were verified or not." *Id.* at 6. Their written submissions to the U.K. court explained that it was essential to compel Steele to testify specifically about that topic—the very testimony they now to seek to exclude—because:

> [T]he key factual issues in the US proceedings include whether or not the defamatory allegations in issue are true and Buzzfeed's lack of care in publishing the dossier. It is, obviously, highly material to that determination to have evidence from Mr. Steele as to . . . (2) How he came to make the allegations in the December memorandum/whether the allegations were verified. *This evidence will go to whether the allegations are true* (topics 2-5).

*Id.* at 8 (emphasis added). Notably, this statement to the U.K. court was made as part of a "Statement of Truth," which under U.K. law may subject the declarant to contempt proceedings if made without an honest belief in its truth. Ex. 4 (United Kingdom Civil Rules of Evidence) at part 32.14.

And in Plaintiffs' oral submissions during a lengthy hearing on Steele's efforts to quash the deposition entirely, Plaintiffs' barrister repeatedly emphasized why it is indisputably "obvious" that testimony from Steele regarding his efforts to verify the allegations at issue are highly relevant to the element of falsity under American defamation law:

> [T]hey [Steele's counsel] ignore that in the American proceedings the truth of the allegation is in issue. So, I would respectfully submit that it is *fairly obvious* that it is relevant to establish in the falsity of the allegations to understand the circumstances in which the allegations came to be made. We would respectfully disagree with the assertion that whether or not the information was verified has no bearing on the establishment of whether or not the allegations were true, or as it is in the United States the burden on my clients to prove that the allegations are false.

Ex. 5 (Tr. of Feb. 5 2018 UK Hearing) at 38 (emphasis added). Plaintiffs' barrister further explained:

> Where you are seeking to prove a negative it is all very well my learned friend suggesting that Mr. Gubarev will be able to go along before the American court and say, "It is untrue," but he is not going to leave it at that. The evidence from a person who wrote this part of "the dossier" that says, if it is the case, "This information came from sources I cannot disclose but I did not verify it," is *of course relevant*, Master, to the likelihood or otherwise of the allegations in fact being true.
>
> As Mr. Millar [Steele's barrister] put it, the questions on which my clients wish to ask questions of Mr. Steele are relevant to seeking to undermine the credibility of the allegations in that paragraph of "the dossier". We say, Master, with respect, *it*

3

> *is not rocket science* to understand that the author of the allegations has relevant evidence to give as to how he came to make the allegations going to the question of whether my client can in the American proceedings prove that those allegations are untrue, to satisfy the burden of proof on him so to do.

*Id.* at 39 (emphasis added). Plaintiff's barrister even rebutted Steele's argument that this Court had not given sufficient consideration to whether the evidence at issue was in fact relevant when it issued it Request for Judicial Assistance:

> My learned friend seeks to criticise the American court and undermine your reliance upon the statements in the request on the basis that it did not take very long for the court to think about it; a point made in the skeleton argument. To this we say, maybe that was because, with respect, it *is so obvious that in libel proceedings* in which the truth of the defamatory statements are in issue, and my clients bear the burden of proving a negative, that is, that the allegations are untrue and the circumstances by which those allegations came to be published are in issue, the author of the defamatory statements who was responsible for their first being made available to parties other than himself will have relevant evidence to give.

*Id.* at 36 (emphasis added).

Moreover, Plaintiffs emphasized to the U.K. court that the evidence regarding Steele's verification of the allegedly defamatory statements was *not* for discovery purposes—which would be impermissible as a basis to compel a U.K. citizen to testify—but rather was clearly relevant testimony admissible at any trial in this case. As Plaintiffs' barrister explained, "I have already drawn your attention, Master, to the fact that the American court has expressly disavowed that the purpose is for early stage discovery or fishing, which would not be permitted." *Id.* at 44. Rather, "it is in fact a clear case that he does have relevant evidence to give in the issues in the American proceedings." *Id.* at 43.[2]

In its judgment, the U.K. court ordered a very limited deposition of Steele to proceed, expressly because it was to be used at trial. The court held:

> In my judgment it is obvious that the author of the paragraph complained of in the Florida proceedings would be a relevant witness in defamation proceedings which are entirely based on the allegations in that paragraph, in a jurisdiction where the

---

[2] Defendants objected to this rather drastic narrowing of the scope of Steele's deposition, which barred Defendants from asking Steele about anything else in the Dossier. Dkt. 156-1 at 20-21. Plaintiffs did not dispute Defendants' position that a broader deposition would be relevant for purposes of any trial in this case, but for reasons of "pragmatism" told the U.K. court that they would be willing to proceed with either the narrow or broader alternative. *Id.* at 17, 26.

4

> Plaintiffs have to prove that the allegations are false.  I accept Mr. Millar's submissions that the evidence as to what, if any, verification was carried out in respect of the information contained in that paragraph, will not necessarily answer the question of whether that information is true or false, but it may very well inform and assist the Florida court, and the parties, in relation to that issue.  It is evidence relevant to that issue . . . <u>I further conclude that the evidence is required for trial, and not for 'oral discovery'</u> . . . .

Dkt. 156-1 at 24. (emphasis added)

B.    **Plaintiffs' Compel Fusion GPS's Deposition**

As to Fusion, Plaintiffs subpoenaed Fusion in DC on August 8, 2017.  And then, after several months of back and forth in DC, successfully defeated a motion to quash that was filed first in the United States District Court for the District of Columbia, and then transferred to this Court.  To do so, they made the same representations to this Court that they did in the U.K.  Specifically as to Plaintiffs' Area of Inquiry No. 11—"Fusion's efforts (or lack of efforts) to verify allegations in the December Memo"—Plaintiffs told this Court that "[i]n particular, Fusion's relevance objections are *absurd* inasmuch as the area of inquiry is directly related to Plaintiffs' burden of showing an untrue statement." Ex. 6 (*In re Third Party Subpoena to Fusion GPS*, No. 0:18-mc-60528-UU, Dkt. 46) at 7.  And with respect to Area of Inquiry No. 15, which sought any information about the Plaintiffs, they told this Court:

> Given that Fusion continued its research past the election (and perhaps to the current day), it is entirely possible that Fusion has discovered information demonstrating the falsity of the allegations concerning Plaintiffs contained in the December Memo.  Such information is clearly relevant.

*Id.* at 9.  And like the U.K. court, this Court agreed.  Dkt. 50 at 11 ("Fusion GPS's efforts to verify or disprove the allegations concerning Plaintiffs in the December memo and the outcome of those efforts could be highly relevant to whether the alleged defamatory statements are true or false.").

C.    **The Gap Between Plaintiffs' Expectations and Steele's and Fusion's Testimony**

Before Steele's deposition was actually taken, Plaintiffs made clear that based on statements had been attributed to Steele in media reports, they fully expected both Steele and Fusion to disavow the statements in the Dossier about them.  Shortly before Steele's deposition took place, Plaintiff's counsel Val Gurvits confidently told *Vanity Fair*:

> "I'm going to establish that the information about my client was wholly unsolicited," Gurvits continued, "that [Steele] himself doesn't believe it's true,

5

> and that he hasn't done anything to vet if it's truthful. . . . We've been very careful to read the books [and articles] published about him. Where else do I know that one of his friends called BuzzFeed a bunch of tossers? I might ask him about that at the deposition."

Ex. 7 (June 4, 2018 article in *Vanity Fair* by Joe Pompeo). Plaintiffs made the same predictions to this Court in their opposition to Fusion's motion to quash, which was filed before Steele's deposition in London took place. *See, e.g.*, Dkt. 46 at 6 ("Indeed, if Mr. Steele's prior statements are to be believed, the information contained in the December Memo was both unsolicited and unverified."); *id.* ("And, to the extent that Fusion will testify that it did nothing to verify the allegation concerning Plaintiffs, such information is directly relevant to Plaintiffs' burden of proving a false statement.").

Plaintiffs' predictions, however, proved to be wrong. Steele testified that █████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████

And in the 30(b)(6) deposition of Fusion, its representative emphatically stood behind the Dossier, testifying that ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

6

███████████████████████████████████████████████████████████████████

██████████████████████████████████████ Fusion also produced hundreds of documents substantiating ████████████████████████████████████████████████████████████ ████████████████████████████████████████, and information about their efforts to enter the Russian market during the time of the conduct alleged in the Dossier. *Id.* 188:7-214:17.

## ARGUMENT

There is no mystery about why Plaintiffs have filed this unusual motion, and the reasons have nothing to do with the "sword and shield" doctrine. Rather, they bring this motion because after successfully compelling Christopher Steele and Fusion GPS to testify about matters that are highly relevant to this case, Plaintiffs did not like what those witnesses had to say. That is not a basis upon which to exclude evidence, and Plaintiffs' motion should be denied as meritless.

Plaintiffs' motion first invokes the "sword and shield" doctrine to seek to exclude any testimony by Defendants regarding their supposed reliance on efforts by Steele or Fusion to verify information in the Dossier, but this is a red herring. Defendants have not offered, nor do they have any intention of offering, any testimony that they were aware of and/or relied on efforts by Steele or Fusion to verify the Dossier. Indeed, in his deposition Ben Smith did not claim to have had any communication with Steele regarding the Dossier or anything else, nor was he asked any questions about Steele to which he invoked a confidential source privilege. He simply testified about his general knowledge regarding who Mr. Steele is.

Plaintiffs' argument regarding their basis for supposedly invoking the "sword and shield" doctrine is also misleading. They assert that "Defendants have been consistent in stating that they should not be required to provide any information about their sources or conversations with their sources because none of their defences relied on the identity of such sources, the reliability of such sources, or information obtained from such sources." Pls.' MIL No. 4 at 2. They provide no citation for that assertion, and what they appear to be referencing has nothing to do with the substance of the testimony they are seeking to exclude in this motion. In particular, Plaintiffs appear to be referencing statements made by Defendants more than a year ago regarding the identity of the person who provided them the Dossier. Before deposition discovery commenced in this case, Plaintiffs sought to compel Defendants to disclose the identity of the source who provided the Dossier to them. Among other points, Plaintiffs invoked the "sword and shield" doctrine to claim that Defendants were relying on that source to assert the fair report

7

privilege. In response, Defendants explained why they their fair report privilege defence was based on government activity with the Dossier, not the identity of the source who provided the document. Dkt. 80 at 9-11. In any event, while Magistrate Judge O'Sullivan upheld Defendants' right to protect the source, the issue became moot because Plaintiffs found the identity of the source through their own independent efforts, so his identity was no longer confidential. As a result, at his deposition Ken Bensinger withdrew his claim of privilege with respect to that source and testified about their communications. In short, there is no "sword and shield" issue presented in this case.

The real crux of Plaintiffs' new position is their claim that "[t]o the extent that Mr. Steele or Fusion claim to have taken any steps to verify the allegations contained in the Dossier, such claims are relevant *only* to the extent that Defendants were aware of those alleged efforts prior to publishing the defamatory materials." Pls.' MIL No. 4 at 3. On that basis, they seek to exclude all evidence from the author and distributor of the Dossier about whether and why they believed it to be true—regardless of whether Defendants claim to have been relied on those efforts (which they do not). Plaintiffs' assertion here flatly contradicts everything Plaintiffs represented to multiple courts for more than a year, including this Court, about the "obvious" relevance of such testimony to the fundamental issue of *truth* and the "absurdity" of making the very argument Plaintiffs now make.

Plaintiffs' new-found position is especially disingenuous because the depositions of Smith and Bensinger Plaintiffs now claim triggered their "sword and shield" argument took place nine months ago, on February 6-7, 2018. That was well before the U.K. court issued its judgment regarding Steele's deposition on March 22, 2018, and before Plaintiffs' began renewing their opposition to Fusion's motion to quash in this Court. *See, e.g.*, Ex. 9 (*In re Third Party Subpoena to Fusion GPS*, No. 0:18-mc-60528-UU, Dkt. 35). *If* Plaintiffs really believed that Steele's and Fusion's testimony about verifying the Dossier was "relevant *only* to the extent that Defendants were aware of those alleged efforts," and *if* Plaintiffs really believed that Bensinger and Smith's deposition testimony foreclosed the relevance of such testimony, then they plainly would have had an obligation to inform both courts of that rather than make representations to the contrary and continue to harass witnesses for testimony they thought was irrelevant. Indeed, while it might be debated whether Plaintiffs are technically judicially estopped from filing this motion (because it is unclear whether their prior statements were

8

"sworn" as defined by American law), their conduct is a clear example of why courts act to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Burnes v. Penco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

In any event, this Court need not wade into those waters because everything that Plaintiffs previously argued regarding the relevance of this evidence was correct. It is axiomatic that if the jury were to find that the allegedly defamatory allegations are substantially true, it need never consider why or under what circumstances Defendants published them. *Brueggemeyer v. Associated Press*, 609 F.2d 825, 826 (5th Cir. 1980) (since court found that "[t]he reports constitute substantially accurate accounts," it "need decide no other questions raised by appellants"). But as Plaintiffs have maintained all along and two courts have recognized, testimony by the authors of those statements regarding why they made them is obviously relevant to the element of falsity.

Finally, it would also be highly prejudicial to Defendants to exclude this category of evidence from Steele and/or Fusion. Both parties have designated substantial portions of each deposition, most without objection. Thus, substantial portions of their depositions will be played at trial, no matter what. Both Steele and Fusion testified about efforts to verify the Dossier at various points in the course of their depositions, and any effort to cherry-pick their transcripts to remove that testimony would inevitably create a misleading impression of the overall substance of the testimony. For this reason as well, Plaintiffs' Motion *in Limine* No. 4 should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion *in Limine* No. 4 should be denied.

Dated: November 13, 2018

Respectfully submitted,
/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served electronically by email on all counsel or parties of record on the service list below this 13th day of November, 2018.

By: /s/ Adam Lazier
Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com