# EXHIBIT 5

A

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION

Case No: CR-2017-664

The Royal Courts of Justice
Strand, London WC2A 2LL

B

Date of hearing: 05 February 2018
Start Time: 10.30   Finish Time: 17.00

Page Count:   89
Word Count:   37699
Number of Folios:   524

C

Before:

SENIOR MASTER FONTAINE
(SENIOR MASTER & QUEEN'S REMEMBRANCER)

D

(1) ALEXSEJ GUBAREV                                   Plaintiffs
(2) XBT HOLDING S.A.
(3) WEBZILLA INC

- and -

Defendants

E

(1) BUZZFEED INC
(2) BEN SMITH

- and -

Applicant

CHRISTOPHER STEELE

F

MR. GAVIN MILLAR, QC and MR. EDWARD CRAVEN for Mr. Steele.

MISS HANNAH BROWN, QC for the Plaintiffs.

G

MR. ALEX BAILIN, QC and MR. BEN SILVERSTONE for the Defendants.

MR. BLAKE appeared for the Foreign & Commonwealth Office.

H

P R O C E E D I N G S

- - - - - - - - - - - - - - - - - - - -

1

Marten Walsh Cherer Ltd
Tel:  020 7067 2900

A

*If this Transcript is to be reported or published, there is a requirement to ensure that no reporting restriction will be breached. This is particularly important in relation to any case involving a sexual offence, where the victim is guaranteed lifetime anonymity (Sexual Offences (Amendment) Act 1992), or where an order has been made in relation to a young person.*

B

*This Transcript is Crown Copyright. It may not be reproduced in whole or in part other than in accordance with relevant licence or with the express consent of the Authority. All rights are reserved.*

Digital Transcription by Marten Walsh Cherer Ltd
1st Floor, Quality House, 6-9 Quality Court, Chancery Lane, London WC2A 1HP
Tel No: 020 7067 2900 Fax No: 020 7831 6864 DX: 410 LDE
Email: info@martenwalshcherer.com
C
Web: www.martenwalshcherer.com

D

E

F

G

H

2

Marten Walsh Cherer Ltd
Tel: 020 7067 2900

A

behalf of Mr. Steele, and it is exactly what you are not supposed to do, we would respectfully submit.  We will come on to that in a moment.

Then, I think lastly, at this stage if I can ask you, Master, to look at (?)*First American v Zyatt*, which is at tab 4, just the headnote, it states:  "In all but the clearest

B

cases the decision as to whether particular answers or answers on particular topics would constitute relevant admissible evidence was primarily a matter for the foreign court and as a general rule English courts should therefore accede to Letters of Request issued by foreign courts if they could properly do so."

C

Master, if we can then seek to apply those legal principles to this request.  First of all, the request, at tab 5 of the first bundle, and you have already been taken to this passage that "the court confirms that it considered the evidence that is directly relevant to the issues in dispute," but I would ask you, Master, to note in particular the following passage ----

D

MASTER FONTAINE: Which page?

MISS BROWN:  I am sorry, page 26, tab 5.  – "and is not discovery within the meaning of article 23 of the Hague Evidence Convention, that is, discovery intended to lead to relevant evidence at trial."

E

So, Master, pausing there, not only do you have express confirmation from the United States court that it considers that this evidence is relevant to the issues in the American proceedings, but you actually have express confirmation that this evidence is not discovery in the wider sense that does sometimes cause difficulties with requests

F

from American courts for examinations to the English court.  The precise difficulties identified by Bernton J in *Arpad Busson*, that is exactly what he was talking about, the fact that in America discovery can mean something rather wider and the more wide-ranging discovery intended to lead to evidence or lead to evidence that could lead to

G

relevant matters for trial.  Here you have express confirmation that it is not wide-ranging disclosure but this is discovery intended to lead to relevant evidence for trial.

The concerns in *Arpad Busson* simply do not arise because here you can see the court has directly addressed its mind to that issue and confirmed that, no, this evidence is

H

evidence for trial.

35

Marten Walsh Cherer Ltd
Tel:  020 7067 2900

A

B

C

D

E

F

G

H

Then at 34, just further on, again repeated that for the reasons set forth which were clearly the exposition of the issues that were stated earlier in the request, of course a summary, but the summary identifying that it was Mr. Steele who actually wrote "the dossier" that has given rise to the proceedings in the United States, "believes that the witnesses will be able to provide evidence directly relevant to the main issues between the parties and without which the aims of justice could not be properly met.  The United States District Court for the District believes that this information is not available from any other source."

So, we say, Master, that unless it is the clearest of cases, and we say it clearly is not, you should not go behind that statement by the American court, that is he satisfied that Mr. Steele can give relevant evidence and that is evidence that is for use at trial in those proceedings.

My learned friend seeks to criticise the American court and undermine your reliance upon the statements in the request on the basis that it did not take very long for the court to think about it; a point made in the skeleton argument.  To this we say, maybe that was because, with respect, it is so obvious that in libel proceedings in which the truth of the defamatory statements are in issue, and my clients bear the burden of proving a negative, that is, that the allegations are untrue and the circumstances by which those allegations came to be published are in issue, the author of the defamatory statements who was responsible for their first being made available to parties other than himself will have relevant evidence to give.

The United States defendants did not contest the application and that is confirmed in the copy of the original application that you have before you.  I do not think we need to go there but there is confirmation that it was discussed with the defendants and they did not contest the application for the request before the United States court.  I am told it is page 23 of this bundle, Master; indeed, it is paragraph 8.  I do not think you need to turn to it but I can read it: "Defendants have indicated that although they deny many of the statements made in the motion and Letter of Request, they do not object to the relief sought.  If the Letter of Request is granted, the defendants have reserved their right to cross-examine Mr. Steele."

Marten Walsh Cherer Ltd
Tel:  020 7067 2900

A

B

C

D

E

F

G

H

We say in those circumstances it is not terribly surprising, did not take very long for the American court to think about it. In addition, of course, I will say in passing that it is not surprising that the defendants did not object because it is quite clear from the stance they have taken before you, Master, that they do consider the evidence of Mr. Steele to be relevant to the issues between the parties in the American proceedings and, indeed, their stance reflects that in fact the wider scope of topics is relevant albeit that for reasons of reasonableness and pragmatism the plaintiffs have agreed to limit them essentially to the relevant paragraph in the December dossier.

We say equally misplaced is my learned friend's reliance upon the United States court's dismissal of Mr. Steele's motion. First of all, the United States court had already determined the issue of relevance because the Letter of Request had already been issued. The motion of Mr. Steele was dismissed subsequently on 15th August. First of all, the United States court approach to Mr. Steele's motion does not affect its finding and confirmation of relevance of Mr. Steele's evidence. What we have seen in the dismissal of the motion and indeed Mr. Steele's own motion was that he was telling the United States court that his deposition was prohibited by English law, which was wrong, in fact. The United States judge's position was, understandably, well, if so, then no doubt the English court will limit the scope of the request applying English law.

First of all, absolutely no impact at all on the American court's confirmation that Mr. Steele's evidence is relevant to the issues between the parties. Secondly, perfectly properly, the American court saying to the English court, if there are issues that arise that Mr. Steele's interest needs to be protected, then we are relying on the English court to do so. Therefore, my learned friend's submission which involves trying to suggest that the American court was wrong to say the evidence of Mr. Steele was relevant to the issues in the American proceedings is misconceived, we say, in contrary to authority. As the authorities say, and is quite obvious, the American court is best placed to assess the question of relevance being more fully apprized of the issues in those proceedings, both legal and factual. It is not immaterial that the legal position is quite different in the States to what it is here, not least the burden being on the plaintiffs to prove the falsity of the allegations.

37

A

There is no evidence as the authorities require to suggest that the American court is wrong.  The only evidence is Miss Cain's statement at paragraph 39 of her witness statement, that it is not apparent to her why Mr. Steele's evidence would advance the case of either party in the American proceedings, together with a suggestion by her that Mr. Steele's pleadings in the English proceedings would suffice.

B

First of all, you have the evidence of Mr. Loble on instruction from the American attorneys that Mr. Steele's pleadings in the English proceedings are not surprisingly not sufficient and are likely to be considered inadmissible hearsay and, in addition, of course

C

as a matter of common sense would be of extremely limited weight in the American proceedings, even if they were admissible.  Secondly, of course, noting that she is at odds in her conclusion both with the parties in the American court, all of whom are much better placed to consider relevance.

D

Further, my learned friend's submissions from paragraph 66 onwards of his written submissions, and he touched on them this morning in his oral submission, we respectfully say ----

MASTER FONTAINE: Sorry, paragraph which?

E

MISS BROWN:  Paragraph 66, and onwards.  There are a few paragraphs that seek to do exactly what the authorities say you should not be doing, for the court to closely examine why Mr. Steele's evidence may or may not be relevant to the issues in the American proceedings.  With respect, we say that they maybe miss the point as to why his evidence is relevant.  It is not a terribly subtle point, Master.  What my learned

F

friend's submissions try to do is dissect by reference to United Kingdom, or English I should say, libel law including even referring to English libel authorities, to suggest that Mr. Steele's evidence is not relevant.

G

I say this is misconceived.  First of all, they ignore that in the American proceedings the truth of the allegation is in issue.  So, I would respectfully submit that it is fairly obvious that it is relevant to establish in the falsity of the allegations to understand the circumstances in which the allegations came to be made.  We would respectfully disagree with the assertion that whether or not the information was verified

H

has no bearing on the establishment of whether or not the allegations were true, or as it is in the United States the burden on my clients to prove that the allegations are false.

Marten Walsh Cherer Ltd
Tel:  020 7067 2900

A

B

C

D

E

F

G

H

My learned friend took you, Master, to the first paragraph in the American proceedings, which are at page 165, so tab 11, second bundle, page 165. In the very first paragraph, the allegation is: "On 10th January perhaps one of the most reckless and irresponsible moments of journalism" etc. "Buzzfeed and Mr. Smith chose to publish a dossier of unverified information."

There we go, right in the first paragraph the importance of the assertion that this information was unverified. Where you are seeking to prove a negative it is all very well my learned friend suggesting that Mr. Gubarev will be able to go along before the American court and say, "It is untrue," but he is not going to leave it at that. The evidence from a person who wrote this part of "the dossier" that says, if it is the case, "This information came from sources I cannot disclose but I did not verify it," is of course relevant, Master, to the likelihood or otherwise of the allegations in fact being true.

As Mr. Millar put it, the questions on which my clients wish to ask questions of Mr. Steele are relevant to seeking to undermine the credibility of the allegations in that paragraph of "the dossier". We say, Master, with respect, it is not rocket science to understand that the author of the allegations has relevant evidence to give as to how he came to make the allegations going to the question of whether my client can in the American proceedings prove that those allegations are untrue, to satisfy the burden of proof on him so to do.

Equally, my learned friend's submissions rather miss the point as to the relevance of the topics of 6-9 which go to Buzzfeed's culpability in publishing and I am sure, Master, you have picked it up but you were not taken to it, in the US proceedings you will have seen, I am sure, at paragraph 43, so the same bundle you were just in, at page 174 – it is bundle 2, tab – I am focusing on the varied amended Schedule A, Master.

MASTER FONTAINE: So I can refer to that, which page is it?

MISS BROWN: The amended is at page 303. It is probably in a few places.

MASTER FONTAINE: Yes, it is.

MISS BROWN: I think if you have seen it elsewhere – somebody is telling me it is at page 200 something.

MASTER FONTAINE: I have found it, it is 222.

39

A

MISS BROWN: Just touching on the issue of relevance, we say not only is this not a clear case that Mr. Steele has no relevant evidence to give in relation to the issues in the American proceedings, but it is in fact a clear case that he does have relevant evidence to give in the issues in the American proceedings. We say equally misconceived are the fishing allegations that are made on behalf of Mr. Steele.

B

If I may here ask you, Master, to refer again to the decision in *First American*, at tab 4, at page 1163H: "If oral evidence is being sought for the purpose of use at trial and if there is good reason to believe that the intended witness has knowledge of matters in

C

issue at the trial so as to be likely to be able to give evidence relevant to those issues, I do not understand how an application to have the intended witness orally examined can be described as fishing. It cannot be necessary that it be known in advance what answers to the questions the witness can give, nor can it be necessary that the answers will be determinative for one or other of the issues in the action.

D

Section 2.2 of the Act bars the court from making an order for oral testimony to be taken pursuant to a Letter of Request unless the order is of a type that could have been made for the purpose of obtaining oral testimony for domestic litigation. In the case of a witness who there has reason to believe has relevant evidence to give a subpoena served

E

on the witness in order to obtain his evidence at trial could not be set aside on the ground that it was fishing. In a comparable case a court would not be deprived by section 2.2 of the power to accede to a Letter of Request. The question whether as a matter of discretion the court would be prepared to make an order pursuant to the Letter of

F

Request and, if so, what order would be another matter but there would be no jurisdictional reason why the court should not make the order sought."

Then again at D: "I regard the case as authority", that is *State of Norway*, "for the proposition that as a matter of discretion a request for oral testimony should not be

G

acceded to if the intention were to obtain information rather than to obtain evidence for use at trial. This is not, in my opinion, authority for any broad proposition. Moreover, it is not always possible to draw a sharp distinction between, on the one hand, questions designed to establish allegations of fact and, on the other hand, questions designed to

H

extract information which may lead to obtaining evidence in support of the parties. There may be some questions which are obviously one or the other but a number of

43

A

questions may potentially lead either to an answer which is probative of an allegation of fact or to an answer that prompts a further line of enquiry without being probative, or to both.

B

In framing questions to ask a witness from whom no proof has been taken, the questioner can be expected to ask a number of preliminary questions in order to (inaudible) This is not fishing. This is a normal technique of examination. A topic for legitimate questioning may have merely background significance. I repeat that, in my opinion, if there is sufficient ground for believing that an intended witness may have relevant evidence to give on topics which are relevant to the issues in the action, a Letter of Request seeking an order for the oral examination of a witness on those topics cannot be denied on the ground that it is fishing."

C

I have already drawn your attention, Master, to the fact that the American court has expressly disavowed that the purpose is for early stage discovery or fishing, which would not be permitted. Also, in this context, it is relevant to note that at the time of the request which came before you, Master, in November, the application came before you in November, the trial was due to start in March. You get that from the first page. I do not think we need to go back to it but it is on the first page of the request, Master.

D

E

This is of itself a good indicator that this is not a fishing expedition and we see that in the *Landrover* case, which is at tab 8. You have been taken to the relevant paragraph but for a slightly different purpose. It is tab 8, page 6.

MASTER FONTAINE: Yes.

F

MISS BROWN: Again, you get it in *Arpad Busson* at paragraph 27.

MASTER FONTAINE: Whereabouts on page 6?

MISS BROWN: I am sorry: "These observations appear to me pertinent to the (unclear) Although the Master's judgment does not refer to them in terms I am told …."

G

MASTER FONTAINE: What paragraph are you reading?

MISS BROWN: I am sorry, paragraph 23.

MASTER FONTAINE: Thank you. At the top of the page; yes.

MISS BROWN: Then it is the second paragraph: "The reference in his judgment to the proximity of the trial date suggests that he was focusing on the purpose lying behind the

H

44

A

B

C

Digital Transcription by Marten Walsh Cherer Ltd
1st Floor, Quality House, 6-9 Quality Court, Chancery Lane, London WC2A 1HP
Tel No: 020 7067 2900 Fax No: 020 7831 6864 DX: 410 LDE
Email: info@martenwalshcherer.com
Web: www.martenwalshcherer.com

D

E

F

G

H