IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.
_____/

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE OF JOURNALISTIC STANDARDS**

      In response to Defendant's motion to exclude Plaintiffs' reliance on newspaper articles and commentary as evidence of journalism standards, Plaintiffs serve up their usual sarcasm and disdain. But they again fail to deliver on substance. Fundamentally, Plaintiffs seek to use self-selected newspaper articles and published commentary from January 2017 to establish what "journalistic standards" are so they can argue that BuzzFeed published the Dossier in violation of those standards. This is obviously improper. Not only are such newspaper articles inadmissible hearsay – often, double and triple hearsay – they also constitute inadmissible and dated lay opinion in violation of Fed. R. Evid. 702. Finally, they are more prejudicial than probative in violation of Fed. R. Evid. 403.

      The proper way for Plaintiffs to introduce evidence of journalistic standards would have been for Plaintiffs' to retain a journalism expert. And, despite their claim to this Court that they chose not to engage a journalism expert because they did not feel they need one, in fact, Plaintiffs did seek to engage such an expert and were unable to do so. *See* Ex. 1 (Email from Jill Abramson, former editor of the *New York Times*, declining Plaintiffs' counsel's request to serve as a journalism expert, stating "[i]f you checked. You would see that I have publicly [sic] praised and supported Ben Smith's decision to have BuzzFeed publish the dossier. It was [sic] a newsworthy story, especially since President Obama's and trump we're [sic] both briefed on it."). In short, Plaintiffs did know they needed to find a journalism expert to offer evidence about journalism standards; they just did not find one who was prepared to criticize BuzzFeed's

1

decisions under oath.  This Court should not allow them to use dated hearsay evidence to compensate for this failure and should grant Defendants' motion.

## ARGUMENT

There are actually several related, but distinct issues implicated by this motion *in limine*. We address each one in turn.

**1.     "Media Reaction" Articles.**  Plaintiffs' primary argument is they want to rely on newspaper articles and commentary as their evidence of journalism standards.  But Plaintiffs entirely fail to respond to – and thus effectively concede – Defendants' argument that the "media reaction" articles are inadmissible hearsay.  Plaintiffs' opposition confirms that Plaintiffs intend to offer newspaper articles and commentary for the truth of their content – both that the authors really held the views expressed therein and that those opinions are reliable.  Moreover, their opposition makes clear that they primarily intend to rely on double and triple hearsay.  Most of the exhibits they attach are news articles or commentaries, which are hearsay, which primarily quote other people within each article, constituting double hearsay.  *See, e.g.*, Opp. at Ex. 2 (Poynter Institute column written by Kelly McBride, which quotes commentators from Lawfare, the *New York Times*, and others).

Indeed, Plaintiffs go one step further and argue that these randomly selected published statements set a "standard" against which Defendants' conduct should be judged.  Opp. 2-3.  But as set forth more fully in this Motion, a newspaper article or tweet or other publication is inadmissible hearsay if offered for its truth.  *See, e.g.*, *United States v. Michtavi*, 155 F. App'x 433, 435 (11th Cir. 2005) ("[A] newspaper article is hearsay, and in almost all circumstances is inadmissible.") (citing *Dallas Cty. v. Commercial Union Assur. Co.*, 286 F.2d 388, 392 (5th Cir. 1961)); Mot. 3-4.  In particular, the opinions expressed in articles are inadmissible unless the authors (or in this case, the authors quoted by the authors) are called at trial – something Plaintiffs do not appear prepared to do.  *See, e.g.*, *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 269 n.15 (N.D. Tex. 2011) ("Newspaper articles containing the opinions of unrelated third parties are inadmissible hearsay."), *aff'd*, 486 F. App'x 469 (5th Cir. 2012); *Hamilton v. Anderson*, 2010 WL 9540637, at *6 (D.N.M. June 18, 2018) ("Insofar as it is offered for the truth of [the author's] opinions … the hearsay objection to the forty-five year old article is

sustained."). Notably, Plaintiffs fail to engage with this authority because it dooms their arguments. The evidence should, therefore, be excluded as inadmissible hearsay.[1]

***Second***, these "reaction" articles should be excluded because the content of the articles either constitutes inadmissible lay opinion under Rule 701, or constitutes an impermissible attempt to present opinions by persons with specialized knowledge without qualifying them as experts under Rule 702. In effect, Plaintiffs are trying to have it both ways. They contend that proving negligence or gross irresponsibility by a journalist does not "require[] any specialized information or knowledge, necessitating an expert witness." Opp. 7. But if that is so, then random opinions by persons who are journalists – and therefore presumably possess more "specialized knowledge" than the average person – would not be relevant. Rather, it is obvious that Plaintiffs are seeking to admit the hearsay and double hearsay opinions of various journalists precisely because they think those opinions are based on more "specialized knowledge" than the jury has, yet they could not find an actual expert witness to render those opinions directly to the jury.

Regardless of whether qualifying an expert to testify may be required to prove gross irresponsibility, Plaintiffs do not cite a single case saying that admitting lay opinion evidence about journalism standards is a viable alternative. Most of Plaintiffs' cases say that parties can choose between calling properly-disclosed and properly-qualified expert evidence, and arguing negligence or gross irresponsibility to the jury without expert evidence.[2] The rest are no more helpful to Plaintiffs, suggesting that all evidence of journalism standards is inadmissible because the matter is strictly within the province of the jury.[3] No case ever suggests that *lay* opinion evidence would be helpful or admissible.

In fact, courts have uniformly treated witnesses offering opinions about journalism as experts with specialized knowledge whose evidence must comply with Rule 702 in order to be

---

[1] In the Opposition, Plaintiffs declare their intent to use these materials on cross-examination. Opp. 7. It is worth noting, however, that use of the evidence for cross-examination would not fix the hearsay problem.

[2] *See, e.g.*, *Edwards v. Paddock Publ'ns, Inc.*, 763 N.E.2d 328, 334-35 (Ill. App. Ct. 2001) ("While defendants are not precluded from introducing expert testimony regarding the customs and practices or standards of the journalism profession, plaintiff is not required to present expert opinion testimony to establish that a media defendant breached the duty of ordinary care.") (internal citation omitted); *Greenberg v. CBS Inc.*, 69 A.D.2d 693, 710 (N.Y. App. Div. 1979) ("[T]he affidavits of experts are welcome but not required on a motion for summary judgment.").

[3] *See, e.g.*, *Richmond Newspapers, Inc. v. Lipscomb*, 362 S.E.2d 32, 42 (Va. 1987).

4825-8152-6144v.3 0098182-000003

admissible. *See Talley v. Time, Inc.*, 2018 WL 1101489, at *2 (W.D. Okla. Feb. 28, 2018) (conducting *Daubert* analysis on journalism expert, and holding that his "specialized knowledge about journalistic practices and industry standards may assist the jury in deciding whether Plaintiff has proved the elements of his tort claim"); *Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 85-90 (D.D.C. 2012) (applying *Daubert* to journalism expert because "[t]he admissibility of expert testimony that draws on the expert's 'specialized knowledge' is governed by Fed. R. Evid. 702");[4] *Worell-Payne v. Gannett Co.*, 49 F. App'x 105, 110 (9th Cir. 2002) (referring to expert evidence on journalism standards); *Straub v. CBS Broad., Inc.*, 2016 WL 2996901, at *1 (E.D. Pa. May 23, 2016) (treating evidence on journalism standards as expert evidence for admissibility purposes); *Harris v. Quadracci*, 856 F. Supp. 513, 518-19 (E.D. Wis. 1994) (same), *aff'd*, 48 F.3d 247 (7th Cir. 1995); *Bruegemeyer v. Am. Broad. Cos.*, 684 F. Supp. 452, 463-66 (N.D. Tex. 1988) (same); *see also, e.g.*, *Miami Herald Publ'g Co. v. Frank*, 442 So. 2d 982, 984 (Fla. 3d DCA 1983) (affirming trial court's admission of "journalism expert" in private-figure libel case). Indeed, the Restatement (Second) of Torts, which Florida courts have followed,[5] expressly recognizes that "[e]vidence of custom within the profession of news dissemination *would normally come from an expert who has been shown to be qualified on the subject*." Restatement § 580B, cmt. g (emphasis added). The evidence Plaintiffs are trying to defend, then, is exactly the sort of undisclosed, unqualified evidence properly "within the scope of Rule 702" that Rule 701(c) requires the Court to exclude.

*Finally*, there is also no question that all of this evidence, even if it has some relevance, is more prejudicial than probative and should, therefore, be excluded pursuant to Fed. R. Evid. 403. In fact, this evidence presents a classic example of why hearsay is presumptively excluded. As a practical matter, this evidence is myopic in at least two ways. Plaintiffs seek to offer these published commentary as "journalistic standards," when, in fact, they are simply the snapshots of the opinions of selected columnists or talking heads taken at only one moment in time. Sampling of "media reaction" is hardly reflective of any specific standards. Indeed, at the same time,

---

[4] Oddly, Plaintiffs chastise Defendants for citing "primarily to non-journalism-related cases" and say that *Talley* was "the only journalism-related case cited by Defendants." Opp. 5. While the principles here are hardly unique to defamation cases, Plaintiffs completely ignore *Parsi* (cited in Mot. at 2) – a case that directly held testimony from a journalism expert to be subject to Rule 702, and went on to exclude that evidence for being unreliable.

[5] *See Jews for Jesus v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement § 580B).

4

numerous other contemporaneous commentators expressed affirmation for BuzzFeed's publication.  *See, e.g.*, Vanessa M. Gezari, Columbia Journalism Review, *BuzzFeed was right to publish Trump-Russia files*," Jan. 11, 2017 (available at https://www.cjr.org/criticism/buzzfeed_trump_russia_memos.php) ("The most typical kind of investigative reporting entails spending months or even years gathering documents and cultivating sources to build an unshakable edifice.  BuzzFeed took a different but still well-established approach: Release what you can when you have it and see what new leads it generates."); Mathew Ingram, Fortune, *Here's Why BuzzFeed Was Right to Publish Those Trump Documents*, Jan. 11, 2017 (available at http://fortune.com/2017/01/11/buzzfeed-trump-russia/) ("But the reality is that journalists publish what amount to unverified allegations all the time, if they believe the source is credible."); Leah Finnegan, The Outline, *Everyone is mad over BuzzFeed's Trump docu-drop: The media may never recover.*, Jan. 11, 2017 (available at https://theoutline.com/post/880/buzzfeed-trump-docu-drop?utm_source=TW&zd=1&zi=tr7hgtlr) ("To me there is no question whether BuzzFeed should have published the documents; if it was known, as has been claimed, that Sen. John McCain had received the documents and passed them to the FBI, that is enough to clear the public interest burden."); Glenn Greenwald, The Intercept, *The Deep State Goes to War With President-Elect, Using Unverified Claims, as Democrats Cheer*, Jan. 11, 2017, https://theintercept.com/2017/01/11/the-deep-state-goes-to-war-with-president-elect-using-unverified-claims-as-dems-cheer/  ("But even if one believes there is no such case where that is justified, yesterday's circumstances presented the most compelling scenario possible for doing this.  Once CNN strongly hinted at these allegations, it left it to the public imagination to conjure up the dirt Russia allegedly had to blackmail and control Trump.  By publishing these accusations, BuzzFeed ended that speculation.  More importantly, it allowed everyone to see how dubious this document is, one the CIA and CNN had elevated into some sort of grave national security threat.").

And admission of this material would be especially prejudicial here, because they may not even reflect the current opinions of those commentators.  It is telling that every example Plaintiffs cite in their Opposition was published no later than January 12, 2017.  But the opinions of many journalists have changed, as subsequent events have made it more obvious why it was in the public's interest to have access to the Dossier's contents.  That includes some of the same sources as those selected by Plaintiffs.  For example, Exhibit 3 to Plaintiffs' Opposition is a piece

5

published in *The Guardian* on January 12, 2017. But almost a year later Luke Harding, *The Guardian*'s principal journalist reporting about the Dossier who also published a book on the topic of Russian interference (*Collusion: How Russia Helped Trump Win the White House*), vocally opined that "Buzzfeed did the right thing to publish . . . The dossier was informing the conversation but most people were in the dark so it was right to publish."[6] *See also* Jon Marcus, Neiman Reports, *The Ethics of Leaks: The increasing use of anonymous sources and leaks has intensified the debate over how to vet information and sources*, July 6, 2017 (available at https://niemanreports.org/articles/the-ethics-of-leaks/) ("In the Internet age, readers can often see primary source materials anyway. Trump himself threw fuel on the BuzzFeed story, lashing out in three tweets, putting other media in the awkward position of seeming to ignore something the president was megaphoning to his followers. Under this school of thought, reporting such things, with the caveat that they are unconfirmed, fulfills the journalistic obligation to put the news into context."). It is clear then, that Plaintiffs' efforts to use certain hand-picked statements made at certain moments in time is more prejudicial than probative on the question of journalistic standards.

    **2.**   **Whether Expert Testimony Is Necessary.** Plaintiffs argue that courts in some jurisdictions have held negligence or gross irresponsibility to be "within the abilities of a jury to decide without the need for expert testimony." Opp. 5-7. That is so, but that simply demonstrates that there is a split of authority on this subject, and one which at least Florida courts, if its law applies to this issue, have yet to take any position.[7] But the question may be

---

[6] https://www.bigissuenorth.com/features/2017/12/for-your-eyes-only/ (last visited Nov. 20, 2018).

[7] Plaintiffs' own cases belie their claim that "the vast majority" of courts hold assessing the standard of care to be "an issue well within the abilities of a jury to decide." Opp. 5. In fact, a number of states have adopted the approach of section 580B of the Restatement, which treats negligence in defamation cases like other forms of professional negligence and typically does require evidence "from an expert who has been shown to be qualified on the subject." Restatement (Second) of Torts § 580B cmt. g; *see Kohn v. W. Haw. Today, Inc.*, 656 P.2d 79, 82 (Haw. 1982) (summarizing split of authority and citing cases) (cited at Opp. 6-7). While, as Plaintiffs point out, some New York courts have held expert evidence to be optional, more recent caselaw suggests that it is required in at least some circumstances. *See Farber v. Jefferys*, 103 A.D.3d 514, 515 (N.Y. App. Div. 2013) (affirming summary judgment where "[t]he record was devoid of evidence that Jefferys … did not follow the standards of information gathering employed by reasonable persons"). Defendants are not aware of any Florida case law on this issue, but the Supreme Court of Florida's endorsement of Section 580B, *Rapp*, 997 So. 2d at

6

largely academic here.  Defendants' principal point is that without an expert, Plaintiffs cannot try to introduce extrinsic evidence of objective journalism standards, because such evidence could only be admitted through an expert.  In their list of proposed Exhibits, in addition to "media reaction" articles, Plaintiffs also include a printout of the "Code of Ethics" of the Society of Professional Journalists.  Dkt. 237, Ex. A at 2 (Ex. A32).  That too is not only inadmissible hearsay, it is also plainly another attempt by Plaintiffs to introduce through the backdoor evidence of a professional standard of care written by practitioners with "specialized knowledge."  By contrast, Defendants have not argued that Plaintiffs cannot cross-examine Defendants' witnesses about their journalistic decision-making, including their own statements about their decisions.  But having failed to find an expert, they may not use the hearsay opinions of others, or specialized guidelines written by others, to do so.

Finally, Plaintiffs' belated request to be permitted to find a journalism expert should be summarily denied.  As their e-mail exchange with Jill Abramson demonstrates, Plaintiffs were well aware of their potential need to designate an expert, and they actually looked for journalism experts before the discovery deadline.  Any claim to the contrary is simply false.

## CONCLUSION

For all these reasons, Defendants request that the Court exclude all of Plaintiffs' evidence on journalism standards.

Dated:  November 20, 2018             Respectfully submitted,

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com

---

1106, makes it likely that Florida courts would follow the Restatement approach.  *See also, e.g.*, *Rojas v. Drake*, 569 So. 2d 859, 861 (Fla. 2d DCA 1990) (holding, in motor vehicle accident case, that "[a] determination of legal liability in a negligence action cannot rest solely on a lay opinion."); *Frank*, 442 So. 2d at 984 (affirming admission of expert testimony on journalism standards).

nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

<u>/s/ Roy Black</u>
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibit, will be served electronically by email on all counsel or parties of record on the service list below this 20th day of November 2018.

By: /s/ Adam Lazier
　　　Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
1112 North Flagler Drive
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

4825-8152-6144v.3 0098182-000003