# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| ALEKSEJ GUBAREV, XBT HOLDING S.A., and WEBZILLA, INC.  Plaintiffs, v. BUZZFEED, INC. and BEN SMITH  Defendants. | Case No. 0:17-cv-60426-UU |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2
TO EXCLUDE EVIDENCE OR ARGUMENT
AS TO OTHER BUZZFEED REPORTING**

On January 10, 2017, Defendants published wholesale and without meaningful redaction 35 pages of memos written by someone who they believed (but weren't completely sure) to be a former British MI-6 agent who, in turn, was simply reporting what he claimed to have been told by his (unidentified) sources. Defendants did so despite – by their own admission – having been unable to verify any of the claims contained within the memos, having concluded that the memos contained "clear errors," and with the belief that there was "serious reason to doubt the allegations" contained in what they were publishing.

In subsequent interviews and during the course of his deposition, BuzzFeed's editor-in-chief, Mr. Ben Smith insisted that Buzzfeed could not have effectively reported on the memos without actually publishing them as they did. *See, e.g.*, Smith Depo, <u>Exhibit 1</u> hereto, p. 109 ("Q. You said, 'I think I actually don't see the case for the middle position.' Do you not think that BuzzFeed could have just as effectively written an article about the dossier without printing

the actual dossier?  A.  No."); Transcript of CNN Reliable Sources Interview with Ben Smith, Exhibit 2 hereto, p. 5 ("But the default is, if you want your audience to trust you, you're not -- you don't just -- our job is not to be gatekeepers to decide what to suppress and keep from our audience.  It's primarily to share with our audience what we've got."); Transcript of MSNBC Meet the Press Daily Interview with Ben Smith, Exhibit 3 hereto, p. 10 ("Ben Smith: To me, to say, as some of – as some organizations did, there is a secret document, here is our summary of it, we are going to protect your  eyes from it ... is an untenable ... is very difficult to explain or maintain because -- because you're -- so you're allowed to take false claims and summarize them, but not show – I mean, I guess our impulse and I think the -- is -- is to show the audience the underlying document and let them make their own decisions and -- and -- and respect them...."); "Why Buzzfeed News Published the Dossier, by Ben Smith, *The New York Times* Jan. 23, 2017, Exhibit 4 hereto ("We hadn't anticipated what actually happened: a bombshell report that described the document, while the document itself remained secret.  That halfway position ran contrary to how we think of our compact with our audience: You trust us to give you the full story; we trust you to reckon with a messy, sometimes uncertain reality.").

Plaintiffs anticipate that Mr. Smith will testify consistently with these statements at trial – stating as part of his justification for publishing the dossier that: (a) this is how Buzzfeed sees its role in modern journalism, and (b) it could not have published a story about the memos without actually showing its readers the memos themselves.

In contrast, however, on October 12, 2017, Buzzfeed News published an article entitled "What To Do With 'Shitty Media Men.'"  See Exhibit 5 hereto.  In that article, the Buzzfeed reporter described and reported on a spreadsheet that had been widely circulated on the internet that "named and shamed dozens of men in media for bad behavior toward women." *Id.*  On

January 11, 2018, Buzzfeed News published a follow-up article entitled "Moira Donegan Says She Is The Woman Who Created The 'Shitty Media Men' List," which noted that the "crowdsourced, viral spreadsheet accused at least 70 men in the industry of sexual misconduct, some of whom resigned or were fired after being investigated." Exhibit 6 hereto.

*__Despite publishing these two articles that discussed the list in great detail, Defendants chose not to publish the list itself.__*  At his deposition, Mr. Smith testified, among other things: that the list was available on the internet; that it had gone viral; that the story of the list's existence was an important one; that the issue of sexual harassment in the media was important; that the Buzzfeed reporter who wrote the first article was someone Mr. Smith trusted; that the reporter knew some of the names on the list and was relieved that the names had been made public; and that *four of Buzzfeed's own employees were on the list*. *See*, Smith Depo., Exhibit 1 hereto, pp. 150-163.

Given Mr. Smith's public justifications for the need to publish the memos themselves (and not simply report on them), Plaintiffs are entitled to question Mr. Smith about his seemingly contradictory decision not to publish the Media Men List, despite his acknowledgement that he had *more* reason to trust the accuracy of the information contained on the Media Men List, as opposed to the memos.

Defendants have argued that such evidence and testimony should be precluded primarily because – in Defendants' view – the circumstances surrounding the two decisions were different and because Mr. Smith denied that the presence of his friends and colleagues on the Media Men List did not influence his decision not to publish the Media Men List itself. Defendants are, of course, entitled to offer such testimony at trial. Their denials, however, do not obviate Plaintiffs' right to challenge some of the reasons Defendants have offered as justification for publishing the

3

memos in their entirety. In short, Defendants' rationale is little more than it would be (somehow) unfair to permit Plaintiffs to present evidence undermining Defendants' own statements concerning their rationale for publishing the memos in full. Such evidence, however, is not rendered unfair or irrelevant simply by virtue of the fact that it is inconsistent with the story Defendants would like to tell the jury.

## Conclusion

For the reasons stated hereinabove, Defendants' Motion in Limine No. 2 to Exclude Evidence or Argument As To Other Buzzfeed Reporting should be denied in its entirety.

Dated: November 13, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
Dylan Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Attorneys for Plaintiffs*