UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| ALEKSEJ GUBAREV,<br>XBT HOLDING S.A., and<br>WEBZILLA, INC.<br>　　Plaintiffs,<br><br>v.<br><br>BUZZFEED, INC. and<br>BEN SMITH<br>　　Defendants. | Case No.<br><br>0:17-cv-60426-UU |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4
TO PRECLUDE PLAINTIFFS FROM OFFERING EVIDENCE OF DAMAGES
ALLEGEDLY INCURRED BY ENTITIES OTHER THAN
PLAINTIFFS XBT HOLDING S.A. AND WEBZILLA, INC.**

　　Defendants Motion *in Limine* No. 4 to Preclude Plaintiffs from Offering Evidence of Damages Allegedly Incurred by Entities Other than Plaintiff XBT Holding S.A. and Webzilla, Inc. (the "Motion") is based on a plain misstatement of facts and misapplication of law. Specifically, Defendants seek to exclude from trial evidence regarding XBT Holding S.A. and Webzilla, Inc's damages by falsely claiming that those damages belong to other entities. That is just not true.

　　Yet again, it is particularly important to highlight the precise words used in the December Memo that are the basis for the present action:

> [Redacted] reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership.

　　And yet, after spending hundreds of pages arguing to this Court about third-party customers of subsidiaries and sister-companies of XBT and Webzilla, Defendants, in the Motion, finally remember that they defamed *XBT and Webzilla* – and not others – by specifically naming Plaintiffs as themselves hacking the Democratic Party leadership. While Plaintiffs agree that this case must center around the allegations made against Mr. Gubarev, XBT and Webzilla, and not

1

around unverifiable and anonymous hearsay about irrelevant third-parties dug up by Defendants' investigative team with ▬▬▬▬ budget, that is the end of Plaintiffs' agreement with anything in the Motion.

A.     **The Damages Plaintiffs Seek Are Damages Suffered by Plaintiffs and Not Others**

XBT is a holding company with multiple businesses under its umbrella and the damages it has sustained as a holding company are the damage to *its* value. Specifically, Plaintiffs' expert witness, Mr. Jeffrey Anderson, performed valuations of XBT itself both before the publication of the December Memo and after publication of the December Memo. *See*, Supplemental Expert Report, Exhibit 1 hereto, p. 2 ("CONSOR was asked to analyze and provide an opinion on the damages stemming from the Defendants publication of an online article.... Our analysis included: the lost business value of XBT."). At no point in this analysis does Mr. Anderson calculate damages to any XBT subsidiary, but, instead, Mr. Anderson was tasked with and provided an opinion based on the value of XBT itself. And, of course, part of XBT's value as a business is made up of its subsidiaries, but that does not mean the damage that XBT itself suffered to its own value is the damages of its subsidiaries. The damages are the damages to *XBT*'s value – the very same XBT that Defendants defamed.

Accordingly, contrary to the assertions of Defendants, Plaintiffs are ***not*** "seek[ing] damages incurred by subsidiaries." Motion, p. 3. Plaintiffs are seeking damages to the loss of business value suffered by them themselves.

Defendants' Motion, particularly in context with its Motion *in Limine* No. 7,[1] stands for the proposition, at the end of the day, that a holding company is not entitled to damages when it is defamed. This obviously cannot be true.[2]

---

[1] That motion argues, incorrectly, that XBT is not even entitled to seek lost business value damages. Taking both that Motion and this Motion in together though, Defendants have crafted a Catch-22. They claim that XBT cannot seek lost business value as a form of damages and then argue that XBT cannot seek any other form of damages because it is a holding company.

[2] Taking Defendants' Motion to its logical conclusion, XBT would only be allowed to seek damages for defamation to it personally if Defendants had also named every other subsidiary of XBT in line with XBT and Webzilla. In which case, the December Memo would have had to have said:
> Over the period March-September 2016 a company called XBT/Webzilla/▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ used botnets and porn

2

For example, if John Doe maliciously spread lies that Warren Buffet, the Chairman and Chief Executive of Berkshire Hathaway,[3] murdered a family of kitten as part of a satanic ritual he regularly held in the offices of Berkshire Hathaway, it would strain the imagination to say that Berkshire Hathaway could not seek damages to its business (even if all of its business was through un-named subsidiaries).

Because Defendants have misrepresented the damages sought by Plaintiffs, none of the case law they cite is relevant or availing. As it was Plaintiffs that were defamed by Defendants and Plaintiffs that were themselves damaged by those defamatory statements, Plaintiffs are not asserting any claim on behalf of any of XBT's other subsidiaries.[4] Accordingly, every single case cited by Defendants on page 4 of their Motion is irrelevant.

One cited case however, given the edit in the citation by Defendants, requires special attention. Specifically, Defendants cite *Mobius Risk Grp. LLC v. Global Clean Energy Holdings, Inc.*, 2011 WL 3568074, at *5 (S.D. Tex. Aug. 15, 2011) for the proposition that "Courts that have addressed [whether or when a parent company may recover damages incurred by its subsidiaries] have consistently held that a parent may not do so." (Modification in Motion itself, p. 4). *Mobius Risk Group* is very easily distinguished from this case. In *Mobius Risk Group*, the plaintiff sought damages of costs incurred in purchasing certain tracts of land. However, the land was purchased entirely by partially-owned subsidiaries of the plaintiff and, accordingly, the damage was actually suffered by the subsidiaries of the plaintiff – not the plaintiff. The plaintiff parent corporation did not even make payments to the subsidiaries for their purchase of the land, but instead the subsidiaries executed promissory notes to obtain the purchase money.

This case is inapposite. Here, XBT is seeking damages to its own business value – *not* any damages suffered by any subsidiaries other than Webzilla. However, Defendants have incorrectly claimed to this Court that Plaintiffs are doing otherwise in an attempt to exclude

---

traffic to transmit viruses, plant bugs, steal data and conduct "altering operations" against the Democratic Party leadership.

[3] One of the world's most famous holding companies, with distinct and in-their-own-right famous subsidiaries like GEICO, Dairy Queen, and Fruit of the Loom.

[4] And to be sure, if the other subsidiaries had brought any claims against Defendants, Defendants would have tacked left and claimed that those subsidiaries cannot bring a cause of action because they were not named in the Dossier. Yet another Catch-22 crafted by Defendants.

Plaintiffs' damages from ever being presented to the jury. Because Defendants are wrong on both the facts and the law, their Motion should be denied.

**B.     Apportionment of Damages**

Defendants also note in their Motion that Plaintiffs have not apportioned damages between BuzzFeed and Steele. It is not clear how this is relevant to Defendants' incorrect claim about damages to subsidiaries, but Plaintiff will take a brief moment to respond to this matter anyway. It is black letter law that both the author and the publisher of a defamatory piece may be held liable for the defamation contained therein. *See* Restatement (Second) of Torts § 578 ("Except as to those who only deliver or transmit defamation published by a third person, one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it."). BuzzFeed and Steele are accordingly both liable for the damages that Plaintiffs suffered from the publication of the December Memo. To the extent that Defendants wanted to apportion some of the damages to Steele, Defendants could have brought a cause of action against Steele for indemnification or contribution. They have not done so and therefore their arguments are irrelevant (certainly to the issue set forth in their Motion).

## Conclusion

For the reasons stated hereinabove, Defendants' Motion in Limine No. 4 to Preclude Plaintiffs from Offering Evidence of Damages Allegedly Incurred by Entities Other than Plaintiff XBT Holding S.A. and Webzilla, Inc. should be denied in its entirety.

Dated: November 13, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
Dylan Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Attorneys for Plaintiffs*