UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| ALEKSEJ GUBAREV, XBT HOLDING S.A., and WEBZILLA, INC.<br>    Plaintiffs,<br><br>v.<br><br>BUZZFEED, INC. and BEN SMITH<br>    Defendants. | Case No.<br><br>0:17-cv-60426-UU |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ALLEGED LOST BUSINESS VALUE, "BENEFIT TO BUZZFEED," AND LOST PROFITS AS MEASURES OF CLAIMED DAMAGES**

Defendants Motion *in Limine* No. 7 to Exclude Evidence and Argument Regarding Alleged Lost Business Value, "Benefit to Buzzfeed," and Lost Profits as Measures of Claimed Damages ("Motion") must be denied because it is based on misstatements of facts and law. In short: Plaintiffs are permitted to seek damages in the form of lost business value; Defendants have repeatedly misconstrued Plaintiffs' calculation of Buzzfeed's benefits from publishing the Dossier; and Plaintiffs are permitted to seek lost profits and other damages as they have provided all the necessary documents and information regarding the same. Accordingly, for the reasons set forth below in detail, Defendants' Motion must be denied.

**A.     Plaintiffs May Seek Lost Business Value as a Measure of Damages**

Defendants claim that Plaintiffs are not permitted to seek lost business value as damages because Plaintiffs have not suffered a complete destruction of their businesses. This argument is unsupported by the law because the cases Defendants cite stand for the *converse* of their position. The cases relied upon by Defendants hold that *if* a business has been destroyed, then the business can *only* get lost business value and not lost profits. *See*, *e.g.*, *In re Sherwood Investments Overseas Limited, Inc.*, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) ("Where the business at issue is completely destroyed — I.e., the business has ceased operations — 'the

1

proper total measure of damages is the market value of the business on the date of the loss, not lost profits.'" (quoting *City of Key West v. Duck Tours Seafari, Inc.*, 972 So. 2d 901, 903 (Fla. Dist. Ct. App. 2007))). These cases do not support the proposition that you can *only* get lost business value *if* a business has been destroyed.

Another case cited by Defendants is similarly the converse. In *Montage Group, Ltd. v. Athle-Tech Computer Systems, Inc.*, 889 So.2d 180 (Fla. 2d DCA 2004), the Court again found that while a business that is completely destroyed may *only* recover lost market value; it does *not* state that a continuing business many *only* get lost profits. *Id.* at 193 ("If the business is not completely destroyed, then it *may* recover lost profits." (emphasis added)). The same position continues down the line of cases cited by *Montage Group*, none of which state that lost business value is prohibited where the business is still operating. *See*, *e.g.*, *Aetna Life & Cas. Co. v. Little*, 384 So.2d 213, 2016 (Fla. 4th DCA 1980) ("Lost profits and loss of use *may* be a proper item of damages if the property or business is not completely destroyed." (emphasis added)).

On the other hand, the Eleventh Circuit has summarily approved lost business value damages in at least one case where there was not a total destruction of the business. In *United Aluma Glass v. Bratton Corp.*, 8 F.3d 756 (11th Cir. 1993), the plaintiff UAG, a subcontractor, filed suit against the subcontractor above it, Bratton, after Bratton cancelled UAG's subcontract. Based on the testimony of UAG's expert witness, the jury granted UAG damages of $262,957.24, of which $200,000 was for "loss of business value." Bratton appealed the loss of business value claim, raising no less than three arguments for why it should not have been permitted – including similar arguments as presented by Plaintiffs here that there was no basis for it. *Id.* at 758. In dismissing the appeal, the Eleventh Circuit simply explained "We find no merit in any of these issues raised by Bratton and Blout [the general contractor], and no discussion is warranted." *Id.* at 758. *See*, *also*, *Nelson v. Vernco Construction, Inc.*, 2018 WL 2440773, at *31-32 (Tex. App. May 31, 2018) (affirming that ongoing business was entitled to receive lost business value damages), *judgment set aside, opinion not vacated* (June 22, 2018); *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 2015 WL 494196, at *1 (D. Colo. Feb. 3, 2015) (permitting jury's judgment for lost business value to business not claimed to be destroyed), *vacated in part on other grounds*, 841 F.3d 827 (10th Cir. 2016).

And while a plaintiff cannot obtain both lost business value *and* lost profits for the same wrongful acts of a defendant, a plaintiff is entitled to receive one of them even if the business is

still in operation. *See, e.g., Gustafson v. General Motors Acceptance Corp.*, 470 F.2d 1057, 1061 (8th Cir. 1973) (plaintiff was entitled to $25,000 in lost business value after selling business for $45-$50,000, but not entitled to an additional $161,000 for loss of future income). The reason for this is because lost business value and lost profits are so closely intertwined, with lost profits being a significant part of determining lost business value, such that it would be considered a double recovery. *See, e.g., Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 664 n. 14 (5th Cir. 1974) ("We, of course, realize that because future profits potential is a principal element of a firm's going concern value an award should not include both."). However, in this case, Plaintiffs will not seek both forms of damages concurrently.

It is worth noting that Defendants' claims that Plaintiffs cannot seek lost business value is particularly contradictory given that Defendants also seek to exclude from trial evidence that they purport are damages suffered by XBT's subsidiaries. *See* Defendants' Motion *in Limine* No. 4. While Defendants are simply wrong that Plaintiffs are seeking damages suffered by XBT's subsidiaries, Defendants' argument on that issue brings to the forefront the reason why lost business value is the most appropriate form of damages for Plaintiffs in this case: XBT is a holding company whose main purpose is to maintain and increase in value, often by reinvesting what would otherwise be profits from one subsidiary into another subsidiary. If a holding company like XBT were not permitted to recover the kind of damages most relevant to its business, then evil-doers around the world could maliciously defame holding companies without fear of anything but nominal damages.[1] Such a result would be absurd, and is in any case not supported by the law. Accordingly, Plaintiffs should not be excluded from presenting evidence or argument relating to their lost business value.[2]

---

[1] Plaintiffs repeat an example given in their Opposition to Defendants' Motion *in Limine* No. 4: If John Doe maliciously spread lies that Warren Buffet, the Chairman and Chief Executive of Berkshire Hathaway (holding company for GEICO, Dairy Queen, Fruit of the Loom and others), murdered a family of kitten as part of a satanic ritual he regularly held in the offices of Berkshire Hathaway, it would strain the imagination to say that Berkshire Hathaway could not seek damages to its business value (even if all of its business was through subsidiaries).

[2] Plaintiffs acknowledge that they did not submit a jury instruction for lost business value. This was an oversight on counsel's part and not intended to be a waiver of Plaintiffs' remedy of lost business value, which has been the main measure of damages presented by Plaintiffs since Plaintiffs' damages expert issued his report early this year. Plaintiffs will shortly seek to supplement their proposed jury instructions to include instructions on lost business value.

### B. Defendants Mischaracterize the Purpose of Calculating Buzzfeed's Benefit from Publishing the Dossier

Defendants yet again purposefully misconstrue Plaintiffs' calculation of Buzzfeed's benefit from publishing the Dossier as Plaintiffs damages. Plaintiffs do ***not*** consider Buzzfeed's benefit from publishing the Dossier to be Plaintiffs "unjust enrichment" damages.[3] However, that does not mean that Buzzfeed's benefit is not relevant to the case and it certainly does not mean that testimony and argument regarding Buzzfeed's benefit should be excluded from trial.

Specifically, separate from his calculation of the damages Plaintiffs suffered as a result of Defendants' defamatory acts, Plaintiffs' expert, Mr. Jeffrey Anderson, also performed a calculation based on his expertise of the benefit that Buzzfeed obtained from publishing the Dossier and linking to it from various other articles it published after it first published the Dossier. Again, this calculation is ***not*** a calculation of "unjust enrichment" damages and neither Mr. Anderson nor anyone else will testify or argue that it is. *See*, *e.g.*, Anderson Report, p. 15 (conclusion sets forth two separate opinions, the first being the "Damages as measured by XBT's lost business value" and the second being "The benefit to Buzzfeed from views of the Defamatory Articles").

However, it is still a calculation that is relevant to this case for the purposes of presenting to the jury the value that Buzzfeed obtained from publishing the Dossier, which the jury may consider for any number of permissible reasons including, *inter alia*, a determination of punitive damages. This is because, as Defendants have admitted, Defendants considered the positive effect the publication of the Dossier would have on Buzzfeed's website traffic (which affects the revenues to Buzzfeed and the value of publishing the Dossier). And as Plaintiffs have separately briefed this Court in their Opposition to Defendants' Motion for Summary Judgment, Buzzfeed's benefit from publishing the Dossier is relevant to the question of whether Defendants acted with actual malice or negligence when they published the Dossier. *See*, *e.g.*, *Lemelson v. Bloomberg L.P.*, 2018 U.S. App. LEXIS 24716, at *8-9 (1st Cir. Aug. 30, 2018) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 692 F.2d 189, 196 (1st Cir. 1982), *aff'd*, 466 U.S. 485 (1984)) ("Because direct evidence of subjective belief rarely exists, a 'court will typically infer actual

---

[3] And because Plaintiffs do not seek Buzzfeed's benefit from publishing the Dossier as a form of damages, all of the case law recited by Defendants regarding unjust enrichment is wholly irrelevant.

malice from objective facts.'"). The amount of value Buzzfeed received from publishing the Dossier, and in particular publishing it first so that they would not be "scooped," is one such "objective fact" from which a jury may infer actual malice.

Accordingly, given that Buzzfeed considered the benefits to publishing the Dossier, and, in particular, being the first to publishing the Dossier, it is fully appropriate for Plaintiffs to present to the jury the *value* of that benefit, which is the purpose of the calculation.

C. **Plaintiffs Should Not Be Excluded from Presenting Their Full Damages, Including Lost Profits Should it be Desirable or Necessary**

For the reason set forth above, Plaintiffs main theory of damages, a theory that it is entitled to present at trial, is for lost business value. However, Plaintiffs have never waived their right to present at trial other damages that they have disclosed throughout discovery, including out-of-pocket expenses arising from the publication of the dossier (like obtaining public relations services), damages to their reputations, damages to their business relationships and lost profits – all of which were categorized in XBT's responses to interrogatories. *See* Docket No. 267-5.

All of these kinds of damages, whether categorized as general damages or special damages, are compensable in a defamation case. *See*, *e.g.*, *Army Aviation Heritage Foundation and Museum, Inc. v. Buis*, 504 F.Supp.2d 1254, 1259 (N.D. Fla. 2007) ("Florida law recognizes two categories of compensatory damages for defamation: general and special.... Compensatory damages are not limited to out-of-pocket loss.... The injured party may recover damages resulting from impaired reputation and standing in the community, humiliation, mental anguish, and suffering." (citing *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So.2d 279, 281 (Fla. 1st DCA 1977) and *Gertz v. Welch, Inc.*, 418 U.S. 323, 349 (1974))).

As to out-of-pocket expenses, Plaintiffs have produced documentary support for them and Defendants make no argument that they should not be allowed to be presented at trial.

Other forms of damages, like damages to reputation and damages to business relationships are unquestionably permitted under the law as general damages. "'General damages,' ... cover 'loss of reputation, shame, mortification, injury to the feelings and the like and need not be alleged in detail and require no proof.'" *F.A.A. v. Cooper*, 566 U.S. 284, 296 (2012) (quoting 1 D. Haggard, Cooley on Torts § 164, p. 579 (4th ed. 1932)). Accordingly, there is no requirement for Plaintiffs to have calculated a specific number relating to those general damages (which would in any case be impossible). This is particularly true where the

5

defamatory remark constitutes slander *per se*, as is the case here.[4] *See Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1319 (11th Cir. 1990) ("When a remark constitutes slander *per se*, general damages are recoverable without proof of economic harm so long as the plaintiff presents competent evidence of such harm."). Here, Plaintiffs have presented voluminous evidence of damage to their reputations, businesses, and personal relationships, and accordingly general damages may be granted by the jury on these forms of damages.

      Lastly, Plaintiffs have presented sufficient responses, testimony and documents during discovery to permit them to, in the event that they deem it necessary or desirable, seek lost profits as a measure of damages rather than loss of business value. As Plaintiffs' interrogatory responses make clear, from the beginning Plaintiffs have made clear that they believe that their loss of revenue and profits were a form of damage that they suffered as a result of Defendants' defamatory acts. For instance, Plaintiffs including, along with explanations, the following chart and table in their responses to interrogatories:

[REDACTED]

---

[4] "A statement is defamatory *per se*, 'if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession.'" *Williamson v. Digital Risk, LLC*, 2018 WL 3870064, at *3 (M.D. Fla. Aug. 15, 2018) (quoting *Blake v. Giustibelli*, 182 So.3d 881, 884 (Fla. 4th DCA 2016)). There is no legitimate question that the allegations about Plaintiffs here constitutes slander *per se*. Defendants have claimed that Plaintiffs are agents of the FSB and that they hacked a national election – a particularly concerning claim for a tech executive and tech companies.

|        | Revenue | Difference from Dec 2016 |
|--------|---------|--------------------------|
| Jan-17 | $ ▮     | $ ▮                      |
| Feb-17 | $ ▮     | $ ▮                      |
| Mar-17 | $ ▮     | $ ▮                      |
| Apr-17 | $ ▮     | $ ▮                      |
| May-17 | $ ▮     | $ ▮                      |
| Jun-17 | $ ▮     | $ ▮                      |
| Jul-17 | $ ▮     | $ ▮                      |
| **Total** |      | $ ▮                      |

The ▮ lost revenue figure however was a minimum, and assumed that XBT's revenues would not continue to grow as they had been doing since ▮ ▮ (which is clearly visible in the graph). It is only a single step away (subtracting out expenses during the same period) to arrive at lost profits.

And, in fact, Plaintiffs did produce all the documentation which shows their profits since 2012 by producing the audited Financial Statements for XBT and Webzilla (and even all the other subsidiaries of XBT) for every year from 2012 through 2017, all audited by KPMG. Those financial statements also show the evolution of profits for XBT and Webzilla over a six-year period – including, in particular, how ▮ ▮ So again, even assuming *arguendo* that XBT's profits were not going to grow in 2017, but instead stay at the same as 2016, XBT suffered lost profits of at least ▮ in 2017 alone (a simple subtraction calculation).

However, even that is not all that Plaintiffs provided during discovery. In or about November of 2016, prior to the publication of the Dossier, Plaintiffs prepared a detailed and exhaustive business plan that estimated that its profits in 2017 were going to be ▮ Accordingly, because actual profits were only ▮ lost profits as compared to expected profits was approximately ▮ for 2017 alone (yet another simple subtraction calculation). All of this was disclosed to Defendants. And XBT's officers are entirely qualified to present this evidence to the jury (an expert is not needed to do subtraction).

Accordingly, Defendants have been on notice of all the forms of damage that Plaintiffs are entitled to present to the jury at trial in this matter and there is no reason that testimony, evidence or arguments about any of the forms of damages should be excluded from trial.

## **Conclusion**

For the reasons stated hereinabove, Defendants' Motion in Limine No. 7 to Exclude Evidence and Argument Regarding Alleged Lost Business Value, "Benefit to Buzzfeed," and Lost Profits as Measures of Claimed Damages should be denied in its entirety.

Dated: November 13, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
Dylan Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Attorneys for Plaintiffs*