UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
   Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
   Defendants.

Case No.

0:17-cv-60426-UU

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 10 TO HAVE THE JURY REVIEW THE ARTICLE AND DOSSIER AND FOR THE COURT TO DELIVER PRELIMINARY INSTRUCTIONS <u>PRIOR TO OPENING STATEMENTS</u>**

*"Curiouser and curiouser!" cried Alice.*
                         -- Lewis Carroll, *Alice's Adventures in Wonderland*

**Introduction**

Having taken seventeen separate memos written on seventeen different dates and published them together into a single PDF file that Defendants called a "Dossier," Defendants now argue that the Court should require the jury in this case to read all seventeen memos in advance of the start of trial, despite the fact that the defamatory statements about Plaintiffs are contained only in one of the memos. Defendants' "rationale" for this request is its assertion that, because it published the seventeen separate memos in a single PDF file, the separate memos were magically transformed into one single document, the whole of which must be presented to the jury. This, of course, makes as much sense as instructing a jury that it must read an entire copy of the *Sunday New York Times* from cover-to-cover because a single article that appeared somewhere in the Metro section contained defamatory statements about the Plaintiffs.

In support of this bizarre request, Defendants cite to cases that do not remotely suggest that such a procedure is recommended or necessary, including one that would seem to advocate

1

precisely the opposite outcome of what Defendants claim the case says.[1]  Because requiring the jury to read all seventeen memos at any point in the trial – much less prior to the start of trial – would only serve to confuse the jury about the actual facts in dispute (and, undoubtedly, distract them from Plaintiffs' opening statement, which is perhaps Defendants' real aim), Defendants' Motion should be denied.[2]  In support of this Opposition, Plaintiffs state as follows.

### Facts

On June 26, 2016, Christopher Steele ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ authored a memo he entitled "COMPANY INTELLIGENCE REPORT 2016/080," ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In July of 2016, Mr. Steele authored four more memos, "COMPANY INTELLIGENCE REPORT 2016/086," "COMPANY INTELLIGENCE REPORT 2016/94," "COMPANY INTELLIGENCE REPORT 2016/095," and "COMPANY INTELLIGENCE REPORT 2016/097." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Steele authored four more memos in August of 2016, "COMPANY INTELLIGENCE REPORT 2016/100," "COMPANY INTELLIGENCE REPORT 2016/101," "COMPANY INTELLIGENCE REPORT 2016/102," and "COMPANY INTELLIGENCE REPORT 2016/100" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He wrote three more memos in September of 2016 ("COMPANY INTELLIGENCE REPORT 2016/111," "COMPANY INTELLIGENCE REPORT 2016/112," and "COMPANY INTELLIGENCE REPORT 2016/113"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He wrote and transmitted four more memos in October of 2016 ("COMPANY INTELLIGENCE REPORT 2016/130," "COMPANY INTELLIGENCE REPORT 2016/134," "COMPANY



---

[1] It should perhaps not be surprising that Defendants have cited a case for the opposite proposition for which it stands – after all, the present "Motion in Limine" appears to be for the opposite purpose of a typical Motion in Limine, which *Black's Law Dictionary* defines as "A pretrial motion requesting court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejuricial to moving party that curative instructions cannot prevent predispositional effect on jury....  Purpose of which motion is to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial...."

[2] If Defendants would like to provide the jury with a copy of Buzzfeed's article and the single relevant memo immediately before they begin *their* opening argument, Plaintiffs have no objection to their doing so.

INTELLIGENCE REPORT 2016/135," and "COMPANY INTELLIGENCE REPORT 2016/136"). █████████████████████████

█████████████████████████████████████████

█████████████████████████████ None of the Pre-Election Memos made any mention of Plaintiffs and none of the Pre-Election Memos are the subject of the present litigation.

█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
████

On December 13, 2016, Mr. Steele produced a final memo, "COMPANY INTELLIGENCE REPORT 2016/166" (the "December Memo"), █████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████ It is the December Memo which contains the defamatory statements about Plaintiffs and which is the subject of this action.

█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████

3

███████████████████████████████████████████
███████████████

On January 10, 2017, Buzzfeed published all 17 memos, which it acknowledged to be a "collection of memos written over a period of months."

### Argument

Plaintiffs first cite to eight cases that they suggest support their contention that the jury must consider the defamatory statements made in the December Memo in the context of all seventeen memos written by Mr. Steele over the course of seven months. None of the cited cases actually suggest anything of the sort. Instead, the cases stand for the general proposition that it is sometimes necessary to consider the defamatory statements in the context of the publication in which it is contained for the jury to be able to reach conclusions about the meaning of the defamatory words (for example, whether the words used should be seen in context as opinion or stated fact).

Moreover, seven of the eight cases address factual scenarios in which the Court looked only at a single unified publication – a letter, a newspaper article, a magazine article, and a book – while the eight looked at a series of six articles "all of which allegedly contain defamatory statements." *Parsi v. Daioleslam*, 595 F. Supp. 2d 99, 103 (D.D.C. 2009). *See*, *also*, *Aronson v. Wiersman*, 65 N.Y.2d 592, 594, 493 N.Y.S.2d 1006, 1007, 483 N.E.2d 1138, 1139 (1985) (defamation at issue contained in a single letter circulated to city counsel and sent to plaintiff); *James v. Gannett Co.*, 40 N.Y.2d 415, 417, 386 N.Y.S.2d 871, 873, 353 N.E.2d 834, 836 (1976) (alleged defamatory statements contained in single newspaper article); *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (holding that alleged defamatory picture and accompanying caption had to be considered together); *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 589 (Fla. 1st DCA 1983) (jury should consider picture used in newspaper article together with the article itself); *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1227 (11th Cir. 2002) (both parties agreed that the Court should consider the an entire book about the murder of Jon-Benet Ramsey as the defamatory work. **Court (and not a jury)** found on a motion to dismiss that the passages concerning the plaintiff were not capable of a defamatory meaning even in isolation – and then noted that the remainder of the book made clear that the defendants were not accusing the plaintiff of having taken part in Jon-Benet's murder); *Chau v. Lewis*, 935 F. Supp. 2d 644, 661(S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014) (where plaintiffs

4

alleged that 26 separate statements within the defendant's book were defamatory, **Court on summary judgment (and not a jury)** considered the tenor of the book as a whole to determine whether a reasonable reader would believe that author was making factual statements or stating his opinion); *Price v. Viking Penguin, Inc.*, 676 F. Supp. 1501, 1504 (D. Minn. 1988), *aff'd*, 881 F.3d 1426 (8th Cir. 1989) (**Court (and not a jury)** considered the tone of book containing defamatory statements as a whole in determining if alleged defamatory statements were factual in nature or opinion).³

Defendants next insist that an "analogous procedure" to the one Defendants advocate here (*i.e.,* forcing the jury to read all seventeen memos prior to opening arguments) "was employed successfully in *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394 (9th Cir. 1996)." Defendants' Motion, p. 3. More specifically, Defendants assert that, in *Masson,* the trial court determined that "the jury should be instructed to read the [alleged defamatory] article prior to hearing opening statements or receiving any other evidence. Accordingly, after the jury was selected, each juror was provided with a copy of the article and instructed to read it prior to the commencement of trial." *Id.*

If anything even remotely like this actually happened during the *Masson* trial, the opinion cited by Defendants certainly gives no hint of it.⁴ That is not to say that the *Masson* case is not

---

³ In their Motion, Defendants insist that the last three cases stand for the proposition that "courts and *juries* will even read entire books to understand the statements at issue in context." Defendants' Motion, p. 2 (emphasis added). As the Court can see, Defendants' representation is not accurate.

⁴ In an abundance of caution, and because there are numerous decisions in the history of the *Masson* case, Plaintiffs' counsel also reviewed the other decisions in the case to see whether Defendants' claim could be supported by *those* opinions. Plaintiffs were unable to find any support for Defendants' position in any of the other opinions throughout the history of the case (most of which were rulings on, and appeals from, summary judgment), including in the following decisions: (1) *Masson v. New Yorker Magazine, Inc.*, 686 F.Supp. 1396 (N.D. Cal. 1987) (ruling on summary judgment); (2) *Masson v. New Yorker Magazine, Inc.*, 881 F.2d 1452 (9th Cir. 1989) (appeal from ruling on summary judgment); (3) *Masson v. New Yorker Magazine*, 895 F.3d 1535 (9th Cir. 1990) (appellate decision as amended on denial of rehearing and rehearing en banc); (4) *Masson v. New Yorker Magazine*, 501 U.S. 496 (1991) (reversing and remanding Ninth Circuit affirmation of district court's ruling on summary judgment); (5) *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896 (9th Cir. 1992) (on remand from Supreme Court on district court's ruling on summary judgment); and (6) *Masson v. New Yorker Magazine, Inc.*, 832 F.Supp. 1350 (N.D. Cal. 1993) (rulings on post-trial motions, with no mention whatsoever as to pre-trial reading of defamatory article).

of some value here – it is, inasmuch as the *Masson* Court appears to have actually adopted a position diametrically opposed to the one advocated by Defendants.

In *Masson,* the plaintiff, Jeffrey M. Masson, filed suit against *The New Yorker* magazine and one of its writers, Janet Malcolm. Masson alleged that Malcom misquoted Masson in five separate places in the article at issue. *Id.* at 1395-96. In addition to the actual article at issue in that case, Masson also wanted to introduce extensive excerpts from a book written by Malcolm, which was ***not*** alleged to be defamatory. Masson contended, however that the passages constituted admissions of wrongdoing and were relevant to Malcolm's state of mind at the time she wrote the allegedly defamatory article. *Id.* at 1399. The trial court permitted Masson to introduce certain limited excerpts that it found to be directly relevant to the alleged defamatory article, but refused to allow Masson to introduce the remainder of the excerpts, explaining: "When we get into more, I'm concerned it's being taken out of context.... The second concern I have is I would then have to have the jury read the whole book." *Id.* In other words, despite plaintiff's request, the court explicitly *excluded* the extraneous excerpts plaintiff sought to introduce because it did *not* want the jury to read them all. Moreover, *at no point whatsoever* in the decision is there *any* discussion about the jury being presented with the article, the book, or any other material prior to the commencement of the trial.

Indeed, in a subsequent case, *United States v. Schiff*, 544 F. App'x 729, 731-32 (9th Cir. 2013), the Ninth Circuit upheld a District Court's decision not to allow the admission at trial of an entire book written by the defendant, citing the *Masson* case as standing for the proposition that the "district court properly refused to admit into evidence excerpts of book because jury cannot be expected to read a whole book, and excerpts would be time consuming, misleading, and confusing." In short, whatever Defendants *might* have been reading, it wasn't the Ninth Circuit's decision in *Masson*. But, as the Ninth Circuit actually did in *Masson*, the Court here should reject Defendants' attempt to force the jury to read sixteen largely irrelevant memos as to do so would be "time consuming, misleading, and confusing."

Finally, Defendants urge this Court to depart from the standard procedure of instructing the jury on the law only at the close of a case, insisting that (for some unstated reason), the jury in *this* case will be unable to do what the jurors in every other defamation case do – namely, understand and follow the law as instructed by the Court at the close of the trial. In support of this proposition, Defendants cite to a concurring opinion issued by Justice (then-Judge) Ruth

Bader Ginsburg in which Justice Ginsburg, in *dicta*, suggested that there were a myriad of different ways in which a Court might advance a jury's understanding of the law in a complex defamation case, which included: giving the instructions in plain language rather than legal jargon, using "shorter, less complex, more active sentences," allowing the jury to take into its deliberations written copies of the judge's instructions, and giving instructions to the jury at any relevant point in the trial, from its commencement to its close. *Tavoulareas v. Piro*, 817 F.2d 762, 807 (1987).

Although the present case may be more high-profile than some, the issues that will ultimately be before the jury are no more complex than those presented in any defamation case and, accordingly, Plaintiffs do not believe that any special pretrial instructions are necessary or warranted (and, indeed, may actually serve to distract or confuse the jury before any evidence is heard).[5] Ultimately, Plaintiffs recognize that it is the *Court* and not the litigants who dictate the conduct of the trial and the manner in which the jury is instructed. Plaintiffs are confident that the Court will instruct the jury when and how it deems best calculated to properly inform the jury on the relevant law.

## Conclusion

For the reasons stated hereinabove, Defendants' Motion in Limine No. 10 to Have the Jury Review the Article and Dossier and for the Court to Deliver Preliminary Instructions Prior to Opening Statements should be denied.

---

[5] The undersigned would note that they are huge RBG fans and it pains them to disagree with Justice Ginsburg even to this limited extent.

Dated: November 13, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
Dylan Fulop (Fla. Bar No. 123809)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com

*Attorneys for Plaintiffs*