# Exhibit 3

```
 1           UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF FLORIDA
 2                  MIAMI DIVISION

 3


 4   ALEKSEJ GUBAREV, XBT     :
     HOLDING S.A., and        :
 5   WEBZILLA, INC.,          :
                              :
 6        Plaintiffs,         : Case No:
                              : 1:17-cv-60426-UU
 7   v.                       :
                              :
 8   BUZZFEED, INC., and      :
     BEN SMITH,               :
 9                            :
          Defendants.         :
10

11

12              **CONFIDENTIAL**

13     DEPOSITION OF ANTHONY J. FERRANTE

14

15          Friday, July 27, 2018

16                10:20 a.m.

17


18           Davis Wright Tremaine
         1919 Pennsylvania Avenue, N.W.
19              Washington, D.C.

20


21     Terry L. Bradley, Court Reporter

22
```



```
 1              P R O C E E D I N G S
 2
 3              ANTHONY J. FERRANTE
 4   having been first duly sworn, testified as
 5   follows:
 6
 7                  EXAMINATION
 8   BY MR. FRAY-WITZER:
 9       Q.   Good morning.
10       A.   Good morning.
11       Q.   Would you please state your name for
12   the record.
13       A.   Anthony Ferrante.
14       Q.   And Mr. Ferrante, can you tell me,
15   have you ever been deposed before?
16       A.   I have not.
17       Q.   So the ground rules are pretty
18   simple, I think.  I'll try and ask you a series
19   of questions, you'll get a chance to answer.
20   If I ask you a question and you respond to it,
21   I will assume that you understood the question.
22   Is that fair?
```



1  investigatory work?

2  A.  Can you be more clear.

3  Q.  Well, you seemed to differentiate
4  when you answered the last question about not
5  with respect to the BuzzFeed engagement, so I
6  wanted to know --

7  A.  I differentiated because I am a
8  career government employee with extensive
9  contacts in and throughout the government, and
10 I want to be crystal clear that I did not speak
11 to anyone within the government regarding my
12 work on this case, but I do maintain positive
13 social relationships with government employees.

14 Q.  Sure.  Okay.  Did you or anyone at
15 your team contact Fusion GPS?

16 A.  At the --

17     I would say when we were first
18 retained we had an information exchange with
19 two representatives from Fusion GPS.

20 Q.  Which --

21     MS. BOLGER:  I'm going to take a
22 quick break.  Hold on.



1           Talk to me outside.

2           (Recess taken at 11:05 a.m.)

3           (Deposition resumed at 11:06 a.m.)

4           Can you ask your next question.

5   BY MR. FRAY-WITZER:

6       Q.   Which representatives of Fusion GPS
7   did you speak to?

8           MS. BOLGER:  So the meetings with
9   Fusion GPS were part of a joint defense
10  agreement in another matter not related to this
11  matter, and obviously Mr. Ferrante can give you
12  some information that wouldn't be privileged,
13  like who was there, but the information in that
14  meeting actually related to a different matter.

15          MR. FRAY-WITZER:  Okay.  Well, Mr.
16  Ferrante's testimony was that when they were
17  first retained in this matter they had an
18  information exchange with Fusion GPS.  So I
19  guess I'm --

20          MS. BOLGER:  It's not in this
21  matter.  I mean, there's a different --

22          There are other matters, right?



```
 1  This information exchange was not --
 2           It was pursuant to a joint defense
 3  agreement in a different matter.
 4           MR. FRAY-WITZER:  I just don't think
 5  that's what the testimony was so far.
 6           MS. BOLGER:  I think you're an
 7  excellent questioner and I don't mean this with
 8  disrespect, but I don't think your question was
 9  sufficiently precise that you could make that
10  distinction at this moment.
11  BY MR. FRAY-WITZER:
12     Q.    Well, let's start with:  Who were
13  the representatives of Fusion GPS?
14     A.    I don't actually recall their last
15  names, I just remember Laura and Jake, I
16  believe.  I may even be wrong there.
17     Q.    Did you meet with Glen Simpson?
18     A.    No.
19     Q.    In your meeting with Fusion GPS did
20  you discuss Aleks Gubarev?
21           MS. BOLGER:  I'm going to again say
22  that the meeting was pursuant to a joint
```



1  defense privilege in a different matter, so I'm
2  going to instruct the witness not to answer the
3  question.
4         MR. FRAY-WITZER:  I've now limited
5  very specifically to one of the plaintiffs in
6  this matter.  I'm not sure how his name would
7  have come up in connection with a completely
8  unrelated case.  I understand you're
9  instructing the witness not to answer, but I
10 will say that we'll take that up.
11        MS. BOLGER:  That's fine.  You know
12 you're not the only lawsuit in town on this
13 subject.
14        MR. FRAY-WITZER:  We're the only
15 important lawsuit.
16        (Laughing.)
17 BY MR. FRAY-WITZER:
18    Q.   So just to be fair, I'm going to ask
19 a series of questions.  You should wait because
20 I suspect you'll get similar instructions.
21        In connection with your meeting at
22 Fusion GPS did you discuss XBT Holdings?



```
 1              MS. BOLGER:  I'll instruct the
 2   witness not to answer for the same reasons.
 3   BY MR. FRAY-WITZER:
 4       Q.    In your meeting with Fusion GPS did
 5   you discuss Webzilla?
 6              MS. BOLGER:  Same instruction.
 7   BY MR. FRAY-WITZER:
 8       Q.    In your meeting with Fusion GPS did
 9   you discuss the contents of the December memo?
10              MS. BOLGER:  Same instruction.
11              And also objection.  Vague.  I don't
12   know that this witness knows what the December
13   memo is.
14   BY MR. FRAY-WITZER:
15       Q.    Do you know what the December memo
16   is?
17       A.    I actually don't.
18       Q.    Why don't we mark this.
19              (Exhibit 1 marked for
20   identification.)
21              So you've been shown what's been
22   marked as Exhibit No. 1.  Why don't you take a
```



1                CERTIFICATE OF NOTARY PUBLIC

2            I, Terry L. Bradley, the officer before

3    whom the foregoing deposition was taken, do

4    hereby certify that the witness whose testimony

5    appears in the foregoing deposition was duly

6    sworn by me; that the testimony of said witness

7    was taken by me in shorthand and thereafter

8    reduced to computerized transcription under my

9    direction; that said deposition is a true

10   record of the testimony given by said witness;

11   that I am neither counsel for, related to, nor

12   employed by any of the parties to the action in

13   which this deposition was taken; and further,

14   that I am not a relative or employee of any

15   attorney or counsel employed by the parties

16   hereto, nor financially or otherwise interested

17   in the outcome of the action.

18                          _____
19                          Notary Public in and for
                            the District of Columbia
20
     My Commission expires:  April 30, 2022
21

22

