IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 17-cv-60426-UU

ALEKSEJ GUBAREV, XBT HOLDING S.A.,
AND WEBZILLA, INC.,

   Plaintiffs,

vs.

BUZZFEED, INC. AND BEN SMITH,

   Defendants.
_____/


**DEFENDANTS' REPLY IN SUPPORT OF MOTION *IN LIMINE* NO. 4 TO PRECLUDE PLAINTIFFS FROM OFFERING EVIDENCE OF DAMAGES ALLEGEDLY INCURRED BY ENTITIES OTHER THAN PLAINTIFFS XBT HOLDING S.A. AND WEBZILLA, INC. AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs' opposition amounts to the argument that corporate law is whatever they say it is. Tellingly, Plaintiffs never cite a *single case* that supports any of their arguments, because there are none. Instead, Plaintiffs offer a potpourri of self-serving, conclusory statements ranging from what holding companies supposedly are to what should happen if Warren Buffett was falsely accused of torturing kittens in his office. None have any basis in law or fact.

The issue is simple. Plaintiff XBT elected to organize itself as a holding company whereby its only "value" is the value of the shares in the subsidiaries it owns. But for strategic purposes Plaintiffs elected to name just one of those subsidiaries, Webzilla, Inc., as a plaintiff in this lawsuit, and not name any of the others. As a result, black-letter principles of corporate law dictate that XBT cannot claim as damages to itself losses that were actually incurred by non-party subsidiaries.

<div align="center">ARGUMENT</div>

**I.    XBT MAY NOT RECOVER THE DAMAGES OF ITS NON-PARTY SUBSIDIARIES**

    **A.    XBT *Is* Seeking To Recover Damages Incurred Entirely By Its Subsidiaries**

First, Plaintiffs appear to assign mystical significance to the fact that XBT is a "holding company." Opp. at 2. However, *all* parent corporations own (i.e. "hold") the shares of their

subsidiaries, and all are subject to the principle that a parent company may not assert claims belonging to a related to subsidiary corporation. *See Elandia Int'l, Inc. v. Koy*, 2010 WL 2179770, at *6 (S.D. Fla. Feb. 22, 2010). This fundamental principle—that a corporate veil separates distinct companies—applies equally to "holding companies." *See In re Hillsborough Holdings Corp.*, 176 B.R. 223, 244–45 (M.D. Fla. 1994) ("Upon an extensive review of applicable case law, the Court concludes that to pierce a corporate veil under either Florida or Delaware law, a claimant must establish that the parent corporation engaged in improper conduct by intentionally utilizing the subsidiary's corporate form to defraud creditors or engage in other wrongful activities.").

The rest of Plaintiffs' argument essentially turns on one assertion of purported fact: that "part of XBT's value as a business is made up of its subsidiaries, but that does not mean the damage that XBT itself suffered to its own value is the damages of its subsidiaries." Opp. at 2. On that basis, Plaintiffs assert that "[a]ccordingly . . . Plaintiffs are not 'seek[ing] damages incurred by subsidiaries.'" *Id.* Even on their face, those assertions make no sense. If even "part" of XBT's value was its subsidiaries, how could a loss in XBT's value reflect anything other than, at least in "part," the lost value of its subsidiaries?

In any event, it is telling that Plaintiffs never state what "part" of XBT's "value as a business" is supposedly made up of anything other than the value of its subsidiaries. That is because there is no such "part." XBT does not conduct *any* business itself, and so *all* revenue is actually earned by subsidiaries. So as Plaintiffs' own CFO confirms, XBT's "value" is *entirely* the sum of the values of its subsidiaries. Likewise, if profits were used as the measure of XBT's financial performance, it has no profits itself; all its "profits' are actually earned by its subsidiaries:

> Q: [D]oes XBT Holding SA enter into contracts with customers? Does it conduct any of the business of the company that generates revenue for the consolidated entity?
>
> A: No.
>
> Q: It does not. It is accurate that all of the actual revenue of the consolidated entity is generated by the various subsidiaries?
>
> A: Correct.

Dkt. 270-2 (Mishra Dep. at 31:4-12).  Thus, Plaintiffs' CFO also confirmed that the only way to tell where the profits stated on XBT's consolidated financial statements were earned would be to review the separate financial statements of each subsidiary that actually earned them:

> Q: How would you learn as the CFO of company the answer to the question, which subsidiaries actually primarily contribute to the profit of the consolidated entity?
>
> A: I would look at the financial statement.
>
> Q: Which financial statement?
>
> A: The individual financial statement.
>
> Q: Of each subsidiary, right?
>
> A: Yes.

*Id.* (Mishra Dep. at 122:12-20).  The same point is made in the opening paragraph of XBT's Consolidated Financial Statements:

> We have audited the accompanying consolidated financial statements of XBT Holding S.A. (the "Company") and its subsidiaries (the "Group"), which are presented on pages 5 to 46 and comprise the consolidated statement of financial position as at 31 December 2017, and the consolidated statements of profit or loss and other comprehensive income, changes in equity and cash flows for the year then ended, and notes to the consolidated financial statements, including a summary of significant accounting policies.

Ex. 1 at 4.  *See also id.* at 12 ("The consolidated financial statements for the year ended 31 December 2017 consist of the financial statements of the Company and its subsidiaries.").

Plaintiffs assert that their expert, Jeffrey Anderson, estimated the lost business value of XBT, not any XBT subsidiary.  Opp. at 2.  But Anderson himself begs to differ.  The basis of Anderson's calculations was comparing the revenues and expenses stated in XBT's consolidated financial statements with the revenues and expenses in its consolidated financial projections.  *See* Dkt. 260 at 2-5.  As noted above, those revenues and expenses were actually earned and incurred by XBT's subsidiaries, not XBT itself.  Thus, Anderson's estimate calculation of XBT's supposed "lost business value" simply summed up the business value of all the subsidiaries:

3

> Q; And in your estimate of business value, right, is an estimate for as an accountant would call it, the consolidated company? Is that fair?
>
> A: It's a fair market value of XBT and its subsidiaries.
>
> Q: And all of its subsidiaries? Right?
>
> A: Correct.

Ex. 2 (Anderson Dep. at 64:21-65:3). This testimony also demonstrates why Plaintiffs' claim that "XBT is seeking damages to its own business value—not any damages suffered by any subsidiaries other than Webzilla", Opp. at 3, is likewise flatly wrong. In fact, Plaintiffs contradict themselves even within their 4-page Opposition. On page two they say they "are not 'seek[ing] damages incurred by subsidiaries.'" But as noted above, on the next page, they say that XBT's business value somehow includes Webzilla, Inc.—which is a subsidiary – but not any others. None of those claims are accurate, because all of XBT's damages are merely the sum of alleged damage to its subsidiaries.

### B. As a Matter of Law, XBT May Not Claim Damages Actually Incurred By Its Subsidiaries

The rest of Plaintiffs' arguments seem to essentially say that even if XBT is seeking damages incurred by its subsidiaries, it should be allowed to do so because any other result would be an unfair "Catch-22." The law of course is to the contrary and for fair reasons. Corporations like XBT gain considerable legal and tax advantages by organizing themselves into multiple subsidiaries whose separate existence the law protects, so it is hardly unfair to require them to respect those distinctions when they bring lawsuits.

But even ignoring that, Plaintiffs are wrong about the equities here because their arguments misstate the basis for Defendants' motion. Plaintiffs claim that Defendants argue that XBT's subsidiaries cannot recover damages because they were not identified by name in the Dossier. Opp. at 2 n. 2. Not so. Defendants recognize that the Dossier referenced XBT's "affiliates," and so we do not dispute that any or all of those affiliates could have standing to sue. Rather, Defendants are simply saying that if Plaintiffs wanted to seek damages for any or all of XBT's affiliates, they needed to include them as plaintiffs in this lawsuit. Plaintiffs cannot join just one of its affiliates, Webzilla Inc., and then pretend that all the others have no independent corporate existence.

Tellingly, Plaintiffs offer no response at all to the point that they are trying to have it both ways. If XBT can recover its claimed "lost business value" without reference to any of its subsidiaries, then why join Webzilla, Inc. as a plaintiff? Moreover, why just Webzilla, Inc.—and not the other half dozen "Webzillas" around the world? And why file the identical suit in London, but join two other Webzillas? The answers are obvious. Plaintiffs want the courts to recognize the distinct corporate identities of their subsidiaries when it benefits them strategically, by joining what they treat as a distinct Florida company in this suit and European companies in their London litigation. They cannot then demand that the Court ignore those distinctions merely because it would not suit other strategic goals.

Indeed, even after this lawsuit was filed Plaintiffs have continued to play that same game. For example, for purposes of producing witnesses for depositions, Plaintiffs took the position that they only have an obligation to produce employees of XBT or Webzilla, Inc. in Florida, since those entities are the only named parties in this lawsuit. As a result, the depositions of Gubarev, Mishra, Bezruchenko, and Luchian took place in Miami, because those witnesses are all employed by one of the Plaintiff parties.

However, Plaintiffs refused to produce any witnesses in this jurisdiction who they said were employed by other XBT subsidiaries, on the ground that all those subsidiaries are non-parties. *See* Ex. 3 (3/7/18 email from Plaintiffs' counsel regarding Joechem Steman, CEO of Datacenter.com: "As for Mr. Steman, he is in Cyprus and is not an employee of any of the Plaintiffs. Accordingly, he can be deposed in Cyprus or by Skype."); Ex. 4 (2/1/18 email from Plaintiffs' counsel regarding Mark Goedrich: "Mr. Goedrich, he is the CEO of Root S.A., a non-party wholly owned subsidiary of XBT, located in Luxemburg (where Mr. Goedrich lives and works). Please let us know what date would be convenient for you to depose him in Luxemburg."). Plaintiffs even refused to produce Nikolay Dvas in Florida, even though by that point he was CEO, on the grounds that "prior to January 1, 2018 he was not an employee of any of the plaintiffs. Accordingly, he can be deposed in Cyprus where he lives and works." Ex. 5 (3/9/18 email from Plaintiffs' counsel). Prior to 2018, Dvas had been the CEO of Servers.com, a group of XBT subsidiaries. As a result, at considerable expense, Defendants' counsel spent a week traveling to Cyprus to depose all of those witnesses. If it is fairness Plaintiffs are after, it would be unfair to permit Plaintiffs to litigate this lawsuit as if none of its subsidiaries were parties, but then seek damages incurred by all of them.

5

Next, Plaintiffs posit a hypothetical: if Warren Buffett was falsely accused of torturing kittens in his office, would not Berkshire Hathaway have a cause of action *and* furthermore, would not Berkshire Hathaway be able to recover pecuniary losses that were actually incurred by Fruit of the Loom, Dairy Queen, and Geico? The answer to the first question is it would depend on what exactly was alleged[1], and the answer to the second—the only hypothetical question relevant here—is certainly not. In fact, this hypothetical illustrates Defendants' point. Berkshire Hathaway actively resists assuming any legal responsibility for the acts of such subsidiaries because they are legally separate entities. *See, e.g., Kaul v. Christie*, 2017 WL 2953680 (D.N.J. June 30, 2017) (granting Berkshire Hathaway's motion to dismiss, but not GEICO's, because the two are separate legal entities); *Benson v. Amguard Ins. Co.*, 2017 WL 2672078, at *5 (D. Del. June 21, 2017) (granting motion to strike portions of plaintiff's complaint that reference defendant Amguard Insurance Company's parent company, Berkshire Hathaway, and Warren Buffet, because neither is a defendant in the case and each is a distinct legal entity from Amguard Insurance Company). In short, Warren Buffett would be no more entitled to have his cake and eat it too than Plaintiffs are.

Next, Plaintiffs' only reference to any case law at all is an attempt to distinguish just one of the cases Defendants cited, *Mobius Risk Grp. LLC v. Global Clean Energy Holdings, Inc.*, 2011 WL 3568074 (S.D. Tex. Aug. 15, 2011). Plaintiffs claim *Mobius* is distinguishable because in that case, the parent company sought to recoup the costs of land that was purchased entirely by subsidiaries, and so "the damage was actually suffered by the subsidiaries of the plaintiff—not the plaintiff." Opp. at 3.

Far from distinguishable, Plaintiffs seek exactly the same type of damages here as the plaintiff company in *Mobius* did. Generally, *all* the lost revenues that Plaintiffs' expert calculates as lost business value ("LBV") are those of XBT's subsidiaries. And even at the most granular level, the damages Plaintiffs seek are just like the ones in *Mobius*. For example, Anderson testified at his deposition that ████████████████████████████████

---

[1] Generally, a corporation cannot sue for defamation simply because one of its principals was defamed, even if the corporation might have suffered some injury. *See, e.g, Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426 (1991).

██████████████████████████████████████  In short, *Mobius*' holding that "[c]ourts that have addressed this issue have consistently held that a parent may not [recover damages incurred by its subsidiaries]" applies equally here. *Mobius,* 2011 WL 3568074 at *5.

## II.   APPORTIONMENT OF DAMAGES

Finally, Plaintiffs also misstate Defendant's argument regarding apportionment of damages.  Plaintiffs point out that a publisher and author may be jointly and severally liable for damages caused by a publication, and so there is no requirement for Plaintiffs to apportion damages between BuzzFeed and Steele.  Opp. at 4.  That may be an accurate statement of the law, but Defendants' point is that Plaintiffs actually made a different choice here.  Plaintiffs provided *sworn interrogatory responses* that they were not seeking to recover their total losses from Defendants, and so the damages they claimed in their interrogatory responses were subject to being apportioned between Steele and Defendants.  Presumably, they did that because if they are seeking all of their damages from the publication of the Dossier in this case, they would have no basis to also maintain a lawsuit against Steele since it would by definition be seeking a double recovery.

This is not a minor technicality.  Plaintiffs are now demanding the right to seek damages they swore that they would not seek.  As a result, Plaintiffs' interrogatories expressly said that any numbers included in the responses were not what Plaintiffs were actually seeking to recover, because they were subject to apportionment.  Now, however, Plaintiffs apparently maintain that those numbers are final and they are seeking all damages from Defendants.  This they cannot do. *Mana v. Cho*, 147 So.3d 1098, 1100 (Fla. Dist. Ct. App.  2014) (confirming that a plaintiff is bound by its interrogatory response regarding damages).

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court grant Defendants' motion *in limine* No. 4, and exclude Plaintiffs from offering evidence and argument about damages, if any, actually incurred by corporations other than Plaintiffs XBT Holding S.A. and Webzilla, Inc. themselves.

Dated:  November 20, 2018	Respectfully submitted,

<div style="margin-left:3em">

/s/ Katherine M. Bolger
Katherine M. Bolger
Nathan Siegel
Adam Lazier
Alison Schary
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
katebolger@dwt.com
nathansiegel@dwt.com
adamlazier@dwt.com
alisonschary@dwt.com

/s/ Roy Black
Roy Black
Jared Lopez
Black, Srebnick, Kornspan & Stumpf, P.A.
201 So. Biscayne Boulevard
Miami, Florida 33131
rblack@royblack.com
jlopez@royblack.com

*Attorneys for Defendants*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, together with its exhibits, will be served electronically by email on all counsel or parties of record on the service list below this 20th day of November, 2018.

                                        By: /s/ Adam Lazier
                                                  Adam Lazier

## SERVICE LIST

Matthew Shayefar
Valentin D. Gurvits
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1806
Facsimile: 617-928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Brady J. Cobb
Dylan Fulop
COBB EDDY, PLLC
1112 North Flagler DriveFort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com
dfulop@cobbeddy.com