# **EXHIBIT 8**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
   Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
   Defendants.

Case No.

0:17-cv-60426-UU

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS
<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 56.1(a), Plaintiffs Aleksej Gubarev, XBT Holding S.A. ("XBT") and Webzilla, Inc. ("Webzilla") hereby submit this opposition to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment.[1]

1. Undisputed.

2. Plaintiffs DENY the statements in this paragraph. The statements are neither correct nor supported by the referenced documents. XBT's "registered office" is in Luxembourg, not its "principal place of business." XBT's principal place of business is in Cyprus. Ex. 10 [Mishra Dep.] at 43:5-6 (Cyprus is the "corporate office"). Furthermore, XBT is the parent holding company for all its subsidiaries. Ex. 10 [Mishra Dep.], 31:13-18.

3. Plaintiffs DENY the statements in this paragraph as misleading. The referenced documents only indicate that on corporate documents a Texas address was listed as the "principal place of business." However, Webzilla has had significant operations and management from Florida. *See*, *generally*, Declaration of Constantin Luchian, Exhibit 60 to Declaration of Matthew Shayefar in Opposition to Motion filed herewith ["Shayefar Opp. Decl."].[2]

4. Plaintiffs DENY that Plaintiff Webzilla has been described as a European company. The cited documents relate to other "Webzilla" entities that are subsidiaries of XBT and therefore the statements are unsupported. Webzilla is a Florida company. *Supra*, ¶ 3.

5. Undisputed.

6. ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████ *See*, *also*, Emails between Ben Smith and Jake Tapper, Opp. Exs. 61 and 62 ("Then why are you saying he 'claims' to be a former agent?" ... "Because we do not know 100%!").

7. Undisputed.

8. Undisputed.

9. Plaintiffs do not dispute that ████████████████████████████ ████████████████████████████████████████████ but Plaintiffs DENY that all the

---

[1] All citations to "Ex." are to exhibits accompanying the Declaration of Katherine M. Bolger filed with Defendants' Statement of Undisputed Material Facts.
[2] All citations to "Opp. Ex." are to exhibits accompanying the Shayefar Opp. Decl.

information that Mr. Steele included in the reports was credible, accurate and true and further state that there was reason to believe that there were false statements in the Dossier. Specifically, but without limitation, the allegations relating to Plaintiffs are untrue. *See* Gubarev Responses Interrogatories, Response No. 3, Opp. Ex. 63. *See*, *also*, *infra*, ¶ 57 (detailing other false statements in Dossier).

      10.     DENIED as based on inadmissible hearsay and/or unauthenticated documents.

      11.     DENIED as based on inadmissible hearsay and/or unauthenticated documents. Notwithstanding this objection, whether Mr. Steele believed that the information he collected was of urgent national security importance is self-serving and immaterial. Given that there is no evidence that Plaintiffs have ever been the subject of any sort of national security investigation (or other government investigation) regarding the allegations about them in the Dossier makes clear that the allegations about them were not of urgent national security importance. *See* Declaration of Aleksej Gubarev, Opp. Ex. 64, ¶ 11. To the contrary, Special Counsel Robert Mueller has indicted twelve Russian intelligence officers. *See* Indictment, Opp. Ex. 65.

      12.     DENIED as based on inadmissible hearsay and/or unauthenticated documents.

      13.     DENIED as based on inadmissible hearsay and/or unauthenticated documents. Notwithstanding this objection, the FBI had multiple versions of the Dossier, including having received a version of the pre-election memos from a reporter. Opp. Exs. 87, 88, and 89, p. 6.

      14.     DENIED as based on inadmissible hearsay and/or unauthenticated documents. Notwithstanding this objection, Fusion GPS only gave the pre-election memos to Ohr. Fusion GPS Deposition, Opp. Ex. 86, 86:19-87:3. Fusion could not recall whether it ever provided Ohr the December Memo. *Id.*, at 156:19-158:10.

      15.     DENIED as based on inadmissible hearsay and/or unauthenticated documents.

      16.     DENIED as based on inadmissible hearsay and/or unauthenticated documents. Moreover, the cited references do not support the statements in this paragraph.

      17.     Undisputed.

      18.     DENIED as based on inadmissible hearsay and/or unauthenticated documents.

      19.     DENIED as based on inadmissible hearsay and/or unauthenticated documents.

      20.     Undisputed.

      21.     Undisputed.

      22.     Undisputed.

23. Undisputed.

24. [REDACTED]

25. [REDACTED]

26. Undisputed, but also irrelevant for reasons set forth *supra*, ¶ 25.

27. Undisputed, but also irrelevant for reasons set forth *supra*, ¶ 25.

28. Undisputed.

29. [REDACTED]

31. Plaintiffs DENY that the cited document support the statement that Report No. 166 provided more details about an alleged meeting described in previous memoranda.

32. Plaintiffs do not dispute that [REDACTED] but Plaintiffs DENY that all the information that Mr. Steele included in the reports was credible, accurate and true and further state that there was reason to believe that there were false statements in the Dossier. *See*, *supra* at ¶ 9 (statements about Plaintiffs false) and *infra* at ¶ 57 (other false statements in Dossier).

33. Plaintiffs DENY the first sentence of this paragraph as being based on inadmissible hearsay. [REDACTED] Given that there is no evidence that Plaintiffs have ever been the subject of any sort of national security investigation (or other government investigation) regarding the allegations about them in the Dossier makes clear that the allegations about them were not of urgent national security importance.

4

34. 

36. Undisputed.

37. Undisputed.

38. 

40. Plaintiffs DENY the statements of this paragraph to the extent that it misrepresents the cited reference.  As the FBI's declaration states, the FBI only responded "Yes" that "Prior to 5:20 p.m. EST on January 10, 2017, did the FBI Possess the two-page memorandum contained within the Dossier dated December 13, 2016, i.e., Report 2016/166?"  This does not mean that the FBI received the "full Dossier" as one document at one time.

41. DENIED as based on inadmissible hearsay and/or unauthenticated documents. Moreover, the statements are immaterial as they do not relate to any investigation of Plaintiffs.

42. DENIED as based on inadmissible hearsay and/or unauthenticated documents. Additionally, the cited documents do NOT support the statements in this paragraph.  None of the documents indicate when President Obama received the ICA.  The Gistaro declaration's references to the two-page summary allegedly being attached to the ICA is simply a description of what a FOIA claimant claimed, not testimony from Gistaro.  Plaintiffs further DENY to the extent that the statements in this paragraph imply that a public version of the alleged two-page summary was released – which is was not.  Moreover, Plaintiffs DENY to the extent that the statements in this paragraph imply that the two-page synopsis included any references to the statements about Plaintiffs in the Dossier.  Comey and Clapper have stated that the two-page synopsis related only to the "salacious" allegations about then-President-elect Trump.  *See*, *e.g.*,

5

Comey's testimony before the Senate Intelligence Committee, p. 30, Opp. Ex. 67 ("I was briefing him about salacious and unverified material."); Comey Interview, Opp. Ex. 68 ("BAIER: ... You briefed the president-elect on the sliver of the dossier, really the salacious part about prostitutes in Moscow and that allegation.... COMEY: Correct. My mission in that private briefing was just to tell him about that slice of it."); Comey, *A Higher Loyalty: Truth, Lies and Leadership*, pp. 211-227, Opp. Ex. 69 ("Clapper explained to Obama that there was an unusual matter that needed to be brought to Mr. Trump's attention ... allegations that the president-elect had been engaged in unusual sexual activities with prostitutes.... I then began to summarize [to Trump] the allegations in the dossier that he had been with prostitutes in a Moscow hotel in 2013 and that the Russians had filed the episode."); Clapper, *Facts and Fears: Hard Truths From a Life in Intelligence*, p. 401, Opp. Ex. 70 ("Because we had not corroborated any of the sources used to generate the dossier, we had not included it as part of our IC assessment. We knew that at least two congressional members and some of the media had copies of the dossier, and that it could be published – in whole or in part – at any moment. While we could neither confirm nor refute anything in the document, we felt what I expressed as a 'duty to warn' the president-elect that it existed and that it potentially could be made public."). Although the FBI has confirmed that it briefed President Obama about allegations contained in the Dossier, its confirmation does not indicate that the briefing referenced Plaintiffs or the allegations about Plaintiffs in the Dossier. Ex. 8 [FBI Decl.], p. 3. In an interview on MSNBC from January 11, 2017, Smith admitted that Buzzfeed had not itself confirmed that the President had been briefed on the contents of the memos. *See* Opp. Ex. 90, 12:16-13:17.

43. DENIED as based on inadmissible hearsay and/or unauthenticated documents. Moreover, the statements are immaterial as they do not relate to any investigation of Plaintiffs. Moreover, the statements are contradictory to the statements of Comey and Clapper. *Supra*, ¶ 42

44. DENIED as based on inadmissible hearsay and/or unauthenticated documents. Moreover, Plaintiffs DENY to the extent that the statements in this paragraph imply that the two-page synopsis included any references to Plaintiffs. *See supra*, ¶ 42. Moreover, Plaintiffs DENY that any of the cited documents provide a date upon which President Obama was briefed about the allegations in the Dossier. *See supra*, ¶ 42. The FBI declaration only says that the briefing occurred "before January 10, 2017." Ex. 8 [FBI Decl.], ¶ 6(c).

45. DENIED as based on inadmissible hearsay and/or unauthenticated documents. Plaintiffs also DENY to the extent that this paragraph implies that the two-page synopsis included any references to Plaintiffs. *See supra*, ¶ 42.

46. DENIED as based on inadmissible hearsay and/or unauthenticated documents.

47. Plaintiffs DENY the statements in this paragraph and request that they be stricken. At deposition, Bensinger, refused to respond to questions regarding his prior history with Mr. Steele and what he had previously learned from Mr. Steele, and was also instructed by counsel not to respond to such questions. *See* Deposition of Ken Bensinger ["Bensinger Depo."], Opp. Ex. 71, 31:23-36:7. Plaintiffs also DENY on the basis that Mr. Bensinger testified that he had no understanding as to Mr. Steele's reputation prior to 2016. *Id.*, at 38:9-11. Furthermore, Plaintiffs DENY that all the information that Mr. Steele included in the reports was credible, accurate and true and further state that there was reason to believe that there were false statements in the Dossier. *Supra* at ¶ 9 and *infra* at ¶ 57.

48. ███████████████████████████████████████

49. ███████████████████████████████████████

50. Undisputed.

51. ███████████████████████████████████████

███████████████████████████████████

████████████████████

52. Plaintiffs DENY the statements of this paragraph to the extent they imply that BuzzFeed made any efforts to investigate any of the statements about Plaintiffs made in the Dossier, which they didn't. *See* Buzzfeed Responses to Interrogatories, Opp. Ex. 73, Response No. 5 ("[P]rior to publishing the Article Buzzfeed did not specifically investigate any of the allegedly defamatory statements concerning any of the Plaintiffs.") and Nos. 7-10.

53. Plaintiffs DENY this paragraph to the extent it implies that BuzzFeed made any efforts to investigate any of the statements about Plaintiffs made in the Dossier. *Supra*, ¶ 52.

54. Plaintiffs DENY the statements of this paragraph. Defendants' self-proclaimed "plans" regarding publishing the Dossier are immaterial and, in any case, proved false by Defendants' eventual publication of the Dossier. Moreover, Defendants would not have been investigating the Dossier if they had no plans to publish it "in whole or in part."

55. Plaintiffs DENY to the extent that the statements in this paragraph imply that the CNN article made any reference to Plaintiffs or that Plaintiffs were referenced in the Presidential briefings or that Plaintiffs were being investigated by the FBI, none of which is supported by the cited documents. *Supra*, ¶ 42 (Plaintiffs were not the subject of the briefings).

56. Undisputed. Plaintiffs further state, however, that Buzzfeed also considered the effect publishing the Dossier would have on its website traffic, the benefits to Buzzfeed being first to publish the Dossier, and that they didn't want to get "scooped." Buzzfeed Admissions, Opp. Ex. 74, Request Nos. 13, 15; Smith Depo., Opp. Ex. 76, 84:9-85:15, 131:4-132:7.

57. Plaintiffs DENY the statements of this paragraph. Plaintiffs DENY that the legal standard implied by this paragraph applies to them because they are not public figures (see separate briefing on this issue). Defendants knew, had reason to know and had a high degree of awareness that allegations in the Dossier (including as about Plaintiffs) were false:

(a) In the Article containing the Dossier, they explicitly acknowledged that they knew for certain that portions of the Dossier contained false statements. *See* Article, Opp. Ex. 75 ("The allegations are unverified, and the report contains errors." "A dossier making explosive – but unverified – allegations...." "The dossier ... includes specific, unverified, and potentially unverifiable allegations...." "BuzzFeed News reporters in the US and Europe have been investigating various alleged facts in the dossier but have not verified or falsified them." "It is

8

not just unconfirmed: It includes some clear errors." "However, the president-elect's attorney, Michael Cohen, told *Mic* that the allegations were absolutely false."). *See, also*, Opp. Ex. 85 ("[T]here is serious reason to doubt the allegations."). In an interview on MSNBC from January 11, 2017, Smith again repeatedly called into doubt the veracity of the Dossier. *See* Opp. Ex. 90 (Buzzfeed's article "stressed that there were – that – that there were solid reasons to ... distrust this that noted [two] specific [errors]." (5:12-19). "There are false claims." (6:7). "[I]t is appropriate ... to tell your audience and to respect the fact that they can say ... this looks like nonsense." (8:21-9:1). "[S]o you're allowed to take false claims and summarize them, but not show – I mean, I guess our impulse ... is to show the audience the underlying document...." (10:20-24). "I think that we are now in a media environment where you have to engage in false statements." (13:24-14:1).). In an interview with CNN, Smith again admitted that there were false statements in the Dossier. Opp Ex. 84, p. 7.

  (b) Defendants did not know at the time that they published the Dossier (and still do not know even today), where Mr. Steele obtained the false and defamatory statements about Plaintiffs. The Dossier, as Defendants received it, had the source of Mr. Steele's information about Plaintiffs redacted. Deposition of Ken Bensinger ["Bensinger Depo."], Opp. Ex. 71, 128:19-25. ████████████████████████████████████████████ ████████████████████████████████████ When Defendants obtained the dossier, they knew that the Dossier was unverified. Opp. Ex. 71 [Bensinger Depo.], 95:17-96:2.

  (c) Defendants admit that they sent a reporter to Prague to find evidence of Michael Cohen ever being there and they also admit that at the time of publication they hadn't been able to verify anything. Ex. 4 [Schoofs Decl.], ¶ 10 ("[O]ne of our London-based investigative reporters, Jane Bradley, went to Prague from London to see if any hotels there would tell us whether Mr. Cohen had stayed there (the hotels she visited would and/or did not tell us, or told us that Michael Cohen did not stay there)."). This suggests that, despite all of their research, they came up with no evidence that Cohen ever went to Prague. And, if he did not go to Prague, he could not have had a meeting there about or with the alleged hackers.

  (d) Defendants admittedly made no effort to investigate any of the facts about Plaintiffs despite knowing that there was incorrect information in the Dossier. *See*, *supra*, ¶ 52.

9

(e)     Defendants made no attempt to contact Plaintiffs prior to publication. Buzzfeed Responses to Requests for Admission, Opp. Ex. 74, Request Nos. 1-3. This was contrary to Defendants' "no surprises" practice of writing a letter to the subject of an investigation. Deposition of Benjamin Smith, Opp. Ex. 76, 77:4-25.

(f)     Defendants also had obvious reason to doubt information in the Dossier. Once of the "clear errors" that Defendants admit they knew was that "The report says the settlement of Barvikha, outside Moscow, is 'reserved for the residences of the top leadership and their close associates.' It is not reserved for anyone, and it is also populated by the very wealthy." *See* Article. However, the Dossier as published by Defendants does not include any allegations about Barvikha. *See*, *generally*, Dossier, Opp. Ex. 77. The statements about Barvikha were redacted by Defendants from pages 30 and 31 of the Dossier, constituting a memorandum dated October 18, 2016, and which seeks to create a connection between Michael Cohen and Russia. *See* October 18 Memorandum, Opp. Ex. 78; Ben Smith's Responses to Interrogatories ["Smith Ints."], Op Exs. 79 and 80, Response Nos. 6, 7. Despite in the Article acknowledging that the redacted statements were false, Defendants claim they redacted those provisions "because there were no specific allegations made about the individual." *Id.*, Response No. 7.

58.    Plaintiffs DENY that Defendants had reason to believe that allegations against Plaintiffs were credible and further state that almost none of the purported "reasons" have any relation to Plaintiffs whatsoever. The allegations were NOT credible and Plaintiffs further state that there was reason to believe that there were false statements in the Dossier, and specifically that the statements about Plaintiffs were false. *See*, *e.g.*, *supra* at ¶ 9 (statements about Plaintiffs are false) and *infra* at ¶ 57 (detailing other false statements in Dossier, including knowledge by Defendants that one allegation purported to be related to Plaintiffs was false). Moreover, none of the "reasons" listed by Defendants have any direct relevance whatsoever to Plaintiffs and, in any case, Defendants made no attempts to investigate Plaintiffs. *Supra* at ¶ 52. The only "reason" that even remotely relates to Plaintiffs is set-forth in sub-paragraph (c), which states that "the allegations against Plaintiffs related to Michael Cohen's alleged actions in the Dossier." However, it is exactly the facts about Michael Cohen's alleged connections with Russia that Defendants determined were "clear errors" that Defendants redacted from the Dossier when they published it. *See*, *supra*, ¶ 57(f). Furthermore, Defendants were unable to substantiate, despite significant efforts, the allegedly related allegation that Cohen went to Prague. *Id.*, ¶ 57(c).

10

59. Plaintiffs do not dispute that Smith knew that the allegations in the Dossier were unproven and that readers may have cause to doubt the veracity.

60. Undisputed. Plaintiffs further state that Defendants redacted certain substantial and important allegations about Michael Cohen's connections to Russia through his father-in-law that they determined to be false, though Mr. Smith alleges that they were redacted for other reasons, and falsely implies that the allegations were unimportant. *See supra* at ¶ 57(f).

61. Plaintiffs DENY the statements of this paragraph. The CNN article was incorrect when it claimed that on December 9 Senator McCain has provided the FBI with "a full copy of the memos – dated from June through December, 2016." Ex. 2 [Smith Decl.], Exhibit 1 thereto. This could not be true because the December Memo was drafted on December 13. Defendants apparently knew that CNN's reporting was wrong because when Defendants made reference to this fact in their Article they put "full copy" in quotes. *See* Buzzfeed's Article, Opp. Ex. 75 ("And CNN reported Tuesday that Arizona Republican John McCain gave a 'full copy' of the memos to Comey on Dec. 9...."). Plaintiffs also DENY to the extent that the statements in this paragraph imply that the link to the CNN article was followed by any substantial number of readers of the Article. The Article received 5,952,131 unique page views between its original posting and 11:59 pm on February 3, 2017 (when Defendants finally redacted Plaintiffs names from the Dossier). "Buzzfeed Ints.", Response No. 19, Opp. Ex. 73. From the posting of the Article until February 10, 2017, that link was only clicked on 20,671 times, constituting less than 0.35% of the unique viewers of the Article. *See* Entry Pages Report, Opp. Ex. 81.

62. Undisputed. However, Plaintiffs state that the additional statement from Cohen came from an article published by *Mic*, which was linked in the Buzzfeed Article attached as Opp. Ex. 82. The *Mic* article includes a photograph of Cohen's passport, providing further reason to doubt the veracity of the claims in the Dossier.

63. Plaintiffs DENY that the publication "was a clear matter of public and national interest" and that "it had been briefed to the President and President-elect." *Supra*, ¶¶ 11, 42.

64. Plaintiffs DENY to the extent the statements in this paragraph imply that any of the allegations relating to Plaintiffs are "the subject of extensive Congressional testimony, endless political debate, several published books, and remain[] central to the controversy over Russia and President Trump" as unsupported by the evidence.

11

Dated: October 5, 2018

**Respectfully Submitted:**

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin D. Gurvits (*pro hac vice*)
Matthew Shayefar (Fla. Bar No. 0126465)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb (Fla. Bar No. 031018)
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone: 954-527-4111
Facsimile: 954-900-5507
bcobb@cobbeddy.com

*Attorneys for Plaintiffs*