UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-60426-UU

ALEKSEJ GUBAREV, *et al.*,

      Plaintiffs,

v.

BUZZFEED, INC., *et al.*,

      Defendants.

_____/

### ORDER

THIS CAUSE comes before the Court upon intervenor The New York Times Company's ("The Times") Motion for Access to Judicial Records (D.E. 254).[1]

For the reasons discussed below, the motion is granted as prescribed below.

## I.    INTRODUCTION

The salient facts of this case are set forth in the Court's Order on the cross-motions for partial summary judgment on public figure status (D.E. 385) and the Court's Order on Defendants' Motion for Summary Judgment (D.E. 388), both of which are incorporated by reference herein.

"For obvious reasons, courts have uniformly approved the practice of provisionally sealing documents pending assessment of justification for a request to seal." *In re Reporters Comm'ee for Freedom of the Press*, 773 F.3d 1325, 1339 (D.C. Cir. 1985) (Scalia, J.) (collecting cases). Consistent with this practice, the Court permitted the parties to file documents provisionally under seal, pending a later document-by-document determination.

---

[1] On December 18, 2018, the Court granted the Motion in part, granting The Times's request to intervene, and deferred ruling on unsealing. D.E. 392. Further, on January 30, 2019, the Court ordered the unsealing of certain documents or portions of documents by consent of the parties and those non-parties who had designated material as confidential. D.E. 421. This Order addresses all remaining issues on unsealing.

The Court has issued final judgment in this case, has followed the procedures required for potential unsealing (*see, e.g.*, *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253–54 (4th Cir. 1988) (district court must give adequate notice of potential sealing/unsealing and provide interested persons an opportunity to object before the court rules[2])), and is prepared to state its findings below.

## II.    LEGAL STANDARD ON SEALING JUDICIAL RECORDS

### A.  As to Civil Pretrial Matters, Generally

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978). "The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). "This preference for public access is rooted in the public's first amendment right to know about the administration of justice." *Video Software Dealers Assoc'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994). "Judges deliberate in private but issue public decisions after public arguments based on public records. . . . Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013) (ellipses in original) (quoting *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006)).

The right of access is not absolute. For example, the right of access does not apply to discovery. *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007). Once the discovery is used "in connection with pretrial motions that require judicial resolution of the merits," however,

---

[2] *See* D.E. 384; D.E. 398; D.E. 407; D.E. 410; D.E. 411; D.E. 415; D.E. 416; D.E. 417.

the filed material becomes "subject to the common-law right." *Id.* (quoting *Chicago Tribune*, 263 F.3d at 1312)); *see also Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (even though protective order provided some confidentiality to discovery, once the materials become part of a motion, they "lose their status of being 'raw fruits of discovery'"). "Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Brown v. Advantage Eng'g*, 960 F.2d 1013, 1016 (11th Cir. 1992). It makes no difference whether the pretrial motions are dispositive: "A motion that is 'presented to the court to invoke its powers or affect its decisions,' whether or not characterized as dispositive, is subject to the public right of access." *Romero*, 480 F.3d at 1246 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

The right of access creates a rebuttable presumption in favor of openness of court records. *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1352 (S.D. Fla. 2000).[3] "The common law right of access may be overcome by a showing of good cause, which requires balancing the asserted right of access against the opponent's interest in keeping the information confidential. Whether good cause exists is decided by the nature and character of the information in question." *Romero*, 480 F.3d at 1246 (internal quotations and alterations omitted). Courts conducting a "good cause" balancing test consider, among other factors:

(1) whether allowing access would impair court functions or harm legitimate privacy interests,

(2) the degree of and likelihood of injury if made public,

---

[3] This presumption is further embodied in the Local Rules of this District. Local Rule 5.4(a) reflects a "General Policy" that "Unless otherwise provided by law, Court rule, or Court order, proceedings in the United States District Court are public and Court filings are matters of public record." As such, any motion to seal materials "must set forth the factual and legal basis for departing from the policy that Court filings be public." S.D. Fla. L.R. 5.4(b)(3). The motion also must "describe the proposed sealed filing with as much particularity as possible without revealing the confidential information[] and specify the proposed duration of the requested sealing." *Id.*

3

(3) the reliability of the information,

(4) whether there will be an opportunity to respond to the information,

(5) whether the information concerns public officials or public concerns,

(6) the availability of a less onerous alternative to sealing the documents,

(7) whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage,

(8) whether access is likely to promote public understanding of historically significant events, and

(9) whether the press has already been permitted substantial access to the contents of the records.

*Id.*; *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–603 & n.11 (1978)).

A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information. *Romero*, 480 F.3d at 1246 (citing *Nixon*, 435 U.S. at 598; Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 464–74 (1991)). For example, when "sensitive information pertains to non-parties who are not public figures, the balancing of interests in favor of protecting the privacy of the non-parties and against uninhibited access to the records is strengthened." *Rossbach*, 128 F. Supp. 2d at 1352. Nevertheless, in cases involving public concerns like "the citizen's desire to keep a watchful eye on . . . the operation of government," documents—even sensitive ones—may speak to the "heart of the interest protected by the right of access," making public disclosure paramount. *See Romero*, 480 F.3d at 1246 (quoting *Nixon*, 435 U.S. at 598). Additionally, if information is or already has been out in the public domain, sealing is unwarranted. *See, e.g.*, *Perez-Guerrero*, 717 F.3d at 1235–36 (declining to conceal petitioner's identity in court records

4

because such concealment "would do little to protect his safety" as "his name, photograph, and identity as an informant have been widely reported in the media").

### B.  Allegedly Libelous or Scandalous Material, Specifically

A district court is afforded discretion in weighing the relative interests, but that discretion "is guided by the presumption of public access to judicial documents." *Id.* at 1235; *see also Romero*, 480 F.3d at 1242 (refusal to unseal reviewed for abuse of discretion); *Chicago Tribune*, 263 F.3d at 1309 (denial of sealing order reviewed for abuse of discretion). Plaintiffs emphasize the "public scandal" or "libel" standard in pressing for continued sealing. As a result, the Court finds it appropriate to expound upon when the risk of "public scandal" or "libel" may justify sealing—and when it does not.

It is true that "court files that instigate public scandal or libel may be sealed." *See Romero*, 480 F.3d at 1247; *see also Nixon*, 435 U.S. at 598 (noting that "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption"). But the mere denial of allegedly libelous statements is not, without more, a legitimate basis to seal evidence. *See Romero*, 480 F.3d at 1247.

The seminal case supporting the sealing of allegedly libelous or scandalous material is *In re Caswell's Request*, a one paragraph opinion from 1893 where the Supreme Court of Rhode Island precluded a newspaper reporter from examining a divorce petition. 29 A. 259, 259. The court held:

> To publish broadcast the painful, and sometimes disgusting, details of a divorce case, not only fails to serve any useful purpose in the community, but, on the other hand, directly tends to the demoralization and corruption thereof, by catering to a morbid craving for that which is sensational and impure."

*Id*. Over the years, *Caswell* has been cited repeatedly for the broad proposition that "[judicial records] should not be used to gratify private spite or promote public scandal," *id.*—not for its

narrow application. But *Caswell* and its progeny are unpersuasive here primarily because the records sealed in those cases involved privacy interests of individuals either (1) not involved in the underlying lawsuits or (2) involved in intimately interpersonal disputes (such as the divorce in *Caswell*).[4] Neither of these rationales apply to the instant case. Instead, the Court finds persuasive the case of *Jackson v. Deen*, cited by Plaintiffs, where the court in an employment discrimination case unsealed all records "that directly <u>and arguably</u> relate to this lawsuit" while sealing only those "matters entirely unrelated to this case (or any other litigation)." 2013 WL 1911445, at *3–4 (S.D. Ga. 2013) (emphasis added); *see also id.* at *5–8. So long as material is arguably relevant, then, the presumption of openness weighs heavily in favor of unsealing.

## III.   DISCUSSION

The Court finds that continued sealing of the court filings in this case would contravene the presumption of the common law right of access. The Court further finds that, with the limited exception explained below, the parties and objecting non-parties have failed to show good cause to rebut the presumption.

### A.  The Presumption of Access Has Attached to All the Sealed Filings

As an initial matter, the Court notes that all the sealed filings are (1) motions, (2) documents filed in relation to motions, or (3) court orders. The motions are subject to the public right of access because they were presented to the court to invoke its powers or affect its decisions. *Romero*, 480 F.3d at 1246.

So too with the documents filed in relation to the motions; they also were presented to the court to inform the court's decisions. *See, e.g.*, *id.* at 1245 ("Material filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access.");

---

[4] Or, as in the case of *Nixon*, the records would become publicly available through alternative means (there, through operation of the Presidential Recording Act). *See* 435 U.S. at 597–606.

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) ("We hold that documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment."); *see also Amodeo*, 71 F.3d at 1049–50 (the weight to be afforded documents filed with the court should be "largely derived from the role those documents played in determining litigants' substantive rights—conduct at the heart of Article III—and from the need for public monitoring of that conduct").

Finally, "a presumption of public access attaches to a court's decisions. '[A] court's decisions are adjudications—direct exercises of judicial power the reasoning and substantive effect of which the public has an important interest in scrutinizing.'" *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 470 (S.D.N.Y. 2017) (alterations in original) (quoting *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998)). Accordingly, the presumption of public access has attached to all the sealed filings in this case.

**B. With One Limited Exception, the Presumption of Access Has Not Been Rebutted**

1. <u>The Public Should Have Full Access to the Parties' Legal Briefings</u>

The parties filed their papers relating to their motions for summary judgment, supporting memoranda of law, *Daubert* motions, and motions in limine under seal. These matters were submitted to the Court for adjudication, and the Court finds that unsealing of these papers is critical for the public to be able to understand the reasoning and substantive effect of the Court's orders herein.[5]

---

[5] Though the Court did not rule on the *Daubert* motions nor motions in limine, as they were rendered moot by the entry of final summary judgment, the public nevertheless should know what issues the parties expected to address (or challenge) if the case had gone to trial.

For Plaintiffs' part,[6] their claims of good cause can be summarized as follows: (1) the references to pornography and webmaster conferences is irrelevant and unduly prejudicial, and do not relate to public officials or public concerns; (2) the references to internal private business communications, finances, and/or personal relationships are irrelevant to public parties or concerns; (3) references various non-parties' testimony should be redacted to protect those non-parties or Defendants; and (4) references to alleged unlawful acts of third parties and "Methbot" are hearsay and unreliable.

None of these grounds is persuasive. First, the Dossier at the heart of this case states, in pertinent part, that a source:

> reported that over the period March-September 2016 a company called XBT/Webzilla and its affiliates had been using botnets and porn traffic to transmit viruses, plant bugs, steal data, and conduct "altering operations" against the Democratic Party leadership. Entities linked to one Alexei GUBAROV [sic] were involved and he and another hacking expert, both recruited under duress by the FSB, Seva KAPSUGOVICH were significant players in this operation.

Plaintiffs brought this defamation action to challenge Defendants' report of the Dossier without independently verifying the truth of the Dossier's contents. Thus, the allegations and evidence about pornography, "bots" and non-party "wrongdoing" directly flow from the Dossier and speak to key issues in the case. Further, Plaintiffs' alleged connections to pornography and webmaster conferences (including sponsors and attendees of the conferences) were used by Defendants—albeit unsuccessfully—in support of their public figure analysis. Even though Plaintiffs deny the legal significance of these allegations (and appear to be embarrassed by them), the allegations and evidence also help explain the Court's Order on the cross-motions for summary judgment on public figure status (D.E. 385). The Court is guided by *Romero* and the Eleventh Circuit's caution

---

[6] Defendants generally consent to all unsealing and defer to the Court's balancing, pressing for continued sealing only to the extent the Court deems it necessary to protect non-party interests. *See generally* D.E. 285; D.E. 378.

that a party's "denial" of allegations "is not a legitimate basis for sealing the evidence." 480 F.3d at 1247; *see also Deen*, 2013 WL 1911445, at *2 ("personal embarrassment and general, reputation-damaging information typically do not justify sealing" (collecting cases)).

Moreover, as Defendants correctly point out, many of the sealed briefings are Plaintiffs' own filings. Plaintiffs framed the issues and brought to the Court's attention subjects they now object to as irrelevant or inflammatory. It is only natural that Defendants referenced these subjects in their opposition papers and their primary filings—Plaintiffs themselves placed the subjects at issue. The relevance of these subjects cannot be disputed in good faith.

As to the claim that publication would taint the potential jury pool, this claim is moot because this Court has already entered final judgment. True, the final judgment is pending appeal. But even if the judgment were reversed and the case were to be tried, the Court would follow the Eleventh Circuit's rationale in *Romero*: (1) pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically to an unfair trial; and (2) because the media has already reported on the sealed information, sealing could not remedy any of the highly unlikely harms that could be caused by pretrial publicity. *See* 480 F.3d at 1247; *see also Deen*, 2013 WL 1911445, at *2 ("Even a casual internet search immediately reveals that the jury-taint horse has already left the barn."). Additionally, Plaintiffs have recourse to correct any alleged misinformation. *See Romero*, 480 F.3d at 1247 ("If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." (quoting *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring))).

Next, as to the briefings' references to non-parties' testimony, the Court has been advised that only Messrs. Kramer and Steele designated their testimony as confidential and objected to the

unsealing of this testimony. Fusion GPS failed to timely file a position statement on unsealing, despite receiving notice of its right to do so. Any claim by Fusion GPS of a continued confidentiality interest, then, is waived. The objections of Messrs. Kramer and Steele are discussed in more detail below. For now, it suffices to say that any alleged harm to non-parties is conclusory and speculative.

     Finally, the parties' exhibit lists and pretrial stipulations should be subject to public inspection. The trial would have been open to the public anyway. There is no good cause to conceal these critical parts of the pretrial process.

     2.   <u>The Public Should Have Full Access to the Materials Filed in Support of the Parties' Legal Briefings, Particularly Where Those Materials Were Claimed to Be Confidential by Only a Party or Parties</u>

Applying the good cause balancing test for the materials filed along with the parties' briefings, the balance tips in favor of disclosure. As to the Times' motive for seeking access to the sealed documents, news reporting is a "legitimate purpose" for granting access to sealed court records, as it tends to "promote the public's understanding of the proceedings." *United States v. Abegg*, 1993 WL 246145, at *2 (S.D. Fla. 1993). And as explained above, refusing public access would impair public understanding of judicial decision-making. Granting public access is likely to promote public understanding of historically significant events—not only this lawsuit, but also the evidence of the events underlying the Dossier (even if such evidence is disputed or only arguably relevant).

On the other side of the scale, the degree and likelihood of potential injury is negligible, particularly where the parties have had, and continue to have, ample opportunity to respond to the information in the court of public opinion. Further, the media has already reported on much of the underlying information. Indeed, many of the sealed filings are internet publications (even if not currently publicly accessible)—for example, articles by CNN, Gizmodo, BBC News, Slate,

Newsweek, Forbes, and the Washington Post; archived AWM Open webpages; and a "year in review" publication by PornHub. Others are publicly-available government reports or press releases; it makes no sense for this Court to seal something that other government actors have made public.

Additionally, the "private information" cited by Plaintiffs is not, in the Court's view, so sensitive as to warrant shielding from the public's view.[7] Exposure comes with the territory of seeking court intervention: if a plaintiff claims harm to his personal and professional reputation (*see, e.g.*, D.E. 1-3 ¶¶ 5, 46–51), his business and personal relationships may be publicly scrutinized. If a corporate plaintiff seeks damages for business or reputational harm (*see, e.g.*, *id.*), the corporation's finances may be publicly scrutinized. Again, Plaintiffs mostly rely on claims of relevance and scandal to support continued sealing. As explained in the prior section, these claims lack merit and do not overcome the weighty presumption of public access. If Plaintiffs wanted to keep these matters private, they should have opted to resolve their dispute out of court. *See Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (Easterbrook, J.) ("When [litigants] call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.").

     3.   The Court Overrules the Objections of Non-Parties Christopher Steele and David Kramer, But Sustains in Part the Objections of Non-Party Bitly, Inc.

     a.   Christopher Steele's Objections Are Overruled

Non-party Christopher Steele objects to unsealing his deposition testimony for two reasons. D.E. 407. First, he argues that unsealing his testimony in this case would allow Plaintiffs to avoid certain procedural and substantive discovery limitations in their parallel lawsuit against Mr. Steele in Britain. He argues that British law forbids Plaintiffs from taking and using Mr. Steele's

---

[7] Plaintiffs' conclusory claims of "trade secret," *see* D.E. 378, are not supported by the record evidence.

testimony in their British lawsuit. Unsealing the deposition here, he argues, would amount to an "end-run" around this limitation. Second, Mr. Steele argues that unsealing his deposition would invite unwanted attention and potential danger.

Mr. Steele's first argument is without merit and does not overcome the presumption of public access. *See Perez-Guerrero*, 717 F.3d at 1235. In denying Mr. Steele's motion to intervene to oppose the issuance of letters rogatory, the Court explained that it trusted the British courts to adequately protect Mr. Steele's rights under British law. D.E. 60, p. 2. Mr. Steele has not explained how unsealing his deposition would allow Plaintiffs to then use his testimony against him in their British lawsuit. Moreover, Plaintiffs were able to take Mr. Steele's deposition because a British court authorized it. D.E. 156-1. And in so doing, that court considered and rejected his argument that the deposition would prejudice his defense in Plaintiff's British lawsuit. *See id*. Accordingly, Mr. Steele's first argument against unsealing fails to overcome the presumption of public access.

Mr. Steele's second argument is similarly unavailing. He conclusorily states that unsealing his deposition testimony would subject him to unwanted attention and potential danger. He explains that in the wake of the publication of the Dossier, he received death threats and went into hiding. He fails, however, to explain how unsealing his deposition testimony here would expose him to further danger. Confronted with a similar situation, the Eleventh Circuit in *Perez-Guerrero* refused to conceal a plaintiff's identity. 717 F.3d. 1224. There, the plaintiff was an informant for Mexican and American law enforcement, and the Board of Immigration Appeals had found that he faced danger in Mexico. *Id*. at 1236. But the Eleventh Circuit refused to conceal his identity because "his name, photograph, and identity as an informant have been widely reported in the media." *Id*. The same goes for Mr. Steele. Since the publication of the Dossier, Mr. Steele's name, photograph, and identity as its author have been widely and constantly reported in the media.

12

Accordingly, his second argument fails to overcome the presumption in favor of public access. *See id*. Mr. Steele's objections to unsealing, therefore, are overruled.

b.  <u>David Kramer's Objections Are Overruled</u>

Non-party David Kramer objects to unsealing his deposition testimony and declaration because it would expose him to danger. D.E. 411. One year ago, Magistrate Judge O'Sullivan ruled that Mr. Kramer's deposition testimony should remain sealed because Mr. Kramer faced potential danger if he was exposed as "the cause-in-fact of the publication of the Dossier." D.E. 144, p. 7.[8] Mr. Kramer advances no new arguments in support of unsealing but relies exclusively on Magistrate Judge' O'Sullivan's order.

Circumstances have changed since Judge O'Sullivan entered his order. When Judge O'Sullivan sealed Mr. Kramer's testimony, Mr. Kramer's role in disseminating the Dossier was not known. *See id*. Now, however, his role as the cause-in-fact of the Dossier's publication is known. The Court discussed Mr. Kramer's role in detail in its order on the motions for summary judgment. D.E. 389, p. 5–7. But even before then, the media had reported it. *See, e.g.*, John Haltiwanger, *John McCain describes how he received the Steele dossier that contains the most salacious allegations about Trump and Russia*, Business Insider (May 22, 2018) https://www.businessinsider.com/how-john-mccain-received-steele-dossier-trump-russia-2018-5. And it has continued to do so since. *See, e.g.*, Gregg Re, *McCain associate shared unverified Steele dossier with Buzzfeed, court filing says*, Fox News (December 20, 2018) https://www.foxnews.com/politics/mccain-associate-gave-unverified-steele-dossier-to-buzzfeed-court-filing-says. Accordingly, for the same reasons the Eleventh Circuit refused to conceal the

---

[8] This Order was entered under seal. Just as there is no longer any reason to keep the Kramer information under seal, there is no longer any reason to keep the Order under seal. The Order, D.E. 144, accordingly will be unsealed.

plaintiff's identity in *Perez-Guerrero*, the Court overrules Mr. Kramer's objection. *See* 717 F.3d. at 1236.

c.   Bitly, Inc.'s Objections are Sustained as to D.E. 275-19

Non-party Bitly, Inc. objects to unsealing the records it produced because the records reflect Bitly's internal processes and techniques for identifying abuses of its link shortening platform. D.E. 416. Bitly's records were used by Defendants' expert Anthony Ferrante to conclude that Plaintiffs' infrastructure was likely used by Russian cyber-espionage groups to attack Democratic party leadership. *See* D.E. 275. Specifically, as Defendants explained, Mr. Ferrante reviewed the Bitly data and "determined that the same user account that successfully hacked [John] Podesta created four nearly identical malicious links that were encoded to appear onscreen as a Google security alert prompting Mr. Podesta to change his Gmail password—and that one of those four phishing links was created using an IP address registered to XBT subsidiary Root S.A." *See id.*

This Court is unsealing the Ferrante report, but not the underlying Bitly records. The Ferrante report itself will sufficiently explain Bitly's investigation of the spear phishing attack. And, as Bitly admits, media coverage already has discussed how hackers used Bitly services in connection with the attack. D.E. 416, p. 4. But unsealing the Bitly records would not add anything that is not generally known to the public; instead, it would reveal "additional technical detail of how Bitly can detect potential abuses of its services." *Id.* The Court finds that the need to protect Bitly's technical records outweighs the public's interest in reviewing the records.[9]

---

[9] Bitly also asks this Court to continue sealing D.E. 275-21, the declaration of its CEO authenticating the Bitly data. The declaration reveals no confidential information. The Court finds no good cause to seal the declaration.

14

4.   <u>The Court Will Unseal All Filings Pertaining to Unsealing</u>

To help the public understand this decision, the Court will unseal all documents regarding sealing, including the Court's sealing orders, the inventory of previously-sealed documents (D.E. 378) and the non-parties' position statements. The Court permitted these documents to be filed under seal to maintain the status quo. The public has a right to access the parties' and non-parties' rationales for sealing to see what the Court found persuasive (and what it did not).

## IV.    CONCLUSION

For these reasons, it is hereby ORDERED AND ADJUDGED that the Times' Motion, D.E. 254, is GRANTED. The Clerk of Court is hereby DIRECTED to UNSEAL all filings in this case **EXCEPT FOR** D.E. 212-15, D.E. 212-110, D.E. 214-13, and D.E. 275-19. To give the parties the opportunity to seek meaningful appellate review, the Clerk SHALL undertake the unsealing **not earlier than March 14, 2019.** After that date, Defendants SHALL file versions of D.E. 212-15, D.E. 212-110, and D.E. 214-13 that redact only the personal contact information (addresses and telephone numbers) contained therein.

DONE AND ORDERED in Chambers, Miami, Florida, this _28th_ day of February, 2019.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: counsel of record via cm/ecf