# EXHIBIT A

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### APPEAL NO. 18-15295

**ALEKSEJ GUBAREV,**
**XBT HOLDING S.A.,**
**And WEBZILLA, INC.,**

        **Plaintiffs-Appellants,**

    v.

**BUZZFEED, INC.,**
**And**
**BEN SMITH,**

        **Defendants-Appellees.**

_____/

**On appeal from the United States District Court Southern District of Florida, Case No. 17-cv-60426-UU**

### BRIEF FOR AMICI CURIAE
### MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN
### IN SUPPORT OF APPELLANTS

Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.: (212) 732-3200
Fax: (212) 732-3232
lewis@clm.com
walsh@clm.com

Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.: (305) 350-5116
Fax: (305) 982-0079
aschwartz@homerbonner.com

*Attorneys for Proposed Amici Mikhail Fridman, Petr Aven, and German Khan*

## CERTIFICATE OF INTERESTED PARTIES AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, *et seq*., Proposed

Amici Mikhail Fridman, Petr Aven, and German Khan file this Certificate of

Interested Persons and Corporate Disclosure Statement:

Aven, Petr

Black, Roy

Bolger, Katherine M.

BuzzFeed, Inc.

Carter Ledyard & Milburn LLP

Ciampa Fray-Witzer, LLP

Cobb, Brady

Comcast Corporation (CMCSA)

Davis, Wright, Tremaine, LLP

Fulop, Dylan

Fray-Witzer, Evan

Fridman, Mikhail

Gubarev, Aleksej

Gubarev, Valentin

Homer Bonner Jacobs, P.A.

Khan, German

i

Kelly, Chelsea T.

Lazier, Adam

Lewis, Alan S.

Lopez, Jared

NBC Universal Media LLC

Schary, Alison

Schwartz, Adam

Shayefar, Matthew

Seigel, Nathan

Smith, Ben

The Honorable Ursula Ungaro

Walsh, John J.

Webzilla, Inc.

White, Madelyn K.

XBT Holding, S.A.

## STATEMENT REGARDING ORAL ARGUMENT

Proposed Amici Mikhail Fridman, Petr Aven, and German Khan request oral argument.  Based upon the record and the questions presented, oral argument, and Proposed Amici's participation therein, would aid this Court in deciding the case.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE
DISCLOSURE STATEMENT .................................................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................. iii

TABLE OF CONTENTS ........................................................................ iv

TABLE OF AUTHORITIES ................................................................... vi

INTEREST OF AMICI CURIAE ............................................................ 1

QUESTIONS PRESENTED ................................................................... 4

SUMMARY OF ARGUMENT ............................................................... 5

ARGUMENT
NEW YORK'S FAIR REPORT PRIVILEGE DOES NOT  IMMUNIZE
THE PUBLICATION  OF THE DEFAMATORY STATEMENTS AT
ISSUE ................................................................................................. 7

   A.   To Invoke the Section 74 Privilege, Defendants Were Required to
       Have *Reported* that CIR 166 Was Part of an Official Proceeding ................ 7

        1.   The District Court's Summary Judgment Decision Abandoned
            the Core Legal Principle that Limits Section 74 to Publications
            that *Report* a Connection Between Official Action and the
            Defamatory Statement for Which Immunity Is Sought ........................ 12

   B.   Section 74 May Not Be Invoked Because Defendants Did NOT
       Report that any of the Defamatory Statements in CIR 166 Were Used
       in or Part of any Official Activity ................................................................ 19

        1.   The Article Does Not Report that the Entire Steele Dossier Was
            the Subject of Classified Briefings, an FBI Investigation, or any
            Other Official Proceeding ................................................................... 20

        2.   Contrary to the District Court's Finding, the Article Does Not
            Report that "Parts of Report 166 Were Subject to Official
            Action" ................................................................................................ 21

C.   Section 74 Does Not Permit "Extensions" of the Privilege from Parts of a Report Covered by Section 74 to Parts that Are Not .............................. 23

CONCLUSION ........................................................................................... 24

CERTIFICATE OF COMPLIANCE ...................................................... 26

CERTIFICATE OF SERVICE................................................................. 27

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abakporo v. Sahara Reporters,*
    2011 U.S. Dist. LEXIS 109056 (E.D.N.Y. Sept. 26, 2011) .............................. 11

*Alf v. Buffalo News, Inc.,*
    995 N.E.2d 168 (2013)........................................................................ 15

*Cholowsky v. Civiletti,*
    887 N.Y.S.2d 592, 69 A.D.3d 110 (N.Y. App. Div. 2009) ................................. 9

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.,*
    868 F. Supp. 501 (E.D.N.Y. 1994) ....................................................... 9

*Fine v. ESPN, Inc.,*
    11 F. Supp. 3d 209 (N.D.N.Y. 2014)....................................................... 8, 13, 15

*Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York,*
    475 N.Y.S.2d 383 (N.Y. App. Div. 1984) ......................................................... 17

*Gubarev v. BuzzFeed, Inc.,*
    2018 U.S. Dist. LEXIS 97246 (S.D. Fla. June 5, 2018)
    ("*Gubarev I*") ...................................................................... 6, 11, 12, 23

*Gubarev v. BuzzFeed, Inc.,*
    340 F. Supp. 3d 1304 (S.D. Fla. 2018)
    ("*Gubarev II*")................................................... 5-7, 12, 13, 15-20, 22-24

*Hogan v. Herald,*
    446 N.Y.S.2d 836 (N.Y. App. Div. 1982), *aff'd*, 444 N.E.2d 1002
    (N.Y. 1982) ...................................................................................... 10

*Holy Spirit Ass'n for the Unification of World Christianity v. New York*
    *Times Co.,*
    399 N.E.2d 1185 (1979)............................................................... 13, 14

*Ramos v. El Diario Publishing Company, Inc.,*
    229 N.Y.S.2d 652 (N.Y. App. Div. 1962) ............................................... 9

*Wenz v. Becker*,
  948 F. Supp. 319 (S.D.N.Y. 1996)........................................................................... 9

**STATUTES**

N.Y. Civ. Rights Law § 74.................................................................................... 7, 13

## INTEREST OF AMICI CURIAE

Proposed Amici Mikhail Fridman, Petr Aven, and German Khan (collectively, the "Amici") respectfully submit this brief in support of the appeal by Plaintiffs.

Amici, like Plaintiffs, sued Defendants for publishing defamatory statements attached to a January 10, 2017 Article on BuzzFeed's website titled "These Reports Allege Trump Has Deep Ties to Russia" (the "Article").[1]  Central to both cases is whether a New York statute that conditionally affords immunity to the publisher of a defamatory statement—*if* published to *report on* official government action—shields Defendants from liability. [2]

In both cases, the statements alleged as defamatory are in memoranda authored by Christopher Steele.  A memorandum dated September 14, 2016, known as CIR[3] 112, contains the statements defamatory *of Amici*.  A different memorandum dated December 13, 2016, known as CIR 166, contains the statements defamatory *of Plaintiffs*.  CIR 112 and 166 are among *seventeen*

---

[1] Amici's lawsuit is captioned *Fridman, et al. v. BuzzFeed, Inc., et ano.*, Index No. 154895/2017 (Sup. Ct. N.Y. Co.).

[2] On April 9, 2019, the First Department of the Appellate Division, Supreme Court will hear oral argument in an appeal by Amici addressing the correctness of Defendants' invocation of the fair report privilege in the New York lawsuit (No. 2018-CV-0919).

[3] CIR is shorthand for Company Intelligence Report—Steele's way of referring to the memoranda.

memoranda created by Steele over a six-month period in 2016 as part of the same engagement[4] (the "Steele Memoranda").  Eventually provided to the media, the Steele Memoranda acquired a moniker, the "Steele Dossier," as if they were a single document—which they are not.  Defendants embedded all seventeen memoranda in the Article.[5]  D.E. 214-4, Exs. 2, 3.

In both lawsuits, Defendants claim the protection of New York's fair report privilege, arguing that they have a privilege that extends to their publication of the *entire* Steele Dossier.  Defendants ground that contention in their *characterization* of the Article as *reporting* the entire "Steele Dossier" to be the subject of official proceedings.  Plaintiffs and Amici disagree, emphasizing that the Article did not *report* that the *entire* collection of Steele Memoranda was the subject of official government action.  Hence, Plaintiffs and Amici argue that the fair report privilege demands a focus on whether there is a perceptible connection between the government activity as described by Defendants in the Article and, respectively, *the defamatory statements in CIR 112 and 166.*  As Defendants argue in both cases

---

[4] Steele and his firm were engaged to create the memoranda by Glenn Simpson and Fusion GPS, which in turn were engaged by a law firm, Perkins Coie, working for the Clinton presidential campaign and the Democratic National Committee.  *See* D.E. 388, p. 3.

[5] The Article provided a hyperlink to a CNN article.  D.E. 214-2, Ex. 2.  The District Court held that, for purposes of New York's fair report privilege, the Article *includes* the content of the hyperlinked CNN article.  Hence, Amici's references to the Article *include* the content of the CNN article.

2

that the privilege applies globally to their publication of the *entire* "Steele Dossier," Amici have an important interest in whether this Court accepts that argument.

Although Amici's pending lawsuit is based on a set of facts similar to this case, there are also factual differences—i.e., whether the Article reported that CIR 166 was part of official proceedings is a different question from whether the Article reported that CIR 112 was part of official proceedings. Thus, Amici have an important interest in the Court's correct resolution of the issues common to both cases—but in a way that does not blur potentially significant factual differences between the two cases.

No counsel for any party authored any part of this brief. No party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person (other than Amici) contributed money toward the preparation or submission of this brief.

## QUESTIONS PRESENTED

1.     Whether the District Court erred in holding that, to invoke New York's fair report privilege, Defendants were not required to "show official action with respect to the specific allegations" that defame Plaintiffs?

2.     Whether the District Court erred in finding that Defendants' Article *reported* the existence of "official action" regarding "the allegations about Plaintiffs?"

3.     Whether the District Court erred in holding that New York's fair report privilege permits an "extension" from those portions of a document in the government's possession "plainly covered by the privilege" to defamatory statements in the same document neither reported nor "revealed" to have been "subject to official action?"

4

## SUMMARY OF ARGUMENT

Respectfully, by granting summary judgment to Defendants based on their assertion of New York's fair report privilege, the District Court erred.  Contrary to the court's conclusion, Defendants' republication of defamatory statements about Plaintiffs—in a memorandum that Defendants attached to an article on Defendant BuzzFeed's website—is not within the ambit of the fair report privilege. The threshold requirement for invocation of New York's privilege is a *"report of an[] . . . official proceeding."*  N.Y. Civ. Rights Law § 74 (emphasis added).  But here, Defendants' Internet Article did not report to readers that the statements defamatory of Plaintiffs were being used in an official proceeding.  At best, for Defendants, the Article reported only that the document containing the statements defamatory of Plaintiffs was in the government's possession, but that does not satisfy Section 74.  Section 74 requires a report that an average reader would understand to convey official use of the defamatory statements, and possession is not official use.

In granting summary judgment, the District Court applied the wrong standard and also mischaracterized the content of Defendants' description [in its Article] of the government activity.  Thus, the District Court held that the fair report privilege does not require the accurate reporting of "official action with respect to the specific [defamatory] allegations."  *Gubarev v. BuzzFeed, Inc.*, 340

F. Supp. 3d 1304, 1315 (S.D. Fla. 2018) ("*Gubarev II*").  This conclusion was not

only incorrect, but notably in direct contradiction of the District Court's previous

correct holding (in its Rule 12(c) decision) that an "important limitation" on the

New York fair report privilege restricts it to reporting "official action being taken

*regarding the allegedly defamatory matter*."  *Gubarev v. BuzzFeed, Inc.*, 2018 U.S.

Dist. LEXIS 97246, *18 (S.D. Fla. June 5, 2018) ("*Gubarev I*") (emphasis added).

The District Court also made a crucial factual error when it rejected as "incorrect"

the Plaintiffs' observation that "the Article does not state that there was any *official*

*action* about the specific allegations in the Dossier *relating to them*."  *Id.* at *25

(emphasis added).  It was the District Court, not the Plaintiffs, that was incorrect

on this point: the Article contained *no* report of *any* official actions about or

involving the allegations in the Dossier *about Plaintiffs*—as a plain reading of the

Article reveals.

Thus, when the District Court held that "Defendants [may] claim the

privilege's protection when the record reveals that certain parts of the Dossier were

subject to official action but does not reveal whether the specific allegations about

Plaintiffs were subject to official action[,]" *Gubarev II*, 340 F. Supp. 3d at 1316, it

erred.  The District Court started down that path with a statement that the

defamatory document at issue (CIR 166) "discusse[d] two issues that were

indisputably the subject of official action," including "cooperation between

6

Trump's 'team' and Russian operatives." *Id.* After that observation, the District Court concluded that *portions* of that document were "plainly covered by the privilege," and then jumped to the additional legal conclusion that "the remainder of" the document—including its defamatory statements about Plaintiffs—was privileged by "extension." *Id.* at 1316-17. This "extension" goes against established New York law which mandates a discriminating application of Section 74 in which parts of a document may not be covered by the privilege even though other parts are—and requires a party seeking to invoke the protections of Section 74 to show a *perceptible connection* between the defamatory statements and the official proceeding.

## ARGUMENT

### NEW YORK'S FAIR REPORT PRIVILEGE DOES NOT IMMUNIZE THE PUBLICATION OF THE DEFAMATORY STATEMENTS AT ISSUE

A.   **To Invoke the Section 74 Privilege, Defendants Were Required to Have *Reported* that CIR 166 Was Part of an Official Proceeding.**

Civil Rights Law Section 74—the statute that defines the scope of the fair report privilege in New York—imposes two conditions for the immunity it conditionally confers against liability for publishing defamatory statements. The first requirement is that the statements alleged in the lawsuit to be libelous were published as part of a "*report of an[] . . . official proceeding*" and the second requirement, which only becomes relevant if the publisher has made such a report,

7

is for the publisher to prove that the report is "fair and true."  Contrary to the

District Court's conclusion, and as explained in Point B below, Defendants failed

to meet even the first requirement because their Article attached statements

defamatory of Plaintiffs without *reporting* that the defamatory statements—or

anything in CIR 166—was being used in any official proceeding.

Both the words of Section 74—its express requirement of a "report"—and

its purpose—to afford immunity as necessary to protect a publisher's ability to

report on official government proceedings—make it clear that the threshold

requirement for invoking Section 74 is *reporting* that not only describes official

government proceedings, but also reports some relationship or connection between

the published defamatory statement and those government proceedings.

Otherwise, a publisher could obtain immunity for publishing a defamatory

statement that is *merely* in the government's files and *not* being used in an official

proceeding, so long as the publisher *attaches* the defamatory statement to an

Article about a government proceeding.

Thus, courts have repeatedly emphasized that Section 74 does *not* immunize

a defamatory statement, even if the statement was sent to or possessed by the

government, *unless* the article in question indicates that the official governmental

actions relate specifically *to the statement[s] alleged to be defamatory.  Fine v.*

*ESPN, Inc.*, 11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014) (holding that for Section 74

to apply there "must be some *perceptible connection* between the challenged

[defamatory] report and the [government] proceeding") (quotation and alteration

omitted, emphasis added); *Wenz v. Becker*, 948 F. Supp. 319, 322 (S.D.N.Y. 1996)

("the [Section 74] privilege applies *only* where . . . the allegedly defamatory

statement is connected to a [governmental] proceeding") (emphasis added);

*Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 69 A.D.3d 110, 114 (N.Y. App. Div.

2009) (holding that it is "*incumbent* on the party asserting the privilege to establish

that *the statements at issue reported on a[n] [official] proceeding*") (emphasis

added) (quotation omitted); *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*,

868 F. Supp. 501, 509 (E.D.N.Y. 1994) (surveying New York cases interpreting

Section 74 and noting that where Section 74 "has been applied, the connection

between the challenged [defamatory] report and the judicial, legislative, or official

proceeding in question has been far more *direct*") (emphasis added); *see also*

*Ramos v. El Diario Publishing Company, Inc.*, 229 N.Y.S.2d 652, 653 (N.Y. App.

Div. 1962) (in connection with the predecessor statute to Section 74, rejecting fair

report privilege defense as "insufficient since the allegedly libelous matter is not

*on its face* confined to describing and characterizing actions occurring during any

judicial or official proceeding") (emphasis added).

9

The requirement of a connection between the official activity (as described in the publication) and the alleged defamatory statement serves the policy goal of the fair report privilege:

> The principal theory behind the rule of fair report is that the publisher acts as the agent of the public, reporting only that which others could hear for themselves were they to attend the proceedings. It has also been justified on policy grounds because the public has supervisory or oversight responsibilities over public bodies and officers.

*Hogan v. Herald*, 446 N.Y.S.2d 836, 841 (N.Y. App. Div. 1982), *aff'd*, 444 N.E.2d 1002 (N.Y. 1982). Unless there is a reported connection between the government activity and the defamatory statements, this rationale is inapplicable: when, as here, all that has been reported about the challenged defamatory statements is that they were in the government's possession, members of the public could not have heard or seen if or how the defamatory statements were being used by the government. Moreover, the public could not exercise a supervisory function regarding a government official's use of the defamatory statements in her official capacity when, as here, no government official was reported to have used CIR 166 in an official capacity.

The District Court, in its Rule 12(c) decision, expressly recognized and reaffirmed Section 74's limits, holding that one of the "important limitations on the privilege" "insure[s] that [it is applicable only when] the reader *can ascertain that what is reported* as true is that there *is an official proceeding* underway or official

action being taken *regarding the allegedly defamatory matter.*" *Gubarev I*, 2018

U.S. Dist. LEXIS 97246 at *18 (emphasis added).  This holding was consistent

with Section 74's text, purpose, and all of the above-cited decisions reaffirming

Section 74's *limitation* to reports that *connect* published defamatory statements to

their use in official government proceedings.

The District Court also recognized that the "official proceeding" requirement

of Section 74 is not satisfied by the mere fact that government personnel may have

received and *possessed* a copy of CIR 166.  Instead, the District Court approvingly

cited the holding of *Abakporo v. Sahara Reporters*, 2011 U.S. Dist. LEXIS 109056

(E.D.N.Y. Sept. 26, 2011).  *Gubarev I*, 2018 U.S. Dist. LEXIS 97246 at *19.  As

the *Abakporo* court explained, the assumed fact that a document "reached the

relevant [governmental] authorities . . . [does] not transform the [document] into

part of an 'official proceeding' under Section 74."  *Abakporo*, 2011 U.S. Dist.

LEXIS 109056, at *26-27.  Doing so "would create a recipe for libel, as specious

allegations could be broadcast with impunity once sent" to the government.  *Id.* at

*29.  That should have led the District Court to reject Defendants' invocation of

the privilege, given that the only report arguably made by Defendants about the

government and CIR 166 is that the Dossier [including CIR 166] "reached the

relevant [ ] authorities."  *Id.* at *26-27.  *See Infra* at 19-22.

11

1.   **The District Court's Summary Judgment Decision Abandoned the Core Legal Principle that Limits Section 74 to Publications that *Report* a Connection Between Official Action and the Defamatory Statement for Which Immunity Is Sought.**

In its Rule 12(c) decision, the District Court *correctly* articulated two key legal principles applicable here: that the Section 74 privilege may only be invoked where a challenged publication reports on "official action being taken *regarding the allegedly defamatory matter*" and that the privilege is not available based on reporting of the government's mere possession of a document containing defamatory statements. *Gubarev I*, 2018 U.S. Dist. LEXIS 97246 at *18-19.

Inexplicably, the District Court abandoned these legal principles in the summary judgment decision. Noting Defendants' *failure* to demonstrate "whether the particular allegations about Plaintiffs were specifically the subject of these official actions," the District Court proclaimed that "the issue of whether there was official action with respect to the specific allegations about Plaintiffs has taken on more importance than previously." *Gubarev II*, 340 F. Supp. 3d at 1315. Then, in plain contradiction of its Rule 12(c) decision, the District Court concluded that Defendants "need *not* show official action with respect to the specific allegations concerning Plaintiffs." *Id.* That holding not only cannot be reconciled with the 12(c) ruling, but also directly contradicts Section 74's requirement—via the "fair and true" provision—that a party invoking its protections must *prove* the occurrence of the same government activity it is required to have *reported*. *See*

12

N.Y. Civ. Rights Law § 74 (providing protection from libel suits for "publication

of a fair and true report of any . . . official proceeding").

In abandoning the requirements of a reported (and proven) connection

between an official act and "the specific allegations concerning Plaintiffs," the

District Court primarily relied on its understanding of a New York Court of

Appeals case, *Holy Spirit Ass'n for the Unification of World Christianity v. New

York Times Co.*, 399 N.E.2d 1185 (N.Y. 1979) ("*Holy Spirit*"), as well as a federal

district court decision, *Fine v. ESPN,* 11 F. Supp. 3d at 216-217, and its own Rule

12(c) decision. *See Gubarev II*, 340 F. Supp. 3d at 1316-17. However, none of

those sources support the conclusion that Section 74 immunity requires anything

less than a *report of* official action *relating to* the defamation for which immunity

is sought.

*Holy Spirit* is inapposite. It concerned three New York Times articles about

intelligence reports that were recently released to the public by a government

body—a congressional committee. The intelligence reports revealed the

"tentative" conclusion of the intelligence agencies that the Rev. Sun Myung

Moon's Unification Church was a "political tool" of the Korean CIA. *Holy Spirit,*

399 N.E.2d at 1187. One Times article described that tentative conclusion by a

government official as "confirmed." The court held that this and other similar

statements by the Times, characterizing the intelligence reports, were within

13

Section 74's ambit. *Id.* at 1187-88. Because the intelligence agency review (including the agencies' conclusions *about the plaintiffs*) described in the Times articles constituted official proceedings, the issue in *Holy Spirit* was not, as in this case, whether the publisher had reported the existence of official proceedings relating to the defamatory statements—the New York Times clearly had done so. Instead, the issue in *Holy Spirit* was confined to whether the Times' characterizations of the intelligence agencies' analysis was "fair and true." On that question, although the New York Court of Appeals perceived some of the Times' characterizations of the intelligence agency reports to be "imprudent," it held that the Times articles as a whole were not "unfair" characterizations of the intelligence agency activity and therefore satisfied Section 74's "fair and true" requirement. *Id.*

In holding that a report satisfies the "fair and true" requirement of Section 74 when it is "substantially accurate," *id.* at 1187, the New York Court of Appeals reaffirmed a longstanding legal principle, but one that is of little aid to the disposition of this appeal. In this case, the question that lies at the heart of whether Defendants may lay claim to a Section 74 privilege is not whether Defendants made substantially accurate or inaccurate statements about government activity relating to Plaintiffs. Instead, the problem for Defendants is that they published defamatory statements about Plaintiffs *without* ever reporting—accurately or inaccurately—any government activity that related to Plaintiffs.

14

*Holy Spirit* does not alter the requirement that the party seeking Section 74 immunity must *report* official action *relating to* the defamation for which immunity is sought.  Thus, by citing *Holy Spirit* for its conclusion that Section 74 does *not* require the reporting of "official action with respect to the specific [defamatory] allegations," the District Court deployed *Holy Spirit* for a principle it does not support or even discuss.[6]  *See Gubarev II*, 340 F. Supp. 3d at 1315-16.

Nor is the District Court's decision supported by the other case on which it principally relied, *Fine v. ESPN*.  It is ironic that the District Court relied on *Fine* because its holding is irreconcilable with the District Court's decision.  *Fine* expresses the principle that, to invoke Section 74, "there *must* be some perceptible connection between the challenged [defamatory] report and the . . . [official] proceeding."  11 F. Supp. 3d at 216 (internal citation omitted) (emphasis added).  Although *Fine* recognized that it "has not been clearly defined" *how direct* that connection must be, *id.*, it *indisputably requires a reported connection*, sufficient to be understandable to an average reader, between the official proceeding described in the publication and the "report" challenged as defamatory.  Thus, *Fine*

---

[6] Another case cited by the District Court, *Alf v. Buffalo News, Inc.*, 995 N.E.2d 168 (N.Y. 2013), simply tracks *Holy Spirit* for its "substantially accurate" holding, which, as discussed above, does not aid the resolution of this appeal.  In *Alf*, plaintiffs took issue with the Buffalo News' characterization of the outcome of an investigation involving the plaintiff's company.  Here, the issue is not whether the Article was "substantially accurate" in its description of an official proceeding linked to the defamatory statements in CIR 166, but rather whether the Article reports on *any* official proceeding *linked to Plaintiffs*—as it must.

requires the rejection of the District Court's conclusion affording a privilege to Defendants' publication of CIR 166 because Defendants did *not* report *any* connection between the government activity described in the Article and the statements in CIR 166 that defame Plaintiffs.

In the same vein, the District Court rationalized its failure to apply *Fine*'s perceptible connectedness test—and the well-recognized principle that Section 74 can apply to some defamatory statements in a publication without applying to other defamatory statements in the same publication—because Defendants "simply published" the "Dossier" and "did not editorialize." *Gubarev II*, 340 F. Supp. 3d at 1317. However, these principles (perceptible connectedness and discriminating application of the privilege within a document) are perfectly capable of application here: Plaintiffs do not argue that Defendants lost Section 74 immunity by *editorializing* inaccurately about government proceedings relating to the defamatory statements. Instead, more fundamentally, Plaintiffs argue that Defendants are unable to invoke Section 74 because their defamatory Article fails to *report* on government proceedings relating to the defamatory statements. Even *if* Defendants arguably reported that *some* of the seventeen Steele Memoranda were the subject of official proceedings, they did not *report* that CIR 166 was the subject of official proceedings. The values inherent in Section 74 are honored perfectly by immunizing the publication of the former without protecting the latter.

16

There is nothing about the fact that BuzzFeed "simply published" CIR 166 without "editorializing" that impedes the application of these well-recognized limitations on the invocation of Section 74. Indeed, a discriminating application of Section 74 is consistent with the overriding principle that the Section 74 privilege is *limited* to that part of a publication that actually reports on official activity. *See Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York*, 475 N.Y.S.2d 383, 389 (N.Y. App. Div. 1984) (Section 74 privilege applied to portion of article which described official reports, but not to portion that did not describe official investigation.). Accepting the rules Defendants propose would convert Section 74 into a license to publish defamatory statements that are not part of any official proceedings.

Relatedly, the District Court declined to conduct a "line-by-line" review of the thirty-five pages of the "Dossier" to determine whether the part of it defaming Plaintiffs had been reported by Defendants in the Article to be the subject of any official action. The District Court expressed concern that if BuzzFeed had to *read* the thirty-five pages before it placed them on the Internet, in order to assess whether its defamatory statements were part of the government activity BuzzFeed was going to report, this would impose "*extensive investigatory requirements* on a news organization" incompatible with reasonable expectations for a news organization. *Gubarev II*, 340 F. Supp. 3d at 1317 (citing *Reuber v. Food Chem.*

*News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991)) (emphasis added).  Not only is that analysis a failure to apply Section 74's requirements, it is also illogical.  BuzzFeed could have satisfied Section 74's threshold requirement by attaching any parts of the "Dossier" that its Article (and CNN's) reported to be the subject of official government proceedings without any "extensive investigatory" efforts.  All that BuzzFeed had to do was to limit its publication of defamatory statements contained in the thirty-five-page "Dossier" to the defamatory statements that its short article *reported* to be the subject of official action.  The fair report privilege does not extend immunity further.  In sum, contrary to the lower court's ruling, immunity for republishing one defamatory statement that *is* perceptibly connected to a government proceeding does not logically give rise to immunity for republishing a different defamatory statement, about another person, that *is not* part of a government proceeding.

Having failed, in its Summary Judgment decision, to identify support for its elimination of Section 74's threshold requirement of a reported connection between an official proceeding and the defamation, the District Court was reduced to repeating an erroneous conclusion from its own Rule 12(c) decision.  The District Court repeated that "it would undermine the privilege to require that one who reports on official action tie every specific allegation in the [defamatory] report to a specific instance of official action." *Gubarev II*, 340 F. Supp. 3d at

18

1314. In doing so, the District Court noted it had cited *Holy Spirit* for that

conclusion in its Rule 12(c) decision, but as the above discussion of that case

reveals, *Holy Spirit* does *not* endorse Section 74 immunity for any published

defamatory statement *not* reported to be the subject of official action.  In any event,

even *if* Section 74 could be properly invoked to immunize the publication of a

number of related defamatory statements about a plaintiff where the publication

connects government activity to only *some* of those related defamatory statements,

the District Court was wrong to conclude that such an approach could bring

Defendants' statements about Plaintiffs within the ambit of Section 74 here.  It

does not, because, as demonstrated below, Defendants' Article did not report that

*any* of the statements defamatory of Plaintiffs in CIR 166 were the subject of

official action.

**B.    Section 74 May Not Be Invoked Because Defendants Did NOT Report that any of the Defamatory Statements in CIR 166 Were Used in or Part of any Official Activity.**

As the District Court noted, Defendants proffered two theories for the notion

that their Article allowed them to invoke Section 74 immunity for defaming the

Plaintiffs.  First, they claimed to have reported and proved that the entire Steele

Dossier [presumably including CIR 166] "was subject to official action."

"Alternatively," Defendants argued that their Article accurately reported that "parts

of Report 166 were subject to official action."  *Gubarev II*, 340 F. Supp. 3d at

19

1316.   The District Court should have rejected both of these theories because they are contradicted by the content of the Article.  Neither the BuzzFeed nor the CNN Article reported that the entire "Dossier," CIR 166, or the defamatory statements it contains, were the subject of official action.

### 1.   The Article Does Not Report that the Entire Steele Dossier Was the Subject of Classified Briefings, an FBI Investigation, or any Other Official Proceeding.

In support of its Motion for Summary Judgment BuzzFeed contended that "the Dossier was a document that the Article (including the hyperlinked CNN Article) indicate[d] was part of classified briefings and an FBI investigation." D.E. 225,  p. 4 (internal quotations omitted) (alteration in original).  The District Court apparently accepted that characterization of the CNN article, finding that "the Dossier was [reported to be] subject to official action" and that such "official action was described in the Hyperlinked CNN Article" and similarly that "the CNN Article stated that . . . the FBI was investigating the truth of the Dossier's allegations." *Gubarev II*, 340 F. Supp. 3d at 1313, 1318-19.  But those statements about the content of the CNN article are simply wrong.

Indeed, neither the Article nor the CNN article reported [or "indicated"] that the entire "Dossier," CIR 166 included, was "part of classified briefings" or "an FBI investigation."  The BuzzFeed Article does not so much as mention *an FBI investigation,* much less identify documents that were "part of" it.  And while the

20

CNN article used the phrase "these allegations" in describing what "[t]he FBI is investigating," the CNN article did *not* say that the allegations under investigation included *all* allegations made in the "Dossier" [a term the CNN article did not use]. Nor did the Article or CNN article "indicate[]" that the entire Dossier including CIR 166 was "part of classified briefings." As for the BuzzFeed Article, its only reference to what was "given" to the two Presidents in the briefings is a statement that "CNN reported" that the presidents were provided with a "two-page synopsis," followed by a hyperlink to the CNN article. D.E. 214-4, Ex. 2. But the CNN article does *not* state or even suggest that all seventeen Steele Memoranda including CIR 166 were "part of classified [presidential] briefings" or included in the synopsis. Instead, CNN reported that only "some of the information" from those memoranda was included in the synopsis given to the two presidents.

### 2. Contrary to the District Court's Finding, the Article Does Not Report that "Parts of Report 166 Were Subject to Official Action."

The District Court's finding that the CNN article reported that "parts of Report 166 were subject to official action" fares no better than the notion that the CNN article reported official action relating to all seventeen of the Steele Memoranda. To the contrary, the CNN article does not mention CIR 166, much less the defamatory accusations about Plaintiffs that it contained. Therefore, the

21

CNN article simply did not report that "parts of Report 166 were subject to official action."

The District Court's contrary finding emphasized that CIR 166 and the Article both "discuss[]" "allegations of cooperation between Trump's 'team' and Russian operatives"—allegations of a kind that the Article *did* report to be the subject of official action. *Gubarev II*, 340 F. Supp. 3d at 1316. In other words, the District Court appeared to conclude that some readers of the Article *might* conclude or deduce that CIR 166 was part of the government's inquiry into collusion between the Trump campaign and the Kremlin—even though the Article did not report that the government was using CIR 166 in that inquiry.[7] In that fashion, the District Court replaced Section 74's fair report standard with a fair inference or deduction standard. That was unfaithful to the text of Section 74, which is not triggered by inferences or deductions. Instead, Section 74 is triggered *only* by an actual *report* that the defamatory statements are part of a proceeding— and here, the Article contains no such report.

---

[7] No such reasonable deduction could be made about CIR 112. Unlike CIR 166, CIR 112 does not discuss "cooperation between Trump's team" and the Kremlin, as it does not even mention Trump or anyone affiliated with him or his campaign. *See* D.E.214-4, pp. 25-26 of Ex. 3 to Complaint for Damages.

**C.**   **Section 74 Does Not Permit "Extensions" of the Privilege from Parts of a Report Covered by Section 74 to Parts that Are Not.**

Having nevertheless concluded, erroneously, that certain "portions of Report 166 [] are plainly covered by the privilege," the District Court also applied the privilege "[to] the remainder of the Report [all of 166]," an "extension" for which the court cited only one case—*Fine*. *See Gubarev II*, 340 F. Supp. 3d at 1317. Thus, the District Court concluded that since some of what was alleged in CIR 166 was purportedly the subject of a government investigation, BuzzFeed's publication of the challenged defamatory statements in that memo was also protected by Section 74, even if a careful "line-by-line" review of "each statement in Report 166" would not show government action regarding "each separate allegation." *Id.* Respectfully, the court's "extension" of the privilege to encompass parts of a document not reported to be under investigation is not supported by *Fine* or any other authority.  Indeed, the extension conflicts with the principle that the privilege is available only when a reader can "ascertain that what is reported as true is that there is an official proceeding underway or official action being taken *regarding the allegedly defamatory matter*." *Gubarev I*, 2018 U.S. Dist. LEXIS 97245 at *18 (emphasis added).  In this case, that principle required the rejection of Section 74 immunity for Defendants' publication of the statements defamatory of Plaintiffs because a reader *could not* ascertain as true the notion of any "official action taken regarding the allegedly defamatory matter."  Indeed, as the District Court

23

recognized, but then ignored, it is "missing from the record [] whether the particular allegations about Plaintiffs were specifically the subject of these official actions." *Gubarev II*, 340 F. Supp. 3d at 1315.

## CONCLUSION

By allowing BuzzFeed to invoke Section 74 for the publication of defamatory statements about Plaintiffs, merely because Defendants made a report on other official activity, *not reported* to encompass the defamatory statements at issue in the case, the District Court improperly broadened the immunity afforded by Section 74. Respectfully, given the District Court's inability to find that Defendants reported on an official proceeding concerning the defamatory statements at issue at all, much less accurately, the Court should reverse the District Court's decision and reinstate the Complaint.

Dated: March 28, 2019                    Respectfully submitted,

By:  _Alan Lewis_____

Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:  (212) 732-3200
Fax:  (212) 732-3232
lewis@clm.com
walsh@clm.com

-and-

24

Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.:  (305) 350-5116
Fax:  (305) 982-0079
aschwartz@homerbonner.com

*Attorneys for Proposed Amici Mikhail Fridman,
Petr Aven, and German Khan*

25

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because this document contains 5,445 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced type-face using Microsoft Word 2010 in 14 point Times New Roman font.

Dated:  March 28, 2015

Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:  (212) 732-3200
Fax:  (212) 732-3232
lewis@clm.com
walsh@clm.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2019, I served the foregoing on counsel of record, Evan Fray-Witzer (Evan@CFWLegal.com), Brady J. Cobb (bcobb@cobbeddy.com), Dylan Michael Fulop (dfulop@cobbeddy.com), Valentin Gurvitis (vagurvits@bostonlawgroup.com), Matthew Shayefar (matt@shayefar.com), Katherine Bolger (katebolger@dwt.com), Roy Black (rblack@royblack.com), Adam Lazier (adamlazier@dwt.com), Jared M. Lopez (jlopez@royblack.com), Cary McClelland (carymcclelland@dwt.com), Alison Schary (alisonschary@dwt.com), and Nathan Siegel (nathansiegel@dwt.com), using this Court's CM/ECF system.

*/s/ Adam L. Schwartz*

Adam L. Schwartz

27