# EXHIBIT B

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### APPEAL NOS. 18-15295, 19-10261

---

**ALEKSEJ GUBAREV,**
**XBT HOLDING S.A.,**
**and WEBZILLA, INC.,**

   **Plaintiffs-Appellants,**

  **v.**
         **On appeal from the United States**
         **District Court Southern District of**
         **Florida, Case No. 17-cv-60426-UU**

**BUZZFEED, INC.,**
**and BEN SMITH,**

   **Defendants-Appellees.**

_____/

### SUPPLEMENTAL BRIEF OF AMICI CURIAE
### MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN
### IN SUPPORT OF APPELLANTS

Alan S. Lewis, *pro hac vice*    Adam L. Schwartz
John J. Walsh, *pro hac vice*    Florida Bar No. 0103163
CARTER LEDYARD & MILBURN LLP HOMER BONNER JACOBS
2 Wall Street         1200 Four Seasons Tower
New York, NY 10005      1441 Brickell Avenue
Tel.: (212) 732-3200     Miami, FL 33131
Fax: (212) 732-3232     Tel.: (305) 350-5116
lewis@clm.com       Fax: (305) 982-0079
walsh@clm.com       aschwartz@homerbonner.com

*Attorneys for Amici Mikhail Fridman, Petr Aven, and German Khan*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ....................................................................... iii

AMICI'S REQUEST FOR PERMISSION TO FILE REPLY BRIEF...................... 1

ARGUMENT ........................................................................................ 3

POINT I
   NOTHING IN THE BRIEFS FILED BY DEFENDANTS AND THE
   REPORTERS COMMITTEE, OR IN *FRIDMAN*, UNDERMINES THE
   CONCLUSION THAT NEW YORK'S FAIR REPORT PRIVILEGE
   DOES NOT IMMUNIZE DEFENDANTS' PUBLICATION  OF THE
   DEFAMATORY STATEMENTS AT ISSUE ...................................... 3

   A.   The Issue Before this Court Is Whether Defendants' Publication of
      the Statements Defaming Plaintiffs Is Privileged, Not Whether
      Publication of "the Dossier Is Protected" ...................................... 4

   B.   BuzzFeed's Publication, Including the CNN Article, Does Not
      Permit an Ordinary Reader to Determine that the Statements
      Defaming Plaintiffs Were Part of Any Official Proceeding ........................ 8

   C.   The Possible Inference from the Articles that Someone May Have
      Read Report 166 While Preparing the Synopsis or Presidential
      Briefing Does Not Describe an Official Proceeding as to Report 166 ....... 14

   D.   Defendants' Argument Relies on a Distortion of Plaintiffs' and
      Amici's Position........................................................................... 16

   E.   Because the Terse New York *Fridman* Decision Relies Entirely on a
      Factual Determination, It Lacks Precedential Value and Was
      Improperly Submitted by Defendants as Rule 28(j) Supplemental
      "Authority"................................................................................. 18

i

POINT II
  THE DISTRICT COURT CORRECTLY IDENTIFIED THE
  RELEVANT CONTROVERSY IN FINDING THAT PLAINTIFFS  ARE
  NOT LIMITED PURPOSE PUBLIC FIGURES..................................................20

CONCLUSION ......................................................................................................25

CERTIFICATE OF COMPLIANCE........................................................................26

CERTIFICATE OF SERVICE ...............................................................................27

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abakporo v. Sahara Reporters*,
  2011 U.S. Dist. LEXIS 109056 (E.D.N.Y. Sept. 26, 2011) .........................11, 15

*Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*,
  68 F.3d 409 (11th Cir. 1995) .................................................................6

*Cholowsky v. Civiletti*,
  887 N.Y.S.2d 592 (N.Y. App. Div. 2009) .................................................8, 14, 15

*DiBella v. Hopkins*,
  403 F.3d 102 (2d Cir. 2005) .................................................................19

*Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York*,
  475 N.Y.S.2d 383 (N.Y. App. Div. 1984).............................................12, 15, 16

*Fridman v. BuzzFeed*,
  97 N.Y.S.3d 476 (N.Y. App. Div. 2019)..............................................1, 2, 18, 20

*Gertz v. Welch*,
  418 U.S. 323 (1974)........................................................................23, 24

*Hatfill v. The New York Times Co.*,
  532 F.3d 312 (4th Cir. 2008) .............................................................21, 22, 24

*Holy Spirit Ass'n for the Unification of World Christianity v.
  New York Times Co.*,
  49 N.Y.2d 63 (1979)..........................................................................5

*In re Checking Account Overdraft Litig.*,
  780 F.3d 1031 (11th Cir. 2015) ...........................................................6

*Medico v. Time*,
  643 F.2d 134 (3d Cir. 1981) ...............................................................12, 15

*Nat'l Life Ins. Co. v. Phillips Pub., Inc.*,
  793 F. Supp. 627 (D. Md. 1992)..........................................................21

*Silvester v. Am. Broadcasting Cos.*,
    839 F.2d 1491 (11th Cir. 1988) ..............................................................21

*Waldbaum v. Fairchild Publ'ns*,
    627 F.2d 1287 (D.C. Cir. 1980) ........................................................21, 24

**STATUTES**

N.Y. Civ. Rights L. § 74 ...............................................................*passim*

**RULES**

FED. R. APP. P. 28(j) ......................................................................19, 20

## AMICI'S REQUEST FOR PERMISSION TO FILE REPLY BRIEF

Amici Mikhail Fridman, Petr Aven, and German Khan ("Amici") request permission to submit this brief which addresses three submissions filed subsequent to Amici's initial brief: (1) Defendants' April 19 brief addressing the fair report privilege (and a new issue where Amici also have an interest—Plaintiffs' status as public or private figures) ("Defendants' Brief" or "Def. Br."); (2) the Reporters Committee's April 26 amicus brief supporting Defendants on the fair report issue ("Reporters Committee Brief" or "Rprtrs. Comm. Br.") (together with Defendants' Brief, the "Opposition Briefs"); and (3) the supplemental authority filed by Defendants addressing the May 2 interlocutory appeal decision of a state intermediate court, the New York Appellate Division, in *Fridman v. BuzzFeed*, 97 N.Y.S.3d 476 (N.Y. App. Div. 2019), the case in which Amici are plaintiffs ("*Fridman*").

The *only* case, from any jurisdiction, that the *Fridman* court mentioned was the District Court's Rule 12 decision in this case, underscoring the significance to Amici as plaintiffs in *Fridman* of how this Court rules on this appeal.  The *Fridman* court did not cite the District Court's Rule 12 decision for a legal principle, but instead, only to echo its understanding of the content of articles which are at the heart of the dispute over the availability of the fair report defense in both cases.  That is, the Appellate Division preceded its characterization of the

news articles (as having reported "classified briefings and/or an FBI investigation *concerning the dossier as a whole*") with the phrase "as in that case [Gubarev]." 97 N.Y.S.3d at 476-77.  Thus, the Appellate Division mentioned *Gubarev* only to express its perception that its understanding of the content of the articles was the same as the District Court's perception.

The New York Appellate Division's evident willingness to adopt a factual finding made by the District Court in this case, even while the New York court was aware of this pending appeal, reinforces that Amici should be permitted to respond to arguments that have been made in support of BuzzFeed *after* Amici filed their initial brief, particularly given that some of those arguments have not been addressed by Plaintiffs.  Indeed, by characterizing the issue in its brief as about *the entire* "Dossier's" purported privileged character, BuzzFeed, represented by the same lawyers in each case, is not merely litigating this appeal on its own terms, but also attempting to use it as a vehicle to advance BuzzFeed's position against Amici in Amici's pending New York case.  Whether or not this Court ultimately accepts BuzzFeed's arguments, their potential impact on Amici in the *Fridman* case weighs heavily in favor of affording Amici permission to respond to the arguments that are being made here by and on behalf of BuzzFeed.

2

As explained in Amici's motion for leave to submit this brief, a comparison with the brief filed by Plaintiffs on June 3, 2019, reveals that this proposed brief is not duplicative as it covers issues not briefed by Plaintiffs' in their reply.

## ARGUMENT

## POINT I

**NOTHING IN THE BRIEFS FILED BY DEFENDANTS AND THE REPORTERS COMMITTEE, OR IN *FRIDMAN*, UNDERMINES THE CONCLUSION THAT NEW YORK'S FAIR REPORT PRIVILEGE DOES NOT IMMUNIZE DEFENDANTS' PUBLICATION OF THE DEFAMATORY STATEMENTS AT ISSUE**

In this reply to the Opposition Briefs, Amici emphasize the following point: Defendants may not avail themselves of the fair report privilege because a necessary condition to its invocation is absent—*nothing* in either the BuzzFeed or CNN articles *reported* that the statements defaming Plaintiffs [or Amici] were part of an FBI investigation, a presidential intelligence briefing, or any other official proceeding.

3

**A.    The Issue Before this Court Is Whether Defendants' Publication of the Statements Defaming Plaintiffs Is Privileged, Not Whether Publication of "the Dossier[1] Is Protected"**

In its Rule 12(c) decision, the District Court correctly explained that one of the "important limitations on the [fair report] privilege … insure[s] that [it is limited to when] the reader *can ascertain that what is reported* as true is that there *is an official proceeding* underway or official action being taken *regarding the allegedly defamatory matter*." *Gubarev v. BuzzFeed, Inc.*, 2018 U.S. Dist. LEXIS 97246, at *18 (S.D. Fla. June 5, 2018) ("*Gubarev I*") (emphasis added).  Amici's opening brief emphasized the District Court's subsequent failure to apply this principle when granting summary judgment to Defendants, Amici Br., 12-13.  Both Defendants and the Reporters Committee ignore this critical point.  Neither explain how the grant of summary judgment to BuzzFeed can be reconciled with the District Court's Rule 12(c) decision, given that the article did *not* mention the

---

[1] BuzzFeed's article referred to the thirty-five pages of text it embedded as "[a] dossier" and as a "collection of memos," "reports," and "documents."  *See* D.E. 214-4, Ex. 2.  Thereafter, the media began to favor the terms "Trump Dossier" and "Steele Dossier."  Defendants, in using the phrase "Dossier," paint it as something whose privileged character *as a single document* is at issue, rather than focusing, as the law requires, on whether the challenged defamatory statements that are in one of its seventeen memos are privileged.  In this brief, Amici challenge the claim that a report that *some of* the allegations in the "Dossier" were the subject of government activity, would be sufficient to claim the privilege as to the *entire* collection of documents.

taking of any official action "regarding the allegedly defamatory matter." *Gubarev I*, 2018 U.S. Dist. LEXIS 97246, at *18.[2]

Instead, the Opposition Briefs argue that the publication of the defamatory statements is purportedly privileged because those statements can be found in a "*document*" (the thirty-five page "Dossier")—*other parts of which* (according to Defendants) the articles reported to be the subject of a government proceeding. Def. Br., 22-26; Rprtrs. Comm. Br., 18-19. Thus, Defendants attempt to frame the issue as whether the "publication of *the Dossier* is protected." Def. Br., 14 (emphasis added). But this frames the issue incorrectly, as Section 74's application in an individual lawsuit can only immunize the publication of the statements *alleged in that lawsuit* to be defamatory.

Section 74 does not authorize a court to decree broader privileges for the entirety of larger documents or collections of documents (e.g., the entirety of the seventeen Steele memos) that contain statements about non-parties whose defamatory or privileged character is not the subject of a controversy before the

---

[2] The Opposition Briefs make no effort to refute the point made in Amici's opening brief that the District Court erred by relying on *Holy Spirit Ass'n for the Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63 (1979), for the notion that Section 74 does *not* require the reporting of "official action with respect to the specific [defamatory] allegations" in its summary judgment decision. In that fashion, the Opposition Briefs effectively acknowledge that there is no authority from New York supporting the idea that Section 74 can be invoked absent actual reporting of official action *with respect to the defamatory allegations*.

court.  Basic principles of justiciability preclude this Court from reaching questions about the privileged character of any statements in the Dossier *other than those specific statements that defame Plaintiffs*.  *See*, *e.g.*, *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015) ("In the absence of both live claims and cognizable plaintiffs, the District Court's pronouncement … cannot be regarded as anything but an impermissible advisory opinion.") (quotation omitted); *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co*., 68 F.3d 409, 414 (11th Cir. 1995) (In order for justiciable controversy to exist, "the case must touch the legal relations of parties having adverse legal interests") (quotation and amendment omitted).  Here, the only content of the Dossier whose publication is at issue before the Court is the content defaming Plaintiffs.

Once the question is properly framed, it is evident that Section 74's exception *prohibits* the application of the fair report privilege to the statements at issue since they were not reported to be part of a government proceeding:

> This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which *was not a part thereof*.

N.Y. Civ. Rights L. § 74 (emphasis added).

In seeking to avoid the conclusion that their conduct fits this exception, Defendants point to the statutory phrase "added by any person concerned in the

publication" and assert that it limits the exception to libels that are the "product of the [journalist's] own independent reporting," as distinguished from libels not written by the journalist seeking Section 74 immunity.  Def. Br., 24-25.  That contention is incorrect, for two independent reasons.

*First*, this statutory exception, in applying to *any* libelous matter "*added by*" someone "concerned in the publication," is not limited to matter *authored by* someone for the publication.  To the extent that BuzzFeed *attached* parts of the Dossier to its article which were not reported to be the subject of any official activity, such as the statements defaming Plaintiffs and Amici, BuzzFeed "added" those defamatory statements to the publication, and under Section 74's exception, the statute affords no immunity to BuzzFeed for those aspects of its publication.

*Second*, BuzzFeed's argument ignores that the Section 74 exceptions are written in the disjunctive and that the statutory exception prohibits the application of the privilege to *anything* not reported to be "a part" of the official proceeding, even if it was "said" or "done" at the proceeding.  Here, when Defendants published specific statements *defaming Plaintiffs* which were not reported in the articles to be the subject of official action, BuzzFeed *added* libelous statements which were not a part of the official proceeding.  This facially triggered Section 74's exception, making Section 74 unavailable as a source of immunity for Defendants' publication of the statements libeling Plaintiffs.  Indeed, *no* court,

7

other than the District Court below, has ever accepted BuzzFeed's strained

interpretation of Section 74's second sentence as applying exclusively to libels that

express the journalist's own conclusions.

**B.     BuzzFeed's Publication, Including the CNN Article, Does Not Permit an Ordinary Reader to Determine that the Statements Defaming Plaintiffs Were Part of Any Official Proceeding**

New York requires that a publisher seeking to invoke Section 74 "*establish*

that *the statements at issue reported on a[n] [official] proceeding.*"  *Cholowsky v.*

*Civiletti*, 887 N.Y.S.2d 592, 596 (N.Y. App. Div. 2009) (emphasis added)

(quotation omitted).  The publisher, when attempting to satisfy its burden, must

show that an "ordinary viewer" could "*determine* whether the defendant was

reporting on a[n] … official proceeding" by publishing the statements at issue.  *Id.*

(emphasis added).  In spite of the clarity of that holding, the Reporters Committee

frames the issue as whether a reader could "understand" such a possibility.  *See*

Rprtrs. Comm. Br., Headline II, 21 (replacing the word "determine" with

"understand" in paraphrasing the *Cholowsky* test).  But the decision of New York's

legislature to immunize only those libels that a publisher *reports* to be part of an

official proceeding, combined with *Cholowsky*'s holding that Section 74 is limited

to where an average reader can "determine" a connection between a proceeding

and a libelous statement, leaves no doubt that New York's test is an objective one,

focused on the content of the publication.  By contrast, the word "understand"

8

suggests a looser test under which possible inferences and deductions by readers would trigger Section 74 so long as one theoretical reader could *understand* that a defamatory statement is part of a proceeding.  But this is not the law—Section 74 can only be invoked where the connection between the defamatory statement and the proceeding is *reported* in a way that allows that connection to be *determined* from the content of the publication.

In a nod to Section 74's actual requirements, the Reporters Committee characterizes the content of the articles in a way, which, *if* accurate, would appear to satisfy Section 74's "report" requirement.  Specifically, the Reporters Committee proclaims that BuzzFeed "alert[ed] readers" that "officials were taking action" with regard to "the reported allegations" about Plaintiffs.  Rprtrs. Comm. Br. at 21.  However, the Reporters Committee Brief does not (because it cannot) identify *any* content from the BuzzFeed or CNN articles that "alerted" or informed readers of any action taken regarding the statements defamatory of Plaintiffs. Once the articles are considered, it is evident that they did not inform readers of any official action regarding the statements at issue.

The Reporters Committee also purports to identify five "investigative actions about the Dossier" reported in the articles, *see* Rprtrs. Comm. Br. at 7, but many of its characterizations of how the articles describe those "investigative

9

actions" are inaccurate, and none of the referenced portions of the articles actually
state that the statements *defaming Plaintiffs* were part of any official proceeding.

Below are the Reporters Committee's description of the five investigative
actions, followed by an explanation of why they are incorrect:

- "After reviewing the Dossier, Senate Minority Leader Harry Reid wrote a
  letter to then-FBI Director James Comey about the Dossier's allegations.
  BuzzFeed Article, D.E. 214-4, Ex. 2, at 2; CNN Article, D.E. 214-5, Ex. 1."
  Rprtrs. Comm. Br., 7.

What the CNN article *actually* reports is as follows:  After referencing
"allegations that there was a continuing exchange of information during the
campaign between Trump surrogates and intermediaries for the Russian
government," CNN's article stated "sources tell CNN that *these same allegations*
… prompted then-Senate Democratic Leader Harry Reid to send a letter to FBI
Director Comey in October in which he wrote 'It has become clear that you
possess explosive information about close ties and coordination between Donald
Trump, his top advisors, and the Russian government….'"  D.E. 214-5, Ex. 1 at 2.
Thus, CNN did *not*, as the Reporters Committee Brief suggests, report that Reid's
letter to Comey was about the entire Dossier, or report that Reid asked Comey to
review or do *anything* regarding the "Dossier."  Nor did CNN's characterization of
the Reid letter reference Christopher Steele in any way, use the expression
"Dossier," or use a synonym for the Dossier such as the CNN article's own word,

10

"memos." Moreover, the letter CNN described, written *in October* 2016, cannot have been based on a reading of a Dossier that included Report 166, the report at issue in this case, which was not written until two months later, in December 2016. In short, the Reporters Committee's effort to use the Reid letter as a basis for BuzzFeed's invocation of Section 74 in this case fails because it relies on a misdescription of the CNN article.

- "Senator John McCain learned of the Dossier, obtained a copy, and delivered it to then-FBI Director Comey for further investigation. BuzzFeed Article, D.E. 214-4, Ex. 2, at 2; CNN Article, D.E. 214-5, Ex. 1." Rprtrs. Comm. Br., 7.

What the CNN article actually says is that Senator McCain "became aware of the memos" from a former British diplomat and "gave" what was, as of "December 9 … a full copy of the memos" to Comey. D.E. 214-5, Ex. 1 at 2. Thus, contrary to the Reporters Committee, CNN did not report that McCain told or even suggested to Comey what he and/or the FBI should do with any of the memos, in particular Report 166, which at the time *did not exist*. In any event, reporting Comey's *possession* of the memos, however received, is not a report of an official action absent a report of what Comey or the FBI *did* with them. *See Abakporo v. Sahara Reporters*, 2011 U.S. Dist. LEXIS 109056 at *27 (E.D.N.Y. Sept. 26, 2011) (the assumed fact that a document "reached the relevant [governmental] authorities … [does] not transform the [document] into part of an

11

'official proceeding' under Section 74"); *Medico v. Time*, 643 F.2d 134, 142 (3d

Cir. 1981) ("Care must be taken, of course, to ensure that the supervisory and

informational rationales not expand into justifications for reporting any defamatory

matter maintained in any government file.").

Moreover, the report that one government official gave a document to

another government official does not constitute a report of an *official proceeding*,

no matter the identity of the officials: giving and receiving documents does not

describe "activities which are *within the prescribed duties* of a public body."

*Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York*, 475

N.Y.S.2d 383, 388 (N.Y. App. Div. 1984) (emphasis added).  Indeed, the District

Court appeared to reach this same conclusion.  It was aware that the giving of

memos by McCain to Comey is mentioned in the BuzzFeed article, but held that

"official actions are mentioned *only* in the hyperlinked CNN article" [and not the

BuzzFeed article].  *Gubarev I*, 2018 U.S. Dist. LEXIS 97246 at *23.

- "The FBI asked for and received from Steele—an FBI informant—the
  Dossier he compiled, and the FBI subsequently investigated the credibility
  and accuracy of the Dossier.  BuzzFeed Article, D.E. 214-4, Ex. 2, at 2;
  CNN Article, D.E. 214-5, Ex. 1."  Rprtrs. Comm. Br., 7.

With this language, the Reporters Committee Brief again wildly overstates

what the articles actually report.  The BuzzFeed article does *not* say *anything* about

the FBI receiving anything "from Steele" or investigating the credibility or

12

accuracy of the Dossier.  Although the CNN article does make an apparent

reference to Steele as the "former M16 agent," it reports only that he gave "a set of

the memos compiled up to August 2016" to an FBI official.  Thus, in many ways,

the Reporters Committee's description of the BuzzFeed and CNN articles is a false

representation of what they actually say.  Not only do the articles *fail* to report an

FBI investigation of the accuracy of the entire Dossier, but the CNN article makes

clear that after whatever "check[ing] out" the U.S. intelligence agencies did of

Steele, they decided to use only "some of"—not all of—the information in the so-

called Dossier.  D.E. 214-5, Ex. 1 at 2.

- "Federal intelligence agencies created a two-page synopsis of the Dossier's allegations after receiving a full copy.  BuzzFeed Article, D.E. 214-4, Ex. 2, at 2; CNN Article, D.E. 214-5, Ex. 1."  Rprtrs. Comm. Br., 7.

Here, once again characterizing the articles instead of quoting them, the

Reporters Committee Brief misrepresents the articles.  Nowhere does either article

report that the two-page synopsis included "the Dossier's allegations" in their

entirety, and the articles suggest otherwise.  The synopsis which CNN said was a

part of presentations to the President and President-elect was described by CNN as

only about "the memos regarding Mr. Trump," not of the entire Dossier.  D.E. 214-

5, Ex. 1 at 1.  Underscoring that it was not reporting the synopsis to be of the entire

Dossier, CNN reported instead that it "include[d]" only some of the information in

the memos—*without* identifying any of the information in Report 166 as among

that information.  *Id.*

- "The directors of National Intelligence, the FBI, the CIA, and the NSA each provided the two-page synopsis about the allegations in the Dossier to President Obama and President-elect Trump as part of an intelligence briefing.  BuzzFeed Article, D.E. 214-4, Ex. 2, at 2; CNN Article, D.E. 214-5, Ex. 1."  Rprtrs. Comm. Br., 7.

As demonstrated above and by the actual articles, neither of them actually

report that all of "the allegations in the Dossier" were either part of a synopsis or

presented to the two presidents.  In short, contrary to the misleading portrait

painted by the Reporters Committee, no reader could actually "determine" from

the articles—the *Cholowsky* standard—that the defamatory allegations made

against Plaintiffs in Report 166 were being investigated by the FBI or had been

mentioned in presidential briefings or any other official proceeding.

## C.    The Possible Inference from the Articles that Someone May Have Read Report 166 While Preparing the Synopsis or Presidential Briefing Does Not Describe an Official Proceeding as to Report 166

As documented above, it is beyond dispute that the articles did not report

that Report 166 was used in the presidential briefings or investigated by the FBI.

Nor, applying the *Cholowsky* test, do the articles enable readers to "determine" as

much.  That elemental failure should make it unnecessary to go further.

Nevertheless, Defendants contend that they satisfy the first (report) prong of

Section 74 as to Report 166 by allegedly reporting "that officials created a synopsis

14

drawn from the 35-page document." Def. Br., 15.  In other words, Defendants argue that, even though they failed to *report* that Report 166 was used in the synopsis or mentioned in the briefing, the articles permit an *inference* that Report 166 may have been looked at by some unidentified government employee who was "filtering information," Def. Br.,19, for inclusion in the synopsis and briefing.

This argument not only fails to satisfy the "report" requirement of Section 74—and the ability to "determine" standard of *Cholowsky*—it also fails because a possible inference that some unidentified government employee looked at a document in order to decide *not* to use it in the synopsis or presidential briefing does not describe official conduct as to that document *or* describe conduct within any official's "prescribed duties" as is required by *Freeze Right*, 475 N.Y.S.2d at 388-89.  Indeed, BuzzFeed's argument—that it can invoke Section 74 by merely reporting that a government official looked at a document when considering whether or not to use it or take further action—would have the effect of immunizing all documents that come within the government's possession since, presumably, all such documents are looked at by some official to decide whether to act in regard to the document.  Such a notion contradicts the well-established principle that reporting the government's possession of a document, without more, does not describe official government proceedings as to that document.  *See Abakporo v. Sahara Reporters* and *Medico v. Time*, *supra* at 11.

15

Furthermore, the articles' failure to report who, if anyone, in government read Report 166 makes it impossible to "determine" that an official's reading of Report 166 to, as BuzzFeed suggests, "filter" it *out of* the synopsis, was an act within that person's "prescribed duties." *Freeze Right*, 475 N.Y.S.2d at 388-89. Consequently, it is impossible to *determine* from the articles that Report 166 was a part of an official proceeding within an official's prescribed duties, which dooms BuzzFeed's invocation of the privilege.

**D.    Defendants' Argument Relies on a Distortion of Plaintiffs' and Amici's Position**

Unable to show that their January 10, 2017 article *reported* that either Report 166 or the entire Dossier (which would encompass Report 166) was part of an FBI investigation, presidential briefing, written intelligence synopsis, or any other official proceeding, Defendants instead erect a straw man—i.e., Defendants contend that Plaintiffs and Amici have argued that Plaintiffs "should have … published some cut-and-pasted document of BuzzFeed's own creation."  Def. Br., 22. *See also id*. (characterizing Amici's argument as that "the press must publish selectively edited, invented versions of documents").

This is not Plaintiffs and Amici's position.  As an initial matter, Defendants incorrectly presuppose that the "Dossier" is an example of "entire documents that are part of official proceedings."  Def. Br., 23.  However, this is the core of the

16

dispute—what parts of the "Dossier" were the subject of an official proceeding. By distorting Plaintiffs' and Amici's position and the "Dossier," Defendants mischaracterize Plaintiffs' and Amici's position as demanding a "line-by-line" approach under which the only part of the government document(s) that could be published with immunity would be those explicitly "touch[ed] upon" in a publication reporting about a government proceeding.  *Id.* at 22-23.

Plaintiffs and Amici, however, *do not argue* that where a publication *actually and accurately reports* that an entire document is the subject of an official proceeding that there exists some additional requirement for invoking Section 74 under which the only parts of the document whose publication is privileged are the parts explicitly mentioned in the publication.  To the contrary, Amici *agree* that, *if* BuzzFeed's article had, in fact, reported that the entire Dossier was investigated by the FBI or provided to Presidents Obama and Trump, that the Defendants would not have had to explicitly mention the Plaintiffs in the article to invoke Section 74's protection.  *But* Amici also point out that *neither* BuzzFeed nor CNN reported that the *entire* Dossier [or specifically Report 166] was the subject of an official proceeding, and that therefore Defendants did not make a report that affords the immunity that Defendants are seeking.

Defendants' argument that denying them the privilege in these circumstances would encourage the media to publish redacted documents that

17

would be rendered "substantially inaccurate" by the redactions, Def. Br., 24, is not, even facially, an argument about the scope of Section 74. Instead, it is a plea for the creation of a new rule providing immunity for publishing defamatory statements that are *not* reported to be part of a government proceeding whenever those defamatory statements would somehow improve the accuracy of an otherwise non-defamatory publication. Whatever the merits of such a suggestion, only New York's legislature, not this Court, may enact such a rule.

Lastly, although Defendants raise the specter that publishing a partially redacted Dossier would have subjected BuzzFeed to some hypothetical lawsuit from "all the persons" named in the Dossier, Defendants fail to offer a single example of who would have been harmed by the publication of the "Dossier" with redactions of defamatory statements *not* reported to be part of any proceeding.

**E.    Because the Terse New York *Fridman* Decision Relies Entirely on a Factual Determination, It Lacks Precedential Value and Was Improperly Submitted by Defendants as Rule 28(j) Supplemental "Authority"**

In the defamation case in which Amici are plaintiffs—*Fridman v. BuzzFeed*—a New York intermediate court recently declined to dismiss BuzzFeed's invocation of the fair report privilege on the ground that BuzzFeed reported "classified briefings and/or an FBI investigation *concerning the dossier as a whole*." 97 N.Y.S.3d at 477. This factual finding about the purported content of

18

BuzzFeed's report [its own article and the hyperlinked CNN article] was incorrect, as the actual articles did *not* report the *entire* Dossier [or the statements in it defaming Plaintiffs and/or Amici] to be part of government proceedings. Respectfully, this Court can and should make its own assessment of the content of the two articles, both of which are in the appellate record.  D.E. 214-4, Ex. 2; 214-5, Ex. 1.

Defendants provided the Appellate Division decision to this Court pursuant to Rule 28(j), but not only was the decision incorrect about its only finding (the content of the articles) but the decision does not even constitute genuine "authority" whose consideration is authorized by Rule 28(j).  In providing the decision, Defendants appear to assume that it is an "authority" merely because it is a judicial decision.  But that is not enough.  The "authority" contemplated by Rule 28(j) is limited to conclusions of law, and does not extend to judicial findings of fact.  Thus, in *DiBella v. Hopkins*, 403 F.3d 102, 118 (2d Cir. 2005), the Second Circuit rejected the Rule 28(j) submission of a judicial decision because it rested on *factual* conclusions.  Specifically, after a party (Hopkins) submitted "Judge Kane's recent decision in *America Presents*, in which Judge Kane found that Joseph perpetrated 'no fraud' on the court," the Second Circuit rejected that submission, holding that under Rule 28(j) "Hopkins cannot introduce Judge Kane's *factual conclusions* into the record before this Court."  *Id.* (emphasis added).  The

19

Second Circuit explained that Rule 28(j) "simply does not allow this type of evidence to be introduced for the first time on appeal." *Id.*  The same applies here—the New York court's factual findings are not authority that bind this Court or which may even be considered under Rule 28(j).

Also notably, the Appellate Division declined to commit itself to a finding that the articles reported the existence of *any particular* proceeding concerning the whole Dossier.  *See Fridman,* 97 N.Y.S.3d at 477.  The Appellate Division mentioned only two proceedings—"classified briefings" and an FBI investigation—but by using the expression "and/or," it failed to go so far as to necessarily find that the articles reported classified briefings concerning the entire Dossier.  *Id.*  Likewise, it failed to find that the articles reported an FBI investigation concerning the entire Dossier.  Given that the two articles speak for themselves and the Appellate Division's somewhat vague and noncommittal description of their content, its decision provides no particular aid to this Court.

## POINT II

### THE DISTRICT COURT CORRECTLY IDENTIFIED THE RELEVANT CONTROVERSY IN FINDING THAT PLAINTIFFS ARE NOT LIMITED PURPOSE PUBLIC FIGURES

Defendants cross-appeal from the District Court's decision denying their motion for summary judgment as to Plaintiffs' status as limited public purpose figures.  The District Court's decision must be affirmed as it correctly identified

20

the relevant controversy giving rise to the defamatory statements and determined that Plaintiffs are not public figures for that controversy.

The first step in determining whether a plaintiff is a limited public figure is *identifying the pertinent controversy.  Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1296 (D.C. Cir. 1980); *accord Silvester v. Am. Broadcasting Cos.*, 839 F.2d 1491, 1494-95 (11th  Cir. 1988).  In doing so, as noted by the District Court, "the law does not allow the relevant public controversy to be divorced from the allegedly defamatory statements and the context in which they were made."  D.E. 385, 13-14 (citing *Hatfill v. The New York Times Co.*, 532 F.3d 312, 323 (4th Cir. 2008) ("In light of the purpose of the public figure doctrine to encourage robust and uninhibited commentary on public issues, it stands to reason that we should look to the scope of the message conveyed in The New York Times through the articles that Dr. Hatfill is challenging."), and *Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F. Supp. 627, 637 (D. Md. 1992) ("Moreover, it would be inappropriate to shrink all controversies to the specific statements of which a plaintiff complains. Defendants' alleged defamatory statements here, as in other controversies, are a part of, and clearly related to, a much larger story.")).

The District Court correctly identified the relevant controversy as the "ongoing controversy involving Russian interference in the election."  D.E. 385, 14.  Defendants argue that the District Court defined the relevant controversy too

21

narrowly, and that it should have been defined as one concerning cybercrime more generally. *See* Def. Br., 57. In support of this argument, they cite to the Fourth Circuit's decision in *Hatfill* and claim that the Fourth Circuit held that an expert in a particular field is a limited public purpose figure if he is accused of committing a crime relevant to that field. *See* Def. Br., 58. However, that is a misreading of *Hatfill*. In *Hatfill*, it was not enough that the plaintiff was an expert in bioterrorism and was accused of committing the anthrax terror attacks in 2001. *See* 532 F.3d at 323. Rather, the Fourth Circuit held that "in light of the purpose of the public figure doctrine … we should look to the scope of the message conveyed" in the challenged article. *Id*. The court found that the articles, although "focusing on solving the anthrax mailings of 2001, … [were] above all, concerned about the government's efforts to protect the nation from a bioterrorist attack." *Id.* Accordingly, the court held that the plaintiff was a limited public purpose figure because not only was he "repeatedly sought out as an expert on bioterrorism, but was also a vocal critic of the government's unpreparedness for a bioterrorist attack." *Id.* at 324. Here, in contrast, when the articles and the Dossier are considered, it is evident that they are not "above all" concerned with cybercrime generally, but rather are about alleged Russian collusion with the Trump campaign to interfere in the 2016 election. Accordingly, the District Court was correct to reject Defendants' efforts to define the controversy more broadly as cybercrime or

cybersecurity generally, finding that although those topics were mentioned in the
Dossier, they were mentioned "only in the context of Russian interference with the
election," and are "general topics" "untethered from the Dossier and, more
importantly, the public debate about Russian interference with the election, which
made the Dossier a matter of public importance."  D.E. 385, 14.

The District Court's definition of the controversy respects the Supreme
Court's holding in *Gertz v. Welch*, 418 U.S. 323 (1974), which requires that a court
look past the content of the defamatory statements to the underlying controversy
"giving rise" to their utterance.  *Id.* at 352.  As illustrated by the Supreme Court in
*Gertz*, the controversy "giving rise" to the defamation is distinct from *the content*
of the defamatory statement.  Thus, in *Gertz*, the content of the defamation was a
series of statements that accused Mr. Gertz of membership in communist affiliated
organizations.  *See id.* at 326.  But in defining the controversy (and whether Mr.
Gertz tried to shape its outcome), the Supreme Court did not discuss whether Mr.
Gertz ever talked publicly about any of the alleged communist affiliated
organizations or his own participation in them.  Instead, the Court talked about *why*
the defamatory statements accusing Mr. Gertz of being a communist came to be
published—Mr. Gertz's representation of the estate of an individual who was shot
and killed by a police officer.  *See, e.g., id.* at 352 ("In this context it is plain that
petitioner was not a public figure.  He played a *minimal role at the coroner's*

23

*inquest*, and his participation related solely to his representation of a private client. He took *no part in the criminal prosecution* of Officer Nuccio. Moreover, he *never discussed either the criminal or civil litigation with the press* and was never quoted as having done so. He plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome.") (emphases added)).

The lessons of *Gertz* and *Hatfill* are plain. Courts should not base their decision on how to define the controversy primarily on the *content* of the defamatory statement (e.g., in *Gertz*, that Mr. Gertz was a communist), but rather, on the issue or dispute that triggered the making of the defamatory statements (in *Gertz*, a shooting by a police officer and ensuing criminal and civil litigation, and in *Hatfill*, the nation's preparedness for a bioterrorism attack). Here, the District Court did that by analyzing the article and the Dossier in the context of the controversy which lead to their publication. *See* D.E. 385, 14 ("Plainly, the Dossier was important at the time of its publication because it related to the ongoing controversy involving Russian interference in the election."). And, once the controversy has been correctly identified as purported Trump-Russian collusion in advance of the 2016 election, the conclusion is clear that Plaintiffs have not "thrust" themselves to the "forefront" of the identified controversy as required. *See Gertz*, 418 U.S. at 352; *Waldbaum*, 627 F.2d at 1297. Accordingly, the

24

District Court's decision finding that Plaintiffs are not limited public purpose figures should be affirmed.

## CONCLUSION

For the above-stated reasons, the Court should reverse the District Court's decision to afford "fair report" immunity to Defendants for their publication of the defamatory statements, affirm the District Court's conclusion that Plaintiffs are not public figures in this dispute, and remand the case to the District Court for further proceedings.

Dated: June 10, 2019          Respectfully submitted,

By:          */s/ Alan S. Lewis*
Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.: (212) 732-3200
Fax: (212) 732-3232
lewis@clm.com / walsh@clm.com
          -and-
Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.: (305) 350-5116
Fax: (305) 982-0079
aschwartz@homerbonner.com

*Attorneys for Proposed Amici Mikhail Fridman,
Petr Aven, and German Khan*

25

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because this document contains 5,871 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced type-face using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: June 10, 2019

_____*/s/ Alan S. Lewis*_____
Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.: (212) 732-3200
Fax: (212-732-3232
lewis@clm.com / walsh@clm.com
       -and-
Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.: (305) 350-5116
Fax: (305) 982-0079
aschwartz@homerbonner.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2019, I served the foregoing on counsel of record, Evan Fray-Witzer (Evan@CFWLegal.com), Brady J. Cobb (bcobb@cobbeddy.com), Dylan Michael Fulop (dfulop@cobbeddy.com), Valentin Gurvitis (vagurvits@bostonlawgroup.com), Matthew Shayefar (matt@shayefar.com), Katherine Bolger (katebolger@dwt.com), Roy Black (rblack@royblack.com), Adam Lazier (adamlazier@dwt.com), Jared M. Lopez (jlopez@royblack.com), Cary McClelland (carymcclelland@dwt.com), Alison Schary (alisonschary@dwt.com), Nathan Siegel (nathansiegel@dwt.com), Floyd Abrams (fabrams@cahill.com), and Joel Kurtzberg (jkurtzberg@cahill.com) via email.

*/s/ Adam L. Schwartz*
Adam L. Schwartz

27