UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60426-CV-UNGARO

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.,

                Plaintiffs,

    v.

BUZZFEED, INC., and
BEN SMITH,

                Defendants.

_____ /

**MOTION OF MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN
TO APPEAR AS AMICI CURIAE AND TO FILE AMICUS CURIAE BRIEFS**

On March 13, 2020, the Eleventh Circuit remanded this case for the Court to decide

whether to "supplement the record with the Horowitz Report [i.e., the December 9, 2019 Report

of the Office of the Inspector General]." *Gubarev v. BuzzFeed, Inc.*, No. 18-15295-JJ, Order at

*1 (11th Cir. Mar. 13, 2020) (the "Pending Appeal").  The Eleventh Circuit also directed that, if

the Court decides to supplement the record, it should then assess whether "the Horowitz Report

would alter the court's previously issued summary judgment order." *Id.* at *2.  After Plaintiffs

moved in this Court to supplement the record with the Horowitz Report, on March 31, 2020, the

Eleventh Circuit stayed the Pending Appeal, pending this Court's ruling on remand.

Mikhail Fridman, Petr Aven, and German Khan ("Amici") appeared as amici curiae in

the Eleventh Circuit.  Upon the Eleventh Circuit's remand of the case to this Court, Amici

respectfully move to appear as amici here.  Specifically, Amici ask the Court to accept for filing

the two amicus briefs they filed in the Pending Appeal (collectively, the "Amicus Briefs) (attached as Exhibits A and B).

## I.     Background on Amici and the Pending Appeal

Amici, like Plaintiffs, sued BuzzFeed for defamation after its January 10, 2017 publication of seventeen reports that came to be known collectively as the Steele Dossier.  The statements alleged by Plaintiffs to be defamatory are in Report 166, whereas the statements defamatory of Amici are in a different one of Christopher's Steele's memos—Report 112.  *See Fridman v. BuzzFeed, Inc.*, Index No. 154895/2017 (N.Y. Sup. Ct. 1st Dept. May 26, 2017) (the "New York Case").  In essence, Report 112 accuses Amici of maintaining a decades-long, bribery-based and otherwise corrupt relationship with Vladimir Putin.

BuzzFeed raised Section 74's fair report privilege as an affirmative defense both here and in the New York Case.  In light of the similar arguments being advanced by BuzzFeed in both cases, Amici sought leave to appear as amici curiae and file a brief in support of Plaintiffs/Appellants in the Pending Appeal.  The Eleventh Circuit granted Amici's motion and, Amici filed their Brief for Amici Curiae in Support of Appellants (the "Initial Amicus Brief"). Apr. 19, 2019 Pending Appeal Order at 1.  The Initial Amicus Brief is attached as Exhibit A. After Defendants/Appellants filed their brief, Amici sought and received leave from the Eleventh Circuit, over the objection of Defendants/Appellants, to file a supplemental amicus brief.  Jul. 9, 2019 Pending Appeal Order at 1.  Amici's Supplemental Amicus Brief is attached as Exhibit B.

On December 30, 2019, Plaintiffs/Appellants filed their motion in the Pending Appeal for leave to supplement the record to include the December 9, 2019 Report of the Office of the Inspector General entitled "Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation" (the "Horowitz Report").  As Plaintiffs/Appellants have

argued, the Horowitz Report undermines the notion that Report 166 was part of an official proceeding and thus subject to the protection of Section 74's fair report privilege.  In the New York Case, Amici have argued that the Horowitz Report also calls into question whether Report 112 was, at the time of publication, part of any official proceeding described in Buzzfeed's January 10, 2017 report.

In light of the foregoing, on March 13, 2020, the Eleventh Circuit granted Plaintiff/Appellants' motion in part and partially remanded the Pending Appeal to this Court to determine whether (1) the record should be supplemented to include the Horowitz Report; and (2) if so, whether the Horowitz Report would alter the Court's previously issued summary judgment decision.

## II.    Introduction

To assist the Court in determining whether it should supplement the record and reevaluate its prior summary judgment order, Amici seek to file their Eleventh Circuit Amicus Briefs in this Court.  The Amicus Briefs address the availability and application of New York Civil Rights Law Section 74's "fair report privilege" ("Section 74") to Defendants BuzzFeed, Inc. and Ben Smith's publication of Reports 166 and 112.

The Court's ruling on remand may be cited in Amici's own case pending against Defendants for their publication of Report 112 because Defendants have raised the same Section 74 fair report defense arguments against Amici.  Thus, Amici have an interest in this Court's ruling on whether to modify its order granting Defendants' motion for summary judgment and submit that the Amicus Briefs will aid the Court in its evaluation of that question.

### III.    The Court Should Permit Amici to Appear and Submit Their Amicus Briefs

Courts in this district have consistently recognized their "inherent authority" to appoint amici "to assist it in a proceeding." *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500 (S.D. Fla. 1991); *see also United States v. UBS AG*, No. 09-20423, 2009 WL 10669118, at *1 (S.D. Fla. May 19, 2009) (granting motion for leave to file amicus brief because movants had an interest in the case and their brief would be of assistance to the court); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1328 (S.D. Fla. 2007) (basing decision in part on amicus positions).

In granting parties' requests to appear as amici, courts consider the following factors, each of which have been held to provide an independently sufficient basis to approve the filing of an amicus brief: (1) "the practical and economic interests" of the putative amici, *Fla. Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 404 F. Supp. 2d 1352, 1356 (S.D. Fla. 2005); (2) whether the amicus brief "would be of assistance to [the] Court," *UBS AG*, 2009 WL 10669118, at *1; and (3) whether "the amicus provides supplemental assistance to existing counsel." *Alliance of Auto. Mfrs. v. Gwadowsky*, 297 F. Supp. 2d 305, 307 (D. Me. 2003) (citation omitted). Amici satisfy all three factors.

First, it is beyond dispute that the "practical and economic interests" factor weighs heavily in support of granting Amici's motion. The Eleventh Circuit, by twice granting Amici's separate motions to file amicus submissions in that Court, recognized that Amici have a significant interest in this case, substantial enough for them to be heard as amici in that Court. Indeed, the matter before this Court involves the *same Defendants* who have raised some of the *same arguments* in the New York Case against Amici. Moreover, in a decision rendered in an interlocutory, non-final appeal in the New York Case, the *only* case that the New York appellate

4

court cited was this Court's Rule 12 decision in this case.  *See Fridman v. BuzzFeed*, 97

N.Y.S.3d 476 (N.Y. App. Div. 2019).

Second, the Amicus Briefs will further assist the Court, especially if it reassesses its

summary judgment decision in light of the Horowitz Report.  Specifically, the Amicus Briefs

explain how the only government activity involving a defamatory statement that can render the

publisher of that defamatory statement immune from liability is the specific government activity

described in the report that published the defamatory statement.  Thus, in reviewing the

Operation Crossfire Hurricane FBI Investigation as described in the Horowitz Report, the Court

must train its focus on whether any FBI activity *involving the defamatory statements that was*

*described in BuzzFeed's January 10, 2017 Report* was described accurately.  In other words, the

fair report privilege cannot immunize the publication of defamatory statements *even if* used in a

government investigation, *unless* the report in question reported (accurately) a *connection*

(understandable to readers) between that government investigation and the defamatory

statements—a point that the Amicus Briefs emphasize to a greater degree than Plaintiffs' briefs.

The Amicus Briefs explain the policy foundations and values that the Section 74 privilege serves

and how those foundations require the Court to carefully evaluate whether an ordinary reader

would find a "perceptible connection" between the defamatory statements and the government

activity specifically described in the report.  The Amicus Briefs analyze the framework the Court

should use to determine whether the Defendants actually *reported* in a perceptible way

(accurately) that the purportedly defamatory statements were part of an official government

proceeding.  This analysis should benefit the Court's consideration on remand.

Third, for the reasons explained above, Amici through their proposed briefs would provide "supplemental assistance to existing counsel" by advancing Plaintiffs'/Appellants' requested relief on remand.

## IV.   Conclusion

For the foregoing reasons, the Court should permit Amici to appear and submit their Amicus Briefs for the Court's consideration.

Dated: April 2, 2020

## LOCAL RULE 7.1(a)(3) CERTIFICATION

On April 2, 2020, lead counsel for Amici conferred via email with Katherine Bolger and Nathan Siegel, counsel for Defendants/Appellees, who advised that they will decide their position as to this motion after it is filed.   On April 2, 2020, counsel for Plaintiffs/Appellants advised that they consent to this motion.

Respectfully submitted,

HOMER BONNER JACOBS ORTIZ

By:   _____*/s/ Adam L. Schwartz*_____
Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS ORTIZ
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.:   (305) 350-5116
Fax:    (305) 982-0079
Email: aschwartz@homerbonner.com

-and-

6

Alan S. Lewis (pending admission *pro hac vice*)
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:    (212) 732-3200
Fax:    (212) 732-3232
Email: lewis@clm.com

*Attorneys for Mikhail Fridman, Petr Aven, and German Khan*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2020, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

_/s/ Adam L. Schwartz_
Adam L. Schwartz

# EXHIBIT A

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

### APPEAL NO. 18-15295

**ALEKSEJ GUBAREV,**
**XBT HOLDING S.A.,**
**And WEBZILLA, INC.,**

        **Plaintiffs-Appellants,**

    v.

**BUZZFEED, INC.,**
**And**
**BEN SMITH,**

        **Defendants-Appellees.**

————————————————/

**On appeal from the United States District Court Southern District of Florida, Case No. 17-cv-60426-UU**

### BRIEF FOR AMICI CURIAE
## MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN
### IN SUPPORT OF APPELLANTS

Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.: (212) 732-3200
Fax: (212) 732-3232
lewis@clm.com
walsh@clm.com

Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.: (305) 350-5116
Fax: (305) 982-0079
aschwartz@homerbonner.com

*Attorneys for Proposed Amici Mikhail Fridman, Petr Aven, and German Khan*

## CERTIFICATE OF INTERESTED PARTIES AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, *et seq*., Proposed

Amici Mikhail Fridman, Petr Aven, and German Khan file this Certificate of

Interested Persons and Corporate Disclosure Statement:

Aven, Petr

Black, Roy

Bolger, Katherine M.

BuzzFeed, Inc.

Carter Ledyard & Milburn LLP

Ciampa Fray-Witzer, LLP

Cobb, Brady

Comcast Corporation (CMCSA)

Davis, Wright, Tremaine, LLP

Fulop, Dylan

Fray-Witzer, Evan

Fridman, Mikhail

Gubarev, Aleksej

Gubarev, Valentin

Homer Bonner Jacobs, P.A.

Khan, German

i

Kelly, Chelsea T.

Lazier, Adam

Lewis, Alan S.

Lopez, Jared

NBC Universal Media LLC

Schary, Alison

Schwartz, Adam

Shayefar, Matthew

Seigel, Nathan

Smith, Ben

The Honorable Ursula Ungaro

Walsh, John J.

Webzilla, Inc.

White, Madelyn K.

XBT Holding, S.A.

## STATEMENT REGARDING ORAL ARGUMENT

Proposed Amici Mikhail Fridman, Petr Aven, and German Khan request oral argument.  Based upon the record and the questions presented, oral argument, and Proposed Amici's participation therein, would aid this Court in deciding the case.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE
DISCLOSURE STATEMENT .................................................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................................ iii

TABLE OF CONTENTS ............................................................................... iv

TABLE OF AUTHORITIES .......................................................................... vi

INTEREST OF AMICI CURIAE .................................................................... 1

QUESTIONS PRESENTED ........................................................................... 4

SUMMARY OF ARGUMENT ....................................................................... 5

ARGUMENT
NEW YORK'S FAIR REPORT PRIVILEGE DOES NOT  IMMUNIZE
THE PUBLICATION  OF THE DEFAMATORY STATEMENTS AT
ISSUE ...................................................................................................... 7

A.   To Invoke the Section 74 Privilege, Defendants Were Required to
     Have *Reported* that CIR 166 Was Part of an Official Proceeding ................ 7

     1.   The District Court's Summary Judgment Decision Abandoned
          the Core Legal Principle that Limits Section 74 to Publications
          that *Report* a Connection Between Official Action and the
          Defamatory Statement for Which Immunity Is Sought ........................ 12

B.   Section 74 May Not Be Invoked Because Defendants Did NOT
     Report that any of the Defamatory Statements in CIR 166 Were Used
     in or Part of any Official Activity ................................................................. 19

     1.   The Article Does Not Report that the Entire Steele Dossier Was
          the Subject of Classified Briefings, an FBI Investigation, or any
          Other Official Proceeding .................................................................... 20

     2.   Contrary to the District Court's Finding, the Article Does Not
          Report that "Parts of Report 166 Were Subject to Official
          Action" ................................................................................................ 21

C.   Section 74 Does Not Permit "Extensions" of the Privilege from Parts
of a Report Covered by Section 74 to Parts that Are Not ............................. 23

CONCLUSION .................................................................................................... 24

CERTIFICATE OF COMPLIANCE ..................................................................... 26

CERTIFICATE OF SERVICE ............................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abakporo v. Sahara Reporters,*
    2011 U.S. Dist. LEXIS 109056 (E.D.N.Y. Sept. 26, 2011) ............................ 11

*Alf v. Buffalo News, Inc.,*
    995 N.E.2d 168 (2013)......................................................................... 15

*Cholowsky v. Civiletti,*
    887 N.Y.S.2d 592, 69 A.D.3d 110 (N.Y. App. Div. 2009) ................................ 9

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.,*
    868 F. Supp. 501 (E.D.N.Y. 1994) ........................................................ 9

*Fine v. ESPN, Inc.,*
    11 F. Supp. 3d 209 (N.D.N.Y. 2014)................................................ 8, 13, 15

*Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York,*
    475 N.Y.S.2d 383 (N.Y. App. Div. 1984) ............................................... 17

*Gubarev v. BuzzFeed, Inc.,*
    2018 U.S. Dist. LEXIS 97246 (S.D. Fla. June 5, 2018)
    ("*Gubarev I*") ................................................................ 6, 11, 12, 23

*Gubarev v. BuzzFeed, Inc.,*
    340 F. Supp. 3d 1304 (S.D. Fla. 2018)
    ("*Gubarev II*")................................................. 5-7, 12, 13, 15-20, 22-24

*Hogan v. Herald,*
    446 N.Y.S.2d 836 (N.Y. App. Div. 1982), *aff'd*, 444 N.E.2d 1002
    (N.Y. 1982) .............................................................................. 10

*Holy Spirit Ass'n for the Unification of World Christianity v. New York
    Times Co.,*
    399 N.E.2d 1185 (1979)............................................................... 13, 14

*Ramos v. El Diario Publishing Company, Inc.,*
    229 N.Y.S.2d 652 (N.Y. App. Div. 1962) ............................................... 9

*Wenz v. Becker*,
    948 F. Supp. 319 (S.D.N.Y. 1996) ......................................................................... 9

STATUTES

N.Y. Civ. Rights Law § 74 ................................................................................. 7, 13

## INTEREST OF AMICI CURIAE

Proposed Amici Mikhail Fridman, Petr Aven, and German Khan (collectively, the "Amici") respectfully submit this brief in support of the appeal by Plaintiffs.

Amici, like Plaintiffs, sued Defendants for publishing defamatory statements attached to a January 10, 2017 Article on BuzzFeed's website titled "These Reports Allege Trump Has Deep Ties to Russia" (the "Article").[1]  Central to both cases is whether a New York statute that conditionally affords immunity to the publisher of a defamatory statement—*if* published to *report on* official government action—shields Defendants from liability.[2]

In both cases, the statements alleged as defamatory are in memoranda authored by Christopher Steele.  A memorandum dated September 14, 2016, known as CIR[3] 112, contains the statements defamatory *of Amici*.  A different memorandum dated December 13, 2016, known as CIR 166, contains the statements defamatory *of Plaintiffs*.  CIR 112 and 166 are among *seventeen*

---

[1] Amici's lawsuit is captioned *Fridman, et al. v. BuzzFeed, Inc., et ano.*, Index No. 154895/2017 (Sup. Ct. N.Y. Co.).

[2] On April 9, 2019, the First Department of the Appellate Division, Supreme Court will hear oral argument in an appeal by Amici addressing the correctness of Defendants' invocation of the fair report privilege in the New York lawsuit (No. 2018-CV-0919).

[3] CIR is shorthand for Company Intelligence Report—Steele's way of referring to the memoranda.

memoranda created by Steele over a six-month period in 2016 as part of the same engagement[4] (the "Steele Memoranda").  Eventually provided to the media, the Steele Memoranda acquired a moniker, the "Steele Dossier," as if they were a single document—which they are not.  Defendants embedded all seventeen memoranda in the Article.[5]  D.E. 214-4, Exs. 2, 3.

In both lawsuits, Defendants claim the protection of New York's fair report privilege, arguing that they have a privilege that extends to their publication of the *entire* Steele Dossier.  Defendants ground that contention in their *characterization* of the Article as *reporting* the entire "Steele Dossier" to be the subject of official proceedings.  Plaintiffs and Amici disagree, emphasizing that the Article did not *report* that the *entire* collection of Steele Memoranda was the subject of official government action.  Hence, Plaintiffs and Amici argue that the fair report privilege demands a focus on whether there is a perceptible connection between the government activity as described by Defendants in the Article and, respectively, *the defamatory statements in CIR 112 and 166*.  As Defendants argue in both cases

---

[4] Steele and his firm were engaged to create the memoranda by Glenn Simpson and Fusion GPS, which in turn were engaged by a law firm, Perkins Coie, working for the Clinton presidential campaign and the Democratic National Committee. *See* D.E. 388, p. 3.

[5] The Article provided a hyperlink to a CNN article.  D.E. 214-2, Ex. 2.  The District Court held that, for purposes of New York's fair report privilege, the Article *includes* the content of the hyperlinked CNN article.  Hence, Amici's references to the Article *include* the content of the CNN article.

that the privilege applies globally to their publication of the *entire* "Steele Dossier," Amici have an important interest in whether this Court accepts that argument.

Although Amici's pending lawsuit is based on a set of facts similar to this case, there are also factual differences—i.e., whether the Article reported that CIR 166 was part of official proceedings is a different question from whether the Article reported that CIR 112 was part of official proceedings. Thus, Amici have an important interest in the Court's correct resolution of the issues common to both cases—but in a way that does not blur potentially significant factual differences between the two cases.

No counsel for any party authored any part of this brief. No party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person (other than Amici) contributed money toward the preparation or submission of this brief.

## QUESTIONS PRESENTED

1.     Whether the District Court erred in holding that, to invoke New York's fair report privilege, Defendants were not required to "show official action with respect to the specific allegations" that defame Plaintiffs?

2.     Whether the District Court erred in finding that Defendants' Article *reported* the existence of "official action" regarding "the allegations about Plaintiffs?"

3.     Whether the District Court erred in holding that New York's fair report privilege permits an "extension" from those portions of a document in the government's possession "plainly covered by the privilege" to defamatory statements in the same document neither reported nor "revealed" to have been "subject to official action?"

4

## SUMMARY OF ARGUMENT

Respectfully, by granting summary judgment to Defendants based on their assertion of New York's fair report privilege, the District Court erred.  Contrary to the court's conclusion, Defendants' republication of defamatory statements about Plaintiffs—in a memorandum that Defendants attached to an article on Defendant BuzzFeed's website—is not within the ambit of the fair report privilege. The threshold requirement for invocation of New York's privilege is a *"report of an[]
. . . official proceeding."*  N.Y. Civ. Rights Law § 74 (emphasis added).  But here, Defendants' Internet Article did not report to readers that the statements defamatory of Plaintiffs were being used in an official proceeding.  At best, for Defendants, the Article reported only that the document containing the statements defamatory of Plaintiffs was in the government's possession, but that does not satisfy Section 74.  Section 74 requires a report that an average reader would understand to convey official use of the defamatory statements, and possession is not official use.

In granting summary judgment, the District Court applied the wrong standard and also mischaracterized the content of Defendants' description [in its Article] of the government activity.  Thus, the District Court held that the fair report privilege does not require the accurate reporting of "official action with respect to the specific [defamatory] allegations."  *Gubarev v. BuzzFeed, Inc.*, 340

5

F. Supp. 3d 1304, 1315 (S.D. Fla. 2018) ("*Gubarev II*").  This conclusion was not

only incorrect, but notably in direct contradiction of the District Court's previous

correct holding (in its Rule 12(c) decision) that an "important limitation" on the

New York fair report privilege restricts it to reporting "official action being taken

*regarding the allegedly defamatory matter*."  *Gubarev v. BuzzFeed, Inc.*, 2018 U.S.

Dist. LEXIS 97246, *18 (S.D. Fla. June 5, 2018) ("*Gubarev I*") (emphasis added).

The District Court also made a crucial factual error when it rejected as "incorrect"

the Plaintiffs' observation that "the Article does not state that there was any *official*

*action* about the specific allegations in the Dossier *relating to them*."  *Id.* at *25

(emphasis added).  It was the District Court, not the Plaintiffs, that was incorrect

on this point: the Article contained *no* report of *any* official actions about or

involving the allegations in the Dossier *about Plaintiffs*—as a plain reading of the

Article reveals.

Thus, when the District Court held that "Defendants [may] claim the

privilege's protection when the record reveals that certain parts of the Dossier were

subject to official action but does not reveal whether the specific allegations about

Plaintiffs were subject to official action[,]" *Gubarev II*, 340 F. Supp. 3d at 1316, it

erred.  The District Court started down that path with a statement that the

defamatory document at issue (CIR 166) "discuss[ed] two issues that were

indisputably the subject of official action," including "cooperation between

Trump's 'team' and Russian operatives." *Id.* After that observation, the District Court concluded that *portions* of that document were "plainly covered by the privilege," and then jumped to the additional legal conclusion that "the remainder of" the document—including its defamatory statements about Plaintiffs—was privileged by "extension." *Id.* at 1316-17. This "extension" goes against established New York law which mandates a discriminating application of Section 74 in which parts of a document may not be covered by the privilege even though other parts are—and requires a party seeking to invoke the protections of Section 74 to show a *perceptible connection* between the defamatory statements and the official proceeding.

## ARGUMENT

### NEW YORK'S FAIR REPORT PRIVILEGE DOES NOT IMMUNIZE THE PUBLICATION OF THE DEFAMATORY STATEMENTS AT ISSUE

A.   **To Invoke the Section 74 Privilege, Defendants Were Required to Have *Reported* that CIR 166 Was Part of an Official Proceeding.**

Civil Rights Law Section 74—the statute that defines the scope of the fair report privilege in New York—imposes two conditions for the immunity it conditionally confers against liability for publishing defamatory statements. The first requirement is that the statements alleged in the lawsuit to be libelous were published as part of a "*report of an[] . . . official proceeding*" and the second requirement, which only becomes relevant if the publisher has made such a report,

7

is for the publisher to prove that the report is "fair and true."  Contrary to the

District Court's conclusion, and as explained in Point B below, Defendants failed

to meet even the first requirement because their Article attached statements

defamatory of Plaintiffs without *reporting* that the defamatory statements—or

anything in CIR 166—was being used in any official proceeding.

Both the words of Section 74—its express requirement of a "report"—and

its purpose—to afford immunity as necessary to protect a publisher's ability to

report on official government proceedings—make it clear that the threshold

requirement for invoking Section 74 is *reporting* that not only describes official

government proceedings, but also reports some relationship or connection between

the published defamatory statement and those government proceedings.

Otherwise, a publisher could obtain immunity for publishing a defamatory

statement that is *merely* in the government's files and *not* being used in an official

proceeding, so long as the publisher *attaches* the defamatory statement to an

Article about a government proceeding.

Thus, courts have repeatedly emphasized that Section 74 does *not* immunize

a defamatory statement, even if the statement was sent to or possessed by the

government, *unless* the article in question indicates that the official governmental

actions relate specifically *to the statement[s] alleged to be defamatory.  Fine v.*

8

*ESPN, Inc.*, 11 F. Supp. 3d 209, 216 (N.D.N.Y. 2014) (holding that for Section 74 to apply there "must be some *perceptible connection* between the challenged [defamatory] report and the [government] proceeding") (quotation and alteration omitted, emphasis added); *Wenz v. Becker*, 948 F. Supp. 319, 322 (S.D.N.Y. 1996) ("the [Section 74] privilege applies *only* where . . . the allegedly defamatory statement is connected to a [governmental] proceeding") (emphasis added); *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 69 A.D.3d 110, 114 (N.Y. App. Div. 2009) (holding that it is "*incumbent* on the party asserting the privilege to establish that *the statements at issue reported on a[n] [official] proceeding*") (emphasis added) (quotation omitted); *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 868 F. Supp. 501, 509 (E.D.N.Y. 1994) (surveying New York cases interpreting Section 74 and noting that where Section 74 "has been applied, the connection between the challenged [defamatory] report and the judicial, legislative, or official proceeding in question has been far more *direct*") (emphasis added); *see also Ramos v. El Diario Publishing Company, Inc.*, 229 N.Y.S.2d 652, 653 (N.Y. App. Div. 1962) (in connection with the predecessor statute to Section 74, rejecting fair report privilege defense as "insufficient since the allegedly libelous matter is not *on its face* confined to describing and characterizing actions occurring during any judicial or official proceeding") (emphasis added).

9

The requirement of a connection between the official activity (as described in the publication) and the alleged defamatory statement serves the policy goal of the fair report privilege:

> The principal theory behind the rule of fair report is that the publisher acts as the agent of the public, reporting only that which others could hear for themselves were they to attend the proceedings. It has also been justified on policy grounds because the public has supervisory or oversight responsibilities over public bodies and officers.

*Hogan v. Herald*, 446 N.Y.S.2d 836, 841 (N.Y. App. Div. 1982), *aff'd*, 444 N.E.2d 1002 (N.Y. 1982). Unless there is a reported connection between the government activity and the defamatory statements, this rationale is inapplicable: when, as here, all that has been reported about the challenged defamatory statements is that they were in the government's possession, members of the public could not have heard or seen if or how the defamatory statements were being used by the government. Moreover, the public could not exercise a supervisory function regarding a government official's use of the defamatory statements in her official capacity when, as here, no government official was reported to have used CIR 166 in an official capacity.

The District Court, in its Rule 12(c) decision, expressly recognized and reaffirmed Section 74's limits, holding that one of the "important limitations on the privilege" "insure[s] that [it is applicable only when] the reader *can ascertain that what is reported* as true is that there *is an official proceeding* underway or official

10

action being taken *regarding the allegedly defamatory matter.*" *Gubarev I*, 2018

U.S. Dist. LEXIS 97246 at *18 (emphasis added).  This holding was consistent

with Section 74's text, purpose, and all of the above-cited decisions reaffirming

Section 74's *limitation* to reports that *connect* published defamatory statements to

their use in official government proceedings.

The District Court also recognized that the "official proceeding" requirement

of Section 74 is not satisfied by the mere fact that government personnel may have

received and *possessed* a copy of CIR 166.  Instead, the District Court approvingly

cited the holding of *Abakporo v. Sahara Reporters*, 2011 U.S. Dist. LEXIS 109056

(E.D.N.Y. Sept. 26, 2011).  *Gubarev I*, 2018 U.S. Dist. LEXIS 97246 at *19.  As

the *Abakporo* court explained, the assumed fact that a document "reached the

relevant [governmental] authorities . . . [does] not transform the [document] into

part of an 'official proceeding' under Section 74."  *Abakporo*, 2011 U.S. Dist.

LEXIS 109056, at *26-27.  Doing so "would create a recipe for libel, as specious

allegations could be broadcast with impunity once sent" to the government.  *Id.* at

*29.  That should have led the District Court to reject Defendants' invocation of

the privilege, given that the only report arguably made by Defendants about the

government and CIR 166 is that the Dossier [including CIR 166] "reached the

relevant [ ] authorities."  *Id.* at *26-27.  *See Infra* at 19-22.

11

1.   **The District Court's Summary Judgment Decision Abandoned the Core Legal Principle that Limits Section 74 to Publications that *Report* a Connection Between Official Action and the Defamatory Statement for Which Immunity Is Sought.**

In its Rule 12(c) decision, the District Court *correctly* articulated two key legal principles applicable here: that the Section 74 privilege may only be invoked where a challenged publication reports on "official action being taken *regarding the allegedly defamatory matter*" and that the privilege is not available based on reporting of the government's mere possession of a document containing defamatory statements. *Gubarev I*, 2018 U.S. Dist. LEXIS 97246 at *18-19.

Inexplicably, the District Court abandoned these legal principles in the summary judgment decision. Noting Defendants' *failure* to demonstrate "whether the particular allegations about Plaintiffs were specifically the subject of these official actions," the District Court proclaimed that "the issue of whether there was official action with respect to the specific allegations about Plaintiffs has taken on more importance than previously." *Gubarev II*, 340 F. Supp. 3d at 1315. Then, in plain contradiction of its Rule 12(c) decision, the District Court concluded that Defendants "need *not* show official action with respect to the specific allegations concerning Plaintiffs." *Id.* That holding not only cannot be reconciled with the 12(c) ruling, but also directly contradicts Section 74's requirement—via the "fair and true" provision—that a party invoking its protections must *prove* the occurrence of the same government activity it is required to have *reported. See*

12

N.Y. Civ. Rights Law § 74 (providing protection from libel suits for "publication of a fair and true report of any . . . official proceeding").

In abandoning the requirements of a reported (and proven) connection between an official act and "the specific allegations concerning Plaintiffs," the District Court primarily relied on its understanding of a New York Court of Appeals case, *Holy Spirit Ass'n for the Unification of World Christianity v. New York Times Co.*, 399 N.E.2d 1185 (N.Y. 1979) ("*Holy Spirit*"), as well as a federal district court decision, *Fine v. ESPN,* 11 F. Supp. 3d at 216-217, and its own Rule 12(c) decision. *See Gubarev II*, 340 F. Supp. 3d at 1316-17. However, none of those sources support the conclusion that Section 74 immunity requires anything less than a *report of* official action *relating to* the defamation for which immunity is sought.

*Holy Spirit* is inapposite. It concerned three New York Times articles about intelligence reports that were recently released to the public by a government body—a congressional committee. The intelligence reports revealed the "tentative" conclusion of the intelligence agencies that the Rev. Sun Myung Moon's Unification Church was a "political tool" of the Korean CIA. *Holy Spirit,* 399 N.E.2d at 1187. One Times article described that tentative conclusion by a government official as "confirmed." The court held that this and other similar statements by the Times, characterizing the intelligence reports, were within

13

Section 74's ambit. *Id.* at 1187-88. Because the intelligence agency review (including the agencies' conclusions *about the plaintiffs*) described in the Times articles constituted official proceedings, the issue in *Holy Spirit* was not, as in this case, whether the publisher had reported the existence of official proceedings relating to the defamatory statements—the New York Times clearly had done so. Instead, the issue in *Holy Spirit* was confined to whether the Times' characterizations of the intelligence agencies' analysis was "fair and true." On that question, although the New York Court of Appeals perceived some of the Times' characterizations of the intelligence agency reports to be "imprudent," it held that the Times articles as a whole were not "unfair" characterizations of the intelligence agency activity and therefore satisfied Section 74's "fair and true" requirement. *Id.*

In holding that a report satisfies the "fair and true" requirement of Section 74 when it is "substantially accurate," *id.* at 1187, the New York Court of Appeals reaffirmed a longstanding legal principle, but one that is of little aid to the disposition of this appeal. In this case, the question that lies at the heart of whether Defendants may lay claim to a Section 74 privilege is not whether Defendants made substantially accurate or inaccurate statements about government activity relating to Plaintiffs. Instead, the problem for Defendants is that they published defamatory statements about Plaintiffs *without* ever reporting—accurately or inaccurately—any government activity that related to Plaintiffs.

14

*Holy Spirit* does not alter the requirement that the party seeking Section 74 immunity must *report* official action *relating to* the defamation for which immunity is sought.  Thus, by citing *Holy Spirit* for its conclusion that Section 74 does *not* require the reporting of "official action with respect to the specific [defamatory] allegations," the District Court deployed *Holy Spirit* for a principle it does not support or even discuss. [6]  *See Gubarev II*, 340 F. Supp. 3d at 1315-16.

Nor is the District Court's decision supported by the other case on which it principally relied, *Fine v. ESPN*.  It is ironic that the District Court relied on *Fine* because its holding is irreconcilable with the District Court's decision.  *Fine* expresses the principle that, to invoke Section 74, "there *must* be some perceptible connection between the challenged [defamatory] report and the . . . [official] proceeding."  11 F. Supp. 3d at 216 (internal citation omitted) (emphasis added).  Although *Fine* recognized that it "has not been clearly defined" *how direct* that connection must be, *id.*, it *indisputably requires a reported connection*, sufficient to be understandable to an average reader, between the official proceeding described in the publication and the "report" challenged as defamatory.  Thus, *Fine*

---

[6] Another case cited by the District Court, *Alf v. Buffalo News, Inc.*, 995 N.E.2d 168 (N.Y. 2013), simply tracks *Holy Spirit* for its "substantially accurate" holding, which, as discussed above, does not aid the resolution of this appeal.  In *Alf*, plaintiffs took issue with the Buffalo News' characterization of the outcome of an investigation involving the plaintiff's company.  Here, the issue is not whether the Article was "substantially accurate" in its description of an official proceeding linked to the defamatory statements in CIR 166, but rather whether the Article reports on *any* official proceeding *linked to Plaintiffs*—as it must.

15

requires the rejection of the District Court's conclusion affording a privilege to Defendants' publication of CIR 166 because Defendants did *not* report *any* connection between the government activity described in the Article and the statements in CIR 166 that defame Plaintiffs.

In the same vein, the District Court rationalized its failure to apply *Fine*'s perceptible connectedness test—and the well-recognized principle that Section 74 can apply to some defamatory statements in a publication without applying to other defamatory statements in the same publication—because Defendants "simply published" the "Dossier" and "did not editorialize." *Gubarev II*, 340 F. Supp. 3d at 1317. However, these principles (perceptible connectedness and discriminating application of the privilege within a document) are perfectly capable of application here: Plaintiffs do not argue that Defendants lost Section 74 immunity by *editorializing* inaccurately about government proceedings relating to the defamatory statements. Instead, more fundamentally, Plaintiffs argue that Defendants are unable to invoke Section 74 because their defamatory Article fails to *report* on government proceedings relating to the defamatory statements. Even *if* Defendants arguably reported that *some* of the seventeen Steele Memoranda were the subject of official proceedings, they did not *report* that CIR 166 was the subject of official proceedings. The values inherent in Section 74 are honored perfectly by immunizing the publication of the former without protecting the latter.

16

There is nothing about the fact that BuzzFeed "simply published" CIR 166 without "editorializing" that impedes the application of these well-recognized limitations on the invocation of Section 74.  Indeed, a discriminating application of Section 74 is consistent with the overriding principle that the Section 74 privilege is *limited* to that part of a publication that actually reports on official activity.  *See Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York*, 475 N.Y.S.2d 383, 389 (N.Y. App. Div. 1984) (Section 74 privilege applied to portion of article which described official reports, but not to portion that did not describe official investigation.).  Accepting the rules Defendants propose would convert Section 74 into a license to publish defamatory statements that are not part of any official proceedings.

Relatedly, the District Court declined to conduct a "line-by-line" review of the thirty-five pages of the "Dossier" to determine whether the part of it defaming Plaintiffs had been reported by Defendants in the Article to be the subject of any official action.  The District Court expressed concern that if BuzzFeed had to *read* the thirty-five pages before it placed them on the Internet, in order to assess whether its defamatory statements were part of the government activity BuzzFeed was going to report, this would impose "*extensive investigatory requirements* on a news organization" incompatible with reasonable expectations for a news organization. *Gubarev II*, 340 F. Supp. 3d at 1317 (citing *Reuber v. Food Chem.*

*News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991)) (emphasis added).  Not only is that

analysis a failure to apply Section 74's requirements, it is also illogical.  BuzzFeed

could have satisfied Section 74's threshold requirement by attaching any parts of

the "Dossier" that its Article (and CNN's) reported to be the subject of official

government proceedings without any "extensive investigatory" efforts.  All that

BuzzFeed had to do was to limit its publication of defamatory statements contained

in the thirty-five-page "Dossier" to the defamatory statements that its short article

*reported* to be the subject of official action.  The fair report privilege does not

extend immunity further.  In sum, contrary to the lower court's ruling, immunity

for republishing one defamatory statement that *is* perceptibly connected to a

government proceeding does not logically give rise to immunity for republishing a

different defamatory statement, about another person, that *is not* part of a

government proceeding.

Having failed, in its Summary Judgment decision, to identify support for its

elimination of Section 74's threshold requirement of a reported connection

between an official proceeding and the defamation, the District Court was reduced

to repeating an erroneous conclusion from its own Rule 12(c) decision.  The

District Court repeated that "it would undermine the privilege to require that one

who reports on official action tie every specific allegation in the [defamatory]

report to a specific instance of official action." *Gubarev II*, 340 F. Supp. 3d at

1314.  In doing so, the District Court noted it had cited *Holy Spirit* for that

conclusion in its Rule 12(c) decision, but as the above discussion of that case

reveals, *Holy Spirit* does *not* endorse Section 74 immunity for any published

defamatory statement *not* reported to be the subject of official action.  In any event,

even *if* Section 74 could be properly invoked to immunize the publication of a

number of related defamatory statements about a plaintiff where the publication

connects government activity to only *some* of those related defamatory statements,

the District Court was wrong to conclude that such an approach could bring

Defendants' statements about Plaintiffs within the ambit of Section 74 here.  It

does not, because, as demonstrated below, Defendants' Article did not report that

*any* of the statements defamatory of Plaintiffs in CIR 166 were the subject of

official action.

**B.**     **Section 74 May Not Be Invoked Because Defendants Did NOT Report that any of the Defamatory Statements in CIR 166 Were Used in or Part of any Official Activity.**

As the District Court noted, Defendants proffered two theories for the notion

that their Article allowed them to invoke Section 74 immunity for defaming the

Plaintiffs.  First, they claimed to have reported and proved that the entire Steele

Dossier [presumably including CIR 166] "was subject to official action."

"Alternatively," Defendants argued that their Article accurately reported that "parts

of Report 166 were subject to official action."  *Gubarev II*, 340 F. Supp. 3d at

19

1316.   The District Court should have rejected both of these theories because they are contradicted by the content of the Article.  Neither the BuzzFeed nor the CNN Article reported that the entire "Dossier," CIR 166, or the defamatory statements it contains, were the subject of official action.

### 1.   The Article Does Not Report that the Entire Steele Dossier Was the Subject of Classified Briefings, an FBI Investigation, or any Other Official Proceeding.

In support of its Motion for Summary Judgment BuzzFeed contended that "the Dossier was a document that the Article (including the hyperlinked CNN Article) indicate[d] was part of classified briefings and an FBI investigation." D.E. 225,  p. 4 (internal quotations omitted) (alteration in original).  The District Court apparently accepted that characterization of the CNN article, finding that "the Dossier was [reported to be] subject to official action" and that such "official action was described in the Hyperlinked CNN Article" and similarly that "the CNN Article stated that . . . the FBI was investigating the truth of the Dossier's allegations." *Gubarev II*, 340 F. Supp. 3d at 1313, 1318-19.  But those statements about the content of the CNN article are simply wrong.

Indeed, neither the Article nor the CNN article reported [or "indicated"] that the entire "Dossier," CIR 166 included, was "part of classified briefings" or "an FBI investigation."  The BuzzFeed Article does not so much as mention *an FBI investigation,* much less identify documents that were "part of" it.  And while the

20

CNN article used the phrase "these allegations" in describing what "[t]he FBI is investigating," the CNN article did *not* say that the allegations under investigation included *all* allegations made in the "Dossier" [a term the CNN article did not use]. Nor did the Article or CNN article "indicate[]" that the entire Dossier including CIR 166 was "part of classified briefings." As for the BuzzFeed Article, its only reference to what was "given" to the two Presidents in the briefings is a statement that "CNN reported" that the presidents were provided with a "two-page synopsis," followed by a hyperlink to the CNN article. D.E. 214-4, Ex. 2. But the CNN article does *not* state or even suggest that all seventeen Steele Memoranda including CIR 166 were "part of classified [presidential] briefings" or included in the synopsis. Instead, CNN reported that only "some of the information" from those memoranda was included in the synopsis given to the two presidents.

2. **Contrary to the District Court's Finding, the Article Does Not Report that "Parts of Report 166 Were Subject to Official Action."**

The District Court's finding that the CNN article reported that "parts of Report 166 were subject to official action" fares no better than the notion that the CNN article reported official action relating to all seventeen of the Steele Memoranda. To the contrary, the CNN article does not mention CIR 166, much less the defamatory accusations about Plaintiffs that it contained. Therefore, the

21

CNN article simply did not report that "parts of Report 166 were subject to official action."

The District Court's contrary finding emphasized that CIR 166 and the Article both "discuss[]" "allegations of cooperation between Trump's 'team' and Russian operatives"—allegations of a kind that the Article *did* report to be the subject of official action. *Gubarev II*, 340 F. Supp. 3d at 1316.  In other words, the District Court appeared to conclude that some readers of the Article *might* conclude or deduce that CIR 166 was part of the government's inquiry into collusion between the Trump campaign and the Kremlin—even though the Article did not report that the government was using CIR 166 in that inquiry.[7]  In that fashion, the District Court replaced Section 74's fair report standard with a fair inference or deduction standard.  That was unfaithful to the text of Section 74, which is not triggered by inferences or deductions.  Instead, Section 74 is triggered *only* by an actual *report* that the defamatory statements are part of a proceeding— and here, the Article contains no such report.

---

[7] No such reasonable deduction could be made about CIR 112.  Unlike CIR 166, CIR 112 does not discuss "cooperation between Trump's team" and the Kremlin, as it does not even mention Trump or anyone affiliated with him or his campaign. *See* D.E.214-4, pp. 25-26 of Ex. 3 to Complaint for Damages.

C.    **Section 74 Does Not Permit "Extensions" of the Privilege from Parts of a Report Covered by Section 74 to Parts that Are Not.**

Having nevertheless concluded, erroneously, that certain "portions of Report 166 [] are plainly covered by the privilege," the District Court also applied the privilege "[to] the remainder of the Report [all of 166]," an "extension" for which the court cited only one case—*Fine*. *See Gubarev II*, 340 F. Supp. 3d at 1317. Thus, the District Court concluded that since some of what was alleged in CIR 166 was purportedly the subject of a government investigation, BuzzFeed's publication of the challenged defamatory statements in that memo was also protected by Section 74, even if a careful "line-by-line" review of "each statement in Report 166" would not show government action regarding "each separate allegation." *Id.* Respectfully, the court's "extension" of the privilege to encompass parts of a document not reported to be under investigation is not supported by *Fine* or any other authority. Indeed, the extension conflicts with the principle that the privilege is available only when a reader can "ascertain that what is reported as true is that there is an official proceeding underway or official action being taken *regarding the allegedly defamatory matter*." *Gubarev I*, 2018 U.S. Dist. LEXIS 97245 at *18 (emphasis added). In this case, that principle required the rejection of Section 74 immunity for Defendants' publication of the statements defamatory of Plaintiffs because a reader *could not* ascertain as true the notion of any "official action taken regarding the allegedly defamatory matter." Indeed, as the District Court

23

recognized, but then ignored, it is "missing from the record [] whether the particular allegations about Plaintiffs were specifically the subject of these official actions." *Gubarev II*, 340 F. Supp. 3d at 1315.

## CONCLUSION

By allowing BuzzFeed to invoke Section 74 for the publication of defamatory statements about Plaintiffs, merely because Defendants made a report on other official activity, *not reported* to encompass the defamatory statements at issue in the case, the District Court improperly broadened the immunity afforded by Section 74. Respectfully, given the District Court's inability to find that Defendants reported on an official proceeding concerning the defamatory statements at issue at all, much less accurately, the Court should reverse the District Court's decision and reinstate the Complaint.

Dated: March 28, 2019

Respectfully submitted,

By: _____

Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.: (212) 732-3200
Fax: (212) 732-3232
lewis@clm.com
walsh@clm.com

-and-

24

Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.:  (305) 350-5116
Fax:  (305) 982-0079
aschwartz@homerbonner.com

*Attorneys for Proposed Amici Mikhail Fridman,
Petr Aven, and German Khan*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P.

29(a)(5) because this document contains 5,445 words, excluding the parts of the

document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

document has been prepared in a proportionally spaced type-face using Microsoft

Word 2010 in 14 point Times New Roman font.

Dated:  March 28, 2015

Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:  (212) 732-3200
Fax:  (212) 732-3232
lewis@clm.com
walsh@clm.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2019, I served the foregoing on counsel of record, Evan Fray-Witzer (Evan@CFWLegal.com), Brady J. Cobb (bcobb@cobbeddy.com), Dylan Michael Fulop (dfulop@cobbeddy.com), Valentin Gurvitis (vagurvits@bostonlawgroup.com), Matthew Shayefar (matt@shayefar.com), Katherine Bolger (katebolger@dwt.com), Roy Black (rblack@royblack.com), Adam Lazier (adamlazier@dwt.com), Jared M. Lopez (jlopez@royblack.com), Cary McClelland (carymcclelland@dwt.com), Alison Schary (alisonschary@dwt.com), and Nathan Siegel (nathansiegel@dwt.com), using this Court's CM/ECF system.

*/s/ Adam L. Schwartz*
Adam L. Schwartz

27

# EXHIBIT B

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## APPEAL NOS. 18-15295, 19-10261

---

**ALEKSEJ GUBAREV,**
**XBT HOLDING S.A.,**
**and WEBZILLA, INC.,**

        **Plaintiffs-Appellants,**

    **v.**
                    **On appeal from the United States**
                    **District Court Southern District of**
                    **Florida, Case No. 17-cv-60426-UU**

**BUZZFEED, INC.,**
**and BEN SMITH,**

        **Defendants-Appellees.**

_____/

## SUPPLEMENTAL BRIEF OF AMICI CURIAE
## MIKHAIL FRIDMAN, PETR AVEN, AND GERMAN KHAN
## IN SUPPORT OF APPELLANTS

Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:  (212) 732-3200
Fax:  (212) 732-3232
lewis@clm.com
walsh@clm.com

Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.:  (305) 350-5116
Fax:  (305) 982-0079
aschwartz@homerbonner.com

*Attorneys for Amici Mikhail Fridman, Petr Aven, and German Khan*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................... iii

AMICI'S REQUEST FOR PERMISSION TO FILE REPLY BRIEF ...................... 1

ARGUMENT .......................................................................................... 3

POINT I
   NOTHING IN THE BRIEFS FILED BY DEFENDANTS AND THE
   REPORTERS COMMITTEE, OR IN *FRIDMAN*, UNDERMINES THE
   CONCLUSION THAT NEW YORK'S FAIR REPORT PRIVILEGE
   DOES NOT IMMUNIZE DEFENDANTS' PUBLICATION  OF THE
   DEFAMATORY STATEMENTS AT ISSUE ........................................ 3

   A.   The Issue Before this Court Is Whether Defendants' Publication of
      the Statements Defaming Plaintiffs Is Privileged, Not Whether
      Publication of "the Dossier Is Protected" ...................................... 4

   B.   BuzzFeed's Publication, Including the CNN Article, Does Not
      Permit an Ordinary Reader to Determine that the Statements
      Defaming Plaintiffs Were Part of Any Official Proceeding ................ 8

   C.   The Possible Inference from the Articles that Someone May Have
      Read Report 166 While Preparing the Synopsis or Presidential
      Briefing Does Not Describe an Official Proceeding as to Report 166 ....... 14

   D.   Defendants' Argument Relies on a Distortion of Plaintiffs' and
      Amici's Position .................................................................... 16

   E.   Because the Terse New York *Fridman* Decision Relies Entirely on a
      Factual Determination, It Lacks Precedential Value and Was
      Improperly Submitted by Defendants as Rule 28(j) Supplemental
      "Authority" ........................................................................ 18

POINT II
  THE DISTRICT COURT CORRECTLY IDENTIFIED THE
  RELEVANT CONTROVERSY IN FINDING THAT PLAINTIFFS  ARE
  NOT LIMITED PURPOSE PUBLIC FIGURES...................................................20

CONCLUSION ...................................................................................................25

CERTIFICATE OF COMPLIANCE......................................................................26

CERTIFICATE OF SERVICE ..............................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abakporo v. Sahara Reporters*,
2011 U.S. Dist. LEXIS 109056 (E.D.N.Y. Sept. 26, 2011) ........................11, 15

*Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*,
68 F.3d 409 (11th Cir. 1995) ..................................................................6

*Cholowsky v. Civiletti*,
887 N.Y.S.2d 592 (N.Y. App. Div. 2009) ................................................8, 14, 15

*DiBella v. Hopkins*,
403 F.3d 102 (2d Cir. 2005) ..................................................................19

*Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York*,
475 N.Y.S.2d 383 (N.Y. App. Div. 1984) .............................................12, 15, 16

*Fridman v. BuzzFeed*,
97 N.Y.S.3d 476 (N.Y. App. Div. 2019) ...............................................1, 2, 18, 20

*Gertz v. Welch*,
418 U.S. 323 (1974) .............................................................................23, 24

*Hatfill v. The New York Times Co.*,
532 F.3d 312 (4th Cir. 2008) ...............................................................21, 22, 24

*Holy Spirit Ass'n for the Unification of World Christianity v. New York Times Co.*,
49 N.Y.2d 63 (1979) .............................................................................5

*In re Checking Account Overdraft Litig.*,
780 F.3d 1031 (11th Cir. 2015) ............................................................6

*Medico v. Time*,
643 F.2d 134 (3d Cir. 1981) .................................................................12, 15

*Nat'l Life Ins. Co. v. Phillips Pub., Inc.*,
793 F. Supp. 627 (D. Md. 1992) ...........................................................21

iii

*Silvester v. Am. Broadcasting Cos.*,
   839 F.2d 1491 (11th Cir. 1988) .............................................................................21

*Waldbaum v. Fairchild Publ'ns*,
   627 F.2d 1287 (D.C. Cir. 1980)....................................................................21, 24

**STATUTES**

N.Y. Civ. Rights L. § 74 ...............................................................................*passim*

**RULES**

FED. R. APP. P. 28(j)...........................................................................................19, 20

## AMICI'S REQUEST FOR PERMISSION TO FILE REPLY BRIEF

Amici Mikhail Fridman, Petr Aven, and German Khan ("Amici") request permission to submit this brief which addresses three submissions filed subsequent to Amici's initial brief: (1) Defendants' April 19 brief addressing the fair report privilege (and a new issue where Amici also have an interest—Plaintiffs' status as public or private figures) ("Defendants' Brief" or "Def. Br."); (2) the Reporters Committee's April 26 amicus brief supporting Defendants on the fair report issue ("Reporters Committee Brief" or "Rprtrs. Comm. Br.") (together with Defendants' Brief, the "Opposition Briefs"); and (3) the supplemental authority filed by Defendants addressing the May 2 interlocutory appeal decision of a state intermediate court, the New York Appellate Division, in *Fridman v. BuzzFeed*, 97 N.Y.S.3d 476 (N.Y. App. Div. 2019), the case in which Amici are plaintiffs ("*Fridman*").

The *only* case, from any jurisdiction, that the *Fridman* court mentioned was the District Court's Rule 12 decision in this case, underscoring the significance to Amici as plaintiffs in *Fridman* of how this Court rules on this appeal.  The *Fridman* court did not cite the District Court's Rule 12 decision for a legal principle, but instead, only to echo its understanding of the content of articles which are at the heart of the dispute over the availability of the fair report defense in both cases.  That is, the Appellate Division preceded its characterization of the

1

news articles (as having reported "classified briefings and/or an FBI investigation *concerning the dossier as a whole*") with the phrase "as in that case [Gubarev]." 97 N.Y.S.3d at 476-77.  Thus, the Appellate Division mentioned *Gubarev* only to express its perception that its understanding of the content of the articles was the same as the District Court's perception.

 The New York Appellate Division's evident willingness to adopt a factual finding made by the District Court in this case, even while the New York court was aware of this pending appeal, reinforces that Amici should be permitted to respond to arguments that have been made in support of BuzzFeed *after* Amici filed their initial brief, particularly given that some of those arguments have not been addressed by Plaintiffs.  Indeed, by characterizing the issue in its brief as about *the entire* "Dossier's" purported privileged character, BuzzFeed, represented by the same lawyers in each case, is not merely litigating this appeal on its own terms, but also attempting to use it as a vehicle to advance BuzzFeed's position against Amici in Amici's pending New York case.  Whether or not this Court ultimately accepts BuzzFeed's arguments, their potential impact on Amici in the *Fridman* case weighs heavily in favor of affording Amici permission to respond to the arguments that are being made here by and on behalf of BuzzFeed.

As explained in Amici's motion for leave to submit this brief, a comparison with the brief filed by Plaintiffs on June 3, 2019, reveals that this proposed brief is not duplicative as it covers issues not briefed by Plaintiffs' in their reply.

**ARGUMENT**

**POINT I**

**NOTHING IN THE BRIEFS FILED BY DEFENDANTS AND THE REPORTERS COMMITTEE, OR IN *FRIDMAN*, UNDERMINES THE CONCLUSION THAT NEW YORK'S FAIR REPORT PRIVILEGE DOES NOT IMMUNIZE DEFENDANTS' PUBLICATION  OF THE DEFAMATORY STATEMENTS AT ISSUE**

In this reply to the Opposition Briefs, Amici emphasize the following point: Defendants may not avail themselves of the fair report privilege because a necessary condition to its invocation is absent—*nothing* in either the BuzzFeed or CNN articles *reported* that the statements defaming Plaintiffs [or Amici] were part of an FBI investigation, a presidential intelligence briefing, or any other official proceeding.

3

**A.    The Issue Before this Court Is Whether Defendants' Publication of the Statements Defaming Plaintiffs Is Privileged, Not Whether Publication of "the Dossier[1] Is Protected"**

In its Rule 12(c) decision, the District Court correctly explained that one of

the "important limitations on the [fair report] privilege … insure[s] that [it is

limited to when] the reader *can ascertain that what is reported* as true is that there

*is an official proceeding* underway or official action being taken *regarding the*

*allegedly defamatory matter*."  *Gubarev v. BuzzFeed, Inc.*, 2018 U.S. Dist. LEXIS

97246, at *18 (S.D. Fla. June 5, 2018) ("*Gubarev I*") (emphasis added).  Amici's

opening brief emphasized the District Court's subsequent failure to apply this

principle when granting summary judgment to Defendants, Amici Br., 12-13.  Both

Defendants and the Reporters Committee ignore this critical point.  Neither explain

how the grant of summary judgment to BuzzFeed can be reconciled with the

District Court's Rule 12(c) decision, given that the article did *not* mention the

---

[1] BuzzFeed's article referred to the thirty-five pages of text it embedded as "[a] dossier" and as a "collection of memos," "reports," and "documents."  *See* D.E. 214-4, Ex. 2.  Thereafter, the media began to favor the terms "Trump Dossier" and "Steele Dossier."  Defendants, in using the phrase "Dossier," paint it as something whose privileged character *as a single document* is at issue, rather than focusing, as the law requires, on whether the challenged defamatory statements that are in one of its seventeen memos are privileged.  In this brief, Amici challenge the claim that a report that *some of* the allegations in the "Dossier" were the subject of government activity, would be sufficient to claim the privilege as to the *entire* collection of documents.

4

taking of any official action "regarding the allegedly defamatory matter." *Gubarev I*, 2018 U.S. Dist. LEXIS 97246, at *18.[2]

Instead, the Opposition Briefs argue that the publication of the defamatory statements is purportedly privileged because those statements can be found in a "*document*" (the thirty-five page "Dossier")—*other parts of which* (according to Defendants) the articles reported to be the subject of a government proceeding. Def. Br., 22-26; Rprtrs. Comm. Br., 18-19.  Thus, Defendants attempt to frame the issue as whether the "publication of *the Dossier* is protected."  Def. Br., 14 (emphasis added).  But this frames the issue incorrectly, as Section 74's application in an individual lawsuit can only immunize the publication of the statements *alleged in that lawsuit* to be defamatory.

Section 74 does not authorize a court to decree broader privileges for the entirety of larger documents or collections of documents (e.g., the entirety of the seventeen Steele memos) that contain statements about non-parties whose defamatory or privileged character is not the subject of a controversy before the

---

[2] The Opposition Briefs make no effort to refute the point made in Amici's opening brief that the District Court erred by relying on *Holy Spirit Ass'n for the Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63 (1979), for the notion that Section 74 does *not* require the reporting of "official action with respect to the specific [defamatory] allegations" in its summary judgment decision.  In that fashion, the Opposition Briefs effectively acknowledge that there is no authority from New York supporting the idea that Section 74 can be invoked absent actual reporting of official action *with respect to the defamatory allegations*.

court.  Basic principles of justiciability preclude this Court from reaching questions about the privileged character of any statements in the Dossier *other than those specific statements that defame Plaintiffs*.  *See*, *e.g.*, *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015) ("In the absence of both live claims and cognizable plaintiffs, the District Court's pronouncement … cannot be regarded as anything but an impermissible advisory opinion.") (quotation omitted); *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (In order for justiciable controversy to exist, "the case must touch the legal relations of parties having adverse legal interests") (quotation and amendment omitted).  Here, the only content of the Dossier whose publication is at issue before the Court is the content defaming Plaintiffs.

Once the question is properly framed, it is evident that Section 74's exception *prohibits* the application of the fair report privilege to the statements at issue since they were not reported to be part of a government proceeding:

> This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which *was not a part thereof*.

N.Y. Civ. Rights L. § 74 (emphasis added).

In seeking to avoid the conclusion that their conduct fits this exception, Defendants point to the statutory phrase "added by any person concerned in the

publication" and assert that it limits the exception to libels that are the "product of the [journalist's] own independent reporting," as distinguished from libels not written by the journalist seeking Section 74 immunity.  Def. Br., 24-25.  That contention is incorrect, for two independent reasons.

*First*, this statutory exception, in applying to *any* libelous matter "*added by*" someone "concerned in the publication," is not limited to matter *authored by* someone for the publication.  To the extent that BuzzFeed *attached* parts of the Dossier to its article which were not reported to be the subject of any official activity, such as the statements defaming Plaintiffs and Amici, BuzzFeed "added" those defamatory statements to the publication, and under Section 74's exception, the statute affords no immunity to BuzzFeed for those aspects of its publication.

*Second*, BuzzFeed's argument ignores that the Section 74 exceptions are written in the disjunctive and that the statutory exception prohibits the application of the privilege to *anything* not reported to be "a part" of the official proceeding, even if it was "said" or "done" at the proceeding.  Here, when Defendants published specific statements *defaming Plaintiffs* which were not reported in the articles to be the subject of official action, BuzzFeed *added* libelous statements which were not a part of the official proceeding.  This facially triggered Section 74's exception, making Section 74 unavailable as a source of immunity for Defendants' publication of the statements libeling Plaintiffs.  Indeed, *no* court,

7

other than the District Court below, has ever accepted BuzzFeed's strained

interpretation of Section 74's second sentence as applying exclusively to libels that

express the journalist's own conclusions.

**B.     BuzzFeed's Publication, Including the CNN Article, Does Not Permit an Ordinary Reader to Determine that the Statements Defaming Plaintiffs Were Part of Any Official Proceeding**

New York requires that a publisher seeking to invoke Section 74 "*establish*

that *the statements at issue reported on a[n] [official] proceeding.*"  *Cholowsky v.*

*Civiletti*, 887 N.Y.S.2d 592, 596 (N.Y. App. Div. 2009) (emphasis added)

(quotation omitted).  The publisher, when attempting to satisfy its burden, must

show that an "ordinary viewer" could "*determine* whether the defendant was

reporting on a[n] … official proceeding" by publishing the statements at issue.  *Id*.

(emphasis added).  In spite of the clarity of that holding, the Reporters Committee

frames the issue as whether a reader could "understand" such a possibility.  *See*

Rprtrs. Comm. Br., Headline II, 21 (replacing the word "determine" with

"understand" in paraphrasing the *Cholowsky* test).  But the decision of New York's

legislature to immunize only those libels that a publisher *reports* to be part of an

official proceeding, combined with *Cholowsky*'s holding that Section 74 is limited

to where an average reader can "determine" a connection between a proceeding

and a libelous statement, leaves no doubt that New York's test is an objective one,

focused on the content of the publication.  By contrast, the word "understand"

8

suggests a looser test under which possible inferences and deductions by readers would trigger Section 74 so long as one theoretical reader could *understand* that a defamatory statement is part of a proceeding.  But this is not the law—Section 74 can only be invoked where the connection between the defamatory statement and the proceeding is *reported* in a way that allows that connection to be *determined* from the content of the publication.

In a nod to Section 74's actual requirements, the Reporters Committee characterizes the content of the articles in a way, which, *if* accurate, would appear to satisfy Section 74's "report" requirement.  Specifically, the Reporters Committee proclaims that BuzzFeed "alert[ed] readers" that "officials were taking action" with regard to "the reported allegations" about Plaintiffs.  Rprtrs. Comm. Br. at 21.  However, the Reporters Committee Brief does not (because it cannot) identify *any* content from the BuzzFeed or CNN articles that "alerted" or informed readers of any action taken regarding the statements defamatory of Plaintiffs. Once the articles are considered, it is evident that they did not inform readers of any official action regarding the statements at issue.

The Reporters Committee also purports to identify five "investigative actions about the Dossier" reported in the articles, *see* Rprtrs. Comm. Br. at 7, but many of its characterizations of how the articles describe those "investigative

9

actions" are inaccurate, and none of the referenced portions of the articles actually state that the statements *defaming Plaintiffs* were part of any official proceeding.

Below are the Reporters Committee's description of the five investigative actions, followed by an explanation of why they are incorrect:

- "After reviewing the Dossier, Senate Minority Leader Harry Reid wrote a letter to then-FBI Director James Comey about the Dossier's allegations. BuzzFeed Article, D.E. 214-4, Ex. 2, at 2; CNN Article, D.E. 214-5, Ex. 1." Rprtrs. Comm. Br., 7.

What the CNN article *actually* reports is as follows:  After referencing "allegations that there was a continuing exchange of information during the campaign between Trump surrogates and intermediaries for the Russian government," CNN's article stated "sources tell CNN that *these same allegations* … prompted then-Senate Democratic Leader Harry Reid to send a letter to FBI Director Comey in October in which he wrote 'It has become clear that you possess explosive information about close ties and coordination between Donald Trump, his top advisors, and the Russian government….'" D.E. 214-5, Ex. 1 at 2. Thus, CNN did *not*, as the Reporters Committee Brief suggests, report that Reid's letter to Comey was about the entire Dossier, or report that Reid asked Comey to review or do *anything* regarding the "Dossier."  Nor did CNN's characterization of the Reid letter reference Christopher Steele in any way, use the expression "Dossier," or use a synonym for the Dossier such as the CNN article's own word,

10

"memos."  Moreover, the letter CNN described, written *in October* 2016, cannot

have been based on a reading of a Dossier that included Report 166, the report at

issue in this case, which was not written until two months later, in December 2016.

In short, the Reporters Committee's effort to use the Reid letter as a basis for

BuzzFeed's invocation of Section 74 in this case fails because it relies on a

misdescription of the CNN article.

- "Senator John McCain learned of the Dossier, obtained a copy, and
  delivered it to then-FBI Director Comey for further investigation.  BuzzFeed
  Article, D.E. 214-4, Ex. 2, at 2; CNN Article, D.E. 214-5, Ex. 1."  Rprtrs.
  Comm. Br., 7.

What the CNN article actually says is that Senator McCain "became aware

of the memos" from a former British diplomat and "gave" what was, as of

"December 9 … a full copy of the memos" to Comey.  D.E. 214-5, Ex. 1 at 2.

Thus, contrary to the Reporters Committee, CNN did not report that McCain told

or even suggested to Comey what he and/or the FBI should do with any of the

memos, in particular Report 166, which at the time *did not exist*.  In any event,

reporting Comey's *possession* of the memos, however received, is not a report of

an official action absent a report of what Comey or the FBI *did* with them.  *See*

*Abakporo v. Sahara Reporters*, 2011 U.S. Dist. LEXIS 109056 at *27 (E.D.N.Y.

Sept. 26, 2011) (the assumed fact that a document "reached the relevant

[governmental] authorities … [does] not transform the [document] into part of an

11

'official proceeding' under Section 74"); *Medico v. Time*, 643 F.2d 134, 142 (3d

Cir. 1981) ("Care must be taken, of course, to ensure that the supervisory and

informational rationales not expand into justifications for reporting any defamatory

matter maintained in any government file.").

Moreover, the report that one government official gave a document to

another government official does not constitute a report of an *official proceeding*,

no matter the identity of the officials: giving and receiving documents does not

describe "activities which are *within the prescribed duties* of a public body."

*Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York*, 475

N.Y.S.2d 383, 388 (N.Y. App. Div. 1984) (emphasis added). Indeed, the District

Court appeared to reach this same conclusion. It was aware that the giving of

memos by McCain to Comey is mentioned in the BuzzFeed article, but held that

"official actions are mentioned *only* in the hyperlinked CNN article" [and not the

BuzzFeed article]. *Gubarev I*, 2018 U.S. Dist. LEXIS 97246 at *23.

- "The FBI asked for and received from Steele—an FBI informant—the
  Dossier he compiled, and the FBI subsequently investigated the credibility
  and accuracy of the Dossier. BuzzFeed Article, D.E. 214-4, Ex. 2, at 2;
  CNN Article, D.E. 214-5, Ex. 1." Rprtrs. Comm. Br., 7.

With this language, the Reporters Committee Brief again wildly overstates

what the articles actually report. The BuzzFeed article does *not* say *anything* about

the FBI receiving anything "from Steele" or investigating the credibility or

accuracy of the Dossier.  Although the CNN article does make an apparent

reference to Steele as the "former M16 agent," it reports only that he gave "a set of

the memos compiled up to August 2016" to an FBI official.  Thus, in many ways,

the Reporters Committee's description of the BuzzFeed and CNN articles is a false

representation of what they actually say.  Not only do the articles *fail* to report an

FBI investigation of the accuracy of the entire Dossier, but the CNN article makes

clear that after whatever "check[ing] out" the U.S. intelligence agencies did of

Steele, they decided to use only "some of"—not all of—the information in the so-

called Dossier.  D.E. 214-5, Ex. 1 at 2.

- "Federal intelligence agencies created a two-page synopsis of the Dossier's allegations after receiving a full copy.  BuzzFeed Article, D.E. 214-4, Ex. 2, at 2; CNN Article, D.E. 214-5, Ex. 1."  Rprtrs. Comm. Br., 7.

Here, once again characterizing the articles instead of quoting them, the

Reporters Committee Brief misrepresents the articles.  Nowhere does either article

report that the two-page synopsis included "the Dossier's allegations" in their

entirety, and the articles suggest otherwise.  The synopsis which CNN said was a

part of presentations to the President and President-elect was described by CNN as

only about "the memos regarding Mr. Trump," not of the entire Dossier.  D.E. 214-

5, Ex. 1 at 1.  Underscoring that it was not reporting the synopsis to be of the entire

Dossier, CNN reported instead that it "include[d]" only some of the information in

13

the memos—*without* identifying any of the information in Report 166 as among

that information. *Id.*

- "The directors of National Intelligence, the FBI, the CIA, and the NSA each provided the two-page synopsis about the allegations in the Dossier to President Obama and President-elect Trump as part of an intelligence briefing. BuzzFeed Article, D.E. 214-4, Ex. 2, at 2; CNN Article, D.E. 214-5, Ex. 1." Rprtrs. Comm. Br., 7.

As demonstrated above and by the actual articles, neither of them actually

report that all of "the allegations in the Dossier" were either part of a synopsis or

presented to the two presidents. In short, contrary to the misleading portrait

painted by the Reporters Committee, no reader could actually "determine" from

the articles—the *Cholowsky* standard—that the defamatory allegations made

against Plaintiffs in Report 166 were being investigated by the FBI or had been

mentioned in presidential briefings or any other official proceeding.

## C.   The Possible Inference from the Articles that Someone May Have Read Report 166 While Preparing the Synopsis or Presidential Briefing Does Not Describe an Official Proceeding as to Report 166

As documented above, it is beyond dispute that the articles did not report

that Report 166 was used in the presidential briefings or investigated by the FBI.

Nor, applying the *Cholowsky* test, do the articles enable readers to "determine" as

much. That elemental failure should make it unnecessary to go further.

Nevertheless, Defendants contend that they satisfy the first (report) prong of

Section 74 as to Report 166 by allegedly reporting "that officials created a synopsis

14

drawn from the 35-page document." Def. Br., 15.  In other words, Defendants argue that, even though they failed to *report* that Report 166 was used in the synopsis or mentioned in the briefing, the articles permit an *inference* that Report 166 may have been looked at by some unidentified government employee who was "filtering information," Def. Br.,19, for inclusion in the synopsis and briefing.

This argument not only fails to satisfy the "report" requirement of Section 74—and the ability to "determine" standard of *Cholowsky*—it also fails because a possible inference that some unidentified government employee looked at a document in order to decide *not* to use it in the synopsis or presidential briefing does not describe official conduct as to that document *or* describe conduct within any official's "prescribed duties" as is required by *Freeze Right*, 475 N.Y.S.2d at 388-89.  Indeed, BuzzFeed's argument—that it can invoke Section 74 by merely reporting that a government official looked at a document when considering whether or not to use it or take further action—would have the effect of immunizing all documents that come within the government's possession since, presumably, all such documents are looked at by some official to decide whether to act in regard to the document.  Such a notion contradicts the well-established principle that reporting the government's possession of a document, without more, does not describe official government proceedings as to that document.  *See Abakporo v. Sahara Reporters* and *Medico v. Time*, *supra* at 11.

15

Furthermore, the articles' failure to report who, if anyone, in government read Report 166 makes it impossible to "determine" that an official's reading of Report 166 to, as BuzzFeed suggests, "filter" it *out of* the synopsis, was an act within that person's "prescribed duties." *Freeze Right*, 475 N.Y.S.2d at 388-89. Consequently, it is impossible to *determine* from the articles that Report 166 was a part of an official proceeding within an official's prescribed duties, which dooms BuzzFeed's invocation of the privilege.

## D. Defendants' Argument Relies on a Distortion of Plaintiffs' and Amici's Position

Unable to show that their January 10, 2017 article *reported* that either Report 166 or the entire Dossier (which would encompass Report 166) was part of an FBI investigation, presidential briefing, written intelligence synopsis, or any other official proceeding, Defendants instead erect a straw man—i.e., Defendants contend that Plaintiffs and Amici have argued that Plaintiffs "should have … published some cut-and-pasted document of BuzzFeed's own creation." Def. Br., 22. *See also id*. (characterizing Amici's argument as that "the press must publish selectively edited, invented versions of documents").

This is not Plaintiffs and Amici's position. As an initial matter, Defendants incorrectly presuppose that the "Dossier" is an example of "entire documents that are part of official proceedings." Def. Br., 23. However, this is the core of the

16

dispute—what parts of the "Dossier" were the subject of an official proceeding. By distorting Plaintiffs' and Amici's position and the "Dossier," Defendants mischaracterize Plaintiffs' and Amici's position as demanding a "line-by-line" approach under which the only part of the government document(s) that could be published with immunity would be those explicitly "touch[ed] upon" in a publication reporting about a government proceeding. *Id.* at 22-23.

Plaintiffs and Amici, however, *do not argue* that where a publication *actually and accurately reports* that an entire document is the subject of an official proceeding that there exists some additional requirement for invoking Section 74 under which the only parts of the document whose publication is privileged are the parts explicitly mentioned in the publication. To the contrary, Amici *agree* that, *if* BuzzFeed's article had, in fact, reported that the entire Dossier was investigated by the FBI or provided to Presidents Obama and Trump, that the Defendants would not have had to explicitly mention the Plaintiffs in the article to invoke Section 74's protection. *But* Amici also point out that *neither* BuzzFeed nor CNN reported that the *entire* Dossier [or specifically Report 166] was the subject of an official proceeding, and that therefore Defendants did not make a report that affords the immunity that Defendants are seeking.

Defendants' argument that denying them the privilege in these circumstances would encourage the media to publish redacted documents that

17

would be rendered "substantially inaccurate" by the redactions, Def. Br., 24, is not, even facially, an argument about the scope of Section 74.  Instead, it is a plea for the creation of a new rule providing immunity for publishing defamatory statements that are *not* reported to be part of a government proceeding whenever those defamatory statements would somehow improve the accuracy of an otherwise non-defamatory publication.  Whatever the merits of such a suggestion, only New York's legislature, not this Court, may enact such a rule.

Lastly, although Defendants raise the specter that publishing a partially redacted Dossier would have subjected BuzzFeed to some hypothetical lawsuit from "all the persons" named in the Dossier, Defendants fail to offer a single example of who would have been harmed by the publication of the "Dossier" with redactions of defamatory statements *not* reported to be part of any proceeding.

**E.    Because the Terse New York *Fridman* Decision Relies Entirely on a Factual Determination, It Lacks Precedential Value and Was Improperly Submitted by Defendants as Rule 28(j) Supplemental "Authority"**

In the defamation case in which Amici are plaintiffs—*Fridman v. BuzzFeed*—a New York intermediate court recently declined to dismiss BuzzFeed's invocation of the fair report privilege on the ground that BuzzFeed reported "classified briefings and/or an FBI investigation *concerning the dossier as a whole.*"  97 N.Y.S.3d at 477.  This factual finding about the purported content of

BuzzFeed's report [its own article and the hyperlinked CNN article] was incorrect, as the actual articles did *not* report the *entire* Dossier [or the statements in it defaming Plaintiffs and/or Amici] to be part of government proceedings. Respectfully, this Court can and should make its own assessment of the content of the two articles, both of which are in the appellate record.  D.E. 214-4, Ex. 2; 214-5, Ex. 1.

Defendants provided the Appellate Division decision to this Court pursuant to Rule 28(j), but not only was the decision incorrect about its only finding (the content of the articles) but the decision does not even constitute genuine "authority" whose consideration is authorized by Rule 28(j).  In providing the decision, Defendants appear to assume that it is an "authority" merely because it is a judicial decision.  But that is not enough.  The "authority" contemplated by Rule 28(j) is limited to conclusions of law, and does not extend to judicial findings of fact.  Thus, in *DiBella v. Hopkins*, 403 F.3d 102, 118 (2d Cir. 2005), the Second Circuit rejected the Rule 28(j) submission of a judicial decision because it rested on *factual* conclusions.  Specifically, after a party (Hopkins) submitted "Judge Kane's recent decision in *America Presents*, in which Judge Kane found that Joseph perpetrated 'no fraud' on the court," the Second Circuit rejected that submission, holding that under Rule 28(j) "Hopkins cannot introduce Judge Kane's *factual conclusions* into the record before this Court."  *Id.* (emphasis added).  The

19

Second Circuit explained that Rule 28(j) "simply does not allow this type of evidence to be introduced for the first time on appeal." *Id.* The same applies here—the New York court's factual findings are not authority that bind this Court or which may even be considered under Rule 28(j).

Also notably, the Appellate Division declined to commit itself to a finding that the articles reported the existence of *any particular* proceeding concerning the whole Dossier. *See Fridman,* 97 N.Y.S.3d at 477. The Appellate Division mentioned only two proceedings—"classified briefings" and an FBI investigation—but by using the expression "and/or," it failed to go so far as to necessarily find that the articles reported classified briefings concerning the entire Dossier. *Id.* Likewise, it failed to find that the articles reported an FBI investigation concerning the entire Dossier. Given that the two articles speak for themselves and the Appellate Division's somewhat vague and noncommittal description of their content, its decision provides no particular aid to this Court.

## POINT II

### THE DISTRICT COURT CORRECTLY IDENTIFIED THE RELEVANT CONTROVERSY IN FINDING THAT PLAINTIFFS ARE NOT LIMITED PURPOSE PUBLIC FIGURES

Defendants cross-appeal from the District Court's decision denying their motion for summary judgment as to Plaintiffs' status as limited public purpose figures. The District Court's decision must be affirmed as it correctly identified

20

the relevant controversy giving rise to the defamatory statements and determined that Plaintiffs are not public figures for that controversy.

The first step in determining whether a plaintiff is a limited public figure is *identifying the pertinent controversy*.  *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1296 (D.C. Cir. 1980); *accord Silvester v. Am. Broadcasting Cos.*, 839 F.2d 1491, 1494-95 (11th  Cir. 1988).  In doing so, as noted by the District Court, "the law does not allow the relevant public controversy to be divorced from the allegedly defamatory statements and the context in which they were made."  D.E. 385, 13-14 (citing *Hatfill v. The New York Times Co.*, 532 F.3d 312, 323 (4th Cir. 2008) ("In light of the purpose of the public figure doctrine to encourage robust and uninhibited commentary on public issues, it stands to reason that we should look to the scope of the message conveyed in The New York Times through the articles that Dr. Hatfill is challenging."), and *Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F. Supp. 627, 637 (D. Md. 1992) ("Moreover, it would be inappropriate to shrink all controversies to the specific statements of which a plaintiff complains. Defendants' alleged defamatory statements here, as in other controversies, are a part of, and clearly related to, a much larger story.")).

The District Court correctly identified the relevant controversy as the "ongoing controversy involving Russian interference in the election."  D.E. 385, 14.  Defendants argue that the District Court defined the relevant controversy too

21

narrowly, and that it should have been defined as one concerning cybercrime more generally. *See* Def. Br., 57. In support of this argument, they cite to the Fourth Circuit's decision in *Hatfill* and claim that the Fourth Circuit held that an expert in a particular field is a limited public purpose figure if he is accused of committing a crime relevant to that field. *See* Def. Br., 58. However, that is a misreading of *Hatfill*. In *Hatfill*, it was not enough that the plaintiff was an expert in bioterrorism and was accused of committing the anthrax terror attacks in 2001. *See* 532 F.3d at 323. Rather, the Fourth Circuit held that "in light of the purpose of the public figure doctrine … we should look to the scope of the message conveyed" in the challenged article. *Id.* The court found that the articles, although "focusing on solving the anthrax mailings of 2001, … [were] above all, concerned about the government's efforts to protect the nation from a bioterrorist attack." *Id.* Accordingly, the court held that the plaintiff was a limited public purpose figure because not only was he "repeatedly sought out as an expert on bioterrorism, but was also a vocal critic of the government's unpreparedness for a bioterrorist attack." *Id.* at 324. Here, in contrast, when the articles and the Dossier are considered, it is evident that they are not "above all" concerned with cybercrime generally, but rather are about alleged Russian collusion with the Trump campaign to interfere in the 2016 election. Accordingly, the District Court was correct to reject Defendants' efforts to define the controversy more broadly as cybercrime or

cybersecurity generally, finding that although those topics were mentioned in the Dossier, they were mentioned "only in the context of Russian interference with the election," and are "general topics" "untethered from the Dossier and, more importantly, the public debate about Russian interference with the election, which made the Dossier a matter of public importance."  D.E. 385, 14.

The District Court's definition of the controversy respects the Supreme Court's holding in *Gertz v. Welch*, 418 U.S. 323 (1974), which requires that a court look past the content of the defamatory statements to the underlying controversy "giving rise" to their utterance.  *Id.* at 352.  As illustrated by the Supreme Court in *Gertz*, the controversy "giving rise" to the defamation is distinct from *the content* of the defamatory statement.  Thus, in *Gertz*, the content of the defamation was a series of statements that accused Mr. Gertz of membership in communist affiliated organizations.  *See id.* at 326.  But in defining the controversy (and whether Mr. Gertz tried to shape its outcome), the Supreme Court did not discuss whether Mr. Gertz ever talked publicly about any of the alleged communist affiliated organizations or his own participation in them.  Instead, the Court talked about *why* the defamatory statements accusing Mr. Gertz of being a communist came to be published—Mr. Gertz's representation of the estate of an individual who was shot and killed by a police officer.  *See, e.g., id.* at 352 ("In this context it is plain that petitioner was not a public figure.  He played a *minimal role at the coroner's*

23

*inquest*, and his participation related solely to his representation of a private client. He took *no part in the criminal prosecution* of Officer Nuccio. Moreover, he *never discussed either the criminal or civil litigation with the press* and was never quoted as having done so. He plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome.") (emphases added)).

The lessons of *Gertz* and *Hatfill* are plain. Courts should not base their decision on how to define the controversy primarily on the *content* of the defamatory statement (e.g., in *Gertz*, that Mr. Gertz was a communist), but rather, on the issue or dispute that triggered the making of the defamatory statements (in *Gertz*, a shooting by a police officer and ensuing criminal and civil litigation, and in *Hatfill,* the nation's preparedness for a bioterrorism attack). Here, the District Court did that by analyzing the article and the Dossier in the context of the controversy which lead to their publication. *See* D.E. 385, 14 ("Plainly, the Dossier was important at the time of its publication because it related to the ongoing controversy involving Russian interference in the election."). And, once the controversy has been correctly identified as purported Trump-Russian collusion in advance of the 2016 election, the conclusion is clear that Plaintiffs have not "thrust" themselves to the "forefront" of the identified controversy as required. *See Gertz*, 418 U.S. at 352; *Waldbaum*, 627 F.2d at 1297. Accordingly, the

24

District Court's decision finding that Plaintiffs are not limited public purpose figures should be affirmed.

## CONCLUSION

For the above-stated reasons, the Court should reverse the District Court's decision to afford "fair report" immunity to Defendants for their publication of the defamatory statements, affirm the District Court's conclusion that Plaintiffs are not public figures in this dispute, and remand the case to the District Court for further proceedings.

Dated: June 10, 2019             Respectfully submitted,

By:        */s/ Alan S. Lewis*
Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:  (212) 732-3200
Fax:  (212) 732-3232
lewis@clm.com / walsh@clm.com
-and-
Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.:  (305) 350-5116
Fax:  (305) 982-0079
aschwartz@homerbonner.com

*Attorneys for Proposed Amici Mikhail Fridman, Petr Aven, and German Khan*

25

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because this document contains 5,871 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced type-face using Microsoft Word 2010 in 14-point Times New Roman font.

Dated:  June 10, 2019

_/s/ Alan S. Lewis_

Alan S. Lewis, *pro hac vice*
John J. Walsh, *pro hac vice*
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel.:  (212) 732-3200
Fax:  (212-732-3232
lewis@clm.com / walsh@clm.com
        -and-
Adam L. Schwartz
Florida Bar No. 0103163
HOMER BONNER JACOBS
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
Tel.:  (305) 350-5116
Fax:  (305) 982-0079
aschwartz@homerbonner.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2019, I served the foregoing on counsel of

record, Evan Fray-Witzer (Evan@CFWLegal.com), Brady J. Cobb

(bcobb@cobbeddy.com), Dylan Michael Fulop (dfulop@cobbeddy.com), Valentin

Gurvitis (vagurvits@bostonlawgroup.com), Matthew Shayefar

(matt@shayefar.com), Katherine Bolger (katebolger@dwt.com), Roy Black

(rblack@royblack.com), Adam Lazier (adamlazier@dwt.com), Jared M. Lopez

(jlopez@royblack.com), Cary McClelland (carymcclelland@dwt.com), Alison

Schary (alisonschary@dwt.com), Nathan Siegel (nathansiegel@dwt.com), Floyd

Abrams (fabrams@cahill.com), and Joel Kurtzberg (jkurtzberg@cahill.com) via

email.

/s/ Adam L. Schwartz
Adam L. Schwartz

27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60426-CV-UNGARO

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.,

      Plaintiffs,

v.

BUZZFEED, INC., and
BEN SMITH,

      Defendants.

_____ /

## ORDER GRANTING MOTION TO APPEAR
## AS AMICI CURIAE AND TO FILE AMICUS CURIAE BRIEFS

      **THIS CAUSE** came before the Court upon Mikhail Fridman, Petr Aven, and German

Khan's Motion to Appear as Amici Curiae and to File Amicus Curiae Briefs.  Being fully

advised, it is

      **ORDERED AND ADJUDGED** that the motion is **GRANTED**.  Mikhail Fridman, Petr

Aven, and German Khan may **APPEAR AS AMICI CURIAE,** and their Amicus Briefs, which

are attached as Exhibits A and B to their motion, shall be deemed **FILED** in this matter.

      **DONE AND ORDERED** in Miami-Florida, this ___ day of April, 2020

                                 _____

                                 URSULA UNGARO
                                 UNITED STATES DISTRICT JUDGE