UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ALEKSEJ GUBAREV,
XBT HOLDING S.A., and
WEBZILLA, INC.
   Plaintiffs,

v.

BUZZFEED, INC. and
BEN SMITH
   Defendants.

Case No.

**0:17-cv-60426-UU**

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD
WITH THE HOROWITZ REPORT AND FOR AN INDICATIVE RULING**

## INTRODUCTION

The present motion – which is before this Court on a specifically-limited remand from the Eleventh Circuit– presents two separate, distinct, and discrete questions for this Court to answer: (1) should the record be supplemented with the Horowitz Report (an official government report issued by the Office of the Inspector General) and, if so, (2) would such supplementation "alter [*i.e.* reverse] the court's previously issued summary judgment order."  *See* D.E. 443.

In opposing Plaintiffs' Motion, Defendants intentionally try to blur the line between these distinct inquiries.  And, although Defendants claim the Horowitz Report could have no effect on the court's judgment, they strenuously oppose adding it to the record.  Their arguments that it cannot or should not be added are simply baseless.

In reality, this Court has the inherent ability to supplement the record with the Horowitz Report, should do so, and should issue an indicative ruling that inclusion of the Horowitz Report would lead the court to reverse its earlier grant of summary judgment.

## ARGUMENT

**I.     This Court Has the Inherent Power to Add the Horowitz Report to the Record.**

Defendants first argue (as they did unsuccessfully to the Eleventh Circuit) that the present motion – filed upon the Eleventh Circuit's ordering a limited remand to allow Plaintiffs to "move the district court for relief that would allow the district court to supplement the record with the Horowitz report" – could *only* be brought as a Rule 60(b)(2) motion, and that the present motion is therefore untimely because it was not filed within one year of this Court's grant of summary judgment, as that rule requires.  That argument, however, requires this Court to assume one of two ridiculous possibilities: (a) that the Eleventh Circuit is itself unaware of the time limitations placed on Rule 60(b)(2) motions and remanded this motion in ignorance; or (b) that the Eleventh Circuit understood the time limitations (and *also* believed the motion could *only* be brought as a Rule 60(b)(2) motion) but nonetheless remanded the motion to this Court so that Plaintiffs could "move the district court for relief that would allow the district court to supplement the record with the Horowitz report" as the judicial equivalent of a "trick question."   Assuming, however, that this Court is not inclined to attribute either ignorance or judicial hijinks to the Eleventh Circuit Court of Appeals, it follows that the Eleventh Circuit issued its limited remand to this Court understanding that there was indeed authority for this Court to allow the record to be supplemented with the Horowitz Report.

1

This is, of course, one of the ways in which Defendants have attempted to blur the two inquiries outlined in the introduction. Rule 60(b)(2) is not about supplementation. Rule 60(b)(2) is about setting aside a judgment or order because a party has presented the Court with "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." While it is true that the same *underlying policy considerations* that govern Rule 60(b)(2) ***might*** influence this Court's resolution of the second question, it has no relevance to the Court's consideration of the first.

Instead – as the Eleventh Circuit certainly understood and intended – the question of supplementation should be decided not under any rule or statute, but rather in the District Court's discretion, pursuant to this Court's inherent powers. *See*, *e.g.*, *Arkin v. Smith Med. Partners, LLC*, 2020 U.S. Dist. LEXIS 59062, at *6 (M.D. Fla. Apr. 3, 2020) ("District courts have 'inherent power not governed by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Castle v. Appalachian Technical College*, 430 F. App'x. 840, 841 (11th Cir. 2011))). Indeed, this Court has specifically cited its inherent power (and not a rule or statute) as the basis for permitting supplementation of the record. *See*, *e.g.*, *AIM Recycling of Fla., LLC v. Metals USA, Inc.*, 2019 U.S. Dist. LEXIS 196558, at *7 (S.D. Fla. Nov. 13, 2019) (invoking the Court's inherent powers to allow supplementation of the record with new evidence after the filing of a summary judgment motion "where such evidence was not available prior to the motion's filing" and "where doing so would allow for the 'efficient and expedient resolution' of the case on the merits"); *Girard v. Aztec RV Resort, Inc.*, 2011 U.S. Dist. LEXIS 105855, at *7 (S.D. Fla. Sep. 16, 2011) (allowing supplementation to add new evidence where the Court "determines that allowing the filing of the evidence furthers the ends of justice").

The real question, then, is whether the inclusion of the Horowitz report in the record – which is indisputably evidence that was not available to Plaintiffs at the time summary judgment motions were filed – would further the ends of justice. And, because the authority to supplement has been delegated by the Eleventh Circuit, this Court should be guided by the same factors that the Eleventh Circuit utilizes when it determines whether it is appropriate for the Court to supplement the record on appeal; namely, whether such supplementation would permit the Court to make a more fully informed decision or would aid the Court in deciding the issue fairly. *See*, *e.g.*, *Young v. City of Augusta ex rel. DeVaney*, 59 F.3d 1160, 1168 (11th Cir. 1995) ("Even

when the added material will not conclusively resolve an issue on appeal, we may allow supplementation in the aid of making an informed decision."); *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 n.4 (11th Cir. 2003) (same); *Hinson v. Edmond*, 192 F.3d 1342, 1344 n.2 (11th Cir. 1999) (invoking the court's inherent ability to supplement the record where doing so would allow it to answer the relevant "question fairly").

It is here that Defendants' arguments fail most clearly: there is no rational reason why the inclusion of ***more*** information – here an official government report from the Office of the Inspector General – would do anything *but* further the ends of justice, allowing this Court and the Eleventh Circuit to make a more informed decision and answer the relevant questions fairly. Additionally, the inclusion of the Horowitz Report by this Court would also allow for the efficient and expedient resolution of this case on its merits – either because such inclusion will allow the Appeals Court to consider the complete record on review or because such inclusion would lead this Court to reconsider (reverse) its earlier grant of summary judgment.

Accordingly, pursuant to the inherent powers of this Court which the Eleventh Circuit contemplated its using on remand, this Court can, and should, allow Plaintiffs' motion to supplement the record to add the Horowitz Report.

**II.     The Court Should Issue an Indicative Ruling that Consideration of the Horowitz Report Would Reverse its Previously Issued Summary Judgment Order.**

In its limited remand, the Eleventh Circuit also contemplated that this Court was empowered to, and might decide to, issue "an order stating that the record should be supplemented and the Horowitz Report would alter the court's previously issued summary judgment order...." D.E. 443. Here, too, Plaintiffs proceed under the assumption that the Eleventh Circuit was neither ignorant of the rules of civil procedure nor engaging in hijinks with this Court in issuing its remand.

And, although the present motion is not brought under Rule 60(b)(2), both Plaintiffs and Defendants have acknowledged that this Court might choose to look to that rule in deciding whether to exercise its discretion to provide the Eleventh Circuit with an indicative ruling stating that the Horowitz Report would lead this court to reverse its previously-issued summary judgment order.

In their opposition, Defendants cite the five-factor test for supplementation outlined in *Waddell v. Hemerson*, 329 F.3d 1300, 1309 (11th Cir. 2003):

3

> (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

Defendants fully concede that the Horowitz Report constitutes "newly discovered" evidence, but contest the remaining factors of the *Waddell* test. With respect to each of these factors, however, Defendants are mistaken concerning the facts, the law, or both.

  A. <u>Plaintiffs Were Diligent in Bringing Their Motion.</u>

    1. *Timing of The Motion*

In considering Plaintiffs' diligence in bringing its motion before the Eleventh Circuit, a review of the *actual* sequence of events demonstrates that Plaintiffs acted diligently and expeditiously in filing their motion.

On December 9, 2019, the Office of the Inspector General issued the *476-page, single-spaced* Horowitz Report, declassifying the OIG's findings concerning the origins of the FBI's investigation into President Trump's relationship with Russia. Precisely three weeks later, on December 30, 2019, Plaintiffs filed their motion with the Eleventh Circuit asking it to either take judicial notice of the Horowitz Report and supplement the record with the same or to issue a limited remand to this Court for the same purpose.

Although Defendants' Opposition was due to the Eleventh Circuit ten days later, Defendants moved for an additional 12 days to respond, stating that they needed the additional time "in order to properly and fully respond to Appellants' 20-page Motion." *See* <u>Exhibit 1</u> hereto. But, despite insisting that they could not even *respond* to arguments presented in Plaintiff's Motion within the ten days allowed under the rules, Defendants nonetheless argued (both to the Appeals Court, and here) that Plaintiffs should have (within 10 days) completed the far greater task of culling the relevant portions from the Horowitz Report, while also presenting well-developed legal arguments that would assist the Court. In so arguing, Defendants suggested in the Appeals Court – and repeat here – that, in a *different* case against Defendants in New York (the "*Fridman* litigation"), those plaintiffs were able to fully brief a motion analyzing the Horowitz Report within ten days of its issuance. That is, at best, misleading.

Before the Horowitz Report issued, the *Fridman* plaintiffs were given a December 16th deadline for filing their Summary Judgment Reply Brief (not a 60(b)(2) motion). On December 12th, after the Horowitz Report issued, they moved for an extension of time, telling the court:

4

> Given the very short time (seven days) between the release of the Inspector General's report and the Plaintiffs' December 16 deadline for their reply, *Plaintiffs **cannot** effectively complete their thorough review of the Inspector General's report*, while concluding the drafting of the other content of the reply memorandum, in a way that does justice to the fullness and significance to this case of the Inspector General's report.

*See* Exhibit 2 hereto, Declaration of Alan S. Lewis, Ex. 1, p. 2 (emphasis added).

Because that court had not ruled on their requested extension before the filing deadline, the *Fridman* plaintiffs there incorporated a few quotes from the Horowitz Report into their already-planned brief, though the majority of that brief did ***not*** focus on the Report at all. Lewis Declaration, ¶ 12. Indeed, the *Fridman* parties (including Defendants here) specifically stipulated that they could each later file additional (i.e. previously uncontemplated) replies to fully address the Horowitz Report. *Id.*, ¶ 13. Buzzfeed filed its sur-reply on December 30 (16 days after Fridman's summary judgement response, and 21 days after the Horowitz report issued). Then the *Fridman* Plaintiffs filed their sur-sur-reply over two weeks even beyond that (and well after Plaintiffs here filed their Motion to Supplement) on January 17. *Id.*, ¶¶ 15-16.

In reality, then, the *Fridman* parties explicitly recognized the *impracticality* of adequately addressing the Horowitz Report in any lesser timeframe, let alone one of only 10 days.

Ultimately, Plaintiffs here digested the 476-page report, and filed their motion with the Eleventh Circuit, within three weeks of the Horowitz Report's issuance. Clearly, to the extent that this Court wishes to consider Plaintiffs' diligence relevant to the question of supplementation, Plaintiffs were reasonably diligent.

        2.    *Conduct of Discovery*

As predicted, Defendants argue here (as they did in the Eleventh Circuit) that Plaintiffs were somehow obligated to pursue – to a greater extent than they did – additional discovery to uncover previously-classified government materials. As is discussed in Plaintiffs' opening memorandum (pp. 9-10), such efforts were neither reasonable under the circumstances, nor would they have yielded the evidence ultimately declassified in the Horowitz Report. The arguments raised by Defendants, however, require a number of factual corrections:

      a.    Defendants claim that Judge Mehta "granted Defendants' motion to compel *in its entirety*." Opposition, p. 11. This assertion is laughably misleading. As was discussed in Plaintiffs' Opening memorandum (pp. 10-11), Defendants initially served more than half a dozen deposition and document subpoenas on a variety of government agencies and present and former

5

government officials.  Each subpoena sought many categories of documents and identified numerous areas of inquiry for depositions.  After a year of litigation, Defendants did not obtain a single responsive document, nor was a single deposition taken.  Instead, the Defendants agreed to accept – in lieu of receiving *any* responsive documents or taking *any* depositions – three yes-or-no answers to three specific questions, which they were eventually forced to accept as sufficient for their purposes (whether or not they actually were).  Defendants characterize that capitulation here as Judge Mehta granting their motion in its entirety.

Ultimately, the answers to those three questions should not have enabled Defendants to carry their burden of proving the elements of their affirmative defense of fair report privilege; Plaintiffs should not have been required (as Defendants contend) to follow them down the rabbit hole of irrelevant discovery.  But since this Court's decision hinged exclusively on those answers, it is now relevant that their veracity has been undercut by the Horowitz Report.

And, even if the Court was not yet persuaded, Defendants themselves prove Plaintiffs' point by fully admitting that their own discovery motion to the D.C. Court "sought exactly the information [Plaintiffs] now say is so central to the case." Opposition, p. 9.  Buzzfeed's attempt and failure to obtain the classified information which now appears in the Horowitz Report is itself proof that any efforts by Plaintiffs to seek that information would have been futile.

b.  Defendants oddly claim that the *only* questions that Christopher Steele refused to answer during his deposition (despite such questions having been ruled within the scope of inquiry by the Examiner appointed by the British Courts) were those concerning whether he provided Report 166 to the FBI, CIA, or DOJ.[1]  Even if that was relevant, it is simply incorrect. *See*, *e.g.*, Transcript of the Deposition of Christopher Steele, pp. 24-27, 33, 118.

c.  Defendants also suggest that the Declaration of Stephen Loble, submitted with Plaintiffs' Opening memorandum, somehow suggested that it would have been possible to compel Mr. Steele to provide additional answers. Opposition, p. 11, fn. 7.  But, Loble's

---

[1] After this Court issued its Request for International Judicial Assistance, Steele fought his deposition in the British Courts.  The British Courts (which do not themselves permit pretrial discovery in their own cases) not only limited the categories of questions that could be asked, but also required the parties to submit their questions in advance of the deposition.  Despite all of this, the British Courts also required the presence of an "Examiner" at the deposition to rule on objections as they were raised both to the form of the question and whether the questions fell within the Court's approved categories.  And, even when the Examiner ruled that a question fell within the Court's approved categories, Steele was still given the option not to answer.

declaration concluded precisely the opposite: "In summary, it is in my opinion *doubtful* that the questions the set out on pages 121-126 or indeed any other questions, would have been answered subsequently by Mr. Steele." (Emphasis added).

      B.      <u>The Horowitz Report is Not "Merely Cumulative or Impeaching."</u>

Defendants next argue that the Horowitz Report should not result in this Court altering its grant of summary judgment because the evidence contained therein is merely "impeaching" of other evidence. Opposition, pp. 11-12. Specifically, they claim that the conclusion in the Horowitz Report – that the FBI did not possess Report 166 until Buzzfeed published it – simply impeaches Priestap's mere "yes" in his affidavit – the "yes" that led this Court to conclude that "prior to Buzzfeed's publication of the full Dossier, the FBI also possessed Report 166." Summary Judgment Order, D.E. 389, p. 6.

But, this Court, has recognized that when Rule 60(b)(2) speaks of evidence that is "merely ... impeaching" it is contrasting that with evidence which is "material," such that it would influence the outcome:

> Under Rule 60(b)(2), the newly discovered evidence must not be merely cumulative and impeaching, it must be material.... Material evidence means: [t]hat quality of evidence which tends to influence the trier of fact because of its logical connection with the issue. Evidence which has an effective influence or bearing on question in issue is material.

*Jeld-Wen, Inc. v. Nebula Glass Int'l*, 2008 U.S. Dist. LEXIS 137443, at *19 (S.D. Fla. May 13, 2008) (internal citations omitted).

Here, the *only* evidence that Defendants submitted to support their assertion that the FBI even possessed Report 166 at the time of publication (which they claimed was sufficient to meet their burden) was the Priestap affidavit, which the Court found to be undisputed for summary judgment purposes. As a result of the Horowitz Report, that affidavit is no longer undisputed, and the Horowitz Report is clearly "material" for that reason.

The only case Defendants cite from this circuit supporting their argument, *McGhee v. Georgia*, 204 F. App'x 809, 811 (11th Cir. 2006), does nothing to change that conclusion. In *McGhee*, a wrongful death case, the plaintiff was dissatisfied with the coroner's report and hired two independent examiners to review the coroner's findings. When each of those independent examiners supported the coroner's findings, the plaintiff found a third individual merely to review earlier findings and to support plaintiff's theory of the case. The Eleventh Circuit upheld the District Court's denial of the plaintiff's 60(b)(2) on the grounds that "the report from [the

7

third individual] was at most cumulative and impeaching, was not based on an independent examination, and was available before the court had granted summary judgment or within the time to file a motion to amend judgment." *Id.* This case is unlike *McGhee*. Plaintiffs did not shop for a Report, and the OIG's conclusions were arrived at through extensive independent interviews with Priestap and with others.

      C.      <u>The Horowitz Report is Both Material and Should Produce a New Result.</u>

Defendants combine the categories of "materiality" and whether the newly discovered evidence should produce a new result and, in responding, Plaintiffs (having already addressed materiality to a degree) will do the same.

      1.      *The Horowitz Report Contradicts the Priestap Affidavit*

Having first expended their energies trying to convince the Court that the Horowitz Report did nothing **but** contradict (i.e. impeach) the Priestap affidavit, Defendants pivot to argue that the Horowitz Report doesn't ***actually*** contradict the Priestap affidavit. Clearly, it does, as Defendants themselves have argued. The Horowitz Report, page 176, straightforwardly states:

> Finally, by early January 2017, *BuzzFeed* had obtained copies of some of the Steele election reports during a meeting with the McCain Institute staff member and published them as part of an article titled "These Reports Allege Trump Has Deep Ties to Russia." ***Included in this collection was Report 166, another report that previously had not been shared with the FBI.***

Plaintiffs detail the relevance of this conclusion, with important discussions of other remote (but relevant) parts of the Horowitz Report, in their Opening memorandum (pp. 6-8; 12-15, and portions of appellate briefs referenced therein), and will not repeat those arguments here. It is worth noting, however, how far Defendants are reaching in making their claim that the Horowitz Report is not, in fact, material. Defendants present the Court with a demonstrably misleading assertion concerning the declaration of Edward Gistaro, a Deputy Director at the Office of the Director of National Intelligence (ODNI), claiming that his Declaration confirmed that "a two page synopsis" presented to Presidents Trump and Obama "included allegations derived from a 35-page Dossier," presumably in a grasping effort to support their claim that the "Dossier" (because it was "35 pages") must somehow be assumed to have included Report 166. Opposition, p. 14. However, the Gistaro Declaration does nothing of the sort. The Gistaro Declaration is nothing more than the ODNI's response to a FOIA request in which ***the requestor*** framed its inquiry by referencing "a two page synopsis" that "included allegations derived from a 35-page Dossier." In responding to the requestor, Gistaro simply quoted back (*in quotation*

8

*marks*) those words, as used *by the requestor*. *See* Gistaro Declaration, p. 5, ¶ 12, Exhibit 3 hereto. This grasping at straws is indicative of the fragility of Defendants' opposition.

### 2. The Horowitz Report – an Official Government Report – Can be Judicially Noticed and Considered for the Fact Contained Therein.

As this Court undoubtedly recalls, in reaching its Summary Judgement decision (and at the urging of Defendants), the Court took judicial notice of competing memos written by Congressmen Devin Nunes and Adam Schiff.[2] *See* D.E. 388, p. 4, fn. 5 (finding such documents admissible under FRE 803(8)(A)(iii) and self-authenticating under FRE 902(5)); D.E. 243, p. 2, fn. 1 (arguing admissibility and self-authentication under the same sections).

Defendants now try to back away from their earlier explicit arguments, claiming that they never sought to have the *entirety* of the Nunes and Schiff memos admitted into evidence, and that this Court cannot take judicial notice of a government report as evidence of any fact. Both assertions are belied by arguments in Defendants' own prior submissions to this Court. D.E. 214-30 (submitting entire Nunes Memo); D.E. 214-31 (submitting entire Schiff Memo); D.E. 237-3, p.14 (designating full Nunes and Schiff Memos as trial exhibits); D.E. 243, p. 2, n. 1 (arguing: "Congressional reports are self-authenticating, FRE 902(5), and the only element of those reports Defendants rely on are the 'factual findings from a legally authorized investigation'" and quoting Judge Mehta's holding that it "can't be any clearer" that the *facts* within the Nunes Memo would be admissible under FRE 803(8)).

Defendants also argue that this Court cannot consider the Horowitz Report because its findings are not undisputed. As in the previous argument concerning supplementation, they cite only one unhelpful case from within this circuit, *Grayson v. Warden*, 869 F.3d 1204 (11th Cir. 2017). Defendants incorrectly cite *Grayson* for the proposition that "indisputability is a prerequisite to judicial notice… even for government documents and reports." Opposition, p. 15. But *Grayson* did not involve judicial recognition of a government document. Instead, in *Grayson*, the Court was faced with the question of whether a District Court could take "judicial notice" of facts which had been proven in an earlier case involving different litigants. After first finding that the District Court could not properly rely on theories of issue preclusion (because the

---

[2] This Court found it appropriate to take judicial notice of the facts asserted in the Nunes and Schiff memos even though the memos took partisan positions and often reached contradictory conclusions. D.E. 388, p. 4. The Horowitz Report, on the other hand, is a comprehensive report of a factual investigation by the non-partisan Office of the Inspector General.

parties were not the same and not in privity with one another), the Court held that "[i]f it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of [issue preclusion] would be superfluous." *Id.* at 1225.

Nor does *Smith v. Pena*, 1998 U.S. Dist. LEXIS 23807 (D.D.C. Mar. 31, 1998), stand for the proposition that "statements contained in a government report [were] untrustworthy because they conflicted with sworn testimony from key subjects" as Defendants contend. Opposition, p. 15. That case simply stated that the plaintiff could not point to records of her own phone calls to a government employee as proof that the things she had said in those calls were true, even though the government employee claimed to have made a record of those calls.

### 3. *The Horowitz Report Should Result in this Court Reversing its Summary Judgment Decision.*

Two final points are worth making. First, contrary to Defendants' suppositions, this Court need not make any factual determination about the relative credibility of the Horowitz Report versus the Priestap affidavit in order to find that the Horowitz Report raises a fact question relevant to fair-report privilege – a question which a jury might have to resolve.

Secondly, it is worth noting the absurd degree which Defendants' continued expansion of their definition of an "official proceeding" has reached. Defendants now urge this Court to consider Report 166 "part" of the "official proceeding," (a) even if the FBI was merely "aware of" Report 166 when Buzzfeed published, or (b) based solely on the FBI's *eventual* receipt of Report 166, *after* Buzzfeed published. Opposition, pp. 14 and 19. Even if these assertions were not plainly absurd they are not supported by the cases cited by Defendants in which litigants supplied the press, in advance, with pleadings they, themselves, fully planned to file with a court as a public record, and did in fact file. That in no way suggests that Buzzfeed's receipt of Report 166 from a private citizen, who had no control at all over whether the document became part of an official proceeding or not (and, indeed, discouraged its publication specifically because it was unreliable), could be deemed a "fair report."

## III.   Conclusion.

For the reasons stated hereinabove and in Plaintiffs' Opening Memorandum, and in accordance with the directive from the Eleventh Circuit Court of Appeals, Plaintiffs respectfully request that: (a) the Court Order that the record be supplemented to include the Horowitz Report; and (b) the Court Issue an indicative ruling informing the Eleventh Circuit that, on a full remand, the Court would reverse its previously-issued order granting summary judgment to Defendants.

Respectfully Submitted,

/s/ Evan Fray-Witzer
Evan Fray-Witzer (pro hac vice)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
617-426-0000
Evan@CFWLegal.com

/s/ Valentin Gurvits
Valentin Gurvits (pro hac vice)
Boston Law Group, PC
825 Beacon Street, Ste 20
Newton, MA 02459
617-928-1800
vgurvits@bostonlawgroup.com

/s/ Matthew Shayefar
Matthew Shayefar (Fla. Bar. No. 126465)
Law Office of Matthew Shayefar, PC
925 N La Brea Ave
West Hollywood, CA 90038
323-948-8101
matt@shayefar.com

Dated: April 13, 2020

**CERTIFICATE OF SERVICE**

    **I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel for all parties on the date set forth below.

Dated: April 13, 2020                             /s/ Matthew Shayefar