UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60426-UNGARO

ALEKSEJ GUBAREV, XBT HOLDING
S.A., and WEBZILLA, INC.

            Plaintiffs,

vs.

BUZZFEED, INC. and BEN SMITH,

            Defendants.

_____/

**EXHIBIT A:**

**SUPPLEMENTAL MEMORANDUM OF AMICUS CURIAE
ON REMAND ADDRESSING DEFENDANTS' CONTENTIONS
REGARDING THE CONTENT OF THE HOROWITZ REPORT**

9462617.5

**STATEMENT OF INTEREST**

This Court and the Eleventh Circuit Court of Appeals have recognized that Mikhail Fridman, Petr Aven, and German Khan ("Amici") have an interest in the outcome of this case sufficient to permit them to appear as amicus curiae. This Court permitted Amici to file the briefs originally filed by Amici with the appellate court.[1] Amici submit this brief to address an argument made by Defendants BuzzFeed, Inc. and Ben Smith (collectively, "BuzzFeed") that is not directly responsive to any argument made by Plaintiffs in their pending motion.

To understand why this proposed submission from Amici makes an important and potentially dispositive contribution to the Court's ruling on remand, it is necessary to begin by identifying BuzzFeed's argument that this proposed submission challenges: even *if* the Horowitz Report fatally undermines the notion that the FBI possessed Report 166 as of the privileged occasion (January 10, 2017), the Horowitz Report somehow immunizes its publication of Report 166 under Section 74 of New York's Civil Rights Law because of a purported finding that the FBI was investigating "*all* aspects of Steele's reporting, both *before* and after *BuzzFeed published the Dossier.*" Defs.' Resp. at 18 (emphasis added). On the basis of that [dubious] factual contention, BuzzFeed contends that it is entitled to fair report immunity "even if" what the Horowitz Report says about the FBI not possessing Report 166 on January 10, 2017 is "construed as Plaintiffs urge." Defs.' Resp, at 16.

This brief demonstrates that BuzzFeed's new argument is false. The Horowitz Report *undermines* the notion that, as of the privileged occasion, there was an FBI Investigation (or other government proceeding) into "all aspects" of the Dossier. Plaintiffs' brief *did not address* this aspect of the Horowitz Report. Instead, Plaintiffs focused on what the Horowitz Report says about the FBI not possessing Report 166 on January 10, 2017. Evidently, Plaintiffs did not

---

[1] Defendants argue that the briefs originally filed with the Appellate Court simply repeat arguments rejected by the New York courts. *See* Defs.' Resp. [ECF No. 235] at 17, n. 10. However, as explained by Amici in their supplemental appellate court brief, the brief decision by the New York intermediate court on a motion to dismiss an affirmative defense does not constitute binding authority. [*See* ECF No. 449-2 at 18-20.] Additionally, as Amici have argued in the pending motion for summary judgment in the New York action, a decision on a motion to dismiss does not resolve a summary judgment motion because the former requires a court to treat well pled allegations as true whereas the latter requires a court to hold the movant to its burden of proof on every element of its claim or affirmative defense.

1

anticipate BuzzFeed's alternative argument— its publication of Report 166 is privileged based on the claim that by January 10, 2017, the FBI was investigating *everything* in the so-called "Dossier." This supplemental brief, which details the record, will aid the Court in understanding those portions of the Horowitz Report that undermine BuzzFeed's alternative argument.

### **ARGUMENT**

**I.   THE HOROWITZ REPORT UNDERMINES THE CENTRAL PREMISE OF THIS COURT'S SUMMARY JUDGMENT DECISION.**

Before awarding summary judgment to Defendants based on the fair report privilege, the Court acknowledged that Defendants failed to prove that Report 166, specifically, had been the subject of official action as of January 10, 2017, the privileged occasion.[2] *See* 340 F. Supp. 3d 1304, 1315 ("the record does not reveal what, if any, official action was taken with respect to it [Report 166]").

In light of the absence of such proof, the Court framed the legal issue as follows, before ultimately resolving it in Defendants' favor:

> Plaintiffs take the position that Defendants must show that the particular statements about them were subject to official proceedings. But Defendants respond that New York law does not require that level of granularity; they have *satisfied their burden by showing that the Dossier was subject to official action*.

*Id.* at 1316 (emphasis added).

Thus, Defendants' position, which the Court adopted, was based on the factual premise that governmental action taken prior to January 10, 2017 involved official use of "the Dossier" as a whole. *See id.* at 1315 (finding that "[t]he FBI conducted a 'source validation' assessment *of the Dossier*.") (emphasis added); *see also id.* at 1309 (finding that "the FBI conducted a 'source validation' assessment of the credibility *of Steele's reports*") (emphasis added).

Defendants recognize that whether those findings are correct, in light of the Horowitz Report, is crucial to the outcome on remand. Indeed, Defendants argue for fair report immunity "even if" the Horowitz Report confirms that the FBI did not possess Report 166 on January 10, 2017, the date of Defendants' publication, because they claim the Horowitz Report proves the existence of an investigation into "the entire dossier" as of January 10, 2017 and Report 166

---

[2] The "privileged occasion" requirement, as applied under the fair report privilege, allows immunity only upon proof that the defamatory publication was part of the proceeding it was reported to be a part of, *on the date of* the defamatory publication. *See Bufalino v. Assoc. Press*, 692 F.2d 266, 271 (2d Cir. 1982).

was *eventually* included in that investigation. See Defs.' Resp. at 19 (claiming that "because the FBI went on to specifically include Report 166 in that investigation, the privilege applies even if [it] were the case that Report 166 was still working its way through those channels to the FBI on January 10."); *id.* ("the [Horowitz] Report makes clear that *the entire Dossier*, including Report 166, was investigated") (emphasis added); *id* at 18 (contending that according to the Horowitz Report that even "before" January 10, 2017, the FBI was "intensely investigating *all aspects of Steele's reporting*") (emphasis added).

However, putting aside Defendants' incorrect claim that they can invoke the privilege for publishing a report which only became the subject of an official investigation *after* they published it, the Horowitz Report demonstrates that *neither the FBI nor the intelligence community was making official use of the entire so-called Dossier at the time BuzzFeed published its article*.

### A. The Horowitz Report Undermines the Court's Previous Ruling that the Entire Dossier Was Part of the FBI Investigation on January 10, 2017.

The Horowitz Report unearths a trove of information about *which* of Steele's Reports the FBI used and when in connection with Source Validation efforts and the Carter Page warrant. Specifically, it reveals (1) that the FBI had not, as of January 10, 2017, commenced a source validation proceeding encompassing most or all of the "Dossier," and (2) that the subset of Steele's Reports used by the FBI prior to January 10, 2017 to obtain the Carter Page warrant excluded Report 166 and many of Steele's other reports.

#### 1. *Source Validation.*

The Horowitz Report reveals that an FBI source validation effort involving *some* of the Steele memos was "requested" in November 2016, at which time the FBI did not possess Report 166, and that its source validation efforts were *not initiated* until "early February 2017" (after the January 10, 2017 publication of BuzzFeed's Article). Horowitz Report at 183, n.329. Accordingly, at the time of BuzzFeed's publication of Report 166, there was *no* FBI activity involving validation of the sub-sources of the Steele memos, other than the six that the FBI had as of late October 2016. This fact forecloses Section 74 immunity.

Contrary to the Court's summary judgment finding that was based upon the record and representations of BuzzFeed at the time, the Horowitz Report undermines the notion that as of January 10, 2017, the privileged occasion, the FBI had commenced or even decided to

3

commence a source validation effort (or any other investigation) encompassing the entire so-called Dossier.  Instead, the Horowitz Report says that the FBI took the initial *six* reports it received from Steele in September 2016 (which did not include Reports 112, 166, or many others) and created a spreadsheet of "excerpts" from those reports to track whether those excerpts had been corroborated in the context of developing "various diagrams, charts, and timelines to document relationships and events pertinent to the Crossfire Hurricane investigation."  Horowitz Report at 101-02.

Moreover, the Horowitz Report strongly suggests that any effort to validate Steele's *other* reports, including Reports 166 and 112, would have taken place *after* BuzzFeed's January 10, 2017 publication.  As Steele advised the FBI, his "source" for the allegations in the memos was *one* person, his "Primary Sub-Source," who in turn "used a network of sub-sources."  Horowitz Report at 186.  The FBI did not even "identify and arrange a meeting with the Primary Sub-source" until after BuzzFeed's publication.  *Id.* at 187 ("The Primary Sub-source told the FBI" in that first meeting that "he/she had not seen Steele's reports *until they became public*.") (emphasis added).  Thus, the FBI first interviewed the Primary Sub-source *after* BuzzFeed made the Steele reports public.[3]  In the same vein, the Horowitz Report describes when and how the FBI conducted its Human Source Validation Review ("HSVR") of Steele.  It describes the HSVR as a process ordinarily conducted by the FBI at the outset of a relationship with a source.  However, the FBI's Validation Management Unit did not perform such an assessment on Steele until early 2017—after the Crossfire Hurricane team requested an assessment in the context of Steele's election reporting.  *See* Horowitz Report at 90, n. 208.  Thus, the Horowitz Report undermines the notions that the FBI considered the "Dossier" to be a single document and that a source investigation pertaining to the "Dossier" as a whole was extant as of January 10, 2017.[4]

      2.   *The Carter Page Warrant Application and Renewals.*

---

[3] Nor is there any indication that the FBI discussed Report 166 [or Report 112] with the Primary Sub-source as the Horowitz Report refers to certain other individual reports *but not 166 or 112* in discussing what the FBI learned from the Primary Sub-source regarding Steele's reporting.  *See* Horowitz Report at 187-88.

[4] In Amici's Supplemental Brief in the Eleventh Circuit, accepted by this Court on remand, Amici refute BuzzFeed's legal theory according to which the privilege can be applied to publication of the entire "Dossier." As the Supplemental Brief explains, the purportedly privileged character of "the Dossier" is not a justiciable question. [*See* ECF No. 449-2 at 4-8.]

4

9462617.5

The Horowitz Report devotes substantial attention to the manner in which the FBI used some of Steele's reports in seeking a FISA warrant to investigate Carter Page. Of those applications, only the original application, not the renewals, took place before January 10, 2017, and hence the only potentially relevant official FBI action is its conduct in seeking the initial warrant application. But as revealed by the Horowitz Report, the "Steele Dossier" that was "part of the Carter Page FISA Application" did not encompass Report 166, Report 112 or even many other of Steele's reports. Horowitz Report at 119, n. 259; 156.

In sum, there is no proof in the Horowitz Report, or elsewhere, that as of January 10, 2017, the FBI had made the entirety of Steele's reports part of a validation process or part of the Carter Page warrant application process, or part of any other agency proceeding - much less of agency conduct actually described in either the BuzzFeed or CNN Articles.

### II.     Nothing in the Horowitz Report Supports BuzzFeed's Contention that Report 166 Was Part of an Intelligence Community Assessment.

BuzzFeed, unable to demonstrate that as of January 10, 2017, either that the FBI possessed Report 166 or that "the entire Steele Dossier" was part of any FBI investigation, retreats to the equally dubious notion that officials involved in an early January 2017 Intelligence Community Assessment ("ICA") possessed Report 166. *See* Defs.' Resp. at 2 (claiming that "other evidence in the record speaks to other members of the intelligence community involved in advising and briefing the President possessing Report 166" as of January 10, 2017). But there is no support for that contention in the Horowitz Report, or elsewhere.

For starters, the contention that the intelligence community agencies involved in the ICA could have possessed Report 166, if the FBI did not, makes no sense because the FBI was one of the intelligence agencies involved in the ICA. Horowitz Report at 176 (noting that as of BuzzFeed's publication, "Report 166 . . . had *not* been shared with the FBI") (emphasis added). Respectfully, this authoritative statement from the FBI's Inspector General shows that the other agencies involved alongside with the FBI in the ICA also did *not* have Report 166 on January 10, 2017.

Moreover, even apart from the Horowitz Report, there is no proof that the intelligence agencies possessed Report 166 on January 10, 2017. To suggest otherwise, Defendants cite paragraphs 11 through 14 of the Declaration of Edward Gistaro, a Deputy Director at the Office

5

of the Director of National Intelligence ("ODNI"), supplied in connection with FOIA litigation brought by the James Madison Project (the "Project") and Josh Gerstein. *See* Defs.' Resp. at 14.

Again, BuzzFeed misrepresents the record. The Gistaro Declaration merely states that the ODNI withheld from the Project's FOIA request a single two-page 'synopsis' provided by the government to then President-Elect Donald Trump. [ECF No. 214-40 ¶ 14.] Gistaro's declaration did *not* represent that the intelligence agencies possessed Report 166 on January 10, 2017.

Relying on the deposition of David Kramer, BuzzFeed makes the equally misleading claim that "Report 166 was given to the official principally responsible for Russia-related matters at the National Security Council well before BuzzFeed published it." Defs.' Resp. at 14. Whether David Kramer gave a copy of Report 166 to that official, Celeste Wallander, is irrelevant to Defendants' invocation of the privilege for several reasons.

First, neither BuzzFeed nor CNN reported on any National Security Council proceeding, which forecloses the privilege on such basis. The privilege applies only upon demonstration of the truth of that which *has been reported*. *See Holy Spirit Ass'n v. N.Y. Times*, 49 N.Y.2d 63, 67 (1979). Second, mere possession of a document is not sufficient official action to invoke the privilege. *Abakporo v. Sahara Reporters*, 2011 U.S. Dist. LEXIS 109056, at *27 (E.D.N.Y. Sept. 26, 2011). Indeed, Kramer testified that while Wallander said she had "heard" about the Dossier, she had "not seen it" and "didn't know the status of it" within the government. [ECF No. 214-16 at 117:22-24.] Third, Kramer's testimony does not constitute conclusive proof that Wallander had Report 166 "well before BuzzFeed published it." Kramer testified that he "gave her [Wallander] a copy of *the document*," referring to "the Dossier," and that he did so "*probably around* New Year's." [ECF No. 214-16 at 117:14-16.] But Kramer used the phrases "document" and "Dossier" throughout his testimony to refer to versions of it that did not include Report 166, and he never testified specifically that he gave Report 166 to Wallander. Last, testimony that he "probably" provided a document "around" New Year's does not conclusively eliminate all doubt about his having done so by January 10, 2017, which is only 9 days after the beginning of the New Year.

## CONCLUSION

The Horowitz Report fatally undermines BuzzFeed's contention that the government possessed Report 166 on January 10, 2017, and its alternative contention that the government

6

was investigating "the entire Dossier" as of that date.  Respectfully, because the Court's previous summary judgment decision relied on these now disproven facts, the Court should indicate to the Eleventh Circuit that its consideration of the Horowitz Report would alter its previous decision to grant summary judgment to Defendants.

         Respectfully submitted:

         CARTER LEDYARD & MILBURN LLP

         By:  *s/ Alan S. Lewis*
         Alan S. Lewis (admitted *pro hac vice*)
         2 Wall Street
         New York, N.Y. 10005
         Tel.: (212) 238-8647
         Fax: (212) 732-3232
         lewis@clm.com

         -and-

         HOMER BONNER JACOBS ORTIZ, P.A.

         By:  *s/ Adam L. Schwartz*
         Adam L. Schwartz
         Florida Bar No.: 0103163
         1200 Four Seasons Tower
         1441 Brickell Avenue
         Miami, FL 33131
         Tel.: (305) 350-5100
         Fax: (305) 372-2738
         aschwartz@homerbonner.com

         *Attorneys for Amici Mikhail Fridman, Petr Aven, and German Khan*